GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, State Bar No. 163581
310 University Avenue
Palo Alto, CA  94301-1744
Telephone:     650.849.5395
Facsimile:      640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, State Bar No. 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     415.393.8293
Facsimile:      415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER *(pro hac vice* forthcoming)
MIGUEL A. ESTRADA *(pro hac vice* forthcoming)
VERONICA J.T. GOODSON, State Bar No. 314367
1700 M Street N.W.
Washington, D.C.  20036-4504
Telephone:     202.955.8500
Facsimile:      202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*
(additional counsel on signature pages)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

## NATURE OF THE ACTION

1.      This case arises from the State of California's violation of a prohibition in the Clean Air Act that expressly bars any State from adopting or attempting to enforce any standards relating to the control of emissions from new heavy-duty vehicles and engines without a waiver of federal preemption. In June, pursuant to the Congressional Review Act, the federal government statutorily preempted California's emissions standards governing heavy-duty vehicles and engines.  Notwithstanding that new legislation, California continues to demand compliance with its heavy-duty emissions standards, and it has threatened Original Equipment Manufacturers ("OEMs") that design, develop, manufacture and sell heavy-duty vehicles and engines—four of whom are Plaintiffs here—with civil sanctions and unfavorable regulatory treatment if the OEMs refuse to comply with the State's unlawful standards, while also taking measures to insulate itself from lawful challenges to those standards.  The federal government has responded in turn through the U.S. Department of Justice, which issued Cease & Desist letters to Plaintiff OEMs stating that California's enforcement of its standards is contrary to federal law, and directing Plaintiff OEMs to immediately cease and desist compliance with California's preempted and unlawful mandates.  Plaintiffs are caught in the crossfire: California demands that OEMs follow preempted laws; the United States maintains such laws are illegal and orders OEMs to disregard them. This situation is not tenable.  Accordingly, Plaintiff OEMs file this lawsuit to clarify their legal obligations under federal and state law and to enjoin California from enforcing standards preempted by federal law.

2.      Recognizing the harms that would result from a patchwork of environmental regulations, Congress in 1970 enacted Title II of the Clean Air Act, which authorizes the Environmental Protection Agency ("EPA") to establish a comprehensive program for regulating emissions from new motor vehicles. 42 U.S.C. § 7522(a)(1).  To that end, the Clean Air Act explicitly preempts state laws that regulate motor vehicle emissions with one exception—EPA may waive the application of federal preemption for California emissions standards under certain defined circumstances.  42 U.S.C. § 7543. Once EPA has issued a waiver, other states are permitted to opt-in to California's standards under section 177 of the Clean Air Act.  42 U.S.C. § 7507.

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
CASE NO.

3.     As a result, there have historically been two distinct sets of emissions standards applicable to vehicle manufacturers, including manufacturers of heavy-duty vehicles and engines: (1) standards promulgated by the California Air Resources Board ("CARB"), and then approved by EPA, that apply in California and any other state that has adopted California's standards; and (2) standards promulgated by EPA.

4.     From 2021 to 2023, CARB promulgated a series of emissions standards significantly more stringent than their federal counterparts on heavy-duty trucks, including those manufactured by Plaintiff OEMs, and sought preemption waivers from the Biden Administration EPA.[1]  As part of its program, CARB requires that sellers of heavy-duty trucks in California certify that their vehicles comply with CARB standards.

5.     The inconsistent regulatory requirements resulting from those standards created an unstable and untenable landscape for manufacturers of heavy-duty trucks and engines, including Plaintiff OEMs and their customers.  Among other things, the misaligned federal and California emissions standards provided Plaintiff OEMs with barely two years of lead time to comply with California's aggressive emissions standards, a woefully inadequate compliance window given that the Clean Air Act itself mandates a minimum of *four* years of lead time for any new pollutant standards for heavy-duty vehicles.  42 U.S.C. § 7521(a)(3)(C).  California's most recent tailpipe emissions rules for trucks also did not align with corresponding federal standards, creating significant development and technical feasibility issues for industry.  *See* Complaint*, Engine Mfrs. Ass'n v. Cal. Air Res. Bd.*, No. 2:22-cv-03663-JFW-PVC (C.D. Cal. May 27, 2022).

6.     To address these concerns, heavy-duty truck and engine manufacturers and their trade

---

[1] California regulations for emissions from new motor vehicles and engines are divided into categories based on vehicle weight, with the largest vehicles and engines categorized as "heavy-duty," moderately sized vehicles often used in commercial applications falling into the "medium-duty" category, and most cars and pickup trucks referred to as "light-duty."  *See, e.g.*, Cal. Code Regs. tit. 13, §§ 1900 (b)(5), (b)(6).  Federal law also categorizes certain types of vehicles as "heavy duty" vehicles or engines.  *See, e.g.*, 42 U.S.C. § 7521(a)(3)(B) (directing EPA to set emissions standards applicable to "heavy-duty vehicles or engines").  This complaint refers to "heavy-duty trucks" or "heavy-duty vehicles" as shorthand for the vehicles and engines, including medium-duty vehicles and engines, covered by the California regulations described herein and which are manufactured by the plaintiffs.

association petitioned CARB for relief from these infeasible regulatory requirements. The result, in July 2023, was the "Clean Truck Partnership," in which CARB outlined a plan to undertake regulatory changes sought by industry—specifically, that CARB would harmonize federal and California tailpipe emissions standards with agreed-upon regulatory amendments and provide sufficient lead time for future regulations. As conditions for this relief, CARB extracted new concessions from the manufacturers, including that the manufacturers would comply with CARB's emissions standards "irrespective of the outcome of any *litigation* challenging" them or CARB's authority to implement those standards. *See* Clean Truck Partnership ("CTP"), Ex. A, ¶ 2 & App'x B (emphasis added).

7.    Under the Biden Administration, EPA had issued preemption waivers relating to CARB's emissions standards governing certifications of heavy-duty trucks. But earlier this year, Congress acted through a bicameral legislative process under the Congressional Review Act to pass joint resolutions disapproving the EPA's earlier preemption waivers for California. On June 12, 2025, the President signed those Congressional resolutions, creating new federal laws that expressly preempt California's heavy-duty vehicle emissions standards under the Clean Air Act. As a result, California (and other states) are prohibited by federal law from adopting and attempting to enforce emissions-related standards. EPA's emissions standards now apply exclusively on a nationwide basis, including in California. And DOJ has issued a letter to Plaintiff OEMs stating that "Federal law thus prohibits CARB from adopting or attempting to enforce those regulations" governing heavy-duty trucks, and ordering Plaintiff OEMs to cease compliance with the preempted rules. *See, e.g.*, Ex. B (U.S. Dep't of Just., Env't & Nat. Res. Div., Cease & Desist Letter (Aug. 7, 2025) [hereinafter Aug. 7, 2025, DOJ Letter]), at 1. EPA's emissions standards now apply exclusively on a nationwide basis, including in California.

8.    California nevertheless sued the United States in the U.S. District Court for the Northern District of California, alleging that the Congressional resolutions disapproving California's preemption waivers are unlawful and unconstitutional. *California v. EPA*, No. 3:25-cv-04966-HSG (N.D. Cal. filed June 12, 2025). California has not moved for preliminary relief. As of the filing of this Complaint, the United States has not made any responsive filing. That case is ongoing and will continue without

a resolution for months or longer.

9.     At the same time, notwithstanding the Congressional Review Act legislation, California has asserted that heavy-duty vehicle and engine manufacturers must continue to follow California's preempted standards to lawfully sell vehicles in the State—including by pointing to the Clean Truck Partnership as a source of its continuing authority.  California has taken additional affirmative steps to enforce its preempted and unlawful standards:

a.     First, California seeks to use the Clean Truck Partnership, which was intended to harmonize compliance with state and federal law, to compel an entire industry to follow California emissions standards that are now in conflict with federal law, and which have been expressly preempted by federal law.  *See* Ex. B (Aug. 7, 2025, DOJ Letter) at 1-2.  In effect, California is seeking to enforce the Clean Truck Partnership as an industry-wide mandate to follow regulations abrogated by federal legislation and prohibited by federal law.  This approach disregards the Clean Air Act's preemption clause, which prohibits not just the adoption by any State of emissions standards reserved to the federal government, but any State's "*attempt* to enforce" preempted standards.  42 U.S.C. § 7543(a) (emphasis added).  California also disregards the plain language of the Clean Truck Partnership, which states that manufacturers are obligated to follow CARB's emissions regulations "regardless of the outcome of any litigation challenging … those regulations, or CARB's overall authority to implement those regulations," not federal legislative action taken to invalidate them. Ex. A (CTP), ¶ 2 & App'x B.  In sum, notwithstanding Congress' removal of California's authority to regulate heavy-duty trucks and engines, CARB is attempting to use the Clean Truck Partnership—which was intended to achieve alignment with federal standards—to compel compliance with misaligned and now-preempted state emission standards.  That attempt is both inconsistent with the Clean Truck Partnership and violative of federal law.  CARB cannot attempt to enforce through a misapplied Clean Truck Partnership what federal law prohibits it from doing as a regulator, nor can California contract around the

Supremacy Clause.

   b.   Second, on May 23, 2025, CARB issued an industry directive (in the form of a Manufacturers Advisory Correspondence or "MAC") stating that manufacturers must continue to follow CARB's preempted standards, including the certification requirement, to ensure "lawful" sales of vehicles and engines in California. Manufacturers Advisory Correspondence ECCD-2025-3, CARB (May 23, 2025) [hereinafter May 23, 2025 MAC].

   c.   Third, on June 13, 2025, California Governor Gavin Newsom issued Executive Order N-27-25 directing CARB to continue implementing the Clean Truck Partnership and threatening unfavorable regulatory treatment, as well as exclusion from government purchase and incentive programs, for vehicle and engine manufacturers who dispute the validity of the Clean Truck Partnership or do not comply with the preempted standards.

   10.   California also has continued to make public statements reinforcing its position that industry is obligated to disregard what CARB considers "unconstitutional and illegal resolutions purporting to overturn three of U.S. EPA's decisions to grant California waivers" regarding its emissions standards. Thus, in a July 24, 2025 press release CARB again reinforced its view that compliance with the Clean Truck Partnership was still necessary to enable "lawful vehicle sales in California." *See* Press Release, CARB, CARB approves amendments to clean truck standards to provide flexibility while maintaining emissions benefits (July 24, 2025), https://perma.cc/8D4R-A26K.

   11.   Meanwhile, in response to CARB's actions, the federal government has reiterated that CARB's vehicle emissions standards are preempted and California is now prohibited from attempting to enforce the state emissions standards at issue. On August 7, 2025, the U.S. Department of Justice sent a letter to Plaintiff OEMs reinforcing that the disapproval of California's waivers by the federal legislative action has rendered California's standards preempted, and further explaining that the Clean Truck Partnership itself is preempted under federal law as "the regulatory mechanism by which CARB attempts to enforce preempted California emissions standards." *See, e.g.*, Ex. B (Aug. 7, 2025 DOJ

6

Letter), at 2.

12.    The OEMs are in an impossible position.  On the one hand, California insists that Plaintiff OEMs must follow CARB's standards, including CARB's truck and engine certification requirements, or be excluded from the California market, subjected to significant civil penalties, shut out of special considerations and flexibilities in future regulatory considerations, and excluded from state purchasing and incentive programs.  On the other hand, the United States Department of Justice has issued cease-and-desist letters to Plaintiff OEMs stating that those same standards are invalid and unlawful, such that only the EPA regulations apply, and that the cornerstone of CARB's new enforcement efforts, the Clean Truck Partnership, is itself preempted by federal law.  As a result, the OEMs are subject to two sovereigns whose regulatory requirements are irreconcilable and who are openly hostile to one another.  Each wields a hammer to enforce its will on industry, leaving OEMs—who simply seek to sell heavy-duty trucks in compliance with the law—unable to plan with the necessary certainty and clarity where their products need to be certified for sale and by which regulatory authority.

