GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, State Bar No. 163581
310 University Avenue
Palo Alto, CA  94301-1744
Telephone:      650.849.5395
Facsimile:      640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, State Bar No. 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:      415.393.8293
Facsimile:      415.393.8306
RBrass@gibsondunn.com

STACIE FLETCHER (*pro hac vice* pending)
MIGUEL A. ESTRADA (*pro hac vice* pending)
VERONICA J.T. GOODSON, State Bar No. 314367
1700 M Street, N.W.
Washington, D.C.  20036-4504
Telephone:      202.955.8500
Facsimile:      202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*
(additional counsel on signature pages)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC., PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California, <br><br> Defendants. | Civil Action No. 2:25-CV-02255-DC <br><br> **PLAINTIFFS' NOTICE AND MOTION FOR A PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br><br><br> **Date:** September 19, 2025 <br> **Time:** 1:30 p.m. <br> **Location:** Courtroom 8, 13th Floor <br> **Judge:** Hon. Dena Coggins |

i

**PLEASE TAKE NOTICE THAT** on a date and time to be determined, or as soon as the matter may be heard, before Judge Coggins of the United States District Court for the Eastern District of California in the Robert T. Matsui Federal Courthouse, in Courtroom 8, Plaintiffs Daimler Truck North America LLC, International Motors, LLC, Paccar Inc, and Volvo Group North America LLC will and do move this Court for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) and L.R. 231(d), prohibiting Defendants from implementing or enforcing: (1) the Advanced Clean Trucks, Omnibus Low NOx, Advanced Clean Cars II, Advanced Clean Fleets, Heavy-Duty On-Board Diagnostic, and Phase 2 Greenhouse Gas regulations; (2) the Clean Truck Partnership; (3) the May 23, 2025 Manufacturers Advisory Correspondence; and (4) Executive Order N-27-25.

This motion is brought on the grounds that the aforementioned regulations, executive order, advisory correspondence, and Clean Truck Partnership are preempted under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, and the Clean Air Act, 42 U.S.C. § 7543(a), and the executive order, advisory correspondence, and Clean Truck Partnership violate the First Amendment of the United States Constitution and Article I, Section 3 of the California Constitution. The Clean Truck Partnership and May 23, 2025 Manufacturers Advisory Correspondence are also unlawful under the California Administrative Procedure Act, Cal. Gov't Code § 11346 et seq.

The California regulations, the Clean Truck Partnership, and any enforcement thereof are preempted by federal law. California ignores this state of affairs, and instead seeks to enforce its preempted standards against original equipment manufacturers that design, develop, manufacture, and sell heavy-duty vehicles and engines. The United States has responded in turn through the Department of Justice, which on August 7, 2025 issued a cease & desist letter stating that California's enforcement of its regulations is contrary to federal law, and directing Plaintiffs to immediately cease and desist compliance with California's preempted and unlawful mandates. A preliminary injunction is necessary to preserve the status quo—whereunder the Advanced Clean Trucks, Omnibus Low NOx, Advanced Clean Cars II, Advanced Clean Fleets, Heavy-Duty On-Board Diagnostic, and Phase 2 Greenhouse Gas regulations; the Clean Truck Partnership; the May 23, 2025 Manufacturers Advisory Correspondence; and Executive Order N-27-25 are all preempted—and to enjoin California's imminent enforcement of the aforementioned regulations, executive order, advisory correspondence, and Clean Truck

ii

Partnership pending this Court's resolution of the important statutory and constitutional issues that any such enforcement efforts present. Plaintiffs are likely to succeed on the merits, they will imminently suffer irreparable harm absent injunctive relief, and the balance of equities favors immediate relief.

Plaintiffs request this motion be heard on an expedited basis given the imminent and irreparable financial and reputational harm they will suffer and the potential for an imminent enforcement action by California. The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof; the declarations of Rachel S. Brass, Andrea Brown, Carl Hergart, Jed Mandel, Mike Noonan, and Daniel Potter filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters of which the Court may take judicial notice. Plaintiffs do not seek to offer oral testimony at the hearing unless requested by the Court, or if Defendants offer such testimony. Should oral testimony be unnecessary, Plaintiffs anticipate that the Parties would require 90 minutes for any hearing on this motion.

Dated: August 12, 2025                          Respectfully submitted,

_____
BENJAMIN WAGNER, State Bar No. 163581
**GIBSON, DUNN & CRUTCHER LLP**
BENJAMIN WAGNER, State Bar No. 163581
310 University Avenue
Palo Alto, CA  94301-1744
Telephone:    650.849.5395
Facsimile:    640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, State Bar No. 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8293
Facsimile:    415.393.8306

RBrass@gibsondunn.com

STACIE B. FLETCHER (*pro hac vice* pending)
MIGUEL ESTRADA (*pro hac vice* pending)
VERONICA J.T. GOODSON, State Bar No. 314367
1700 M Street, N.W.
Washington, D.C. 20036-4504

Telephone:     202.955.8500
Facsimile:     202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North
America LLC*
(additional counsel on signature pages)

iv

# TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................1

**STATEMENT OF FACTS** ....................................................................................3

I.  The Clean Air Act ...............................................................................................3

II. California's Regulation of Heavy-Duty Vehicle Emissions ...............................5

III. Regulatory Uncertainty and the Clean Truck Partnership ...............................7

IV. The Federal Government Enacts Law Preempting CARB's Regulations ....................10

V. California Continues to Enforce Preempted Emissions Standards .................10

VI. Plaintiffs Repeatedly Seek Needed Regulatory Clarity from CARB ..........................12

**LEGAL STANDARD** .........................................................................................13

**ARGUMENT** ......................................................................................................**14**

I.  Plaintiffs Are Likely to Prevail on the Merits. ................................................14

    A.  California's Conduct Is Preempted by the Clean Air Act and Violates the Supremacy Clause...................................................................................................14

    B. California's Conduct Violates the First Amendment. .................................18

    C. Defendants Have Violated Article I, Section 3 of the California Constitution. ..........22

    D. The Clean Truck Partnership and the May 23, 2025 MAC Are Invalid Underground Regulations......................................................................................23

II. Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction. ..................26

    A. Defendants' Conduct Violates the United States and California Constitutions..........26

    B. Plaintiffs Will Incur Nonrecoverable Costs and Face the Risk of Penalties and Enforcement Actions Without an Injunction. ..........................................27

    C. Plaintiffs Will Incur Permanent Loss of Sales and Customer Goodwill Without an Injunction. ...................................................................................33

III. The Balance of Equities Tips in Plaintiffs' Favor and Granting an Injunction is in the Public Interest..........................................................................................34

**CONCLUSION** ...................................................................................................**35**

# TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. for Open Society Int'l, Inc.*, 570 U.S. 205 (2013) ................................... 20

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................................. 13, 14

*Am. Free Enter. Chamber of Com. v. Engine Mfrs. Ass'n*, No. 3:24-cv-50504 (N.D. Ill. Dec. 16, 2024) ............................................................................................................................... 17

*Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ............. 29, 30, 33, 35

*Apr. in Paris v. Becerra*, 494 F. Supp. 3d 756 (E.D. Cal. 2020) ........................................................ 35

*Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ...................................................... 34

*Ashker v. Newsom*, 968 F.3d 939 (9th Cir. 2020) ................................................................................ 20

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107 (9th Cir. 2022) ..... 14, 17

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ........................................................................ 3, 22, 27

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999) ................................................................. 35

*Bassidji v. Goe*, 413 F.3d 928 (9th Cir. 2005) .................................................................................... 20

*Beaver v. Tarsadia Hotels*, 816 F.3d 1170 (9th Cir. 2016) ................................................................ 14

*Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120 (9th Cir. 2024) ................................................ 30, 31, 33

*BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755 (9th Cir. 2018) ............................... 18

*Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011 (9th Cir. 2016) ....................................................... 26

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) ........... 3

*Cal. Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847 (9th Cir. 2009), *vacated and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012) ........... 27, 28

*California v. Health & Huma. Servs*, 281 F. Supp. 3d 806 (N.D. Cal. 2017) .................................... 25

*Chamber of Com. of the U.S. of Am. v. Bonta*, 62 F.4th 473 (9th Cir. 2023) ................................... 18

*Chorn v. Workers' Comp. Appeals Bd.*, 245 Cal. App. 4th 1370 (2016) ............................................ 22

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ......................................................... 18

*City of San Jose v. Superior Ct.*, 2 Cal. 5th 608 (2017) ..................................................................... 23

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) ................ 30

*Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226
(N.D. Cal. Mar. 15, 2018) ............................................................................................. 35

*CSX Transp., Inc., v. Easterwood*, 507 U.S. 658 (1993) ............................................................ 14

*CTIA - The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832 (9th Cir. 2019) ................. 27

*Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390 (9th Cir. 1991) ......................... 19, 20, 22

*Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) ........................................ 26

*Doe v. Horne*, 115 F.4th 1083 (9th Cir. 2024) ..................................................................... 13

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................................. 27

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004) ................................. 16

*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021) ..................................... 18

*Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583 (1926) .................................................... 17

*Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) .................................................... 3, 18

*Jay Bharat Devs., Inc. v. Minidis*, 167 Cal. App. 4th 437 (2008) ......................................... 31, 33

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ........................................................... 35

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ............................................................... 20

*Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531 (2004) ..................................... 20

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ........................................... 13, 26

*Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) ....................................... 17, 30

*Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001) .................................................. 18, 20, 22

*Meinecke v. City of Seattle*, 99 F.4th 514 (9th Cir. 2024) ................................................. 18, 22

*Mejia v. City of Los Angeles*, 156 Cal. App. 4th 151 (2007) ................................................... 23

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) .............................................................. 34

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) .................................................. 26

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ............................................... 29, 30

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................................................. 18

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) ......................................................... 20

*NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024) ...................................................... 3

*Powell v. SEC*, --- F.4th ----, No. 24-1899, 2025 WL 2233792 (9th Cir. Aug. 6, 2025) ............... 19, 20

vii

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ....... 33

*Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899 (1979) ..................................................... 22

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020)..................................................... 2

*Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020)..................................................................................... 34

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ............................................................................................ 20

*San Diego Cnty. Water Auth. v. Metro. Water Dist. of S. Cal.*, 12 Cal. App. 5th 1124 (2017).......... 23

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) .............................. 33

*Terminiello v. City of Chicago*, 337 U.S. 1 (1949) ........................................................................... 22

*Texas v. U.S. Environmental Protection Agency*, 829 F.3d 405 (5th Cir. 2016) ............................... 28

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)................................................................... 28

*Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557 (1996) .................................. 23, 24, 25

*TWA, Inc. v. Mattox*, 897 F.2d 773 (5th Cir. 1990) .......................................................................... 27

*United States v. Arizona*, 641 F.3d 339 (9th Cir. 2011), *rev'd in part on other grounds*, 567 U.S. 387
   (2012) ....................................................................................................................................... 26

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013)............................................................ 34

*Vargas v. City of Salinas*, 200 Cal. App. 4th 1331 (2011)............................................................... 22

*Vasquez v. Dep't of Pesticide Regul.*, 68 Cal. App. 5th 672 (2021) ............................................ 24, 25

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ....................................................................... 13

*Wolfgram v. Wells Fargo Bank*, 53 Cal. App. 4th 43 (1997)............................................................ 22

*X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024) ............................................................................... 3

*Zepeda v. U.S. I.N.S.*, 753 F.2d 719 (9th Cir. 1983) ........................................................................ 34

**Constitutional Provisions**

Cal. Const. art. I, § 3 .................................................................................................................... 22

U.S. Const. amend. I ................................................................................................................... 18

U.S. Const. art. VI........................................................................................................................ 14

**Statutes**

15 U.S.C. § 26 ............................................................................................................................. 26

42 U.S.C. § 7507 ........................................................................................................................... 4

42 U.S.C. § 7521 ............................................................................................. 3, 7, 8, 14

42 U.S.C. § 7521 ..................................................................................................... 5

42 U.S.C. § 7543 ................................................................................................... 3, 4

5 U.S.C. § 801 ................................................................................................... 10, 19

Cal. Civ. Code § 1668 .............................................................................................. 23

Cal. Civ. Code § 52.1 ............................................................................................... 22

Cal. Gov. Code § 11340.5 ........................................................................................ 24

