IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC; INTERNATIONAL MOTORS, LLC; PACCAR INC; and VOLVO GROUP NORTH AMERICA LLC,<br><br>          Plaintiffs,<br><br>     v.<br><br>CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California.<br><br>          Defendants. | CASE NO.   2:25-CV-02255-DC<br><br>**DECLARATION OF JED R. MANDEL IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

I, Jed Mandel, pursuant to 28 U.S.C. § 1746, state and declare:

1. I am over eighteen years of age. If called to testify in this matter, I can and will competently testify to the following facts, of which I have personal knowledge, personal experience, and personal participation in communications with business associates.

2. I am President of the Engine Manufacturers Association d/b/a Truck and Engine Manufacturers Association ("EMA"). EMA is a not-for-profit corporation incorporated under the laws of Illinois in 1933, with its principal place of business located in Chicago, Illinois.

3. EMA is a trade association whose members include the manufacturers of medium and heavy-duty vehicles in the United States. The Association advocates on behalf of its members to federal and state regulatory agencies, including the California Air Resources Board ("CARB"), for the development and implementation of cost-effective and technologically feasible emissions, fuel efficiency and safety regulations.

4. I am also a partner at and founding member of Chicago Law Partners, LLC, a law firm with its principal place of business in Chicago, Illinois, which collaborates with EMA on advocacy efforts directed towards federal and state regulatory agencies.

5. In connection with advocacy efforts related to California's Advanced Clean Trucks ("ACT"), Low NOx Regulation ("Omnibus"), and Advanced Clean Fleet ("ACF") regulations, EMA was a principal negotiator of the Clean Truck Partnership ("CTP") entered into by EMA, certain EMA members, CARB, and others on July 5, 2023.

6. I was in charge of negotiating the CTP on behalf of the manufacturer Plaintiffs in this action, as well as other EMA members. At the time of those negotiations, CARB was not providing industry with the four years of lead time required by the Clean Air Act, yet sought to impose more onerous emissions regulations than those promulgated under the Clean Air Act. One of EMA's key negotiation goals was to secure for the EMA members the same lead time for California that is otherwise available on the national level. Another key goal was ensuring harmonization of federal and California emissions standards governing heavy-duty vehicles and engines. Joining the CTP was the only way for Plaintiffs to obtain that lead time and harmonization. Without lead time and

harmonization, I understood that EMA members, including Plaintiffs, faced the very real threat of fines and adverse regulatory treatment in connection with any attempt to comply with CARB's new and aggressive regulations. Ultimately, the CTP reflected the four-year lead time and harmonization critical to EMA members.

7. Under the CTP, CARB also committed to consulting with the heavy and medium duty engine and trucking industry before adopting future changes to the regulations covered by that agreement. However, CARB recently amended the ACT regulations without engaging with the industry in the manner contemplated by CTP or addressing the industry's objections and concerns filed during the comment process. For example, EMA submitted the comments attached hereto as Exhibit A in connection with that rulemaking process. EMA was never consulted by CARB in connection with the rulemaking, and CARB's amended rule does not address EMA's comments.

8. Similarly, on or about May 20, 2025, I sent correspondence to CARB on behalf of Plaintiffs regarding regulatory issues. A true and correct copy of that correspondence is attached hereto as Exhibit B. As of the date of this declaration, nearly three months later, CARB has failed to respond to my correspondence.

9. CTP required EMA "to be neutral (using the three-tier support, neutral, oppose system)" in response to any prospective Section 177 states' proposals to consider adopting the Omnibus or ACT regulations, and to "support or not oppose the adoption of CARB's Omnibus regulations in any prospective Section 177 states provided the adoption is for 2027 and later model years." CARB has enforced those speech-limiting provisions. For example, on September 1, 2023, CARB's Deputy Executive Officer called and wrote to me to ask EMA to refrain from issuing oppositional statements to Section 177 states that would consider adopting CARB's regulations.

