# EXHIBIT A

STATE OF CALIFORNIA
AIR RESOURCES BOARD

| | |
|---|---|
| **Proposed Amendments to the Advanced** ) | |
| **Clean Trucks Regulations and the Zero-** ) | **Comment Deadline: July 14, 2025** |
| **Emission Powertrain Certification Test** ) | **Hearing Date: July 24, 2025** |
| **Procedure** ) | |

**COMMENTS OF THE
TRUCK AND ENGINE MANUFACTURERS ASSOCIATION**

July 14, 2025

Timothy A. French
Truck & Engine Manufacturers Association
333 West Wacker Drive, Suite 810
Chicago, IL 60606

STATE OF CALIFORNIA
AIR RESOURCES BOARD

| | |
|---|---|
| **Proposed Amendments to the Advanced Clean Trucks Regulations and the Zero-Emission Powertrain Certification Test Procedure** ) ) ) ) | **Comment Deadline: July 14, 2025** **Hearing Date: July 24, 2025** |

COMMENTS OF THE
TRUCK AND ENGINE MANUFACTURERS ASSOCIATION

1. **Introduction**

The Truck and Engine Manufacturers Association (EMA) appreciates the opportunity to submit comments on the proposal of the California Air Resources Board (CARB) to amend the Advanced Clean Trucks (ACT) regulations. The amendments at issue would, among other things, allow for the "pooling" of ACT credits so that a truck manufacturer could use an annually declining number of ZEV credits generated in one state that opted-in to the ACT regulations (pursuant to section 177 of the federal Clean Air Act (CAA)) to offset deficits generated in another ACT opt-in state. The proposed amendments would also: permit manufacturers to offset a portion of Class 7-8 tractor group deficits with Class 2b-3 or Class 4-8 group ZEV credits; decrease the minimum all-electric range threshold for NZEVs after the 2030 model year; and provide manufacturers increased flexibility with respect to the order in which they retire ZEV credits.

There are a number of fundamental issues with the proposed ACT amendments which EMA discusses below.

2. **The Opt-In States are Preempted from Attempting to Enforce the ACT regulations**

On May 22, 2025, the U.S. Congress completed its proceedings under the Congressional Review Act (CRA) to vitiate the federal preemption waiver that EPA previously issued for CARB's ACT regulations. The President signed that Congressional mandate on June 13, 2025, at which point, under the CRA, the earlier EPA preemption waiver is deemed to have never been authorized.

In light of the foregoing, none of the putative opt-in states has any authority to adopt or attempt to enforce the ACT regulations, as all such state actions have been and remain preempted under CAA section 209(a). Accordingly, CARB's proposal to adopt a credit-pooling option for the opt-in states to use to facilitate their implementation of the ACT regulations is a moot exercise that provides no benefit and has no force or effect in any state. CARB should not adopt such preempted and legally inoperative amendments.

1

### 3. The Clean Trucks Partnership is Not Viable and the Proposed Amendments are Inconsistent with Its Terms

The recent CRA action terminates and preempts CARB's authority under the CAA to implement the ACT (and the Omnibus Low-NOx) regulations. That Congressional action and other developments have undermined the continuing viability and effect of the Clean Trucks Partnership (CTP).

Regardless, the proposed amendments are also inconsistent with the CTP's terms. CARB has proposed the amendments at issue without first engaging in any substantive discussions with EMA or its members regarding the specifics of the proposed amendments, or whether those proposed amendments are acceptable to EMA and its members. That is inconsistent with Appendix D, paragraph G, of the CTP, which provides that "CARB, EMA and the OEMs mutually agree to work together to resolve any issues that may warrant regulatory amendments to either the Omnibus or ACT regulations." That has not happened.

### 4. The ACT Regulations are Not Working

Recent reports of Polk data for new trucks registered in California are showing that the ACT regulations are not working. More specifically, HDOH truck and engine manufacturers have made significant monetary investments in electrified vehicle technology, along with ongoing significant investments in diesel vehicles, have promoted the sales of all of their vehicles, including ZEVs, and have complied with the ACT regulations with the help of purchased or acquired credits. Despite those significant efforts, the demand for ZEV trucks is still minimal, and ZEVs account for only 4% of Class 4-8 trucks, which is less than half of the ACT mandate of 9%. Corollary effects can be seen as well in the registration of new conventionally-fueled trucks in California. For example, in 2024, new tractor registrations were down by 30% compared to prior years, and there was a 66% reduction in the registration of new current model year Class 4-8 trucks in 2024 compared to 2023. The impacts will only get worse if the ACT's ZEV-sales mandates are allowed to continue to ratchet up year over year.

### 5. Conclusion

For all of the foregoing reasons, before proceeding with its proposed ACT amendments, CARB instead should engage in direct discussions with EMA and its members to address the lack of viability of the ACT regulations as a whole.

                                            Respectfully Submitted,

                                            TRUCK AND ENGINE
                                            MANUFACTURERS ASSOCIATION