# EXHIBIT J

STATE OF OREGON
DEPARTMENT OF ENVIRONMENTAL QUALITY

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) | Public Hearing Date: April 30, 2025 |
| **Clean Truck Rules Update 2025** | ) |  |
|  | ) | Comment Deadline: May 7, 2025 |

COMMENTS OF THE
TRUCK AND ENGINE MANUFACTURERS ASSOCIATION

May 1, 2025                                                                Timothy A. French
                                                                           Truck and Engine Manufacturers Association
                                                                           333 W. Wacker Drive, Suite 810
                                                                           Chicago, IL 60606

# STATE OF OREGON
# DEPARTMENT OF ENVIRONMENTAL QUALITY

|                                   |   |                                      |
|-----------------------------------|---|--------------------------------------|
|                                   | ) |                                      |
|                                   | ) | **Public Hearing Date: April 30, 2025** |
| **Clean Truck Rules Update 2025** | ) |                                      |
|                                   | ) | **Comment Deadline: May 7, 2025**    |

      The Truck and Engine Manufacturers Association (EMA) appreciates this opportunity to submit these comments on the proposal of the Oregon Department of Environmental Quality (DEQ) to amend the Advanced Clean Trucks (ACT) regulations and the Omnibus Low-NOx (Omnibus) regulations, California mobile source regulations that the DEQ previously adopted pursuant to section 177 of the federal Clean Air Act (CAA). EMA represents the medium-duty and heavy-duty (MHD) truck and engine manufacturers that are regulated under the ACT and Omnibus regulations, and participated actively in the underlying rulemakings of the California Air Resources Board (CARB), and in the DEQ's subsequent rulemakings to implement those California programs in Oregon. EMA representatives and members also served on the Advisory Committee that the DEQ formed in connection with this matter. As a result, EMA and its members have a direct and significant interest in the DEQ's pending proposal.

      While EMA understands the DEQ's original motivations for seeking to opt-in to CARB's ACT and Omnibus programs back in 2021, the regulatory landscape as it relates to those programs has changed dramatically. One result from that dramatic shift is that the DEQ will not be authorized to enforce the amended ACT regulations that it is proposing to adopt, and, similarly, will not be authorized to enforce the Omnibus regulations once CARB substantively amends those standards later this year. Moreover, beyond being preempted under federal law, the DEQ's proposals are simply unworkable given the lack of the requisite ZEV-truck recharging infrastructure and ZEV-truck purchase incentives in Oregon, program elements that are essential prerequisites to any cost-effective efforts to accelerate the transition to ZEV trucks. Consequently, as detailed below, the DEQ should not proceed with the proposed rulemaking, but should instead, through enforcement discretion or other available means, defer any further action to at least the 2027 model year when the DEQ will be in a much better position to assess the continuing need for and viability of the ACT and Omnibus regulations.

      As an initial matter, section 177 of the federal Clean Air Act (CAA) – the controlling statutory provision – makes it clear that states can only implement and enforce California mobile source regulations for certain model years if **"such standards are identical to the California standards for which a waiver has been granted for such model years."** Here, that condition precedent cannot and will not be met.

      CARB has adopted two sets of substantive amendments to the ACT regulations since the DEQ first opted-in to the ACT program back in 2021. Those amendments, adopted by the CARB Board on May 23, 2024, and on November 21, 2024, make a number of necessary substantive changes to the ACT regulations, including: a 3-year deficit makeup period (subject to a 30% cap); an allowance to sell 0.05 g NOx engines in MY 2026 without incurring ACT deficits; an allowance

to use NZEVs to make up 50% of deficits; a 100% ZEV sales mandate as of 2036; new criteria for determining when and where new truck sales are made; new labeling and reporting requirements to protect OEMs and dealers from liability for unintended "leakage" of legacy engines into California (or other opt-in states); and new allowances for the purchase of ACT credits. Significantly, those multiple substantive amendments are not yet "final" under California law because California's Office of Administrative Law (OAL) has not yet approved those amendments for publication in the California Code of Regulations, although OAL is expected to do so later this month.

More significant, however, is the fact that once all of the ACT amendments are final, it is our understanding that CARB does **not** intend to submit those substantive amendments to EPA for a new preemption waiver or for a determination that the amendments are within the scope of EPA's original waiver for the ACT regulations, which EPA issued on April 6, 2023. CARB is likely (and perhaps rightly) concerned that EPA, under the second Trump Administration, would deny any additional waiver requests.

