IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC; PACCAR INC; and VOLVO GROUP NORTH AMERICA LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,<br><br>  Defendants. | CASE NO. 2:25-CV-02255-DC<br><br>**DECLARATION OF DANIEL POTTER IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

I, Daniel Potter, pursuant to 28 U.S.C. § 1746, state and declare:

1. I am over eighteen years of age. If called to testify in this matter, I can and will competently testify to the following facts, of which I have personal knowledge, personal experience, and personal participation in communications with business associates.

2. I am a resident of Ann Arbor, Michigan.

3. I have worked at Daimler Truck North America ("DTNA") or an affiliate since 2008. I am a Manager of Compliance and Regulatory Affairs at DTNA, a position I have held since 2019. Prior to this position, I worked for DTNA or its affiliates as a contract engineer on performance and emissions engineering (2008-2011), as a project engineer leading the engine diagnostics team (2011-2016), and as a senior engineer leading the fuel systems software team (2016-2019).

4. I attended Lawrence Technological University, from which I received a B.S.E. in mechanical engineering, with a concentration in automative engineering.

5. DTNA, through its affiliated companies like Detroit Diesel Corporation, is a leading provider of medium- and heavy-duty engines and vehicles. When California has a valid waiver of preemption for an emissions standard under Section 209(b) of the Clean Air Act, DTNA must obtain a certification from the California Air Resources Board ("CARB") each year for each class of products for initial retail sales. A CARB certification is valid for one model year, which typically begins on January 1 of the calendar year for which the model year is named (e.g., model year 2026 begins on January 1, 2026). Engines or vehicles covered by that CARB certification can no longer be built after December 31st of the calendar year for which the model year is named (e.g., model year 2025 must be completed by December 31st, 2025, and model year 2026 builds must begin).

6. I am not a lawyer, but as outlined in DTNA's complaint and the motion for a preliminary injunction associated with this declaration, I understand that the Defendants in this matter expect DTNA to seek CARB certification for its model year 2026 vehicles notwithstanding that the underlying CARB regulations are preempted by the Clean Air Act. Defendants have expressed their position on these certification requirements through: (1) CARB's May 23, 2025 Manufacturers Advisory Correspondence ("MAC") stating that certification remains necessary, (2) Governor Newsom's Executive Order N-27-25, issued on June 12, 2025, which directs CARB to continue enforcing its

1

DECLARATION OF DANIEL POTTER
CASE NO.

Gibson, Dunn & Crutcher LLP

certification requirements and directs state agencies and actors to prioritize compliant manufacturers in procurement decisions, funding, and regulatory treatment, and (3) the Clean Truck Partnership, a document between CARB, truck manufacturers, and a trade association mandating certain regulatory amendments, speech restrictions on the private-party signatories, and compliance with certain of CARB's regulations. True and correct copies of the May 23, 2025 MAC, Executive Order N-27-25, and the Clean Truck Partnership are attached hereto as **Exhibits A, B, and C**, respectively. In particular, the May 23, 2025 MAC says that "CARB will continue to accept and process certification applications for model year 2026" to "ensure the requirements of certification are met to enable lawful vehicle sales in California[.]" Ex. A, MAC at 2. Executive Order N-27-25 likewise states that "[t]he California Air Resources Board shall continue to work with manufacturers consistent with the commitments made in the Clean Truck Partnership, and report to my office every six months on manufacturer progress towards those commitments." Ex. B, EO N-27-25 at 3. And because the Clean Truck Partnership itself mandates compliance with the preempted regulations at issue in this case, *see* Ex. C, CTP ¶ 2, Executive Order N-27-25 enforces those same regulations

7. Furthermore, CARB has reached out to my team to inquire when DTNA intends to submit its certification requests for model year 2026. DTNA reasonably interprets this inquiry as an indication that CARB believes that the regulations at issue here (and the related certification requirements) remain in force, and that CARB intends to enforce them.

8. CARB's annual certification process requires DTNA to invest enormous time and resources, and the need for these certifications requires significant and expensive changes to DTNA's business. Furthermore, to plan product pricing and availability in California for the upcoming model year, DTNA must begin submitting certification materials to CARB by mid-August of the preceding year. DTNA's certification efforts and the resulting expenses remain ongoing through the present day, and DTNA is at imminent risk of incurring more expenses in the next several weeks if DTNA is required to submit certification applications to CARB for model year 2026 related to the preempted regulations at issue in this case.

