LATHAM & WATKINS LLP
ROBIN M. HULSHIZER, SBN 158486
Robin.hulshizer@lw.com
ARTHUR FOERSTER (*pro hac vice application forthcoming*)
Arthur.foerster@lw.com
KEVIN M. JAKOPCHEK (*pro hac vice application forthcoming*)
Kevin.jakopchek@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel.: 312.876.7700; Fax: 312.993.9767

BELINDA S LEE, SBN 199635
Belinda.lee@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel.: 415.391.0600; Facsimile: 415.395.8095

*Attorneys for Plaintiff, International Motors, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; GAVIN NEWSOM, in his official capacity as the Governor of California.**<br><br>**Defendants.** | Case No. 2:25-CV-02255-DC<br><br>**DECLARATION OF MICHAEL NOONAN IN SUPPORT OF PLAINTIFF INTERNATIONAL MOTORS, LLC'S MOTION FOR A PRELIMINARY INJUNCTION** |

I, Michael Noonan, declare as follows:

**1.** I am over the age of eighteen, and if called as a witness, I could and would competently testify to the matters stated herein as they relate to the Motion for a Preliminary Injunction ("Motion") associated with this declaration. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.

2.      I have been employed by International Motors, LLC (f/k/a Navistar, Inc.) ("International") since October 2006.  I am currently the Vice President – Regulatory, Certification, and Compliance and have held this position since September 2023.  My responsibilities include the certification and compliance of International's powertrain and vehicle applications including both the testing and application process with the Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB"), powertrain software and calibration release, and regulatory strategy and affairs.  Prior to my current role, I was the Director of International's Certification and Compliance Department, holding that position from April 2018.  Before then, I was the Associate Director of Certification and Compliance from February 2017 to April 2018, and Certification Chief Engineer from February 2016 to February 2017.  From September 2013 to February 2016, I worked as an Engineering Senior Manager, and prior to that I held various other engineering positions at International from October 2006 to September 2013.

3.      Based in Lisle, Illinois, International is a long standing, leading manufacturer of Class 4 through 8 commercial vehicles, specifically, International® trucks and engines, IC Bus® school and commercial buses, as well as Fleetrite® aftermarket parts.  With more than a million of our trucks on the road, one in five Class 6 through 8 vehicles is an International® truck.  And, nearly half of all school buses on the road today are our IC Bus® brand.

4.      Before new motor vehicles or new motor vehicle engines are sold into commerce, each vehicle or engine family must obtain certification, *i.e.*, a certificate of conformity ("COC") from the EPA to confirm that they meet federal emissions standards.  When California has a valid waiver of preemption for its own emission program, International must also obtain California certification, *i.e.*, an "Executive Order," from CARB for each vehicle or engine family

for initial retail sales of new motor vehicles and engines in California. COCs and Executive Orders are valid for one model year, beginning on January 1 of the calendar year for which the model year is named.

5. I understand from the Motion, and based upon my and my team's interactions with CARB, the Defendants in this matter will require that International obtain CARB Executive Orders for each of its model year 2026 (and beyond) vehicle and engine families that it intends to sell in California by certifying to meet underlying CARB emissions regulations, even though since June 12, 2025, those underlying CARB emission regulations no longer have a valid waiver of preemption under the Clean Air Act. Defendants have expressed their position on which certification requirements will be required through: (1) CARB's May 23, 2025 Manufacturers Advisory Correspondence ("MAC") stating that certification to California's regulations remain necessary, (2) Governor Newsom's Executive Order N-27-25, issued on June 12, 2025, directing (among other things) that CARB continue to enforce its certification requirements and directing state agencies and actors to prioritize compliant manufacturers in procurement decisions, funding, and regulatory treatment, and (3) via statements relating to the Clean Truck Partnership, signed by CARB. Furthermore, CARB staff have been unable to provide clarity when asked about any changes to the certification process as considerations remain under internal review. Indeed, CARB appears to be operating "business as usual" and, from our perspective, have been reviewing our applications as if there were a valid waiver of preemption under the Clean Air Act.

6. The process of obtaining CARB Executive Orders is quite lengthy and takes an enormous amount of time and resources. Given the prolonged process of obtaining CARB certification on any vehicle or engine family, on April 22, 2024, International paid approximately

$823,973 to CARB to initiate the certification process to position itself to obtain Executive Orders for its 2026 model year vehicle and engine families prior to the start of the model year.

