# Exhibit A

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*
JOHN K. ADAMS
DAVID D. MITCHELL
United States Department of Justice
Environment & Natural Resources Div.
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5905
robert.stander@usdoj.gov
john.adams3@usdoj.gov
David.Mitchell@usdoj.gov

ERIC GRANT
*United States Attorney*

EDWARD A. OLSEN
*Assistant United States Attorney*
501 I Street, Suite 10-100
Sacramento, California 95814
(916) 554-2821

*Counsel for Plaintiffs-Intervenors*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and GAVIN NEWSOM, in his official capacity as the Governor of California, <br><br> Defendants, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br> Plaintiffs-Intervenors. | Civil Action No. 2:25-cv-02255-DC-AC <br><br><br> **COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1.    In defiance of federal law, the State of California is attempting to use its own vehicle and engine emissions standards through a so-called "Clean Truck Partnership" to ban internal-combustion engines in heavy-duty trucks, notwithstanding duly enacted federal statutes specifically providing that those regulatory standards are preempted. The Clean Truck Partnership is California's attempt to enforce three sets of stringent emissions standards adopted by the California Air Resources Board ("CARB"): the Omnibus' Low NOx ("Omnibus") rule, the Advanced Clean Trucks ("ACT") rule, and the Advanced Clean Fleets ("ACF") rule. Individually or collectively, these emission standards effectively impose a nationwide ban on internal-combustion engines in heavy-duty trucks by 2036.

2.    The decision whether to ban internal-combustion engines in heavy-duty trucks rests ultimately with the federal government. And it has declined to take such a far-reaching step. In June 2025, the President signed into law Congressional joint resolutions providing that Environmental Protection Agency ("EPA") preemption waivers for the Omnibus and ACT rules "shall have no force or effect." Pub. L. No. 119-15, 139 Stat. 65 (ACT); Pub. L. No. 119-17, 139 Stat. 67 (Omnibus). These rules, along with the ACF regulation for which EPA had never issued a waiver, are now preempted under the express prohibition in the Clean Air Act that bars *any* State from *attempting to* enforce its own emissions standards. *See* 42 U.S.C. § 7543(a).

3.    But neither the Clean Air Act nor the Congressional disapprovals signed into law by the President have stopped CARB from demanding compliance with California's preempted emissions standards. To the contrary, CARB continues to threaten truck manufacturers who refuse to comply with its preempted regulations with severe civil sanctions and hostile regulatory treatment.

4.    On August 11, 2025, the U.S. House of Representatives Committee on Energy and Commerce notified CARB of its illegal actions: "[T]he Committee has been made aware that CARB staff is denying auto manufacturers approval to bring vehicles

1  to market unless the manufacturers agree to comply with the preempted regulations."

2  U.S. House of Representatives Committee on Energy and Commerce, *Letter to Steven*

3  *S. Cliff* at 2 (Aug. 11, 2025), https://perma.cc/EB5X-FZR2.

4          5.    California's defiance of federal constitutional and statutory law must

5  stop: CARB's ongoing enforcement of preempted California emissions standards

6  grossly intrudes on the exclusive authority of the federal government to regulate

7  motor vehicle and engine emissions under the Clean Air Act, according to national

8  uniform standards. And it harms ordinary citizens from coast to coast by blocking the

9  sale of fossil-fuel powered heavy-duty trucks, which are the lifeblood of our interstate

10 commerce, as they transport a vast amount of goods and materials every day that keep

11 businesses operating, consumers stocked, and prices low.

12         6.    Because CARB is defying the supremacy of federal authority that

13 Congress enacted in the Clean Air Act's Title II mobile-source program in its

14 determination of the public interest, Plaintiffs-Intervenors the United States EPA

15 (collectively, the "United States") bring this action against CARB, California, and its

16 Governor to stop California's ongoing usurpation of federal authority to set national

17 uniform emissions standards for mobile sources. The Supremacy Clause of the

18 Constitution and the Clean Air Act's preemption provision prevent California from

19 enforcing preempted emissions standards, through the Clean Truck Partnership or

20 otherwise.

21         7.    The Court should declare the ACT, ACF, and Omnibus rules and the

22 Clean Truck Partnership preempted and therefore unlawful, and it should enjoin their

23 implementation and enforcement.

24                          **JURISDICTION AND VENUE**

25         8.    This Court has subject matter jurisdiction over the claims in this

26 Complaint in Intervention under 28 U.S.C. §§ 1331 and 1345.

27         9.    This Court may order the injunctive relief requested under its authority

28 to hear cases in equity seeking to enjoin violations of federal law. *See Arizona v. United*

Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                    2

1  *States*, 567 U.S. 387 (2012); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575

2  U.S. 320, 327 (2015); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477,

3  491 n.2 (2010); *United States v. Abbott*, 85 F.4th 328, 332 (5th Cir. 2023). The Court

4  may order the declaratory relief requested under 28 U.S.C. §§ 2201 and 2202.

5       10.    Defendants California Air Resources Board and Steven S. Cliff

6  (collectively, "CARB"), in his official capacity as the Executive Officer of the California

7  Air Resources Board, are charged with implementing and enforcing the regulations at

8  issue.  Defendant Gavin Newsom, in his official capacity as the Governor of California,

9  is charged with enforcing state law and has directed CARB to take actions related to

10  enforcement of the state regulations discussed herein.

11       11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because all

12  Defendants maintain an office and conduct their official duties within this judicial

13  district, and a substantial part of the events or omissions giving rise to this action

14  occurred within this judicial district.

15                           **THE PARTIES**

16       12.    Plaintiff-Intervenor the United States of America is suing on its own

17  behalf, on behalf of its citizens, and on behalf of its executive department.

18       13.    Plaintiff-Intervenor the U.S. Environmental Protection Agency is a

19  federal executive agency with responsibility for administering the Clean Air Act,

20  including the regulation of motor vehicle and engine emissions.

