ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

JOHN K. ADAMS
DAVID D. MITCHELL
United States Department of Justice
Environment & Natural Resources Div.
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5905
robert.stander@usdoj.gov
john.adams3@usdoj.gov
David.Mitchell@usdoj.gov

ERIC GRANT
*United States Attorney*

EDWARD A. OLSEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
(916) 554-2821

*Counsel for Plaintiffs-Intervenors*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, and GAVIN NEWSOM, in his official capacity as the Governor of California,<br><br>Defendants. | Civil Action No. 2:25-cv-02255-DC-AC |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
AS PLAINTIFFFS BY THE UNITED STATES AND THE
U.S. ENVIRONMENTAL PROTECTION AGENCY**

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................... 3

ARGUMENT ..................................................................................................................... 6

    I.   THE UNITED STATES IS ENTITLED TO INTERVENE UNDER RULE 24(A) .................. 6

        A.  The United States' Motion Is Timely ................................................................ 7

        B.  The United States Has a Significantly Protectable Interests Relating to this Litigation ................................................................................................ 7

        C.  This Action Could Impair the United States' Interests ..................................... 9

        D.  No Party Represents the United States' Sovereign Interests ........................... 9

    II.  ALTERNATIVELY, THE UNITED STATES SHOULD BE ALLOWED TO INTERVENE UNDER RULE 24(B) ......................................................................................... 11

CONCLUSION ............................................................................................................... 13

## INTRODUCTION

California is violating federal law by attempting to enforce preempted California vehicle and engine emissions standards through its so-called "Clean Truck Partnership," which the California Air Resources Board ("CARB") uses to enforce three sets of stringent emissions standards at issue here: the Omnibus' Low NOx ("Omnibus") rule, the Advanced Clean Trucks ("ACT") rule, and the Advanced Clean Fleets ("ACF") rule. Individually or collectively, these emission standards impose a nationwide ban on internal-combustion engines in heavy-duty trucks by 2036.

Yet the decision whether to ban internal-combustion engines in heavy-duty trucks rests ultimately with the federal government. And it has declined to take such a far-reaching step. In June 2025, the President signed into law Congressional joint resolutions of disapproval providing that Environmental Protection Agency ("EPA") preemption waivers for the Omnibus and ACT rules "have no force or effect." *See* Pub. L. No. 119-15, 139 Stat. 65 (2025) (ACT); Pub. L. No. 119-17, 139 Stat. 67 (2025) (Omnibus). These rules, along with the ACF regulation for which EPA had never issued a waiver, are now preempted under the express prohibition in the Clean Air Act that bars *any* State from *attempting to* enforce its own emissions standards. *See* 42 U.S.C. § 7543(a).

Neither the Clean Air Act nor Congressional disapprovals have stopped CARB, its executive officer Steven F. Cliff, or Governor Newsom ("California Defendants") from demanding compliance with California standards. On the contrary, a Congressional committee was just "made aware that CARB staff" (who are all supervised by Defendant Cliff and answer ultimately to the Governor) are "denying auto manufacturers approval to bring vehicles to market unless the manufacturers agree to comply with the preempted regulations."[1]

The California Defendants' ongoing defiance of federal law must stop. The

---

[1] U.S. House of Representatives Committee on Energy and Commerce, *Letter to Steven S. Cliff* at 2 (Aug. 11, 2025), https://perma.cc/EB5X-FZR2 (discussing evidence).

1  United States, including the EPA (the "United States"), have a compelling interest in
2  California complying with federal law and promoting national uniform emission
3  standards, as Congress mandated in the Clean Air Act. As such, this is a paradigmatic
4  case for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) because
5  the United States (1) timely filed this motion, (2) has a significantly protectable
6  sovereign interest in enforcing uniform standards, (3) would face potential
7  impairment of that interest if this Court concludes that CARB can enforce preempted
8  regulations, and (4) is not adequately represented by any other party.

9  Alternatively, the United States should be allowed to permissively intervene
10 under Rule 24(b). In fact, Rule 24(b) was amended expressly to permit a federal
11 "agency upon timely application to be admitted as an intervenor to any action in which
12 a party relies upon a statute . . . administered by" that agency. 7C *Wright & Miller's*
13 *Federal Practice and Procedure* § 1912 (3d ed. 2025) ("Wright & Miller"). And EPA
14 administers the Clean Air Act. Moreover, if granted intervention, the United States
15 (who shares a common claim with Plaintiffs) would neither unduly delay this case,
16 which is days into litigation, nor prejudice a party, given that Plaintiffs consented.

