1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MYUNG J. PARK, State Bar No. 210866
   Supervising Deputy Attorney General
3  BENJAMIN P. LEMPERT, State Bar No. 344239
   M. ELAINE MECKENSTOCK, State Bar No. 268861
4  JONATHAN A. WIENER, State Bar No. 265006
   Deputy Attorney General
5    455 Golden Gate Ave, Suite 11000
     San Francisco, CA 94102
6    Tel: (415) 510-3549
     Email: jonathan.wiener@doj.ca.gov
7  *Attorneys for Defendants*
8

9                    IN THE UNITED STATES DISTRICT COURT

10                   FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14  | **DAIMLER TRUCK NORTH AMERICA,** | 2:25-cv-02255-DC-AC |
    | **LLC; INTERNATIONAL MOTORS, LLC;** | |
15  | **PACCAR, INC.; and VOLVO GROUP** | |
    | **NORTH AMERICA, LLC,** | |
16  | | **DEFENDANTS' RESPONSE TO ORDER** |
17  | Plaintiffs, | **TO SHOW CAUSE RE: TRANSFER TO** |
    | | **NORTHERN DISTRICT OF** |
18  | v. | **CALIFORNIA** |
19  | | Courtroom:   8, 13th Floor |
    | **CALIFORNIA AIR RESOURCES BOARD,** | Judge:        Hon. Dena Coggins |
20  | **STEVEN S. CLIFF, in his official capacity** | Trial Date:   None Set |
    | **as the Executive Officer of the California** | Action Filed: August 11, 2025 |
21  | **Air Resources Board; and GAVIN** | |
    | **NEWSOM, in his official capacity as the** | |
22  | **Governor of California,** | |
23  | Defendants. | |
24

25

26

27

28

1

**INTRODUCTION**

2    Defendants do not object to this Court transferring this case to the Northern District of

3    California. Such a transfer would serve judicial economy and minimize the risk of conflicting

4    judgments.[1]

5    In the previously filed Northern District of California case, *California v. United States*,

6    Case No. 4:25-cv-04966-HSG (filed June 12, 2025), the State of California and ten other States

7    challenge the legality of three congressional resolutions signed by the President on June 12, 2025

8    ("Resolutions"). The Resolutions purport to invalidate waivers of preemption under the Clean Air

9    Act. In this case, several counts in Plaintiffs' Complaint depend on the validity of the

10    Resolutions, and so California's arguments challenging the validity of the Resolutions will

11    operate as defenses.

12    When claims and defenses overlap in multiple cases across different districts, the risk of

13    inconsistent results and expense of duplicative litigation weigh in favor of transfer to a single

14    district. *See, e.g.*, *Am. Canine Found. v. Sun*, No. CIV. S-06-654 LKK/DAD, 2006 WL 2092614,

15    at *3 (E.D. Cal. July 27, 2006). Transferring this case to the Northern District of California,

16    where it could be jointly managed and coordinated with the earlier-filed case, would avoid the

17    risk of conflicting judgments and advance judicial economy. Under the first clause of 28 U.S.C.

18    § 1404(a), the Court may transfer a civil action to "any other district or division where [the

19    action] might have been brought." This action could have been filed in the Northern District of

20    California under 28 U.S.C. § 1391(b)(1) because at least one Defendant "resides" in that district

21    and the others reside in the same State.

22

**BACKGROUND**

23    Under Section 209(b)(1) of the Clean Air Act, 42 U.S.C. § 7543(b)(1), EPA must waive

24    application of the Act's provision preempting state emissions standards for new motor vehicles

25    with respect to California emission standards, unless EPA can make one of three limited findings

26

27    [1] This Court ordered a response addressing venue prior to the time for Defendants to move
to dismiss. By responding to the Court's order to show cause, no Defendant is waiving any
28    immunity or other defense, which may be raised in either district.

