GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, State Bar No. 163581
310 University Avenue
Palo Alto, CA  94301-1744
Telephone:	650.849.5395
Facsimile:	640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, State Bar No. 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:	415.393.8293
Facsimile:	415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
VERONICA J.T. GOODSON, State Bar No. 314367
1700 M Street N.W.
Washington, D.C.  20036-4504
Telephone:	202.955.8500
Facsimile:	202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*
(additional counsel on signature pages)

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,<br><br>Defendants,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Plaintiffs-Intervenors. | CASE NO. 2:25-cv-02255-DC<br><br>**PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**<br><br>Judge:	Hon. Dena Coggins<br>Action Filed:	August 11, 2025 |

## INTRODUCTION

On August 20, 2025, this Court entered a minute order directing the parties to show cause why this case should not be transferred to the Northern District of California. *See* Dkt. No. 55, Min. Order. Plaintiffs could not have brought their action in the Northern District of California; as a result, this Court may not transfer this case to that district without the consent of all parties. 28 U.S.C. § 1404(a). Defendants state that they do not object, but have not affirmatively consented, to this action being transferred to the Northern District of California. *See* Dkt. No. 61, Defs.' Resp. to Order to Show Cause, at 2. For their part, Plaintiffs do not consent to transfer considering that such action would significantly prejudice Plaintiffs and effectively deny their request for urgent injunctive relief.

Unlike the Northern District of California, this Court indisputably has personal jurisdiction over Defendants and is a proper venue for Plaintiffs' claims. Under 28 U.S.C. § 1391(b), a civil action may be brought in any district in which: (1) any defendant resides, if all defendants are residents of the State in which the district is located; (2) a substantial part of the events giving rise to the claim occurred; or (3) any defendant is subject to the court's personal jurisdiction, but only if there is no venue in which an action can otherwise be brought. Here, all Defendants reside in Sacramento, which is within this Court's jurisdiction. And in another federal court, Defendant Steven Cliff has stated that the Eastern District of California is a venue where a "substantial part of the events or omissions giving rise" to Plaintiffs' claims occurred—specifically, Defendants enforce California's preempted emissions standards out of Sacramento, and the Clean Truck Partnership was negotiated in and would be enforced out of Sacramento as well. *Am. Free Enter. Chamber of Com. v. Engine Mfrs. Ass'n*, No. 3:24-cv-50504 (N.D. Ill. filed Dec. 16, 2024), Dkt. No. 126, Def. Cliff's Mot. to Dismiss, at 12 (quoting 28 U.S.C. § 1391(b)(2)); *see also id.* at 13–15. Accordingly, venue is proper in the Eastern District of California, but not the Northern District.

Although Defendants assert that Defendant Governor Newsom resides statewide for purposes of Section 1391(b)(1), their cited authority does not support that proposition. *See* Dkt. No. 61, Defs.' Resp. to Order to Show Cause, at 7 (citing *Six v. Newsom*, 462 F. Supp. 3d 1060 (C.D. Cal. 2020) and *Tandon v. Newsom*, 517 F. Supp. 3d 922 (N.D. Cal. 2021)). Neither *Six* nor *Tandon* discuss venue at all, much less hold that the Governor resides in every district in California. And the very court to which

Defendants seek transfer rejected that same argument when Governor Schwarzenegger made it, finding instead that the Governor resides in this district. *See In re Warren*, No. C 08-2382 MHP (PR), 2008 WL 4402948, at *1 (N.D. Cal. Sept. 26, 2008) (transferring case to the Eastern District of California under 28 U.S.C. § 1406(a) after finding that venue did not lie in the Northern District under 28 U.S.C. § 1391(b) because the Governor of California resides in the Eastern District of California). That decision is consistent with other authority holding that state governors reside in the district of the state capital. *See Northern Kentucky Welfare Rights Ass'n v. Wilkinson*, 933 F.2d 1009, 3 (6th Cir. 1991) (holding that for venue purposes, the official residence of the Governor of Kentucky was at the capital of Frankfort, so venue was proper in the Eastern District of Kentucky, where Frankfort is located).

