GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5395
Facsimile: 640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8293
Facsimile: 415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
Facsimile: 202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,<br><br>Defendants,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Plaintiffs-Intervenors. | CASE NO. 2:25-cv-02255-DC<br><br>**DECLARATION OF DANIEL POTTER IN SUPPORT OF PLAINTIFF DAIMLER TRUCK NORTH AMERICA'S MOTION FOR ADMINISTRATIVE RELIEF TO EXPEDITE HEARING**<br><br>Judge: Hon. Dena Coggins<br>Action Filed: August 11, 2025 |

I, Daniel Potter, pursuant to 28 U.S.C. § 1746, state and declare:

1. I am over eighteen years of age. If called to testify in this matter, I can and will competently testify to the following facts, of which I have personal knowledge, personal experience, and personal participation in communications with business associates.

2. I am a resident of Ann Arbor, Michigan.

3. I have worked at Daimler Truck North America ("DTNA") or an affiliate since 2008. I am a Manager of Compliance and Regulatory Affairs at DTNA, a position I have held since 2019. Prior to this position, I worked for DTNA or its affiliates as a contract engineer on performance and emissions engineering (2008-2011), as a project engineer leading the engine diagnostics team (2011-2016), and as a senior engineer leading the fuel systems software team (2016-2019).

4. I attended Lawrence Technological University, from which I received a B.S.E. in mechanical engineering, with a concentration in automative engineering.

5. DTNA, through its affiliated companies like Detroit Diesel Corporation, is a leading provider of medium- and heavy-duty engines and vehicles. For simplicity, I will refer to these together as "heavy-duty trucks." Through my job, I have significant experience with and knowledge of the processes to obtain regulatory approval before selling new heavy-duty trucks in the United States. These regulatory approvals are known as "certification."

6. Certification is valid for one model year, which typically begins on January 1 of the calendar year for which the model year is named, and ends on December 31 of that year (e.g., model year 2026 begins on January 1, 2026 and ends on December 31, 2026). This means that DTNA is currently building model year 2025 trucks and will begin delivering model year 2026 trucks after January 1, 2026.

7. As outlined in the Complaint in this case, the Clean Air Act prohibits the California Air Resources Board ("CARB") from requiring that new vehicles or engines have a certification issued by CARB prior to sale, unless the U.S. EPA has granted CARB a preemption waiver for its emissions standards applicable to those types of vehicles or engines. Compl., Dkt. 1, ¶ 33. It is my understanding that CARB currently does not have a waiver for its emissions standards that apply to model year 2025 and subsequent heavy-duty trucks. Compl., Dkt. 1, ¶ 72-77.

8. On August 25, 2025, CARB issued Manufacturers Advisory Correspondence ECCD-2025-08, https://perma.cc/75HP-7T5R (the "August 25 MAC"). *See also* Request for Judicial Notice ISO Pls.' Mot. for Prelim. Inj., Ex. 2, Dkt. 58-2. The August 25 MAC asserts that manufacturers must obtain a CARB certification before selling "model year 2025 and subsequent model year[]" vehicles in California. August 25 MAC at 1, 2. It then outlines multiple CARB certification "pathways." August 25 MAC at 2.

9. First, CARB encourages manufacturers to obtain certification under regulations that have been preempted by Congressional disapprovals or the Clean Truck Partnership, saying that only manufacturers who pursue this type of certification "will have confidence that they are in compliance with their obligations under CARB's regulations." August 25 MAC at 2. However, on August 7, 2025, the U.S. Department of Justice ("DOJ") directed DTNA to stop complying with "the Clean Truck Partnership and its preempted state vehicle emission regulations" in a cease-and-desist letter. Compl. Ex. B at 3. These positions by DTNA's regulators seem in conflict.

10. Next, CARB offers two "alternative pathways" to certification. The first "alternative pathway" is that manufacturers can apply for "CARB certification to" previous emissions standards. August 25 MAC at 2. For heavy-duty tailpipe emissions standards, though, CARB points to a standard that is not the version of the regulation on the books in California right now. CARB states that certification would be to "California's 2007 and Subsequent Model Year On-Highway Heavy-Duty Engines and Vehicles Regulation." In the current California Code of Regulations, the tailpipe emissions standards for heavy-duty trucks are at title 13, section 1956.8. Omnibus Low NOx changed section 1956.8 so that emissions standards that previously applied for "2007 and subsequent" vehicles and engines ended in model year 2023. This is shown in the table on page 5 of CARB's final regulation order for Omnibus Low NOx. CARB, Final Regulation Order, Title 13, https://perma.cc/R2AM-FWGS. In other words, the August 25 MAC cites a regulation that sunset as a result of Omnibus Low NOx.

