# Exhibit A22



EC00430



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C. 20460**

OFFICE OF POLICY

**February 20, 2025**

**TO:**     The Honorable JD Vance
President of the Senate
The Capitol, S-212
Washington, D.C. 20510

**FROM:**   U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW 1803A
Washington, DC 20460

Dear Mr. Vice President,

As required by the Small Business Regulatory Enforcement and Fairness Act of 1996, I am enclosing four final rules issued by EPA that are subject to congressional review procedures. Please note, zero of these rules are designated as major while the other rules are designated as non-major under the terms of the Act.

We have also enclosed the required report that incorporates a concise general statement relating to the document. The report also indicates EPA's compliance with relevant statutes and executive orders, as applicable.

If you have any questions regarding this submission, please feel free to contact me at 202-564-2855.

Sincerely yours,

Caryn Muellerleile
Director
Regulatory Management Division

> OFFICIAL COMMUNICATION
> Received On
>
> **FEB 2 0 2025**
>
> in the Office of the
> President of the Senate

Enclosures

**1**

**TITLE(S) OF DOCUMENTS:**

1. (12000-02-OW) - West Virginia Underground Injection Control (UIC) Program; Class VI Primacy
2. (12226-03-R8) - Utah: Final Authorization of State Hazardous Waste Management Program Revisions and Incorporation by Reference; Withdrawal of Direct Final Rule
3. (12514-01-OCSPP) - Bacillus thuringiensis Cry1B.34 Protein; Exemption from the Requirement of a Tolerance
4. (12526-01-OCSPP) - Bacillus thuringiensis strain EX 297512 in Pesticide Formulations; Exemption from the Requirement of a Tolerance





**DOCUMENT FOR CONGRESSIONAL REVIEW UNDER THE SMALL BUSINESS REGULATORY ENFORCEMENT FAIRNESS ACT OF 1996**

**Date of Document**: February 20, 2025

1. **Name of Agency:** U.S. Environmental Protection Agency

2. **Office:** Office of Policy

3. **Action Title:** Utah:  Final Authorization of State Hazardous Waste Management Program Revisions and Incorporation by Reference; Withdrawal of Direct Final Rule

4. **Concise, General Statement of the Document:** In the rule

5. **Other Unique Identifier:**  (12226-03-R8)

6. **This rule is:** Final Rule

7. **Statutory Authorization**: Statutory authority is §§ 2002(a), 3306, and 7004(b) of the Solid Waste Disposal Act, as amended [42 USC 6912(a), 6926, 6974(b)].

8. **Major Rule under CRA**: No

9. **Proposed Effective Date**: Date of Publication in the Federal Register.

   **Compliant with 5 U.S.C. §801(a)(3)(A)**: Yes.

A. **Cost/Benefit Analysis Prepared**: N/A

B. **a. Certification under 5 U.S.C. §605(b):** N/A

   **b. Preparation of FRFA under 5 U.S.C. §604(a):** N/A

C. **Written Statement under §202 of the Unfunded Mandates Reform Act:** N/A

D. **Written Statement under the Administrative Pay-As-You-Go Act of 2023:** N/A

E. **Public Comments Solicited:** N/A

   40 CFR 104486

F. **Information Collection under the Paperwork Reduction Act:** N/A

G. **Discussion of Executive Order 12866**: N/A

   **Discussion of Executive Order 13132:** N/A

   **Other Executive Order or Administrative Statute requirements:** N/A

**ENVIRONMENTAL PROTECTION AGENCY**

6560-50-P

**40 CFR Parts 271 and 272**

**[EPA-R08-RCRA-2024-0408; FRL-12226-03-R8]**

**Utah: Final Authorization of State Hazardous Waste Management Program Revisions and Incorporation by Reference; Withdrawal of Direct Final Rule**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Withdrawal of direct final rule.

**SUMMARY:** Due to the receipt of adverse comments, the Environmental Protection Agency (EPA) is withdrawing the direct final rule, "Final Authorization of State Hazardous Waste Management Program Revisions and Incorporation by Reference," published on December 23, 2024.

**DATES:** As of **[insert date of publication in the Federal Register]**, the EPA withdraws the direct final rule published at 89 FR 104435, on December 23, 2024.

**FOR FURTHER INFORMATION CONTACT:** Moye Lin, Land, Chemicals and Redevelopment Division, EPA Region 8, 1595 Wynkoop Street, Denver, Colorado 80202–1129; telephone number: (303) 312-6667, email address: *lin.moye@epa.gov*.

**SUPPLEMENTARY INFORMATION:** On December 23, 2024, the EPA published a direct final rule (89 FR 104435). We stated in that direct final rule that if we received adverse comments during the comment period, the direct final rule would not take effect, and we would publish a timely withdrawal in the *Federal Register*.

The EPA is withdrawing the direct final rule, Utah: Final Authorization of State Hazardous Waste Management Program Revisions and Incorporation by Reference, published on December 23, 2024, at 89 FR 104435, which intended to revise the codification of Utah's

1

authorized hazardous waste program incorporated by reference at 40 CFR 272.2251. The EPA stated in the direct final rule that if the EPA received comments that opposed this action, the EPA would publish a timely notice of withdrawal in the *Federal Register*. Since the EPA did receive adverse comments, the EPA is withdrawing the direct final rule. The EPA will address all comments in a subsequent final rule based on the proposed rule previously published on December 23, 2024, at 89 FR 104486. The EPA will not provide for additional public comment during the final rule action.

