# Exhibit A23



EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

THE DIRECTOR

June 18, 2025

Gene Dodaro
Comptroller General
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20226

> **Re:** **Post-CRA Resolutions Response to GAO's March 6, 2025 "Observations Regarding the Environmental Protection Agency's Submission of Notices of Decision on Clean Air Act Preemption Waivers as Rules Under the Congressional Review Act"**

Dear Mr. Comptroller General:

Late last month, the Senate voted in favor of three joint House resolutions (which by then had passed the House)[1] invalidating three waivers of preemption granted by EPA to California.[2] The analysis below buttresses Congress's legal conclusions ***both*** to substantively override those waivers ***and*** to deem the waivers to be rules subject to the Congressional Review Act ("CRA") in the first place.

More specifically, this letter provides the Office of Management and Budget's ("OMB's") response to a March 6, 2025 Government Accountability Office ("GAO") letter concerning application of the CRA to these three waivers. In preparing this letter, I have consulted with the Office of Information and Regulatory Affairs ("OIRA"), which has a statutorily assigned role in the CRA process and reports to me as part of OMB.

OMB strongly disagrees with GAO's analysis (styled as a set of "Observations") for numerous reasons falling into two basic categories—GAO's lack of authority in this area ***and*** GAO's flawed administrative law analysis of how to classify when an agency action is deemed a rule versus an adjudication. I turn first to the four reasons why GAO exceeded its authority:

---

[1] *See* H.J. Resolutions 87, 88, and 89, *available at* https://www.congress.gov/bill/119th-congress/house-joint-resolution/87; https://www.congress.gov/bill/119th-congress/house-joint-resolution/88; and https://www.congress.gov/bill/119th-congress/house-joint-resolution/89 (last visited June 17, 2025).
[2] *See* 90 Fed. Reg. 643 (Jan. 6, 2025); 90 Fed. Reg. 642 (Jan. 6, 2025); 68 Fed. Reg. 20,688 (Apr. 6, 2023).

## I.  GAO'S LACK OF POWER IN THIS AREA

*First, GAO has no legal role whatsoever* in deciding whether an action the Executive Branch submits to Congress for consideration under the Congressional Review Act ("CRA") is a "rule" or an "adjudication." That role is assigned instead to the Administrator of OIRA (see below for additional details) and ultimately Congress.

*Second*, GAO *also has no expertise in this area*, whereas OIRA routinely reviews federal actions to determine their character, consistency with law, and whether they meet the basic tests of rationality, such as producing net benefits or net costs, and at what level. *See Michigan v. EPA*, 576 U.S. 743, 750 (2015); *see also* Executive Order 12,866, 58 Fed. Reg. 51,735 (Sept. 30, 1993). When performing zone-of-interests analysis, for instance, the Supreme Court considers agency expertise to be a relevant prudential factor.[3] Just so here. As a prudential matter, GAO's non-expert Observations were properly not be credited by Congress and should not be in the future because GAO lacks expertise in this area, being an agency with a different assigned role.

*Third*, GAO has reached the opposite conclusion in the past. Indeed, as Comptroller, you *conceded* both the lack of a GAO role here and that GAO's Observations took an unprecedented legal position when being questioned recently by Representatives Valadao (CA) and Moore (WV).[4]

*Fourth, and worst of all, GAO's "Observations" functionally attempt to interfere with the democratic process.* Members of Congress should decide for themselves whether to apply the CRA to a particular action of the Executive Branch, not GAO. If Congress had wanted GAO to have a gatekeeping role over application of the CRA, Congress would have said so in clear terms. The silence in the statute on this point is telling. And Congress's enactment of the joint resolutions of disapproval represents an express rejection of GAO's actions.

\* \* \* \* \*

OIRA is the Executive Branch's central authority for reviewing federal regulations and thus has considerable expertise in reviewing federal agency action. OIRA has statutory responsibility for determining whether an agency action is a "major rule" within the meaning of the Congressional Review Act ("CRA" or "the Act"). *See* 5 U.S.C. § 804(2). Part of that role is to parse whether an action is a "rule" at all. Given this statutory role and based as well on OIRA's experience, I explain in detail below OMB's affirmative determination that the waivers are "rules" subject to the CRA.

