# Exhibit A24

**GAO**

**U.S. GOVERNMENT ACCOUNTABILITY OFFICE**

441 G St. N.W.
Washington, DC 20548

# Decision

**Matter of:** U.S. Department of the Interior, Bureau of Land Management—Applicability of the Congressional Review Act to North Dakota Field Office Record of Decision and Approved Resource Management Plan

**File:** B-337175

**Date:** June 25, 2025

**DIGEST**

The U.S. Department of the Interior, Bureau of Land Management (BLM) issued the *North Dakota Field Office Record of Decision and Approved Resource Management Plan* (North Dakota RMP). The North Dakota RMP replaced the 1988 North Dakota Resource Management Plan and provides directives and guidance for the management of BLM-administered lands across North Dakota.

The Congressional Review Act (CRA) requires that before a rule can take effect, an agency must submit the rule to both the House of Representatives and the Senate, as well as the Comptroller General. CRA adopts the definition of "rule" under the Administrative Procedure Act (APA) but excludes certain categories of rules from coverage. We conclude that the North Dakota RMP meets the APA definition of a rule, and no CRA exception applies. Therefore, the North Dakota RMP is a rule subject to CRA's submission requirements.

**DECISION**

On January 14, 2025, the U.S. Department of the Interior (Interior), Bureau of Land Management (BLM), issued the *North Dakota Field Office Record of Decision and Approved Resource Management Plan* (North Dakota RMP).[1] We received a request for a decision as to whether the North Dakota RMP is a rule for purposes of

---

[1] BLM, *BLM National NEPA Register, Approved Resource Management Plan and Record of Decision*, available at https://eplanning.blm.gov/eplanning-ui/project/1505069/570 (last visited May 1, 2025).

the Congressional Review Act (CRA).[2]  As discussed below, we conclude that the North Dakota RMP is a rule for purposes of CRA.

Our practice when issuing decisions is to obtain the legal views of the relevant agency on the subject of the request.[3]  Accordingly, we reached out to Interior to obtain the agency's views.[4]  We received Interior's response on April 18, 2025.[5]

BACKGROUND

<u>BLM Public Land Management</u>

Under the Federal Land Policy and Management Act of 1976, as amended (FLPMA), BLM is responsible for developing, maintaining, and, when appropriate, revising "land use plans which provide by tracts or areas for the use of the public lands."[6]  BLM land use plans, referred to as "resource management plans" (RMPs), establish goals and objectives to guide future land and resource management actions implemented by BLM.[7]  Pursuant to FLPMA, BLM established procedures for the development, revision, and amendment of RMPs.[8]

The objective of resource management planning is to maximize resource values for the public through a rational, consistently applied set of regulations and procedures which promote the concept of multiple use management.[9]  An RMP generally

---

[2] Letter from Senator John Hoeven, Senator Kevin Cramer, and Representative Julie Fedorchak to Comptroller General (Feb. 14, 2025).

[3] GAO, *GAO's Protocols for Legal Decisions and Opinions*, GAO-24-107329 (Washington, D.C.: Feb. 2024), *available at* https://www.gao.gov/products/gao-24-107329.

[4] Letter from Assistant General Counsel for Appropriations Law, GAO, to Office of the Solicitor, Interior (Mar. 3, 2025).

[5] Letter from Acting Associate Solicitor, Division of General Law, Interior, to Assistant General Counsel for Appropriations Law, GAO (Apr.18, 2025) (Response Letter).

[6] Pub. L. No. 94-579, title II, sec. 202(a), 90 Stat. 2743 (Oct. 21, 1976), 43 U.S.C. § 1712(a)*.*

[7] *Resource Management Planning*, 81 Fed. Reg. 89580 (Dec. 12, 2016).

[8] *See* 43 U.S.C. § 1712(f); 43 C.F.R. part 1600.

