ROB BONTA, State Bar No. 202668
Attorney General of California
MYUNG J. PARK, State Bar No. 210866
Supervising Deputy Attorney General
BENJAMIN P. LEMPERT, State Bar No. 344239
DAVID M. MEEKER, State Bar No. 273814
JONATHAN A. WIENER, State Bar No. 265006
M. ELAINE MECKENSTOCK, State Bar No. 268861
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-0299
 Fax:  (510) 622-2270
 E-mail:  Elaine.Meckenstock@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAIMLER TRUCK NORTH AMERICA, LLC, INTERNATIONAL MOTORS, LLC., PACCAR INC., and VOLVO GROUP NORTH AMERICA LLC**, <br><br> Plaintiffs, <br><br> **THE UNITED STATES OF AMERICA;** and **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** <br><br> Plaintiff-Intervenors <br><br> v. <br><br> **CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF**, in his official capacity as the Executive Officer of the California Air Resources Board; and **GAVIN NEWSOM**, in his official capacity as the Governor of California, <br><br> Defendants. | 2:25-cv-02255-DC-AC <br><br> **DECLARATION OF KIMBERLY AYN HEROY-ROGALSKI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION MOTION** <br><br> Courtroom:  8, 13th Floor <br> Judge:  Hon. Dena Coggins <br> Trial Date:  None Set <br> Action Filed:  August 11, 2025 |

I, Kimberly Ayn Heroy-Rogalski, declare as follows:

1. I am Chief of the Mobile Source Regulatory Development Branch at the California Air Resources Board (CARB). This Declaration is based on my personal knowledge, and, if called as a witness, I could and would testify to the statements herein. The following statements are based upon my personal knowledge and upon my review of records kept by CARB in the ordinary course of its business practice. I have personal knowledge of the manner in which CARB's records are kept. Each of the records upon which I rely was made in the ordinary course of business at or near the time of the act, condition, or event. The sources of information at the time of preparation are such that I believe the records to be trustworthy.

2. I have worked in my current position at CARB since 2015. In this role, I lead teams responsible for the development of statewide mobile sources programs and regulations to reduce greenhouse gas and criteria pollutant emissions from on-road and off-road heavy-duty engines and vehicles, including the team that developed the Heavy-Duty Engine and Vehicle Omnibus Regulation (the Omnibus regulation) referenced in the Clean Truck Partnership (CTP). Attached hereto as **Exhibit C1** is a true and correct copy of the CTP.

3. CARB's process of developing the Omnibus regulation—which requires reductions in oxide of nitrogen (NOx) emissions from medium- and heavy-duty vehicles and engines— began as early as 2013, and involved significant collaboration with truck and engine manufacturers (manufacturers).

4. In 2013, the Engine Manufacturers Association d/b/a the Truck and Engine Manufacturers Association (EMA) participated with CARB in an early demonstration program of Low NOx technologies. Beginning in 2016, CARB convened a Heavy-Duty Low NOx working group with more than 150 members, including EMA and representatives from heavy-duty engine manufacturers. Later, in 2019, CARB held three public workshops on future Heavy-Duty Low NOx regulations. CARB staff prepared and shared with manufacturers a white paper about

1

feasible technology and achievable emissions reductions.[1]  In 2021, CARB promulgated the Omnibus regulation, reflecting these years of prior work and collaboration.

5.    CARB also worked cooperatively with manufacturers in developing the Advanced Clean Trucks regulation.  Altogether, CARB held eight public meetings or workshops as it developed and then considered the proposed rule.

6.    In 2021, CARB promulgated Advanced Clean Trucks.

7.    Finally, since 2020, in developing and then advising on the specifics of the Advanced Clean Fleets regulation, CARB has held upwards of 40 public meetings and workshops.[2]  CARB promulgated the Advanced Clean Fleets regulation in 2023.

**THE CLEAN TRUCK PARTNERSHIP**

8.    Based on discussions CARB had with manufacturers in the course of preparing these regulations, CARB understood that some manufacturers remained unsatisfied with aspects of CARB's approach, especially on the issue of lead time, i.e., how long manufacturers would have before compliance deadlines for new standards took effect.  Several manufacturers, in particular, asserted that the Clean Air Act required additional lead time—a fixed amount of four years—before the compliance deadlines in the Omnibus regulation took effect.

