# Exhibit C4

**DAIMLER TRUCK**
North America

August 10, 2025

The Honorable Andrew N. Ferguson
Chairman
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

Re:  Daimler Truck North America, FTC File No. 2510054

Dear Chairman Ferguson:

We understand that the Federal Trade Commission ("FTC" or the "Commission") has decided to close the above-captioned investigation into whether Daimler Truck North America, LLC ("DTNA") violated Section 5 of the FTC Act, 15 U.S.C. § 45, by signing the Clean Truck Partnership (the "CTP") with the California Air Resources Board ("CARB"), as did several other heavy truck manufacturers ("OEMs"). To address the FTC's concerns, DTNA is making the affirmations and commitments discussed below.

I.      **CTP Background and Procedural Posture**

California's Advanced Clean Trucks ("ACT") and Advanced Clean Fleets ("ACF") regulations sought to require truck and engine manufacturers, including DTNA, to sell and promote certain percentages of zero-emission vehicles ("ZEVs") in California. California's Omnibus Low NOx ("Omnibus") regulation would have imposed stringent emissions standards on truck and engine manufacturers that impose correspondingly significant financial burdens on OEMs, their dealers, and their end customers. The ACT, ACF, and Omnibus regulations each require a Clean Air Act preemption waiver from the U.S. Environmental Protection Agency ("EPA") to be valid and enforceable, and those requisite waivers have been voided by the current administration (or never granted to CARB in the first instance) and are thus federally preempted.

On July 6, 2023, DTNA signed the CTP with CARB. Through the CTP, CARB sought to require manufacturer compliance with California's ACT and Omnibus regulations (and, to the extent applicable to manufacturers in 2036 model year, ACF regulations) should California's waivers of authority be invalidated through litigation.

On January 13, 2025, CARB withdrew its request for an EPA waiver of preemption for CARB's ACF standards. Thus, ACF is preempted by federal law and unenforceable.

On May 22, 2025, the United States Congress, using its powers under the Congressional Review Act ("CRA"), issued joint resolutions of disapproval of the U.S. EPA's waivers of

1

# DAIMLER TRUCK
## North America

preemption for the ACT and Omnibus standards adopted by CARB, and on June 12, 2025, the President of the United States signed these joint resolutions of disapproval into law, revoking the federal preemption waivers for ACT and Omnibus.

State legislatures are generally free to regulate local markets to promote competition and other policy goals,[1] and through the CTP, DTNA was able to obtain benefits for its dealers and for customers of its trucks resulting from the negotiated alignment of state and federal emissions requirements in force at the time and, as a result, was able to continue to produce high-quality diesel trucks and engines and to bring trucks to market that otherwise would not have been available under California's regulations. However, state legislatures or the boards to which they have delegated their authority may not enforce laws or regulations that Congress has specifically pre-empted. On its face, the CTP, among other things, obligated DTNA to comply with certain California regulations even if they were invalidated by litigation, but that obligation was inapplicable when, as here, the CTP was invalidated by actions taken by Congress and the President that had the effect of preempting CARB's regulations. The CTP—which implemented California's now-invalid regulations—became unenforceable on June 12, 2025. DTNA has made and continues to make its own unilateral business decisions, including regarding the volume of trucks it will produce, the types of engines those trucks will contain, and the prices of its trucks. The CTP had no impact on product availability, price, or the markets for DTNA's engines or trucks at any time.

## II.     DTNA's Affirmations and Commitments

In connection with the closing of the Commission's investigation, DTNA affirms that (i) the CTP was rendered unenforceable by a Congressional joint resolution of disapproval signed by the President on June 12, 2025;[2] (ii) the President's signature of the joint resolution did not trigger any obligations on DTNA through the CTP; and (iii) DTNA has never had any right to enforce, has not attempted to enforce, and will not attempt to enforce the CTP against any other signatory to it.[3] For these reasons, it is DTNA's position that the CTP cannot be enforced against it by CARB or any other signatory. For similar reasons, DTNA affirms that it will independently

---

[1] *Parker v. Brown*, 317 U.S. 341, 351–52 (1943).

[2] Briefings & Statements, The White House, Congressional Bills H.J. Res. 87, H.J. Res. 88, H.J. Res. 89. Signed into Law (June 12, 2025), https://www.whitehouse.gov/briefings-statements/2025/06/congressional-bills-h-j-res-87-h-j-res-88-h-j-res-89-signed-into-law/.

[3] For purposes of this letter, the word "signatory" refers to the other original equipment manufacturer signatories to the CTP.

2

**DAIMLER TRUCK**
North America

make decisions about the type and quantity of vehicles it sells without regard to whether those decisions are compliant with any restrictive terms of the CTP.[4]

In addition to its commitments regarding the CTP, DTNA also affirms and commits prospectively that:

- DTNA will not enter or attempt to enter into any agreement with a U.S. state regulator or U.S. state government that includes direct or indirect restrictions on the supply of any product(s) or the fixing of emission levels for any product(s) that are enforceable by any party other than a U.S. state government or U.S. state regulator; and

- DTNA will not enter or attempt to enter into any agreement with a U.S. state regulator or U.S. state government relating to restrictions on supply or fixing emission levels, by which DTNA commits to being bound even if the state actor or similarly situated regulator lacks authority to directly impose or enforce the applicable restrictions.

\* \* \*

Within 60 days, DTNA will file with the Secretary of the FTC, with a copy to the Bureau of Competition's Compliance Division, a report describing in reasonable detail how DTNA has complied with its commitments. DTNA will annually affirm compliance with the commitments for seven years thereafter.

If DTNA receives written notice from the Commission that the Commission believes DTNA has acted inconsistent with its commitments, DTNA will, within 60 days, respond to the Commission either by explaining how DTNA has addressed any such concerns or by explaining why DTNA believes that it has acted in a manner consistent with its affirmations and commitments.

Furthermore, if the FTC believes that DTNA has acted inconsistent with its commitments, the FTC may, after providing at least 30 days' prior written notice, and subject to claims of any legally recognized privilege, require DTNA to (1) permit access to electronic and paper documents related to compliance with the above commitments, and (2) in the presence of DTNA's legal

---

[4] For avoidance of doubt, nothing in this letter prohibits Daimler from voluntarily and unilaterally (1) applying for a California emissions certification (or honoring California emissions certifications issued prior to the CRA's effective date), including, but not limited to, allowing Daimler to secure Clean Idle Labels pursuant to the Omnibus Low NOx Rule, or (2) adhering to a final court order.

3

# DAIMLER TRUCK
## North America

counsel, permit FTC staff to interview appropriate persons with knowledge about DTNA's compliance with these commitments regarding such compliance.

Sincerely,

*Sean T. Waters*

Sean Waters
Vice President, Product Integrity
Daimler Truck North America, LLC

4