# Exhibit C6

August 10, 2025

The Honorable Andrew N. Ferguson
Chairman
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

Re:     PACCAR Inc, FTC File No. 2510054

Dear Chairman Ferguson:

We understand that the Federal Trade Commission ("FTC" or the "Commission") has decided to close the above-captioned investigation into whether PACCAR Inc ("PACCAR") violated Section 5 of the FTC Act, 15 U.S.C. § 45, by signing the Clean Truck Partnership (the "CTP") with the California Air Resources Board ("CARB") as did several other heavy and medium duty truck manufacturers ("OEMs"). To address the FTC's concerns, PACCAR is making the affirmations and commitments discussed below.

**I.     CTP Background and Procedural Posture**

PACCAR has been in business for more than 100 years, designing, developing, manufacturing, testing, selling, and supporting premium heavy- and medium-duty trucks to customers in the U.S. under the Kenworth and Peterbilt brands. We are proud of our long heritage and are committed to making trucks that appeal to a wide range of customers and for a wide range of end uses—trucks powered by diesel engines as well as alternative fuels and powertrains.

PACCAR is currently stuck between a rock and hard place, given the current uncertainty with California's emissions regulations—i.e., Advanced Clean Trucks ("ACT"), Omnibus Low NOx ("Omnibus"), and Advanced Clean Fleets ("ACF")—a situation exacerbated by the lack of customer demand for zero-emission vehicles ("ZEVs") and the lack of sufficient charging stations and infrastructure to support customers in buying and operating commercial heavy-duty ZEVs.

Several years ago, California received EPA waivers for its emission standards, ACT and Omnibus, for heavy-duty trucks and engines. In July 2023, under considerable pressure from CARB during negotiations over pending certifications and under threat of significant fines and legal action related to alleged non-compliance with CARB's OBD regulation, PACCAR signed the CTP stating that it would follow certain of those emission standards regardless of whether the waivers were revoked through litigation—a "non-negotiable" condition from CARB in exchange for its promise to abide by the critical lead time for future regulations set out in the Clean Air Act and agreeing to align with the nationwide 2027 emissions standard.

The situation is different today. On May 22, 2025, Congress issued joint resolutions under the Congressional Review Act ("CRA") disapproving of EPA's waivers of preemption for California's emissions standards. With President Donald J. Trump's signature on June 12, 2025,

The Honorable Andrew Ferguson  
Federal Trade Commission

August 10, 2025  
Page 2

the federal government revoked CARB's EPA waivers and effectively made CARB's regulations invalid. Other recent developments (or non-developments) have called into question the practical validity of the CTP: for example, CARB's decision to withdraw the ACF waiver eliminated the regulatory requirement for customers to buy ZEVs, and, as noted above, the lack of infrastructure and charging stations sufficient to support customers buying and operating the commercial heavy-duty trucks all mean there is very little demand for ZEVs at this time.

This mandate to sell ZEVs absent real market demand is harming the public, especially our dealers and customers. Dealers rely on new motor vehicle sales to fund their operations, and their salespersons are most frequently paid on commission. Without sales, dealerships will fail, or contract in size. Fleets, which haul 70% of the goods in America, rely upon dealers for parts and service. Communities throughout the U.S. rely on sales tax revenue from the sale of these capital goods. Truck sales in California have slumped considerably following the introduction of the 2024 Omnibus and ACT regulations, resulting in customers holding on to older and less efficient trucks longer.

Despite all this, California continues to press the argument that CTP is valid and that PACCAR must comply, and it is challenging the CRA resolution itself as invalid. Despite repeated attempts, CARB has refused to entertain any discussion of the legal status or multiple real-world difficulties with CTP.

PACCAR is caught in the middle and is hard-pressed to make necessary and critical decisions that affect our business and our customers. PACCAR is confident that its practices are entirely consistent with all applicable laws and regulations and that it has always made core business decisions on output, price, and product characteristics and availability independently. In order to clear this regulatory uncertainty, and end this investigation, PACCAR makes the following affirmations and commitments.

## II.     PACCAR Inc.'s Affirmations and Commitments

In connection with the closing of the Commission's investigation, PACCAR affirms that (i) the CTP was rendered unenforceable by a Congressional joint resolution of disapproval signed by the President on June 12, 2025;[1] (ii) the President's signature of the joint resolution did not trigger any obligations on PACCAR through the CTP; and (iii) PACCAR has never had any right to enforce, has not attempted to enforce, and will not attempt to enforce the CTP against any other signatory to it. For these and other reasons, it is PACCAR's position that the CTP cannot be enforced against it or any other signatory,[2] whether by CARB or any other signatory. For similar reasons, PACCAR affirms that it will independently make decisions about the type and quantity

---

[1] Briefings & Statements, The White House, Congressional Bills H.J. Res. 87, H.J. Res. 88, H.J. Res. 89. Signed into Law (June 12, 2025), https://www.whitehouse.gov/briefings-statements/2025/06/congressional-bills-h-j-res-87-h-j-res-88-h-j-res-89-signed-into-law/.

[2] For purposes of this letter, the word "signatory" refers to the other original equipment manufacturer signatories to the CTP.

The Honorable Andrew Ferguson August 10, 2025
Federal Trade Commission Page 3

of vehicles it sells without regard to whether those decisions are compliant with any restrictive terms of the CTP.[3]

In addition to its commitments regarding the CTP, PACCAR also affirms and commits prospectively that:

- PACCAR will not enter or attempt to enter into any agreement with a U.S state regulator or U.S state government that includes direct or indirect restrictions on the supply of any product(s) or the fixing of emission levels for any product(s) that are enforceable by any party other than a U.S. state government or U.S. state regulator;[4] and

- PACCAR will not enter or attempt to enter into any agreement with a U.S state regulator or U.S. state government relating to restrictions on supply or fixing emission levels, by which PACCAR commits to being bound even if the U.S. state regulator or U.S. state government lacks authority to directly impose or enforce the applicable restrictions.

\* \* \*

Within 60 days, PACCAR will file with the Secretary of the FTC, with a copy to the Bureau of Competition's Compliance Division, a report describing in reasonable detail how PACCAR Inc. has complied with its commitments. PACCAR will annually affirm compliance with the commitments for seven years thereafter.

If PACCAR receives written notice from the Commission that the Commission believes PACCAR has acted inconsistent with its commitments, PACCAR will, within 60 days, respond to the Commission either by explaining how PACCAR has addressed any such concerns or by explaining why PACCAR believes that it has acted in a manner consistent with its affirmations and commitments.

Furthermore, if the FTC believes that PACCAR has acted inconsistent with its commitments, the FTC may, after providing at least 30 days' prior written notice, and subject to claims of any legally recognized privilege, require PACCAR to (1) permit access to electronic and paper documents related to compliance with the above commitments, and (2) in the presence of PACCAR's legal counsel, permit FTC staff to interview appropriate persons with knowledge about PACCAR's compliance with these commitments regarding such compliance.

---

[3] For the avoidance of doubt, nothing in this letter prohibits PACCAR from voluntarily and unilaterally (1) applying for California emissions certification (or honoring California emissions certifications issued prior to the CRA effective date), including, but not limited to, allowing PACCAR to secure Clean Idle Labels pursuant to the Omnibus Low NOx Rule, or (2) adhering to a final court order.

[4] This provision will not restrict contracts with a government entity for the supply of trucks.

The Honorable Andrew Ferguson
Federal Trade Commission

August 10, 2025
Page 4

Sincerely,

Carl Hergart
PACCAR Inc
*Senior Director Global Powertrain Planning,
Agency Relations, and North America
Powertrain Aftersales*