# Exhibit C8

Truck & Engine Manufacturers Association®
Bringing Clean Power to the World™

333 West Wacker Drive, Suite 810
Chicago, Illinois, 60606
Phone/Fax: (312) 929-1970
www.truckandenginemanufacturers.org

FOIA CONFIDENTIAL TREATMENT REQUESTED

August 11, 2025

The Honorable Andrew N. Ferguson
Chairman
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

Re: Engine Manufacturers Association d/b/a Truck and Engine Manufacturers Association, FTC File No. 2510054

Dear Chairman Ferguson:

We understand that the Federal Trade Commission ("FTC" or the "Commission") has decided to close the above-captioned investigation into whether Engine Manufacturers Association d/b/a Truck and Engine Manufacturers Association ("EMA") violated Section 5 of the FTC Act, 15 U.S.C. § 45, by signing the Clean Truck Partnership (the "CTP") with the California Air Resources Board ("CARB"), as did several heavy and medium duty on-highway engine and truck manufacturers ("OEMs"). To address the FTC's concerns, EMA is making the affirmations and commitments discussed below.

I.      CTP Background and Procedural Posture.

California's Advanced Clean Truck ("ACT") and Advanced Clean Fleets ("ACF") regulations sought to require truck and engine manufacturers to sell and promote certain percentages of zero-emission vehicles ("ZEVs") in California. California's Omnibus Low NOx ("Omnibus") regulation would have imposed stringent emissions standards on truck and engine manufacturers that, in turn, would have imposed significant financial burdens on OEMs, their dealers, and their end customers.

EMA is a trade association whose members include manufacturers of medium and heavy-duty on-highway engines and vehicles. The Association advocates on behalf of its members to federal and state regulatory agencies, including CARB, for the development and implementation of cost-effective and technologically feasible emissions, fuel efficiency and safety regulations.

On July 6, 2023, EMA and certain manufacturers signed the CTP with CARB in an effort to, among other things, harmonize federal and California emissions standards and obtain the requisite four-year lead time for manufacturers to meet the California regulations. EMA maintains that the negotiation and agreement to those terms constitutes protected speech under the *Noerr-Pennington* and State Action doctrines, which permit entities like EMA and its members to lobby, advocate, and negotiate with government regulators, such as CARB, with immunity from U.S. competition laws.

The ACT, ACF, and Omnibus regulations each require a Clean Air Act preemption waiver from the U.S. Environmental Protection Agency ("EPA") to be valid and enforceable. However, those waivers have been either been revoked under the Congressional Review Act ("CRA") (or were never sought by CARB in the case of ACF), and are thus preempted by federal law.

On January 13, 2025, CARB withdrew its request for an EPA waiver of preemption for CARB's ACF standards. As such, I understand that ACF is preempted by federal law and unenforceable.

On May 22, 2025, the United States Congress issued joint resolutions disapproving the U.S. EPA's waivers of preemption for the ACT and Omnibus standards adopted by CARB under the CRA. On June 12, 2025, the President of the United States signed those joint resolutions into law, revoking the federal preemption waivers for CARB's ACT and Omnibus regulations. As a result, I understand that ACT and Omnibus are preempted by federal law and unenforceable.

Among other things, the CTP obligated manufacturers to comply with certain California regulations even if invalidated by litigation. That obligation, however, did not anticipate or extend to the invalidation of the CTP by Congressional and Presidential actions preempting the underlying California regulations. I understand that the Clean Truck Partnership therefore became federally preempted, void, and unenforceable on June 12, 2025 when the waivers for the implemented ACT and Omnibus regulations were revoked.

II.     EMA's Affirmations and Commitments

In connection with the closing of the Commission's investigation, EMA affirms that (i) the CTP was rendered unenforceable by a Congressional joint resolution of disapproval signed by the President on June 12, 2025;[1] (ii) the President's signature of the joint resolution did not trigger any obligations on EMA through the CTP; and (iii) EMA has never had any right to enforce, has not attempted to enforce, and will not attempt to enforce the CTP against any other signatory to it.[2] For these reasons, it is EMA's position that the CTP cannot be enforced against it by CARB or any other signatory.[3]

In addition to its commitments regarding the CTP, EMA affirms and commits prospectively that:

- It will not, on behalf of itself, on behalf of its members, or on behalf of any subset of its members, enter, negotiate, or attempt to enter into any agreement with a U.S. state regulator or U.S. state government that includes direct or indirect restrictions on the supply of any product(s) or the fixing of emission levels for any product(s) that are enforceable by any party other than a U.S. state government or U.S. state regulator; and

---

[1] Briefings & Statements, The White House, Congressional Bills H.J. Res. 87, H.J. Res. 88, H.J. Res. 89. Signed into Law (June 12, 2025), https://www.whitehouse.gov/briefings-statements/2025/06/congressional-bills-h-j-res-87-h-j-res-88-h-j-res-89-signed-into-law/.

[2] For purposes of this letter, the word "signatory" refers to the other original equipment manufacturer signatories to the CTP.

[3] For the avoidance of doubt, nothing in this letter prohibits EMA from adhering to a final court order.

- It will not, on behalf of itself, on behalf of its members, or on behalf of any subset of its members, enter, negotiate, or attempt to enter into any agreement with a U.S. state regulator or U.S. state government relating to restrictions on supply or fixing emission levels, by which EMA, its members, or any subset of its members commits to being bound even if the state actor or similarly situated regulator lacks authority to directly impose or enforce the applicable restrictions.

\*    \*    \*

Within 60 days, EMA will file with the Secretary of the FTC, with a copy to the Bureau of Competition's Compliance Division, a report describing in reasonable detail how EMA has complied with its commitments. EMA will annually affirm compliance with the commitments for seven years thereafter.

If EMA receives written notice from the Commission that the Commission believes EMA has acted inconsistent with its commitments, EMA will, within 60 days, respond to the Commission either by explaining how EMA has addressed any such concerns or by explaining why EMA believes that it has acted in a manner consistent with its affirmations and commitments.

Furthermore, if the FTC believes that EMA has acted inconsistent with its commitments, the FTC may, after providing at least 30 days' prior written notice, and subject to claims of any legally recognized privilege, require EMA to (1) permit access to electronic and paper documents related to compliance with the above commitments, and (2) in the presence of EMA's legal counsel, permit FTC staff to interview appropriate persons with knowledge about EMA's compliance with these commitments regarding such compliance.

Very truly yours,

*[signature: Jed R. Mandel]*

Jed R. Mandel
President