13.    Plaintiff OEMs have been irreparably harmed by this uncertainty.  To adequately plan product production and allocation, OEMs must know which vehicles they are authorized to sell, and *where*, well in advance of the start of a model year on January 1.  Applying for and receiving CARB certifications takes months—by CARB's own account, the process takes at *least* sixty days but there is no deadline by which CARB must complete its certification process.[2]  OEMs must also incur significant costs and expend significant resources to engage in the certification process.  To allow sufficient time for planning and running its business, Plaintiff OEMs need to know within a matter of weeks whether they must obtain a model year 2026 certification from CARB in order to lawfully sell their products in California and other opt-in states, which together represent approximately 25% of the national market for new vehicle registrations for heavy-duty vehicles.[3]  Citing the Clean Truck Partnership, California contends that OEMs must obtain this certification to have lawful vehicle sales in California.  The federal government contends that the regulatory bases for such a California certification

[2] CARB, On-Road Heavy-Duty and Off-Road Compression Ignition Certification Programs: Certification Steps Overview, https://perma.cc/UUT3-HWG5.

[3] CARB, States That Have Adopted California's Vehicle Regulations, https://perma.cc/PA6F-UCF4.

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
CASE NO.

are fully preempted by federal law and invalid.

14.    Prior to filing this lawsuit, Plaintiff OEMs and their trade association sought clarification from CARB regarding OEMs' legal obligations under the Clean Truck Partnership and CARB's underlying emissions standards, noting that the Clean Truck Partnership's requirements were invalid for several reasons, including that they were preempted under the Clean Air Act.  To date, CARB has declined to address the concerns raised by regulated parties, despite requests by the Plaintiff OEMs and their trade association, and instead issued the May 23, 2025 MAC and Executive Order N-27-25 without any dialogue with industry.

15.    Furthermore, Plaintiff OEMs have a constitutional right to challenge unlawful standards and petition both the judiciary and the political branches for redress.  But California has attempted to unconstitutionally constrain those rights in its efforts to insulate itself from lawful challenges to its actions.  In that regard, the Clean Truck Partnership prohibits Plaintiff OEMs—as well as other manufacturer signatories—from challenging CARB's standards or from filing amicus briefs in support of such challenges, and California officials have stated that OEMs that do so will face repercussions. Plaintiff OEMs thus have been irreparably harmed as California officials infringe their constitutional free speech rights.

16.    Plaintiff OEMs bring this civil action for declaratory and injunctive relief with the goal of clarifying and establishing the regulatory obligations that they must follow to lawfully offer products for sale in California and the various opt-in states, and to prevent California officials from violating their constitutional rights.  An expeditious decision is essential for the OEMs.

## JURISDICTION AND VENUE

17.    This is an action for declaratory and injunctive relief brought under the Supremacy Clause of the United States Constitution (including in reliance on this Court's equitable powers under *Ex parte Young*, 209 U.S. 123 (1908)), and under 42 U.S.C. § 1983.  Defendants California Air Resources Board and Steven S. Cliff, in his official capacity as the Executive Officer of the California Air Resources Board (collectively, "CARB"), are charged with implementing and enforcing the standards

and regulations at issue. Defendant Gavin Newsom, in his official capacity as the Governor of California, is charged with enforcing state law and has directed CARB to take actions related to enforcement of the state standards and regulations discussed herein. This Court has jurisdiction to grant the relief sought in this action under 28 U.S.C. §§ 1331, 1343(a)(3), 1367, 2201, and 2202.

18.    Pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367, this action further seeks a declaration that CARB's recent actions to force OEMs into complying with its preempted standards and regulations and to restrict the speech of Plaintiff OEMs and other companies impacted by its actions violate the California Constitution and constitute underground regulations in violation of the California Administrative Procedure Act, Cal. Gov. Code §§ 11340–11361; *see* Cal. Civ. Code § 52.1 ("[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California]" may sue the persons who violated their rights for declaratory, injunctive, and monetary relief).

19.    Venue is proper in this District under 28 U.S.C. § 1391(b) because all Defendants maintain an office and conduct their official duties within this judicial district, and/or a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## THE PARTIES

20.    Plaintiff Daimler Truck North America LLC is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business in the State of Oregon.

21.    Plaintiff International Motors, LLC is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois.

22.    Plaintiff PACCAR Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Washington.

23.    Plaintiff Volvo Group North America LLC is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business in the State of North Carolina.

24.    Each Plaintiff OEM designs, develops, manufactures, and sells heavy-duty trucks.

Plaintiff OEMs each offer heavy-duty trucks in California and in all states that have opted into California's rules under 42 U.S.C. § 7507. These vehicles commonly sell for well over $100,000 when sold at retail in California, and many thousands of Plaintiff OEMs' heavy-duty trucks are sold in California and other opt-in states each year.

25. Under CARB's regulations, all Plaintiff OEMs are subject to CARB's enforcement of emissions standards for new motor vehicles and new motor vehicle engines. In addition, as a regulator, CARB asserts that Plaintiff OEMs (and other manufacturer signatories) are also contractually bound to comply with the now-preempted state law emissions standards pursuant to the Clean Truck Partnership. This use of the Clean Truck Partnership, a regulatory partnership originally designed to harmonize federal and state law, is an impermissible attempt to enforce preempted standards under the Clean Air Act. As a result of CARB's attempts to enforce these unlawful state standards, Plaintiff OEMs currently suffer and will continue to suffer concrete and particularized injuries, which can be redressed only by this Court's order adjudicating Plaintiff OEMs' obligations under federal and California law. Plaintiff OEMs' injuries are fairly traceable to CARB's conduct and would be redressed by a favorable decision.

26. Defendant California Air Resources Board is a branch of the California Environmental Protection Agency, which is an agency of the State of California. The California Health and Safety Code authorizes CARB to promulgate and enforce regulations to control emissions from new motor vehicles and engines. CARB is headquartered in Sacramento, in the State and Eastern District of California, and held meetings in Sacramento, California regarding Advanced Clean Trucks, Omnibus Low NOx, Advanced Clean Cars II, and upon information and belief, performed official duties related to other regulatory actions discussed herein in Sacramento, California.

27. Defendant Steven Cliff is the Executive Officer of the California Air Resources Board. The Executive Officer of CARB is authorized to implement and enforce motor vehicle emission standards in the State of California. This suit is brought against the Executive Officer in his official capacity. The Executive Officer maintains an office in Sacramento, in the State and Eastern District of California, and he performs his official duties in Sacramento, California.

28.     Defendant Gavin Newsom is the Governor of the State of California.  In addition to directing CARB to enforce the rules at issue here, Governor Newsom has threatened through Executive Order detrimental regulatory treatment and exclusion from government purchase and incentive programs for vehicle and engine manufacturers that do not follow the Clean Truck Partnership or do not certify their products in compliance with preempted CARB standards.  This suit is brought against the Governor in his official capacity.  The Governor maintains an office in Sacramento, in the State and Eastern District of California, and performs his official duties in Sacramento, California.

## FACTUAL AND LEGAL BACKGROUND

### I.   The Clean Air Act and California Regulation of Heavy-Duty Vehicle Emissions

29.     Under Section 202(a) of the Clean Air Act, the EPA Administrator "shall by regulation prescribe … standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare."  42 U.S.C. § 7521(a)(1).

30.     In enacting the Clean Air Act, Congress sought to construct a nationwide regulatory regime focused on limiting emissions of certain pollutants by new motor vehicles.  42 U.S.C. § 7521.  Congress entrusted this endeavor to EPA and expressly preempted State enforcement of emissions standards or the imposition of State certification requirements.  *See* 42 U.S.C. § 7543(a).  Section 209(a) demonstrates Congress's clear intent to preempt States from adopting or enforcing standards relating to the control of emissions from new motor vehicle engines.  *Id.*

31.     Specifically, Section 209(a) expressly and unequivocally states that "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."  *Id.*  In addition, Section 209(a) prohibits states from requiring "certification, inspection, or any other approval relating to the control of emissions … as a condition precedent" to initial sale or registration of a new vehicle

or engine. *Id.*

32.    Aware of the unique air pollution concerns California faces, however, Congress also included Section 209(b), which allows EPA to grant a waiver of preemption so California can craft its own regulations under EPA's guidance. 42 U.S.C. § 7543(b). Section 209(b) of the Clean Air Act gives EPA the authority to issue a "waiver" to California to adopt and enforce its own vehicle emissions standards that are "at least as protective of public health and welfare as applicable Federal standards," if certain statutory criteria are met. 42 U.S.C. § 7543(b). Section 177 of the Clean Air Act allows other states to adopt California's standards in lieu of the federal standards—in other words, to opt-in to the California program in an identical manner. 42 U.S.C. § 7507. Absent an EPA-approved waiver, the adoption or enforcement of any state law regulating mobile source emissions is expressly preempted under federal law. 42 U.S.C. § 7543(a).

33.    A preemption waiver granted by EPA under Section 209(b) also allows California to impose a requirement for "certification … or any other approval relating to the control of emissions … as a condition precedent to sale"—a practice otherwise forbidden by the second clause of Section 209(a). 42 U.S.C. § 7543(a). EPA implemented this statutory prohibition by allowing CARB to mandate conditions precedent where the state has received a preemption waiver for the emission standards applicable to a particular class of vehicles (as opposed to requiring CARB to seek separate preemption waivers for conditions precedent). Final Agency Action Regarding the Motor Vehicle Provisions of the Clean Air Act, Item 6 (Conditions Precedent to the Sale, Titling, or Registration of New Motor Vehicles in California), 50 Fed. Reg. 35,122, 35,123 (Aug. 29, 1985); *see also* California State Motor Vehicle Pollution Control Standards; Waiver of Federal Preemption; Notice of Determination, 55 Fed. Reg. 28,825 (July 13, 1990) (explaining that prior EPA preemption waivers for specific "classes of vehicles and engines, based on California's standards and/or accompanying enforcement procedures, removes the prohibitions of section 209(a) regarding … conditions precedent for those classes"). Under the California Health and Safety Code, these conditions precedent include a requirement that new vehicles and engines receive approval from CARB before they are sold in the state, known as certification. Cal. Health & Safety Code, §§ 43151 & 43512; *see also* § 1036.801 "Certification," California

Exhaust Emission Standards and Test Procedures for 2004 and Subsequent Model Heavy-Duty Diesel Engines and Vehicles (Sept. 9, 2021) ("September 2021 CARB Heavy-Duty Test Procedures") (providing definition of "Certification" for purposes of CARB regulatory program), *incorporated by reference into* Cal. Code Regs. tit. 13, § 1956.8(b). When successful, certification culminates in an order from CARB approving a particular vehicle or engine for sale in California during that model year. *See* § 1036.801 "Certificate of Conformity," September 2021 CARB Heavy-Duty Test Procedures (defining the certification document issued by CARB). Opt-in states may also require that manufacturers receive California certification before offering vehicles or engines in their states. *See, e.g.*, 310 Mass. Code Regs. 7.40 ("No person or other entity, including manufacturers, shall … deliver for sale … a new vehicle … in or into Massachusetts unless the vehicle has received a California ARB Executive Order for all applicable requirements of Titles 13 and 17 [California Code of Regulations] ….."). Selling vehicles in California without a CARB certification is a serious offense that subjects the seller to substantial civil penalties. *See* Cal. Health & Safety Code § 43154(a)(1).

34. Despite not having waivers to adopt regulations as required by Section 209(a), relying on *the potential* to obtain preemption waivers from EPA, between 2021 and 2023, CARB adopted a series of standards applicable to the vehicles and engines manufactured by Plaintiff OEMs—including larger trucks, such as tractor-trailers, categorized as "heavy-duty" under the regulations, and more moderately sized, generally commercial vehicles categorized as "medium-duty." But now, all of CARB's standards applicable to trucks and engines are preempted by federal law, either because the specific regulatory program was explicitly preempted due to Congressional action or because CARB acted without a waiver, and in fact, never received a waiver for the program at all.