Cal. Gov. Code § 11343 ........................................................................................... 25

Cal. Health & Safety Code § 43100 ......................................................................... 21

Cal. Health & Safety Code § 43151 ......................................................................... 21

Cal. Health & Safety Code § 43152 ......................................................................... 21

Cal. Health & Safety Code § 43153 ......................................................................... 21

Cal. Health & Safety Code § 43154 ..................................................................... 4, 11

**Regulations**

310 Mass. Code Regs. 7.40 ........................................................................................ 4

Cal. Code Regs. tit. 1, § 250 .................................................................................... 24

Cal. Code Regs. tit. 1, § 44 ...................................................................................... 25

Cal. Code Regs. tit. 1, § 5 ........................................................................................ 25

Cal. Code Regs. tit. 13, § 1900 .................................................................................. 5

Cal. Code Regs. tit. 13, § 1956.8 ............................................................................... 6

Cal. Code Regs. tit. 13, § 1963.1 ............................................................................... 5

Cal. Code Regs. tit. 13, § 1963.2 ............................................................................... 5

Cal. Code Regs. tit. 13, § 1963.3 ............................................................................. 32

Cal. Code Regs. tit. 13, § 1968.2 ............................................................................... 6

Cal. Code Regs. tit. 13, § 1971.1 ............................................................................... 7

Cal. Code Regs. tit. 13, § 1976 .................................................................................. 6

Cal. Code Regs. tit. 13, § 1978 .................................................................................. 6

Cal. Code Regs. tit. 13, § 2016 .................................................................................. 6

ix

**Rules**

Final Rule, Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4296 (Jan. 24, 2023) ........................................................... 7

Notice of Decision, Advanced Clean Cars II Waiver of Preemption, 90 Fed. Reg. 642 (Jan. 6, 2025) 6

Notice of Decision, Advanced Clean Trucks Waiver of Preemption, 88 Fed. Reg. 20688, 20689 (Apr. 6, 2023) ............................................................................................................................ 5

Notice of Decision, Malfunction and Diagnostic System Requirements for 2010 and Subsequent Model Year Heavy-Duty Engines, 81 Fed. Reg. 78149 (Nov. 7, 2016) ............................ 7

Notice of Decision, Omnibus Low NOx Regulation Waiver of Preemption, 90 Fed. Reg. 643 (Jan. 6, 2025) ................................................................................................................................ 6

**Other Authorities**

Advanced Clean Cars II, Cal. Off. of Admin. Law Approval, Docket No. EPA-HQ-OAR-2023-02926

California Executive Order N-27-25 ............................................................ 11, 16, 18, 21

CARB, Final Regulation Order, Title 13, Docket No. EPA-HQ-OAR-2022-0332 ............................ 6

CARB, Heavy-Duty On-Board Diagnostic System Requirements 2018 ............................ 7

CARB, Manufacturers Advisory Correspondence ECCD-2025-3 (May 23, 2025) .................... passim

CARB, Omnibus Regulation Clean Air Act Authorization Request Support Document (Jan. 31, 2022) ........................................................................................................................................ 7

CARB, On-Board Diagnostic Systems II ............................................................ 7

Clean Truck Partnership ...................................................................................... passim

David Shepardson, *California to Stop Buying GM, Toyota and Fiat Chrysler Vehicles Over Emissions Fight*, Reuters, Nov. 18, 2019 .................................................................... 12

July 29, 2025 Proposed Amendments to the Advanced Clean Fleets and Low Carbon Fuel Standard Regulations: Notice of Public Hearing ............................................................ 32

Letter from Steven S. Cliff, Executive Officer, CARB, to Jed Mandel, President, EMA (Oct. 14, 2022) ............................................................................................................................ 8

No. 53-Z, Cal. Regulatory Notice Reg. 1809 (Dec. 31, 2021) ............................................ 8

x

Press Release, CARB and truck and engine manufacturers announce unprecedented partnership to meet clean air goals (July 6, 2023) ............................................................................... 8

Press Release, CARB approves amendments to clean truck standards to provide flexibility while maintaining emissions benefits (July 24, 2025) ......................................................... 12, 31

Regulations Recently Filed with the Secretary of State, Cal. Off. of Admin. Law ............................ 25

Statement by the President, The White House (June 12, 2025) ................................................. 5, 6, 10

Western States Trucking Ass'n, *Petition for Office of Administrative Law Determination of Underground Rulemaking by California Air Resources Board* (June 18, 2025) ............................ 25

Withdrawal of California's Request for a Waiver (Jan. 13, 2025), Docket No. EPA-HQ-OAR-2023-0589 ........................................................................................................................... 6

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02255-DC

## INTRODUCTION

This case arises from California's violation of a prohibition in the Clean Air Act that expressly bars any state from adopting or attempting to enforce emissions standards preempted by federal law. In June of this year, the federal government statutorily preempted California's emissions standards governing heavy-duty vehicles and engines.  Notwithstanding that new law, the State of California continues to demand compliance with its heavy-duty emissions standards, and it has threatened any manufacturer who refuses to comply with the State's unlawful standards with civil sanctions and unfavorable regulatory treatment, while also taking measures to insulate itself from lawful challenges to those standards.  The United States has responded in turn through the Department of Justice, which issued cease-and-desist letters to Plaintiffs stating that "[f]ederal law … prohibits CARB from adopting or attempting to enforce" its emissions standards and directing each recipient to "immediately cease and desist [their] compliance" with those preempted emissions standards. *See, e.g.*, Potter Decl., Ex. D (U.S. Dep't of Just., Env't & Nat. Res. Div., Cease & Desist Letter (Aug. 7, 2025) [hereinafter Aug. 7, 2025 DOJ Letter]), at 1–2.  Plaintiffs—Original Equipment Manufacturers ("OEMs") that design, develop, manufacture, and sell heavy-duty vehicles and engines—are caught in the crossfire.  California demands that Plaintiffs follow preempted state laws; the United States maintains such laws are illegal and orders OEMs to disregard them.  This situation is not tenable.  Plaintiffs therefore filed this lawsuit and this motion to clarify their legal obligations under federal and state law, and to enjoin California from violating Plaintiffs' rights and enforcing standards preempted by federal law.

The Court should grant a preliminary injunction.  California's regulations, executive order, advisory correspondence, and attempts to enforce pre-June 2025 contractual terms as regulations are unquestionably impermissible attempts to adopt and enforce preempted state standards relating to the control of emissions as expressly prohibited by the Clean Air Act and recent Congressional action.  As such, Plaintiffs are very likely to prevail on their preemption claims.  California's attempts to use an executive order, advisory correspondence, and a set of commitments styled as a partnership agreement to insulate itself and its regulations from lawful advocacy and challenges violate the free speech and petitioning clauses of the U.S. and California Constitutions.  And California's attempts to enforce the

advisory correspondence and a July 2023 partnership agreement, which was entered into to harmonize state emissions requirements with the applicable federal law and regulations, unquestionably constitute "underground regulations" that govern an entire industry without being promulgated under the procedures required by the California Administrative Procedure Act ("APA").

Absent relief from this Court, Plaintiffs will be irreparably harmed. Plaintiffs have sought to resolve these issues with CARB since at least May of 2025, including with a May 20, 2025 letter voicing concerns regarding the market realities and the constitutionality of CARB's regulations, meeting with CARB via video conference on June 25, 2025 and further detailing those concerns, and sending a follow-up communication seeking a substantive CARB response to the very issues raised in this litigation. Plaintiffs never received a substantive response at all. After CARB's delay, Plaintiffs now urgently need relief, and file this motion accordingly. Complying with California's preempted and procedurally improper emissions standards will permanently harm the Plaintiffs' respective business reputations and goodwill. The months-long process of obtaining model-year emissions compliance certificates from California—a process that California still maintains the industry must follow as a prerequisite for new truck sales—requires significant investment and business-model choices, and the accompanying delays caused by California's actions will alienate customers and cause incalculable harm to Plaintiffs' business relations and goodwill. California's unlawful attempts to enforce its preempted standards will also cost the industry—at minimum—millions of dollars that cannot be recovered. And if the Plaintiffs refuse to comply, each is threatened with (and is potentially subject to) significant civil penalties and sanctions, including being prevented from selling their products in California altogether, all for failing to comply with California's preempted emissions standards while at the same time facing a conflicting mandate from the federal government to cease and desist from complying with those same standards. *See, e.g.*, Potter Decl., Ex. D (Aug. 7, 2025 DOJ Letter), at 2. Moreover, Defendants are also suppressing Plaintiffs' speech and petitioning rights in efforts to insulate their unlawful regulations and actions from challenge and public oversight. The loss of speech and petitioning freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury" suffered by all Plaintiffs. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020).

The equities and public interest weigh in favor of a preliminary injunction.  The public has a strong interest in respecting the vertical separation of powers between states and the federal government, in ensuring that express federal preemptions of state law and regulations are upheld, in preventing the state government from insulating itself from lawful challenges, and in ensuring that the state government promulgates regulations under the procedures required by California law.  California, by contrast, has no interest in enforcing unconstitutional preempted emissions standards; and even if it did, the equities and public interest always weigh against such enforcement.  *See Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).  Courts in this Circuit routinely enjoin government entities, on a preliminary basis, from enforcing laws that are preempted, that burden speech and petitioning rights, or that violate the California APA while claims against those laws are litigated.  *See, e.g.*, *X Corp. v. Bonta*, 116 F.4th 888, 904 (9th Cir. 2024); *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1125 (9th Cir. 2024); *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 477–83 (9th Cir. 2022); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 763 (9th Cir. 2022) (vacating denial of preliminary injunction in Supremacy Clause case on the basis of likelihood of success on the merits and remanding for further consideration of other factors).  For these reasons, this Court should preliminarily enjoin Defendants from directly or indirectly enforcing California's preempted emissions standards and mandates or any other unlawful enforcement action described herein during the pendency of this suit.

## STATEMENT OF FACTS

### I.     The Clean Air Act

In enacting the Clean Air Act, Congress sought to construct a nationwide regulatory regime focused on regulating emissions of pollutants emitted by new motor vehicles and engines.  42 U.S.C. § 7521.  Congress entrusted this endeavor to EPA and expressly preempted state enforcement of motor vehicle emissions standards or the imposition of state certification or other approval requirements absent a preemption waiver from EPA.  *See* 42 U.S.C. § 7543(a).

To implement this structure, Section 209(a) of the Clean Air Act expressly and unequivocally states that "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to

this part." *Id.* Section 209(a) also prohibits states from requiring "certification, inspection, or any other approval relating to the control of emissions … as a condition precedent" to initial sale or registration of a new vehicle or engine. *Id.*

Aware of the historical role that California played in regulating mobile source emissions, Congress also included Section 209(b), which allows EPA, under certain circumstances, and after public notice and comment, to grant a waiver of preemption so California can craft its own emissions standards under EPA's guidance. 42 U.S.C. § 7543(b). Section 209(b) gives EPA the authority to issue a preemption "waiver" to California to adopt and enforce its own vehicle emissions standards that are "at least as protective of public health and welfare as applicable Federal standards," if certain statutory criteria are met. *Id.* Section 177 of the Clean Air Act allows other states to adopt emissions standards identical to California's in lieu of the federal standards—in other words, to "opt-in" to the California program. 42 U.S.C. § 7507. Absent an EPA-approved waiver, however, any state law regulating new motor vehicle and engine emissions is expressly preempted under federal law. 42 U.S.C. § 7543(a). States are similarly prohibited from attempting to enforce emissions standards without an EPA waiver. *Id.*

An EPA preemption waiver granted under Section 209(b) also allows California to impose a requirement for "certification … or any other approval relating to the control of emissions … as a condition precedent to sale"—a practice otherwise forbidden by the second clause of Section 209(a). 42 U.S.C. § 7543(a). When successful, certification culminates in the issuance of an executive order from the California Air Resources Board ("CARB") approving a particular vehicle or engine for sale in California during that model year. Potter Decl. ¶ 5. Opt-in states may also require that manufacturers receive California certification before offering new vehicles or engines in their states. *See, e.g.*, 310 Mass. Code Regs. 7.40 ("[n]o person or other entity, including manufacturers, shall … deliver for sale … a new vehicle … in or into Massachusetts unless the vehicle has received a California ARB Executive Order for all applicable requirements of Titles 13 and 17 [California Code of Regulations]"). Selling vehicles in California without a CARB certification is a serious offense that carries substantial civil penalties. *See* Cal. Health & Safety Code § 43154(a)(1). However, any certification

4

requirements—including the requirement for manufacturers to receive an order from CARB authorizing initial retail sales in California—are preempted by Section 209 of the Clean Air Act if the state lacks a preemption waiver for the corresponding emissions standards.