10. The speech-neutrality mandates of CTP impacted many public EMA comments. For example, on October 24, 2024, EMA submitted written comments to the Illinois Pollution Control Board (IPCB) regarding its consideration of petitions seeking the adoption of CARB's ACT and Omnibus regulations in Illinois. Consistent with the CTP, EMA stated in its comments that "as it relates to this matter, EMA and its members have agreed (in Appendix D to the [CTP] Agreement) not to oppose states' adoption of the Omnibus regulations . . . and have similarly agreed to be neutral with

respect to any state's proposal to adopt CARB's ACT regulations." EMA also stated that it was "submitting these comments consistent with the relevant terms of the Clean Trucks Partnership Agreement." A true and correct copy of that submission is attached hereto as Exhibit C. And on November 21, 2024, EMA submitted additional comments to the IPCB which stated that, "EMA is not taking a position on the merits of the Petitioners' requests." A true and correct copy of that submission is attached hereto as Exhibit D.

11. In each of the following instances, EMA was required by the CTP's terms to take a neutral position in response to any prospective Section 177 states' proposals to consider adopting the Omnibus and ACT regulations:

a. On August 30, 2023, EMA staff had a virtual meeting with representatives of the New Mexico Environmental Department (NMED) to discuss their plans to adopt CARB's ACT and Omnibus regulations. During that virtual meeting, EMA staff highlighted multiple concerns regarding NMED's ability to effectively implement that California regulations in New Mexico. Thereafter, CARB's Deputy Executive Officer contacted me via phone and emailed me at my Chicago Law Partners email address to express that EMA was talking very negatively about ACT, including by expressing concerns regarding the availability of infrastructure and utilities necessary for ACT compliance and to request that EMA refrain from making any further comments to the opt-in states that could be construed as opposing their opt-ins to CARB's regulations, noting that EMA needed to "do better on messaging and partnership." A true and correct copy of that correspondence is attached hereto as Exhibit E. On September 28, 2023, EMA submitted written comments from its Chicago offices to the New Mexico Environmental Improvement Board, in which EMA stated that "[c]onsistent with the recent agreement between EMA and CARB, EMA does not oppose the NMED's proposal to opt-in to the Omnibus and ACT regulations[.]" A true and correct copy of that submission is attached hereto as Exhibit F.

b. On September 28, 2023, EMA submitted written comments to the Maryland

Department of the Environment (MDE) regarding its proposal to adopt CARB's ACT regulations. In those written comments, EMA cited its "commitments [under the CTP] to cooperate in the implementation of CARB's ACT regulations in the increasing number of opt-in states," and further stated that "EMA does not oppose the MDE's proposal to opt-in to the ACT regulations." A true and correct copy of that submission is attached hereto as Exhibit G.

c. On May 22, 2024, EMA wrote to representatives of the state environmental regulatory agencies in Oregon, Washington State, Massachusetts, New Jersey and New York to discuss the "unintended market disruptions" arising from the States' attempted implementations on CARB's Omnibus and ACT regulations. In that correspondence, EMA stated that "consistent with the CTP...EMA and its members agreed not to oppose state opt-ins." A true and correct copy of that submission is attached hereto as Exhibit H.

d. On June 21, 2024, EMA submitted written comments to the Oregon Department of Environmental Quality (DEQ) regarding its proposed amendments to Oregon's version of the Omnibus regulations. In those comments, EMA stated, "notwithstanding [the noted] issues and concerns, we have no objection to the DEQ opting in to CARB's Omnibus program." A true and correct copy of that submission is attached hereto as Exhibit I. On May 1, 2025, EMA submitted additional comments to the Oregon DEQ regarding its proposal to adopt amendments to its version of the ACT and Omnibus regulations. In those comments, EMA expressly noted that it was "submitting these comments consistent with the relevant provisions of the CTP." A true and correct copy of that submission is attached hereto as Exhibit J.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 11, 2025.

/s/ Jed R. Mandel

Jed R. Mandel