Of note is that the CARB Board resolution, dated October 24, 2024, adopting the full set of ACT amendments, expressly recognized that an additional EPA waiver determination is required for the substantively amended ACT regulations. More specifically, in its adopting Resolution (Resolution 24-5, p.8), the CARB Board expressly stated that "the Executive Officer **shall**, upon [final] adoption, forward the Proposed [ACT] Amendments to the Environmental Protection Agency with a request for a [preemption] waiver or confirmation that the amendments are within the scope of an existing waiver of federal preemption." But now, given the policy changes of the second Trump Administration, CARB staff likely will **not** be following that directive.

For its part, the DEQ has only adopted through a temporary regulation those ACT amendments that were effective in California as of October 24, 2024. But, as noted, those amendments have been superseded (by the November 21, 2024 amendments) and, in any event, are not yet final in California. The DEQ has initiated the current rulemaking ostensibly to adopt all of the ACT amendments, but the pending rulemaking does not actually do so, since the DEQ is seeking to carve out the 100% ZEV-sales mandate that takes effect in 2036 under CARB's amended ACT regulations. Such a state-specific carve-out is not permitted under CAA section 177, which mandates that state opt-ins to California mobile source programs must be "identical" to those California programs.

That issue aside, all of the numerous and important substantive amendments that CARB has made to the ACT regulations have created a "Catch 22" for the DEQ. More specifically, the DEQ needs to adopt and implement **all** of the ACT amendments to ensure that Oregon's ACT regulations are **identical** to California's, but, at the same time, the DEQ will be precluded from enforcing those necessary ACT amendments because, as we understand it, **CARB will not be seeking and EPA will not be granting the requisite waiver or "within the scope" determination for those necessary amendments.** Again, as noted at the outset, Oregon can only implement and enforce mobile source standards that are "identical to the California standards **for which a waiver has been granted**." Here, it appears that CARB will not be seeking or receiving that waiver determination for the amended ACT regulations notwithstanding the CARB Board's express recognition and direction to its Executive Officer that it is necessary.

2

The net result is that the DEQ will be precluded under CAA section 177 from implementing and enforcing in Oregon the substantive ACT amendments that are necessary to make Oregon's ACT regulations identical to California's. And, as a further result, Oregon's ACT regulations will no longer be exempt from federal preemption under the CAA. Significantly, all of this is further complicated by the EPA's transmittal to Congress of EPA's original ACT and Omnibus waiver determinations for review and potential invalidation under the Congressional Review Act.

The DEQ cannot ignore this reality, despite side-stepping the issue in the rulemaking package, where DEQ staff noted only that Advisory Committee members "provided their perspective on the anticipated impact of the existing rules and the proposed amendments." The Catch-22 at issue, however, is not a matter of perspective; it is a matter of federal law.

There are other fundamental problems with the DEQ's proposal as well. First, with respect to the Omnibus regulations, it makes little sense to implement those distinct California low-NOx regulations for just one model year (2026) before CARB fully aligns those standards with EPA's nationwide low-NOx standards in model year 2027, which CARB has committed to do under the Clean Trucks Partnership (CTP) Agreement that EMA and certain of tis members entered into with CARB in June of 2023. The DEQ has indicated that it wants to keep the separate standards for the one year to "maintain the momentum" in implementing California's regulations in Oregon. But there is no such momentum. To the contrary, the Omnibus standards are far more likely to do more harm than good in model year 2026, something the DEQ has heard directly from multiple stakeholders, due in part to the fact that fleet operators will likely defer any new truck purchases until 2027, or will simply buy them out-of-state. Thus, there is no reasonable cost-benefit analysis that could support the retention of the separate and more onerous Omnibus for one single year. Indeed, the DEQ has failed to prepare or present any quantitative analysis demonstrating the reasonably expected incremental net environmental benefits from this one-year deferral proposal. Presumably, any such objective analysis would demonstrate the opposite.

Second, turning to the substance of the DEQ's proposed add-ons to the ACT amendments, the implementation of those amendments in Oregon is, again, not authorized under controlling federal law. More specifically, the additional "free" ACT credit flexibilities that the DEQ is proposing to provide to OEMs are not elements of or in any way identical to California's ACT program, and so are similarly barred under federal law. That too is spelled out under CAA section 177, which, as noted above, provides that states can only enforce "standards relating to the control of emissions from new motor vehicles" if "such standards are **identical** to the California standards for which a waiver has been granted." California's ACT program does not include any allowances for additional "free" ACT credits.