9. To obtain CARB certification, CARB requires that DTNA conduct extensive testing of

its engines and their emissions. To provide a few examples of work that is required by CARB:[1]

    a. CARB requires on-board diagnostic testing to be conducted every single year. That is, even where DTNA is selling substantially the same models it sold the prior year, CARB effectively requires DTNA to conduct its full suite of on-board diagnostic tests.[2] This testing involves months of installing deliberately deteriorated components into DTNA engines and then testing on-board diagnostic equipment to ensure that issues associated with the deteriorated components are detected before various emissions threshold are reached. *See generally* 13 Cal. Code Regs. § 1971.1.

    b. And CARB requires that DTNA test the emissions and on-board diagnostics of its engines over their working life. This requires DTNA to continuously run and monitor the emissions performance of one or more of the engines that it plans to sell in California—24 hours a day for *months*—to simulate aging over an engine's working life. DTNA must then prepare extensive reporting packages to CARB with that data. To conduct these tests, DTNA's work begins at least two years in advance of a given model year. That means that for model year 2026 certification—i.e., the certification that CARB insists DTNA needs to sell its Class 8 vehicles in California in the year 2026—DTNA began work in 2024. And for model year 2027, DTNA is already investing money, personnel, and other resources in testing the engines it may need to certify for model year 2027.

10. Each year, DTNA employees and contractors spend well over ten thousand manhours planning, preparing, and submitting the required certification paperwork to CARB. In all, CARB's annual certification requirements will conservatively cost DTNA at least $3.6 million for model year 2026 in internal expenses, excluding the fees DTNA must pay to CARB for certification (discussed

---

[1] DTNA conducts extensive additional testing of its trucks and engines as required by both CARB and the EPA. For the avoidance of doubt, I address here only testing and costs that are attributable exclusively to CARB's certification requirements.

[2] This testing is also required for EPA certification during certain years. But EPA allows DTNA to "carry over" testing from prior years when its engines are, in relevant ways, the same as those tested and approved in prior years. Thus, for model year 2026, all on-board diagnostic testing is required only if required for CARB certification under the preempted regulations.

Gibson, Dunn & Crutcher LLP

below). DTNA has already incurred most of these expenses for the model year 2026 certification, but it will be forced to incur at least $1.2 million in additional costs, including the expenditure of at least 6,000 additional manhours, if it must go through with certification for model year 2026. And in addition to the human and financial costs of CARB's required testing and reporting, DTNA must pay for the certification applications themselves. DTNA has not yet submitted these applications, and if it is required to submit certification applications for all of the regulations at issue in this case, it will need to pay CARB $1,273,845 to do so for model year 2026. And further, because CARB's regulations effectively demand that DTNA produce certain additional engine families, DTNA must apply for additional EPA certifications for these CARB-specific families, which will cost $273,872 for model year 2026. This is all to say that if DTNA is forced to seek CARB certification for model year 2026, it will incur costs of at least $2.74 million.[3] These costs and fees will all be incurred by DTNA if and when DTNA is forced to file for CARB certification for model year 2026.[4] And as discussed below, *infra* ¶¶ 11–14, if DTNA must file for CARB certification, it must do so in the next few weeks to minimize irreparable harm to its business.

11. Even after DTNA incurs such costs in preparing a certification application, DTNA must wait a considerable amount of time for CARB to issue an order certifying DTNA's compliance and allowing DTNA to sell its vehicles in the State of California. CARB has indicated that its certification application review process takes 60 days, but this is a floor rather than a ceiling. In practice, certification takes much longer, particularly as CARB may make additional requests for information during the process. For example, for model year 2025, DTNA began submitting materials to CARB in August of 2024, and did not receive its final certification until December 19, 2024. Accordingly, to be confident that it will be able to sell its vehicles in California on January 1 of 2026, DTNA would

---

[3] Given the uncertain regulatory environment, DTNA may *voluntarily* seek certain certification under certain CARB regulations for select engine families. Even if it does so, such voluntary certifications would cost DTNA only a small fraction of the potential costs for the full suite of certifications at issue in this case.

[4] The $273,872 for additional EPA certification will be paid by DTNA to EPA when DTNA applies for EPA certification. Because EPA's certification timeline is much shorter and more reliable than CARB's, DTNA typically seeks EPA certification close to the start of the model year. However, if DTNA is forced to sell CARB-specific engine families, these additional costs to DTNA for additional EPA certifications will be due to EPA.

ordinarily target submitting materials to CARB by no later than August 15, 2025 to be sure that certification will be done in time. Thus, because DTNA will need to submit certification materials to CARB imminently if required to do so, DTNA is at imminent risk of incurring the additional certification $2.74 million of expenses discussed above.