7. Application fees, however, are just a small fraction of the costs incurred to obtain certification from CARB. In fact, CARB's annual certification process requires that International invest a significant amount of time and money to design, develop and test its vehicles and engines. This work entails tens of millions of dollars and thousands of hours that International and its employees are currently investing to obtain Executive Orders for each of its 2026 model year vehicle and engine families. International's certification efforts and the resulting expenses continue through the present day. For calendar year 2025, International will spend tens of millions of dollars in addition to application fees to certify its vehicles and engines for model year 2026.

8. International continues to incur significant expenses as each day passes, as the company continues to protect itself from the regulatory uncertainty that presently exists. Should Defendants be enjoined from attempting to enforce California's now-preempted emission standards, International could immediately seek to modify its current California certification applications to align with federal-based requirements. This would, for instance, allow International to suspend ongoing costly testing, including the aging of engines, that California requires above and beyond federal testing requirements. This would also, for instance, allow International to conserve valuable NOx and greenhouse gas ("GHG") credits that would otherwise be required to be used for California engine and vehicle certifications and allow International to maximize vehicle sales volumes in California.

9. By continuing to proceed with California certification requirements that should no longer apply because of federal preemption, CARB is harming International as it has spent

considerable money and resources on California certification requirements; yet other truck manufacturers may not be doing so, creating an uneven playing field among manufacturers. International needs immediate clarity on California requirements to ensure a competitive but even playing field.

10.    Moreover, heavy-duty trucks are a major investment for International's customers, costing in the range of $150,000 or more. Dealers and customers typically plan their truck purchases many months in advance and that means International must also be able to cost out and price its products accurately and competitively. Thus, it is critical to know with certainty the regulatory requirements that will govern sales in California as those requirements necessarily impact pricing.

11.    For example, California's Advanced Clean Trucks Regulation, which no longer has a preemption waiver, requires OEMs to sell increasing percentages of zero-emissions vehicles year-over-year or to buy GHG credits from competitors or other vehicle makers who exceeded their own percentage obligations. The purchase of credits is expensive and would need to be factored into pricing. International has already received inquiries from customers seeking to order 2026 International brand heavy-duty trucks with internal combustion engines for retail sales in California. The uncertainty created by CARB's position that its Advanced Clean Trucks Regulation will apply to all sales in California puts International at imminent risk of under or overpricing its internal combustion engines to the detriment of not only International, but also its customers.

12.    As things stand, International cannot present California customers with pricing, or fully open its order books for model year 2026, without being at risk of violating the regulations that CARB has indicated all OEMs must follow. CARB is insisting that all OEMs certify all

models they intend to sell into California pursuant to CARB's own regulations, notwithstanding that those regulations lack a preemption waiver. If International disregards CARB's preempted certification rules, it risks incurring state fines of $48,788 for each violation. *See* MAC, at 2 (citing Cal. Health & Safety Code § 43154(a)(1)). CARB considers each sale of an uncertified vehicle or engine to be a violation, and International anticipates significant sales in California in 2026. This uncertainty prevents International from best serving its customers in California and will lead to a significant loss of sales and a permanent loss of customer goodwill if not resolved expeditiously.

13.   On August 7, 2025, International received a cease-and-desist letter from the United States Department of Justice ("DOJ"). A true and correct copy of that letter is attached hereto as Exhibit A. In that letter, DOJ states that "because CARB's regulations are preempted, the Clean Truck Partnership is preempted and unlawful." Ex. A, August 7, 2025, DOJ Letter, at 2. The letter goes on to state that "<u>You [International] must therefore immediately cease and desist your compliance with both the Clean Truck Partnership and its preempted state vehicle emission regulations</u>." *Id.* (emphasis in original).

14.   International believes Defendants' statements—including the MAC and EO N-27-25—indicate that Defendants will punish International with fines, unfavorable regulatory treatment, and breach claims under the Clean Truck Partnership if International challenges or otherwise opposes or does not comply with California's emissions regulations. Such threats have chilled International's exercise of its speech and petitioning rights.

15.   Defendant CARB has also silenced International's speech by enforcing the speech- and-petitioning-limiting provisions of the Clean Truck Partnership against a trade association of which International is a member, the Engine Manufacturers Association ("EMA").

EMA is one of the most important avenues through which International speaks and petitions governmental entities on matters of public and private importance, and limits on EMA's speech effectively (and directly) limit International's own speech on such issues.

16. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed and signed: August 10th, 2025

Michael Noonan