21       14.    Defendant California Air Resources Board is a branch of the California

22  Environmental Protection Agency, which is an agency of the State of California.  The

23  California Health and Safety Code authorizes CARB to promulgate and enforce

24  regulations to control emissions from new motor vehicles and engines.   CARB is

25  headquartered in Sacramento, in the State and Eastern District of California, and it

26  performs its official duties throughout the State of California.

27       15.    Defendant Steven S. Cliff is the Executive Officer of CARB. Defendant

28  Cliff  is  responsible,  directly  and  through  CARB,  for  the  promulgation,

1    implementation, and enforcement of the ACT rule, the ACF rule, and the Omnibus

2    rule, including through the Clean Truck Partnership. He is also authorized to

3    implement and enforce all motor vehicle emission standards in the State of California.

4    The Executive Officer maintains an office in Sacramento, in the State and Eastern

5    District of California, and he performs his official duties in Sacramento, California.

6    He is sued in his official capacity.

7        16.    Defendant Gavin Newsom is the Governor of the State of California.

8    Governor Newsom has directed CARB to continue enforcing preempted CARB

9    regulations.   Governor Newsom issued an Executive Order threatening vehicle

10   manufacturers with detrimental regulatory treatment for failure to follow the Clean

11   Truck Partnership or for failing to certify their products in compliance with preempted

12   CARB regulations.  This suit is brought against the Governor in his official capacity.

13   The Governor maintains an office in Sacramento, in the State and Eastern District of

14   California, and performs his official duties in Sacramento, California.

15                        **APPLICABLE LAW**

16   **I.    The Clean Air Act's Mobile Source Program**

17       17.    In 1965, Congress amended Title II of the Act to authorize federal

18   emission standards for motor vehicles. Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965).

19   Then as now, section 202 governs federal emission standards for air pollutants

20   emitted from new motor vehicles or engines found to "cause, or contribute to . . . air

21   pollution which may reasonably be anticipated to endanger public health or welfare."

22   42 U.S.C. § 7521(a)(1). In setting those standards, EPA must consider technological

23   feasibility, lead time, and "cost of compliance." *Id.* § 7521(a)(2).

24       18.    Even after section 202's enactment, many states continued developing

25   their own emission programs. *See, e.g., Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't*

26   *of Envtl. Conservation*, 17 F.3d 521, 525 (2d. Cir. 1994). Congress responded in 1967

27   by adding section 209(a), a broad preemption provision. This provision is the

28   "cornerstone" of Title II. *Motor Vehicle Mfrs.*, 17 F.3d at 526.

19.    Section 209(a) provides: "No State . . . shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a). Further: "No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment." *Id.* This differs from the Act's other programs. Congress chose cooperative federalism in Title I (generally governing stationary sources) but national uniformity in Title II (mobile sources). *Compare id.* § 7416 (retention of state authority), with *id.* §7543(a) (preemption of state emission regulations).

20.    Congress left only one narrow path to an exception to section 209(a)'s broad preemptive reach with respect to emission standards for new motor vehicles and engines. Specifically, in what is now section 209(b), Congress allowed EPA to grant a preemption waiver to a state that adopted certain emissions standards before March 30, 1966. 42 U.S.C. § 7543(b). Congress knew this meant only California.

21.    To receive a waiver for an emissions standard, and then impose the certification requirements, California must first "determine[] that [its own] State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." *Id.* § 7543(b)(1).

22.    But EPA cannot promulgate a waiver if it finds, after notice and opportunity for a public hearing, that: (1) "the determination by [California] is arbitrary and capricious," (2) California "does not need such State standards to meet compelling and extraordinary conditions"; or (3) "such State standards and accompanying enforcement procedures are not consistent with [section 202(a)]." *Id.* § 7543(b)(1).

23.    Congress included the California waiver provision because of the State's "unique" smog problems at the time. H.R. Rep. 90-728, at 1958, 1986 (1967). These were the "compelling and extraordinary circumstances sufficiently different from the

Complaint-in-Intervention

Nation as a whole" to justify limited deviation from section 209(a)'s demand for uniformity. *Id.* at 1956; *see* S. Rep. 90-403, at 33 (1967).

24.  In 1977, Congress again amended the Act and added section 177. *See* Pub. L. No. 95-95. That provision permits "any State" with EPA-approved plans for regulations of certain air pollutants under Title I of the Act to "adopt and enforce" standards for new motor vehicles or vehicle engines governed by Title II of the Act that are "identical to the California standards for which a waiver has been granted." 42 U.S.C. § 7507.

25.  In other words, States can comply with Title II of the Act by adopting EPA's Title II standards, or California's standards with an EPA approved preemption waiver. *Id.*  But in doing so, Congress reaffirmed the national preemption policy for motor vehicle and engine emissions regulation by explicitly prohibiting States from taking any action that would create a vehicle or engine different than one certified in California, "or otherwise create such a 'third vehicle.'" *Id.*

26.  Consequently, if EPA issues a waiver, there are at most two sets of emissions standards applicable to vehicle manufacturers: (1) the federal standards; and (2) the California standards, promulgated by CARB and then approved through an EPA preemption waiver, and adopted by any other opt-in State under section 177.

## II.  The Congressional Review Act

27.  Congress enacted the Congressional Review Act ("CRA") in 1996 "as an exercise of the rulemaking power of the Senate and House of Representatives." 5 U.S.C. § 802(g)(1). The CRA establishes a set of Congressional procedures for reviewing and disapproving certain agency rules through joint resolutions passed by majority vote of both the House and Senate and presented to the President.  A joint resolution under the CRA is federal law, enacted in accordance with "the process of bicameralism and presentment."  *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 563 (9th Cir. 2019).

28.    Before any administrative rule can take effect, the agency must submit a "report" to Congress containing a copy of the rule. *Id.* § 801(a)(1). If it chooses, Congress may then disapprove the rule by passing a "joint resolution" that is presented to the President for his signature or veto. *Id.* § 802. Once a joint resolution disapproving an agency rule is signed into law by the President, the rule "shall be treated as though such rule had never taken effect," *id.* § 801(f), and "shall have no force or effect," *id.* § 802(a). Further, the agency cannot reissue a "new rule that is substantially the same" "unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." *Id.* § 801(b)(2).