17 Accordingly, under either Rule 24(a) or Rule 24(b), the Court should grant the
18 United States' Motion to Intervene as Plaintiff Against the California Defendants.

19                              **BACKGROUND**

20 Section 209 of the Clean Air Act expressly preempts State laws that regulate
21 motor vehicle emissions with an important exception: EPA may waive the application
22 of federal preemption for California emissions regulations under limited
23 circumstances. *See* 42 U.S.C. § 7543(a)–(b). If EPA grants a waiver, then California's
24 air agency—CARB—enforces the California standards.

25 From 2021 to 2023, CARB promulgated a series of regulations imposing
26 stringent emissions standards on trucks with a gross vehicle weight rating above
27 8,500 lbs (hereinafter "heavy-duty trucks"). Heavy-duty trucks are a backbone of our
28 national supply chain and economy, as they transport a vast amount of goods and

materials that keep businesses operating, consumers stocked, and prices low. They also produce emissions. Unhappy with those emissions, California imposed strict emissions standards on truck manufacturers that are significantly more stringent than the federal standards. CARB then obtained or attempted to obtain preemption waivers from EPA. Three California regulatory standards are relevant here.

First, in June 2020, CARB adopted the "Advanced Clean Trucks" (ACT) rule. *See* Cal. Code Regs. tit. 13, § 1963.1 (2025). This rule requires manufacturers to meet ever-increasing sales quotas for zero-emissions trucks with each model year—irrespective of the pace of advances in zero-emissions power-train technology. *Id.* CARB requested and received a Clean Air Act preemption waiver for its ACT rule. *See* 88 Fed. Reg. 20,688 (Apr. 6, 2023). But the federal government revoked that waiver when the President signed a Congressional joint resolution into law on June 12, 2025. *See* Statement by the President, The White House (June 12, 2025) ("Presidential Signing Statement"), https://perma.cc/D8EJ-6Q2V (stating that the ACT regulation is "fully and expressly preempted by the Clean Air Act and cannot be implemented"). This joint resolution provided that the Clean Air Act preemption waiver for the ACT rule "shall have no force or effect." Pub. L. No. 119-15, 139 Stat. 65 (2025) (ACT).

Second, in September 2021, CARB implemented its Omnibus' Low NOx ("Omnibus") rule. This rule requires truck manufacturers to reduce heavy-duty vehicle nitrogen-oxide (NOx) and particulate emissions, and it makes extensive changes to other CARB regulations affecting heavy-duty trucks and engines. *See* Cal. Code Regs. tit. 13, § 1956.8 (2025); *see* CARB, Final Regulation Order, Title 13, at 3, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005. In January 2025, just before the inauguration of President Trump, EPA granted a waiver request for the Omnibus rule. *See* Cal. State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low NOx Regulation; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 643 (Jan. 6, 2025). But the federal government revoked that waiver when the President signed a Congressional joint

1  resolution into law on June 12, 2025. *See* Presidential Signing Statement (stating that the Omnibus rule is preempted). This joint resolution provided that the Clean Air Act preemption waiver for the Omnibus rule "shall have no force or effect." Pub. L. No. 119-17, 139 Stat. 67 (2025) (Omnibus).

Third, in April 2023, CARB promulgated the Advanced Clean Fleets ("ACF") rule. This rule requires, among other things, that manufacturers exclusively sell zero-emission vehicles in California beginning in model year 2036. Cal. Code Regs. tit. 13, § 2016 (2025). CARB submitted a waiver request for ACT to EPA in July 2024; it then withdrew the request in January 2025. *See* Withdrawal of California's Request for a Waiver (Jan. 13, 2025), https://www.regulations.gov/document/EPA-HQ-OAR-2023-0589-0470. So EPA has not granted a preemption waiver permitting CARB to implement the ACF rule.

Although they have no valid waiver for these three regulations, the California Defendants attempt to enforce them through the Clean Truck Partnership.[2] In July 2023, CARB adopted the Clean Truck Partnership, which gives certain truck manufacturers compliance flexibility under the preempted regulations but otherwise compels them to comply with the Omnibus and ACT rules. It also forces them to sell only zero-emission vehicles starting in 2035, which is consistent with the ACF rule. It is, in essence, a regulatory order that responds to industry concerns but still imposes compliance requirements, regardless of whether CARB's regulations are legal.

Importantly, in exchange for compliance flexibility, CARB mandated that the truck manufacturers "commit to meet, in California, the relevant provisions of the CARB regulations . . . irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations." CTP ¶ 2. In other words, the Clean Truck Partnership purports to allow CARB to enforce the ACT, Omnibus, and ACF rules, even though

---

[2] *See* Second Amended Complaint, Dkt. 104-1, Clean Truck Partnership ("CTP").