1

1  that allow it to deny such a waiver. This waiver provision was expressly intended to allow

2  California to continue to "improve on 'its already excellent program' of emissions control"—a

3  program that began well before the federal government developed one. *Motor & Equip. Mfrs.*

4  *Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1110 (D.C. Cir. 1979) (quoting S. Rep. No. 403, 90th Cong.,

5  1st Sess. 33 (1967)).

6       Although California is the only State that may design its own new motor vehicle emission

7  regulations, *id.* at 1100 n.1, Congress provided other States with the option to adopt California's

8  regulations as their own, subject to certain conditions, 42 U.S.C. § 7507. In this way, Congress

9  preserved the role of States as laboratories of innovation while mitigating manufacturer fears of

10  "being faced with 51 different standards." *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1080 (D.C.

11  Cir. 1996). Under Congress's "legislative compromise," "manufacturers must cope with two"—

12  but only two—sets of standards designed, respectively, by EPA and California. *Id.* Thus, since

13  1967, "motor vehicles must be either federal cars designed to meet the EPA's standards or

14  California cars designed to meet California's standards." *Id.* (internal quotation marks omitted).

15       EPA has granted more than seventy-five waivers to California since this provision was first

16  enacted in 1967, allowing the State to require greater degrees of emission control as technologies

17  have advanced.[2] Relevant here, between April 2023 and January 2025, EPA granted California's

18  requests for three preemption waivers for specific additions or amendments to California's

19  program: the Advanced Clean Trucks, Advanced Clean Cars II, and Omnibus Low NOx

20  ("Omnibus") regulations. 88 Fed. Reg. 20,688 (Apr. 6, 2023); 90 Fed. Reg. 642 (Jan. 6, 2025); 90

21  Fed. Reg. 643 (Jan. 6, 2025). On June 12, 2025, President Trump signed the Resolutions that

22  purported to invalidate these waivers. H.J. Res 87 (2025); H.J. Res. 88 (2025); H.J. Res. 89

23  (2025).

24       That same day, California and ten other States filed suit in the Northern District of

25  California, challenging the Resolutions as unlawful under relevant statutes and the United States

26  Constitution. *California v. United States*, Case No. 3:25-cv-04966-HSG. State Plaintiffs in that

---

[2] *See* EPA, *Vehicle Emissions California Waivers and Authorizations*, available at https://perma.cc/9F5K-QC79, last visited August 28, 2025.

case allege, *inter alia*, that "extraordinary defects in the national political process" render the
Resolutions "invalid under the Tenth Amendment" and structural principles of federalism, *South
Carolina v. Baker*, 485 U.S. 505, 512 (1988); and that Congress violated separation of powers
principles in enacting the Resolutions, ECF No. 50-6 ("*California* Complaint") ¶¶ 153-78.
Multiple parties have sought to intervene in *California*. The Zero Emission Transportation
Association moved to intervene as a plaintiff, filing a complaint in intervention asserting, *inter
alia*, that the Resolutions violate separation of powers principles. Several trade associations and
other industry groups, and the State of Texas, have sought to intervene as defendants.

On August 11, 2025 (almost two months after *California* was filed), Plaintiffs Daimler
Truck North America, LLC; International Motors, LLC; PACCAR, Inc.; and Volvo Group North
America LLC ("Plaintiffs") filed their Complaint in this case in the Eastern District of California,
against the California Air Resources Board ("CARB") as well as two state officials: Steven S.
Cliff, in his official capacity as the Executive Officer of CARB**,** and Gavin Newsom, in his
official capacity as the Governor of California. The Complaint asserts claims that, at least in part,
raise issues overlapping with the claims asserted in *California v. United States.* ECF No. 1 ¶¶ 71-
94. Specifically, Plaintiffs allege that the Resolutions render multiple California regulations and a
2023 agreement between Plaintiffs and CARB preempted under the Clean Air Act. To defeat
these claims, Defendants will (among other arguments) present the claims in *California* as
defenses. Likely anticipating that the claims in that case could be litigated here, the United States
moved to intervene, asserting preemption claims based "[u]pon enactment of" the Resolutions.
ECF No. 56 ¶ 86. This Court granted the United States' motion to intervene on August 20, 2025.
ECF No. 54. The parties are briefing a preliminary injunction motion—filed by the Plaintiffs and
later joined by the United States—in which Defendants' opposition will include issues
overlapping with those the State plaintiffs have raised in *California.*

Defendants' Response to Order to Show Cause (2:25-cv-02255-DC-AC)

1

**ANALYSIS**

2       On August 20, 2025, this Court ordered the parties to show cause "why this action should

3  not be transferred to the Northern District of California." ECF No. 55. Defendants respond that

4  such a transfer appears prudent.