Even on Defendants' premise, the argument is a shell game. Defendants say that since Governor Newsom supposedly resides everywhere in the State, the Court need not consider venue as to any other Defendant so long as each also resides in the State. *See* Dkt. No. 61, Defs.' Resp. to Order to Show Cause, at 7. At the same time, Defendants maintain that Governor Newsom is not a proper defendant and should be dismissed from this case by this Court or promptly upon transfer. *Id.* at 6–7. And tellingly, Defendants do not even try to represent that the other Defendants reside anywhere other than in the Eastern District of California. So the sole effect of Defendants' *ipse dixit* "analysis" is to manufacture a basis for venue in the Northern District that, on the State's own telling, will evaporate immediately upon transfer. By all accounts, venue does not lie in the Northern District of California.

Because venue is proper here, this Court may not transfer this case under 28 U.S.C. § 1406(a), which authorizes transfers only from an improper venue to a proper one. And 28 U.S.C. § 1404(a) authorizes transfers only between proper venues, or else with the consent of all parties, "[f]or the convenience of parties and witnesses, [and] in the interest of justice." *Id.* Because this case could not have been brought in the Northern District of California, Section 1404(a) does not authorize a transfer to the Northern District of California without the consent of all parties. Even if the Northern District of California were a proper venue where this action could have been brought, the interests of justice and the convenience of the parties would not be served by transfer. Indeed, even on that assumption, whatever interests could conceivably warrant a transfer to the Northern District, those interests would have to give way to the irreparable harm that Plaintiffs are suffering and will continue to suffer from

Defendants' unlawful and unconstitutional actions until enjoined by this Court. Plaintiffs respectfully renew their request that this Court rule on their urgent motion for preliminary injunctive relief no later than **October 31, 2025**.

Urgent relief and consideration is warranted because Plaintiffs—and their dealers and customers—are forced to make business decisions about the heavy-duty trucks they are trying to sell today, as well as those trucks that Plaintiffs hope to build and sell in 2026 and beyond, in an environment of detrimental and injurious uncertainty. Defendants have explicitly threatened enforcement of preempted emission standards for the sale and certification of model year 2025 inventory and subsequent model years—including doing so anew in the days following this Court's show cause order, notwithstanding Plaintiffs' Preliminary Injunction Motion. At the same time, Plaintiff-Intervenor the United States has directed Plaintiffs to cease and desist from compliance with the Clean Truck Partnership and California's preempted emissions standards. Plaintiffs are caught in the middle—they cannot offer heavy-duty vehicles and engines to customers and dealers with certainty as to the applicable legal requirements (including whether currently built inventory can be lawfully sold and registered in California), adequately plan for model year 2026, or make critical longer-term business decisions until this Court clarifies whether Defendants may enforce emissions standards and conditions precedent to sale that have been explicitly preempted by federal law. The Plaintiffs are also differently positioned on model year 2026 certification. Some have not submitted any applications due to uncertainty in the law, whereas others have started the certification process. This furthers the chaos and harm associated with opening the order books and customer goodwill.

Plaintiffs, their dealers, and their customers are therefore stranded in legal limbo, uncertain about the scope of Defendants' authority over not just future models, but also existing trucks sitting on sales lots. Such uncertainty is already causing irreparable harm to Plaintiffs' goodwill and customer prospects. And additional irreparable injury is imminent without injunctive relief by October 31, 2025.

Any transfer of this case would prejudice Plaintiffs by further delaying a hearing and ruling on their request for emergency relief when they are already suffering irreparable harm and face certain additional irreparable injury absent relief. Such an outcome would not serve the interest of justice or convenience of the parties, and it would amount, in effect, to the outright denial of Plaintiffs' motion

for injunctive relief. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981); *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 533–36 (5th Cir. 2024). Plaintiffs therefore urge the Court to defer any further consideration of transfer and to proceed as promptly as possible to the adjudication of Plaintiffs' motion for preliminary injunctive relief.