11. The second "alternative pathway" is to submit EPA certifications to CARB, which CARB will then use as the basis to issue its own certification. But even requiring this much is contrary to the Clean Air Act. In attempting to understand what DTNA can do, I have reviewed the United States' joinder to the Plaintiffs' Preliminary Injunction Motion in this case, and I understand that the

United States takes the position that CARB's statement in the August 25 MAC that certification is required for lawful sales in California contradicts federal law. *See* Intervenor-Pls.' Joinder in Pls.' Mot. for Prelim. Inj., Dkt. 57 at 1 n. 1 ("The guidance purports to require ongoing certification of new vehicles by the state, in contravention of federal law." (citing 42 U.S.C. § 7543(a) ("No State shall require certification ...")))). Even if CARB is leveraging federal certification to grant its own certification, CARB is still imposing the burden of applying and paying for CARB certification on DTNA. DTNA should be free to sell products that comport with federal law anywhere in the United States without any approvals by CARB.

12. Finally, the August 25 MAC declares that CARB "reserves its right to enforce" the preempted regulations retroactively if a court later invalidates the Congressional resolutions that revoked the prior waivers. August 25 MAC at 3. This includes a threat of enforcement if a manufacturer follows the "alternative pathways" that CARB itself proposes in the August 25 MAC. August 25 MAC at 3.

13. The August 25 MAC chills DTNA's ability to sell trucks now by threatening this type of retroactive enforcement for model year 2025 vehicle sales. Model year 2025 DTNA trucks are on dealer lots across the State of California and California customers are still able to order model year 2025 products. Because CARB explicitly mentioned model year 2025 in the August 25 MAC, it is unclear whether offering, selling, or delivering model year 2025 trucks that comply with current federal law but not CARB's preempted standards—that is, trucks certified by EPA but not by CARB—will expose DTNA to fines if the law changes later. This is true even if DTNA were to submit a model year 2025 EPA certification to CARB as the basis for a CARB certification: the August 25 MAC makes clear that CARB might retroactively enforce against manufacturers that don't follow the preempted standards even if the manufacturer has an "alternative pathway" certification. August 25 MAC at 3.

14. This week, since the August 25 MAC was issued, end customers and dealers alike have contacted DTNA with questions about whether EPA-only certified trucks can be sold, delivered, or registered in California, including for model year 2025. Those questions have been relayed to me by our sales and marketing teams. My understanding is that customers hesitate to buy trucks without complete information about what products DTNA can offer and what regulations apply to those

products. The August 25 MAC undermines DTNA's ability to answer those questions with confidence, which is detrimental to DTNA's customer and dealer relationships and goodwill.

15. DTNA is also running out of time to mitigate harm related to model year 2026. In its usual practice, if CARB's regulations had not been preempted by intervening federal action, DTNA would already have submitted model year 2026 applications to CARB by this point in the calendar year to ensure timely certification for the new model year's products. Without regulatory clarity before October 31, 2025—the last business day 60 days before model year 2026 begins and well past the date DTNA would normally submit certification applications—DTNA will be forced to choose between three bad options, all of which are harmful to our business. First, we could apply for CARB certification, incurring unrecoverable certification costs and potentially contradicting the federal government. Second, we could plan to forgo model year 2026 sales in California, damaging sales and longstanding customer and dealer relationships. Third, we could plan to sell EPA-certified model year 2026 vehicles in California, risking retroactive enforcement and unfavorable state regulatory treatment.

16. CARB's August 25 MAC exacerbates rather than resolves the uncertainty for model years 2025 and 2026. By insisting on illegal certification pathways and threatening retroactive enforcement in direct defiance of federal law and directives, CARB is making it impossible for DTNA to give customers confidence about truck sales and registrations in California. This ongoing uncertainty harms DTNA's ability to serve customers *today*, let alone in the next model year. To meet customers' needs, DTNA needs certainty that we can offer trucks that comply with federal law anywhere in the United States without the need for CARB approval or the threat of CARB enforcement.

17. The information in this declaration regarding DTNA's customers, sales strategies, and plans and timing for certification is current, confidential, competitively sensitive business information. We would not disclose it publicly or to our competition in the ordinary course of business.

18. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 29, 2025.

_____
Daniel Potter