**List of Subjects**

*40 CFR Part 271*

Environmental protection, Administrative practice and procedure, Confidential business information, Hazardous waste, Hazardous waste transportation, Indian lands, Intergovernmental relations, Penalties, Reporting and recordkeeping requirements.

*40 CFR Part 272*

Environmental protection, Hazardous materials transportation, Hazardous waste, Incorporation by reference, Intergovernmental relations, Water pollution control, Water supply.


Dated:  February 12, 2025


Mark A. Smith,
Acting Regional Administrator, Region 8.


Accordingly, as of **[insert date of publication in the Federal Register]**, the EPA withdraws the direct final rule amending 40 CFR parts 271 and 272, which published at 89 FR 104435, on December 23, 2024.

2

**6**



EC00431



### UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
### WASHINGTON, D.C. 20460

OFFICE OF POLICY

**February 20, 2025**

TO:      The Honorable JD Vance
         President of the Senate
         The Capitol, S-212
         Washington, D.C. 20510

FROM:    U.S. Environmental Protection Agency
         1200 Pennsylvania Ave., NW 1803A
         Washington, DC 20460

Dear Mr. Vice President,

As required by the Small Business Regulatory Enforcement and Fairness Act of 1996, I am enclosing four final rules issued by EPA that are subject to congressional review procedures. Please note, zero of these rules are designated as major while the other rules are designated as non-major under the terms of the Act.

We have also enclosed the required report that incorporates a concise general statement relating to the document. The report also indicates EPA's compliance with relevant statutes and executive orders, as applicable.

If you have any questions regarding this submission, please feel free to contact me at 202-564-2855.

Sincerely yours,

Caryn Muellerleile
Director
Regulatory Management Division

Enclosures

OFFICIAL COMMUNICATION
Received On

**FEB 20 2025**

In the Office of the
President of the Senate



**DOCUMENT FOR CONGRESSIONAL REVIEW UNDER THE SMALL BUSINESS REGULATORY ENFORCEMENT FAIRNESS ACT OF 1996**

**Date of Document**: February 20, 2025

1. **Name of Agency:** U.S. Environmental Protection Agency
2. **Office:** Office of Policy
3. **Action Title:** West Virginia Underground Injection Control (UIC) Program; Class VI Primacy
4. **Concise, General Statement of the Document:** In the rule
5. **Other Unique Identifier:** (12000-02-OW)
6. **This rule is:** Final Rule
7. **Statutory Authorization**: SDWA sections 1422 and 1450, 42 U.S.C. sections 300h-1 and 300j-9
8. **Major Rule under CRA**: No
9. **Proposed Effective Date**: 30 Days after Date of Publication in the Federal Register.
   **Compliant with 5 U.S.C. §801(a)(3)(A)**: Yes.
A. **Cost/Benefit Analysis Prepared**: N/A
B. **a. Certification under 5 U.S.C. §605(b):** Yes
   **b. Preparation of FRFA under 5 U.S.C. §604(a):** N/A
C. **Written Statement under §202 of the Unfunded Mandates Reform Act:** Yes
D. **Written Statement under the Administrative Pay-As-You-Go Act of 2023:** N/A
E. **Public Comments Solicited:** Yes
   89 FR 93538
F. **Information Collection under the Paperwork Reduction Act:** No
G. **Discussion of Executive Order 12866**: Yes
   **Discussion of Executive Order 13132:** Yes
   **Other Executive Order or Administrative Statute requirements:** Yes

6560-50-P

## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 147**

**[EPA-HQ-OW-2024-0357; FRL 12000-02-OW]**

**West Virginia Underground Injection Control (UIC) Program; Class VI Primacy**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The U.S. Environmental Protection Agency (EPA or the Agency) is approving an application from the State of West Virginia (the State) to revise the State's Safe Drinking Water Act (SDWA) section 1422 underground injection control (UIC) program to include Class VI injection well primary enforcement authority (primacy). This final rule allows the West Virginia Department of Environmental Protection (WVDEP) to issue UIC permits for geologic carbon sequestration facilities as Class VI wells and ensure compliance of Class VI wells under the UIC program. The EPA will remain the permitting authority for all well classes in Indian lands within the State and will also oversee West Virginia's administration of its UIC Class VI program as authorized under SDWA.

**DATES:** This final rule is effective on **[INSERT DATE 30 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER]**. The incorporation by reference of certain material listed in this rule is approved by the Director of the Federal Register as of **[INSERT DATE 30 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER]**. For judicial purposes, this final rule is promulgated as of **[INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER]**.

1

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA-HQ-OW-2024-0357. All documents in the docket are listed on the *http://www.regulations.gov* website. Although listed in the index, some information is not publicly available, e.g., confidential business information (CBI) or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available electronically through *http://www.regulations.gov*.

**FOR FURTHER INFORMATION CONTACT:** Colin Dyroff, Drinking Water Infrastructure Development Division, Office of Ground Water and Drinking Water (4606M), Environmental Protection Agency, 1200 Pennsylvania Ave. NW, Washington, DC 20460; telephone number: (202) 564-3149; or Himanshu Vyas, Water Division, Source Water & UIC Section (3WD22), Environmental Protection Agency, Region 3, Four Penn Center, 1600 JFK Boulevard, Philadelphia, PA 19103; telephone number: (215) 814-2112. Both can be reached by emailing *WVClassVI@epa.gov*.