As GAO notes, in granting those waivers, the prior Administration summarily asserted that the actions at issue are not subject to the Act. But following the change in Administration, EPA's new Administrator reassessed the agency's evaluation and

---

[3] *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 226–27 (2012) (considering Department of Interior regulations when resolving a zone-of-interests dispute); *Federal Defenders of N.Y. v. Federal Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) (same as to federal BOP regulations). Zone-of-interests analysis constitutes a prudential jurisdictional analysis. *See Bennett v. Spear*, 520 U.S. 154, 162 (1994). We argue by analogy here that GAO lacks the congressional equivalent of jurisdiction over the CRA question at issue.
[4] *See* Hearing Before the House Committee on Appropriations, Subcommittee on the Legislative Branch, 119th Congress (Apr. 7, 2025), *available at* http://appropriations.house.gov/schedule/hearings/budget-hearing-government-accountability-office-congressional-budget-office-and (last visited June 17, 2025).

concluded that the waivers are best characterized as rules of general applicability within the meaning of the Act.[5]

Like Congress, OMB agrees with EPA Administrator Zeldin that the waivers are rules of general applicability subject to the CRA. And regardless, even if the question were close (which it is not), it was prudent for the EPA Administrator to submit the waivers to Congress out of an abundance of caution and out of deference to Congress's role in our constitutional Republic. This common agency practice obviates any advisory role for GAO.[6] Indeed, EPA has previously sent a prior action revoking a Clean Air Act preemption provision to Congress and that action remains listed on GAO's own website as a "final rule."[7]

OMB therefore believes that no additional information was necessary for Congress to discharge its legislative role, or for GAO to discharge its *ad hoc* advisory role. As GAO through a prior general counsel once testified before the Senate, the Act does not give GAO power "to decide what a rule is."[8] As GAO further explained in its March 6, 2025 letter concerning these waivers, *see* B-337179, GAO does not even "normally issue a legal decision" when an agency submits an action for review. *Id.* at 1. Indeed, OMB is unaware of GAO ever doing so before now. *See also supra* n.4.

As GAO notes in its letter to congressional requesters, "GAO does not issue formal decisions on actions that agencies have submitted to Congress as rules under the CRA because that submission generally obviates the need for a GAO decision on the matter." *Id.* at 1 n.3.[9] Hence, that should have marked the conclusion of GAO's involvement.

In its March informal letter to congressional requesters, however, GAO nevertheless departed from its longstanding practice and opined (albeit informally) that the submitted waivers were not rules of general applicability, citing a prior GAO opinion about a different waiver and claiming that the same legal analysis would apply to these three submitted waivers. *See* B-337179 at 7. GAO also claims that EPA has not explained

---

[5]     "The Biden Administration failed to send rules on California's waivers to Congress, ***preventing Members of Congress from deciding on extremely consequential actions that have massive impacts and costs across the entire United States.*** The Trump EPA is transparently correcting this wrong and rightly following the rule of law," said Administrator Zeldin.