[9] 43 C.F.R. § 1601.0-2.  FLPMA defines "multiple use" as "the management of the public lands and their various resource values so that they are utilized in the

(continued...)

establishes land use designations; allowable resource uses, resource conditions, goals, and objectives; program constraints and general management practices; areas to be covered by more specific plans; and other related information.[10]

North Dakota Resource Management Plan

BLM determined that its 1988 North Dakota RMP needed revision to address significant changes in resource conditions, evolving demands for land use, advances in technology, updated policies and program guidance, and the availability of new scientific data since the original RMP was developed in 1988.[11]  On July 28, 2020, BLM issued a notice in the *Federal Register* initiating the process to revise the 1988 North Dakota RMP.[12]

On January 8, 2025, following a comprehensive planning process, including public scoping and comment, data analysis, alternative development, environmental review, stakeholder engagement, and selection of a preferred management approach, BLM approved the North Dakota RMP through a Record of Decision (ROD) incorporated into the document.[13]  The ROD states that it represents the agency's final decision, issued after completing procedures required by FLPMA, environmental reviews in accordance with the National Environmental Policy Act (NEPA), and considering public comments.[14]

The North Dakota RMP provides directives and guidance on how 58,500 acres of BLM-administered surface land and 4.1 million acres of BLM-administered mineral

---

combination that will best meet the present and future needs of the American people. . . ."  This objective aims to ensure "a combination of balanced and diverse resource uses that takes into account the long-term needs of future generations for renewable and nonrenewable resources, including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values. . . ." 43 U.S.C. § 1702(c).

[10] Response Letter, at 1; *see also* 43 C.F.R. § 1601.0-5(n).

[11] 85 Fed. Reg. 45438 (July 28, 2020).

[12] *See Id*.

[13] North Dakota RMP, at 3, 13, and 25.  BLM houses the North Dakota RMP and other relevant documents on its National NEPA Register website.  BLM, *BLM National NEPA Register*, *Documents*, *available at* https://eplanning.blm.gov/eplanning-ui/project/1505069/570 (last visited May 27, 2025).

[14] North Dakota RMP, at 3, 13, and 25.

estate, mostly split estate, across North Dakota will be used and managed over the next 20 years.[15]  More specifically, it establishes various land uses for recreation, motorized vehicles, oil and gas leasing, renewable energy projects, grazing, wildlife habitat protection, and cultural preservation.[16]

Congressional Review Act

CRA, enacted in 1996 to strengthen congressional oversight of agency rulemaking, requires federal agencies to submit a report on each new rule to both houses of Congress and to the Comptroller General for review before a rule can take effect.[17]  The report must contain a copy of the rule, "a concise general statement relating to the rule," and the rule's proposed effective date.[18]  CRA allows Congress to review and disapprove rules issued by federal agencies for a period of 60 days using special procedures.[19]  If a resolution of disapproval is enacted, then the new rule has no force or effect.[20]

CRA adopts the definition of "rule" under the Administrative Procedure Act (APA), which states that a rule is "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency."[21]  However, CRA excludes three categories of rules from coverage:  (1) rules of particular applicability; (2) rules relating to agency management or personnel; and (3) rules of agency organization, procedure, or practice that do not substantially affect the rights or obligations of non-agency parties.[22]

Interior did not submit a CRA report to Congress or the Comptroller General on the North Dakota RMP.[23]  In its response to us, Interior provided additional information

---

[15] 90 Fed. Reg. 3915, 3916 (Jan. 15, 2025).

[16] *See* North Dakota RMP, at 35–95; *see also* 43 C.F.R. § 1601.0-5(n).

[17] 5 U.S.C. § 801(a)(1)(A).

[18] *Id*.

[19] 5 U.S.C. § 802.

[20] 5 U.S.C. § 801(b)(1).

[21] 5 U.S.C. §§ 551(4), 804(3).

[22] 5 U.S.C. § 804(3).

[23] Response Letter, at 1.

about the North Dakota RMP but did not state a position as to whether it is a rule under CRA.[24]

DISCUSSION

To determine whether the North Dakota RMP is a rule subject to review under CRA, we first address whether it meets the APA definition of a rule. As explained below, we conclude that it does. We then consider whether the North Dakota RMP falls within any CRA exceptions. We conclude that it does not. As such, the North Dakota RMP is subject to review under CRA.

<u>The North Dakota RMP is a Rule under APA</u>

Applying APA's definition of rule, the North Dakota RMP meets all of the required elements. First, the North Dakota RMP is an agency statement as it was issued by BLM, a federal agency.[25]

Second, the rule is of future effect as it is to be used to guide the use of the public land for the next 20 years.[26] Decisions made in the North Dakota RMP became effective on January 8, 2025, when the Record of Decision was signed.[27] As of that date, according to BLM, the North Dakota RMP will guide management of BLM-managed public lands in the planning area for the next 15 to 20 years for the benefit of current and future generations.[28] Therefore, the North Dakota RMP has future effect.