9.    On May 27, 2022, EMA filed suit against CARB and its Executive Officer, claiming, among other things, that the Omnibus regulation failed to afford manufacturers the lead time for compliance that EMA asserted the Clean Air Act required.  *See Engine Manufacturers Association v. CARB*, No. 2:22-cv-03663 (C.D. Cal. May 27, 2022).  A true and correct copy of the complaint in that action is attached hereto as **Exhibit C2**.

10.   EMA voluntarily dismissed the suit after EPA noticed an opportunity for public hearing and comment on California's requests for waivers of preemption concerning the Omnibus regulation and Advanced Clean Trucks.  *See* 87 Fed. Reg. 35,765 (June 13, 2022) (Omnibus); 87 Fed. Reg. 35,768 (June 12, 2022) (Advanced Clean Trucks).

---

[1] The white paper is available at CARB's website, here https://ww2.arb.ca.gov/sites/default/files/classic/msprog/hdlownox/white_paper_04182019a.pdf.

[2] *See, e.g.*, Advanced Clean Fleets – Meetings & Events, https://ww2.arb.ca.gov/our-work/programs/advanced-clean-fleets/advanced-clean-fleets-meetings-events (last visited Sept. 16, 2025).

11. Although EMA dismissed the action, EMA (and some of its members) continued to state opposition to CARB's regulatory program (as adopted) and signal that further lawsuits were possible. For example, EMA submitted public comments in the EPA proceedings on both of California's waiver requests, urging EPA to "act promptly to deny CARB's preemption waiver requests in full." *See* EPA-HQ-OAR-2022-0331, Comments of the Truck and Engine Manufacturers Association (Aug. 1, 2022); EPA-HQ-OAR-2022-0332, Comments of the Truck and Engine Manufacturers Association (Aug. 1, 2022).

12. In addition to the issue of lead time, EMA and some manufacturers asserted that parts of CARB's Omnibus regulation were too stringent. They asked that CARB adopt a broader approach to "binning," or grouping emission results collected from in-use testing of different levels of engine power output—i.e., that CARB evaluate emissions data with less granular (and therefore strict) statistical methods. These manufacturers also asserted that CARB's standards diverged too much from EPA's standards. And EMA and these manufacturers generally asserted that the requirements of Advanced Clean Trucks were infeasible.[3]

13. I and my colleagues at CARB believed that the regulations and any waivers granted for them would withstand legal challenges. However, we understood there was a real risk that EMA and the manufacturers would bring suit, as they had already done in May 2022. And we appreciated that the outcome of the waiver proceedings and any subsequent litigation could not be predicted with certainty.

14. Based on my experiences with manufacturers' other challenges to CARB's regulations, I was cognizant that EMA and manufacturers could challenge CARB's programs not only by bringing lawsuits themselves, but by offering support to third parties bringing suit. (For instance, even if neither EMA nor a manufacturer were a named challenger, they could intervene, file amici briefs in others' lawsuits, or provide declarations or other statements that served to strengthen a third-party's challenge to CARB's programs.)

---

[3] *See, e.g.*, Comments of the Truck and Engine Manufacturers Association, Heavy-Duty Engine and Vehicle Omnibus Regulation and Associated Amendments (Aug. 13, 2020), at 58–85 https://www.arb.ca.gov/lists/com-attach/8-hdomnibus2020-1jACGvmafqDgElXk.pdf; Comments of the Truck and Engine Manufacturers, Advanced Clean Trucks Regulation (Oct. 20, 2020), https://www.arb.ca.gov/lists/com-attach/4318-act2019-WmgFM11uVzRXDgQ1.pdf.

15. CARB and EMA began the discussions that would lead to the Clean Truck Partnership in the fall of 2022. CARB aimed to accommodate at least some of EMA's and its members' concerns, in exchange for EMA and its members foregoing legal challenges. Such an agreement would benefit all parties by avoiding costly litigation and providing greater stability in the operative law in California. From CARB's perspective, additional stability was important both for the public health protections the regulations provide, and to enable accurate forecasts of future emissions reductions. Absent such forecasts, it is difficult for CARB to develop plans for achieving the Clean Air Act's national ambient air quality standards.