35. *First*, as explained further below, the President has signed joint resolutions of Congress that expressly preempted the following standards under the Clean Air Act:

a. The **Advanced Clean Trucks Regulation** requires manufacturers to sell increasing percentages of zero-emissions vehicles year-over-year, or to buy credits from other entities that exceeded their own percentage obligations. *See* Cal. Code Regs. tit. 13, §§ 1963.1, 1963.2. In April 2023, under the Biden Administration, EPA granted a

waiver request for the then-current version of CARB's Advanced Clean Trucks, along with three other regulatory programs for which CARB had requested waivers (heavy-duty emission warranty requirements, zero-emission airport shuttles, and certification of zero-emission powertrains).  Notice of Decision, Advanced Clean Trucks Waiver of Preemption, 88 Fed. Reg. 20688, 20689 (Apr. 6, 2023).  As discussed further below, on June 12, 2025, the President signed legislation disapproving and abrogating this waiver for the Advanced Clean Trucks and other standards.  At signing, the President stated that Advanced Clean Trucks and the other standards covered by the invalidated waiver were "fully and expressly preempted by the Clean Air Act and cannot be implemented."  *See* Statement by the President, The White House (June 12, 2025) ("June 12 Statement by the President"), https://perma.cc/Y4JJ-4HLS.[4]

> b.      The **Omnibus Low NOx Regulation** requires manufacturers to reduce heavy-duty vehicle emissions of nitrogen-oxide (NOx) and particulate matter.  *See* Cal. Code Regs. tit. 13, § 1956.8.  This regulatory package also included extensive changes to other CARB standards affecting heavy-duty engines and vehicles.  *See* CARB, Final Regulation Order, Title 13, at 3, Docket No. EPA-HQ-OAR-2022-0332, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005.[5]  In January 2025, just before the inauguration of the new President, EPA granted a waiver request

---

[4] Despite Congress withdrawing the waiver of preemption that authorized Advanced Clean Trucks under the Clean Air Act, CARB recently approved new amendments to those standards changing the availability of credits used for compliance with EV mandates.  *See* CARB, CARB approves amendments to clean truck standards to provide flexibility while maintaining emissions benefits (July 24, 2025), https://perma.cc/8D4R-A26K.  CARB cannot adopt or attempt to enforce the amended version of Advanced Clean Trucks until CARB receives a waiver from EPA under Section 209 of the Clean Air Act.  And because EPA cannot issue a waiver for Advanced Clean Trucks without a subsequent act of Congress, *see* 5 U.S.C. § 801(b)(2), the Advanced Clean Trucks amendments are also fully preempted under Section 209.

[5] Noting that the rulemaking amends the following sections of title 13, California Code of Regulations: 1900,1956.8, 1961.2, 1965, 1968.2, 1971.1, 1971.5, 2035, 2036, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2121, 2123, 2125, 2126, 2127, 2128, 2129, 2130, 2131, 2133, 2137, 2139, 2140, 2141, 2142, 2143, 2144, 2145, 2146, 2147, 2148, 2149, 2423, and 2485; and adopts title 13, California Code of Regulations, sections 2139.5, 2166, 2166.1, 2167, 2168, 2169, 2169.1, 2169.2, 2169.3, 2169.4, 2169.5, 2169.6, 2169.7, 2169.8, and 2170.

14

for CARB's Omnibus Low NOx—covering both the criteria pollutant standards and the other regulatory modifications included in the waiver submission.  Notice of Decision, Omnibus Low NOx Regulation Waiver of Preemption, 90 Fed. Reg. 643 (Jan. 6, 2025). As discussed further below, on June 12, 2025, the President signed legislation disapproving and abrogating that waiver.  At signing, the President stated that Omnibus Low NOx was "fully and expressly preempted by the Clean Air Act and cannot be implemented."  *See* June 12 Statement by the President.

   c.  The **Advanced Clean Cars II Regulation** primarily applies to light-duty vehicles (*e.g.*, cars and pickup trucks) but includes modifications to several other regulatory programs that apply to heavy-duty vehicles and engines.  For heavy-duty vehicles and engines, Advanced Clean Cars II modified standards for evaporative emissions, Cal. Code Regs. tit. 13, § 1976, and refueling emissions, Cal. Code Regs. tit. 13, § 1978.  *See* Advanced Clean Cars II, Cal. Off. of Admin. Law Approval ("ACC II OAL Approval"), at 227-30, Docket No. EPA-HQ-OAR-2023-0292, https://www.regulations.gov/document/EPA-HQ-OAR-2023-0292-0016.  The on-board diagnostics standards applicable to medium-duty vehicles were also modified in Advanced Clean Cars II.  Cal. Code Regs. tit. 13, § 1968.2, ACC II OAL Approval at 284–304.  EPA approved the waiver for Advanced Clean Cars II, including the changes affecting heavy-duty vehicles and engines, on January 6, 2025.  Notice of Decision, Advanced Clean Cars II Waiver of Preemption, 90 Fed. Reg. 642 (Jan. 6, 2025).  As discussed further below, on June 12, 2025, the President signed legislation disapproving and abrogating this waiver.  In a statement at signing, the President stated that Advanced Clean Cars II was "fully and expressly preempted by cannot be implemented."  *See* June 12 Statement by the President.  As a result, the evaporative emissions and refueling emissions standards applicable to heavy-duty vehicles and the medium-duty on-board diagnostics standards, which were included in Advanced Clean Cars II, now lack a preemption waiver for the version of the standards currently enacted in California.  These standards are thus preempted

1    and invalid.

2    36.    *Second*, California has sought to implement certain standards for which it has never

3    obtained an EPA waiver of federal preemption.

4        a.    The **Advanced Clean Fleets Regulation** requires, among other things,

5    that manufacturers exclusively sell zero-emission vehicles in California beginning in

6    model year 2036.  Cal. Code Regs. tit. 13, § 2016.  CARB submitted a waiver request

7    for Advanced Clean Fleets to EPA in July 2024; it then withdrew the request in January

8    2025.  *See* Withdrawal of California's Request for a Waiver (Jan. 13, 2025), Docket No.

9    EPA-HQ-OAR-2023-0589, https://www.regulations.gov/docket/EPA-HQ-OAR-2023-

10    0589.[6]  EPA has not granted a preemption waiver permitting CARB to implement the

11    Advanced Clean Fleets Rule.  As a result, it is preempted by the Clean Air Act.

12        b.    The **"Phase 2" Greenhouse Gas Regulations** reduced the greenhouse

13    gas (GHG) emissions standards for heavy-duty vehicles and partially aligned Califor-

14    nia's GHG standards for 2021 and subsequent model years with the federal Phase 2

15    Greenhouse Gas standards albeit with some differences.  *See* CARB, Omnibus Regula-

16    tion Clean Air Act Authorization Request Support Document, 37 (Jan. 31, 2022),

17    https://perma.cc/7GSJ-QTBJ.  CARB previously signaled its intent to submit a waiver

18    request to EPA for its Phase 2 GHG emissions standards, but there is no public record

19    that CARB has submitted such a request.  *See id.* at 37 n.38 ("CARB will submit a

20    separate waiver request for the California Phase 2 GHG Regulation"); EPA, Vehicle

21    Emissions California Waivers and Authorizations, https://www.epa.gov/state-and-lo-

22    cal-transportation/vehicle-emissions-california-waivers-and-authorizations.    Despite

---

[6] More recently, CARB stated in federal court that it intends to propose repealing most of Advanced Clean Fleets to settle a pending challenge to those rules, although it has not indicated that it will repeal the model year 2036 100% zero-emission vehicle sale requirement most relevant here.  Stipulation and Request to Hold Case in Abeyance Pending Outcome of Rulemaking, *Cal. Trucking Ass'n v. Cliff*, No. 2:23-cv-02333 (E.D. Cal. Apr. 25, 2025).  A CARB Member explained, "without federal approval, the regulation would have been a legal zombie: dead on its feet, but still scaring the living."  Dean Florez, Why California recently revised its clean air regulations for zero-emission trucks, The Sacramento Bee (May 6, 2025), https://www.sacbee.com/opinion/op-ed/article305738891.html.

the lack of preemption waiver, CARB's Phase 2 Greenhouse Gas emissions standards facially apply to manufacturers beginning in model year 2021.  *See* Cal. Code Regs. tit. 17, § 95663.  In one of CARB's recent directives to industry, discussed further below, CARB stated that it "will continue to accept and process certification applications … under the certification requirements" of the multiple CARB regulations, including the Phase 2 Greenhouse Gas program.  May 23, 2025 MAC at 3.

   c.  The **Heavy-Duty On-Board Diagnostic Regulations** apply to the self-diagnostic systems incorporated into the computers of vehicles to monitor vehicle and engine components that can impact emissions performance.  *See* Cal. Code Regs. tit. 13, § 1971.1.  California has not obtained a waiver for its standards at section 1971.1 since 2016, which only covered amendments to the rule through 2013.  *See* 81 Fed. Reg. 78,149 (Nov. 7, 2016).  CARB amended the standards in 2016[7] and 2019.[8]  Because these later amendments lack waivers, no preemption waiver exists that covers the on-board diagnostic standards currently adopted under California law.

## II. Regulatory Uncertainty and the Clean Truck Partnership

  37. As California promulgated the aforementioned standards, the heavy-duty truck and engine manufacturers raised serious concerns about the legality of CARB's actions and the technical feasibility of meeting CARB's standards within the limited timeline allotted.  Among others, two objections are particularly salient here.

  38. First, Omnibus Low NOx was dramatically different from the federal criteria pollutant emissions standards.  As EPA noted in its rulemaking for criteria pollutant standards, Omnibus Low NOx imposed emissions standards "even more stringent" than the *most* stringent rules considered by

---

[7] CARB, On-Board Diagnostic Systems II, https://perma.cc/TV8H-HKLB (documenting adoption of standards on July 25, 2016).

[8] CARB, Heavy-Duty On-Board Diagnostic System Requirements 2018, https://perma.cc/P65V-YR8Q (documenting adoption of standards on Oct. 3, 2019).

EPA.[9]  On behalf of its members, the industry trade association (the Truck and Engine Manufacturers Association (EMA)) expressed concerns during CARB's rulemaking process that the Omnibus Low NOx emissions standards were unachievable, urging CARB to forego Omnibus Low NOx and instead "work in good faith with all stakeholders to develop a cost-effective *nationwide* [heavy-duty vehicle and engine] low-NOx program to take effect in 2027."  EMA, Comments on CARB's Heavy-Duty Engine and Vehicle Omnibus Regulation and Associated Amendments (Aug. 13, 2020) at 4 (emphasis added).[10]

      39.    Second, product development in the heavy-duty truck and engine requires long lead times—a fact so well-recognized that the Clean Air Act itself specifically requires at least four years of lead time and a three-year regulatory stability period for heavy-duty emissions standards.  42 U.S.C. § 7521(a)(3)(C).  But when CARB promulgated new emissions standards in Omnibus Low NOx, it did not provide the requisite statutory lead time.  Instead, CARB adopted the rules on December 22, 2021, which then became effective in model year 2024—providing only two years of lead time.[11]

      40.    Consequently, EMA filed suit against CARB asserting that Omnibus Low NOx did not comply with the Clean Air Act's mandated lead time.  Complaint at ¶ 3, *Engine Mfrs. Ass'n v. Cal. Air Resources Bd.*, No. 2:22-cv-03663-JFW-PVC (C.D. Cal. May 27, 2022).  When EPA commenced a waiver proceeding regarding Omnibus Low NOx and accepted comments on the lead time issue, EMA withdrew its lawsuit.[12]

      41.    Shortly thereafter, CARB publicly wrote to EMA stating that in recognition of EMA

---

[9] *See* Final Rule, Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4296, 4301 (Jan. 24, 2023).

[10] Available for download at https://www.arb.ca.gov/lispub/comm/iframe_bccomdisp.php?listname=hdomnibus2020&comment_num=8&virt_num=7.

[11] Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C) (establishing model year 2024-2026 standards); 2021, No. 53-Z, Cal. Regulatory Notice Reg., 1809 (Dec. 31, 2021), https://perma.cc/9JCQ-3NHA (indicating adoption date for revised California Code of Regulations title 13, section 1956.8); CARB, Final Regulation Order, Title 13, at 7-11, Docket No. EPA-HQ-OAR-2022-0332, available for download at https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005.