## II.    California's Regulation of Heavy-Duty Vehicle Emissions

Between 2021 and 2023, CARB promulgated a series of regulations imposing emission standards significantly more stringent than their federal counterparts and applicable to the new vehicles and engines manufactured by the OEM Plaintiffs—including larger trucks, such as tractor-trailers, categorized as "heavy-duty" under the regulations, and more moderately sized, generally commercial vehicles categorized as "medium-duty."[1]  All of those regulations are preempted by federal law, either because the specific regulatory program was explicitly preempted due to Congressional action or because CARB acted without a waiver and, in fact, never received a federal waiver for the program at all.

*First*, as explained further below, Congress recently passed and the President signed federal legislation expressly preempting California's heavy-duty vehicle emissions standards under the Clean Air Act, thereby prohibiting California (or any other state) from attempting to enforce California's standards.  *See* Statement by the President, The White House (June 12, 2025) ("June 12 Statement by the President"), https://perma.cc/Y4JJ-4HLS.  The legislatively preempted California regulations include the following:

- The **Advanced Clean Trucks Regulation** requires manufacturers to sell increasing percentages of zero-emission vehicles year-over-year.  Cal. Code Regs. tit. 13, §§ 1963.1, 1963.2.  In April 2023, EPA granted a waiver request for the then-current version Advanced Clean Trucks.  Notice of Decision, Advanced Clean Trucks Waiver of Preemption, 88 Fed. Reg. 20688, 20689 (Apr. 6, 2023).  On June 12, 2025, the President signed legislation disapproving this waiver such that Advanced Clean Trucks is "fully and expressly preempted by the Clean Air Act and cannot be implemented."   June 12

---

[1] California regulations for emissions from new motor vehicles and engines are divided into categories based on vehicle weight; the largest vehicles and engines are categorized as "heavy-duty," moderately sized vehicles used in commercial applications fall into the "medium-duty" category, and most cars and pickup trucks are referred to as "light-duty."  *See, e.g.*, Cal. Code Regs. tit. 13, §§ 1900 (b)(5), (b)(6).  Federal law also categorizes certain types of vehicles as "heavy-duty" vehicles or engines.  *See, e.g.*, 42 U.S.C. § 7521(a)(3)(B) (directing EPA to set emissions standards applicable to "heavy duty vehicles or engines").  This motion refers to "heavy-duty trucks" or "heavy-duty vehicles" as shorthand for all the vehicles and engines, including medium-duty vehicles and engines, covered by the California regulations described herein and which are manufactured by Plaintiffs.

Statement by the President.

- The **Omnibus Low NOx Regulation** requires manufacturers to reduce heavy-duty vehicle emissions of oxides of nitrogen (NOx) and particulate matter. *See* Cal. Code Regs. tit. 13, § 1956.8. *See* CARB, Final Regulation Order, Title 13, at 3, Docket No. EPA-HQ-OAR-2022-0332, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005. In January 2025, just before the Presidential inauguration, EPA granted a preemption waiver request for Omnibus Low NOx—reaching both the criteria pollutant standards and other regulatory modifications. Notice of Decision, Omnibus Low NOx Regulation Waiver of Preemption, 90 Fed. Reg. 643 (Jan. 6, 2025). On June 12, 2025, the President signed legislation disapproving this waiver such that Omnibus Low NOx is "fully and expressly preempted by the Clean Air Act and cannot be implemented." June 12 Statement by the President.

- The **Advanced Clean Cars II Regulation** primarily applies to light-duty vehicles (*e.g.*, cars and pickup trucks) but includes modifications to several other regulatory programs that apply to heavy-duty vehicles and engines. For both heavy-duty vehicles and engines, Advanced Clean Cars II modified standards for evaporative emissions, Cal. Code Regs. tit. 13, § 1976, and refueling emissions, Cal. Code Regs. tit. 13, § 1978. *See* Advanced Clean Cars II, Cal. Off. of Admin. Law Approval ("ACC II OAL Approval"), at 227–30, Docket No. EPA-HQ-OAR-2023-0292, https://www.regulations.gov/document/EPA-HQ-OAR-2023-0292-0016. The on-board diagnostics standards applicable to medium-duty vehicles were also modified in Advanced Clean Cars II. Cal. Code Regs. tit. 13, § 1968.2, ACC II OAL Approval at 284–304. EPA approved the waiver for Advanced Clean Cars II, including the changes affecting heavy-duty vehicles and engines, on January 6, 2025, during the last days of the Biden Administration. Notice of Decision, Advanced Clean Cars II Waiver of Preemption, 90 Fed. Reg. 642 (Jan. 6, 2025). On June 12, 2025, the President signed legislation disapproving this waiver such that Advanced Clean Cars II is "fully and expressly preempted by the Clean Air Act and cannot be implemented." *See* June 12 Statement by the President. Therefore, the evaporative emissions and refueling emissions standards applicable to heavy-duty vehicles and medium-duty on-board diagnostics standards, which were included in Advanced Clean Cars II, likewise lack a waiver and are thus preempted.

*Second*, California has sought to implement other emission standards for which it has never obtained an EPA waiver of federal preemption.

- The **Advanced Clean Fleets Regulation** requires, among other things, that manufacturers exclusively sell zero-emission vehicles in California beginning in model year 2036. Cal. Code Regs. tit. 13, § 2016. CARB submitted a waiver request for Advanced Clean Fleets to EPA in July 2024; it withdrew the request in January 2025. *See* Withdrawal of California's Request for a Waiver (Jan. 13, 2025), Docket No. EPA-HQ-OAR-2023-0589, https://www.regulations.gov/docket/EPA-HQ-OAR-2023-0589.

- The **Phase 2 Greenhouse Gas Regulations** reduced greenhouse gas emissions standards for heavy-duty vehicles and partially aligned California standards with the federal Phase 2 Greenhouse Gas standards but with some differences. *See* CARB, Omnibus

6

Regulation Clean Air Act Authorization Request Support Document, 37 (Jan. 31, 2022), https://perma.cc/7GSJ-QTBJ. CARB previously signaled its intent to submit a waiver request to EPA for its Phase 2 Greenhouse Gas emissions standards, but there is no public record that CARB has submitted such a request. *See id.*

- The **Heavy-Duty On-Board Diagnostic Regulations** apply to the self-diagnostic systems incorporated into the computers of vehicles to monitor vehicle and engine components that can impact emissions performance. *See* Cal. Code Regs. tit. 13, § 1971.1. California has not obtained a waiver for its standards at section 1971.1 since 2016, which only covered amendments to the rule through 2013. *See* Notice of Decision, Malfunction and Diagnostic System Requirements for 2010 and Subsequent Model Year Heavy-Duty Engines, 81 Fed. Reg. 78149 (Nov. 7, 2016). CARB amended the regulation in 2016 and 2019. CARB, On-Board Diagnostic Systems II, https://perma.cc/TV8H-HKLB (documenting adoption on July 25, 2016); CARB, Heavy-Duty On-Board Diagnostic System Requirements 2018, https://perma.cc/P65V-YR8Q (documenting adoption of standards on Oct. 3, 2019). Because these later amendments lack waivers, the standards currently adopted under California law are preempted under Section 209.

Each of these California emissions standards is expressly preempted under federal law.

### III.    Regulatory Uncertainty and the Clean Truck Partnership

From 2020 to 2023, as California adopted its flurry of regulations, the heavy-duty truck and engine manufacturers raised serious concerns about the legality of CARB's actions and the practicability of meeting CARB's standards within the timeline allotted. Two of those objections are particularly salient here.

*First*, manufacturers expressed concern about Omnibus Low NOx being dramatically different from its federal counterpart. As EPA noted in its rulemaking for criteria pollutant standards, Omnibus Low NOx imposed emissions standards "even more stringent" than the *most* stringent rules considered by EPA. *See* Final Rule, Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4296, 4301 (Jan. 24, 2023). *Second*, manufacturers did not believe California's emissions standards were feasible or legal, as they failed to provide sufficient lead time for compliance—the Clean Air Act requires four years of lead time and a three-year regulatory stability period for heavy-duty emissions standards, 42 U.S.C. § 7521(a)(3)(C), but when CARB promulgated new emissions standards in the Omnibus Low NOx regulation, it did not provide this requisite four-year statutory lead time. Instead, CARB adopted standards on December 22, 2021, that became

effective in model year 2024, which amounts to only two full model-years of lead time.  Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C); 2021, No. 53-Z, Cal. Regulatory Notice Reg. 1809 (Dec. 31, 2021), https://perma.cc/9JCQ-3NHA.

After the initiation of litigation between the manufacturers and CARB regarding this issue, California expressed an interest in "exploring areas of alignment between state and federal combustion rules"—a potential path out of the regulatory quagmire for heavy-duty truck and engine manufacturers.[2]  Thus, in July 2023, CARB announced the Clean Truck Partnership ("CTP"), a document styled as an "agreement" between a regulator—CARB—on one hand, and a regulated industry—heavy-duty truck and engine manufacturers, along with their trade association—on the other.[3]  The Clean Truck Partnership outlined a plan for CARB to undertake certain regulatory actions sought by industry.  CARB stated that it would provide four years of lead time for future rules, as required by federal law and as the manufacturers had requested in litigation against CARB.  *See* 42 U.S.C. § 7521(a)(3)(C); CTP ¶ 5.  CARB also agreed to propose amendments that would harmonize Omnibus Low NOx emissions standards with the corresponding federal standards, subject to certain limited exceptions—in effect, agreeing to a more achievable, harmonized low-NOx standard that would apply nationwide, as manufacturers had consistently proposed during the Omnibus Low NOx rulemaking.  CTP ¶ 1(iii), ¶ 7.  And CARB agreed to work with industry to improve the feasibility of the mandates in Advanced Clean Trucks.  CTP App'x C, ¶ B.  The Clean Truck Partnership was thus intended to resolve litigable issues, and to help align and harmonize compliance with state and federal emission standards.

Although the document was labeled as an "agreement," the design, intent, and effect of the Clean Truck Partnership was to implement California's regulatory framework through an additional "contractual" means of enforcement that would forestall pending challenges under federal law as it then existed.  For this reason, the U.S. Department of Justice has described the "agreement" as an independent "regulatory mechanism by which CARB attempts to enforce" its preempted emissions

---

[2] Letter from Steven S. Cliff, Executive Officer, CARB, to Jed Mandel, President, EMA (Oct. 14, 2022), https://perma.cc/3RQF-XXV2.

[3] Press Release, CARB and truck and engine manufacturers announce unprecedented partnership to meet clean air goals (July 6, 2023), https://perma.cc/85J7-U75K.

standards. *See, e.g.*, Potter Decl., Ex. D (Aug. 7, 2025 DOJ Letter), at 2. The Clean Truck Partnership does this in two ways. First, the Clean Truck Partnership dictates that even under certain circumstances where CARB lacks authority for Advanced Clean Trucks, Omnibus Low NOx, or 100 percent zero-emission vehicle sales requirement of Advanced Clean Fleets, manufacturers must continue to comply with those standards. CTP ¶ 2 ("The OEMs commit to meet, in California, the relevant provisions of the CARB regulations … irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations."). Next, the Clean Truck Partnership provides that "California will maintain its certification program," asserting CARB's authority to impose certification requirements on manufacturers regardless of its legal authority to do so. CTP App'x B, i. By creating a regulatory structure that manufacturers must follow, even when CARB has lost federal authority under certain circumstances, the Clean Truck Partnership became a backstop for CARB to enforce its standards, even if those standards were vitiated through litigation.