In this instance, the DEQ has conceded that the additional free credits are necessary because "sales of Zero Emission Class 7-8 tractors in Oregon are not anticipated to meet the initial ACT requirements." (See DEQ Advisory Committee Presentation, March 7, 2025, p.11.) To address that admission of the infeasibility of the ACT regulations in Oregon, the DEQ is proposing to issue enough free additional ACT credits for Class 7-8 tractor sales to effectively nullify the applicable ACT ZEV-truck sales mandates for the 2025 and 2026 model years. The DEQ is also proposing to issue additional free ACT credits for Class 2b-6 trucks to effectively reduce those applicable ZEV-truck sales mandates by 50%. The DEQ has also added a provision (see Proposed Section OAR 340-257-0300(2)(C)) to grant itself the discretion to extend the free credit program

3

into the 2027 model year and beyond based on its unilateral assessment of the state of the commercial truck market in Oregon in 2027 and beyond – a regulatory provision that may be unreasonably vague and broad on top of being preempted.

The proposed additional "free" zero-emission ACT credits will effectively reduce the ACT's ZEV-sales mandates to 0% for Class 7-8 tractors in the 2025 and 2026 model years (and perhaps beyond), and will cut the ACT's ZEV-sales mandates for Class 2b-6 trucks in-half for the 2025 and 2026 model years (and maybe beyond). In contrast, the California ACT program does not provide any of those additional free credits to nullify or cut in-half the ZEV truck standards for the 2025 and 2026 model years (and maybe beyond) in California. Thus, since the additional ACT credits at issue are expressly designed to reduce the stringency of the ACT standards in model years 2025 and 2026, and since those reduced ACT standards for the 2025 and 2026 model years are not "identical" to California's ACT standards, they are preempted and void under CAA section 177.

It is not enough for the DEQ to assert that the new flexibilities could be viewed as "optional." Simply adding that word cannot change the fact that the DEQ is designing the additional amendments - - the extra free credits - - to reduce the stringency of the ACT regulations. Indeed, the DEQ has conceded that without the extra free credits, OEMs "are not anticipated to meet the initial ACT requirements." As a result, given the admitted infeasibility of the ACT requirements in Oregon, the free credits are a de facto necessity, not an option, for compliance. Accordingly, this non-identicality issue, just like the "Catch-22," cannot be ignored.

The same "Catch-22" analysis will apply to the Omnibus regulations as well once CARB amends those regulations later this year. In the fourth quarter of this year, CARB will adopt significant amendments to the Omnibus regulations in order to fulfill CARB's commitments under the CTP. Those amendments will include, among other things: aligning with EPA's low-NOx standards starting with the 2027 model year; adopting EPA's procedures and standards for in-use testing (including corrections for cold ambient temperatures and in-use measurement accuracy); adopting numerous substantive and technical revisions to the applicable onboard diagnostic (OBD) testing requirements; and otherwise ensuring consistency between the California and nationwide low-NOx programs. The DEQ will be obligated to adopt those same amendments to maintain the requisite "identicality" with CARB's Omnibus regulations, but, at the same time, will be precluded from enforcing those amendments in Oregon because, as with the ACT amendments, CARB in all likelihood will not seek or obtain a preemption waiver or "within the scope" determination from EPA for those important Omnibus amendments.

The net result again is that is that the DEQ will be precluded from enforcing the Omnibus regulations in 2026. As a result, the proposed one-year deferral of the Omnibus regulations is, for all intents and purposes, an empty gesture. The DEQ is proposing to defer the enforcement of regulations that it will soon be federally preempted from enforcing. That is not a reasonable use of the rulemaking process, especially when the CARB and EPA low-NOx rules will fully align starting in model year 2027 in any event.

In light of all the foregoing issues – issues that the DEQ is bound under the law to acknowledge – there is no reasonable basis for proceeding with the consideration of the DEQ's proposal. Instead, consistent with federal law, the DEQ should defer any enforcement or

amendment of the ACT and Omnibus regulations until at least the 2027 model year when the regulatory landscape will have become clearer, and the relative benefits of continuing with the implementation in Oregon of CARB's ZEV-truck mandates can be more fully assessed. In that regard, it is noteworthy that two other opt-in states, Maryland and Massachusetts, have recently adopted multi-year deferrals of their ACT programs in recognition of the many current impediments to the feasible and cost-effective implementation of the ACT mandates.

  EMA is submitting these comments consistent with the relevant provisions of the CTP, and in furtherance of one of its core purposes, which is to promote the implementation of harmonized cost-effective nationwide standards to continue the reduction of emissions from MHD vehicles and engines. EMA looks forward to continuing to work with the DEQ toward that common goal.

            Respectfully submitted,

            TRUCK AND ENGINE
            MANUFACTURERS ASSOCIATION