12. DTNA must know what it can and cannot sell in California well in advance of January 1. Heavy-duty trucks are a major investment for purchasers, and dealers and buyers plan their purchases many months in advance. For example, DTNA intends to announce its model year 2026 pricing, and open its order books, in September. And because heavy-duty trucks are time consuming to build and distribute, even those first orders placed in September may take months to fill. Thus, significant planning time is critical not only to DTNA's ability to price its products and take and fill orders, but also to DTNA's customers whose businesses rely on being able to place their orders far in advance.

13. As things stand, DTNA risks violating the regulations that CARB and Governor Newsom insist DTNA must still follow by presenting California customers with pricing and opening its order books for model year 2026. CARB is insisting that DTNA must certify all models it intends to sell pursuant to CARB's own regulations, notwithstanding that those regulations lack a valid EPA waiver. And if DTNA disregards CARB's preempted certification rules, it risks incurring state fines of $48,788 for each violation. *See* Ex. A, MAC at 2 (citing Cal. Health & Safety Code § 43154(a)(1)). These fines can accrue rapidly, because CARB considers each sale of an uncertified vehicle to be a violation, and DTNA sells thousands of vehicles in California each year.

14. This uncertainty prevents DTNA from best serving its customers in California and will lead to a significant loss of sales and a permanent loss of customer goodwill if not resolved expeditiously.

15. On August 7, 2025, DTNA received a cease and desist letter from the United States Department of Justice. A true and correct copy of that letter is attached hereto as **Exhibit D**. In that letter, DOJ states that "because CARB's regulations are preempted, the Clean Truck Partnership is preempted and unlawful." Ex. D, August 7, 2025 DOJ Letter, at 2. The letter goes on to state that "You [DTNA] must therefore immediately cease and desist your compliance with both the Clean Truck

Partnership and its preempted state vehicle emission regulations." *Id.* (emphasis in original). DTNA reasonably interprets DOJ's letter to indicate that DTNA's continued adherence to CTP will lead to enforcement actions against it by the federal government.

16. DTNA has reasonably interpreted Defendants' statements—including the May 23, 2025 MAC and EO N-27-25—as threats that Defendants will punish DTNA and any other manufacturers with fines, unfavorable regulatory treatment, and breach claims under the Clean Truck Partnership if they challenge or otherwise oppose California's emissions agenda. Defendant CARB has also silenced DTNA's speech by enforcing the speech- and petitioning-limiting provisions of the Clean Truck Partnership against a trade association of which DTNA is a member, the Engine Manufacturers Association ("EMA"). EMA is one of the most important avenues through which DTNA speaks and petitions on matters of public and private importance, and limits on EMA's speech effectively (and directly) limit DTNA's own speech on such issues. As outlined in the declaration of Jed Mandel, in one instance on September 1, 2023, CARB's Deputy Executive Officer called and wrote to EMA's president to request that EMA refrain from making oppositional statements to states that would considering adopting CARB's regulations. Mandel Decl. ¶ 9. In response to CARB's insistence on limiting EMA's advocacy, on September 28, 2023, EMA filed written comments with a New Mexico environmental regulation regarding adopting CARB's regulations in that state, in which EMA stated that it did not oppose New Mexico's adoption. EMA—on behalf of its members including DTNA—would have raised significant concerns with New Mexico's adoption of CARB's rule but for the CTP's speech limiting provisions. *See* Mandel Decl. ¶ 11.a. Similar instances of CTP-driven censorship are reflected in EMA's non-oppositional statements to regulators in Maryland, Oregon, Illinois, Washington State, Massachusetts, New Jersey, and New York. Mandel Decl. ¶¶ 10, 11.b –11.d. In each of those instances, EMA's speech was limited by the Clean Truck Partnership and CARB's actual or threatened enforcement thereof, which in turn directly limited DTNA's speech on these important matters.

17. My supervisor Sean Waters is DTNA's Vice President of Product Integrity. I am aware from my work with him on matters like regulatory comments and CARB engagement that DTNA's speech has been directly limited by CTP. At various times, DTNA has directed its spokespeople to be

1  publicly neutral regarding certain CARB regulations covered by the CTP (including the adoption of
2  those regulations by other states).  Absent the speech-limiting provisions in the Clean Truck
3  Partnership, DTNA would have vocally opposed these regulations nationwide.

4     18.    I declare under penalty of perjury under the laws of the United States of America that
5  the foregoing is true and correct.

7     Executed on August 10, 2025.

*/s/ Daniel Potter*
Daniel Potter