29.    The CRA expressly precludes judicial review: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.SC. § 805; *Bernhardt*, 946 F.3d at 563 (barring review of whether Congress complied with the CRA procedures); *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1236 (10th Cir. 2020) (barring review of whether administrative agencies complied with the CRA procedures because "the CRA unambiguously prohibits judicial review of any omission by any of the specified actors").

## FACTUAL ALLEGATIONS

### I.    California's Regulatory Overreach for Heavy-Duty Trucks

30.    On September 23, 2020, California Governor Gavin Newsom issued Executive Order N-79-20 that directed CARB to develop and propose regulations that would increase the share of zero- and near zero-emissions vehicle sales in California toward a 100% sales goals for 2035 or 2045, depending on the vehicle category. *See* CA Exec. Order N-79-20 §§ 1-2 (Sept. 23, 2020).

31.    This order was not based on unique air pollution challenges in California but instead responded to the global "climate change crisis that is happening now," to "accelerate [California's] actions to mitigate and adapt to climate change," and to

prioritize "clean transportation" options and "zero emissions" technologies. *Id.* at Preamble.

32.    CARB responded with an assault on heavy-duty trucks with internal-combustion engines—the backbone of the ground shipping in the United States.[1]

**A.    The Advanced Clean Trucks Rule (ACT)**

33.    In January 2021, CARB adopted the "Advanced Clean Trucks" ("ACT") rule. *See* CARB, Exec. Order R-20-004 (Jan. 26, 2021).  Under the ACT rule, vehicle manufacturers incurred "deficits" based on the number of heavy-duty trucks produced and sold in California for each model year beginning in 2024 and ending in 2035. *See* Cal. Code Regs. tit. 13, § 1963.1(a) (2025).

34.    Covered manufacturers were required to make up those deficits with "credits" obtained by selling zero- and near zero-emissions heavy-duty trucks. *See id* §§ 1963.2-.3. For each model year, the deficit calculation increased, but the credit calculation remained the same. *Id.* §§ 1963.1-.2(a)-(b). The effect was to require covered manufacturers to sell an increasing number of zero- and near zero-emitting vehicles each model year.

35.    Covered manufacturers could also meet their annual credit quota by trading, selling or otherwise transferring credits from other manufacturers. *See id.* § 1963.2(e) (2025). But that option existed only if other manufacturers had produced excess credits for the relevant model year. *See id.* §§ 1963.2(g) (imposing limited credit lifetime), 1963.3(a) (requiring compliance for each model year).

36.    On April 6, 2023, EPA approved California's request for a preemption waiver for the ACT rule under section 209 of the Clean Air Act. 88 Fed. Reg. 20688 (Apr. 6, 2023). As of June 2025, the ACT rule had been adopted by Colorado, Maryland,

---

[1] "Heavy-duty" vehicles means vehicles with a gross vehicle weight rating (the loaded weight of a single vehicle) of more than 8,500 lbs. 40 C.F.R. § 1037.801.

Massachusetts, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington.[2]

37.     On March 19, 2024, CARB approved amendments to the ACT Rule. *See* CARB, Exec. Order R-24-001 (Mar. 19, 2024). The amendments clarified that passenger cars and certain trucks were not subject to the ACT rule, allowed complete zero-emissions vehicles between 8,501 and 14,000 pounds to count toward credits, and extended the period to make-up for a credit deficit from one year to three years, among other changes. *See* Final Regulation Order, Amendments to Title 13, California Code of Regulations, Hearing Dates May 23, 2024, and October 24, 2024.[3]

38.     On March 18, 2025, CARB requested from the California Office of Administrative Law an early effective date for the ACT rule. *See* CARB Request for an Early Effective Date.[4]

39.     On May 13, 2025, CARB issued a notice of public hearing for further proposed amendments to the ACT Rule. These amendments would have changed the compliance demonstration requirements and provided for trading, sale, and transfer of credits between manufacturers in "pooling states," among other changes. *See* Proposed Regulation Order, Amendments to Title 13, California Code of Regulations, Hearing Date July 24, 2025.[5] CARB finalized the amendments on July 24, 2025.[6]

---

[2] https://ww2.arb.ca.gov/our-work/programs/advanced-clean-cars-program/states-have-adopted-californias-vehicle-regulations.

[3] https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2024/actzepcert/fro.pdf.

[4] https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2024/actzepcert/reed.pdf.

[5] https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2025/actpooling/appa1.pdf.

[6] https://ww2.arb.ca.gov/news/carb-approves-amendments-clean-truck-standards-provide-flexibility-while-maintaining-emissions.

### B.    The Advanced Clean Fleets Rule (ACF)

40.    In October 2022, CARB enacted the Advanced Clean Fleets rule ("ACF"). *See* CARB Executive Order R-23-003 (Oct. 27, 2022).[7]

41.    The ACF rule was the demand-side complement to the supply-side ACT. The ACF rule required certain "fleets" operating in California to transition to zero-emissions heavy-duty trucks through phasing out the use of internal combustion engines and a purchase mandate of zero- and near zero-emissions vehicles in their operations. Covered fleets included drayage vehicles (trucks that transport shipping containers); fleets owned by state, local and federal agencies; and "high priority" fleets—those that have more than $50 million in annual revenue or more than 50 covered trucks, among others. Cal. Code Regs., tit. 13, §§ 2013(a)(1), 2014(a)(1), 2015(a)(1) (2023).

42.    Covered fleets were required to purchase zero-emissions vehicles as early as 2024, but no later than 2042. *See* Cal. Code Regs., tit. 13, §§ 2013(d), 2014.1(a)(1)-(2), 2015.2(a) (2023). And manufacturers were allowed to sell only zero-emissions heavy-duty trucks starting in model year 2036. Cal. Code Regs., tit. 13, § 2016(c) (2023).