Motion to Intervene
Case No. 2:25-cv-02255-DC-AC                                                                    5

CARB no longer has authority to enforce them. Next, CARB stated that "California will maintain its certification program," asserting CARB's authority to impose certification requirements on manufacturers to comply with its emissions standards in the California rules, regardless of countervailing federal legal authority.

CARB uses the Clean Truck Partnership to enforce the preempted ACT, Omnibus, and ACF rules. For example, in response to the laws invalidating the ACT and Omnibus waivers, CARB published "regulatory guidance" in its Manufacturers Advisory Correspondence ("MAC") on May 23, 2025. *See* MAC, ECCD-2025-3, CARB (May 23, 2025), https://perma.cc/J6YC-KCTB. The regulatory directive contends that the "Congressional resolutions of disapproval . . . are the result of illegal actions and are thus invalid," and it directs that the disapproved regulations remain "applicable to manufacturers." *Id*. at 2. The MAC goes on to state that CARB "will continue to accept and process certification applications," justifying this as "necessary" to "facilitate meeting the commitments of the Clean Truck Partnership." *Id*. at 2. Thus, California will require compliance with CARB's emissions standards, even though the underlying regulations establishing those emissions standards are preempted and unlawful. *See also supra* n.1 (stating that CARB is requiring auto manufacturers to "comply with the preempted regulations").

**ARGUMENT**

**I.    THE UNITED STATES IS ENTITLED TO INTERVENE UNDER RULE 24(A)**

Intervention as of right should be granted where, as here, the movant establishes: "its motion is timely; (2) it has a significantly protectable interest relating to the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) its interest is inadequately represented by the parties to the action." *Sweet v. Cardona*, 121 F.4th 32, 47-48 (9th Cir. 2024) (citing *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021)). In deciding a motion for intervention as right, courts are "guided primarily by practical and equitable considerations, and the requirements for

intervention are broadly interpreted in favor of intervention." *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021) (internal citation omitted).

### A. The United States' Motion Is Timely

"[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). "Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors:" (1) "the stage of the proceeding at which an applicant seeks to intervene"; (2) "the prejudice to other parties"; and (3) "the reason for and length of the delay." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (internal citation and quotation omitted).

Consideration of all three factors shows that the United States timely moved to intervene in this case. Indeed, the United States moved to intervene just days after the complaint was filed. The litigation is thus at its earliest stage. And no other party can claim prejudice because the United States acted so quickly. Just the opposite, the United States would be prejudiced if its motion is denied. A judgment allowing the California Defendants to enforce preempted regulations through the Clean Truck Partnership or otherwise would do an end-run around Congress' choice to require uniform national emissions standards, as expressly contemplated in the Clean Air Act. *See* 42 U.S.C. § 7543(a). The United States must be allowed to defend the statutory scheme that Congress chose for the Clean Air Act's motor vehicle emissions program and challenge CARB's attempt to avoid preemption here without having to file another action. Multiple actions would risk conflicting judgments and delay EPA's statutory mandate to adopt and enforce uniform emissions standards.

### B. The United States Has a Significantly Protectable Interests Relating to this Litigation

Intervention as right requires a "significant protectable interest" in an action: one where "(1) [the applicant] asserts an interest that is protected under some law,

and (2) there is a 'relationship' between [the applicant's] legally protected interest and the plaintiff's claims." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017). The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002)

The United States has a legally protectable interest to set and enforce national uniform standards for vehicular emissions, as mandated by Congress in its determination of the public interest, and that this action implicates. In enacting the Clean Air Act, Congress sought to construct a nationwide regulatory regime focused on limiting emissions of certain pollutants by new motor vehicles and engines. *See* 42 U.S.C. § 7521. Congress entrusted this endeavor to EPA and expressly preempted State regulation of emissions standards or the imposition of State certification requirements, recognizing that a 50-State patchwork of environmental regulations would be untenable and unwise. *See id.* § 7543(a). A narrow exception is when California receives a preemption waiver from EPA. *See id.* § 7543(b). Yet EPA may not grant a waiver to California if it adopts standards that are "arbitrary and capricious" or do not "meet compelling and extraordinal conditions," among other reasons. *Id.* § 7543(b)(1)(A)–(C). As a result, absent a waiver, Congress chose uniformity in the motor vehicle emissions program and gave EPA alone the authority to set national emissions standards.