5       The purpose of transfer under 28 U.S.C. § 1404(a) is "to prevent the waste of time, energy,

6  and money and to protect litigants, witnesses and the public against unnecessary inconvenience

7  and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and

8  citations omitted). In deciding whether to transfer cases, courts consider "ensuring speedy trials,

9  trying related litigation together, and having a judge who is familiar with the applicable law try

10  the case." *Heller Financial, Inc., v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989).

11       Here, at least three of the seven counts in Plaintiffs' Complaint rely on the purported legal

12  force of the Resolutions, and arguments addressing the validity of the Resolutions may be

13  material to the disposition of two of the other counts. This suffices to conclude that the cases are

14  related, and "[l]itigation of related claims in the same tribunal is strongly favored because it

15  facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids

16  duplicitous litigation and inconsistent results." *Amazon.com v. Cendant Corp.,* 404 F. Supp. 2d

17  1256, 1261 (W.D. Wash. 2005) (cleaned up); *see also. Med. Dev. Int'l v. Cal. Dep't of Corr. &*

18  *Rehab.*, No. CIV 2:07-2199 WBS EFB, 2010 WL 347901, at *4 (E.D. Cal. Jan. 22, 2010).

19       The ordinary solution in this situation is to transfer later-filed cases to the court hearing the

20  first-filed case. "[T]ransfer and consolidation of actions regularly occurs in cases filed in various

21  districts that involve state agency defendants." *Gupta v. Bonta*, No. CV 21-8104 MRW, 2021 WL

22  10366002, at *2 (C.D. Cal. Nov. 18, 2021) (transferring second-filed challenge to restrictions on

23  activities near COVID-19 vaccination sites); *see also Bear River Band of Rohnerville Rancheria*

24  *v. California*, No. C 20-05574 WHA, 2020 WL 6270929, at *1 (N.D. Cal. Oct. 26, 2020)

25  (transferring fourth-filed challenge to Indian gaming compacts); *Am. Canine Found. v. Sun*, No.

26  CIV. S-06-654 LKK/DAD, 2006 WL 2092614, at *3 (E.D. Cal. July 27, 2006) (transferring

27  second-filed challenge to canine spay and neuter requirements).

28

Defendants' Response to Order to Show Cause (2:25-cv-02255-DC-AC)

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another "district or division where it might have been brought or to any district or division to which all parties have consented." The Court must analyze "where [the action] might have been brought" at the time that the case was originally filed. *In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). In analyzing that, courts have "some discretion to decide the question of transfer of venue prior to addressing subject matter jurisdiction," as would ordinarily happen through a motion to dismiss. *Ader v. Belimed, Inc.*, No. 2:12-cv-00710 GEB KJN PS, 2012 WL 3234206, at *4 (E.D. Cal. Aug. 6, 2012), *report and recommendation adopted,* No. 2:12-cv-00710 GEB KJN PS, 2012 WL 12883189 (E.D. Cal. Sept. 13, 2012). "However, courts often resolve issues of subject matter jurisdiction before reaching motions to transfer venue where jurisdiction is not particularly difficult to determine." *Haughey v. MGM Resorts Int'l*, No. SACV 21-175 PSG (JDEx), 2022 WL 22922565, at *3–4 (C.D. Cal. Jan. 18, 2022) (collecting cases). Here, the district court has the discretion to take either approach.