**ARGUMENT**

**I.   The Eastern District of California Is a Proper Venue**

Under 28 U.S.C. § 1391(b), a civil action may be brought in any district in which: (1) any defendant resides, if all defendants are residents of the State in which the district is located; (2) a substantial part of the events giving rise to the claim occurred; or (3) any defendant is otherwise subject to the court's personal jurisdiction, but only if there is no proper venue under (1) or (2). In response to the first lawsuit filed against Steve Cliff, in his role as Executive Officer of CARB, to enjoin the Clean Truck Partnership as preempted by federal law—one filed by other plaintiffs in the U.S. District Court for the Northern District of Illinois[1]—Defendant Steve Cliff filed a motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer the case to the Eastern District of California. *Am. Free Enter. Chamber of Com.*, No. 3:24-cv-50504, Dkt. No. 126, Def. Cliff's Mot. to Dismiss, at 5–15. There, Mr. Cliff alleged that: (1) he carries out "official acts" and has his "primary office" in Sacramento, which is in the Eastern District of California; (2) the Clean Truck Partnership was negotiated in and is enforced—along with California's preempted emissions standards—in Sacramento; and (3) the Eastern District of California "is an appropriate venue" for preemption claims against him. *Id.* at 14. Those allegations encompass CARB squarely; the same can be said of Defendant Gavin Newsom and Plaintiffs' claims against him. Therefore, by all accounts, this Court is a proper venue for this action under Section 1391(b).

The same cannot be said of the Northern District of California. As a result, venue does not lie in that district. To avoid delay and the obvious prejudice associated with potential disputes on

---

[1] Importantly, *California v. United States*, No. 4:25-cv-04966-HSG (N.D. Cal. filed June 12, 2025), is the *second* federal case that was filed to test the limits of California's authority to enforce its preempted emissions standards. Thus, if this Court uses "the first-to-file rule" to "guid[e]" its analysis of whether to transfer this case under 28 U.S.C. § 1404(a), that rule would *not* militate in favor of transferring this action to the Northern District of California. *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018).

jurisdiction and venue, Plaintiffs filed their suit and requested urgent relief in this Court, which indisputably is the proper venue. "[A] plaintiff's choice of forum should rarely be disturbed," *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009) (citation omitted), especially when—as here—transferring would lead to a highly prejudicial delay, *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (affirming refusal to transfer case under § 1404).

## II. Plaintiffs Will Be Irreparably Harmed Unless This Court Rules on Their Preliminary Injunction Motion by October 31, 2025

Plaintiffs have repeatedly requested urgent relief and expedited consideration of their Preliminary Injunction Motion, and for good reason.[2] Plaintiffs—and their dealers and customers—are being forced to make business decisions about the heavy-duty trucks they are trying to sell today, as well plan for model year 2026 and beyond, in an environment of detrimental and injurious uncertainty. *See, e.g.*, Dkt. No. 23-15, Potter Decl. ¶¶ 12–14; Dkt. No. 23-23, Brown Decl. ¶ 16. Because California and the federal government have given Plaintiffs competing directives about what regulatory requirements apply to Plaintiffs' products, including over current model year 2025 inventory on dealer lots, Plaintiffs cannot inform their customers with certainty what products Plaintiffs can and cannot sell in California. *See id.* This is true not only for trucks that Plaintiffs hope to build and sell in 2026, but also for all trucks already built and awaiting retail sale throughout California. *See* CARB, Manufacturers Advisory Correspondence ECCD-2025-08 (August 25, 2025), https://perma.cc/8QMU-RE9M (CARB regulatory announcement reconfirming its intention to apply its pre-CRA laws to all model years and its plans to retroactively punish any OEM that does not elect to certify as a precautionary measure). Thus, for any truck sale before Court rules on Plaintiffs' Preliminary