**SUPPLEMENTARY INFORMATION:**

**Table of Contents**

I. Introduction
    A. UIC Program and Primary Enforcement Authority (Primacy)
    B. Class VI Wells Under the UIC Program
    C. West Virginia UIC Program
    Final Rule
II. Legal Authorities
III. West Virginia's Application for Class VI Primacy
    A. Background
    B. Public Participation Activities Conducted by West Virginia
    C. Summary of the EPA's Comprehensive Evaluation
    D. Public Participation Activities Conducted by the EPA
IV. Public Comments and the EPA's Response

2

**11**

A. Public Comments
B. The EPA's Response to Comments
V. The EPA's Action
A. Incorporation by Reference
B. Class I-V Codification—No Action
VI. Statutory and Executive Orders Reviews
A. Executive Order 12866: Regulatory Planning and Review
B. Paperwork Reduction Act (PRA)
C. Regulatory Flexibility Act (RFA)
D. Unfunded Mandates Reform Act (UMRA)
E. Executive Order 13132: Federalism
F. Executive Order 13175: Consultation and Coordination with Indian Tribal Governments
G. Executive Order 13045: Protection of Children from Environmental Health and Safety Risks
H. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use
I. National Technology Transfer and Advancement Act (NTTAA)
J. Congressional Review Act (CRA)
VII. References

# I. Introduction

## A. UIC Program and Primary Enforcement Authority (Primacy)

The SDWA protects public health by regulating the nation's public drinking water supply, including both surface and groundwater sources. The SDWA requires the EPA to develop requirements for effective state and Tribal UIC programs to prevent underground injection of fluids (such as water, wastewater, brines from oil and gas production, and carbon dioxide) from endangering underground sources of drinking water (USDWs). In general, USDWs are aquifers or parts of aquifers that supply a public water system or contain enough groundwater to supply a public water system. *See* 40 CFR 144.3.

The UIC program regulates various aspects of an injection well project. These include technical aspects throughout the lifetime of the project from site characterization, construction, operation, and testing and monitoring through site closure, as well as

3

permitting, site inspections, reporting, and enforcement to ensure well owners and operators comply with UIC regulations.

SDWA section 1421 directs the EPA to establish requirements that states, territories, and federally recognized Tribes (hereafter referred to as primacy applicants) must meet to be approved for primary enforcement responsibility or "primacy" for implementing a UIC program, including a Class VI program. A primacy applicant seeking primacy under SDWA section 1422 for a Class VI program must demonstrate to the EPA that the primacy applicant's Class VI program meets the Federal requirements, including requirements for permitting, technical criteria and standards for injection wells, compliance evaluation programs, and enforcement authority, and is protective of USDWs. A primacy applicant agency must also demonstrate jurisdiction over underground injection and the administrative, civil, and criminal enforcement authorities required by the SDWA and EPA regulation. After the EPA approves a primacy applicant for UIC primacy, the primacy applicant's UIC program may be revised with EPA approval. *See* 40 CFR 145.32. When an applicant that already has primacy under SDWA section 1422 seeks to add Class VI primacy to its existing program, the application and review process takes the form of a program revision.

The EPA conducts a comprehensive technical and legal evaluation of each primacy application to assess and confirm that the proposed program meets Federal regulatory requirements and to evaluate the effectiveness of the primacy applicant's proposed program. The EPA likewise conducts a comprehensive evaluation of a proposed revision to an existing UIC program, particularly a revision as substantial as adding Class VI primacy. West Virginia's Class VI application included the following elements: West

4

Virginia's Class VI-related UIC statutes and regulations; documents describing West Virginia's public participation process when adopting its proposed Class VI program; a letter from the Governor of West Virginia requesting Class VI primacy; a Program Description that explains how the State intends to carry out its Class VI responsibilities; a state Attorney General's Class VI statement of enforcement authority; an interagency Memorandum of Agreement between the West Virginia Department of Environmental Quality and the West Virginia Geologic and Economic Survey (WVGES); an interagency Memorandum of Agreement between the West Virginia Department of Environmental Quality and the West Virginia Department of Health; and an amended addendum to the existing UIC Memorandum of Agreement between the EPA and West Virginia describing the administration, implementation, and enforcement of the West Virginia's Class VI program.

### B. Class VI Wells Under the UIC Program

Class VI wells are used to inject carbon dioxide into deep rock formations for the purpose of long-term underground storage, also known as geologic sequestration. The geologic sequestration of carbon dioxide through UIC Class VI wells is used in carbon capture and storage to prevent carbon dioxide emissions from industrial sources from reaching the atmosphere. Class VI injection wells are regulated under an existing, rigorous SDWA permitting framework that protects USDWs.

The UIC Class VI program provides multiple safeguards that work together to protect USDWs and human health. Owners or operators that wish to inject carbon dioxide underground for the purpose of geologic sequestration must demonstrate that their injection well and related injection activities will meet all UIC regulatory requirements

5

**14**

and receive a Class VI permit for each injection well. The UIC Class VI program requires permit applicants to meet strict technical, financial, and managerial requirements to obtain a Class VI permit, including:

- Site characterization to ensure the geology in the project area will contain the carbon dioxide within the zone where it will be injected;

- Modeling to delineate the predicted area influenced by injection activities through the lifetime of operation;

- Evaluation of the delineated area to ensure all potential pathways for fluid movement have been identified and addressed through corrective action;

- Well construction requirements that ensure the Class VI injection well will not leak carbon dioxide;

- Testing and monitoring throughout the life of the project, including after carbon dioxide injection has ended. Requirements include, for example, testing to ensure physical integrity of the well, monitoring for seismic activity near the injection site, monitoring of injection pressure and flow, chemical analysis of the carbon dioxide stream that is being injected, and monitoring the extent of the injected carbon dioxide plume and the surrounding area (e.g., ground water) to ensure the carbon dioxide is contained as predicted.