EPA, Press Release, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirements* (Feb. 14, 2025), *available at* https://www.epa.gov/newsreleases/trump-epa-transmit-california-waivers-congress-accordance-statutory-reporting (last visited June 17, 2025) (emphasis added). GAO's footnote 15 in its Observations simply reflects the prior Administration's attempt to sidestep CRA review of California waiver decisions, relying on Biden-era EPA *Federal Register* notice from 2023 and a so-called "midnight" rule issued on January 6, 2025—precisely the kind of rule that the CRA was especially designed to place under Congress's watchful eye.
The position we take here is also consistent with that of the Small Business Administration's Office of Advocacy. *See* Advocacy Submits Comments on EPA Waiver Request for California Locomotive Regulation (Apr. 23, 2024), *available at* https://advocacy.sba.gov/2024/04/23/advocacy-submits-comments-on-epa-waiver-request-for-california-locomotive-regulation/ (last visited June 17, 2025) ("The Clean Air Act allows other states to implement California's standards once they are finalized. Advocacy is concerned that the ability of other states to potentially implement the In-Use Locomotive Rule ***turns a state regulation into a de facto national regulation.*** Advocacy is concerned that California's proposed rule will disproportionately harm small locomotives [and] small businesses nationwide who rely on the country's rail system.") (emphasis added).
[6] *See, e.g.,* EC-5696, 170 Cong. Rec. S5883 (Sept. 9, 2024) (EPA "does not believe that the enclosed actions is [*sic*] a 'rule' within the meaning of 5 U.S.C. 804(3). Nevertheless, out of an abundance of caution, EPA is voluntarily submitting the action 'to each House of the Congress and the Comptroller General,' for their review under 5 U.S.C. 801(a).").
[7] *See* Government Accountability Office, *The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program, FRL-10000-45,* https://www.gao.gov/fedrules/196015 (adopting EPA's description of a 2019 waiver decision as a "final rule.").
[8] *Tongass Land Management: Joint Hearings Before the S. Comm. On Energy and Nat. Res. and H. Comm. On Res.,* 105th Cong. 20 (1977).
[9] *See also Internal Revenue Service: Applicability of the Congressional Review Act to Revenue Procedure 2018-38,* B-330376 (Nov. 30, 2018).

why it disagrees with GAO. This letter provides the Executive Branch's response to GAO.

## II.  GAO'S FLAWED ADMINISTRATIVE LAW ANALYSIS

In OMB's view, GAO's opinion overlooks and misrepresents important aspects of how preemption waivers under the Clean Air Act work under Section 209(b) of that statute as a matter of administrative law.

GAO's foundational claim is that a waiver of preemption is an "order" (by which it appears to mean something like a "license" particular to California, though GAO does not actually reach that conclusion) and thus is not a "rule" of general applicability. In the alternative, GAO claims that, if the waiver is a rule, it is one of particular applicability. OMB disagrees with both of these claims for five reasons.

*First*, GAO's conclusion that the waivers are "orders" is inconsistent with judicial decisions interpreting the Administrative Procedure Act, which forms the basis for the CRA's definition of a "rule."[10] Courts have been clear that sub-delegation of regulatory authority to a State—like that accomplished through the waivers—is characteristic of a "rule," not an "order." The seminal case here is *Yesler Terrace Community Council v. Cisneros*, which involved HUD's determination that Washington State's public housing authority could substitute its own eviction procedures for federally required ones. 37 F.3d 442 (9th Cir. 1994). The Ninth Circuit rejected HUD's argument that this was an "order," concluding that HUD's action "has all the hallmarks of a rule. HUD's determination has no immediate, concrete effect on anyone, but merely permitted [the Washington Public Housing Authority] to evict tenants in the future without providing them with informal grievance hearings. At the same time, the determination affected the rights of a broad category of individuals not yet identified." *Id.* at 448.

Moreover, two separate district courts were called on to carefully analyze the Clean Air Act mobile source program including its preemption provision. And the analysis of each parallel OMB's conclusion that California waiver decisions are better classed as rules rather than as orders. *See Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 343 (D. Vt. 2007) ("[O]nce EPA issues a waiver for a California emissions standard" it has "the same stature as a federal regulation."); *Central Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1174 (E.D. Cal. 2007) ("The court can discern no legal basis for the proposition that an EPA-promulgated regulation or standard functions any differently than a California-promulgated and EPA-approved standard or regulation.").