Finally, the North Dakota RMP implements, interprets, or prescribes law or policy, because it designates areas of BLM-administered land for certain purposes in accordance with BLM's responsibilities for land use management under FLPMA. The North Dakota RMP establishes a broad framework for land use management, governing approximately 58,500 acres of BLM-administered surface land and 4.1

---

[24] Response Letter, at 1. However, Interior did state that an RMP "is not a final implementation decision on actions that require further plans, process, or decisions". *Id*. at 2.

[25] *See* BLM, *BLM National NEPA Register, Approved Resource Management Plan and Record of Decisions*, available at https://eplanning.blm.gov/eplanning-ui/project/1505069/570 (last visited June 4, 2025); 90 Fed. Reg. 3915 (Jan. 15, 2025); B-329065, Nov. 15, 2017 (finding a similar RMP issued by BLM to be an agency statement).

[26] 90 Fed. Reg. at 3915.

[27] North Dakota RMP, at 13, 25.

[28] 90 Fed. Reg. at 3915.

million subsurface acres of BLM-managed land and minerals across North Dakota.[29] Specifically, it designates various land uses for the public, including recreation, motorized vehicle access, oil and gas leasing, renewable energy development, grazing, wildlife habitat conservation, and cultural preservation.[30]

Our conclusion here is consistent with our previous decisions finding that similar land use plans and RMPs implement, interpret, or prescribe law or policy.[31]  For instance, in B-238859, Oct. 23, 2017, we found that an amendment to the Forest Service's Tongass Land and Resource Management Plan (Tongass Amendment) implemented law by establishing new criteria for the sale of timber to non-agency parties.  We explained that with the Tongass Amendment, the Forest Service set forth its policy for timber sales and thus implemented its statutory responsibility under the National Forest Management Act.[32]

Similarly in B-329065, Nov. 15, 2017, we concluded that four RMPs issued by BLM prescribed policy by establishing available uses for the areas that each RMP covered.  We noted that each RMP implemented provisions of FLPMA and other applicable statutory and regulatory provisions.[33]  The same can be said for the North Dakota RMP as issue here.  The North Dakota RMP implements FLPMA and prescribes policy by designating or foreclosing specific activities or land use on BLM-administer land.  As such, the North Dakota RMP meets the third element of APA's definition of a rule.  Having satisfied all the required elements, the North Dakota RMP meets the APA definition of rule.

CRA Exceptions

We must next determine whether any of CRA's three exceptions apply.  CRA provides for three types of rules that are not subject to its requirements:  (1) rules of particular applicability; (2) rules relating to agency management or personnel; and (3) rules of agency organization, procedure, or practice that do not substantially affect the rights or obligations of non-agency parties.[34]

---

[29] *See* North Dakota RMP, at 3.

[30] *See id.* at 35–95; *see also* 43 C.F.R. § 1601.0-5(n).

[31] *See e.g.*, B-238859, Oct. 23, 2017; B-275178, July 3, 1997; B-274505, Sept. 16, 1996.

[32] B-238859, Oct. 23, 2017.

[33] B-329065, Nov. 15, 2017.

[34] 5 U.S.C. § 804(3).

### (1) Rule of Particular Applicability

Consistent with our previous decisions, the North Dakota RMP is a rule of general applicability, rather than particular applicability. In B-238859, Oct. 23, 2017, the Forest Service proffered that its Tongass Amendment was a rule of particular applicability because it applied to a single national forest. We disagreed, noting that the Tongass Amendment governed all natural resource management activities, all projects approved to take place, and all persons or entities using the forest. As such, it was a rule of general applicability.[35] Likewise, the North Dakota RMP establishes land use designations that govern all activities conducted by any person or entity on BLM-administered land and subsurface estate managed by the North Dakota Field Office, making it a rule of general applicability.

### (2) Rule of Agency Management or Personnel

The North Dakota RMP is not a rule of agency management or personnel. We have previously held that rules that fall into this category relate to purely internal agency matters.[36] Because the North Dakota RMP is concerned with public use of the areas it governs rather than management of BLM itself or its personnel, it does not meet CRA's second exception.

### (3) Rule of Agency Organization, Procedure, or Practice that does not Substantially Affect Non-Agency Parties

Lastly, the North Dakota RMP is not a rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties.[37]

We have previously explained that this exception was modeled on the APA exception to notice-and-comment rulemaking requirements for "rules of agency organization, procedure, or practice[.]"[38] The purpose of the APA exception is to ensure "that agencies retain latitude in organizing their internal operations," so long as such rules do not have a substantial impact on non-agency parties.[39]

---

[35] B-238859, Oct. 23, 2017.