16. On March 8, 2023, CARB leadership met with EMA as well as the other eventual signatories of the CTP in Sacramento, California to discuss and negotiate the terms of the agreement. I briefed the CARB Executive Office ahead of this meeting and attended and participated in this meeting.

17. In advance of the March 8, 2023 meeting with manufacturers, I had come to think that CARB should seriously consider accommodating some of EMA and the manufacturers' concerns, if that meant EMA and the manufacturers might forego their legal attacks on CARB's regulations.

18. After the March 8, 2023 meeting, CARB and EMA continued to negotiate the terms of the agreement by email, as well as by phone and videoconference, over the next three months.

19. Although reaching an agreement seemed possible after the in-person meeting on March 8, 2023, its ultimate success was by no means certain. Between March 8, 2023, and July 5, 2023, I personally spent many hours in one-on-one conversations with Sean Waters of Daimler, Matt Spears of Cummins, and Carl Hergart of PACCAR trying to reach agreement on the "legacy" engine provision elements of the CTP, which permit the sale of some engines that meet CARB's earlier-adopted standards (reflected now in Appendix A to the CTP, Appendix A – Amendments to Omnibus Legacy Provisions in Title 13 California Code of Regulations (CCR) 1956.8, to ease the transition to the MY 2024 standards). There were many issues to work out that required intense discussion and back-and-forth: for instance, it was very difficult to find a mutually agreeable sales cap on these "legacy" (dirtier) engines that both sides could accept,

where the manufacturers wanted the number set higher and CARB wanted it set lower. Annette Hebert, CARB's Deputy Executive Officer, told me that she participated in numerous weekend and evening conversations with Jed Mandel, President of EMA, on the overall agreement, after the March 8, 2023 meeting.

20. During negotiations, EMA and manufacturers declined to accept proposed terms from CARB. As one example: CARB proposed terms that would have allowed truck manufacturers to install older (so-called "legacy") engines only if no more up-to-date compliant engines were available. Jed Mandel emailed in response that "[t]here is no support" for that proposal. He did not explain his position any further. This proposal from CARB did not become part of the signed agreement.

21. To reach an agreement, CARB, EMA, and the manufacturers all compromised.

22. For example, CARB agreed to propose, in regulatory amendments, to (1) reduce the overall stringency of the NOx standards for its model-year 2027 and subsequent standards from 0.020 grams per brake horsepower hour (g/bhp-hr) NOx to 0.035 g/bhp-hr; (2) eliminate automatic recall provisions; and (3) adopt the less granular and therefore less precise "two-bin" method of evaluating in-use emissions data.

23. CARB also agreed to provide manufacturers with four years of lead time to prepare to comply with any future standards applicable to medium- and heavy-duty engines or vehicles (on-road vehicles over 8,500 lbs. gross vehicle weight rating).

24. By July 5, 2023, the CTP was fully executed.

25. The signatories to the CTP did not include several significant manufacturers of internal-combustion medium- and heavy-duty engines and trucks operating in the California market at the time of the CTP's signing, including: Roush, Lanid, Renzo, Agility Powertrain Systems, and Powersolutions International. The CTP signatories also did not include manufacturers, such as Tesla, whose heavy-duty vehicles sold in California are exclusively zero-emission vehicles, although such manufacturers are required to certify their vehicles with CARB and are regulated under the Advanced Clean Trucks regulation.

**AFTER EXECUTION OF THE CLEAN TRUCK PARTNERSHIP**

26. It was my impression, based on my participation in the negotiations, that both sides had made significant efforts to reach a mutually agreeable outcome, and that both sides believed the eventual agreement came with real benefits. The public-facing statements of EMA and other signatories after the agreement was executed confirmed for me that impression. For instance, on July 6, 2023, the day after signing, EMA issued a press release stating that "[t]his agreement reaffirms EMA's and its members' longstanding commitment to reducing emissions and to a zero-emissions commercial vehicle future." The press release also explained that the agreement "demonstrates how EMA and CARB can work together to achieve shared clean air goals." Highlighting the benefits that EMA believed it and its members had received under the CTP, the release explained that "we have aligned on a single [] standard, secured needed lead time and stability for manufacturers, and agreed on regulatory changes that will ensure continued availability of commercial vehicles." EMA stated it expected that it would "continu[e] to work constructively with CARB on future regulatory" efforts. A true and correct copy of the press release is attached hereto as **Exhibit C3**, and is publicly available at:
https://www.truckandenginemanufacturers.org/file.asp?A=Y&F=Clean%2BTruck%2BPartnership%2Brelease+%281%29%2Epdf&N=Clean%2BTruck%2BPartnership%2Brelease+%281%29%2Epdf&C=documents.