[12] Press Release, EMA, Truck & Engine Manufacturers Withdraw Lawsuit on Leadtime Requirement for Heavy-Duty Emissions Standards (Aug. 11, 2022), https://perma.cc/LZ3X-RJJZ.

dropping its litigation, CARB sought "discussion" with EMA and was open to "exploring areas of alignment between state and federal combustion rules"—a potential path out of the regulatory quagmire for heavy-duty truck and engine manufacturers.[13]  Nine months later, in July 2023, CARB announced the Clean Truck Partnership, a document styled as an "Agreement" between a regulator—CARB—on one hand, and a regulated industry—heavy-duty truck and engine manufacturers, along with their trade association EMA—on the other.[14]  The Clean Truck Partnership outlined a plan for CARB to undertake several of the regulatory actions sought by industry.  First, CARB stated that it would provide four-year lead-time for future emission standards, as EMA had pursued in its litigation against CARB.  Ex. A (CTP), ¶ 5.  Second, CARB agreed to propose amendments that would harmonize Omnibus Low NOx emissions standards with EPA's federal standards, subject to certain limited exceptions—in effect, agreeing to a more achievable NOx standard that would apply nationwide, as EMA had proposed during the Omnibus Low NOx rulemaking.  Ex. A (CTP), ¶¶ 1(iii), 7.  And third, CARB agreed to work with industry to try to make the mandates contained in Advanced Clean Trucks more feasible.  Ex. A (CTP), App'x C, ¶ B.  The Clean Truck Partnership was thus intended to help harmonize and facilitate compliance with state and federal heavy-duty vehicle emission standards.

42.    Although the document was labeled as an "agreement," the Clean Truck Partnership imposed new regulatory requirements on manufacturers.  For this reason, the U.S. Department of Justice has described the "agreement" as an independent "regulatory mechanism by which CARB attempts to enforce" its preempted emissions standards.  Ex. B (Aug. 7, 2025 DOJ Letter), at 2.  The Clean Truck Partnership dictated that under certain circumstances where CARB was found to lack authority for Advanced Clean Trucks, Omnibus Low NOx, or the 100 percent zero-emission vehicle sales requirement of Advanced Clean Fleets, manufacturers would still have to comply with  those standards.  Ex. A (CTP), ¶ 2.  Next, the Clean Truck Partnership provided that "California will maintain its certification program," asserting CARB's authority to impose certification requirements on manufacturers.

---

[13] Letter from Steven S. Cliff, Executive Officer, CARB, to Jed R. Mandel, President, EMA (Oct. 14, 2022), https://perma.cc/3RQF-XXV2.

[14] Press Release, CARB and truck and engine manufacturers announce unprecedented partnership to meet clean air goals (July 6, 2023), https://perma.cc/85J7-U75K.

Ex. A (CTP), App'x B, at 1. By creating a regulatory structure that manufacturers had to follow even when CARB had lost federal authority due to "the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations," Ex. A (CTP), ¶ 2, the Clean Truck Partnership ostensibly became a buttress for the new CARB emissions standards and certification obligations applicable to the highly regulated truck industry. Underscoring that the Clean Truck Partnership is fundamentally a regulatory scheme rather than a private agreement, the Clean Truck Partnership does not provide any enforcement mechanism or private right of action among the industry signatories for noncompliance—EMA and manufacturers cannot impose penalties on each other, nor can they deny each other certifications to sell trucks or engines.

43. Furthermore, the Clean Truck Partnership created a new category of regulatory restrictions: limits on the rights of manufacturers and EMA to speak freely and petition the government. The advocacy-limiting mandates that CARB included in the Clean Truck Partnership prohibit EMA and manufacturers from challenging enumerated CARB standards, including Omnibus Low NOx, Advanced Clean Trucks, and the Advanced Clean Fleets 100 percent zero-emission vehicle sales requirement. To that end, the Clean Truck Partnership dictates: "[manufacturers] will not (i) challenge CARB's issuance of the regulations set forth in Appendix B[15]; (ii) file a Petition for Review or otherwise challenge any U.S. EPA waiver or authorization granted for such regulations; (iii) file amicus briefs supporting challenges to such waivers or authorizations, or such regulations; or (iv) support stay motions or similar motions practice challenging such waiver or authorization decisions, or such regulations." Ex. A (CTP) ¶ 4. As a result, the Clean Truck Partnership purports to insulate the State and its emissions standards from legal challenges.

44. The Clean Truck Partnership further limits "advocacy" by EMA and manufactures in any state that is considering adopting CARB's Omnibus Low NOx or Advanced Clean Trucks. Ex. A (CTP) App'x D, ¶ A. In that regard, it explicitly imposes a requirement on EMA and manufacturers to

---

[15] Omnibus Low NOx, Advanced Clean Trucks, the 100 percent zero-emission sales requirement in Advanced Clean Fleets, the Zero Emission Airport Shuttle regulation, the Zero Emission Powertrain Certification Procedure and its incorporated standards and test procedures, the 2018 Heavy-Duty Warranty Amendments, and the Standards and Test Procedures for 2004 and Subsequent Model Year Heavy-Duty Diesel Engines and Vehicles (as amended April 18, 2019).

"support or not oppose the adoption of CARB's Omnibus [Low NOx] regulations in any prospective Section 177 states" for model year 2027 and later, and to remain "neutral … in response to any prospective Section 177 States' proposals to consider adopting CARB's [Advanced Clean Trucks] regulations."  Ex. A (CTP) App'x D, ¶¶ C, E.

45.    In sum, through the Clean Truck Partnership, CARB sought to impose industry-wide emissions standards and certification requirements, in a manner that would insulate those standards from litigation challenging CARB's regulatory authority, from any future industry criticism, and from any potential industry-supported judicial review.  CARB imposed the Clean Truck Partnership in its capacity as an industry regulator, not in its capacity as a market participant.

46.    In December 2024, the American Free Enterprise Chamber of Commerce brought federal litigation against CARB and the signatories to the Clean Truck Partnership (including Plaintiff OEMs), seeking a declaratory judgment that the Clean Truck Partnership is preempted and unlawful and an order enjoining the Clean Truck Partnership's enforcement.  *See Am. Free Enter. Chamber of Com. v. Engine Mfrs. Ass'n*, No. 3:24-cv-50504 (N.D. Ill. Dec. 16, 2024).  Responsive pleadings currently are due August 14, 2025.

### III.  The Federal Government Enacts Law Preempting CARB's Standards

47.    CARB and the federal government have now adopted diametrically opposed positions about what law, regulations, and standards apply to heavy-duty truck manufacturers—including whether the Clean Truck Partnership is a lawful mechanism for CARB to compel compliance with now-preempted California standards.

48.    As explained above, California's authority to regulate heavy-duty vehicle and engine emissions depended on Clean Air Act preemption waivers granted by EPA.  In June 2025, the President signed a Joint Resolution of Congress under the Congressional Review Act that expressly stripped California's preemption waivers for Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II.  In response, CARB now points to the Clean Truck Partnership as a source of its ongoing authority to enforce compliance with its standards, while the federal government expressly includes

the Clean Truck Partnership within the category of preempted regulatory actions.

49.     On February 19, 2025, EPA submitted the waiver decisions for Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II to Congress as rules subject to the Congressional Review Act.  *See* 5 U.S.C. §§ 551(4), 804(3).  The Congressional Review Act enables Congress to enact joint resolutions invalidating new rules adopted by federal agencies within a review period triggered upon the submission of the rule to Congress.  5 U.S.C. §§ 801–808.  In May 2025, both chambers of Congress voted to pass joint resolutions invalidating the Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II waiver decisions.  *See* H.R.J. Res. 87, 119th Cong. (2025); H.R.J. Res. 88, 119th Cong. (2025); H.R.J. Res. 89, 119th Cong. (2025).  President Trump signed the joint resolutions on June 12, 2025.  *See* Statement by the President, The White House (June 12, 2025) ("June 12 Statement by the President"), https://perma.cc/M4Q4-28BM.  Once Congress passed and the President signed the measures repealing the recent EPA waivers, CARB lost authority under the Clean Air Act to adopt and enforce its standards.  *See Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2131 n.1 (2025) ("Acting under the Congressional Review Act, Congress recently passed and the President signed legislation to block … California regulations.").

50.     As a result, the federal government has taken the position that Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II are "fully and expressly preempted by the Clean Air Act and cannot be implemented."  June 12 Statement by the President; *see also* 5 U.S.C. § 801(b)(1).  The President stated that the resolutions make clear that "California's attempts to impose an electric vehicle mandate, regulate national fuel economy, and regulate greenhouse gas emissions are not eligible for waivers of preemption under section 209 of the Clean Air Act."  June 12 Statement by the President.  Further, the Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II waivers cannot be reissued in "substantially the same" form unless authorized later by another legislative action by Congress.  *Id.*; 5 U.S.C. § 801(b)(2).  Therefore, pursuant to federal law, CARB's Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II are now preempted and void ab initio and have no effect.  *See Diamond Alt. Energy*, 145 S. Ct. at 2135 n.3 (explaining that "the result from setting aside EPA's approval of the California regulations" is that "California may not

enforce its greenhouse-gas emissions limits and electric-vehicle mandate for new vehicle fleets").

51.    Furthermore, on August 7, 2025, the U.S. Department of Justice sent a letter to heavy-duty truck and engine manufacturers reiterating the federal government's position that the Congressional Review Act resolutions preempted CARB's standards, and further stating that the Clean Truck Partnership is itself preempted as an attempt to enforce emissions standards that lack a waiver under Section 209(b) of the Clean Air Act.  As DOJ writes, "The Clean Truck Partnership … compels manufacturers to comply with CARB's ongoing enforcement of the Omnibus [Low NOx] and [Advanced Clean Trucks] regulations[.]"  Ex. B (Aug. 7, 2025 DOJ Letter), at 2.  In the letter, DOJ commands Plaintiff OEMs to "immediately cease and desist your compliance with both the Clean Truck Partnership and its preempted state vehicle emission regulations."  *Id.*

### IV.  California Continues to Enforce Preempted Emissions Standards

52.    And yet, while the federal government demands that Plaintiff OEMs do one thing, California directs OEMs to do another.  California has taken the position that Congress's waiver-disapproval resolutions were "reckless, politically motivated, and illegal attacks on California,"[16] and has made clear that it will continue to attempt to enforce the requirements included in Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II, including the vehicle and engine certification requirements.

53.    On June 12, 2025, California sued EPA and the President seeking an order "declar[ing] that the [Congressional Review Act] Resolutions have no effect on the status or enforceability of state emissions control programs."  Complaint at 4, *California v. EPA*, No. 4:25-cv-04966 HSG (N.D. Cal. June 12, 2025).  California alleges, among other things, that Congress's actions were *ultra vires*, violated the Congressional Review Act and the Administrative Procedures Act, and flouted the Constitution's structural guarantees regarding separation of powers and federalism.  *Id.* at 27–39.  The State has

---

[16] *See* Press Release, Governor Gavin Newsom, Assault on California continues:  Governor Newsom sues Trump over illegal attempt to revoke state's clean air policies (June 12, 2025), https://perma.cc/L3Q8-S8QJ/.

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
CASE NO.

not sought a temporary restraining order or preliminary injunction. The initial case management conference is currently set for September 16, 2025, and as of this filing no further substantive court dates have been set in that case.

54. While its legal dispute is pending, California has stated that it will continue to enforce the preempted emissions standards included in Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II, and require manufacturers to certify regulatory compliance before selling vehicles in California. To that end, California has repeatedly asserted that it will use the Clean Truck Partnership, which was intended to harmonize compliance with state and federal law, to compel the industry to comply with now-preempted California emissions standards over federal law.

55. CARB cannot use the Clean Truck Partnership as a backdoor to enforce California's preempted emissions standards. Even if it could, CARB has not met—and indeed cannot meet—several of its own obligations under the Clean Truck Partnership. As a result, CARB cannot use the Clean Truck Partnership to force the industry to comply with California's emissions standards.

56. For one thing, the Clean Truck Partnership requires CARB to substantively amend Advanced Clean Trucks and Omnibus Low NOx, largely for the purpose of harmonization of state and federal emissions standards. *See* Ex. A (CTP) App'x A, B. As explained above, however, the President signed Joint Resolutions of Congress under the Congressional Review Act that expressly revoked California's preemption waivers for Advanced Clean Trucks and Omnibus Low NOx. Following the signature of these Joint Resolutions into law, pursuant to the Congressional Review Act, EPA cannot reissue CARB's waivers for those standards without a subsequent act of Congress expressly permitting such action. 5 U.S.C. § 801(b)(2). As a result, CARB is statutorily foreclosed from meeting its obligation under the Clean Truck Partnership to amend Advanced Clean Trucks and Omnibus Low NOx. If CARB tries to do so, such attempts will be meaningless as California would be preempted from enforcing those rules, amended or otherwise. In particular, CARB's commitment in the Clean Truck Partnership to align the emissions standards in Omnibus Low NOx with EPA's corresponding emissions standards is now impossible. CARB has not, and cannot, fulfill this obligation consistent with federal law.