Furthermore, the Clean Truck Partnership created a new category of regulatory restrictions: limits on the rights of Plaintiffs to speak freely and petition the government. It prohibits manufacturers from challenging enumerated CARB standards, including Omnibus Low NOx, Advanced Clean Trucks, and the Advanced Clean Fleets 100 percent zero-emission vehicle sales requirement. To that end, the Clean Truck Partnership dictates: "[manufacturers] will not (i) challenge CARB's issuance of [specific regulations]; (ii) file a Petition for Review or otherwise challenge any EPA waiver or authorization granted for such regulations; (iii) file amicus briefs supporting challenges to such waivers or authorizations, or such regulations; or (iv) support stay motions or similar motions practice challenging such waiver or authorization decisions, or such regulations." CTP ¶ 4.

The Clean Truck Partnership further limits the Plaintiffs' advocacy rights in any state considering adopting CARB's Omnibus Low NOx or Advanced Clean Trucks emissions standards, and bars "legally challeng[ing] or support[ing] others' legal challenges to any state's adoption of the regulations" at issue. CTP App'x D, ¶ A. It explicitly imposes a requirement to "support or not oppose the adoption of CARB's Omnibus [Low NOx] regulations in any prospective Section 177 states" for model

year 2027 and later and remain "neutral … in response to any prospective Section 177 States' proposals to consider adopting CARB's [Advanced Clean Trucks] regulations."  CTP App'x D, ¶¶ C–E.

In sum, through the Clean Truck Partnership, CARB has imposed industry-wide emissions standards and certification requirements, while at the same time demanding insulation from judicial review for its failure to comply with the federal Clean Air Act.  CARB imposed the Clean Truck Partnership in its capacity as an industry regulator, not in its capacity as a market participant.

## IV.    The Federal Government Enacts Law Preempting CARB's Regulations

On June 12, 2025, the President signed joint resolutions adopted under the Congressional Review Act thereby creating new federal laws that expressly preempt California's heavy-duty vehicle emissions standards under the Clean Air Act, and that invalidated the EPA's earlier waiver determinations for Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II.  *See* H.R.J. Res. 87, 119th Cong. (2025); H.R.J. Res. 88, 119th Cong. (2025); H.R.J. Res. 89, 119th Cong. (2025).  As a result, Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II are "fully and expressly preempted by the Clean Air Act and cannot be implemented."  June 12 Statement by the President; *see also* 5 U.S.C. § 801(b)(1).  These waivers cannot "be reissued in substantially the same form" by U.S. EPA unless authorized later by another legislative action by Congress.  *Id.*; 5 U.S.C. § 801(b)(2).

More recently, on August 7, 2025, the U.S. Department of Justice sent letters to Plaintiffs reiterating the federal government's position that the Congressional Review Act resolutions have preempted CARB's regulations—and further stating that the Clean Truck Partnership is itself a preempted "regulatory mechanism by which CARB" is unlawfully attempting to "circumvent federal law."  Potter Decl., Ex. D (Aug. 7, 2025 DOJ Letter), at 1–2.  Each letter concludes by ordering: "You must therefore immediately cease and desist your compliance with both the Clean Truck Partnership and its preempted state vehicle emission regulations."  *Id.* at 2 (emphasis removed).

## V.    California Continues to Enforce Preempted Emissions Standards

Notwithstanding the express preemption of its regulations, California has stated that it will continue to enforce the preempted emissions standards included in the Advanced Clean Trucks, Omnibus

10

Low NOx, and Advanced Clean Cars II regulations, and require manufacturers to certify compliance before selling new vehicles in California regardless of the applicable federal law.

**Manufacturers Advisory Correspondence.**  On May 23, 2025, CARB issued Manufacturers Advisory Correspondence in response to the Congressional resolutions of disapproval for CARB's preemption waivers.  CARB, Manufacturers Advisory Correspondence ECCD-2025-3 (May 23, 2025) ("May 23, 2025 MAC").  The May 23, 2025 MAC requires manufacturers to continue to certify their compliance with CARB's emissions standards as conditions precedent to sale—even though those standards and conditions have been preempted.  *Id.* at 2–3.  The May 23, 2025 MAC states that such compliance is necessary to "ensure the requirements of certification are met to enable lawful vehicle sales in California" under Section 43151 of the California Health and Safety Code, *id.* at 2, which is enforceable through fines of up to $48,788 per violation, Cal. Health & Safety Code § 43154(a)(1.  The May 23, 2025 MAC also establishes CARB's view that the Clean Truck Partnership remains in force. *See id.* ("This is necessary to … facilitate meeting the commitments of the Clean Truck Partnership[.]").  Thus, CARB has threatened to impose substantial fines against any manufacturer who sells new vehicles in California without a CARB certificate notwithstanding the fact that the Clean Air Act expressly prohibits such certifications in the absence of a waiver.  42 U.S.C. § 7543(a).  CARB has not withdrawn the May 23, 2025 MAC, notwithstanding the revocation of waivers under the Congressional Review Act.

**Executive Order N-27-25.**  On June 12, 2025, Governor Newsom issued Executive Order N-27-25, which directs CARB to ensure that manufacturers that continue to certify compliance with California's preempted emissions standards are "prioritize[d] … in government vehicle procurement decisions," and receive priority "funding" to "support the purchase of zero-emission vehicles."  Executive Order N-27-25, at 2–3.  It also directs CARB to identify other "opportunities for special considerations and flexibilities" for manufacturers that comply with the preempted emissions standards when crafting future regulations, further seeking to compel regulatory compliance.  Executive Order N-27-25, at 3.  By contrast, none of these privileges or opportunities will be extended to manufacturers who do not follow the standards "regardless of the status of those regulations under federal law."  *Id.*

11

1    Instead, Executive Order N-27-25 intimates that such manufacturers will be put on California's "man-

2    ufacturer purchasing restriction list," *id.*, as indeed California has done to disfavored vehicle manufac-

3    turers during a prior dispute over whether California's emissions regulations were preempted.  *See,*

4    *e.g.*, David Shepardson, *California to Stop Buying GM, Toyota and Fiat Chrysler Vehicles Over Emis-*

5    *sions Fight*, Reuters, Nov. 18, 2019, https://www.reuters.com/article/idUSL2N27Y0HU/.   The Cali-

6    fornia Executive Order thus purports to adopt and enforce California's separate emissions standards in

7    direct conflict with federal law.

8            **July 24, 2025 ACT Amendments.**  On July 24, 2025, CARB issued a press release stating that

9    CARB approved amendments to the Advanced Clean Trucks regulation and Zero-Emission Powertrain

10   Certification standards.  Press Release, CARB approves amendments to clean truck standards to pro-

11   vide flexibility while maintaining emissions benefits (July 24, 2025), https://perma.cc/8D4R-A26K

12   (hereinafter "CARB ACT Amends. Press Release").   While the press release notes the amendments

13   constitute only "minor changes" to the standards, it doubles down on Defendants' continued enforce-

14   ment of the preempted rules.  *Id*.  Not only does the press release recite that "truck manufacturers

15   committed to meeting CARB's regulations in the state regardless of CARB's overall authority to im-

16   plement those regulations," it goes on to assert that "certification applications for 2026 models" are

17   required to "enable lawful vehicle sales in California."  *Id*.

18   **VI.    Plaintiffs Repeatedly Seek Needed Regulatory Clarity from CARB**

19           More than four months ago, Plaintiffs first asked CARB to engage with them on the issues

20   raised in this case.  On May 20, 2025, Jed Mandel, President of the Truck and Engine Manufacturers

21   Association ("EMA"), sent a letter to Steve Cliff, Executive Officer of CARB on behalf of EMA mem-

22   bers, including all four Plaintiffs here.  *See* Brass Decl. Ex. A.  In that letter, EMA explained that

23   circumstances had changed since the Clean Truck Partnership was signed, including CARB's with-

24   drawal of its request for a preemption waiver for its Advanced Clean Fleets rule, and CARB's indica-

25   tion that it would not seek new waiver determinations from EPA, and that multiple lawsuits had been

26   filed challenging the legality of the Clean Truck Partnership.  *Id*.  EMA asked that CARB and EMA

27   "promptly discuss needed regulatory changes, such as the repeal of [Advanced Clean Trucks] (as

28

1    CARB agreed to do with the [Advanced Clean Fleets]), the elimination of Paragraph 2 of the CTP, or

2    any requirement that the OEMs comply with [Advanced Clean Truck]'s requirements without a valid

3    waiver from the EPA." *Id.* at 2.  CARB never responded to this letter.  Brass Decl. ¶ 4.

4            On June 25, 2025, Plaintiffs engaged further with representatives from CARB and representa-

5    tives from the California Department of Justice about the issues raised in this lawsuit.  Brass Decl. ¶ 6.

6    During that meeting, the OEMs explained that they were "between a rock and a hard place" given the

7    Congressional Review Act and CARB's positions, that CARB's standards were preempted, that the

8    Clean Truck Partnership violated the OEMs' speech rights, and that CARB had not met its commit-

9    ments under the Clean Truck Partnership.  *Id.*  Plaintiffs never received a substantive response to that

10   discussion either.  *See* Brass Decl. Ex. B.

11           On July 7, 2025, having heard nothing, Plaintiffs sent CARB representatives an email request-

12   ing a timely response to the issues raised in their May 20, 2025 letter and in the June 25, 2025 meeting.

13   Brass Decl. Ex. B.  Plaintiffs requested a discussion that week.  *Id.*  Deputy Attorney General Jonathan

14   Wiener responded on July 7 that CARB would "get back with some times for a follow-up conversation

15   shortly."  *Id.*  No follow-up conversation was proposed, and on July 21, 2025 Mr. Wiener replied that

16   CARB and/or the California Department of Justice were "still discussing and planning to follow up

17   soon."  *Id.*  No further substantive outreach from CARB or the California Department of Justice ever

18   occurred.  After four months, Plaintiffs still lack any regulatory clarity.  Brass Decl. ¶ 6.

19                                        **LEGAL STANDARD**

20           Preliminary injunctive relief is warranted where a plaintiff establishes (i) a likelihood of success

21   on the merits; (ii) a likelihood of irreparable harm absent relief; and (iii) that the equities and public

22   interest weigh in favor of a preliminary injunction.  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20

23   (2008); *Klein v. City of San Clemente*, 584 F.3d 1196, 1199 (9th Cir. 2009); *see also Doe v. Horne*,

24   115 F.4th 1083, 1098 (9th Cir. 2024) ("The third and fourth factors, harm to the opposing party and

25   weighing the public interest, 'merge when the Government is the opposing party.'").  Within the Ninth

26   Circuit, courts balance each element "so that a stronger showing of one element may offset a weaker

27   showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  So,

28                                                13

for example, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction." *Id.* at 1131–32.

**ARGUMENT**

The Court should issue a preliminary injunction barring California from enforcing, or attempting to enforce, all the preempted regulations discussed above, including through any attempted enforcement of the Clean Truck Partnership. Plaintiffs are highly likely to prevail on the merits, will suffer irreparable harm during the pendency of this litigation, and the balance of equities strongly favors granting the requested preliminary relief.

**I.     Plaintiffs Are Likely to Prevail on the Merits.**

Plaintiffs bring seven claims against Defendants: three preemption claims, one First Amendment claim, one claim under Article I, Section 3 of the California Constitution, and two claims under the California Administrative Procedure Act. Plaintiffs are likely to prevail on the merits of each.

**A.     California's Conduct Is Preempted by the Clean Air Act and Violates the Supremacy Clause.**

The Supremacy Clause of the U.S. Constitution enshrines the "Laws of the United States" as "the supreme Law of the Land," U.S. Const. art. VI, and "provides the constitutional foundation for federal authority to preempt state law." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016). Congress expressly preempts state law "when the text of a federal statute explicitly manifests Congress's intent to displace state law." *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022). "Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc., v. Easterwood*, 507 U.S. 658, 663 (1993).

In enacting the Clean Air Act, Congress sought to construct a nationwide regulatory regime focused on limiting emissions of certain pollutants from new motor vehicles. 42 U.S.C. § 7521. Congress entrusted this endeavor to EPA and expressly preempted State enforcement of new motor vehicle emissions standards and the imposition of State emission-certification requirements. *See* 42 U.S.C. § 7543(a). Specifically, Section 209(a) of the Clean Air Act states that "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions

14

from new motor vehicles or new motor vehicle engines subject to this part." *Id.* Section 209(a) also prohibits states from requiring "certification, inspection, or any other approval relating to the control of emissions … as condition precedent" to initial sale or registration of a new vehicle or engine. *Id*.