43.    On November 15, 2023, CARB requested a Clean Air Act preemption waiver from EPA, but after the presidential election, it withdrew the request on January 13, 2025. *See* https://perma.cc/N5EN-BLNJ. As such, EPA has not promulgated a Clean Air Act preemption waiver for the ACF rule.

44.    The ACF rule has been challenged in multiple lawsuits, both in state and federal court. For example, on May 13, 2024, 16 States, the Arizona State Legislature, and the Nebraska Trucking Association filed suit in the U.S. District Court for the Eastern District of California challenging the ACF rule as preempted by federal law

---

[7] https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2022/acf22/ac/eo.pdf.

1    and violating the Commerce Clause. *See* Compl., *Nebraska v. Cliff*, No. 2:24-cv-1364

2    (E.D. Cal. May 13, 2024), Dkt. No. 1.

3        45.    After CARB withdrew its waiver request in January 2025, the parties in

4    that case reached an agreement to put the case in abeyance while Defendant Cliff

5    presents to CARB a new proposal to repeal the high-priority fleet and drayage fleet

6    requirements in the ACF regulation. *See* Order, *Nebraska v. Cliff*, No. 2:24-cv-1364

7    (E.D. Cal. May 5, 2025), Dkt. No. 95.

8        46.    CARB has also agreed not to enforce the ACF rule requirement for 100%

9    zero-emission heavy-duty trucks by 2036 until CARB obtains a Clean Air Act

10    preemption waiver from EPA. *Id.* ¶ 3.

11        47.    Importantly, CARB has not indicated that it will repeal the model year

12    2036 100% zero-emission vehicle sale requirement, creating market uncertainty about

13    whether California will follow federal uniform national emissions standards.

14        **C.    The Omnibus Low Nox Rule (Omnibus)**

15        48.    In September 2021, CARB adopted its Omnibus rule requiring truck

16    manufacturers to significantly reduce heavy-duty vehicle nitrogen oxides (NOx) and

17    particulate emissions.  *See* Cal. Code Regs. tit. 13, § 1956.8 (2025).

18        49.    In December 2021, CARB amended its rule to slash NOx and particulate

19    matter emissions limits starting in model year 2024, among other extensive changes.

20    *See* CARB, Executive Order R-21-007; Final Regulation Order, Amendments to Title

21    13, California Code of Regulations, Hearing Date August 27, 2020.[8]

22        50.    After the amendment, in January 2022, CARB requested from EPA a

23    Clean Air Act preemption waiver for its Omnibus rule, and EPA noticed the waiver

24    request for comment on June 13, 2022. 87 Fed. Reg. 35765 (June 13, 2022).

25

26    _____

27        [8]
     https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2020/hdomnibuslownox/froa-

28    1.pdf.

Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                           11

51.     But the Omnibus rule was so onerous that manufacturers decided not to produce California-compliant vehicles in response. Manufacturers then sued CARB for failing to provide the four years of compliance lead time mandated by section 202(a) of the Clean Air Act, 42 U.S.C. § 7521(a)(3)(C), and incorporated into section 209 as a ground for EPA to refuse to issue a preemption waiver, *id.* § 7543(b)(1)(C).

52.     In December 2023, CARB yet again amended the Omnibus rule to allow certain heavy-duty trucks to meet applicable federal requirements for model years 2024 to 2026 and certain "legacy" engine provisions, among other changes. CARB Order, Executive Order R-23-006; Final Regulation Order, Amendments to Title 13, California Code of Regulations, Hearing Date Oct. 20, 2023.[9]

53.     In July 2024, CARB amended its request for a Clean Air Act preemption waiver to cover the revised amendments. *See* https://perma.cc/U2ZQ-RSUP.

54.     On January 6, 2025, EPA promulgated the requested preemption waiver for the Omnibus rule as amended. 90 Fed. Reg. 643 (Jan. 6, 2025).

55.     As of June 2025, Colorado, Massachusetts, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington had adopted the Omnibus rule.

**D.     CARB's Vehicle Certification Requirements**

56.     A preemption waiver issued by EPA under section 209(b) allows California not only to impose emissions standards, but also to impose a requirement for "certification . . . or any other approval relating to the control of emissions . . . as a condition precedent to sale"—a practice otherwise forbidden by the second clause of section 209(a).  42 U.S.C. § 7543(a).

57.     EPA has implemented this provision by allowing CARB to mandate conditions for certification where California has obtained a separate preemption

---

[9]
https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2023/hdomnibus2023/fro_atta-1.pdf.

Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                    12

1    waiver for the relevant emission standards applicable to a particular class of vehicles.

2    *See* Conditions Precedent to the Sale, Titling, or Registration of New Motor Vehicles

3    in California, 50 Fed. Reg. 35123 (Aug. 29, 1985).

4        58.    Under California law, these conditions precedent include a requirement

5    that new vehicles and engines receive certification from CARB before they are sold in

6    the State. Cal. Health & Safety Code, §§ 43151 & 43512; *see also* § 1036.801

7    "Certification," California Exhaust Emission Standards and Test Procedures for 2004

8    and Subsequent Model Heavy-Duty Diesel Engines and Vehicles (Sept. 9, 2021)

9    ("September 2021 CARB Heavy-Duty Test Procedures"), incorporated by reference

10   into Cal. Code Regs. tit. 13, § 1956.8(b) (2025).

11       59.    When successful, certification culminates in an order from CARB

12   approving a particular vehicle or engine for sale in California during that model year.

13   *See id.* § 1036.801 "Certificate of Conformity," September 2021 CARB Heavy-Duty

14   Test Procedures.

15       60.    Selling vehicles in California without a CARB certification is a serious

16   offense that subjects the seller to substantial civil penalties. *See* Cal. Health & Safety

17   Code § 43154(a)(1).

18   **II.    The Clean Truck Partnership**

19       61.    As CARB continued with stringent and ever-changing regulations, the

20   truck manufacturers raised serious concerns about the legality and technical

21   feasibility of these standards. Two objections are especially relevant here.