CARB did receive waivers for its ACT and Omnibus rules. But Congress voided those waivers. Congress again chose national uniformity for heavy-duty truck emissions standards and rejected the option for California to enforce its more restrictive standards. *See* Pub. L. No. 119-15, 139 Stat. 65 (2025) (disapproving the ACT rule's waiver); Pub. L. No. 119-17, 139 Stat. 67 (2025) (disapproving the Omnibus rule's waiver). And California never obtained a waiver for the ACF rule. The United States seeks to intervene here to ensure that CARB, through the Clean Truck Partnership or otherwise, does not frustrate Congress' twice-over choice for uniform

emissions standards. This action challenging the Clean Truck Partnership as preempted directly implicates the United States' interest in uniform national motor vehicle standards. An adverse judgment would impair the United States' ability to enforce uniform motor vehicle emissions standards from heavy duty trucks.

Nor is the United States' interest here "generalized" or "undifferentiated." *See United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004). On the contrary, the United States' interest is unique: no other party here can claim a sovereign interest. The United States alone possesses the unique "interest in protecting the proper and consistent application of the Congressionally designed framework" under the Clean Air Act. *Heaton v. Monogram Credit Card Bank of Ga.,* 297 F.3d 416, 422–24 (5th Cir. 2002) (concluding that "the district court erred on the merits in refusing to allow [the Federal Deposit Insurance Corporation] to intervene" to protect the application of the "Congressionally designed framework" under its charge).

### C. This Action Could Impair the United States' Interests

A party's interests are impaired for intervention "if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Here, an adverse judgment upholding the Clean Truck Partnership and its underlying preempted regulations would defeat the United States' ability to ensure the enforcement of national uniform emission standards, as directed by Congress. EPA's heavy-duty truck emissions standards cannot be uniform so long as the California Defendants enforce CARB's preempted standards through the Clean Truck Partnership.

### D. No Party Represents the United States' Sovereign Interests

"The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (internal citation omitted). The Ninth Circuit considers three factors for representation adequacy: "(1) whether the interest of a present party is such that it

will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* at 840-41. "The most important factor" is "how the interest compares with the interests of existing parties." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

To start with the most important factor, no party in this case represents the United States' unique sovereign interests. The private parties' interests are economic: they want to sell heavy-duty trucks, *see* Dkt. No. 1 ¶ 24 (stating that Plaintiffs sell heavy-duty trucks, which "commonly sell for well over $100,000 when sold at retail in California"), and protect their "substantial investment[s]," *id.* ¶¶ 67–68. They also have free-speech interests. *Id.* ¶¶ 69–70 (stating that "California is suppressing Plaintiff OEMs' speech and petitioning rights"). The United States, by contrast, has "obligations . . . to the general public" through its administration and enforcement of the Clean Air Act, including its mandate to enforce uniform standards. *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020) (distinguishing between "private investment" and "obligations to the general public"); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell,* 467 F.3d 999, 1008 (6th Cir. 2006) (emphasizing the governmental interests in public laws being "enforced"); *Heaton,* 297 F.3d at 425 ("Government agencies . . . must represent the public interest, not just the economic interests of one industry."). At bottom, the United States' concern for the proper application of its laws, along with its duty to represent the public, mean that its interests are not coterminous with those of private litigants.

The other three factors are just as easily satisfied. First, while Plaintiffs and the United States "may share the same ultimate objective in this litigation" to obtain an injunction, no present party can make the same arguments as the United States. *Watersheds*, 22 F.4th at 840–41 (finding inadequate representation because the

intervenor raised new arguments). For example, no party can claim a Congressional mandate to enforce national uniform standards through the Clean Air Act. Second and in a related vein, although Plaintiffs filed a nearly 50-page complaint, they have not asserted arguments about national uniform standards. *See United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (finding second factor satisfied when it was "apparent that the [party's] arguments will not include" arguments which the intervenors sought to raise). Lastly, the United States would offer a "necessary element[] to the proceeding that other parties would neglect." *Watersheds*, 22 F.4th at 842. Unlike Plaintiffs, the United States participated in and issued the preemption waivers at issue in this case. *See supra* pp. 4–6 (describing preemption waivers). The United States thus has a substantial interest in the outcome of this litigation by virtue of it having issued and then disapproved of the EPA waivers at the heart of this matter. *Id.* And "[i]t is possible that [the truck manufacturers'] more narrow [economic] interests (and the arguments [they] seek to make), informed by specific regional and investment-related concerns, will differ from those of [the United States], which must necessarily take into account a more diffuse set of considerations." *Watersheds*, 22 F.4th at 842 (reversing the denial of intervention).