Both this Court and the Northern District lack subject matter jurisdiction over CARB with respect to Plaintiffs' complaint, and Defendants intend to move to dismiss CARB at the appropriate time. Under the Eleventh Amendment, a state agency (such as CARB) is immune from suits brought in federal court by its own citizens or citizens of other states unless that immunity is waived. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010). Plaintiffs have not alleged—and cannot allege—that California has waived this immunity.

Defendants also intend to move to dismiss Governor Newsom for lack of subject matter jurisdiction. Suit against the Governor in his official capacity is also barred by the Eleventh Amendment. Although *Ex parte Young*, 209 U.S. 123 (1908), permits actions for prospective declaratory or injunctive relief against state officers sued in their official capacities for their alleged violations of federal law in federal court, that exception only applies to state officials who have direct responsibility for enforcement of an allegedly unlawful state law; a "generalized duty to enforce state law" is insufficient. *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937,

5

1  943 (9th Cir. 2013). Here, Governor Newsom has no hand in directly enforcing the challenged

2  state laws and policies.[3]

3      Either this Court or the Northern District has jurisdiction to determine subject matter

4  jurisdiction is lacking as to the Governor and CARB at the motion to dismiss stage. Defendants

5  recognize that these questions of subject matter jurisdiction have not been fully briefed, and if the

6  Court decides to exercise its discretion to consider transfer before assessing subject matter

7  jurisdiction, it could consider the fact that the Governor "resides" for venue purposes in all

8  districts in California, including the Northern District. *E.g.*, *Six v. Newsom*, 462 F. Supp. 3d 1060

9  (C.D. Cal. 2020); *Tandon v. Newsom*, 517 F. Supp. 3d 922 (N.D. Cal. 2021). The Court need not

10  address where Defendants Cliff and CARB "reside" for venue purposes because "[a] civil action

11  may be brought in . . . a judicial district in which any defendant resides, if all defendants are

12  residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1); *cf. Trout v. Cnty. of*

13  *Madera*, No. 21-cv-06061-PJH, 2022 WL 2479156, at *7 (N.D. Cal. July 6, 2022), *aff'd*, No. 22-

14  16177, 2023 WL 8592880 (9th Cir. Dec. 12, 2023) (in a suit against an agency official,

15  "residency for purposes of venue is fixed by the location of [the agency's] headquarters and

16  offices"). Because Defendant Newsom "resides" in every district in California, including the

17  Northern District of California, and Defendants Cliff and CARB reside in the State, this action

18  could have been brought in the Northern District and the Court may transfer the case there under

19  28 U.S.C. § 1404(a).

20                                **CONCLUSION**

21      This action and the earlier-filed suit in the Northern District both raise the same untested

22  questions about the constitutionality of the Resolutions. The typical solution is to transfer the

23  later-filed case addressing the same facts and law to the district court where the first-filed case is

24

25

---

26      [3] Plaintiffs' state law claims against Governor Newsom (and all Defendants) are also
barred by the Eleventh Amendment under *Pennhurst State School & Hosp. v. Halderman*, 465
27  U.S. 89 (1984). "[T]he Eleventh Amendment deprives federal courts jurisdiction to order state
actors to comply with state law." *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th
28  Cir. 1991) (citing *Pennhurst*).

docketed. Defendants agree that such a transfer would advance judicial economy and minimize the risk of conflicting judgments.

Dated:  August 29, 2025

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

*/s/ Jonathan A. Wiener*
JONATHAN A. WIENER
Deputy Attorney General
*Attorneys for Defendants*

SF2025402025
44766606

7

# CERTIFICATE OF SERVICE

Case Name: **Daimler Truck North America**      No.    **2:25-cv-02255-DC-AC**
            **v.  Air Resources Board**

I hereby certify that on <u>August 29, 2025,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE RE: TRANSFER TO NORTHERN DISTRICT OF CALIFORNIA**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 29, 2025</u>, at San Francisco, California.

|  |  |
|---|---|
| H. Truong | |
| Declarant | Signature |

SF2025402025
44780463.docx