---

[2] *See* Dkt. No. 23, Pls' Mot. for Prelim. Inj. (requesting hearing date of September 19, 2025); *id.* at 2 ("Plaintiffs now urgently need relief, and file this motion accordingly"); Dkt. No. 23-15, Potter Decl. ¶ 14 (DTNA will suffer a "significant loss of sales and a permanent loss of customer goodwill" if Plaintiffs' Preliminary Injunction Motion is "not resolved expeditiously"); Dkt. No. 23-20, Noonan Decl. ¶ 12 (International will suffer a "significant loss of sales and a permanent loss of customer goodwill" if Plaintiffs' Preliminary Injunction Motion is "not resolved expeditiously"); Dkt. No. 22-1, Brass Decl. ¶ 7 ("Plaintiffs have an urgent need for preliminary injunctive relief to prevent them from incurring the substantial and irreparable injuries detailed in their joint Motion for Preliminary Injunction"); Dkt. No. 52, Pls' Opp. to Defs' Extension Mot., at 5 (requesting a hearing extension of no later than October 17, 2025 given Plaintiff's need for "urgent relief" to avoid "irreparable and growing injury").

Injunction Motion risks punishment—an OEM risks sanctions from: (1) the United States, because the OEM has followed a preempted law in contravention of DOJ's cease-and-desist letter, or (2) the State, where the OEM opens itself up to significant fines, unfavorable regulatory treatment, and a potential CARB enforcement action. *See, e.g.*, Dkt. No. 23-15, Potter Decl. ¶¶ 13–15; Dkt. No. 23-20, Noonan Decl. ¶¶ 10–14. And until Plaintiffs receive the injunctive relief they request, these irreparable harms to Plaintiffs' goodwill and customer prospects will worsen with each passing day.

Although Plaintiffs are already suffering irreparable harm, their injuries will grow exponentially absent a ruling on their Preliminary Injunction Motion by October 31, 2025. If Plaintiffs choose to comply with the federal standards only and are viewed as defying California's government, they may be subject to unfavorable state regulatory treatment, potential state enforcement actions, and a fine of up to $48,788 per truck sale. *See* Cal. Health & Safety Code § 43154(a)(1); Dkt. No. 23-15, Potter Decl. ¶¶ 13–15; Dkt. No. 23-20, Noonan Decl. ¶¶ 10–14; Dkt. No. 23-22, Hergart Decl. ¶¶ 10–13; Dkt. No. 23-23, Brown Decl. ¶¶ 16–21. On the other hand, if Plaintiffs comply with the preempted California regulations, they face potential federal scrutiny as Plaintiff-Intervenor the United States has directed Plaintiffs to cease and desist from compliance with the Clean Truck Partnership and California's preempted emissions standards. Accordingly, Plaintiffs cannot offer heavy-duty vehicles and engines to customers and dealers with certainty as to the applicable legal requirements (including whether existing inventory can be lawfully sold and registered in California). They cannot adequately plan for model year 2026 or make critical longer-term business decisions until this Court clarifies whether Defendants may enforce emissions standards and conditions precedent to sale that have now been explicitly preempted by federal law. Plaintiffs, their dealers, and their customers are stranded in legal limbo, uncertain about the scope of Defendants' authority over not just future models, but also existing trucks sitting on sales lots. Such uncertainty already is causing irreparable harm to Plaintiffs' goodwill and customer prospects.

Defendants maintain that Plaintiffs must receive CARB certification before selling their model year 2026 vehicles into California. *See, e.g.*, Dkt. No. 23-20, Noonan Decl. ¶ 5. A new model year commences on January 1, and CARB's process for reviewing certification applications takes 60 days or even longer. *See* Dkt. 23-15, Potter Decl. ¶ 11. The last business day at least 60 days before January

1, 2026, is October 31, 2025.  Plaintiffs will face two harms without injunctive relief by that date.

First, without a ruling granting injunctive relief by October 31, Plaintiffs are faced with:  (1) the DOJ's letters demanding that the OEMs cease and desist from compliance with the Clean Truck Partnership and California's preempted emissions standards; and (2) a fresh threat by CARB to subject Plaintiffs to unfavorable state regulatory treatment, potential state enforcement actions, and a fine of up to $48,788 per truck sale if the OEMs do not adhere to the preempted standards.  *See* Cal. Health & Safety Code § 43154(a)(1); Dkt. No. 23-15, Potter Decl. ¶¶ 13–15; Dkt. No. 23-20, Noonan Decl. ¶¶ 10–14; Dkt. No. 23-22, Hergart Decl. ¶¶ 10–13; Dkt. No. 23-23, Brown Decl. ¶¶ 16–21.