- Operating requirements (for example, injection pressure limitations) to ensure the injection activity will not endanger USDWs or human health;

- Financial assurance mechanisms sufficient to cover the costs for all phases of the geologic sequestration project including the post-injection site care period and until site closure has been approved by the permitting authority;

6

**15**

- Emergency and remedial response plans;

- Reporting of all testing and monitoring results to the permitting authority to ensure the well is operating in compliance with all permit and regulatory requirements.

The UIC permitting authority ensures that these protective requirements are included in each Class VI permit. A draft of each Class VI permit is made available to the public for comment before the decision is made whether to issue a final permit.

*C. West Virginia UIC Program*

The State of West Virginia received primacy for Class I, III, IV, and V injection wells under SDWA section 1422 and for Class II injection wells under SDWA section 1425 on December 9, 1983 (48 FR 55127). On May 1, 2024, West Virginia applied to the EPA under section 1422 of SDWA for primacy for Class VI injection wells located within the State, except those located on Indian lands.

*D. Final Rule*

In this final rule, the EPA is approving West Virginia's application because the EPA has determined that the application meets all applicable requirements for approval under SDWA section 1422 and the EPA's implementing regulations, and the State is capable of administering a Class VI program in a manner consistent with the terms and purposes of SDWA and applicable UIC regulations. The EPA will remain the permitting authority for all UIC well classes on Indian land within the State, including Class VI wells, and will also oversee West Virginia's administration of the State's UIC Class VI program as authorized under SDWA.

**II. Legal Authorities**

This final rule is issued under authority of SDWA sections 1422 and 1450, 42

7

U.S.C. sections 300h-1 and 300j-9.

Section 1421 of SDWA requires the Administrator of the EPA to promulgate Federal requirements for effective state or Tribal UIC programs to prevent underground injection activities that endanger USDWs. Section 1422 of SDWA establishes requirements for states and Tribes seeking EPA approval of their UIC programs. It also requires that states and Tribes seeking approval demonstrate how the state or Tribe has adopted (after public notice) and will implement a UIC program which meets the requirements that the EPA promulgated under section 1421.

For states and Tribes that seek approval of UIC programs under section 1422 of SDWA and those seeking EPA approval of revisions to existing state and Tribal UIC programs, the EPA has promulgated regulations setting forth the applicable procedures and substantive requirements codified in 40 CFR parts 144, 145 and 146. 40 CFR part 144 outlines general program requirements that each state or Tribe must meet to obtain primary enforcement authority. 40 CFR part 145 specifies the procedures the EPA will follow in approving, revising, and withdrawing state or Tribal programs and outlines the elements and provisions that a state or Tribe must include in its application for primacy. 40 CFR part 145 also identifies requirements for state permitting programs (including by reference to certain provisions of 40 CFR parts 124 and 144), compliance evaluation programs, enforcement authority, and sharing of information between the EPA and the state. 40 CFR part 146 contains the technical criteria and standards applicable to each well class, including Class VI wells.

### III. West Virginia's Application for Class VI Primacy

*A. Background*

8

17

On May 1, 2024, West Virginia submitted to the EPA a program revision application to add Class VI wells to the State's existing SDWA section 1422 UIC program. The UIC program revision package from West Virginia included a description of the State's UIC Class VI program, copies of all applicable rules and forms, a statement of legal authority, a summary and results of West Virginia's public participation activities, an amended addendum to the existing Memorandum of Agreement (MOA) between West Virginia and the EPA's Region 3 office, an interagency MOA between the WVDEP and the WVGES, and an interagency MOA between the WVDEP and the West Virginia Department of Health. The EPA reviewed the application for completeness and performed a technical evaluation of the application materials.

### B. Public Participation Activities Conducted by West Virginia

On June 23, 2021, the WVDEP posted a notice of public comment period on its website for a proposed action to revise West Virginia Code of State Rules 47CSR13 to add new regulations for Class VI wells and to update the State's existing Class I-V regulations. The WVDEP held a public comment period from June 23, 2021 to July 23, 2021 and held a virtual public hearing on July 23, 2021. The WVDEP received 55 comments, 19 of which commented on Class VI wells. These comments did not result in changes to the proposed regulatory revisions. The effective date for this rule revision was March 9, 2022.

Then, on June 12, 2023, the WVDEP posted a notice of public comment period on its website for another proposed action to make additional updates to the State's Class I-VI regulations in 47CSR13 of the West Virginia Code of State Rules. The WVDEP held a public comment period from June 12, 2023 to July 18, 2023 and held a public

9

**18**

hearing on July 18, 2023 in Charleston, WV. The WVDEP received five comments, all of which related to Class VI wells. These comments did not result in changes to the proposed updates to the regulations. The effective date for this rule revision was April 5, 2024.

Commenters on the WVDEP's proposed rulemakings shared concerns on various topics including permit applicant financial burden, fees, the area of review radius, post-injection site care, and seismic activity reviews. Commenters also expressed concern about whether the WVDEP has adequate staffing and technical expertise to properly manage a UIC Class VI program. The WVDEP responded to all public comments and provided various clarifications. The WVDEP also explained that its Class VI team would be composed of technical specialists with expertise in geology, well construction, and UIC inspections. Additionally, the WVDEP responded that the rule revisions were adopted to be consistent with Federal requirements and that its primary objective is to protect underground sources of drinking water, groundwater, and surface water. Documentation of West Virginia's public participation activities, including comments received and responses by the WVDEP, can be found in the EPA's Docket ID No. EPA-HQ-OW-2024-0357.