The *Yesler* analysis, as confirmed by the Clean Air Act-specific logic of the *Green Mountain* and *Central Valley* district courts, applies here. The waivers at issue have "no immediate, concrete effect on anyone, but merely permit[]" California (and other States) to enforce different standards "in the future." *Id.* The waivers similarly "affect[] a broad category of individuals not yet identified," including manufacturers that will sell their new vehicles and engines in California or in States that have already adopted, or may in the future adopt, California's standards. *Id.*

---

[10] *See* 5 U.S.C. § 804(3) ("The term 'rule' has the meaning given such term in section 551 [of the Administrative Procedure Act]" with certain exceptions).

*Yesler* also shows why it is irrelevant that EPA styled its waivers as "decision[s]" and initially summarily disclaimed application of the CRA. As the Ninth Circuit explained, "that the manner in which [an agency] made its decision shares certain features with adjudications" is not determinative. *Id.* at 449. "The form of the proceeding is not dispositive, what counts is its *effect*." *Id.* (emphasis added). The waivers, like the HUD determination in *Yesler*, have "legal consequences for yet-to-be-identified individuals only prospectively," *i.e.*, "the effects of a rule, not of an adjudication." *Id.*

GAO curiously cites *Yesler* on page 7 of its analysis, yet seems oblivious to the fact that *Yesler*, as applied here, leads to the opposite outcome than the one which GAO advocates. GAO does not even say anything about why waivers are distinguishable from the delegation of eviction authority at issue in *Yesler*.

*Second*, unlike an ordinary license, a waiver of Section 209(a) Clean Air Act preemption does more than grant California alone an exemption from a prohibition under the Clean Air Act. Under Section 177 of the Clean Air Act, 42 U.S.C. § 7507, a waiver allows every other State in the country to adopt an identical rule without any additional factual showing or contested hearing. As EPA explained in the Advanced Clean Trucks waiver, "[t]his final action will not only affect manufacturers of new heavy-duty vehicles and engines sold in California, but also manufacturers that sell their new heavy-duty vehicles and engines in those states that have already adopted or may choose to adopt California's regulations"—consequently, "this final action is *nationally applicable*."[11]

Currently, 18 States have adopted at least one of California's electric-vehicle standards under Section 177. GAO's claim that a waiver is "particular to California" thus overlooks the most significant part of the entire statutory scheme. GAO's analysis, however, does not address this provision in any form.

Nor did GAO address Section 177's prohibition on creating a "third vehicle" that could lawfully be sold in the United States. Of course, the point of the "third vehicle" prohibition confirms that there are two and only two nationally applicable automobile emissions regimes that can govern in the United States: (1) EPA's federal car standards, unmistakably issued exclusively in the form of regulations; and (2) California's standards, because those standards can "travel" under Section 177 to govern in non-California States without a separate waiver.[12] It makes no sense to imagine that federal-car States are governed via regulations but California-car States are governed by adjudication. And any such argument particularly withers once one realizes that what EPA grants preemption waivers of is California regulations, not California adjudications.

*Third*, a waiver of Section 209(a) Clean Air Act preemption does not simply govern the primary conduct of California and all other Section 177 States. Instead, such a waiver also directly governs the conduct of motor-vehicle manufacturers *nationwide*. Under Section 209(b)(3) of the Clean Air Act, certification and conformance to California's alternative standards "shall be treated as compliance with applicable Federal standards." 42 U.S.C. § 7543(b)(3). Thus, a waiver creates a unique alternative nationwide compliance pathway for motor-vehicle manufacturers that displaces EPA's otherwise applicable federal standards. Again, OMB is not aware of any "adjudicatory order" creating a new interstate regulator that can replace federal standards and govern

---

[11] *See, e.g.*, 88 Fed. Reg. 20,688, 20,725 (Apr. 6, 2023) (emphasis added).
[12] As noted above, EPA does not conduct a separate adjudication applicable to Section 177 State borrowing decisions.

compliance for an entire manufacturing industry across numerous States. Yet GAO's analysis is also mum about this provision.