[36] *See, e.g.*, B-335142, May 1, 2024; B-334411, June 5, 2023.

[37] *See* 5 U.S.C. § 804(3)(C).

[38] 5 U.S.C. § 553(b)(A); *see* B-329926, Sept. 10, 2018.

[39] *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980).

Following this interpretation in the CRA context, we have only applied CRA's third exception to rules that primarily focus on the internal operations of an agency.[40]  For instance, in B-329926, Sept. 10, 2018, we found that updates to a Social Security Administration (SSA) hearing manual governing SSA adjudicators' use of information from the internet qualified as a rule of agency organization, procedure, or practice.  There, the manual outlined procedures for SSA employees to follow in processing and adjudicating benefits claims.  Because the manual was directed to and binding only on SSA officials without imposing new burdens on claimants, we concluded that the manual met CRA's third exception.[41]

In contrast, rules that are directed at and primarily concerned with the behavior of non-agency parties do not fall within this category.[42]  Thus, in B-274505, Sept. 16, 1996, we declined to apply CRA's third exception to a Forest Service memorandum on the Emergency Salvage Timber Sale Program, because it was not limited to the Forest Service's methods of operations.  Instead, the memorandum established the standards by which program determinations would be made, thus directly affecting the area for and number of timber sales that would result in contracts.  In essence the memorandum went beyond how the Forest Service organized its internal operations.[43]  Similarly, in B-238859, Oct. 23, 2017, we declined to apply CRA's third exception to the Tongass Amendment, because it was directed at land and resource use by non-agency parties.[44]

Here, the North Dakota RMP does entail some changes to agency procedure as it introduces new internal directives, practices, and procedures necessary to carry out these policies.[45]  However, like the Forest Service memorandum in B-274505 and the Tongass Amendment in B-238859, the North Dakota RMP is not limited to changes in internal agency operations.  Instead, the North Dakota RMP is directed at, and concerns itself primarily with, the behavior of non-agency parties.  Therefore, the North Dakota RMP does not qualify as a rule of agency organization, procedure or practice.

---

[40] *See, e.g.*, B-329916, May 17, 2018.

[41] B-329926, Sept. 10, 2018.

[42] B-335629, July 8, 2024.

[43] B-274505, Sept. 16, 1996.

[44] B-238859, Oct. 23, 2017.

[45] *See* North Dakota RMP, at 15–20, 96–98.

We must also consider whether the North Dakota RMP substantially affects the rights or obligations of non-agency parties.[46]  When analyzing this aspect of CRA's third exception, "the critical question is whether the agency action alters the rights or interests of the regulated entities."[47]  Along similar lines, courts have determined that "[a]n agency rule that modifies substantive rights and interests can only be nominally procedural, and the exemption for such rules of agency procedure cannot apply."[48]

In previous decisions, we have consistently concluded that where an RMP designates use by non-agency parties in the areas it governs, it has a substantial effect.[49]  For instance, in B-275178, July 3, 1997, we reached this conclusion by noting that the Forest Service's RMP provided a "management prescription" giving general direction on what may occur within an area allocated to a particular land use designation.  Similarly, in B-329065, Nov. 15, 2017, we concluded that four BLM RMPs had a substantial effect on non-agency parties where the plans limited the use of public land and prohibited mining and operation of off-highway vehicles in the areas they governed.

Consistent with our caselaw on other RMPs, the North Dakota RMP has a substantial effect on non-agency parties.  Specifically, it governs when and where the public may engage in activities such as recreation, motorized vehicle use, oil and gas leasing, renewable energy development, and grazing, thereby altering their substantive rights and obligations.  Accordingly, the North Dakota RMP fails to meet CRA's third exception.

CONCLUSION

The North Dakota RMP is a rule for purposes of CRA because it meets the definition of a rule under APA and no CRA exception applies.  Therefore, the North Dakota RMP is subject to CRA's requirement that it be submitted to Congress and the Comptroller General before it can take effect.

*Edda Emmanuelli Perez*

Edda Emmanuelli Perez
General Counsel

---

[46] B-336217, Aug. 6, 2024; B-334045, July 5, 2023.

[47] B-329926, Sept. 10, 2018.

[48] *United States Department of Labor v. Kast Metals Corp.*, 744 F.2d 1145, 1153 (5th Cir. 1984).

[49] *See, e.g.,* B-329065, Nov. 15, 2017; B-238859, Oct. 23, 2017; B-275178, July 3, 1997.