27. In the same vein, Cummins announced after the agreement that "[w]e appreciate CARB's commitment to providing flexibilities as we transition to zero emissions, and for their efforts to align with EPA's 2027 standards." *See* Exhibit C3.

28. PACCAR announced that "[t]his agreement provides regulatory certainty and supports a balanced transition to zero emissions by ensuring continued supply of product into California and opt-in states." *See* Exhibit C3.

29. And Volvo stated that "[t]hrough cooperative efforts such as this, the Volvo Group believes we can achieve the quickest and least disruptive transition to a commercial zero-emission vehicle future." *See* Exhibit C3.

**THE TERMS OF THE CLEAN TRUCK PARTNERSHIP**

30. In the agreement that was ultimately signed, CARB made significant commitments to the manufacturers. Many of these commitments, along with their current status, are summarized below.

| Summary of Commitments Made in CTP | Summary of Commitment Status[4] |
|---|---|
| CARB to propose amendments to Omnibus Regulation for 2027 and later model year requirements so as to better align with EPA's requirements. *See* CTP, ¶ 1; *id.* App. B. | CARB has completed workshops about the proposals, and plans to issue a rulemaking notice "no later than the third quarter of 2025."[5] |
| CARB to propose amendments to Omnibus regulation as identified in CTP Appendix A, to give manufacturers greater flexibility and address concerns about lead time. CTP ¶ 1; *id.* App. A. | CARB has completed this rulemaking.[6] |
| CARB to propose amendments to the Advanced Clean Trucks regulation that lengthen the time a manufacturer has to make up a compliance deficit from one year to three years. CTP, App. C. | CARB has completed this rulemaking.[7] |
| CARB to propose amendments that allow "pooling" of compliance credits under Advanced Clean Trucks across jurisdictions, providing additional flexibility. CTP, App. C. | CARB has completed this rulemaking.[8] |
| CARB to send follow-up letter to EPA about harmonizing California and federal Low NOx rules. CTP ¶ 7. | CARB sent the letter.[9] |

---

[4] More information about CARB's satisfaction of its commitments under the Clean Truck Partnership is available on CARB's website, here: https://ww2.arb.ca.gov/clean-truck-partnership.

[5] Clean Truck Partnership Commitments – Status and Outcome, https://ww2.arb.ca.gov/clean-truck-partnership (last updated Dec. 6, 2024).

[6] Proposed Amendments to the Heavy-Duty Engine and Vehicle Omnibus Regulation, https://ww2.arb.ca.gov/rulemaking/2023/hdomnibus2023 (last updated May 31, 2024).

[7] Amendments to the Advanced Clean Trucks Regulation (last updated May 19, 2025), https://ww2.arb.ca.gov/rulemaking/2024/advancedcleantrucks; *see also* Staff Report, Initial Statement of Reasons Concerning Amendments to ACT Regulation (March 26, 2024), at 4, https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2024/actzepcert/isor.pdf.

[8] CARB Approves Amendments to Clean Truck Standards to Provide Flexibility While Maintaining Emissions Benefits (July 24, 2025), https://ww2.arb.ca.gov/news/carb-approves-amendments-clean-truck-standards-provide-flexibility-while-maintaining-emissions.

[9] Follow-Up Letter (Feb. 9, 2024), https://ww2.arb.ca.gov/sites/default/files/2024-03/Letter%20to%20EPA_02092024_ADA.pdf.