57.    For another, when CARB signed the Clean Truck Partnership, it also committed "to work together" with manufacturers "to resolve any issues that may warrant regulatory amendments to either the Omnibus or ACT regulations." Ex. A (CTP) App'x D, ¶ G. But CARB recently amended Advanced Clean Trucks without engaging with the industry in the manner contemplated by Clean Truck Partnership or addressing the industry's objections and concerns filed during the comment process. *See* EMA, Comments on CARB's Proposed Amendments to the Advanced Clean Trucks Regulations and the Zero-Emission Powertrain Certification Test Procedure (July 14, 2025).[17] CARB has also refused to work with the manufacturers to resolve issues related to infrastructure and customer demand that undermine the viability of Advanced Clean Trucks. Among other things, CARB has proposed to withdraw the sections of Advanced Clean Fleets that would have required trucking fleets to purchase zero-emission trucks. *See supra* note 6. In other words, CARB has removed the buy-side requirement corresponding to the sales mandates imposed on manufacturers by Advanced Clean Trucks, thereby making manufacturer compliance with Advanced Clean Trucks even more challenging.

58.    Furthermore, CARB did not abide by its commitment in the Clean Truck Partnership to provide manufacturers with three years to make up a shortfall in the proportion of zero-emission vehicles required to be sold pursuant to Advanced Clean Trucks. The Clean Truck Partnership stated that CARB "will propose to modify [Advanced Clean Trucks] to lengthen the number of years a manufacturer has to make up a deficit from one year to three years." Ex. A (CTP) App'x C, ¶ B. But the standards as adopted did not provide the promised three-year make-up period. Instead, it only allowed manufacturers to carry over 30 percent of the deficit from year-to-year—a material restriction not contemplated by the Clean Truck Partnership. *See* Cal. Code Regs. tit. 13, § 1963.3(b) (providing that "[i]f the net deficit balance is more than 30 percent of the deficits generated from the most recent model year, the net deficit must be reduced to below 30 percent by the end of the first and second years of the

---

[17] Available to download at https://www.arb.ca.gov/lispub/comm/iframe_bccomdisp.php?listname=2025actpooling&comment_num=523&virt_num=11. *See also* Press Release, CARB approves amendments to clean truck standards to provide flexibility while maintaining emissions benefits (July 24, 2025), https://perma.cc/8D4R-A26K.

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
CASE NO.

makeup period.").

59.    Because CARB has not met numerous commitments under the Clean Truck Partnership, CARB is foreclosed from using the Clean Truck Partnership to force the industry to comply with CARB's preempted standards.

60.    Notwithstanding the foregoing, CARB has stated its intent to enforce its preempted standards in multiple ways, each of which are independently preempted by the Clean Air Act, which, again, expressly preempts not only the adoption of state emissions standards for which there is no federal waiver, but "attempt[s] to enforce" preempted standards as well.  42 U.S.C. § 7543(a).  Furthermore, those attempts to enforce purport to rely on the Clean Truck Partnership—further underscoring the status of that document as a regulation in and of itself, which CARB is using, in effect, to circumvent the Clean Air Act and to enforce the preempted state standards.

61.    **Manufacturers Advisory Correspondence.**  On May 23, 2025, CARB issued a Manufacturers Advisory Correspondence ("MAC") document styled as "Regulatory Guidance" in response to the Congressional resolutions disapproving the prior preemption waivers. May 23, 2025 MAC.  The directive states that the "Congressional resolutions of disapproval … are the result of illegal actions and are thus invalid," and that the disapproved standards remain "applicable to manufacturers."  *Id.* at 1.  The MAC goes on to state that CARB "will continue to accept and process certification applications," justifying this as "necessary" to "facilitate meeting the commitments of the Clean Truck Partnership."  *Id.* at 2; *see also id.* at 3 ("CARB will continue to accept and process certification applications for model year 2025 and 2026 model year medium- and heavy-duty vehicles under the certification requirement of the Heavy-Duty Engine and Vehicle Omnibus regulation[.]").  California has thus taken the position that compliance with CARB's emissions standards and their related conditions precedent to sale are required by the Clean Truck Partnership, even though the underlying regulations establishing those emissions standards have been preempted.  This further demonstrates that the Clean Truck Partnership itself operates as a regulation, as well as an attempt to enforce CARB's preempted emission standards.

62.    CARB's directive further requires compliance with the preempted standards to "ensure

the requirements of certification are met to enable lawful vehicle sales in California" under the California Health and Safety Code, *id.* at 2, citing statutory provisions that a "person shall not offer for sale … a new motor vehicle … unless the motor vehicle … has been certified" under California law. Cal. Health & Safety Code § 43151.  Notably, violations of this section can incur penalties of up to $48,788 "for each such action."  Cal. Health & Safety Code § 43154(a)(1).[18]  Thus, CARB has threatened to impose substantial fines against any manufacturer who sells vehicles in California without a CARB certificate, again notwithstanding the fact that the Clean Air Act expressly prohibits such certifications in the absence of a waiver.  42 U.S.C. § 7543(a); *see also* CARB, CARB approves amendments to clean truck standards to provide flexibility while maintaining emissions benefits (July 24, 2025), https://perma.cc/8D4R-A26K ("The [May 23, 2025 MAC] explained that CARB would continue accepting and processing certification applications for 2026 models to ensure continuity and enable lawful vehicle sales in California.").

63.    **Executive Order N-27-25.**  On June 12, 2025, Governor Newsom issued Executive Order N-27-25, which described the waiver-disapproval resolutions as part of "President Trump's war on California"[19] and directed CARB to implement the Clean Truck Partnership—which incorporates the emissions standards included in Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II—and report "manufacturer progress towards those commitments" to the Governor semi-annually.  Executive Order N-27-25 stated that manufacturers that continue to certify compliance with California's preempted standards will be "prioritize[d] … in government vehicle procurement decisions," will receive priority "funding" to "support the purchase of zero-emission vehicles" and directed CARB to identify other "opportunities for special considerations and flexibilities for" manufacturers that comply with the preempted standards when crafting future regulations.  Executive Order N-27-25, https://perma.cc/9HZG-EHRV.

---

[18] The statutory penalty is adjusted annually for inflation.  *See* CARB, Memorandum to Enforcement Division Staff, Increase in Maximum Penalties Based on 2024 California Consumer Price Index (Feb. 21, 2025), https://perma.cc/YG4F-9T7Q.

[19] *See* Press Release, Gov. Gavin Newsom, Governor Newsom signs executive order doubling down on state's commitment to clean cars and trucks, kickstarts next phase of leadership (June 12, 2025), https://perma.cc/HHM4-CPXY.

64.     By contrast, none of those privileges or opportunities will be extended to manufacturers who do not follow the standards "regardless of the status of those regulations under federal law." Executive Order N-27-25.  Instead, Executive Order N-27-25 suggests that such manufacturers will be put on California's "manufacturer purchasing restriction list," as indeed California has done to disfavored vehicle manufacturers during a prior dispute over whether California's emissions standards were preempted.  *See*, *e.g.*, David Shepardson, *California to Stop Buying GM, Toyota and Fiat Chrysler Vehicles Over Emissions Fight*, Reuters (Nov. 18, 2019), https://www.reuters.com/article/idUSL2N27Y0HU/ (reporting that Governor Newsom "halt[ed] all purchases of new vehicles for state government fleets from" manufacturers that did not agree with CARB's positions in preemption litigation).  The California Executive Order thus purports to adopt and enforce California's separate state emissions regulatory regime in direct conflict with federal law.

## V.  Plaintiff OEMs are Irreparably Injured as a Result of California's Actions

65.     With the federal government and California taking irreconcilable positions on the enforceability of CARB's standards, Plaintiff OEMs face both current and imminent injuries from two sources: California's attempt to enforce the preempted standards and California's threats to punish Plaintiff OEMs based on their speech.

### a.     Injury From California's Enforcement of Preempted Emissions Standards

66.     California appears to be intent on acting *ultra vires*.  The federal government has acted to expressly preempt CARB's standards, and California is prohibited by the Clean Air Act from attempting to enforce its heavy-duty emissions standards.  Yet CARB has announced that it will nevertheless enforce the preempted standards.  For example, in the May 23, 2025 MAC, CARB reiterated that manufacturers will need to obtain a model year 2026 California certification "to enable lawful vehicle sales," May 23, 2025 MAC at 2, implicitly threatening steep penalties for any violations, *see* Cal. Health & Safety Code §§ 43151, 43154(a)(1) (imposing penalties for selling without a CARB certificate).

67. Against this backdrop, Plaintiff OEMs urgently need clarity regarding the law and emission standards that apply to its vehicles and engines for model year 2026. To adequately plan product production and allocation, Plaintiff OEMs must know which vehicles they are authorized to sell, and *where*, well in advance of the start of a model year on January 1. And applying for and receiving CARB certifications takes months. As noted previously, CARB's own description of the process lays out a timeline of up to sixty days, at the conclusion of which the manufacturer may receive a certification—or only "substantive feedback … about what further information is needed," heralding an even longer certification process.[20] Thus, working backwards from the January 1, 2026 start of the model year, to allow adequate planning time, Plaintiff OEMs must know within a matter of weeks whether they must seek a model year 2026 certification from CARB. Without regulatory certainty, Plaintiff OEMs are unable to engage in meaningful product planning, reducing their ability to deliver to customers the products they need and want.

68. Applying for a CARB certification entails a substantial investment of time and resources on the part of Plaintiff OEMs. In addition to the direct cost of paying CARB certification fees, obtaining a certification involves expensive emissions testing to ensure compliance with CARB standards—testing which, to generate the requisite emissions testing results, needs to start roughly eight months before the submission of a certification application. For example, Plaintiff OEMs must "age" engines to simulate real-world wear and tear to ensure that certain regulatory requirements are met—an expensive process that uses emission testing laboratories that could otherwise be used for research and development. And once an application is submitted, CARB can take months to provide a certification. As a result, the certification process can take upwards of a year, and it requires Plaintiff OEMs to invest substantial resources.

**b. Injury From California's Suppressions of Plaintiff OEMs' Free Speech**

69. California is suppressing Plaintiff OEMs' speech and petitioning rights to insulate State officials from judicial oversight. To accomplish this, California has threatened Plaintiff OEMs and

---

[20] CARB, On-Road Heavy-Duty and Off-Road Compression Ignition Certification Programs: Certification Steps Overview, https://perma.cc/UUT3-HWG5.

other heavy-vehicle manufacturers with unfavorable regulatory treatment if they challenge the preempted standards, including that CARB will identify "opportunities for special considerations and flexibilities for" manufacturers when crafting future standards only if those manufacturers continue following the standards that California is prohibited by the Clean Air Act from attempting to enforce. *See* Executive Order N-27-25. Further, California has stated its intent to prohibit its agencies from purchasing vehicles unless they are from manufacturers that agree with CARB's position—a pledge to punitively restrict the purchase of Plaintiff OEMs' products in its government-owned fleet—and has directed de-prioritizing those manufacturers from government incentive programs. *See supra* ¶¶ 63-64. Both the May 23, 2025 MAC and Executive Order N-27-25 root the requirement to comply with preempted regulations in the Clean Truck Partnership—a document that, as detailed above, includes measures to restrict manufacturers' ability to challenge the legality of CARB's standards.

70. As the Ninth Circuit aptly put it, "Courts have adopted various metaphors to encapsulate the dilemma facing a pre-enforcement plaintiff—'the rock … and the hard place,' 'the Scylla … and the Charybdis,' and the choice to comply or 'bet the farm.'" *Peace Ranch LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) (citations omitted). Plaintiff OEMs are in such a dilemma here. But as the Supreme Court explained, "where threatened action by *government* is concerned," a plaintiff is not required "to expose [itself] to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). Thus, Plaintiff OEMs apply to this Court for declaratory relief clarifying which laws they must follow when offering new heavy-duty vehicles and engines for sale, and prohibiting the Defendants from violating Plaintiff OEMs' constitutional rights.