California's heavy-duty truck emissions standards and its attempts to enforce them are preempted by the Clean Air Act:

*First*, California's emissions standards and conditions precedent to the sale of new heavy-duty vehicles and engines are preempted by federal law. This is indisputably true for all of the standards and other emissions-related requirements contained in Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II regulations, the preemptions waivers for which were *explicitly* revoked by Congressional resolutions enacted pursuant to the Congressional Review Act. Without any operative waivers, CARB is therefore preempted from "attempt[ing] to enforce" or requiring "certification, inspection, or any other approval relating to" a manufacturer's compliance with Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II. 42 U.S.C. § 7543(a). This prohibition also reaches evaporative emissions and refueling emissions standards applicable to heavy-duty vehicles and medium-duty on-board diagnostics standards, which were included in the Advanced Clean Cars II waiver, as well as the heavy-duty warranty, zero-emission airport shuttles, and certification of zero-emission powertrain regulations included in the Advanced Clean Trucks waiver.

The Clean Air Act also expressly preempts the heavy-duty vehicle emissions standards for which California never obtained a waiver: Advanced Clean Fleets, Phase 2 Greenhouse Gas, and the current version of Heavy-Duty On-Board Diagnostics. CARB withdrew its waiver request to EPA for Advanced Clean Fleets on January 13, 2025, before EPA could make a waiver decision. There is no public indication that CARB has submitted a waiver request to EPA for Phase 2 Greenhouse Gas, despite the fact that this emissions standard arguably applies to model year 2026 vehicles. And CARB failed to obtain a waiver for the current version of the Heavy-Duty On-Board Diagnostic rule, and thus the standards currently adopted in California have no waiver. For these reasons, these regulations must be considered legal nonentities.

*Second*, in direct conflict with the Clean Air Act and the Supremacy Clause, California is

15

"attempt[ing] to enforce" its preempted emissions standard through CARB's May 23, 2025 MAC and Governor Newsom's Executive Order N-27-25.  The May 23, 2025 MAC requires manufacturers to continue to certify their compliance with CARB's emissions standards and conditions precedent to sale—even though those standards and conditions have been and are preempted.  May 23, 2025 MAC at 2–3.  The May 23, 2025 MAC states that such compliance is necessary to "ensure the requirements of certification are met to enable lawful vehicle sales in California" under Section 43151 of the California Health and Safety Code.  *Id.* at 2 (citing Cal. Health & Safety Code § 43154(a)(1)).  CARB has threatened to impose substantial fines against any manufacturer who sells vehicles in California without a CARB certificate notwithstanding the fact that the Clean Air Act expressly prohibits such certification requirements in the absence of a waiver.  42 U.S.C. § 7543(a).  Executive Order N-27-25 likewise directs CARB to penalize any heavy-duty vehicle manufacturers that fail to certify compliance with CARB's preempted emissions standards.  Those penalties include deprioritizing the non-certifying "manufacturers in government vehicle procurement decisions," cutting their access to "funding" relating to "the purchase of zero-emission vehicles," and leveraging any other "special considerations and flexibilities" in crafting future rules to disadvantage non-certifying manufacturers.  Executive Order N-27-25 at 3.

The Clean Air Act explicitly prohibits any "*attempt* to enforce any standard" relating to a state emissions standard that does not have a lawful preemption waiver, 42 U.S.C. § 7543(a) (emphasis added), and any "attempt" to enforce a preempted emissions standard includes preliminary acts falling short of an enforcement action for penalties.  *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 257 (2004).  Thus, California's apparent threats to enforce CARB's preempted emissions regulations violate the Supremacy Clause.  *See, e.g.*, *id.* at 254–55 (2004).

*Third*, California is also trying to use the Clean Truck Partnership to enforce its preempted emissions standards in violation of the Clean Air Act and the Supremacy Clause.  The purpose of the CTP, created in 2023 when California's waivers allowed it to enforce its own emissions standards, was to align and harmonize the applicable state and federal heavy-duty emissions standards, thereby facilitating manufacturers' certification and compliance obligations, and to provide for requisite regulatory

lead time and stability periods going forward. To that end, CTP committed manufacturers to follow then-applicable law, including Omnibus Low NOx, Advanced Clean Trucks, and the 100 percent zero-emission sales requirement in Advanced Clean Fleets, even if a party successfully challenged those regulations or CARB's enforcement authority in court. CTP ¶ 2. For its part, CARB agreed to extend compliance deadlines and pursue certain regulatory amendments to align federal and state emissions standards. CTP ¶¶ 1(iii), 7. But CARB failed to pursue those amendments in the manner required, nor can it do so now given that Congress and the President have enacted laws expressly prohibiting California from implementing its own emissions standards. Undeterred, CARB seeks to use the CTP for an entirely different (and impermissible) purpose—to serve as a separate backstop regulation, supposedly beyond the reach of preemption and federal law, to enforce CARB's preempted rules in defiance of federal law. *Cf. Am. Free Enter. Chamber of Com. v. Engine Mnfs. Ass'n*, No. 3:24-cv-50504 (N.D. Ill. Dec. 16, 2024) (December 2024 lawsuit against CARB and the signatories to the Clean Truck Partnership seeking a declaratory judgment that the agreement is preempted and unlawful and an order enjoining the agreement's enforcement).

The Clean Truck Partnership does not and cannot open a backdoor through which Defendants can evade the Supremacy Clause, nor can it lawfully operate as an end-run around legislative action or a judicial decision that voids CARB's emissions standards. Federal law is "the supreme law of the land," and where Congress has expressly preempted state law—as it has done here in the Clean Air Act and with the revocation of EPA waivers through the Congressional Review Act—federal law controls. *See, e.g.*, *Ass'n des Éleveurs de Canards*, 33 F.4th at 1114. The Supremacy Clause does not turn on the creativity of the State's actions. *Cf. Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583, 593 (1926). Were the Supremacy Clause so easily evaded, states would routinely do exactly what California tries here: cloak emissions standards with the term "agreement," insert a preemption savings clause, and then insist those agreements are nonetheless enforceable even if unlawful and unconstitutional. But a state cannot use a contract to compel action "that the government could not have [otherwise] constitutionally ordered the person" to do. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013).

For all these reasons, Plaintiffs have done more than raise "serious questions" going to the merits of the federal preemption claims. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). California seeks to enforce plainly preempted emissions standards and the Clean Truck Partnership in violation of both the Clean Air Act and the Supremacy Clause, and preliminary injunctive relief is warranted in such circumstances. *See, e.g.*, *Geo Grp.*, 50 F.4th at 763 (vacating denial of preliminary injunction in Supremacy Clause case); *Chamber of Com. of the U.S. of Am. v. Bonta*, 62 F.4th 473, 490 (9th Cir. 2023) (affirming preliminary injunction against a California rule preempted by the Federal Arbitration Act); *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 771 (9th Cir. 2018) (similar).

### B.    California's Conduct Violates the First Amendment.

The Ninth Circuit has "articulated a unique likelihood-of-success standard in First Amendment cases: '[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction on speech.'" *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024) (quoting *Council for Educ. & Rsch. on Toxics*, 29 F.4th at 478). Plaintiffs' challenge is more than "colorable," and Defendants cannot meet their burden to justify Executive Order N-27-25, the May 23, 2025 MAC, and the Clean Truck Partnership—conduct that violates the First Amendment.

At the heart of the First Amendment is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Standing shoulder to shoulder with the citizenry's interest in uninhibited, robust debate on public issues is its equally profound "mistrust of governmental power." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). To protect these freedoms, the First Amendment generally prohibits government officials from "impos[ing] rules and conditions which in effect insulate [their] own laws from legitimate judicial challenge." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001). A condition that restricts a citizen's right to bring lawful challenges against the government will be void and unenforceable if the government's asserted interests in enforcing that condition

are outweighed by strong policy interests that are rooted in the First Amendment. *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1399 (9th Cir. 1991). By contrast, a condition that requires a private party to forfeit their First Amendment rights is valid and enforceable if the government has a compelling interest in the restriction and there is a sufficiently "close nexus—a tight fit—between the specific interest the government seeks to advance … and the specific right waived." *Id.* Importantly, this weighing exercise is not static or fixed. The government's interest in conditioning favorable treatment on a private party forfeiting a constitutional right "may wane as time passes." *Powell v. SEC*, --- F.4th ----, No. 24-1899, 2025 WL 2233792, at *11 (9th Cir. Aug. 6, 2025).

Here, whatever compelling interest Defendants might have had pre-June 2025 in enforcing the Clean Truck Partnership and its restrictions limiting Plaintiffs' rights to challenge those conditions, such interests no longer exist today. Indeed, when the parties entered into the CTP in 2023, the federal government had not yet enacted laws that specifically preempted California from enforcing the standards at issue. On the contrary, at that time, California had obtained—and was in the process of obtaining—Clean Air Act waivers from EPA that allowed California to adopt and enforce its own heavy-duty vehicle emissions standards. But in June 2025, the federal government statutorily vitiated California from enforcing any and all of the emissions standards contained in the CTP, a contingency not contemplated or covered by the document. *See* CTP ¶ 2 (providing that Plaintiffs' commitments are triggered by successful "*litigation* challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations"). And just as importantly, EPA cannot in the future grant California the waivers it needs to adopt or attempt to enforce the now-preempted emission standards contained in the CTP—or any other versions "in substantially the same form"—without a subsequent act of Congress specifically authorizing such action. *See* 5 U.S.C. § 801(b)(2). The Clean Truck Partnership did not contemplate the current scenario, in which CARB's emissions standards have been entirely preempted by intervening federal legislation. Because Defendants have no interest, let alone a compelling one, in enforcing preempted emissions standards, there can no longer be a "close nexus … between the specific interest the government seeks to advance" by restricting Plaintiffs'

19

speech "and the specific right waived." *Davies*, 930 F.2d at 1399.[4]

On the other side of the ledger, "[c]riticism of government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).  Therefore, the public interest against enforcing the speech restrictions set forth in the Clean Truck Partnership is "of the highest order," whereas Defendants have no interest at all in suppressing legitimate challenges against unlawful emissions standards.  *Davies*, 930 F.2d at 1397; *Velazquez*, 531 U.S. at 548.  That imbalance in interests suggests a First Amendment violation in and of itself.  But even setting that aside, the Partnership's speech restrictions are simply too sweeping to satisfy any "nexus" requirement. *Powell*, --- F.4th ----, 2025 WL 2233792, at *11.  Indeed, the text of the Clean Truck Partnership not only prevents Plaintiffs from challenging CARB's standards, but it also requires them to support or remain neutral towards "any prospective Section 177 states' proposals" to implement CARB's preempted standards.  CTP ¶ 2, App'x D.

Government officials cannot, without violating the First Amendment, require their citizens to follow unlawful regulations or force them "to adopt—as their own—the Government's view on an issue of public concern" as a condition of receiving favorable regulatory treatment.  *Agency for Int'l Dev. v. All. for Open Society Int'l, Inc.*, 570 U.S. 205, 218 (2013).  Here, Defendants have threatened to engage in "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action" in retaliation for speaking against or challenging the government.  *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024).  Specifically, Governor Newsom issued Executive Order N-27-25, which directs CARB to penalize any heavy-duty truck manufacturers that

---

[4] Because enforcement of the CTP would violate the First Amendment of the United States Constitution, even if the CTP were characterized as a contract, it cannot be enforced by Defendants now.  *See Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543 (2004) ("[A] violation of federal law is a violation of law for purposes of determining whether or not a contract is unenforceable[.]").  Contracts must adhere to legal standards to be enforceable.  *Ashker v. Newsom*, 968 F.3d 939, 944 (9th Cir. 2020).  And "[t]he general rule [is] that illegal contracts are not enforceable." *Bassidji v. Goe*, 413 F.3d 928, 932 (9th Cir. 2005); *see also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) ("[O]ur cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law.").  Under the radically changed circumstances following the revocation of CARB's waivers pursuant to the Congressional Review Act, *see supra* at 10, there is no lawful reason for Defendants to restrict Plaintiffs' speech (or enforce any other terms of the CTP, *see supra* at 17–19).