22       62.    First, the Omnibus rule was dramatically different from the federal

23   criteria pollutant emissions standards, effectively requiring the truck manufacturers

24   to make two different internal-combustion engines. As EPA noted in its rulemaking

25   for criteria pollutant standards, CARB's Omnibus rule contained emissions standards

26   "even more stringent" than the *most* stringent rules considered by EPA.[10]

---

[10] See Final Rule, Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4296, 4301 (Jan. 24, 2023).

63.    Second, the truck manufacturers' product development requires long lead times—a fact so well-recognized that the Clean Air Act itself specifically requires at least four years of lead time and a three-year regulatory stability period for heavy-duty criteria pollutant emissions standards. 42 U.S.C. § 7521(a)(3)(C).

64.    But when CARB promulgated new criteria pollutant emissions standards in the Omnibus rule, it did not provide the requisite statutory lead time. Instead, CARB adopted rules on December 22, 2021, which then became effective in model year 2024—providing only two years of lead time, as manufacturing for a model year begins well in advance.[11]

65.    Consequently, the Truck and Engine Manufacturers Association ("EMA") filed suit against CARB asserting that the Omnibus rule did not comply with the Clean Air Act's mandated lead time. *See Engine Mfgrs. Ass'n v. Cal. Air Resources Bd.*, No. 2:22-cv-03663 (C.D. Cal. May 25, 2022). When EPA proposed to promulgate a waiver for the Omnibus rule and accepted comments on the lead time issue, EMA withdrew its lawsuit.[12]

66.    Shortly thereafter, Defendant Cliff wrote to EMA stating that in recognition of EMA dropping its litigation, CARB sought "discussion" with EMA and was open to "exploring areas of alignment between state and federal combustion rules"—a potential path out of the regulatory quagmire for the truck manufacturers.[13]

---

[11] Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C) (2025) (establishing model year 2024-2026 standards); Cal. Reg. Notice Register 2021, 1809 Vol. 53-Z (Dec. 31, 2021), https://oal.ca.gov/wp-content/uploads/sites/166/2021/12/2021-Notice-Regiter-Number-53-Z-December-31-2021.pdf (indicating adoption date for revised California Code of Regulations title 13, section 1956.8); CARB, Final Regulation Order, Title 13, at 7-11, Nonrulemaking Docket No. EPA-HQ-OAR-2022-0332, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005.

[12] EMA Press Release, Truck & Engine Manufacturers Withdraw Lawsuit on Leadtime Requirement for Heavy-Duty Emissions Standards (Aug. 11, 2022), https://shorturl.at/43iU3.

[13] Letter from Steven S. Cliff, Executive Officer, CARB, to Jed Mandel, President, EMA (Oct. 14, 2022), https://ww2.arb.ca.gov/sites/default/files/2022-

Complaint-in-Intervention

67.    Nine months later, in July 2023, CARB announced the Clean Truck Partnership.[14]  Although stylized as an "agreement," in substance, the Clean Truck Partnership incorporates regulations and imposes compliance obligations on regulated entities.

68.    To illustrate, while "agreements" ordinarily have defined terms or dispute-resolution provisions, the Clean Truck Partnership does not. Nor does the Clean Truck Partnership have other typical contractual provisions ordinarily found in California contracts including, for example, assignment, choice of law, severability, termination, venue, and more. To the contrary, a key goal of the Clean Truck Partnership is to "ensur[e] current and future *CARB regulations* affecting new [heavy-duty on-highway] vehicle and engines . . . achieve significant reductions of air pollutants from such vehicles and engines." CTP at 1 (emphasis added).

69.    To this end, the Clean Truck Partnership adopts California regulatory standards to, in part, facilitate compliance with California vehicle emission standards irrespective of federal law while still threatening regulatory consequences if the truck manufacturers do not comply with those stringent regulations.

70.    CARB detailed these regulatory standards in appendices attached to the Clean Truck Partnership:

a.    **Appendix A** – "Amendments to Omnibus Legacy Provisions in Title 13 California Code of Regulations (CCR) 1956.8 to Ease Transition": "The intent of the actions set forth in Appendix A is to revise the existing compliance flexibility provisions of CARB's Omnibus Regulation by raising the existing caps on legal engines and streamlining certain other provisions without increasing emissions compared to

10/EMA%20Letter%20to%20Mandel%20SSC_Signed.pdf.

[14] Press Release, CARB and truck and engine manufacturers announce unprecedented partnership to meet clean air goals (July 6, 2023), https://ww2.arb.ca.gov/news/carb-and-truck-and-engine-manufacturers-announce-unprecedented-partnership-meet-clean-air.

the preexisting Omnibus Regulation." CTP ¶ 1. CARB also committed to "initiat[ing] rulemaking actions" to further its compliance goals. *Id*. App'x A at 2.

b.    **Appendix B** – "CARB Truck Regulations Compliance and U.S. EPA Clean Trucks Plan Harmonization": "The intent of the actions set forth in Appendix B" is to "clarify which authorities and regulations remain status quo in California," to "specify which regulations are covered by the [signatories'] commitment" to meet "CARB regulations," and to "amend the Omnibus Regulation's 2027 and later model year requirements." CTP ¶ 1 (incorporating elements of the ACT rule, the ACF rule, and the Omnibus rule).

c.    **Appendix C** – "Emission Warranty Information Reporting, In Use Compliance, Advanced Clean Trucks and Advanced Clean Fleet Regulatory Implementation Efforts": Appendix C describes actions related to CARB's emission warranty and information reporting program, among other things. The appendix also describes CARB's "ongoing efforts" to enforce the ACT and ACF regulations. *Id*. at 1–2 (discussing credits, deficits, and sales reporting requirements).

d.    **Appendix D** – "Support for CARB's Regulations and for States' that have Adopted CARB Regulations per S177 CAA": The Clean Truck Partnership mandates production of zero-emissions vehicles regardless of customer demand. It requires the truck manufacturers to "commit to put forth their best efforts to sell as many zero-emission trucks as reasonably possible in every state that has or will adopt CARB's ACT regulations . . . irrespective of the outcome of [their legality or state authority to implement and enforce them]." *Id*. App'x D ¶ F.