## II. ALTERNATIVELY, THE UNITED STATES SHOULD BE ALLOWED TO INTERVENE UNDER RULE 24(B)

At a minimum, the United States' sovereign interests and constitutional role in enforcing the Clean Air Act and the recent Congressional resolutions disapproving of the waivers warrant permissive intervention under either Rule 24(b)(1) or Rule 24(b)(2). "In exercising its discretion" under either rule, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rule 26(b)(3).

Starting with Rule 24(b)(2), when a government agency moves to intervene, as here, courts may permit intervention if the claim is based on "a statute . . . administered by the . . . agency." Rule 24(b)(2)(A); *see also* Wright &

Miller, § 1912 (3d ed. 2025) ("[T]he whole thrust of" Rule 24(b)(2) "is in the direction of allowing intervention liberally to government agencies and officers seeking to speak for the public interest," and "courts have permitted intervention accordingly") (collecting cases); *see generally Cameron v. EMW Women's Surgical Ctr., P.S.C.,* 595 U.S. 267, 277 (2022) (reversing denial of state attorney general's motion to intervene while recognizing that the government's "opportunity to defend its laws in federal court should not be lightly cut off"). Here, Plaintiffs' first three claims are based on Clear Air Act preemption. *See* Dkt. No. 1 ¶¶ 71-94. Congress vested EPA with the authority to administer the Clean Air Act and sole authority to establish new motor vehicle standards. *See* 42 U.S.C. §§ 7521(a), 7543(a). Accordingly, the United States satisfies Rule 24(b)(2)(A).

Turning to Rule 24(b)(1)(B), the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." *See also Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (stating further that the applicant must show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common") (citing Rule 24(b)(1)(B)). "[T]he court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Id*. The United States satisfies all these requirements: (1) jurisdiction exists independent of Plaintiffs' claims, *see* Ex. A ¶¶ 8–9; (2) the motion is timely, *see supra* § I.A; (3) and the United States' proposed Complaint in Intervention shares with the main action a common claim and question of law: whether the California Defendants may attempt to enforce preempted regulations through the Clean Truck Partnership in violation of the Clean Air Act. *Compare* Dkt. No. 1 at Counts I & III ("Clean Air Preemption"), *with* Ex. A at First & Second Claim for Relief (same). And, as explained, no party adequately represents the United States' unique sovereign interests in this case.

1     Granting intervention under either Rule 24(b)(1) or 24(b)(2) would not "unduly
2 delay" this case. Fed. R. Civ. P. 24(b)(3). The intervention motion is timely. *See supra*
3 § I.A. And the United States does not raise new claims. *See* Wright & Miller, § 1921
4 (explaining that intervention may be inappropriate if an intervenor would raise new
5 claims that cause delay). The United States also would file a separate action if
6 intervention is denied. Courts have found avoiding the risk of inconsistent judgments
7 and resolving related issues in a single proceeding support granting permissive
8 intervention. *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir.
9 1995) (finding permissive intervention appropriate where "denial of intervention
10 would in all likelihood have created additional litigation and the possibility of
11 conflicting results").

12     Nor would intervention prejudice the parties. It could not: Plaintiffs just filed
13 their complaint three days ago. Moreover, Plaintiffs consent to the United States'
14 request to intervene. The United States will meet any litigation deadlines set by the
15 Court. Indeed, the United States has already thoroughly investigated the facts and
16 claims at issue. Instead of delay, the United States involvement could streamline
17 resolution of this action based on EPA's expertise in the Clean Air Act and regulatory
18 issues central to this case.

### CONCLUSION

20     For all these reasons, the United States' motion to intervene should be granted
21 under Rule 24(a). In the alternative, the Court should permit the United States to
22 intervene under Rule 24(b).

Motion to Intervene
Case No. 2:25-cv-02255-DC-AC      13

|   |   |
|---|---|
| | Respectfully submitted, |
| Dated: August 14, 2025 | ADAM R.F. GUSTAFSON<br>*Acting Assistant Attorney General* |
| | /s/ *Robert N. Stander*<br>ROBERT N. STANDER<br>*Deputy Assistant Attorney General* |
| ERIC GRANT<br>*United States Attorney*<br>EDWARD A. OLSEN<br>Assistant United States Attorney<br>501 I Street, Suite 10-100<br>Sacramento, California 95814<br>(916) 554-2821 | JOHN K. ADAMS<br>DAVID D. MITCHELL<br>United States Department of Justice<br>Environment & Natural Resources Div.<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>(202) 353-5905<br>robert.stander@usdoj.gov<br>john.adams3@usdoj.gov<br>david.mitchell@usdoj.gov<br><br>*Counsel for Plaintiffs-Intervenors* |

Motion to Intervene
Case No. 2:25-cv-02255-DC-AC                                                                 14