Second, Plaintiffs are already hindered in planning for and addressing customer needs; without a ruling by October 31, they will suffer even further permanent losses of prospective customers or goodwill.  *See* Dkt. No. 23-15, Potter Decl. ¶ 14; Dkt. No. 23-20, Noonan Decl. ¶ 12; Dkt. No. 23-22, Hergart Decl. ¶¶ 12–13; Dkt. No. 23-23, Brown Decl. ¶ 19.  Building and distributing heavy-duty trucks and engines takes considerable amounts of time; under normal circumstances, Plaintiffs often begin taking orders for the upcoming year in September of the previous year.  *See e.g.*, Dkt. No. 23-15, Potter Decl. ¶¶ 12–13; Dkt. No. 23-20, Noonan Decl. ¶ 10.  But Plaintiffs are constrained in their ability to offer certain and accurate pricing without knowing what emissions standards they must follow:  the federal standards, or the California ones that appear to be preempted, but which Defendants are intent on enforcing.  *See* Dkt. No. 23-15, Potter Decl. ¶¶ 12–14; Dkt. No. 23-20, Noonan Decl. ¶ 12; Dkt. No. 23-22, Hergart Decl. ¶¶ 12–13; Dkt. No. 23-23, Brown Decl. ¶ 13.

These injuries constitute irreparable harms that warrant urgent preliminary injunctive relief.  *See Cal. Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851–52 (9th Cir. 2009), *vacated and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012) (complying with unlawful regulations produces an irreparable harm because compliance costs are unrecoverable); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (a threat of imminent action to enforce an unlawful regulation is an irreparable harm); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (the threatened losses of prospective customers or goodwill are irreparable harms).  A transfer of this case to another district prior to a ruling on the pending Preliminary Injunction Motion would almost certainly delay a ruling beyond October 31, 2025,

7

Gibson, Dunn & Crutcher LLP

causing the very harm that Plaintiffs seek to avoid in their motion.

### III. The Section 1404(a) Factors Militate Against Transfer

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* A transfer under Section 1404(a) thus requires two findings: (1) that *either* the proposed court is one where the action might have been brought *or* that all parties have consented to transfer; and (2) that the interest of justice and convenience of the parties and witnesses favor transfer. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3845 (4th ed. 2025) ("[C]onsent of the parties … expands the range of possible transferee courts if a court determines that transfer is appropriate for the convenience of parties and witnesses and in the interest of justice.").

In making this second finding, courts weigh various private and public interest factors. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Private factors include the plaintiff's choice of forum; the forum where a substantial part of the events giving rise to the claim occurred; the differences in the costs of litigation; the availability of process to compel attendance of unwilling non-party witnesses; and the ease of access to evidence. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).[3] Public factors include the level of congestion of the local docket, the local public interest in the outcome of a case, and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Decker*, 805 F.2d at 843. Although the decision to transfer a case ultimately lies within the discretion of the district court, *id.* at 842, "a plaintiff's choice of forum should rarely be disturbed," *Bos. Telecomms. Grp.*, 588 F.3d at 1207 (citation omitted), especially when transferring would lead to a prejudicial delay, *Savage*, 611 F.2d at 279.

Because venue does not lie in the Northern District of California, this Court lacks authority to transfer this case to that district under Section 1404(a) without (1) the consent of all parties, *and* (2) a finding that such transfer would serve the interest of justice and convenience of the parties. Defendants

---

[3] Courts also consider the presence of a forum selection clause (which the Clean Truck Partnership does not have) and the relevant public policy in the state. *Jones*, 211 F.3d at 499.

have not affirmatively consented to this action being transferred. *See* Dkt. No. 61, Defs.' Resp. to Order to Show Cause, at 2. For the reasons mentioned above, Plaintiffs cannot consent, as they will be irreparably harmed without a ruling on their pending motion by October 31, 2026, and a transfer would likely delay a determination on their urgent request for emergency relief.