### C. Summary of the EPA's Comprehensive Evaluation

The EPA conducted a comprehensive technical and legal evaluation of West Virginia's Class VI primacy application to assess and confirm that the State's UIC Class VI program is as stringent as required by the Federal regulations and evaluated the effectiveness of the State's Class VI program. To be approved for Class VI primacy under SDWA section 1422, a state or Tribe must have a UIC program that meets Federal

requirements (40 CFR parts 124, 144, 145, and 146). The EPA evaluated West Virginia's Class VI UIC program, including the relevant statutes and regulations, against these Federal requirements. The EPA worked with West Virginia to address any stringency issues with its Class VI statutes and regulations prior to submittal of the Class VI primacy application. The EPA also evaluated for stringency and effectiveness West Virginia's Class VI program description, the Class VI Attorney General's statement, the amended Class VI addendum to the MOA between the EPA and West Virginia, the interagency MOA between the WVDEP and the West Virginia Geologic and Economic Survey, and the interagency MOA between the WVDEP and the West Virginia Department of Health.

The EPA evaluated West Virginia's Class VI program description against 40 CFR 145.23, which lists all the information to be submitted as part of a program description. The EPA's evaluation of the Class VI program description included reviewing the scope, structure, coverage, processes, and organizational structure of the WVDEP. The EPA evaluated the WVDEP's permitting, administrative, and judicial review procedures, as well as the State's proposed Class VI permit application, reporting, and manifest forms. The EPA also reviewed the State's compliance evaluation and enforcement mechanisms. The EPA evaluated the WVDEP's proposed schedule for issuing Class VI permits within the first two years after program approval. The EPA required West Virginia to demonstrate that the State's Class VI program will have adequate in-house staff (including the number, occupations, and general duties of the employees) or access to contractor support for technical areas including site characterization, modeling, well construction and testing, financial responsibility, and regulatory and risk analysis.

The EPA evaluated West Virginia's Class VI Attorney General's statement

11

**20**

against 40 CFR 145.24 to ensure it met Federal requirements. The Attorney General's statement is required to ensure that a state's top legal officer affirms that state statutes, regulations, and judicial decisions demonstrate adequate authority to administer the UIC Class VI program as described in the Class VI program description and consistent with the EPA's regulatory requirements for UIC programs. The EPA independently evaluates and confirms that the Attorney General's statement certifies that the state either does not have environmental audit privilege and/or immunity laws, or, if there are environmental audit privilege and/or immunity laws, that they will not affect the ability of the state to meet the enforcement and information gathering requirements under the SDWA.

The EPA evaluated West Virginia's amended Class VI MOA addendum against 40 CFR 145.25 to ensure it met Federal requirements. The MOA is the central agreement setting the provisions and arrangements between the State and the EPA concerning the administration, implementation, and enforcement of the State UIC program. The EPA's evaluation includes ensuring that the MOA contains the necessary provisions pertaining to agreements on coordination, permitting, compliance monitoring, enforcement, and EPA oversight. For example, the amended Class VI MOA addendum specifies that the WVDEP and the EPA agree to maintain a high level of cooperation and coordination to assure successful and efficient administration of the UIC Class VI program.

The EPA reviewed the WVDEP's interagency MOA with the WVGES. The WVGES is a West Virginia agency with expertise to provide information to the WVDEP on local geologic characteristics in relation to proposed underground injection operations. The interagency MOA between the WVDEP and the WVGES establishes a coordinated relationship between the two state agencies to properly assess geological characteristics

12

**21**

in a proposed work area to support WVDEP permit determinations. The EPA also reviewed the WVDEP's interagency MOA with the West Virginia Department of Health (WVDOH). This interagency MOA specifies, among other provisions, that the WVDOH will conduct a review of the proposed area of work and permit application details and provide input to assist in WVDEP permit determinations.

The EPA is aware that stakeholders have raised concern about geologic sequestration long term liability transfer provisions enacted in West Virginia and other states. The EPA reviewed the West Virginia statutory provision relating to long-term liability transfer (W. Va. Code Sec. 22-11B-12) and determined that it does not undermine any protections afforded to USDWs under the Safe Drinking Water Act. Under the West Virginia long-term liability transfer provision, all Class VI regulatory and permit requirements must be met before liability transfer may occur. Consistent with EPA regulations, West Virginia imposes extensive post-injection monitoring—a default of 50 years—and site closure requirements at the end of a Class VI well's life cycle to ensure that there will be no endangerment to USDWs. Only after these requirements are met does West Virginia's long-term liability transfer provision allow a limited transfer of any future liability to a state-administered and industry-funded trust fund. Among other additional limitations, the provision is explicit that it does not relieve any owner or operator from any liability that arises from noncompliance with UIC laws, regulations or permits; it does not apply if the WVDEP determines that there is fluid migration for which the operator is responsible that threatens imminent and substantial endangerment to a USDW; it must be implemented in a manner that does not interfere with the State's authority to immediately and effectively restrain any person from engaging in any

13

unauthorized activity which is endangering or causing damage to public health or the environment; and it cannot interfere with the EPA's emergency authority under SDWA section 1431.

West Virginia has demonstrated that it has the legal authority to implement and will administer its Class VI program in conformance with permitting requirements as stringent as those found in 40 CFR 145.11 for Class VI permits. West Virginia's UIC Class VI permitting provisions are as stringent as the EPA's permitting regulations in 40 CFR parts 124 and 144. The State has incorporated necessary procedures required by 40 CFR 145.12 to support a robust Class VI compliance evaluation program. Additionally, WVDEP has the necessary administrative, civil, and criminal enforcement authorities required by 40 CFR 145.13. West Virginia's Class VI regulations regarding permitting, inspection, operation, and monitoring meet Federal requirements found in 40 CFR parts 145 and 146. West Virginia's reporting and recordkeeping requirements for Class VI wells meet Federal requirements found in 40 CFR 144.54 and 146.91.