*Fourth*, GAO asserts that waivers of Section 209(a) Clean Air Act preemption are orders because they have "immediate effect" on California, not prospective effect. It is unclear what GAO means by "immediate effect," but Section 202(a) of the Clean Air Act, 42 U.S.C. § 7521(a), which applies to EPA directly and to waiver decisions as well through Section 209(b)(1)(C), 42 U.S.C. § 7543(b)(1)(C), requires that the waived California rules give motor vehicle manufacturers adequate "lead time," which is typically measured in years, not months. And Section 177(2) also requires at least "two years" of lead time for other States adopting these alternative standards. OMB is aware of no adjudicatory order that requires multiple years of lead time.

True adjudications are inherently retrospective in nature—that is, they describe and establish at that moment in time the law as it always has been, not the law as it is being established prospectively and only for the first time. *See, e.g., Harper v. Virginia Dep't of Tax'n*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."). By contrast, California emissions regulations apply only prospectively, and only after the lapse of the appropriate amount of lead time. Moreover, EPA waivers are inherently prospective. Otherwise, Section 177 States would have no stability—if they could adopt the California-car standards "immediately" after California promulgated the relevant regulations, then a denied EPA waiver would automatically upset the national market for new automobiles and engines.

As the D.C. Circuit has explained, moreover, even in the agency context specifically, forward-looking obligations are a characteristic of rules, while "adjudications immediately bind parties by ***retroactively*** applying law to their past actions." *Safari Club In'tl. v. Zinke*, 878 F.3d 316, 333 (D.C. Cir. 2017) (emphasis added); *see also Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 922 (D.C. Cir. 2013) ("an adjudication must have retroactive effect, or else it would be considered a rulemaking"). Lead time is, of course, inherently forward-looking. Again, however, GAO's analysis does not discuss the Clean Air Act's lead time provisions.

*Fifth*, GAO asserts that waivers of Section 209(a) Clean Air Act preemption involve considerations "of particular facts, as opposed to general policy." Not so. In granting waivers, EPA must address the consistency of the regulations with Section 202(a), EPA's primary regulatory authority for motor vehicles. *See* 42 U.S.C. § 7543(b)(1)(C). In so doing, EPA considers the same policy-laden questions implicated in setting ***by regulation*** the prospective federal emission standards for motor vehicles in the first place. These questions require making predictive policy judgments, not addressing "particular facts." For example, do the California regulations give the industry sufficient lead time to transition to 100% electric vehicles? Are the industry's compliance costs with that lead time "appropriate"? Are the standards "technologically feasible"? 42 U.S.C. § 7521(a)(2). OMB is unaware of any adjudicatory order that requires addressing similarly forward-looking and policy-laden questions about any entire industry's ability to comply. As with the other points made above, however, GAO's analysis is completely silent on the lead-time and technological feasibility aspects of the statutory regime.

\* \* \* \* \*

Because GAO does not address any of these five points, and appears to misunderstand how these Clean Air Act waivers operate, OMB, as the Executive Branch's expert agency for regulatory matters generally, is unpersuaded by GAO's opinion and letter and instead believes that the waivers were and are best characterized as rules of general applicability. But regardless, even if a close call, the EPA Administrator's decision to submit the waivers to promote greater accountability to Congress was reasonable. That practice promotes the kind of agency accountability to Congress that the CRA—and GAO—was created to enhance, not diminish.

It is Congress that is optimally positioned to *decide for itself* when to put rules submitted to it to CRA votes, as it did in considering the three passed House Joint Resolutions 87 through 89. *That is the path that best affords Congress its constitutional role of ensuring representative democracy in our Republic*. In enacting the resolutions of disapproval, Congress emphatically rejected GAO's inappropriate attempt to interfere with Congress's powers under the Constitution and CRA. EPA is thus now barred from issuing any waiver of preemption California seeks that is substantially similar to the three overridden waivers.[13]

Sincerely,

Russell T. Vought
Director

---

[13] *See* 5 U.S.C. 801(b)(2) ("A rule that does not take effect (or does not continue) under paragraph (1) may not be reissued in substantially the same form, and a new rule that is substantially the same as such a rule may not be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule.").