| Summary of Commitments Made in CTP | Summary of Commitment Status[4] |
|---|---|
| CARB to post a Manufacturers Advisory Correspondence (MAC) advising how to comply with legacy engine cap rules. CTP, App. A, at ii. | CARB released this MAC.[10] |
| CARB to post a MAC with guidance about projects with a focus on disadvantaged communities. CTP, App. A, at ii. | In-Progress, planned release in fourth quarter 2026. |
| CARB to hold public workshop about hydrogen-fueled internal combustion engines. CTP, App. C, at ii. | CARB hosted such a meeting.[11] |
| CARB's Executive Officer to direct CARB staff to make recommendations to the Board concerning guidelines for lead time and stability time. CTP ¶ 5. | Completed. |
| CARB to encourage needed infrastructure development. | CARB, in tandem with other state agencies, have supported such development with significant funds.[12] |
| CARB to work together with EMA and manufacturers to resolve issues that may warrant amendments. | CARB met with manufacturers between late 2024 and July 2025—in connection with the Advanced Clean Trucks rulemaking referred to in the Declaration of Jed Mandel, ECF No. 23-4, ¶ 7 —34 times. |

31.  On the other side of the agreement, the manufacturers promised "to meet, in California, the relevant provisions of the CARB regulations set forth in Appendices A and B, and any agreed upon modifications to such regulations as set forth in this Agreement, irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations." CTP ¶ 2. Additionally, EMA and the

---

[10] Clarification of Certification Requirements (Dec. 4, 2024), https://ww2.arb.ca.gov/sites/default/files/classic/msprog/nvepb/macs/_MACs/mac202404/MAC%202024-04_Dec04%203_signed%201.pdf.
[11] Workshop on the Role of Hydrogen, https://content.govdelivery.com/accounts/CARB/bulletins/37a207f ((last updated Nov. 28, 2023).
[12] See, e.g., Agency ZEV Action Plans, https://business.ca.gov/agency-zev-action-plans/ (last visited Sept. 16, 2025).

1  manufacturers promised to "not legally challenge or support others' legal challenges to any state's
2  adoption of the regulations set forth in Appendices A and B." CTP, App. D, ¶ A. These promises
3  were important to CARB in part because they would allow agency staff to focus on fulfilling the
4  agency's commitments under the CTP, instead of defending against challenges to the agreed-upon
5  program.

**SUBSEQUENT EVENTS**

32. In summer of 2025, the four manufacturer Plaintiffs here (signatories of the CTP) sent letters to the Federal Trade Commission stating that they would "make decisions about the type and quantity of vehicles [they sell] without regard to whether those decisions are compliant with any restrictive terms of the" Clean Truck Partnership."

33. A true and correct copy of a letter from Daimler Truck North America, LLC to the Chairman of the Federal Trade Commission is attached hereto as **Exhibit C4**. Exhibit C4 is publicly available at: https://www.ftc.gov/system/files/ftc_gov/pdf/Daimler-Truck-Letter-of-Commitment-081025.pdf.

34. A true and correct copy of a letter from International Motors, LLC to the Chairman of the Federal Trade Commission is attached hereto as **Exhibit C5**. Exhibit C5 is publicly available at: https://www.ftc.gov/system/files/ftc_gov/pdf/International-Motors-Executed_International_Letter_of_Commitment-081025.pdf.

35. A true and correct copy of a letter from PACCAR Inc. to the Chairman of the Federal Trade Commission is attached hereto as **Exhibit C6**. Exhibit C6 is publicly available at: https://www.ftc.gov/system/files/ftc_gov/pdf/PACCAR-Letter-of-Commitment-081025.pdf.

36. A true and correct copy of a letter from Volvo Group North America, LLC to the Chairman of the Federal Trade Commission is attached hereto as **Exhibit C7**. Exhibit C7 is publicly available at: https://www.ftc.gov/system/files/ftc_gov/pdf/Volvo-Letter-of-Commitment-081025_1.pdf.

37. A true and correct copy of a letter from the Engine Manufacturers Association to the Chairman of the Federal Trade Commission is attached hereto as **Exhibit C8**. Exhibit C8 is

publicly available at: https://www.ftc.gov/system/files/ftc_gov/pdf/EMA-Letter-of-Commitment-081125.pdf.

38.    On August 11, 2025, Plaintiffs filed suit in the Eastern District of California seeking, in part, a declaration that the Clean Truck Partnership and the Omnibus and Advanced Clean Trucks regulations (as well as others) are unlawful.  ECF No 1., Prayer for Relief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 16, 2025.

*Kim A. Heroy-Rogalski*
KIMBERLY AYN HEROY-ROGALSKI

(original signature retained by attorney Benjamin Lempert)