## COUNT I

### (Clean Air Act Preemption—CARB Standards)

71. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

72. The Supremacy Clause of the U.S. Constitution enshrines the "Laws of the United States" as "the supreme Law of the Land." U.S. Const. Art. VI. Accordingly, the Supremacy Clause "provides the constitutional foundation for federal authority to preempt state law." *Beaver v. Tarsadia*

*Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016).  Congress expressly preempts state law "when the text of a federal statute explicitly manifests Congress's intent to displace state law."  *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022).  Courts must invalidate preempted state laws.  *See CSX Transp., Inc.*, *v. Easterwood*, 507 U.S. 658, 663 (1993) ("Where a state statute conflicts with, or frustrates, federal law, the former must give way.").

73.     The Clean Air Act prohibits states from not only adopting, but from any "attempt to enforce any standard" relating to new motor vehicle and engine emissions unless a waiver is granted.  42 U.S.C. § 7543(a).  The ordinary meaning of "enforce" is to "compel obedience to."  *See* Enforce, Dictionary.com, https://perma.cc/F4E8-L355 (last visited Aug. 10, 2025); *see also* Black's Law Dictionary (4th rev. ed. 1968) (same).  The Supreme Court explained that an "attempt" to enforce an emissions standard includes preliminary acts falling short of enforcement.  *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 257 (2004).  As the court observed, the term "attempt to enforce" in Section 209(a) is not limited to the actual imposition of penalties for violations but includes steps preliminary to that action.  *Id.*

74.     As relevant here, California is trying to enforce emissions standards and conditions precedent to sale of new heavy-duty vehicles and engines, even though its heavy-duty vehicle emissions standards are all preempted by the Clean Air Act:

> a.      *First*, all standards contained within the waiver submissions to EPA for Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II are preempted because the Clean Air Act waivers granted based on those submissions were *explicitly* revoked by Congressional resolutions passed pursuant to the Congressional Review Act.  Without any operative waivers, CARB is therefore preempted from "attempt[ing] to enforce" or requiring "certification, inspection, or any other approval relating to" a manufacturer's compliance with Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II.  42 U.S.C. § 7543(a).  This prohibition also reaches the evaporative emissions and refueling emissions standards applicable to heavy-duty

vehicles along with the medium-duty on-board diagnostics standards, which were included in the Advanced Clean Cars II waiver, as well as the heavy-duty warranty, zero-emission airport shuttles, and certification of zero-emission powertrain regulations included in the Advanced Clean Trucks waiver.

b.     *Second*, the Advanced Clean Fleets, Phase 2 Greenhouse Gas, and Heavy-Duty On-Board Diagnostic standards lack waivers under the Clean Air Act and are thus preempted.  First, CARB withdrew its waiver request to EPA for Advanced Clean Fleets on January 13, 2025, before EPA could make a waiver decision.  By CARB's own account, without a Clean Air Act waiver, Advanced Clean Fleets is "dead on its feet."[21]  Second, although CARB previously indicated it would submit a waiver request to EPA for its Phase 2 Greenhouse Gas standards, there is no public indication it has submitted such a waiver or that one has been issued.  The Phase 2 Greenhouse Gas standards therefore must likewise be considered a legal nullity.  Finally, as to the Heavy-Duty On-Board Diagnostic standards, CARB has failed to obtain a waiver for the current standards, and thus the standards currently adopted in California has no preemption waiver to support it.

75.     Because none of the aforementioned CARB standards have lawful and operative Clean Air Act waivers, they are expressly preempted by federal law.

76.     Absent declaratory and injunctive relief, in a matter of weeks Plaintiff OEMs will need to begin investing or will be forced to continue to invest substantial resources to certify to and comply with California's model year 2026 emissions standards.

77.     Such investments would irreparably harm Plaintiff OEMs.  *See, e.g.*, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs.").  Because sovereign immunity bars money damages against a state,

---

[21] Dean Florez, Why California recently revised its clean air regulations for zero-emission trucks, The Sacramento Bee (May 6, 2025), https://www.sacbee.com/opinion/op-ed/article305738891.html.

*California Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851–52 (9th Cir. 2009), *vacated on other grounds*, 565 U.S. 606 (2012), Plaintiff OEMs would thus not be able to recover any costs resulting from complying with regulations later found to be invalid, a harm that is by definition unrecoverable and irreparable, *see Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016).

78.    Plaintiff OEMs are therefore entitled to (1) a declaration that CARB's emissions standards applicable to new heavy-duty vehicles and engines are preempted by the Clean Air Act, and (2) an injunction barring Defendants from taking any steps to enforce those standards against Plaintiff OEMs.

## COUNT II

### (Clean Air Act Preemption—May 23, 2025 MAC & EO N-27-25)

79.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

80.    The Clean Air Act provides that absent a preemption waiver, "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or … engines," including by requiring "certification, inspection, or any other approval relating to the control of emissions" as a condition of sale.  42 U.S.C. § 7543(a).

81.    Because none of CARB's emissions standards applicable to new heavy-duty vehicles and engines have lawful and operative waivers, they are preempted by the Clean Air Act.

82.    Nevertheless, Defendants are "attempt[ing] to enforce" their preempted emissions standards in the following two ways:

a.    *First*, CARB issued a MAC in which it announced that it "will continue to accept and process" certification applications from manufacturers demonstrating compliance with the standards set forth in Advanced Clean Trucks and Omnibus Low NOx, and that such certification is required to "enable lawful vehicle sales in California."  May 23, 2025 MAC at 2–3 (citing statutes that make it illegal to sell uncertified vehicles).

b.    *Second*, in Executive Order N-27-25, Governor Newsom directed CARB to penalize any heavy-duty vehicle manufacturers that fail to certify compliance with

CARB's preempted standards. Those penalties include deprioritizing the non-certifying "manufacturers in government vehicle procurement decisions," cutting their access to "funding" relating to "the purchase of zero-emission vehicles," and leveraging any other "special considerations and flexibilities" in crafting future rules to disadvantage non-certifying manufacturers. Executive Order N-27-25 at 3.

83.    The May 23, 2025 MAC and Executive Order N-27-25 are therefore unlawful "attempt[s] to enforce" preempted emissions standards, and they impose unlawful "certification" requirements "relating to the control of emissions" as a condition of sale in California. 42 U.S.C. § 7543(a); *see* California State Motor Vehicle Pollution Control Standards; Waiver of Federal Preemption; Notice of Determination, 55 Fed. Reg. 28,825 (July 13, 1990) (explaining that prior EPA preemption waivers for specific "classes of vehicles and engines, based on California's standards and/or accompanying enforcement procedures, removes the prohibitions of section 209(a) regarding … conditions precedent for those classes").).

84.    Such actions are expressly preempted by the Clean Air Act.

85.    Absent declaratory and injunctive relief, Plaintiff OEMs will be irreparably harmed as they are now forced to choose between investing substantial resources to comply with ultimately preempted standards on the one hand, and risking significant liability (and a loss of customer goodwill) from regulatory noncompliance on the other hand. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009).

86.    Plaintiff OEMs are thus entitled to (1) a declaratory judgment that the May 23, 2025 MAC and Executive Order N-27-25 violate the Clean Air Act and Supremacy Clause of the U.S. Constitution; and (2) an injunction barring Defendants from carrying out the enforcement, compliance, and punishment directives described in the May 23, 2025 MAC and Executive Order N-27-25.

## COUNT III

### (Clean Air Act Preemption—Clean Truck Partnership)

87.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

88.    Section 209(a) of the Clean Air Act broadly preempts actions by any "State or any po-litical subdivision thereof" that "*adopt* or *attempt* to enforce … any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines" subject to federal regulation.  42 U.S.C. § 7543(a) (emphasis added).  By dictating that manufacturers must "meet, in California, the requirements of the relevant regulations … regardless of the outcome of any litigation challenging the waivers/authorizations for those regulations, or CARB's overall authority to implement those regula-tions," Ex. A (CTP) App'x B, the Clean Truck Partnership violates both strictures of Section 209(a)'s comprehensive and express preemption of state action.

89.    First, the Clean Truck Partnership operates as an *adoption* of a standard.  Specifically, it purports to readopt and implement the CARB standards at issue in the event of litigation outcomes adverse to CARB.  Functionally, the Clean Truck Partnership thus becomes the backstop regulatory mechanism for CARB to implement the specific emissions standards—the listed regulations—appli-cable to heavy-duty vehicles and engines.  The Clean Truck Partnership applies to all manufacturer signatories, which represent all manufacturers of heavy-duty on-highway internal-combustion vehicles and engines.  Ex. A (CTP) ¶ 2, App'x B,  at 1.

90.    Second, by purporting to require compliance by the manufacturers, in the absence of lawful authority, the Clean Truck Partnership represents an *attempt to enforce* the cited standards.  *See* Executive Order N-27-25 at 2 (describing requirements of the Clean Truck Partnership as requiring manufacturers "to meet California's heavy-duty vehicle emission standards that will require the sale and adoption of zero-emissions technology in California, regardless of the outcome of any change in law concerning California's authority to implement its more stringent emissions standards under the federal Clean Air Act").

91.    Any adoption of a standard or attempt to enforce a standard relating to the control of emissions must have a waiver from EPA, or it is expressly preempted.  *See* 42 U.S.C. §§ 7543(a), (b).

The Clean Truck Partnership lacks a waiver and is thus preempted by Section 209(a).

92.     Even if the Clean Truck Partnership were understood as an agreement rather than the adoption and enforcement of a backstop regulation, it still cannot be a backdoor for CARB to enforce preempted emissions standards.  Under well-established law, "a government official cannot do indirectly what she is barred from doing directly."  *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024).  Because Defendants cannot directly enforce their preempted standards—which would violate the Supremacy Clause and frustrate Congress's decision to ensure that the nation is governed by a single national emissions policy—they cannot use the Clean Truck Partnership to indirectly accomplish the same end.  After all, "[i]t would be a palpable incongruity to strike down" an act that directly compels compliance with a preempted law, while "uphold[ing] an act by which the same result is accomplished under the guise of a surrender of a right in exchange for a valuable privilege."  *Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583, 593 (1926).

93.     Therefore, the Clean Truck Partnership is preempted for the same reasons as the May 23, 2025 MAC and Executive Order N-27-25 are preempted.  Absent declaratory and injunctive relief, Plaintiff OEMs will be irreparably harmed as they are forced to choose between investing substantial resources to comply with ultimately preempted standards on the one hand, and risking significant liability (and a loss of customer goodwill) from regulatory noncompliance on the other hand.  *Morales*, 504 U.S. at 381; *Am. Trucking Ass'ns*, 559 F.3d at 1057–58.

94.     Plaintiff OEMs are therefore entitled to (1) a declaratory judgment that the Clean Truck Partnership violates the Clean Air Act and Supremacy Clause of the U.S. Constitution, and (2) an injunction barring Defendants from taking any steps to enforce the Clean Truck Partnership.

**COUNT IV**

**(First Amendment—EO N-27-25, May 23, 2025 MAC, Clean Truck Partnership)**

95.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

96.     The First Amendment prohibits governments from "abridging the freedom of speech" or the right "to petition the Government for a redress of grievances."  U.S. Const. amend. I; *see also*

*Gitlow v. New York*, 268 U.S. 652 (1925) (incorporating the First Amendment against the States).

97.     At the heart of the First Amendment is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  Standing shoulder to shoulder with the citizenry's interest in uninhibited, robust debate on public issues is its equally profound "mistrust of governmental power." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010).

98.     To protect these freedoms, the First Amendment generally prohibits government officials from "impos[ing] rules and conditions which in effect insulate [their] own laws from legitimate judicial challenge." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548–49 (2001).

99.     A condition that restricts a citizen's right to bring lawful challenges against the government will be void and unenforceable if the government's asserted interests in enforcing that condition are outweighed by strong policy interests that are rooted in the First Amendment. *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1399 (9th Cir. 1991).  By contrast, a condition that requires a private party to forfeit their First Amendment rights is valid and enforceable if the government has a compelling interest in the restriction and there is a sufficiently "close nexus—a tight fit—between the specific interest the government seeks to advance … and the specific right waived." *Id.*

100.     The government's interest in conditioning favorable treatment on the waiver of a constitutional right "may wane as time passes," however.  *Powell v. SEC*, --- F.4th ----, No. 24-1899, 2025 WL 2233792, at *11 (9th Cir. Aug. 6, 2025).