20

fail to certify compliance with CARB's preempted regulations or comply with the CTP's speech restrictions. Those penalties include deprioritizing the non-certifying "manufacturers in government vehicle procurement decisions," cutting access to "funding" relating to "the purchase of zero-emission vehicles," and leveraging "special considerations and flexibilities" in forthcoming regulatory programs to disadvantage manufacturers who refuse to certify compliance with CARB's preempted regulations or otherwise challenge CARB's emissions agenda. Executive Order N-27-25 at 3.

CARB's May 23, 2025 MAC similarly compels manufacturers—by implicit threat of substantial fines—to comply with CARB's now-preempted emissions standards and certification requirements, compliance that CARB also characterized as "necessary" to "facilitate meeting the commitments of the Clean Truck Partnership Agreement" and "enable lawful vehicle sales." May 23, 2025 MAC at 2–3 (citing Cal. Health & Safety Code §§ 43100, 43151–43153).

Those threats, and the CTP's unconstitutional restrictions on Plaintiff's ability to challenge CARB's standards and authority, have chilled Plaintiffs' speech. CARB has been particularly aggressive in using threats of adverse regulatory action and enforcing the speech- and petitioning-limiting provisions of the Clean Truck Partnership against a trade association of which Plaintiffs are all members, EMA. EMA is one of the most important avenues through which Plaintiffs speak and petition the government on regulatory issues and matters of public and private importance. Potter Decl. ¶ 16; Noonan Decl. ¶ 15. Unsurprisingly, CARB has invoked the Clean Truck Partnership to censor EMA's speech, which EMA made (or intended to make) on Plaintiffs' behalf. For example, as outlined in the declaration of Jed Mandel, on September 1, 2023, CARB's Deputy Executive Officer called and wrote to EMA's president to request that EMA refrain from making certain oppositional statements to states that were considering adopting CARB's standards. Mandel Decl. ¶ 9. Because of CARB's actual or threatened enforcement of the speech- and petitioning-restrictive provisions of the Clean Truck Partnership, EMA refrained from submitting oppositional testimony and written comments on behalf of Plaintiffs, but instead was constrained to say that EMA was "not opposed" or was "neutral" with respect to state regulatory proceedings in Illinois, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, and Washington related to the adoption of the CARB heavy-duty vehicle emission

1    standards at issue. *Id.* ¶ 11.

2        For all these reasons, Plaintiffs have thus met their minimal burden of making a colorable claim

3    that Defendants are enforcing Executive Order N-27-25, the May 23, 2025 MAC, and the Clean Truck

4    Partnership in a way that restricts Plaintiffs' First Amendment rights without sufficient justification.

5    *Meinecke*, 99 F.4th at 521. There is no "close nexus … between the specific interest the government

6    seeks to advance" by enforcing the speech-suppressing provisions of the CTP "and the specific right

7    waived" therein. *Davies*, 930 F.2d at 1399. And "[t]here is no room under our Constitution" for De-

8    fendants to use threats of fines and unfavorable treatment to retaliate against critical speech and advo-

9    cacy, *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949), to "insulate [their] own laws from legiti-

10   mate judicial challenge," *Velazquez*, 531 U.S. at 548, or to enforce unconstitutional and preempted

11   standards, *Baird*, 81 F.4th at 1042.

12        **C.    Defendants Have Violated Article I, Section 3 of the California Constitution.**

13        For many of the same reasons, Plaintiffs are also likely to prevail on their claim that the Clean

14   Truck Partnership's prohibition against OEM advocacy violates Article I, Section 3 of the California

15   Constitution, which is "[a] protective provision more definitive and inclusive" than its federal counter-

16   part in the First Amendment. *Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 908, 910 (1979).

17   "The right to petition for redress of grievances is the right to complain about and complain to the

18   government." *Wolfram v. Wells Fargo Bank*, 53 Cal. App. 4th 43, 51 (1997). That right encompasses

19   "the right to petition the judicial branch for resolution of legal disputes." *Vargas v. City of Salinas*,

20   200 Cal. App. 4th 1331, 1342 (2011).

21        Under California Civil Code section 52.1(c), "Any individual whose exercise or enjoyment of

22   rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution

23   or laws of [California]" may sue the persons who violated their rights for declaratory, injunctive, and

24   monetary relief. Only "reasonable, narrowly drawn restrictions designed to prevent abuse of the right

25   can be valid under the state Constitution." *Chorn v. Workers' Comp. Appeals Bd.*, 245 Cal. App. 4th

26   1370, 1385 (2016) (cleaned up). A government condition that restricts the ability of a party to "file or

27   participate in litigation or support legislation to challenge or modify" the terms of that contract will

28

violate Article I, Section 3 unless the government shows that:  (1) the condition requiring the party to surrender their petitioning rights is "reasonably related" to a compelling government interest; (2) "the public value of imposing the condition manifestly outweighs its burden on constitutional rights"; and (3) "there are no less restrictive means to achieve" the government interest.  *San Diego Cnty. Water Auth. v. Metro. Water Dist. of S. Cal.*, 12 Cal. App. 5th 1124, 1160 (2017).

As with the First Amendment claim, *supra* at 17–21, Defendants—via Executive Order N-27-25, the May 23, 2025 MAC, and the Clean Truck Partnership—attempt to suppress and deny Plaintiffs' petitioning rights.  Defendants cannot meet their burden of showing that Executive Order N-27-25, the May 23, 2025 MAC, and the Clean Truck Partnership do not violate Article I, Section 3 of the California Constitution.  Defendants have no cognizable interest in insulating themselves from legitimate legal challenges to state actions—much less in suppressing legitimate preemption challenges, including those related to intervening and superseding federal law.  *Mejia v. City of Los Angeles*, 156 Cal. App. 4th 151, 163 (2007); *cf.* Cal. Civ. Code § 1668 (making all contracts against "the policy of the law" void under California law).  And the public value in maintaining open access to courts and the legislature—"essential to the functioning of a democracy," *City of San Jose v. Superior Ct.*, 2 Cal. 5th 608, 615 (2017)—far outweighs any interest CARB might offer to try and justify its enforcement of statutorily preempted standards.  Restricting Plaintiffs' participation in public dialogue constricts the depth and variety of viewpoints in public discussion on an issue of importance, reducing California's accountability to the people.[5]

### D.    The Clean Truck Partnership and the May 23, 2025 MAC Are Invalid Underground Regulations.

The California Administrative Procedure Act ("APA") places procedural requirements on state agencies, including CARB, before the agencies can issue regulations to "ensure that those persons or entities whom a regulation will affect have a voice in its creation."  *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 568 (1996); *see also* Cal. Gov't Code, §§ 11346.2, 11346.8.  Regulations

---

[5] And even if compliance with CARB's standards was not preempted by federal law, the state could ensure compliance through far less restrictive means than limiting Plaintiffs' speech.

promulgated in violation of these requirements are called "underground regulations," *see* Cal. Gov. Code § 11340.5(a); Cal. Code Regs. tit. 1, § 250, and are "void for failure to comply with the [California] APA." *Tidewater Marine Western*, 14 Cal. 4th at 576.

The California APA "defines 'regulation' very broadly to include 'every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one that relates only to the internal management of the state agency.'" *Tidewater Marine Western*, 14 Cal. 4th at 571 (quoting Cal. Gov't Code § 11342(g)). To assess whether an action is a regulation under California law, courts apply a two-part test: "First, the agency must intend its rule to apply generally, rather than in a specific case," and second, the regulation must "implement, interpret, or make specific the law enforced or administered by [the agency], or … govern [the agency's] procedure." *Id*. The Clean Truck Partnership and the May 23, 2025 MAC are each textbook underground regulations, because each is a "regulation" as defined by the California APA, yet in neither case did CARB follow California APA procedures.

**The Clean Truck Partnership is a regulation.** CARB "intend[s] to apply [the Clean Truck Partnership] in … all cases of a particular class or kind," indicating that it embodies "polic[ies] of general application and thus [] regulation[s]." *Tidewater Marine Western*, 14 Cal. 4th at 573; *see also Vasquez v. Dep't of Pesticide Regul.*, 68 Cal. App. 5th 672, 689 (2021). In that regard, the CTP, by its terms, binds not just one OEM, but *every* manufacturer of internal-combustion powered on-road heavy-duty trucks and engines to comply with CARB's preempted emissions standards. CTP ¶ 2. It thus applies to an entire class or kind of company and is therefore a policy of general application.

The Clean Truck Partnership also implements CARB's legal authority in a novel way and governs the agency's procedure. For example, it provides that CARB can maintain its certification program *regardless of the continued lawfulness* of the emissions standards underlying the certification program. CTP ¶ 2. And it purports to empower CARB to maintain its certification program "irrespective … of CARB's overall authority to implement those regulations." *Id*. The CTP is thus not only an implementation of CARB's legal authority, but also an attempt to expand and insulate that authority

beyond the reach of the law.  Accordingly, the Clean Truck Partnership clearly "implements and makes specific the law the [agency] administers," and the second requirement for an underground rulemaking is met.  *Vasquez*, 68 Cal. App. 5th at 673; *Tidewater Marine Western*, 14 Cal. 4th at 571.

**The May 23, 2025 MAC is also a regulation.**  The May 23, 2025 MAC is a rule of general applicability because CARB "intend[s] to apply [it] in … all cases of a particular class or kind." *Tidewater Marine Western*, 14 Cal. 4th at 573.  To wit, the May 23, 2025 MAC is addressed to "[a]ll [m]anufacturers [o]f", among other things, light-duty vehicles, medium-duty vehicles, and heavy-duty engine families.  May 23, 2025 MAC at 1.  The May 23, 2025 MAC also implements and specifies the regulations enforced by CARB, and exercises CARB's legal authority in a novel way.  It clarifies which emissions standards CARB asserts are in effect in California for the 2026 model year, taking the position that it will certify vehicles for model year 2026 pursuant to the Advanced Clean Trucks and Omnibus regulations notwithstanding their express preemption under directly applicable federal statutes. May 23, 2025 MAC at 2.

**CARB ignored APA requirements for both regulations.**  Under the California APA, an agency must file a copy of any proposed regulation with the California Secretary of State, Cal. Gov. Code § 11343, and must provide notice and an opportunity for public comment as required by Office of Administrative Law regulations.  Cal. Code Regs. tit. 1, §§ 5, 44.  CARB did not comply with either requirement with respect to either the Clean Truck Partnership or the May 23, 2025 MAC.  *See* Regulations Recently Filed with the Secretary of State, Cal. Off. of Admin. Law, https://oal.ca.gov/regulations_recently_filed_with_the_sos/ (last visited Aug. 10, 2025) (excluding the May 23, 2025 MAC from list of regulations filed with the Office of Administrative Law in the past year); Western States Trucking Ass'n, *Petition for Office of Administrative Law Determination of Underground Rulemaking by California Air Resources Board* (June 18, 2025), https://westrk.org/wp-content/uploads/securepdfs/2025/06/WSTA-OAL-Petition.final_.pdf (challenging CTP as an underground regulation because CARB did not follow proper APA procedures).  When regulatory agencies disregard procedural requirements, courts have preliminarily enjoined the enforcement of those procedurally invalid regulations.  *See, e.g.*, *California v. Health & Huma. Servs*, 281 F. Supp. 3d 806, 831 (N.D. Cal. 2017)

1  (granting preliminary injunction against regulation promulgated without following federal APA).