71.    The penalties for failing to follow the Clean Truck Partnership are regulatory in nature. First, and most crucially, the Clean Truck Partnership provided that "California will maintain its certification program," trumpeting CARB's authority to impose certification requirements on manufacturers regardless of countervailing federal legal authority.  *Id*. App'x B ¶ 1. And building a car without a certificate is like driving a car without an engine.

72.    Second, the Clean Truck Partnership describes regulatory "consequence[s]" if the Omnibus rule's "caps are exceeded": the truck manufacturers' sales "would be considered as non-compliant sales." *Id*. App'x A nn.1–2.

73.    Finally, the Clean Truck Partnership reminds its signatories "that CARB's Executive Officer is authorized to consider specified information in determining whether a recall of a vehicle or engine family is required." *Id*. App'x C at 1.

74.    To try and insulate California's preempted regulations from challenge, the Clean Truck Partnership imposes a series of conditions restricting manufacturers' ability to petition the federal government. Specifically, the Clean Truck Partnership prohibits the truck manufacturers from (1) challenging the relevant CARB regulations; (2) filing requests for EPA Clean Air Act preemption waivers or authorizations; (3) filing amicus briefs challenging such actions; or (4) supporting motions challenging such waivers or authorizations. CTP ¶ 4. They also swore not to (5) challenge any states' adoption of similar regulations or (6) participate in any such rulemakings or proposals. *Id*. Appendix D ¶ A.

75.    Even worse, the truck manufacturers must comply with the relevant regulations "irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations." *Id*.¶ 4.

76.    CARB makes clear that the purpose of the Clean Truck Partnership is not to simply memorialize the terms of compliance, but rather to insulate CARB's regulations from judicial or congressional review.

77.    The Clean Truck Partnership states that manufacturers will continue abiding by the regulations "irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations." *Id*. ¶ 2; *accord id*. App'x D, ¶¶ B, F (same for any state that adopts CARB's standards)

78.    In all, the Clean Truck Partnership does not seek to replace previously enacted regulations or standards with bargained-for contractual provisions. Instead, the Clean Truck Partnership expressly incorporates and attempts to enforce three sets of regulatory standards—ACT, Omnibus, and ACF.

79.    CARB sought to impose emissions standards and certification requirements on the industry in a manner that it hoped might insulate those regulations from federal oversight and judicial review. CARB imposed the standards included in the Clean Truck Partnership in its capacity as an industry regulator—not in its capacity as a market participant.

### III.    Congressional and Presidential Disapproval of EPA's Clean Air Act Preemption Waivers

80.    The ACT rule and Omnibus rule preemption waivers were challenged in federal court. *See W. States Trucking Ass'n, Inc. v. EPA*, No. 23-1143 (D.C. Cir. 2023) (ACT rule); *Am. Free Enter. Chamber of Com. v. EPA*, No. 25-106 (9th Cir. 2025) (Omnibus rule); *Am. Fuel & Petrochem. Mfrs. v. EPA*, No. 25-1083 (D.C. Cir. 2025) (Omnibus rule). Congress also disapproved of them.

81.    As explained, California's authority to regulate heavy-duty vehicle and engine emissions depended on Clean Air Act waivers granted by EPA.

82.    On May 22, 2025, Congress passed CRA resolutions disapproving EPA's Clean Air Act preemption waivers for CARB's ACT rule and the Omnibus rule, among other actions. Referring to the EPA's preemption waiver for the ACT and Omnibus rules, the legislation states that "Congress disapproves the rule submitted by the Environmental Protection Agency," and that "such rule shall have no force or effect." *See* Pub. L. No. 119-15, 139 Stat. 65 (ACT); Pub. L. No. 119-17, 139 Stat. 67 (Omnibus).

83.    On June 12, 2025, the President signed this legislation disapproving these EPA preemption waivers. The President stated that the resolutions make clear that "California's attempts to impose an electric vehicle mandate, regulate national fuel economy, and regulate greenhouse gas emissions are not eligible for waivers of

1   preemption under section 209 of the Clean Air Act" and that the waivers can "never

2   again be misused to regulate greenhouse gas emissions."[15]

3   84.    Once Congress passed and the President signed the measures voiding

4   the recent EPA waivers, CARB lost Clean Air Act authority for its regulations. *See*

5   *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2131 n.1 (2025) ("Acting under the

6   Congressional Review Act, Congress recently passed and the President signed

7   legislation to block . . . California regulations").

8   85.    Congress' disapproval of EPA's preemption waivers is not subject to

9   judicial review. *See* 5 U.S.C. § 805 ("No determination, finding, action, or omission

10  under this chapter shall be subject to judicial review."); *see also Bernhardt*, 946 F.3d

11  at 563 (barring review ); *Kan. Nat. Res. Coal.*, 971 F.3d at 1236 (barring review).

12  86.    Upon enactment of the joint resolutions, no preemption waiver applied

13  to California's ACT and Omnibus rules, and no preemption waiver had ever been in

14  place for California's ACF rule. Accordingly, those regulations and any attempt to

15  enforce them are preempted under section 209(a) of the Clean Air Act.

16  **IV.    California's Defiance of Congress' CRA Disapprovals and**

17  **CARB's Ongoing Attempt to Enforce Preempted Regulations**

18  **Enshrined in the Clean Truck Partnership**

19  87.    In response to Congressional and Presidential disapprovals of EPA's

20  Clean Air preemption waivers, California has declared its intent to keep enforcing the

---

27

28  [15] https://www.whitehouse.gov/briefings-statements/2025/06/statement-by-the-president/.

Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                          19

standards embedded in the ACT, ACF, and Omnibus rules. California cites the Clean Truck Partnership as the source of its authority.