Regardless, transfer would not serve the interest of justice or convenience of the parties. To the contrary, to prevent the kind of serious injury that results when motions for emergency relief are "not immediately reviewed," Congress and the Supreme Court have authorized interlocutory appellate review of orders that have the "practical effect" of denying a preliminary injunction motion—even if such orders "avoi[d] the label 'injunction'" altogether. *Abbott v. Perez*, 585 U.S. 579, 595 (2018) (citation omitted); *see also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025) (same). And effective denials of injunctive relief are appealable under 28 U.S.C. § 1292. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025). As relevant here, a delay in hearing or ruling on a preliminary injunction motion that establishes an urgent need for expedited consideration can constitute an appealable order that "effectively denie[s]" injunctive relief. *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1449–50 (9th Cir. 1992). And courts have found that *sua sponte* consideration to transfer instead of ruling on a pending motion for preliminary injunction despite the movant's "diligence in seeking to expedite briefing and consideration, and its repeated requests for a ruling by specific dates," can constitute an effective denial of injunction relief. *E.g.*, *In re Fort Worth Chamber of Com.*, 100 F.4th at 534–35.

Here, Plaintiffs have diligently and repeatedly sought expedited consideration of their Preliminary Injunction Motion. In efforts to avoid filing their litigation altogether, Plaintiffs first sought guidance from Defendants for months, first in writing, then during a conference between counsel—yet Defendants provided no substantive response. *See* Dkt. 23-1, Brass Decl. ISO Mot. Prelim. Inj. ¶¶ 4–7. Plaintiffs then filed their Complaint and Motion for Preliminary Injunction within a week of receiving the DOJ's cease-and-desist letters and requested a hearing date of September 19, 2025. *See* Dkt. 1, Compl. Ex. B at 1 (DOJ letter dated Aug. 7, 2025); Dkt No. 23, Pls' Prelim. Inj. Mot. Since then, Plaintiffs have continued to assert their need for urgent consideration of their Preliminary Injunctive Motion in their opposition to Defendants' motion for an extension of time, *see*

Dkt. No. 52; in this response to the Court's show cause order; and in a motion to expedite consideration of their Preliminary Injunction Motion, filed contemporaneously herewith. Plaintiffs have acted with dispatch, and their requested ruling by October 31, 2025 should not be delayed.

Defendants, by contrast, have consistently sought delay. They declined to agree to any of Plaintiffs' proposed schedules and instead filed a motion for an extension of time. *See* Dkt. No. 50. And although the United States has since intervened in this case, Plaintiffs' injuries are unique from those of the United States. Unlike the United States, Plaintiffs are private parties that—absent emergency injunctive relief—will be imminently required to comply with California's unlawful emissions standards or risk facing sanctions merely because they complied with the federal government's cease-and-desist letter. Plaintiffs are already suffering irreparable harm, and their urgent need for injunctive relief by October 31, 2025 is not made any less acute by the United States' intervention. And absent a ruling by that date, Plaintiffs will suffer further irreparable harm and may be forced to seek appellate relief.

The other private and public factors confirm that transferring this case would not serve the interest of justice or convenience of the parties. Plaintiffs chose this forum to *avoid* any delays in having to litigate the antecedent questions of venue and personal jurisdiction. Defendants reside in and operate out of Sacramento, which is within this Court's jurisdiction; this Court has personal jurisdiction over Defendants and venue is proper (which the CARB Defendants conceded merely weeks ago in another action). Defendant Cliff, in his capacity as Executive Officer of CARB, has alleged that the Clean Truck Partnership was negotiated in and is enforced—along with California's preempted emissions standards—within this Court's jurisdiction. *Am. Free Enter. Chamber of Com.*, No. 3:24-cv-50504, Dkt. No. 126, Def. Cliff's Mot. to Dismiss, at 9, 14. As for the public factors, Plaintiffs sought primarily equitable relief on questions of law and did not seek a jury trial, so no juries would be burdened or unburdened by transfer. And there are no witnesses or evidence located in the Northern District, so there is no benefit of transfer in terms of convenience for witnesses or the location of evidence.