### D. Public Participation Activities Conducted by the EPA

On November 27, 2024, the EPA published a proposed rulemaking in the *Federal Register* (89 FR 93538) to approve the State of West Virginia's application to implement a UIC program for Class VI injection wells within the State. The proposal established a public comment period that closed on December 30, 2024. The EPA held a public hearing on December 30, 2024 in Charleston, West Virginia that participants could attend in-person and virtually, as well as by phone. The EPA published notice of the hearing on the EPA's website and in 4 major local newspapers in West Virginia. The EPA received oral comments from 13 people.

14

## IV. Public Comments and the EPA's Response

### A. Public Comments

Following publication of the proposed rulemaking, the EPA accepted public comments from November 27, 2024 to December 30, 2024. The EPA received 9,012 comments on the proposal from individuals and organizations representing a wide range of stakeholders, including from individual citizens, energy and industry groups, environmental non-governmental organizations, a member of the United States Congress, and others. Of the comments received on the proposal, 8,962 were from mass mailing campaigns. In general, the EPA received comments from stakeholders that supported and opposed primacy approval.

Each unique comment received for the proposal was considered in the development of this final rule. Copies of unique individual comments are available as part of the public record and can be accessed through the EPA's docket (ID No. EPA-HQ-OW-2024-0357). Documentation of the EPA's public participation activities, including comments received and the EPA's comment response document can also be found in the docket (ID. No. EPA-HQ-OW-2024-0357).

### B. The EPA's Response to Comments

The EPA received comments both supporting and opposing UIC Class VI primacy approval. Commenters in support of Class VI primacy approval asserted that the EPA's evaluation was thorough and the EPA's proposed approval of West Virginia's primacy application was appropriate as these commenters stated that West Virginia satisfied all applicable statutory and regulatory standards for EPA approval. Commenters opposing Class VI primacy approval were concerned about the length of the EPA's public

15

comment period, the EPA's primacy approval process, WVDEP staffing for its Class VI program, transfer of long-term liability, Class II injection and oil and gas regulations, and other topics. Additionally, commenters expressed concerns about topics that the EPA determined to be outside the scope of this primacy approval action, including general concerns about the safety of geologic sequestration, a state statute concerning sequestered $CO_2$ and the term "pollutant," a state statute concerning pore space rights, subsurface long-term effects of carbon dioxide injection, well corrosion, post-injection monitoring requirements in the EPA's Class VI Rule, and past mining effects on subsurface conditions in West Virginia. The EPA has noted and addressed all topics, including out-of-scope topics, in the Agency's response to comment document. Some commenters interpreted the EPA's proposed rulemaking as incorporating by reference into the Code of Federal Regulations (CFR) certain provisions of West Virginia law, such as the provisions referenced above concerning the definition of the term "pollutant" and pore space rights, among other provisions raised by commenters. In response to these comments, the EPA is expressly excluding these provisions from the Agency's incorporation by reference. See section V.A of this preamble and the comment response document for more information.

**V. The EPA's Action**

*A. Incorporation by Reference*

In this action, the EPA is approving a revision to the State of West Virginia's UIC Program for primacy for regulating Class VI injection wells in the State, except for those located on Indian lands. The West Virginia statutes and regulations incorporated by reference in this final rule are publicly available in the EPA's Docket No. EPA-HQ-OW-

16

**25**

2024-0357. This action amends 40 CFR 147.2450 and incorporates by reference EPA-approved state statutes and regulations that contain UIC standards, requirements, and procedures applicable to Class VI owners or operators. Any such provisions incorporated by reference, as well as all permit conditions or permit denials issued pursuant to such provisions, are enforceable by the EPA pursuant to section 1423 of SDWA and 40 CFR 147.1(e). The EPA will continue to administer the UIC program for Class I, II, III, IV, V, and VI injection wells on Indian lands.

The EPA is incorporating by reference the West Virginia statutes and regulations that contain UIC requirements applicable to owners or operators of Class VI wells as a compilation titled "EPA-approved West Virginia SDWA section 1422 Underground Injection Control Program Statutes and Regulations for Well Class VI," dated January 10, 2025. This compilation is incorporated by reference into 40 CFR 147.2450 and is available at *www.regulations.gov* in the docket for this final rule. The EPA has also codified a table in 40 CFR 147.2450 listing the EPA-approved West Virginia Statutes and Regulations for Well Class VI. While the West Virginia regulations in 47CSR13 contain requirements for all UIC well classes (i.e., Class I-VI), only the requirements applicable to owners or operators of Class VI wells are incorporated by reference as part of this action. In response to comments, the EPA is updating this compilation and corresponding table in 40 CFR 147.2450 to expressly exclude certain provisions of West Virginia law. The EPA is incorporating by reference only those state statutes and regulations that are within the scope of coverage required under the Federal UIC regulations. 40 CFR 145.1(g)(2). For further information, see the EPA's comment response document (ID. No. EPA-HQ-OW-2024-0357).