101.     Here, whatever compelling interest Defendants might have had prior to June 2025 in enforcing the Clean Truck Partnership and its conditions limiting Plaintiffs' rights to challenge those conditions, such interests no longer exist today.

102.     Indeed, when the parties entered into the Clean Truck Partnership in 2023, the federal government had not yet enacted laws that specifically preempted California from enforcing its emissions standards.  On the contrary, at that time, California could still apply for Clean Air Act waivers from EPA that would allow California to adopt and enforce its own emissions standards.  But in June 2025, the federal government statutorily vitiated those federal waivers, thereby prohibiting California

from enforcing the emissions standards contained in the Clean Truck Partnership, a contingency not covered by the document. *See* Ex. A (CTP) ¶ 2 (providing that Plaintiffs' commitments are triggered by successful "*litigation* challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations" (emphasis added)).

103.    Just as importantly, EPA cannot grant California the waivers it needs to adopt or attempt to enforce the now-preempted emission standards contained in the Clean Truck Partnership—or any other versions "in substantially the same form"—without a subsequent act of Congress specifically authorizing such action. *See* 5 U.S.C. § 801(b)(2). Because Defendants have no interest, let alone a compelling one, in enforcing preempted standards, there can no longer be a "close nexus … between the specific interest the government seeks to advance" by restricting Plaintiffs' speech "and the specific right waived." *Davies*, 930 F.2d at 1399.

104.    On the other side of the ledger, "[c]riticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

105.    This means that the public interest against enforcing the Clean Truck Partnership's speech restrictions is "of the highest order," whereas Defendants have no interest at all in suppressing legitimate challenges against unlawful standards. *Davies*, 930 F.2d at 1397; *see also Velazquez*, 531 U.S. at 548–49.

106.    That imbalance in interests suggests a First Amendment violation in and of itself. But even setting that aside, the Clean Truck Partnership's speech restrictions are simply too sweeping to satisfy any "nexus" requirement. *See Powell*, --- F.4th ----, 2025 WL 2233792, at *11.

107.    Indeed, the Clean Truck Partnership not only prevents Plaintiffs from challenging CARB's standards, but it also requires them to support or remain neutral towards "any prospective Section 177 states' proposals" to implement CARB's preempted standards. Ex. A (CTP) ¶ 2, App'x D.

108.    It is well established that government officials cannot, without violating the First Amendment, require their citizens to follow unlawful standards or force them to "adopt—as their own—the Government's view on an issue of public concern" as a condition of receiving favorable regulatory treatment. *Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205, 218

(2013).

109.    That Defendants have unconstitutionally restricted Plaintiffs' speech rights is even more apparent given that Defendants have promised to not only put Plaintiffs "back in the position they were in before" they signed the Clean Truck Partnership if Plaintiffs challenge CARB's standards and agenda, but have also threatened to make them even worse off if Plaintiffs exercise their speech rights. *Powell*, --- F.4th ----, 2025 WL 2233792, at *11.    Indeed, Defendants have threatened to engage in "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action" in retaliation for speaking against or challenging the government. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024).

110.    For years, California previously has attempted to insulate itself and its emissions regulations from legitimate challenge by penalizing any manufacturers who disagree with CARB. *See, e.g.*, David Shepardson, *California to Stop Buying GM, Toyota and Fiat Chrysler Vehicles Over Emissions Fight*, Reuters (Nov. 18, 2019), https://www.reuters.com/article/idUSL2N27Y0HU/ (Governor Newsom "halt[ed] all purchases of new vehicles for state government fleets from" manufacturers that did not agree with CARB's positions in preemption litigation).

111.    More recently, Governor Newsom issued Executive Order N-27-25, which directs CARB to penalize any heavy-duty truck manufacturers that fail to certify compliance with CARB's now-preempted standards or comply with the Clean Truck Partnership's speech restrictions.    Those penalties include deprioritizing the non-certifying "manufacturers in government vehicle procurement decisions," cutting their access to "funding" relating to "the purchase of zero-emission vehicles," and—most significantly—leveraging "special considerations and flexibilities" in forthcoming regulatory programs to disadvantage manufacturers who refuse to certify compliance with CARB's preempted standards or otherwise challenge CARB's emissions agenda.    Executive Order N-27-25 at 3.

112.    CARB's May 23, 2025 MAC similarly compels manufacturers—by implicit threat of substantial fines—to comply with CARB's preempted standards and certification requirements, compliance that CARB also characterized as "necessary" to "facilitate meeting the commitments of the Clean Truck Partnership" and "enable lawful vehicle sales."    May 23, 2025 MAC at 2–3 (citing Cal.

Health & Safety Code §§ 43100, 43151-43153).

113.    For all these reasons, Defendants are violating Plaintiffs' First Amendment rights. There is no "close nexus … between the specific interest the government seeks to advance" by enforcing the Clean Truck Partnership "and the specific right waived" therein.  *Davies*, 930 F.2d at 1399. And "[t]here is no room under our Constitution" for Defendants to use threats of fines and unfavorable treatment to retaliate against critical speech, *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949), "insulate [their] own laws from legitimate judicial challenge," *Velazquez*, 531 U.S. at 548, or enforce unconstitutional and preempted regulations, *Baird*, 81 F.4th at 1042.

114.    Absent declaratory and injunctive relief, Plaintiff OEMs will be irreparably harmed. *CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019) ("A party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury ... by demonstrating the existence of a colorable First Amendment claim.").  Plaintiff OEMs are therefore entitled to (1) a declaration that Executive Order N-27-25 and the May 23, 2025 MAC violate the First Amendment's guarantee of the right to participate in uninhibited debate of issues of public importance; (2) a declaration that the Clean Truck Partnership is unenforceable because it violates the public policy in the First Amendment; and (3) an injunction barring Defendants from using Executive Order N-27-25, the May 23, 2025 MAC, or the Clean Truck Partnership to insulate themselves from legitimate legal challenges or to punish entities that raise such challenges.

## COUNT V

**(Art. I, § 3 Cal. Constitution—EO N-27-25, May 23, 2025 MAC, Clean Truck Partnership)**

115.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

116.    Article I, Section 3 of the California Constitution provides that "[t]he people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."  This provision of the California Constitution is "[a] protective provision more definitive and inclusive" than its federal counterpart in the First Amendment.  *Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 908, 910 (1979).

117.   "The right to petition for redress of grievances is the right to complain about and complain to the government." *Wolfgram v. Wells Fargo Bank*, 53 Cal. App. 4th 43, 51 (1997).  "The right includes the right to petition the executive or legislative branches directly" and also encompasses "the right to petition the judicial branch for resolution of legal disputes." *Vargas v. City of Salinas*, 200 Cal. App. 4th 1331, 1342 (2011).

118.   Under California Civil Code section 52.1(c), "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California]" may sue the persons who violated their rights for declaratory, injunctive, and monetary relief.  California state courts have held that "reasonable, narrowly drawn restrictions designed to prevent abuse of the right can be valid under the state Constitution." *Chorn v. Workers' Comp. Appeals Bd.*, 245 Cal. App. 4th 1370, 1385 (2016) (cleaned up).

119.   A government condition that restricts the ability of a party to "file or participate in litigation or support legislation to challenge or modify" the terms of that contract will violate Article I, Section 3 unless the government shows that:  (1) the condition requiring the party to surrender their petitioning rights is "reasonably related" to a compelling government interest; (2) "the public value of imposing the condition manifestly outweighs its burden on constitutional rights"; and (3) "there are no less restrictive means" to achieve the government interest.  *San Diego Cnty. Water Auth. v. Metro. Water Dist. of S. California*, 12 Cal. App. 5th 1124, 1157, 1160 (2017).  If the government fails to meet its burden, the California Constitution will be violated "however well-informed and voluntary th[e] waiver" of the party's petitioning rights.  *Id.* (citation omitted).

120.   Here, Defendants—via Executive Order N-27-25, the May 23, 2025 MAC, and the Clean Truck Partnership—have attempted to deny Plaintiff OEMs and other manufacturers their petitioning rights guaranteed under the California Constitution.  As alleged, Defendants have no cognizable interest in insulating themselves from legitimate legal challenges to state actions.  "Where the right to petition is at issue, therefore, the government interest must be unrelated to the suppression of constitutionally protected petitioning activity." *Mejia v. City of Los Angeles*, 156 Cal. App. 4th 151, 163 (2007); *cf.* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to

exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.")  The right to petition the government "is essential to the functioning of a democracy," and the interest in protecting that right far outweighs any conceivable interest the government might have in insulating CARB from legitimate challenge, especially with respect to federally preempted regulations.  *City of San Jose v. Superior Ct.*, 2 Cal. 5th 608, 615 (2017).

121.  Absent declaratory and injunctive relief, Plaintiff OEMs will continue to be irreparably harmed and subjected to violations of its petitioning rights under State law.  Plaintiff OEMs are therefore entitled to (1) a declaration that Executive Order N-27-25, the May 23, 2025 MAC, and Defendants' interpretation of the Clean Truck Partnership violate Article I, Section 3 of the California Constitution; and (2) an injunction barring Defendants from enforcing Executive Order N-27-25, the May 23, 2025 MAC, or the Clean Truck Partnership to restrict Plaintiff OEMs' petitioning rights under Article I, Section 3 of the California Constitution.

## COUNT VI

### (California APA—May 23, 2025 MAC)

122.  Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

123.  Pursuant to 28 U.S.C. § 1367(a), subject to certain exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

124.  Here, it is appropriate for this Court to hear a related state law claim that arises out of the same case and controversy: specifically, that the May 23, 2025 MAC is an underground regulation promulgated in violation of the California Administrative Procedure Act ("California APA").

125.  This claim does not raise novel or complex issues of State law, nor does it substantially predominate over the claims over which this Court has original jurisdiction.  *See* 28 U.S.C. §§ 1367(c)(1)–(2).

126.    Under the California APA, any "person may obtain a judicial declaration as to the validity of any regulation or order of repeal by bringing an action for declaratory relief." Cal. Gov't Code § 11350.

127.    The California APA places procedural requirements on state agencies, including CARB, before the agencies can issue regulations to "ensure that those persons or entities whom a regulation will affect have a voice in its creation." *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 568 (1996); *see also* Cal. Gov't Code §§ 11346.2, 11346.8. Accordingly, California Government Code section 11340.5(a) states that a state agency shall not "issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in [Government Code] Section 11342.600, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation" and the procedures of the APA have been satisfied. Regulations promulgated in violation of this provision are unlawful "underground regulations." *See* Cal. Code Regs. tit. 1, § 250.

128.    Section 11342.600 of the California Government Code "defines 'regulation' very broadly to include 'every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.'" *Tidewater Marine Western*, 14 Cal. 4th at 571 (quoting Cal. Gov't Code § 11342(g)). A "regulation" under the California APA "has two principal identifying characteristics." *Tidewater Marine Western*, 14 Cal. 4th at 571. "First, the agency must intend its rule to apply generally, rather than in a specific case," and second, the regulation must "implement, interpret, or make specific the law enforced or administered by [the agency], or govern … [the agency's] procedure." *Id*.