2  **II.     Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction.**

3  A party seeking a preliminary injunction must demonstrate that "irreparable injury is likely in

4  the absence of an injunction." *Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865 (9th Cir. 2017)

5  (emphasis omitted).  To establish irreparable harm, a movant must generally show that the injury cannot

6  be adequately compensated by monetary damages.  15 U.S.C. § 26.  A threat of irreparable harm is

7  "sufficiently immediate to warrant preliminary injunctive relief if the plaintiff is likely to suffer irrep-

8  arable harm before a decision on the merits can be rendered." *Boardman v. Pac. Seafood Grp.*, 822

9  F.3d 1011, 1023 (9th Cir. 2016) (internal quotation marks omitted).  Plaintiffs repeatedly sought clarity

10  from CARB on its approach to the preempted standards and regulations at issue here, *see supra* at 12–

11  13; but over the ensuing four months Defendants not only failed to engage, but took repeated affirma-

12  tive steps that entrenched Plaintiffs' impossible position, creating imminent risk of irreparable harm to

13  Plaintiffs.

14  **A.     Defendants' Conduct Violates the United States and California Constitutions.**

15  "[A]n alleged constitutional infringement will often alone constitute irreparable harm."  *Mon-*

16  *terey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (internal quotation marks omitted); *see*

17  *also United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011), *rev'd in part on other grounds*, 567

18  U.S. 387 (2012); 11A Wright, et al., *Fed. Practice & Proc.*, § 2948.1, pp. 160–61 (1995) (When "an

19  alleged deprivation of a constitutional right is involved, most courts hold that no further showing of

20  irreparable injury is necessary."); *Vo v. City of Garden Grove*, 115 Cal. App. 4th 425, 433 (2004)

21  ("[F]ailing to enjoin enforcement of an unconstitutional ordinance, would also constitute an abuse of

22  discretion within the usual formulation of the standard of review for the grant or denial of a preliminary

23  injunction."); *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (harm caused restraint

24  of political speech "is particularly irreparable" in Article 1 case).

25  Defendants' conduct violates the Supremacy Clause, undermines the U.S. Constitution's verti-

26  cal separation of powers, and threatens Plaintiffs' free speech and petitioning rights.  The loss of speech

27  and advocacy rights, "for even minimal periods of time, unquestionably constitutes irreparable injury."

28

*Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Baird*, 81 F.4th at 1040–41.  A plaintiff seeking a preliminary injunction "in a First Amendment context can establish irreparable injury by demonstrating the existence of a colorable First Amendment claim."  *CTIA - The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 851 (9th Cir. 2019) (internal quotation marks omitted).  As a result, "[i]rreparable harm is relatively easy to establish" in a free speech case.  *Id.*  Indeed, Defendants have already taken steps to quell Plaintiffs' exercise of their First Amendment rights, demonstrating that harm from these speech-suppressing provisions is imminent.  *See supra* at 20; *see also* Mandel Decl. ¶ 9; Potter Decl. ¶ 16–17; Noonan Decl. ¶ 15; Brown Decl. ¶ 22.

Courts have also held that Supremacy Clause violations cause irreparable injuries and entitle a party to equitable relief.  *See TWA, Inc. v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990); *see also Cal. Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852–53 (9th Cir. 2009), *vacated and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012) ("[I]t is clear that it would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law, especially when there are no adequate remedies available to compensate the [plaintiffs] for the irreparable harm that would be caused by the continuing violation.").

Because Plaintiffs are likely to succeed on their constitutional challenges, they have shown an irreparable injury that supports immediate injunctive relief.

### B.    Plaintiffs Will Incur Nonrecoverable Costs and Face the Risk of Penalties and Enforcement Actions Without an Injunction.

Compliance with CARB's challenged and preempted standards will create significant expense and burden that manufacturers will not be able to recover.   Applying for CARB certification entails a substantial investment of time and resources.  Potter Decl. ¶¶ 8–10; Noonan Decl. ¶ 6; Brown Decl. ¶ 11.  Those resources are not infinite, and Plaintiffs require significant planning time and resources to not only price their products and take and fill orders, but also to serve their customers whose businesses rely on being able to place their orders far in advance.  Potter Decl. ¶ 12; Noonan Decl. ¶¶ 6–7, 10–12; Brown Decl. ¶¶ 13–15; *see also* Hergart Decl. ¶¶ 12–13.  The process takes months, and the Plaintiffs must start positioning themselves for model year 2026 compliance and certification within a matter of

27

weeks.  Potter Decl. ¶¶ 11–13; Hergart Decl. ¶¶ 12–13; Brown Decl. ¶ 13.  Plaintiffs have already invested heavily in preparing for 2026 certification, but without an injunction, they will imminently incur significant additional costs to comply with the preempted standards.  Potter Decl. ¶¶ 8–10; Noonan Decl. ¶¶ 6–8; Brown Decl. ¶ 18.  For example, CARB charges certification fees for each certificate, which could cost each Plaintiff millions of dollars.  Potter Decl. ¶ 10; Noonan Decl. ¶¶ 6–7; Brown Decl. ¶ 11.  Furthermore, each Plaintiff would have to invest hundreds or thousands of hours in staff time in preparing the certification documentation.  Potter Decl. ¶ 10; Noonan Decl. ¶ 7; Brown Decl. ¶ 11.  And CARB certification requires testing on the *aging* of engines to replicate years of use. Potter Decl. ¶ 9; Noonan Decl. ¶ 8; *see also* Brown Decl. ¶ 18.  To obtain these test results for future years, each Plaintiff is *already incurring* significant and ongoing costs for certification in model year 2027.  Potter Decl. ¶ 9; Noonan Decl. ¶ 8; Brown Decl. ¶ 18.  Since sovereign immunity bars money damages against a state, *Cal. Pharm. Ass'n*, 563 F.3d at 851–52, there is no way to recover those costs if these standards are later found to be invalid—they are unrecoverable and constitute irreparable injury, *see Texas v. U.S. Environmental Protection Agency*, 829 F.3d 405, 434 (5th Cir. 2016); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment) ("[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs.").

On the other hand, if the Plaintiffs do not comply with Defendants' mandates, they face the prospect of being barred from selling their products in California, or imminent enforcement threats if they do so without regard to CARB's now-preempted mandates.  CARB's May 23, 2025 MAC states that obtaining CARB certification for model year 2026 will "enable … lawful vehicle sales," citing a provision of the California Health & Safety Code that provides for monetary penalties up to $48,788[6] per violation.  May 23, 2025 MAC at 2 (citing provisions subject to Cal. Health & Safety Code § 43154(a)(1)); *see also* Potter Decl. ¶ 13; Noonan Decl. ¶ 12; Brown Decl. ¶ 21; Hergart Decl. ¶ 12.

---

[6] The statutory penalty is adjusted annually for inflation. CARB, Memorandum to Enforcement Division Staff, Increase in Maximum Penalties Based on 2024 California Consumer Price Index (Feb. 21, 2025), https://perma.cc/YG4F-9T7Q.

Further, Executive Order N-27-25 states that California will restrict its government agencies from purchasing vehicles from manufacturers that do not comply and deprioritize these manufactures from future government incentive programs. *See supra* at 11, 15. If a Plaintiff seeks to avoid these penalties by not offering products in California, each exposes itself to the loss of business goodwill with its customers and dealers. Potter Decl. ¶ 14; Noonan Decl. ¶¶ 9–12; Brown Decl. ¶¶ 19–20, *see infra* at 32–33. *See also* Hergart Decl. ¶¶ 12–13. But sovereign immunity prevents recovering losses in either circumstance. *See supra* at 27. Thus, non-compliance with California's emissions standards likewise leads to irreparable harms.

And Plaintiffs face irreparable harms in the other direction too. On August 7, 2025, the United States Department of Justice issued letters instructing Plaintiffs to "immediately cease and desist [their] compliance with both the Clean Truck Partnership and its preempted state vehicle emission regulations." *See, e.g.*, Potter Decl., Ex. D (Aug. 7, 2025 DOJ Letter), at 2. Plaintiffs reasonably interpret the DOJ's cease and desist letter to mean that the federal government will take enforcement actions against Plaintiffs if they continue to comply with the CTP or CARB's preempted emissions standards. Potter Decl. ¶ 15; *see also* Brown Decl. ¶¶ 10, 17.

Courts routinely issue preliminary injunctive relief in circumstances like these. The Ninth Circuit analyzed a district court's refusal to preliminarily enjoin potentially preempted municipal programs related to trucking services in *American Trucking Association, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009). There, motor carriers sought to enjoin allegedly preempted "mandatory concession agreements" that, among other things, required carriers to agree to phase out independent-contractor drivers and instead use only employee drivers within five years to do business at the Port of Los Angeles. *Id.* at 1048. The court found that the motor carriers were facing imminent irreparable harm regardless of whether they refused to sign, losing business as a result, or signed, agreeing to follow potentially preempted standards and incurring the significant costs of transitioning their workforce to comply. *Id.* at 1058–59. And in *Morales v. Trans World Airlines, Inc.*, the Supreme Court analyzed injunctive relief related to federal preemption of state airline advertising guidelines. 504 U.S. 374 (1992). The Court held that where state governments "had made clear that they would seek to enforce

the challenged portions of the guidelines," the threat of imminent enforcement against a party affected by an unconstitutional act would create the irreparable injury necessary for injunctive relief.  *Id.* at 381.

In both cases, the courts found the parties seeking relief faced a "Hobson's choice" between complying with a preempted law (while foregoing constitutional rights and experiencing monetary harm) and noncompliance (while risking significant liability and a loss of customer goodwill).  *Morales*, 504 U.S. at 381; *Am. Trucking Ass'n*, 559 F.3d at 1057–58.  The law does not require that choice. *Id.*  But that is precisely the circumstance in which Plaintiffs find themselves.

In general, "irreparable injury does not exist where the parties 'contracted' into the harm they allegedly fear and thus 'acted to permit the outcome which they find unacceptable.'"  *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1130 (9th Cir. 2024).  But that doctrine applies to private contracts, not to the May 23, 2025 MAC or Executive Order N-27-25, which are regulations to which no Plaintiff agreed.  Nor does that doctrine cover the Clean Truck Partnership.  Plaintiffs needed at least four years' lead-time to comply with CARB's aggressive emissions standards, and joining the CTP was the only way for Plaintiffs to obtain such lead time, to which they were entitled under the Clean Air Act.  *See* CTP ¶ 5. If Plaintiffs did not join the CTP, they faced the very real threat of incurring fines and adverse regulatory treatment after spending substantial resources in an ultimately futile effort to comply with CARB's new and aggressive standards.  Mandel Decl. ¶ 6.  The U.S. Supreme Court has held that in such circumstances, Plaintiffs' decision to join the Clean Truck Partnership cannot be seen as truly voluntary.  *See Koontz*, 570 U.S. at 605–09.  On the contrary, such "agreements" are presumed involuntary.  *See id.*; *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) ("Courts indulge every reasonable presumption against waiver of fundamental constitutional rights." (internal quotation marks omitted)).  The absence of meaningful consent—coupled with the fact that the Clean Truck Partnership operates on an entire industry as an underground regulation and CARB therefore lacks authority to enforce it, *see supra* at 24–26—places the Clean Truck Partnership outside of *Bennett*.

Regardless, Plaintiffs did not agree to comply with the preempted emissions standards that Defendants are now trying to enforce, and so cannot be said to have "contracted" into the irreparable harm

they now face. This is so for three reasons. *First*, the Clean Truck Partnership commits manufacturers to follow the Advanced Clean Trucks and Omnibus Low NOx regulations "as they existed [i]n … 2021," and the 100 percent zero-emission vehicle sales requirement of Advanced Clean Fleets "as it existed on April 28, 2023." CTP, App'x B. But CARB does not intend to enforce those versions of those regulations. Instead, CARB insists on using the CTP to enforce newly amended versions that Plaintiffs never agreed to follow. *See, e.g.*, CARB ACT Amends. Press Release, https://perma.cc/8D4R-A26K (announcing amendments to Advanced Clean Trucks). Because CARB is trying to use the CTP in unforeseen and impermissible ways, and under unforeseen circumstances (i.e., the intervening preemption and invalidation of CARB's emissions standards under the Congressional Review Act), CARB cannot say that Plaintiffs "'contracted' into the harm" it has shown to be irreparable. *Bennett*, 118 F.4th at 1130.

*Second*, the Clean Truck Partnership commits manufacturers to follow Advanced Clean Trucks, Omnibus Low NOx, and the 100 percent zero-emission vehicle sales requirement of Advanced Clean Fleets if and only if such regulations were declared unlawful in the wake of a successful legal challenge to the CARB rule or the waiver. CTP ¶ 2. But the manufacturers' commitments do not survive the President's signing of Congress's joint resolutions expressly revoking the Clean Air Act waivers for those standards. The revocation of federal preemption waivers by Congress was not contemplated by the parties at the time the CTP was signed in 2023.