### A.    Manufacturers Advisory Correspondence

88.    On May 23, 2025, CARB issued a Manufacturers Advisory Correspondence ("MAC") document styled as "Regulatory Guidance" in response to the federal statutes disapproving the prior preemption waivers.[16]

89.    The MAC document expressly declares that the preempted regulations remain "applicable to manufacturers."  *Id.* at 2.  It then affirms that CARB "will continue to accept and process certification applications," justifying this as "necessary" to "facilitate meeting the commitments of the Clean Truck Partnership." *Id.* at 2; *see also id.* at 3 ("CARB will continue to accept and process certification applications for model year 2025 and 2026 model year medium- and heavy-duty vehicles under the certification requirement of the Heavy-Duty Engine and Vehicle Omnibus regulation.").

90.    California has thus taken the position that compliance with CARB's emissions standards and their related conditions precedent to sale are required by the Clean Truck Partnership—even though the underlying regulations establishing those emissions standards have been expressly and specifically preempted by statute.

91.    CARB's directive further demands compliance with the preempted standards to "ensure the requirements of certification are met to enable lawful vehicle sales in California" under the California Health and Safety Code, *id.* at 2, citing statutory provisions that a "person shall not offer for sale . . . a new motor vehicle . . . unless the motor vehicle . . . has been certified" under California law. Cal. Health & Safety Code § 43151.  Notably, violations of this section can incur penalties of up to $48,788 "for each such action."  Cal. Health & Safety Code § 43154(a)(1).[17]

---

[16] Manufacturers Advisory Correspondence ECCD-2025-3, CARB (May 23, 2025).

[17] The statutory penalty is annually adjusted for inflation.  *See* CARB,

92.    CARB continues to threaten substantial regulatory fines against any manufacturer who sells vehicles in California without a CARB certificate: "CARB would continue accepting and processing certification applications for 2026 models to ensure continuity and enable lawful vehicle sales in California."[18]   And it does so notwithstanding that the Clean Air Act expressly prohibits such certifications in the absence of a waiver.  42 U.S.C. § 7543(a).

**B.    California Executive Order N-27-25**

93.    On June 12, 2025, Governor Newsom ordered CARB to keep enforcing the regulatory standards in the ACT, Omnibus, and ACF rules through the Clean Truck Partnership. See CA Executive Order N-27-25 (June 12, 2025) ("Compliance Order"); https://perma.cc/5UV5-DSPE.

94.    The Compliance Order declares that Congress's CRA disapprovals of the waivers are unenforceable. See CA Executive Order N-27-25, Preamble. Further, according to Governor Newsom, the truck manufacturers must comply with the Clean Truck Partnership "regardless of the outcome of any change in law concerning California's authority to implement its more stringent emissions standards under the federal Clean Air Act." CA Executive Order N-27-25, Preamble. California thus declared that it has the power to nullify federal law.

95.    Governor Newsom directed CARB to continue to implement the ACT rule, Omnibus rule, and internal combustion engine ban in 2036 under the ACF rule "regardless of the status of those regulations under federal law," and he independently

---

Memorandum to Enforcement Division Staff, Increase in Maximum Penalties Based on 2024 California Consumer Price Index (Feb. 21, 2025), https://ww2.arb.ca.gov/sites/default/files/2025-02/2025_CA_CPI_Penalty_Memo.pdf.

[18] *CARB approves amendments to clean truck standards to provide flexibility while maintaining emissions benefits* (July 24, 2025), https://ww2.arb.ca.gov/news/carb-approves-amendments-clean-truck-standards-provide-flexibility-while-maintaining-emissions.

1    ordered CARB to continue implementing those standards through the Clean Truck

2    Partnership. CA Executive Order N-27-25 ¶¶ 3-4.

3        96.    Failure to adhere to the Clean Truck Partnership results in severe

4    regulatory penalties. Executive Order N-27-25 states that manufacturers that

5    continue to certify compliance with California's preempted regulations will be

6    "prioritize[d] . . . in government vehicle procurement decisions," will receive priority

7    "funding" to "support the purchase of zero-emission vehicles" and, perhaps most

8    egregiously, directed CARB to identify other "opportunities for special considerations

9    and flexibilities for" certifying manufacturers when crafting future regulations.

10    Executive Order N-27-25. By contrast, none of those privileges or opportunities will

11    be extended to manufacturers who do not follow the regulations "regardless of the

12    status of those regulations under federal law."

13        97.    Instead, Executive Order N-27-25 suggests that such manufacturers will

14    be put on California's "manufacturer purchasing restriction list," as indeed California

15    has done to disfavored vehicle manufacturers during a prior dispute over whether

16    California's emissions regulations were preempted.  *See*, *e.g.*, David Shepardson,

17    *California to Stop Buying GM, Toyota and Fiat Chrysler Vehicles Over Emissions*

18    *Fight*, Reuters, (Nov. 18, 2019), (reporting that Governor Newsom halted all

19    purchases of new vehicles for state government fleets from manufacturers that did not

20    agree with CARB's positions in preemption litigation).[19]  The California Executive

21    Order thus purports to adopt and enforce an emissions regulatory regime under the

22    Clean Truck Partnership.

23

24

25

26

27

28        [19] https://www.reuters.com/article/idUSL2N27Y0HU/.

Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                          22

**FIRST CLAIM FOR RELIEF**

**Preemption of the ACT, ACF, and Omnibus Rules**

**Under the Clean Air Act and U.S. Constitution**

98.    The United States incorporates by reference all allegations stated above.

99.    The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2.

100.    Section 209(a) of the Clean Air Act provides that "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a).    An "attempt" to enforce an emissions standard includes preliminary acts falling short of enforcement. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 257 (2004).    The term "attempt to enforce" in section 209(a) is not limited to the actual imposition of penalties for violations but includes steps preliminary to that action. *Id.*

101.    Section 209(a) also provides that "No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment." 42 U.S.C. § 7543(a).