As noted above, this Court accordingly may not transfer this case to the Norther District without the consent of all parties. 28 U.S.C. § 1404(a). Defendants have not affirmatively consented to this

action being transferred, see Dkt. No. 61, Defs.' Resp. to Order to Show Cause, at 2, and even if Defendants were to seek such a transfer, Plaintiffs do not consent to transfer and would not consider consenting to transfer until this Court rules on their pending Preliminary Injunction Motion, which requests urgent relief.

If this Court does decide to transfer this case, this case should not be consolidated with *California v. United States*, No. 4:25-cv-04966-HSG (N.D. Cal. filed June 12, 2025). Plaintiffs here are private parties seeking urgent injunctive relief against Defendants' attempts to force compliance with California's unlawful emissions standards—a significantly different collection of harms and interests than any currently represented in that action. Rather, in *California*, State Plaintiffs raise a host of constitutional and statutory claims unrelated to these specific harms. None of the named Defendants in this case are named parties in *California*. And no parties in *California* have sought injunctive relief, whereas Plaintiffs here have pursued immediate relief. *See* Dkt. 23, Pls.' Prelim. Inj. Mot., at 14–17. And apart from the motions to intervene, no substantive motions have been filed or substantive hearings scheduled since that case was filed on June 12, 2025. Consolidation of the actions would further delay the resolution of Plaintiffs' motion for preliminary injunctive relief and compound Plaintiffs' ongoing irreparable injuries.

## CONCLUSION

For all these reasons, Plaintiffs had good cause to file this action in the Eastern District of California, and the Section 1404(a) factors militate against transfer.

Dated: August 29, 2025

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

 /s/ Benjamin Wagner
BENJAMIN WAGNER, State Bar No. 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:   650.849.5395
Facsimile:    640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:   415.393.8293

|   |   |   |
|---|---|---|
| 1 | | Facsimile: 415.393.8306 |
| | | RBrass@gibsondunn.com |
| 2 | | STACIE B. FLETCHER, *pro hac vice* |
| 3 | | MIGUEL A. ESTRADA, *pro hac vice* |
| | | VERONICA J.T. GOODSON, SBN 314367 |
| 4 | | 1700 M Street, N.W. |
| | | Washington, D.C. 20036-4504 |
| 5 | | Telephone: 202.955.8500 |
| | | Facsimile: 202.467.0539 |

SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

**LATHAM & WATKINS LLP**

/s/ Robin M. Hulshizer
(as authorized Aug. 29, 2025)
ROBIN M. HULSHIZER, SBN 158486
ARTHUR FOERSTER, *pro hac vice*
KEVIN M. JAKOPCHEK, *pro hac vice*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com
BELINDA S. LEE, SBN 199635
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*

**CLIFFORD CHANCE LLP**

/s/ Joseph A. Ostoyich
(as authorized Aug. 29, 2025)
JOSEPH A. OSTOYICH, *pro hac vice*
WILLIAM LAVERY, *pro hac vice*
STEVE NICKELSBURG, *pro hac vice*
DANIELLE MORELLO, *pro hac vice*
DOROTHEA R. ALLOCCA, *pro hac vice*
2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com
dodi.allocca@cliffordchance.com

**ILLOVSKY GATES & CALIA LLP**

EUGENE ILLOVSKY, SBN 117892
KEVIN CALIA, SBN 227406
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: 415.500.6643
Eugene@illovskygates.com
Kevin@illovskygates.com

*Attorneys for Plaintiff PACCAR Inc*

**TROUTMAN PEPPER LOCKE LLP**

/s/ Jeffrey M. Goldman
(as authorized Aug. 29, 2025)
JEFFREY M. GOLDMAN, SBN 233840
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213.928.9800
Facsimile: 213.928.9850

Gibson, Dunn & Crutcher LLP

12

PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-02255-DC

jeffrey.goldman@troutman.com

T. SCOTT MILLS, SBN 313554
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:   404.885.3000
Facsimile:    404.885.3900
scott.mills@troutman.com

JEREMY HEEP, *pro hac vice*
DANIEL J. BOLAND, *pro hac vice*
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:   215.981.4000
Facsimile:    215.981.4750
daniel.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North America, LLC*

PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-02255-DC