The EPA will oversee West Virginia's administration of its Class VI program and will continue to oversee West Virginia's administration of its programs for Class I, II, III, IV, and V wells. The EPA will require quarterly reports on non-compliance and annual UIC performance reports pursuant to 40 CFR 144.8. The amended MOA addendum between the EPA and West Virginia, signed by the Regional Administrator on October 9, 2024, articulates that the EPA will oversee the State's administration of the UIC Class VI program on a continuing basis to assure that such administration is consistent with the program MOAs, UIC grant agreements, and all applicable requirements embodied in current regulations and Federal law. In addition, the amended MOA addendum provides that the EPA may request specific information including Class VI permits.

*B. Class I-V Codification—No Action*

As detailed in the preamble of the proposed rulemaking, for reasons that current EPA staff were unable to ascertain, when the EPA approved West Virginia's Class I-V UIC program in 1983 (48 FR 55127, December 9, 1983), the CFR was not revised to reflect the EPA's approval, and the CFR currently does not reflect West Virginia's Class I-V primacy. The EPA is not addressing this CFR discrepancy as part of this action. The current action is confined to approving a revision to West Virginia's existing UIC primacy program to approve the State for primacy over Class VI wells; it is not addressing other well classes. Separately, the EPA is working with West Virginia to assess the State's current Class I-V program elements and expects to codify in the CFR the State's Class I-V program in 2025 as part of a separate action.

# VI. Statutory and Executive Orders Reviews

Additional information about these statutes and Executive orders can be found at:

18

27

*https://www.epa.gov/laws-regulations/laws-and-executive-orders.*

### A. Executive Order 12866: Regulatory Planning and Review

This action is exempt from review under Executive Order 12866 because the Office of Management and Budget (OMB) has exempted, as a category, the approval of state UIC programs.

### B. Paperwork Reduction Act (PRA)

This action does not impose an information collection burden under the PRA. OMB has previously approved the information collection activities contained in the existing regulations and has assigned OMB control number 2040-0042. Reporting or recordkeeping requirements will be based on West Virginia's Class VI UIC Regulations, and the State of West Virginia is not subject to the PRA.

### C. Regulatory Flexibility Act (RFA)

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. This action does not impose any new requirements on small entities. It simply approves and codifies West Virginia's UIC Class VI program, which meets the same standard under SDWA section 1422 as is required for the EPA's direct implementation of a UIC Class VI program.

### D. Unfunded Mandates Reform Act (UMRA)

This action does not contain an unfunded mandate as described in UMRA, 2 U.S.C. 1531-1538, and does not significantly or uniquely affect small governments. This action imposes no enforceable duty on any state, local, or Tribal governments or the private sector. The EPA's approval of West Virginia's Class VI program will not constitute a Federal mandate because there is no requirement that a state establish UIC

19

regulatory programs and because the program is a state, rather than a Federal program.

*E. Executive Order 13132: Federalism*

This action does not have federalism implications. It does not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government.

*F. Executive Order 13175: Consultation and Coordination with Indian Tribal Governments*

This action does not have Tribal implications as specified in Executive Order 13175. This action contains no Federal mandates for Tribal governments and does not impose any enforceable duties on Tribal governments. Thus, Executive Order 13175 does not apply to this action.

*G. Executive Order 13045: Protection of Children from Environmental Health and Safety Risks*

The EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of "covered regulatory action" in section 2-202 of the Executive Order. This action is not subject to Executive Order 13045 because it approves a state program.

*H. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use*

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

20

**29**

*I. National Technology Transfer and Advancement Act (NTTAA)*

This action does not involve technical standards.

*J. Congressional Review Act (CRA)*

This action is subject to the CRA, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

## VII. References

Attorney General's Statement "Attorney General's Statement to Accompany West Virginia's Underground Injection Program Class VI Primacy Application," signed by the General Counsel of the West Virginia Department of Environmental Protection, April 29, 2024.

Class VI Underground Injection Control Program Description "WV Class 6 Program Description", June 2024.

Email from West Virginia to EPA related to Class I-V program revision, April 22, 2024.

Letter from Governor of West Virginia to Regional Administrator, EPA Region III, April 25, 2024.

Memorandum of Agreement Amended Addendum 1 between the State of West Virginia and the EPA, Region III for the UIC Class VI Program, signed by the EPA Regional Administrator on October 9, 2024.

Federal Register Notice "West Virginia Department of Natural Resources; Underground Injection Control Program Approval", EPA, 48 FR 55127-55128 (December 9, 1983).

Memorandum of Agreement between the State of West Virginia and the EPA, Region III, signed by the EPA Regional Administrator on August 31, 1983.

21

**30**

Memorandum of Agreement Between The West Virginia Department of Environmental

Protection and The West Virginia Department of Health, signed April 26, 2024.

Memorandum of Agreement Between The West Virginia Department of Environmental

Protection and The West Virginia Geological and Economic Survey, signed April 29,

2024.

Program Description "Program Description for the West Virginia Underground Injection

Control Program", December 1983.

State of West Virginia. Notice of Action Taken by Legislative Rule-Making Review

Committee, December 9, 2021.

State of West Virginia. Notice of Action Taken by Legislative Rule-Making Review

Committee, September 13, 2023.

State of West Virginia. Notice of Public Comment Period and Hearing, June 12, 2023.

State of West Virginia. Notice of Public Comment Period and Hearing, June 23, 2021.

State of West Virginia. Public Comments and Responses, July 24, 2023.

State of West Virginia. Public Comments and Responses, July 30, 2021.

State of West Virginia. Public Hearing Transcript (Public Hearing Date: July 23, 2021),

July 31, 2021.

State of West Virginia. Public Hearing Transcript (Public Hearing Date: July 18, 2023),

August 12, 2023.

West Virginia Code Sec. 22-11. Water Pollution Control Act. May 13, 2024.

West Virginia Code Sec. 22-11A. Carbon Dioxide Sequestration Pilot Program. May 20,

2022.

West Virginia Code Sec. 22-11B. Underground Carbon Dioxide Sequestration and

Storage. May 13, 2024.

West Virginia Code of State Rules Sec. 47-13. Underground Injection Control. April 5, 2024.

**List of Subjects in 40 CFR Part 147**

Environmental protection, Incorporation by reference, Indian lands, Intergovernmental relations, Reporting and recordkeeping requirements, Water supply.

**Lee Zeldin,**

*Administrator.*

23

**32**

For the reasons set forth in the preamble, the EPA amends 40 CFR part 147 as follows:

## PART 147—STATE, TRIBAL, AND EPA-ADMINISTERED UNDERGROUND INJECTION CONTROL PROGRAMS

1. The authority citation for part 147 continues to read as follows:

Authority: 42 U.S.C. 300f *et seq.*; and 42 U.S.C. 6901 *et seq.*

2. Add § 147.2450 to read as follows:

### § 147.2450 State-administered program—Class VI Wells

The UIC program for Class VI wells in the State of West Virginia, except those on Indian lands, is the program administered by the West Virginia Department of Environmental Protection, approved by the EPA pursuant to SDWA section 1422. The effective date of this program is **[INSERT DATE 30 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER]**. The UIC program for Class VI wells in the State of West Virginia, except those located on Indian lands, consists of the following elements, as submitted to the EPA in the State's program revision application.

(a) *Incorporation by reference.* The UIC requirements applicable to owners or operators of Class VI wells set forth in the State statutes and regulations approved by the EPA for including in "EPA-Approved West Virginia SDWA section 1422 Underground Injection Control Program Statutes and Regulations for Well Class VI," dated January 10, 2025, and listed in table 1 to this paragraph (a), are hereby incorporated by reference and made a part of the applicable UIC program under the SDWA for the State of West Virginia. The Director of the Federal Register approves this incorporation by reference in accordance with 5 U.S.C. 552(a) and 1 CFR part 51. Copies of the State of West Virginia's statutes and regulations that are incorporated by reference may be inspected at

24

33

the U.S. Environmental Protection Agency, Region 3, Four Penn Center, 1600 JFK Blvd., Philadelphia, PA 19103 and the U.S. Environmental Protection Agency, Water Docket, EPA Docket Center (EPA/DC), EPA WJC West, Room 3334, 1301 Constitution Ave. NW, Washington, DC 20004. If you wish to obtain materials from the EPA Regional Office, please call (215) 814-2816, or from the EPA Headquarters Library, please call the Water Docket at (202) 566-2426. You may also view this material at the National Archives and Records Administration (NARA). For information on the availability of this material at NARA, visit *www.archives.gov/federal-register/cfr/ibr-locations* or email fr.inspections@nara.gov. You may also obtain the State of West Virginia's statutes and regulations that are incorporated by reference from: Room MB-27, Building 1, State Capitol Complex, Charleston, West Virginia 25305; phone: (304) 347-4836; website: *www.wvlegislature.gov.*

**Table 1 to Paragraph (a)—EPA-Approved West Virginia SDWA Sec. 1422 Underground Injection Control Program Statutes and Regulations for Well Class VI**

| State Citation | Title/subject | State effective date | EPA approval date |
|---|---|---|---|
| West Virginia Code § 22-11 | Water Pollution Control Act | May 13, 2024 | [INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER] |
| West Virginia Code § 22-11A | Carbon Dioxide Sequestration Pilot Program | May 30, 2022 | [INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER] |
| West Virginia Code § 22-11B, except exclude § 22-11B-8(a), § 22-11B-9(a), § 22-11B-12(e)(1)–(3), | Underground Carbon Dioxide Sequestration and Storage | May 13, 2024 | [INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER] |

25

**34**

| 22-11B-18, and 22-11B-19 | | | |
|---|---|---|---|
| West Virginia Code of State Rules § 47-13 | Underground Injection Control | April 5, 2024 | [INSERT DATE OF PUBLICATION IN THE FEDERAL REGISTER] |

(b) *Memorandum of Agreement (MOA).* (1) The Memorandum of Agreement between the State of West Virginia and the EPA, Region III, signed by the EPA Regional Administrator on August 31, 1983; and (2) Memorandum of Agreement Amended Addendum 1 between the State of West Virginia and the EPA, Region III for the UIC Class VI Program, signed by the EPA Regional Administrator on October 9, 2024.

(c) *Letter from Governor.* Letter from Governor of West Virginia to Regional Administrator, EPA Region III, April 25, 2024.

(d) *West Virginia Memoranda of Agreement.* (1) Memorandum of Agreement Between The West Virginia Department of Environmental Protection and The West Virginia Geological and Economic Survey, signed April 29, 2024; and (2) Memorandum of Agreement Between The West Virginia Department of Environmental Protection and The West Virginia Department of Health, signed April 26, 2024.

(e) *Statement of legal authority.* Attorney General's Statement, "Attorney General's Statement to Accompany West Virginia's Underground Injection Program Class VI Primacy Application," signed by the Attorney General of West Virginia on April 29, 2024.

(f) *Program Description.* The Program Description, "Program Description for the West Virginia Underground Injection Control Program," December 1983, and any other materials submitted as part of the application or amendment thereto, and the Class VI

26

**35**

Underground Injection Control Program Description, "WV Class 6 Program Description", June 2024, and any other materials submitted as part of the program revision application or as amendment thereto.