129.    The May 23, 2025 MAC is an underground regulation promulgated in violation of the California APA.

　　　　　a.    *First*, the MAC is a rule of general application. The MAC is a "blanket interpretation[s]" that CARB "intend[s] to apply in … all cases of a particular class or

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
CASE NO.

kind," indicating that it too embodies "polic[ies] of general application and thus … regulation[s]." *Tidewater Marine Western*, 14 Cal. 4th at 573; *see also Vasquez v. Dep't of Pesticide Regul.*, 68 Cal. App. 5th 672, 689 (2021). The MAC is not an individual adjudication. It does not involve a case-specific exercise of CARB's discretion and is not designed to apply a "rule to a specific set of existing facts." *Strumsky v. San Diego Cnty. Emps. Ret. Ass'n*, 11 Cal. 3d 28, 35 n.2 (1974). Rather, it sets forth which standards are in effect in California for the 2026 model year, impacting an entire industry, and therefore has a prospective legislative purpose. For example, in the MAC, CARB takes the position that it will certify vehicles for model year 2026 pursuant the Advanced Clean Trucks and Omnibus Low NOx. The MAC is thus a new regulatory program that requires manufacturers of internal-combustion powered on-road heavy-duty trucks and engines to comply with CARB's now-preempted standards.

b.    *Second*, the MAC implements CARB's legal authority. It creates new obligations for an entire industry, requiring all manufacturers of heavy-duty trucks and engines to comply with preempted standards. Although the underlying regulations went through the California APA process, the requirement that manufacturers certify vehicles and engines for model year 2026 pursuant to those regulations even in the absence of federal authorization under the Clean Air Act is a novel interpretation and implementation of CARB's legal authority, yet this requirement did not go through the California APA process. The MAC also provides CARB with new authorities not contained in other laws or regulations. For example, the MAC similarly purports that CARB can certify vehicles and engines for the 2026 model year pursuant to the requirements of preempted standards. As such, it "implements and makes specific the law the [agency] administers," thereby establishing the second requirement for an underground rulemaking. *Vasquez*, 68 Cal. App. 5th at 673; *see also Tidewater Marine Western*, 14 Cal. 4th at 571. CARB did not follow the California APA procedures to promulgate the MAC. CARB did not file a copy of the regulatory correspondence with the Secretary of State

44

of California, as required by section 11343 of the California Government Code, nor did CARB follow the requirements to provide notice and an opportunity for public comment as required by Office of Administrative Law regulations.  Cal. Code Regs. tit. 1, §§ 5 (Submission of Notices for Publication), 44 (Public Availability of Changes to Regulations).

130.    Nor does the MAC satisfy the exemptions in section 11340.9 of the California Government Code, so CARB's actions are not excused from the California APA requirements.

131.    The California APA's notice and comment requirements serve to further the APA's goals of "bureaucratic responsiveness and public engagement in agency rulemaking."  *Morning Star Co. v. State Bd. of Equalization*, 38 Cal. 4th 324, 333 (2006).  In promulgating the MAC as an underground regulation in violation of the California APA, CARB deprived stakeholders of this transparency and engagement that is designed to promote reasoned and informed policymaking.

132.    Absent declaratory and injunctive relief, Plaintiff OEMs will continue to be irreparably harmed and subjected to unlawful regulations.  Plaintiff OEMs are therefore entitled to (1) a declaration that the May 23, 2025 MAC constitutes an underground regulation that violates the California APA; and (2) an injunction barring Defendants from enforcing the May 23, 2025 MAC.

## COUNT VII

### (California APA—Clean Truck Partnership)

133.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

134.    For many of the same reasons, the Clean Truck Partnership is also an underground regulation promulgated in violation of the California APA.[22]

---

[22] The Western States Trucking Association filed a petition with the California Office of Administrative Law ("OAL") alleging that the Clean Truck Partnership is an underground regulation promulgation in violation of the California APA on June 18, 2-25.  Western States Trucking Association, WSTA Petition to OAL Regarding CTP (June 18, 2025), https://perma.cc/D9M2-7JT4.  As of the date of this Complaint, the OAL's deadline to determine whether to take up the petition is August 18, 2025.  OAL, Underground Regulation Petitions Under Review, https://perma.cc/ST7F-R7JY.  The California APA provides that administrative exhaustion is not required to seek a judicial determination regarding whether an agency has promulgated an underground regulation.  Cal. Gov't Code, § 11350(a) ("The

a.      *First*, the Clean Truck Partnership includes rules of general application. The Clean Truck Partnership is a "blanket interpretation" that CARB "intend[s] to apply in … all cases of a particular class or kind," indicating that it embodies "polic[ies] of general application and thus [] regulation[s]." *Tidewater Marine Western*, 14 Cal. 4th at 573; *see also Vasquez*, 68 Cal. App. 5th at 689.  Here, the Clean Truck Partnership applies to all manufacturers of internal-combustion powered on-road heavy-duty trucks and engines, and it sets forth which regulations are in effect in California across this entire industry.  Further, it purports to provide CARB with the authority to maintain its certification program regardless of whether CARB has any underlying authorization for its regulations.  In doing so, the Clean Truck Partnership creates a new regulatory pro-gram where all manufacturers in an industry must comply with preempted standards, all as upheld through the enforcement mechanism of CARB's requirement for certification.

b.      Framing the Clean Truck Partnership as an agreement does not exempt that action from being a rule of general applicability subject to the California APA. State law and principles of administrative law dictate that CARB was not permitted to use an agreement with regulated parties to avoid California APA procedural require-ments.  *Vasquez*, 68 Cal. App. 5th at 687; *see also Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1053–54 (D.C. Cir. 1987).

c.      *Second*, the Clean Truck Partnership implements CARB's legal author-ity.  The Clean Truck Partnership purports to create new obligations for an entire indus-try, requiring all manufacturers of internal-combustion powered on-road heavy-duty trucks and engines to comply with preempted standards.  Although the underlying reg-ulations went through the California APA process, the requirement that manufacturers comply with those regulations even in the absence of federal authorization is a novel

right to judicial determination shall not be affected by the failure either to petition or to seek reconsid-eration of a petition filed pursuant to Section 11340.7 before the agency promulgating the regulation or order of repeal"); Cal. Gov't Code. § 11340.7 (providing the right to petition state agencies for the repeal of a regulation).

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
CASE NO.

interpretation and implementation of CARB's legal authority, yet this requirement did not go through the California APA process. The Clean Truck Partnership also provides CARB with new authorities not contained in other laws or regulations. For example, the Clean Truck Partnership provides that CARB can maintain its certification program regardless of the authorization for the regulations underlying the certification program. As such, the Clean Truck Partnership "implements and makes specific the law the [agency] administers," thereby establishing the second requirement for an underground rulemaking. *Vasquez*, 68 Cal. App. 5th at 673; *see also Tidewater Marine Western*, 14 Cal. 4th at 571.

135. Nor does the Clean Truck Partnership satisfy the exemptions in section 11340.9 of the California Government Code, so CARB's actions are not excused from the California APA requirements.

136. In promulgating the Clean Truck Partnership as an underground regulation in violation of the California APA, CARB deprived stakeholders of the transparency and engagement that is required by law to promote reasoned and informed policymaking. *Morning Star*, 38 Cal. 4th at 333.

137. Absent declaratory and injunctive relief, Plaintiff OEMs will continue to be irreparably harmed and subjected to unlawful regulations. Plaintiff OEMs are therefore entitled to (1) a declaration that the Clean Truck Partnership constitutes an underground regulation that violates the California APA; and (2) an injunction barring Defendants from enforcing the Clean Truck Partnership.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff OEMs respectfully request that this Court enter the following relief:

I. A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that all emissions standards included in the waiver submissions for Advanced Clean Trucks, Advanced Clean Cars II, and Omnibus Low NOx are preempted by the Clean Air Act;

II. A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that Heavy-Duty On-Board Diagnostics, and Phase 2 Greenhouse Gas, and the 100

percent zero-emission vehicle sales requirement in Advanced Clean Fleets are preempted by the Clean Air Act;

III.    A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that CARB cannot require any conditions precedent to initial retail sale, including requirements under California Health and Safety Code §§ 43151 and 43512 for CARB certification prior to initial retail sale, when CARB lacks valid preemption waivers for its emissions standards;

IV    A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the May 23, 2025 MAC, Executive Order N-27-25, and the Clean Truck Partnership violate the Clean Air Act and the Supremacy Clause of the U.S. Constitution;

V.    A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that Executive Order N-27-25, the May 23, 2025 MAC, and the Clean Truck Partnership violate the First Amendment to the U.S. Constitution, public policy, and Article I, Section 3 of the California Constitution, and are therefore void;

VI.    A declaratory judgment, pursuant to 28 U.S.C. §§ 1367 and 2201, and Rule 57 of the Federal Rules of Civil Procedure, that the May 23, 2025 MAC, and Clean Truck Partnership are underground regulations in violation of California Government Code § 11340.5(a) and thus invalid;

VII.    Preliminary and permanent injunctions, pursuant to Rule 65 of the Federal Rules of Civil Procedure:

    a.    Enjoining Defendants from enforcing or attempting to enforce the Advanced Clean Trucks, Advanced Clean Fleets, Advanced Clean Cars II, Heavy-Duty On-Board Diagnostic, and Omnibus Low NOx, and Phase 2 Greenhouse Gas standards without a waiver of preemption from EPA;

    b.    Enjoining Defendants from requiring any conditions precedent to initial retail sale, including requirements under California Health and Safety Code §§ 43151 and 43512 for CARB certification prior to initial retail sale, without a waiver of preemption from EPA;

    c.    Enjoining Defendants from enforcing or attempting to enforce any standard or approval relating to the control of emissions for new heavy-duty motor vehicles or engines for

which a waiver is necessary under 42 U.S.C. § 7543 and has not been obtained;

       d.     Enjoining Defendants from enforcing or attempting to enforce Executive Order N-27-25, the May 23, 2025 MAC, and the Clean Truck Partnership;

       e.     Requiring Defendants to redress the unlawful promulgation of the underground regulations included in the May 23, 2025 MAC, and Clean Truck Partnership by reissuing these regulations in accordance with the California APA, or, in the alternative, withdrawing such regulations; and

VII.    Such other relief available under federal or state law that may be considered appropriate under the circumstances, including fees and costs of this action to the extent allowed by federal or state law.

Dated: August 11, 2025

Respectfully submitted,

*Benjamin Wagner*

BENJAMIN WAGNER, State Bar No. 163581

**GIBSON, DUNN & CRUTCHER LLP**

BENJAMIN WAGNER, State Bar No. 163581
310 University Avenue
Palo Alto, CA  94301-1744
Telephone:    650.849.5395
Facsimile:    640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, State Bar No. 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8293
Facsimile:    415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER (*pro hac vice* forth-coming)
MIGUEL A. ESTRADA (*pro hac vice* forth-coming)
VERONICA J.T. GOODSON, State Bar No. 314367
1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone:    202.955.8500
Facsimile:    202.467.0539
SFletcher@gibsondunn.com

49

MEstrada@gibsondunn.com

VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

/s/ Robin M. Hulshizer
(as authorized on Aug. 11, 2025)
ROBIN M. HULSHIZER, State Bar No. 158486

**LATHAM & WATKINS LLP**

ROBIN M. HULSHIZER, State Bar No. 158486
ARTHUR FOERSTER *(pro hac vice* forthcoming*)*
KEVIN M. JAKOPCHEK *(pro hac vice* forthcoming*)*

330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com

BELINDA S. LEE, State Bar No. 199635

505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*

/s/ Eugene Illovsky
(as authorized on Aug. 11, 2025)
EUGENE ILLOVSKY, State Bar No. 117892

**ILLOVSKY GATES & CALIA LLP**

EUGENE ILLOVSKY, State Bar No. 117892
KEVIN CALIA, State Bar No. 227406

1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Eugene@illovskygates.com
Kevin@illovskygates.com

**CLIFFORD CHANCE LLP**

JOSEPH A. OSTOYICH *(pro hac vice* forthcoming*)*
WILLIAM LAVERY *(pro hac vice* forthcoming*)*
STEVE NICKELSBURG *(pro hac vice* forthcoming*)*
DANIELLE MORELLO *(pro hac vice* forthcoming*)*
DOROTHEA R. ALLOCCA *(pro hac vice* forthcoming*)*

2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com
dodi.allocca@cliffordchance.com

*Attorneys for Plaintiff PACCAR Inc*

/s/ Jeffrey M. Goldman
(as authorized on Aug. 11, 2025)
JEFFREY M. GOLDMAN, State Bar No. 233840

**TROUTMAN PEPPER LOCKE LLP**

JEFFREY M. GOLDMAN, State Bar No. 233840

350 South Grand Avenue, Suite 3400

Los Angeles, CA 90071
Telephone:     213.928.9800
Facsimile:     213.928.9850
jeffrey.goldman@troutman.com

T. SCOTT MILLS, State Bar No. 313554

600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:     404.885.3000
Facsimile:     404.885.3900
scott.mills@troutman.com

JEREMY HEEP *(pro hac vice* forthcoming*)*
DANIEL J. BOLAND *(pro hac vice* forthcoming*)*

3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:     215.981.4000
Facsimile:     215.981.4750
jeremy.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North
America LLC*

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
CASE NO.