And even if the CTP were deemed enforceable following Congressional action invalidating the California regulations, CARB has not met and cannot meet its obligations under the Clean Truck Partnership in at least six significant ways. Where CARB has not met its obligations under the CTP, Plaintiffs have no obligation to do so either. *See, e.g.*, *Jay Bharat Devs., Inc. v. Minidis*, 167 Cal. App. 4th 437, 443 (2008). To begin, when CARB joined the Clean Truck Partnership, it agreed to substantively amend Advanced Clean Trucks and Omnibus Low NOx. *See* CTP App'x A, B. Given that those standards are now expressly preempted by law, even if CARB attempts amendment, such attempts will be void as California is preempted from both adopting and enforcing the standards. Second, CARB committed "to work together" with manufacturers "to resolve any issues that may warrant regulatory

31

amendments to either the Omnibus or ACT regulations." CTP App'x D, ¶ G. Despite that commit-ment, CARB has not worked to resolve the multiple issues related to the continued viability and validity of the regulations, but instead recently amended Advanced Clean Trucks without engaging with the industry in the manner contemplated by the Clean Truck Partnership, or addressing the industry's writ-ten objections and concerns submitted during the comment process. *See* Mandel Decl. ¶ 7; *id.* Ex. A (EMA, Comments on CARB's Proposed Amendments to the Advanced Clean Trucks Regulation and the Zero-Emission Powertrain Certification Test Procedure (July 14, 2025)). Third, CARB agreed to adopt amendments to its Omnibus Low NOx standards to align them with EPA's standards, but has not done so. Fourth, CARB is withdrawing the substance of the Advanced Clean Fleets regulations, which the Clean Truck Partnership acknowledges is necessary for Plaintiffs to comply with the Advanced Clean Trucks regulation. CTP, App'x C; Stipulation and Request to Hold Case in Abeyance Pending Outcome of Rulemaking, *Cal. Trucking Ass'n v. Cliff*, No. 2:23-cv-02333 (E.D. Cal. Apr. 25, 2025). *See also* July 29, 2025 Proposed Amendments to the Advanced Clean Fleets and Low Carbon Fuel Standard Regulations: Notice of Public Hearing (available at https://ww2.arb.ca.gov/sites/de-fault/files/barcu/regact/2025/acf_lcfs/notice.pdf) (proposing to repeal most substantive portions of ACF regulation). Fifth, CARB agreed in the Clean Truck Partnership to "actively promote the infra-structure development needed to support" CARB's emissions standards. CTP ¶¶ 1, 3. But the currently installed recharging infrastructure does not and cannot support CARB's mandates for annually increas-ing sales of battery-powered heavy-duty trucks. *See* Brass Dec. Ex. A at 1. And finally, CARB did not abide by its commitment in the Clean Truck Partnership to provide manufacturers with three years to make up a shortfall in the proportion of zero-emission vehicles required to be sold pursuant to Ad-vanced Clean Trucks. The Clean Truck Partnership stated that CARB "will propose to modify [Ad-vanced Clean Trucks] to lengthen the number of years a manufacturer has to make up a deficit from one year to three years." CTP App'x C, ¶ B. But the regulation as adopted did not provide the promised three-year make-up period. Instead, it only allowed manufacturers to carry over 30 percent of the deficit from year-to-year—a material restriction not contemplated by the Clean Truck Partnership. *See* Cal. Code Regs. tit. 13, § 1963.3(b) (providing that "[i]f the net deficit balance is more than 30 percent

of the deficits generated from the most recent model year, the net deficit must be reduced to below 30 percent by the end of the first and second years of the makeup period."). Because CARB has not met its obligations under the Clean Truck Partnership, Plaintiffs have no obligations under it either. *See, e.g.*, *Minidis*, 167 Cal. App. 4th at 443. And because Plaintiffs' commitments under the Clean Truck Partnership were never triggered, Plaintiffs cannot be found to have agreed to be irreparably harmed under *Bennett*.

*Third*, as shown above, *see supra* at 13–17, Plaintiffs' commitments under the Clean Truck Partnership are unenforceable and void under the Supremacy Clause and the First Amendment, as well as under Article I, Section 3 of the California Constitution. Absent a lawful, enforceable agreement, Plaintiffs cannot be said to have "'contracted' into the harm" that they have shown to be irreparable. *Bennett*, 118 F.4th at 1130. By all accounts, absent a preliminary injunction, Plaintiffs' will be irreparably harmed by incurring nonrecoverable costs from attempting to comply with CARB's unlawful, preempted, and void-as-against-public-policy regulations, while at the same time facing the risk of penalties and enforcement actions if they do *not* comply with CARB's unlawful standards.

### C.    Plaintiffs Will Incur Permanent Loss of Sales and Customer Goodwill Without an Injunction.

"Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001); *see also Am. Trucking Ass'n*, 559 F.3d at 1057–58 (a loss of customer goodwill from compliance with preempted standards constitutes irreparable injury); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (affirming irreparable injury finding based on harm to ongoing business efforts and a difficult to quantify loss of goodwill).

Plaintiffs face exactly this risk to prospective customers and goodwill. Heavy-duty vehicles are major investments for dealers and customers, each of which consequently plan their purchases months, if not years, in advance. Potter Decl. ¶¶ 12, 14; Noonan Decl. ¶ 10; Brown Decl. ¶¶ 13, 18; Hergart Decl. ¶¶ 12–13. To accommodate this lead time, the Plaintiffs each typically determine pricing for their own trucks for a given model year in August or September of the prior year and begin taking

orders for vehicles in September.  Potter Decl. ¶ 12; Brown Decl. ¶ 13, 18; *cf. also* Noonan Decl. ¶ 10, 12; Hergart Decl. ¶¶ 12–13.  Because heavy-duty trucks are time consuming to build and distribute, even those orders placed in September may take months to fill.  Potter Decl. ¶ 12; Brown Decl. ¶¶ 13, 18; *see also* Noonan Decl. ¶ 10, 12; Hergart Decl. ¶¶ 12–13.  But as things currently stand, with OEMs caught between the competing dictates of federal preemption law and California's ongoing enforcement threats, each Plaintiff cannot price vehicles for sale in California, much less begin taking orders, until each knows *what* vehicles it can lawfully sell there and what testing costs those vehicles must bear.  Potter Decl. ¶ 13; Noonan Decl. ¶¶ 10–12; Brown Decl. ¶¶ 18–19; Hergart Decl. ¶¶ 12–13.  Without regulatory certainty, Plaintiffs are unable to engage in meaningful product planning, reducing their ability to deliver to customers the products they need and want.  *See* Potter Decl. ¶ 14; Noonan Decl. ¶¶ 10–12; Brown Decl. ¶¶ 13–15, 18–19; Hergart ¶¶ 12–13.  Further delay caused by California's unlawful conduct will thus cause Plaintiffs to lose significant sales, and customer goodwill.  Potter Decl. ¶ 14; Noonan Decl. ¶ 12; Brown Decl. ¶¶ 13, 19–20;  *see also* Hergart Decl. ¶¶ 8, 12–13.

### III.    The Balance of Equities Tips in Plaintiffs' Favor and Granting an Injunction is in the Public Interest.

"Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge."  *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020).  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotations omitted); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

Meanwhile, Defendants face little to no cognizable harm from a temporary delay in enforcing the preempted emissions standards pending a final decision in this action.  The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (similar).  In passing the Clean Air Act, Congress mandated that California must receive a preemption waiver to set its own standards.  And in revoking the waivers for the CARB regulations at issue under the CRA, Congress and the President explicitly

1    decided to adopt a uniform, nationwide emissions policy for the heavy-duty vehicles that are so vital

2    to the operation of the nation's economy.  That federal action works to displace a patchwork of federal

3    and state standards.  Thus whatever California's policy goals, it does not have a cognizable interest in

4    enforcing expressly preempted and unconstitutional standards in violation of the Supremacy Clause.

5    *See, e.g.*, *Apr. in Paris v. Becerra*, 494 F. Supp. 3d 756, 771 (E.D. Cal. 2020) ("The question is not

6    which policy better protects animals, but whether state or federal law controls.  Although California

7    has its own interest … , the reach of that interest ends where the preemptive effect of federal law begins.

8    Because plaintiffs make a strong showing of preemption, the court finds the public interest weighs in

9    their favor.").

10       Should California prevail in this case, any marginal harm to Defendants' policy objectives from

11   postponing enforcement is cabined by the presence of the corresponding federal heavy-duty vehicle

12   emissions standards and certification processes.  *See Am. Trucking Ass'n*, 559 F.3d at 1059.  This fed-

13   eral emissions-control backstop, which CARB explicitly agreed to align with under the Clean Truck

14   Partnership, comprehensively addresses the general public interest in regulating heavy-duty vehicle

15   emissions, and ensures that an injunction would simply result in uniform compliance with the current

16   federal emissions standards that already apply nationwide.  Accordingly, both the public interest and

17   the balance of hardships tip definitively in favor of an injunction here.[7]

18                                **CONCLUSION**

19       Plaintiffs respectfully request that the Court grant this motion and enter an order preliminarily

20   enjoining Defendants from implementing or enforcing any of the challenged standards.

21            //

22   _____

23   [7] Plaintiffs also respectfully request that this Court exercise its discretion under Federal Rule of Civil
     Procedure 65(c) and dispense with the bond requirement.  A "district court may dispense with the filing

24   of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his
     or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  And there is no such risk

25   of harm to a defendant where the Court "would simply enjoin Defendant from doing something De-
     fendant never had a right to do in the first place." *Comet Techs. United States of Am. Inc. v. Beuerman*,

26   No. 18-CV-01441-LHK, 2018 WL 1990226, at *6 (N.D. Cal. Mar. 15, 2018); *see also supra* at 33–34.
     To the extent that the Court views Rule 65(c)'s language as non-discretionary, it should order a nominal

27   bond only.  *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (upholding a nominal bond
     under Rule 65(c)).

28

                                        35

Dated: August 12, 2025

Respectfully submitted,

_Benjamin Wagner_

_____

BENJAMIN WAGNER, State Bar No. 163581

**GIBSON, DUNN & CRUTCHER LLP**
BENJAMIN WAGNER, State Bar No. 163581
310 University Avenue
Palo Alto, CA  94301-1744
Telephone:     650.849.5395
Facsimile:      640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, State Bar No. 219301

One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     415.393.8293
Facsimile:      415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER (*pro hac vice* pending)
MIGUEL ESTRADA (*pro hac vice* pending)
VERONICA J.T. GOODSON, State Bar No. 314367
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone:     202.955.8500
Facsimile:      202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

/s/ Robin M. Hulshizer
(as authorized on Aug. 12, 2025)
ROBIN M. HULSHIZER, State Bar No. 158486

**LATHAM & WATKINS LLP**

ROBIN M. HULSHIZER, State Bar No. 158486
ARTHUR FOERSTER*
KEVIN M. JAKOPCHEK*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com

BELINDA S. LEE, State Bar No. 199635

s/ Eugene Illovsky
(as authorized on Aug. 12, 2025)
EUGENE ILLOVSKY, State Bar No. 117892

**ILLOVSKY GATES & CALIA LLP**

EUGENE ILLOVSKY, State Bar No. 117892
KEVIN CALIA, State Bar No. 227406
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone:  415.500.6643
Eugene@illovskygates.com
Kevin@illovskygates.com

**CLIFFORD CHANCE LLP**

JOSEPH A. OSTOYICH*
WILLIAM LAVERY*
STEVE NICKELSBURG*
DANIELLE MORELLO*

36

505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*

/s/ Jeffrey M. Goldman
(as authorized on Aug. 12, 2025)
JEFFREY M. GOLDMAN, State Bar No. 233840

**TROUTMAN PEPPER LOCKE LLP**

JEFFREY M. GOLDMAN, State Bar No. 233840
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:    213.928.9800
Facsimile:     213.928.9850
jeffrey.goldman@troutman.com

T. SCOTT MILLS, State Bar No. 313554
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:    404.885.3000
Facsimile:     404.885.3900
scott.mills@troutman.com

JEREMY HEEP*
DANIEL J. BOLAND*
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:    215.981.4000
Facsimile:     215.981.4750
jeremy.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North America, LLC*

DOROTHEA R. ALLOCCA*
2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com
dodi.allocca@cliffordchance.com

*Attorneys for Plaintiff PACCAR Inc*

*Application for pro hac vice pending or forth-coming