102.    California vehicle emissions standards are preempted under section 209(a) of the Clean Air Act unless the regulation is authorized by a valid preemption waiver issued by the EPA under 42 U.S.C. § 7543(b).

103.    The ACT rule, the ACF rule, and the Omnibus rule are "standards" under section 209(a) of the Clean Air Act. 42 U.S.C. § 7543(a). Because they are "standards" under section 209(a), CARB sought waivers for these rules.

1    104.   The ACT rule sets standards relating to the control of emissions from
2   new motor vehicles or engines by requiring the manufacture of zero-emission or near
3   zero-emission heavy-duty trucks—irrespective of whether meaningful advances in
4   zero-emissions power-train technology occurred—and banning internal-combustion
5   engines in heavy-duty trucks by 2036, among other requirements.

6    105.   Congress disapproved EPA's Clean Air Act preemption waiver for the
7   ACT rule by joint resolution, and President Trump signed that joint resolution. The
8   ACT rule therefore is preempted and void under 42 U.S.C. § 7543(a) and the
9   Supremacy Clause of the United States Constitution, and Defendants cannot enforce
10   or attempt to enforce it.

11    106.   The ACF rule sets standards relating to the control of emissions from
12   new motor vehicles or engines by requiring covered fleets to purchase zero- and near
13   zero-emissions heavy-duty trucks vehicles and banning internal-combustion engines
14   in heavy-duty trucks by 2036, among other requirements.

15    107.   EPA never issued a Clean Air Act preemption waiver for the ACF rule.
16   The ACF Rule therefore is preempted and void under 42 U.S.C. § 7543(a) and the
17   Supremacy Clause of the United States Constitution, and Defendants cannot enforce
18   or attempt to enforce it.

19    108.   The Omnibus rule as amended sets standards relating to the control of
20   emissions from new motor vehicles or engines by setting emissions limits on NOx and
21   particulate matter in heavy-duty trucks, among other requirements.

22    109.   Congress disapproved EPA's Clean Air Act preemption waiver for the
23   Omnibus rule by joint resolution, and President Trump signed that joint resolution.
24   The Omnibus rule as amended thus is preempted and void under 42 U.S.C. § 7543(a)
25   and the Supremacy Clause of the United States Constitution, and Defendants cannot
26   enforce or attempt to enforce it.

27

28

## SECOND CLAIM FOR RELIEF

### Preemption of the Clean Truck Partnership

### Under the Clean Air Act and U.S. Constitution

110. The United States incorporates by reference all allegations stated above.

111. By dictating that manufacturers must "meet, in California, the requirements of the relevant regulations . . . regardless of the outcome of any litigation challenging the waivers/authorizations for those regulations, or CARB's overall authority to implement those regulations," CTP App'x B, the Clean Truck Partnership adopts and "attempt[s] to enforce . . . standard[s] relating to the control of emissions from new motor vehicles or new motor vehicle engines" subject to section 209(a) of Clean Air Act. 42 U.S.C. § 7543(a).

112. The Clean Truck Partnership purports to incorporate and implement three regulatory standards at issue: the ACT, Omnibus, and ACF rules. By its own terms, the Clean Truck Partnership is the enforcement mechanism for the emissions standards applicable to the truck manufacturer signatories under the ACT, ACF, and Omnibus rules. CTP ¶ 2, App'x B, at 1

113. By purporting to require compliance by the manufacturers, the Clean Truck Partnership represents an *attempt to enforce* the incorporated regulations. *See* Executive Order N-27-25 at 2 (describing the Clean Truck Partnership as requiring manufacturers "to meet California's heavy-duty vehicle emission standards that will require the sale and adoption of zero-emissions technology in California, regardless of the outcome of any change in law concerning California's authority to implement its more stringent emissions standards under the federal Clean Air Act").

114. Therefore, the Clean Truck Partnership is preempted under section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a), and the Supremacy Clause of the United States Constitution, both because it has not received an EPA waiver under the Clean Air Act, and because it is an attempt to enforce California emissions regulations that have received no EPA preemption waiver. *See* 5 U.S.C. § 801(f) (disapproved

1  rules "shall be treated as though such rule had never taken effect"). Defendants cannot

2  attempt to enforce the preempted Clean Truck Partnership or the preempted

3  regulations embedded in it.

4  **PRAYER FOR RELIEF**

5        WHEREFORE, the United States respectfully requests that this Court:

6      A.     Declare the ACT, ACF and Omnibus rules preempted under 42 U.S.C.

7  § 7543(a) and therefore void and unenforceable;

8      B.     Permanently enjoin Defendants from taking actions to implement or

9  enforce the ACT, ACF, and Omnibus rules;

10      C.     Declare the Clean Truck Partnership preempted under 42 U.S.C.

11  § 7543(a) and therefore void and unenforceable;

12      D.     Permanently enjoin Defendants from taking actions to implement or

13  enforce the Clean Truck Partnership;

14      E.     Award the United States its costs and disbursements in this action; and

15      F.     Award such other and further relief as the Court may deem just and

16  proper.

17

18

19

20

21

22

23

24

25

26

27

28

Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC         26

1

Respectfully submitted,

2

ADAM R.F. GUSTAFSON

3

*Acting Assistant Attorney General*

4    Dated: August 14, 2025

  /s/ *Robert N. Stander*

5

ROBERT N. STANDER
*Deputy Assistant Attorney General*

6

7    ERIC GRANT
  *United States Attorney*

JOHN K. ADAMS
DAVID D. MITCHELL

8    EDWARD A. OLSEN
  Assistant United States Attorney

United States Department of Justice
Environment & Natural Resources Div.

9    501 I Street, Suite 10-100
  Sacramento, California 95814

P.O. Box 7611
Washington, D.C. 20044-7611

10   (916) 554-2821

(202) 353-5905
robert.stander@usdoj.gov

11

john.adams3@usdoj.gov
david.mitchell@usdoj.gov

12

13

14

*Counsel for Plaintiffs-Intervenors*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC