1  ADAM R.F. GUSTAFSON                    ERIC GRANT
   Acting Assistant Attorney General      United States Attorney
2  ROBERT N. STANDER                      EDWARD A. OLSEN
   Deputy Assistant Attorney General      Assistant United States Attorney
3  JOHN K. ADAMS                          501 I Street, Suite 10-100
   DAVID D. MITCHELL                      Sacramento, California 95814
4  United States Department of Justice    (916) 554-2821
   Environment & Natural Resources Div.
5  P.O. Box 7611
   Washington, D.C. 20044-7611
6  (202) 353-5905
   robert.stander@usdoj.gov
7  john.adams3@usdoj.gov
   david.mitchell@usdoj.gov
8

9  *Counsel for Intervenors-Plaintiffs*

10

11              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF CALIFORNIA
12

13  DAIMLER TRUCK NORTH AMERICA LLC;
    INTERNATIONAL MOTORS, LLC;              2:25-cv-02255-DC-AC
14  PACCAR INC; and
    VOLVO GROUP NORTH AMERICA LLC,
15
                    Plaintiffs,
16                                          **REPLY OF UNITED STATES**
          v.                                **IN SUPPORT OF MOTION FOR**
17                                          **PRELIMINARY INJUNCTION**
    THE UNITED STATES OF AMERICA; and
18  UNITED STATES ENVIRONMENTAL
    PROTECTION AGENCY,
19                                          Date:        October 31, 2025
              Intervenors-Plaintiffs,       Time:        1:30 PM
20                                          Courtroom:   8, 13th Floor
          v.                                Judge:       Hon. Dena Coggins
21                                          Trial Date:  Not Set
    CALIFORNIA AIR RESOURCES BOARD;         Action Filed: August 11, 2025
22  STEVEN S. CLIFF, in his official capacity as the
    Executive Officer of the California Air Resources
23  Board; and
    GAVIN NEWSOM, in his official capacity as the
24  Governor of California,
25                    Defendants.
26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

STATUTORY BACKGROUND .................................................................................................... 2

ARGUMENT .................................................................................................................................. 4

I.      California's vehicle emissions regulations are preempted. ...................................................... 4

      A.      The Clean Air Act preempts California's regulations .............................................. 4

      B.      California's unprecedented constitutional arguments fail ......................................... 5

              1.      This Court lacks jurisdiction to determine whether EPA waivers are "rules" or "orders" under the CRA ........................................................... 6

              2.      The political process theory fails. ................................................................ 8

              3.      The Executive delegation theory fails. ...................................................... 10

              4.      The Executive usurpation theory fails. ...................................................... 11

II.     The Clean Truck Partnership is a preempted regulatory enforcement device. .................. 15

III.    The United States is suffering irreparable harm and the equities and public interest favor an injunction. .................................................................................................................... 16

CONCLUSION .............................................................................................................................. 20

1

<div align="center"><b>TABLE OF AUTHORITIES</b></div>

2  **Constitution**

3  U.S. Const. art. I, § 5, cl. 2 ...................................................................................3, 8

4  **Cases**

5  *Airlines for Am. v. City & County of San Francisco,*

6      78 F.4th 1146, 2251 (9th Cir. 2023) ...................................................................15

7  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*

8      458 U.S. 592 (1982) ....................................................................................19, 20

9  *All. for the Wild Rockies v. Cottrell,*

10      632 F.3d 1127 (9th Cir. 2011) ...........................................................................20

11  *Am. Trucking Ass's, Inc. v. City of Los Angeles*

12      569 U.S. 641, 649 (2013)...........................................................................15, 16

13  *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.,*

14      208 F.3d 1 (1st Cir. 2000) ........................................................................15, 16

15  *Bank Markazi v. Peterson,*

16      578 U.S. 212 (2016) ....................................................................................11, 12

17  *Common Cause v. Biden,*

18      748 F.3d 1280 (D.C. Cir. 2014) .........................................................................10

19  *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States,*

20      482 F.3d 1157 (9th Cir. 2007) .........................................................................8, 11

21  *Cook Inlet Treaty Tribes v. Shalala,*

22      166 F.3d 986 (9th Cir. 1999) .......................................................................12, 13

23  *City of New York v. Chevron Corp.,*

24      993 F.3d 81 (2d Cir. 2021)...............................................................................19

25  *Ctr. for Biological Diversity v. Bernhardt,*

26      946 F.3d 553 (9th Cir. 2019) ...............................................................3, 6, 7, 13

27  *E. Bay Sanctuary Covenant v. Garland,*

28      994 F.3d 962 (9th Cir. 2020) ............................................................................19

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,

　498 F.3d 1031 (9th Cir. 2007) ...............................................................16

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,

　541 U.S. 246 (2004) .............................................................................18

*Epic Sys. Corp. v. Lewis*,

　584 U.S. 497 (2018) .............................................................................10

*FCC v. Consumers' Rsch.*,

　145 S. Ct. 2482 (2025) .........................................................................10

*Fletcher v. Peck*,

　10 U.S. 87 (1810) .................................................................................14

*Foster v. USDA*,

　68 F.4th 372 (8th Cir. 2023), *cert. granted, judgment vacated on other grounds*,

　144 S. Ct. 2707 (2024) ...........................................................................6

*Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*,

　971 F.3d 1222 (10th Cir. 2020) ...............................................................6

*Massachusetts v. Mellon*,

　262 U.S. 447 (1923) .............................................................................19

*Merck Sharp & Dohme Corp. v. Albrecht*,

　587 U.S. 299 (2019) .............................................................................13

*Metro. Taxicab Bd. of Trade v. City of New York*,

　633 F. Supp. 2d 83 (S.D.N.Y. 2009) *aff'd*, 615 F.3d 152 (2d Cir. 2010) ................18

*Montanans for Multiple Use v. Barbouletos*,

　568 F.3d 225 (D.C. Cir. 2009) .................................................................6

*Nat'l Fed'n of Indep. Bus. v. DOL*,

　595 U.S. 109 (2022) .............................................................................13

*Nevada v. Skinner*,

　884 F.2d 445 (9th Cir. 1989) ...................................................................9

*Nevada v. Watkins,*

   914 F.2d 1545 (9th Cir. 1990) ........................................................................8, 9, 10

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*

   584 U.S. 325 (2018) ...............................................................................................13

*Patchak v. Zinke,*

   583 U.S. 244 (2018) ...............................................................................................12

*Pennsylvania v. Wheeling & Belmont Bridge Co.,*

   59 U.S. 421 (1855) .................................................................................................12

*Robertson v. Seattle Audubon Soc'y.,*

   503 U.S. 429 (1992) ..........................................................................................12, 13

*Rodriguez v. Robbins,*

   715 F.3d 1127 (9th Cir. 2013) ...............................................................................20

*Roman v. Wolf,*

   977 F.3d 935 (9th Cir. 2020) .................................................................................20

*SEC v. Jarkesy,*

   603 U.S. 109 (2024) ...............................................................................................13

*South Carolina v. Baker,*

   485 U.S. 505 (1988) .............................................................................................8, 9

*South Carolina v. Katzenbach,*

   383 U.S. 301 (1966) ..........................................................................................18, 19

*Trump v. Hawaii,*

   585 U.S. 667 (2018) ..........................................................................................10, 11

*UFO Chuting of Haw., Inc. v. Young,*

   380 F. Supp. 2d 1166 (D. Haw. 2005) ..................................................................12

*United States v. Arizona,*

   641 F.3d 339 (9th Cir. 2011), *rev'd on other grounds by* 567 U.S. 387 (2012)..........16, 17, 20

*United States v. Ballin,*

   144 U.S. 1 (1892) ...................................................................................................11

*United States v. California*,

No. 2:19-cv-02142 WBS EFB, 2020 WL 8183945 (E.D. Cal. Feb. 26, 2020) .......................16

*United States v. Idaho*,

623 F. Supp. 3d 1096 (D. Idaho 2022) ...................................................................16

*United States v. Texas*,

719 F. Supp. 3d 640 (W.D. Tex. 2024) ...................................................................16

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,

529 U.S. 765 (2000) ...................................................................................16

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*,

509 F.3d 1259 (10th Cir. 2007) .......................................................................6

*Wash. All. of Tech. Workers v. DHS*,

892 F.3d 332 (D.C. Cir. 2018) .......................................................................6

**Statutes**

5 U.S.C. § 551(4) ...................................................................................4

5 U.S.C. § 801 ...................................................................................4

5 U.S.C. § 801(a)(1)(A) ...................................................................................3

5 U.S.C. § 801(b)(1) ...................................................................................3, 13

5 U.S.C. § 801(b)(2) ...................................................................................3

5 U.S.C. § 802 ...................................................................................4

5 U.S.C. § 802(a) ...................................................................................3

5 U.S.C. § 802(c) ...................................................................................3

5 U.S.C. § 802(d)(2) ...................................................................................3

5 U.S.C. § 802(g) ...................................................................................3, 4, 8

5 U.S.C. § 804(3) ...................................................................................4

5 U.S.C. § 805 ...................................................................................4, 6, 7, 8

5 U.S.C. § 806(a) ...................................................................................7

42 U.S.C. § 7543 ...................................................................................17

42 U.S.C. § 7543(a) ...................................................................................1, 2, 4, 14, 15

42 U.S.C. § 7543(b) ...........................................................................................4

42 U.S.C. § 7543(b)(1) .....................................................................................2

42 U.S.C. § 7543(b)(1)(B)-(C) .........................................................................2

42 U.S.C. § 7507 ..........................................................................................2, 14

**Federal Register**

88 Fed. Reg. 20688 (Apr. 6, 2023) ..................................................................5

90 Fed. Reg. 15513 (Apr. 8, 2025) ................................................................19

**Legislative History**

171 Cong. Rec. S3018 (daily ed. May 21, 2025) ...........................................14

171 Cong. Rec. S3025 (daily ed. May 21, 2025) ...........................................11

171 Cong. Rec. S3086 (daily ed. May 21, 2025) ...........................................14

171 Cong. Rec. S3139 (daily ed. May 22, 2025) ...........................................14

H.R. 3126, 97th Cong., Priv. L. 97-27, 96 Stat. 2623 (1982) ......................14

H.R. 5826, 97th Cong., Priv. L. 97-55, 96 Stat. 2636 (1983) ......................14

H.R. 6228, 98th Cong., Priv. L. 98-46, 98 Stat. 3434 (1984) ......................14

H.R. 3903, 106th Cong., Priv. L. 106-5, 114 Stat. 3096 (2000) ..................14

H.R.J. Res. 87, Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025) ..............4, 5

H.R.J. Res. 89, Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025) ..............4, 5

S.992, 102d Cong., Priv. L. 102-4, 106 Stat. 5149 (1992) ...........................14

**Other Authorities**

EPA Comment on CARB's Emergency Amendment and Adoption of Vehicle Emissions

    Regulation, dated September 27, 2025 available at

    https://www.epa.gov/system/files/documents/2025-09/usepa-comment-on-carb-emergency-

    amendment-and-adoption-of-vehicle-emissions-regulation.pdf ...............................17

Maeve P. Carey et al., Cong. Rsch. Serv., R43992, The Congressional Review Act: Frequently

    Asked Questions (2021) ...................................................................................3

Rule XXII, Standing Rules of Senate ..............................................................3

U.S. Census Bureau, Apportionment Population and Number of Representatives by State: 2020

    Census (Apr. 2021), https://www2.census.gov/programs-

    surveys/decennial/2020/data/apportionment/apportionment-2020-table01.pdf ........................9

## INTRODUCTION

The United States is likely to succeed on its claim that California's heavy-duty truck emissions regulations are preempted. The Clean Air Act expressly preempts state vehicle emissions standards and certification requirements without a waiver from EPA, and Congress recently enacted statutes repealing the waivers for California's heavy-duty truck regulations. California's only response is that those statutes are unconstitutional. According to California, Congress's procedural wrangling violated the Tenth Amendment by shutting California out of the political process, even though California has far more representation in Congress than any other state. California then argues that Congress delegated too much legislative power to EPA while simultaneously usurping executive power from EPA. These far-fetched constitutional theories are baseless.

The United States also is likely to succeed on its claim that the Clean Truck Partnership (CTP) is preempted by the Clean Air Act. The CTP is not a voluntary contract, as California insists. It is a regulatory enforcement device adopted and enforced by a state regulator, and it expressly incorporates the preempted heavy-duty truck regulations. The CTP is preempted as an "attempt to enforce any standard relating to the control of emissions," 42 U.S.C. § 7543(a), without an EPA preemption waiver.

The United States is suffering ongoing irreparable harm to its sovereignty. The United States suffers irreparable harm when a state usurps federal power by adopting or enforcing preempted laws in contravention of the Supremacy Clause. Further, California's insistence on plowing forward with its emissions regulations, despite Congress's repeal of the waivers, is interfering with the sale of heavy-duty trucks by unlawfully requiring emissions certification prior to sale, as the Manufacturers explain. OEM Reply in Support of Motion for Preliminary Injunction (OEM Reply) 5-6, 13-15. This interference with interstate commerce harms the shipping industry and thus millions of Americans, causing irreparable harm to the United States.

California claims there is no irreparable harm because it is not enforcing its preempted standards and is instead providing "voluntary" alternatives for obtaining certifications of compliance. But that choice is illusory because (1) each of California's supposed alternatives is itself preempted, and (2) California is threatening, if it prevails in this litigation, to impose

1    retroactive liability against any manufacturers that fail to comply with the preempted heavy-duty

2    truck standards. Because California is threatening retroactive enforcement, this Court should

3    expressly enjoin retroactive enforcement.

4        Meanwhile, California has no cognizable interest in enforcing preempted regulations, which

5    means the balance of equities tips sharply in favor of the United States.

6                    **STATUTORY BACKGROUND**

7        Two statutory schemes are relevant to resolving this motion: The Clean Air Act's

8    preemption provisions for new motor vehicle emissions standards, and the Congressional Review

9    Act's procedures for enacting statutes that repeal administrative rules.

10        **The Clean Air Act** expressly preempts state new motor vehicle emission standards and

11    certification requirements. Under section 209(a): "No State . . . shall adopt or attempt to enforce

12    any standard relating to the control of emissions from new motor vehicles" or "new motor vehicle

13    engines." 42 U.S.C. § 7543(a). And: "No State shall require certification, inspection, or any other

14    approval relating to the control of emissions from any new motor vehicle or new motor vehicle

15    engine as condition precedent to the initial retail sale, titling . . . , or registration." *Id.*

16        Section 209(b) authorizes California, and only California, to seek a preemption waiver from

17    EPA by showing that its standards are "at least as protective of public health and welfare as

18    applicable Federal standards." *Id.* § 7543(b)(1). If California obtains a waiver for a regulation,

19    certain other states may choose to adopt standards identical to California standards for which EPA

20    has issued a waiver for the applicable model year. *Id.* § 7507.

21        But EPA is prohibited from granting a waiver in certain circumstances. "No such waiver

22    shall be granted," for example, if EPA determines that California "does not need" its standards "to

23    meet compelling and extraordinary conditions" of air pollution in California, or if California's

24    "standards" are inconsistent with statutory requirements for federal vehicle emissions regulations.

25    *Id.* § 7543(b)(1)(B)-(C). Without a waiver, California may not "adopt or attempt to enforce" any

26    new motor vehicle emissions standards or require "certification" or "any other approval" "relating

27    to the control of emissions from any new motor vehicle or new motor vehicle engine." *Id.* § 7543(a);

28    *see* U.S. Compl. (Dkt. No. 56) ¶¶ 17-26.

**The Congressional Review Act** contains a set of procedures Congress adopted to review and sometimes repeal agency rules. With some exceptions, the CRA provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" a report "to each House of the Congress" containing a "copy of the rule" and other information describing it. 5 U.S.C. § 801(a)(1)(A). Upon receipt of such a report, Congress may enact a joint resolution "disapprov[ing] the rule." *Id.* § 802(a). The joint resolution must include the following language: "That Congress disapproves the rule submitted by the ___ relating to ___, and such rule shall have no force or effect." *Id.*

If a joint resolution of disapproval passes both Houses of Congress, and is signed into law by the President, two consequences follow. First, the rule "shall not take effect (or continue)." *Id.* § 801(b)(1). Second, the rule "may not be reissued in substantially the same form," nor may a "new rule that is substantially the same as such a rule . . . be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." *Id.* § 801(b)(2). Because of these consequences, when Congress enacts a joint resolution under the CRA, it "amend[s] the substantive" law. *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 (9th Cir. 2019).

Congress also specified various procedures for consideration of CRA disapproval resolutions, in "an exercise of the rulemaking power of the Senate and House of Representatives," 5 U.S.C. § 802(g), consistent with the constitutional authority of each House of Congress to "determine the Rules of its Proceedings," U.S. CONST. art. I, § 5, cl. 2. "The CRA streamlines Congress's typical procedure for enacting legislation." *Bernhardt*, 946 F.3d at 557. For example, if a Senate committee has been considering a CRA resolution for at least 20 days, 30 Senators may file a petition to discharge and place the joint resolution on the calendar for consideration by the full Senate. 5 U.S.C. § 802(c). In addition, Senate debate on the joint resolution is limited to 10 hours, *id.* § 802(d)(2), which, under current Senate rules, has the practical effect of preventing a filibuster. *See* MAEVE P. CAREY ET AL., CONG. RSCH. SERV., R43992, THE CONGRESSIONAL REVIEW ACT: FREQUENTLY ASKED QUESTIONS 1 (2021); *see also* Rule XXII, Standing Rules of Senate. These procedures are "deemed a part of the rules of each House," and either House may "change

1    the rules . . . at any time." 5 U.S.C. § 802(g).

2    As a general matter, the CRA's procedures apply to disapproval resolutions relating to an

3    agency "rule." *Id.* §§ 801, 802. For purposes of the CRA, "rule" "has the meaning given such term

4    in" the Administrative Procedure Act (APA), with certain CRA-specific exceptions. *Id.* § 804(3).

5    The APA, as relevant here, defines "rule" broadly to include "the whole or a part of an agency

6    statement of general . . . applicability and future effect designed to implement, interpret, or prescribe

7    law or policy." *Id.* § 551(4).

8    The CRA expressly precludes judicial review of, *inter alia*, whether an agency action is a

9    "rule" for purposes of the CRA: "No determination, finding, action, or omission under this chapter

10   shall be subject to judicial review." 5 U.S.C. § 805. Congress, not the courts, is therefore the

11   ultimate arbiter of whether the EPA waivers at issue were subject to the CRA.

12   <center>**ARGUMENT**</center>

13   **I.    California's vehicle emissions regulations are preempted.**

14   The United States has demonstrated likelihood of success on its claim that California's

15   heavy-duty truck emissions regulations at issue are preempted. This Court can easily reject

16   California's exotic constitutional defenses, which lack support in law or common sense.

17   **A.    The Clean Air Act preempts California's regulations.**

18   The preemption issue is simple: The Clean Air Act expressly preempts state vehicle

19   emissions standards for new motor vehicles or new motor vehicle engines. 42 U.S.C. § 7543(a).

20   California may seek a preemption waiver from EPA, but, without a waiver, California's standards

21   are preempted. *Id.* § 7543(b). Relevant here, California lacks preemption waivers for Advanced

22   Clean Trucks, Omnibus, and Advanced Clean Fleets regulations.

23   Although EPA initially granted waivers for the Advanced Clean Trucks and Omnibus

24   regulations, Congress abrogated them by statute under the CRA. Specifically, in May 2025, the

25   House and Senate each passed resolutions of disapproval by majority vote "under chapter 8 of title

26   5," which is the CRA. H.R.J. Res. 87 (Advanced Clean Trucks); H.R.J. Res. 89 (Omnibus). The

27   President signed the Resolutions into law on June 12, 2025. Pub. L. 119-15, 139 Stat. 65 (June 12,

28   2025); Pub. L. 119-17, 139 Stat. 67 (June 12, 2025). Each Resolution provides that the

1  corresponding EPA waiver is disapproved "under chapter 8 of title 5" and "shall have no force or

2  effect."

3        For example, the Advanced Clean Trucks resolution provides as follows:

4  **Joint Resolution**

5  Providing congressional disapproval under chapter 8 of title 5,
   United States Code ….

6

7  *Resolved by the Senate and House of Representatives of the United
   States of America in Congress assembled*, That Congress

8  disapproves the rule submitted by the Environmental Protection
   Agency relating to "California State Motor Vehicle and Engine
   Pollution Control Standards . . . Advanced Clean Trucks . . . Waiver

9  of Preemption" (88 Fed. Reg. 20688 (April 6, 2023)), and such rule

10  shall have no force or effect.

11  Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025); *see also* Pub. L. No. 119-17, 139 Stat. 67 (June

12  12, 2025) (Omnibus); U.S. Compl. ¶¶ 27-29, 82-86. The effect of these Resolutions is crystal clear.

13  The preemption waivers for Advanced Clean Trucks and Omnibus "shall have no force or effect."

14        As the Manufacturers explain, Congress also repealed the waiver for California's Advanced

15  Clean Cars II regulation, which contains provisions that apply to heavy-duty trucks. OEM Brief,

16  Dkt. No. 23, at 6, 10, 15. That regulation is preempted for the same reason as Advanced Clean

17  Trucks and Omnibus. *Id.* Finally, California concedes that it never obtained a preemption waiver

18  for its Advanced Clean Fleets rule, and it represents to this Court that "it will not enforce" that rule

19  "unless and until it receives a preemption waiver from EPA." Opp., Dkt. No. 73, at 2. All the

20  regulations are therefore preempted.

21        **B.    California's unprecedented constitutional arguments fail.**

22        California's response is that the Resolutions Congress enacted under the CRA are

23  unconstitutional. Opp. 20. According to California, congressional leadership unconstitutionally

24  deprived it of any right to participate in the national political process when Congress enacted the

25  Resolutions, even though California has far more representation in Congress than any other state.

26  California also argues that Congress's legislative procedures both improperly delegated legislative

27  power to EPA and usurped executive power from EPA. Each of these arguments, California insists,

28

1    "stems from the proposition" that EPA's preemption waivers "are not 'rules' that could be subject

2    to the CRA." *Id.* California's arguments are baseless.

3               **1.  This Court lacks jurisdiction to determine whether EPA waivers are "rules"**

4                    **or "orders" under the CRA.**

5          **a.**  At the outset, this Court lacks jurisdiction to resolve the core issue California disputes—

6    whether Congress correctly determined that that EPA disapproved preemption waivers were rules

7    subject to the CRA. The CRA expressly strips jurisdiction: "No determination, finding, action, or

8    omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. A determination

9    that these preemption waivers were "rules" for purposes of the CRA is a determination "under" the

10   CRA. *Bernhardt*, 946 F.3d at 564. And "enacting a joint resolution of disapproval is an action under

11   the CRA." *Id.* at 563.

12         Multiple courts of appeals have applied the CRA's jurisdiction-stripping provision even

13   where one party claims the CRA process was not followed. *Kan. Nat. Res. Coal. v. U.S. Dep't of*

14   *Interior*, 971 F.3d 1222, 1236 (10th Cir. 2020) (*KNRC*) (stating that § 805 "unambiguously

15   prohibits judicial review of any omission [or decision, finding, or act] by any of the specified

16   actors," including "agencies, the Comptroller General, the President, and Congress"); *Montanans*

17   *for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.) (recognizing

18   that § 805 "denies courts the power to void rules on the basis of agency noncompliance with the

19   Act"); *Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018) (*WATW*) (holding

20   that § 805 barred jurisdiction over claim that agency violated the CRA by publishing a rule fewer

21   than 60 days before it took effect); *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271

22   n.11 (10th Cir. 2007) (stating that § 805 "specifically precludes judicial review of an agency's

23   compliance with its terms"); *Foster v. USDA*, 68 F.4th 372, 379 (8th Cir. 2023) ("§ 805's broad

24   language covers all omissions under the CRA, including agency omissions"), *cert. granted,*

25   *judgment vacated on other grounds*, 144 S. Ct. 2707 (2024).

26         **b.**  California contends that this provision "does not forbid *any* challenges to the

27   Resolutions"—including statutory challenges—because EPA's preemption waivers are not "rules,"

28

1    and thus the Resolutions are not "action[s]" "under" the CRA. Opp. 20-21. This question-begging

2    argument is irrelevant because California asserts no statutory challenge to the Resolutions' validity.

3    If taken seriously, moreover, it would nullify § 805. The provision would never apply because every

4    party challenging a CRA action alleges that Congress or an agency somehow violated the CRA. If

5    California were correct, *Bernhardt*, *KMRC*, *Montanans*, *WATW*, *Via Christi*, and *Foster* all would

6    have come out differently. A litigant cannot so glibly circumvent the jurisdiction-stripping

7    provision simply by assuming the truth of its argument that Congress misinterpreted the CRA.

8        Not surprisingly, the Ninth Circuit has already rejected this kind of improper attempt to

9    evade the jurisdictional bar. In *Bernhardt*, the plaintiff claimed that the agency rule at issue was

10   "not eligible for disapproval" under the CRA because the agency failed to comply with the CRA's

11   timing requirements. 946 F.3d at 562-63. And the plaintiff argued, as California does here, that

12   because the rule was "not eligible for disapproval" under the CRA, "the Joint Resolution was not

13   enacted 'under' the CRA" for purposes of § 805's jurisdictional bar. *Id.* at 563. The court flatly

14   rejected this argument, concluding that the joint resolution was "an action under CRA." *Id* at 564.[1]

15       **c.** California also contends that the jurisdictional bar "lacks the clear statement needed to

16   foreclose a constitutional challenge." Opp. 20 (citing *Bernhardt* at 561). *Bernhardt* acknowledged

17   that, "[o]n its face," the text of § 805 "bars judicial review of all challenges to actions under the

18   CRA, including constitutional challenges." 946 F.3d at 561. But the court nevertheless addressed a

19   constitutional claim on the merits because "the Jurisdiction-Stripping Provision does not include

20   any *explicit* language barring judicial review of constitutional claims," so it "presume[d] that

21   Congress did not intend to bar such review." *Id.* (emphasis added).

22       The constitutional claims in this case, however, bear little resemblance to the constitutional

23   claim that the Ninth Circuit rejected on the merits in *Bernhardt*—which was, primarily, an

24   argument that the CRA *itself* impermissibly modified the legislative process set forth in Article I,

25

26

_____

27       [1] California attempts (Opp. 22) to rely on 5 U.S.C. § 806(a), which says "This chapter shall
     apply notwithstanding any other provision of law." That provision does not help California because
28   it says nothing about the scope of the jurisdiction-stripping provision.

1  Section 7 of the Constitution. Here, by contrast, what California labels as constitutional claims are

2  simply allegations that EPA and Congress misinterpreted *the CRA*.

3        Indeed, California trumpets that each of its constitutional claims "stems from the

4  proposition" that EPA's preemption waivers "are not 'rules' that could be subject to the CRA."

5  Opp. 20.  That question—whether the disapproved EPA preemption waivers were "'rules' that

6  could be subject to the CRA"—is precisely the type of "determination" "under" the CRA that

7  Congress unequivocally barred courts from determining. 5 U.S.C. § 805. Congress's language

8  could not be clearer. Because each of California's constitutional claims depends on a statutory

9  determination that the disapproved EPA preemption waivers were rules subject to the CRA, those

10  claims are barred.

11        That makes sense, too, because Congress enacted the CRA as "an exercise of the rulemaking

12  power of the Senate and House of Representatives," 5 U.S.C. § 802(g), consistent with its exclusive

13  constitutional authority to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2.

14  Congress, not this Court, is the exclusive judge of its own legislative procedures as a matter of

15  constitutional prerogative. *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*,

16  482 F.3d 1157, 1171-72 (9th Cir. 2007). A challenge "based on the asserted failure of Congress to

17  comply with its own procedural rules," which is what California ultimately asserts here, is "a non-

18  justiciable political question" that is "beyond [this Court's] power to review." *Consejo*, 482 F.3d at

19  1171-72 (declining to review claim that Congress, by not holding a hearing, failed to comply with

20  its own procedural rules).

21        And while California claims that the definition of "joint resolution" is "not a procedural

22  rule" (Opp. 23), the Senate's "vote on what qualifies for a fast-track procedure" (Opp. 25 (cleaned

23  up)) most certainly concerned procedural rules. The power to "vote on what qualifies for a fast-

24  track procedure" belongs to Congress alone. Congress exercised that power here with a bicameral

25  majority vote. That should be the end of the matter.

26        **2.  The political process theory fails.**

27        Regardless, California's arguments fail on the merits. Taking California's theories in

28  reverse order, California argues that "extraordinary defects in the national political process" render

the Resolutions "invalid under the Tenth Amendment." Opp. 29 (quoting *South Carolina v. Baker*, 485 U.S. 505, 512 (1988)). This argument fails for a simple reason: "the tenth amendment does not protect a State from being outvoted in Congress." *Nevada v. Watkins*, 914 F.2d 1545, 1556 (9th Cir. 1990).

California's argument is based on the thinnest of reeds. In *Baker*, the Supreme Court *rejected* a Tenth Amendment claim, reaffirming the rule that "States must find their protection from congressional regulation through the national political process," not the courts. 485 U.S. at 512. The Court suggested the "possibility" that "extraordinary defects in the national political process" might render a statute invalid but concluded it could not "identify or define the defects that might lead to such invalidation." *Id.* It then rejected the State's claim because it had "not even alleged that it was deprived of any right to participate in the national political process or that it was singled out in a way that left it politically isolated and powerless." *Id.*

No court to our knowledge has invalidated any statute under *Baker*'s dictum, and the Ninth Circuit has repeatedly rejected such claims. *See Nevada v. Watkins*, 914 F.2d 1545, 1556 (9th Cir. 1990); *Nevada v. Skinner*, 884 F.2d 445, 452 (9th Cir. 1989). In *Watkins*, the Ninth Circuit rejected Nevada's claim that a statute applicable only to Yucca Mountain in Nevada was invalid because Nevada lacked representation on a congressional committee. 914 F.2d at 1549, 1556-57. In doing so, the court questioned whether establishing a "political process" claim is even "possible," noting the view that *Baker* "unequivocally repudiate[d] the suggestion that the tenth amendment requires any substantive or qualitative analysis of the national political process." *Id.* at 1556.

Moreover, California cannot seriously contend it was "deprived of any right to participate in the national political process." *Baker*, 485 U.S. at 513. California's 54 members in Congress are more than sent by any other state—by far.[2] Nothing prevented each of those members from voting on whether to enact the Resolutions under the CRA.

---

[2] *See* U.S. Census Bureau, Apportionment Population and Number of Representatives by State: 2020 Census (Apr. 2021), https://www2.census.gov/programs-surveys/decennial/2020/data/apportionment/apportionment-2020-table01.pdf.

1    None of California's mud-at-the-wall arguments sticks. Because Congress itself voted to

2  use the CRA to repeal these EPA preemption waivers (*supra* p.4), California was not deprived of

3  the right to vote on the "pivotal step" of whether these EPA preemption waivers are "rules" under

4  the CRA. Opp. 29. Because "any member of Congress may ask the [Government Accountability

5  Office] to opine on whether [a preemption waiver] is a 'rule' subject to the CRA" (Opp. 8),

6  California cannot complain that "[n]o Member of Congress sought such a determination," Opp. 29.

7  Because there is no constitutional right to the Senate filibuster, *see Common Cause v. Biden*, 748

8  F.3d 1280, 1283 (D.C. Cir. 2014), California cannot complain that the Senate voted to use "fast-

9  track procedures" to enact the Resolutions. Opp. 31. And, more fundamentally, because challenges

10  to congressional procedure are nonjusticiable political questions (*supra* p.8), California's discourse

11  about a "point of order," a "second point of order," and "Senate leadership . . . overrul[ing] the

12  Parliamentarian," Opp. 30, is an issue for the political process, not for this Court.

13    At bottom, Congress enacted statutes by majority vote through bicameralism and

14  presentment. California's delegation participated in and lost that vote. That is a political problem,

15  not a judicial one: "[T]he tenth amendment does not protect a State from being outvoted in

16  Congress." *Watkins*, 914 F.2d at 1556.

17    ### 3.  The Executive delegation theory fails.

18    California next argues that Congress unconstitutionally delegated power to EPA "to direct

19  legislative procedure." Opp. 25. The theory appears to be that Congress allowed EPA to decide for

20  Congress whether the preemption waivers are subject to CRA procedures. Proof that Congress did

21  so is supposedly "apparent from remarks of Senator Capito" during Senate floor debate, and from

22  "Senator Lankford," who stated that "When an Agency says it is a rule," then "it is a rule." Opp.

23  26.

24    This argument is absurd. Congress, not EPA, "vote[d] on what qualifies for [a] fast-track

25  procedure" under the CRA. Opp. 25. Congress, not EPA, voted to enact the Resolutions. *Supra* p.4.

26  By virtue of each Member's vote, Congress's decision to use CRA procedures to enact legislation

27  was Congress's alone. That is the opposite of a nondelegation problem. *See generally FCC v.*

28  *Consumers' Rsch.*, 145 S. Ct. 2482, 2491 (2025).

California's conspiratorial-sounding evidence is also hard to take seriously. Opp. 25-26. Rarely have snippets from Senate floor debate taken on such constitutional significance. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) ("legislative history is not the law"); *Trump v. Hawaii*, 585 U.S. 667, 692 (2018) ("[F]loor statements by individual legislators rank among the least illuminating forms of legislative history.").

Insofar as the legislative history is relevant, the record refutes California's telling. Senator Thune, Majority Leader of the Senate, stated his own independent conclusion that the waivers "are clearly rules in substance given their nationwide impact and scope." 171 Cong. Rec. S3025, S3047 (daily ed. May 21, 2025). He further explained that the full Senate would "vote on what qualifies for th[e] fast-track procedure." *Id.* at S3048. Because there was "a disagreement among [the] Members" about whether the waivers are rules under the CRA, "it [was] appropriate for the Senate to speak as a body to the question—something the Senate does when questions over application of the rules arise." *Id.* at S3047. "That is what we are doing today," he said. *Id.* at S3048. Thus, rather than delegate "legislative procedure" to EPA (Opp. 25), Congress decided for itself that the CRA applied to these waivers, and decided for itself to use the CRA to enact statutes disapproving the waivers.

If that were not enough, California cites no precedent that remotely supports its nondelegation theory. It certainly cites no precedent authorizing courts to second-guess the votes of Senators to determine whether they were sufficiently independent of Executive Branch influence on a point of congressional procedure. Indeed, California's argument—which is ultimately "based on the asserted failure of Congress to comply with its own procedural rules"—is "a non-justiciable political question" that is "beyond [this Court's] power to review." *Consejo*, 482 F.3d at 1171-72; *see United States v. Ballin*, 144 U.S. 1, 5 (1892) ("The constitution empowers each house to determine its rules of proceedings."). California's theory fails at every level.

### 4. The Executive usurpation theory fails.

After arguing that Congress improperly delegated its authority to EPA, California then reverses course and argues that the Resolutions *usurp* Executive power because they "create no new substantive law," and instead dictate only "how pre-existing law applies to particular

circumstances." Opp. 24 (quoting *Bank Markazi v. Peterson*, 578 U.S. 212, 225 n.17 (2016)). According to California, an EPA waiver proceeding is an "adjudication under the Clean Air Act," and Congress "may not second-guess a different Branch's adjudications" without amending the law. Opp. 23-24. This argument fails, both because the Resolutions amended the law and because *Bank Markazi* applies to Article III adjudications, not administrative adjudications, and certainly not to broad policy questions about whether states or the federal government should regulate vehicle emissions for millions of people in states across the Nation.

   **a.**  First, even assuming (incorrectly) that *Bank Markazi* applies, its "amend the law" test would easily be satisfied. Under *Bank Markazi*, "Congress . . . may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative." 578 U.S. at 215. Although Congress may not "compel findings or results under old law," *id.* at 231 (cleaned up), a statute must be upheld if it does not "direct any particular findings of fact or applications of law . . . to fact." *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992). Courts must afford "a high degree of judicial tolerance for an act of Congress that is intended to affect litigation so long as it changes the underlying substantive law in any detectable way." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 991 (9th Cir. 1999).

   The Supreme Court has been extremely deferential to Congress in applying these principles. In *Bank Markazi*, for example, the Court upheld a statute that identified a "District Court's docket number," "designate[d] a particular set of assets," and "render[ed] them available to satisfy the liability and damages judgments" in the specific case. 578 U.S. at 215. The Court rejected the "flawed" argument that "there is something wrong with particularized legislative action," citing valid statutes that, for example, applied to "a single bridge," a "single oil tanker," or "abrogated [a] specific settlement agreement." *Id.* at 234. The Court has elsewhere upheld statutes directing federal courts to "promptly dismiss[]" pending suits over a specific piece of property, *Patchak v. Zinke*, 583 U.S. 244, 251 (2018) (plurality opinion), identifying pending cases by docket number and specifying how statutory requirements are met, *Robertson*, 503 U.S. at 434-35, and legalizing a specific bridge that the Court had previously deemed a nuisance, *Pennsylvania v. Wheeling and Belmont Bridge Co.*, 59 U.S. 421 (1855); *see also UFO Chuting of Haw., Inc. v. Young*, 380 F.

1    Supp. 2d 1166, 1169 (D. Haw. 2005) (statute "alter[ed] substantive law by changing [a statute's]

2    preemptive effect").

3        Here, the Resolutions do not "direct any particular findings of fact or applications of

4    law . . . to fact." *Robertson*, 503 U.S. at 438. The Resolutions, in fact, say nothing at all about any

5    facts. The Resolutions instead nullify the waivers as a matter of law by depriving them of "any

6    force or effect."

7        It also cannot fairly be disputed that this is a change in the law. The Ninth Circuit has

8    squarely held, in rejecting a separation of powers claim, that a CRA joint resolution "amend[s] the

9    substantive environmental law." *Bernhardt*, 946 F.3d at 562. As *Bernhardt* explains, because joint

10   resolutions under the CRA comply with "bicameralism and presentment," a "Joint Resolution is

11   enforceable as a change to substantive law." *Id.* The same reasoning applies here. Before the

12   Resolutions, the Clean Air Act did not preempt the Advanced Clean Trucks and Omnibus

13   regulations because they had received waivers from EPA. After the Resolutions, the Clean Air Act

14   preempts the regulations, and EPA may no longer issue a waiver "that is substantially the same" as

15   the waivers that Congress repealed, 5 U.S.C. § 801(b)(2). This easily passes the constitutional

16   threshold of changing the "substantive law in any detectable way." *Cook Inlet*, 166 F.3d at 991.

17       **b.**  Regardless, *Bank Markazi* is inapplicable. That line of cases concerns judicial power,

18   not executive power, and administrative agencies are fundamentally different from Article III

19   courts. Agencies "exercise no part of th[e] judicial power." *SEC v. Jarkesy*, 603 U.S. 109, 148

20   (2024) (Gorsuch, J., concurring). Unlike courts, they permissibly adjudicate only "public rights,"

21   not "private rights." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325,

22   334 (2018). And Congress's authority over administrative agencies is different from and broader

23   than its authority over the courts. Agencies "possess only the authority that Congress has provided,"

24   *Nat'l Fed'n of Indep. Bus. v. DOL*, 595 U.S. 109, 117 (2022), which means "an agency literally has

25   no power to act . . . unless and until Congress confers power upon it." *Merck Sharp & Dohme Corp.*

26   *v. Albrecht*, 587 U.S. 299, 315 (2019). Demonstrating the point, Congress routinely enacts private

27   laws directing administrative agencies, unlike courts, to take specific actions as to specific

28

individuals or property.[3] California cites no case extending *Bank Markazi* to the administrative law context, and it offers no reason for this Court to take that adventurous leap.

Nor would it make sense to do so here, as to Congress's repeal of an EPA preemption waiver under the Clean Air Act. Because of the way the Clean Air Act operates, a waiver authorizes California to regulate millions of people and allows other states to adopt California's regulations, potentially foreclosing federal regulation nationwide. *See* 42 U.S.C. §§ 7543(a), 7507. Determining whether states or the federal government should regulate motor vehicle emissions is a public policy issue of nationwide importance, not a particularized adjudication of individual rights. Look no further than the legislative record here. In passing the Resolutions, the Senate debated whether there should be "a near nationwide mandate on electric vehicle sales," 171 Cong. Rec. S3139 (daily ed. May 22, 2025) (statement of Sen. James Lankford), that would "affect all states," 171 Cong. Rec. S3086-87 (daily ed. May 21, 2025) (statement of Sen. Shelley Moore Capito), "cost the economy about $100 billion a year," "bury small businesses," and harm "[e]very American citizen," 171 Cong. Rec. S3018 (daily ed. May 21, 2025) (statement of Sen. John Barrasso). Preempting California's electric-vehicle quotas and other emissions regulations, which is what Congress did by repealing the waivers, is exactly the type of "general rule[] for the government of society" that Congress has the power to enact. *Fletcher v. Peck*, 10 U.S. 87, 136 (1810).

California thus mischaracterizes Section 209 when it claims that a "waiver proceeding is an adjudication" akin to granting a private party an individual license. Opp. 23. Regardless, even taking California's incorrect characterization, California cites no case suggesting Congress lacks power to abrogate a regulatory license by statute. California certainly cites no case suggesting that

---

[3] *See, e.g.*, H.R. 5826, 97th Cong., Priv. L. 97-55, 96 Stat. 2636 (1983) (directing the Secretary of Interior to deem a specific oil and gas lease "not to have terminated"); H.R. 3126, 97th Cong., Priv. L. 97-27, 96 Stat. 2623 (1982) (directing Secretary document a specific ship as "a vessel of the United States"); H.R. 6228, 98th Cong., Priv. L. 98-46, 98 Stat. 3434 (1984) (directing the Secretary of Commerce to extend the term of five patents); S.992, 102d Cong., Priv. L. 102-4, 106 Stat. 5149 (1992) (deeming an individual to be an employee transferred by EPA "from one official station to another"); H.R. 3903, 106th Cong., Priv. L. 106-5, 114 Stat. 3096 (2000) (directing the Secretary of Transportation to deem a vessel to be less than 100 gross tons for purposes of a specific statutory provision); *see* Congress.gov, *Statutes at Large and Private Laws*, https://www.congress.gov/private-laws/.

Congress lacks power to preempt a state air pollution law by repealing an agency's preemption waiver. Administrative agencies are subject to Congressional control, not the other way around.

**II.    The Clean Truck Partnership is a preempted regulatory enforcement device.**

Next, the CTP is an unlawful "attempt to enforce" California's preempted Advanced Clean Trucks, Omnibus, and Advanced Clean Fleets regulations. 42 U.S.C. § 7543(a). The Manufacturers amply demonstrate that the CTP is preempted. OEM Reply 9-11.

In short, the CTP is a regulatory enforcement device. It expressly incorporates the preempted regulations and requires manufacturer signatories to comply with them even if a court determines they are preempted. *See* CTP, Dkt. No. 1-2, App'x B. As California admits, the purpose and effect of the CTP is to enforce these regulations to realize the State's policy goal to reduce emissions. *See* Opp. 6-7. California agreed to exercise core regulatory power on its side of the partnership, by promising to provide the Manufacturers regulatory relief through amending its regulations. *Id.*; CTP, App'x A. And California enforces and implements the CTP through its regulatory power, such as by requiring certification of vehicles. Manufacturers Advisory Correspondence ECCD-2025-08, Dkt. No. 73-32, at 2.

California cannot avoid preemption by characterizing the CTP as a "voluntary agreement." Opp. 14. The cases California cites prove the point. In *American Trucking Associations, Inc. v. City of Los Angeles*, the Court identified the relevant preemption question as whether the government exercised regulatory authority or was instead acting as a market participant, not whether the agreement was entered voluntarily. 569 U.S. 641, 649 (2013); *see also Airlines for Am. v. City & County of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023) (government threatened the "use of civil penalties" that were "unavailable to private parties"). The exercise of regulatory power, as CARB is exercising here through the CTP, triggers preemption.

CARB's lead case is readily distinguishable. *See, e.g.*, *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1, 7 (1st Cir. 2000). For one thing, the court did not consider whether the agreement was an "attempt to enforce" a preempted regulation. For another, unlike the CTP, the emissions requirements were provided solely in the agreement, "rather than legislation or formal administrative regulations." *Id.* at 7. Finally, unlike here, the agreement

1  contained "contractual remedies in the event of nonperformance." *Id.* at 8.

2          Nor is California acting as a mere market participant here. It is not contracting for services

3  or spending money like an ordinary private actor. *See Engine Mfrs. Ass'n v. S. Coast Air Quality*

4  *Mgmt. Dist.*, 498 F.3d 1031, 1043 (9th Cir. 2007). And the CTP is not an "everyday contractual

5  arrangement[]." *Am. Trucking*, 569 U.S. at 650. CARB promised regulatory relief that only it could

6  provide to obtain compliance with its (unlawful) regulations that no private party can impose.

7  California is acting as a State, not a market actor.

8  **III.    The United States is suffering irreparable harm and the equities and public interest**
9          **favor an injunction.**

10         The United States has demonstrated two distinct bases for irreparable harm: (1) "per se

11 irreparable harm" based on California's attempt to usurp federal law to enforce its own vehicle

12 emissions standards and to require its own certification for new motor vehicles; and (2) harm to the

13 United States' parens patriae interests in safeguarding the American public by ensuring certainty

14 in the heavy-duty truck sector while protecting the environment. U.S. Joinder, Dkt. No. 57, at 2-4.

15 California disputes but does not directly grapple with either argument.

16         ***Per Se Irreparable Harm.*** A complaint "asserts an injury to the United States" if it alleges

17 an "injury to [the United States'] sovereignty arising from violation of its laws." *Vt. Agency of Nat.*

18 *Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *see also United States v. Idaho*, 623

19 F. Supp. 3d 1096, 1107 (D. Idaho 2022) ("[T]he United States' sovereign interests are harmed when

20 its laws are violated."); *United States v. California,* No. 2:19-cv-02142 WBS EFB, 2020 WL

21 8183945, at *3 (E.D. Cal. Feb. 26, 2020) ("The United States has plausibly alleged its claimed

22 injury—the usurpation of federal authority to conduct foreign affairs."). Interfering with exclusive

23 federal authority not only injures the United States but it also inflicts a "per se irreparable harm."

24 *United States v. Texas*, 719 F. Supp. 3d 640, 695 (W.D. Tex. 2024); *accord United States v.*

25 *Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (finding irreparable harm to the United States if Arizona

26 enforced its preempted laws), *rev'd on other grounds by* 567 U.S. 387 (2012).

27         Here, California is usurping exclusive federal authority, and thereby irreparably injuring the

28 United States, by requiring Manufacturers to obtain emissions certifications from CARB for the

1    Advanced Clean Trucks and Omnibus standards without a valid EPA waiver. *See* OEM Reply 7-

2    12. By doing so, California is both unlawfully enforcing and attempting to enforce a state emissions

3    "standard" and unlawfully "requir[ing] certification . . . relating to the control of emissions." 42

4    U.S.C. § 7543. This usurpation of exclusive federal authority "irreparabl[y] harm[s]" United States'

5    sovereignty. *Arizona*, 641 F.3d at 366.

6        In response, California insists it has repented. The State asserts it is "not currently requiring

7    manufacturers to meet [the preempted] standards," so there is "no need for an injunction *now*."

8    Opp. 1, 18-20. But this is simply smoke and mirrors. California claims to offer manufacturers three

9    certification options to sell new trucks in the State: (1) certify to the preempted Advanced Clean

10   Trucks and Omnibus regulations, (2) certify to "earlier-adopted California standards," which

11   California is currently reactivating and amending in an emergency rulemaking, or (3) certify to

12   EPA's federal standards. Opp. 11. Yet all three of these "options" are preempted.

13       The first is preempted because of Congress's Resolutions repealing the waivers for

14   Advanced Clean Trucks and Omnibus. The third is preempted because California does not claim

15   to have a waiver to require certification to EPA's federal standards. And the second option is

16   preempted because California has not demonstrated that its "earlier-adopted" standards have

17   "extant preemption waivers," contrary to its naked assertion. Opp. 11. As California admits in its

18   emergency rulemaking proceeding: "CARB has *no* operative emissions standards to which it can

19   certify new motor vehicles to be sold in the State." CARB Emergency Vehicle Emissions

20   Rulemaking Public Notice, Dkt. 73-33, at 3. And California cannot conjure a preemption waiver

21   by reenacting and amending "earlier-adopted" standards. As EPA has explained to CARB, it must

22   obtain a new waiver if it adopts standards in its emergency rule that "differ in any way from

23   provisions already subject to an extant preemption waiver."[4] Further, an old waiver is no longer

24

25

26       [4] *See* EPA Comment on CARB's Emergency Amendment and Adoption of Vehicle
27   Emissions Regulation, dated September 27, 2025, available at
     https://www.epa.gov/system/files/documents/2025-09/usepa-comment-on-carb-emergency-
28   amendment-and-adoption-of-vehicle-emissions-regulation.pdf.

1    valid "if a regulation becomes ineffective at any time, whether through the passage of time, repeal,

2    or by any other means."[5] *See also* OEM Reply 5-7.

3        Separately, even if California had a waiver for option two or three, California is still causing

4    irreparable harm because CARB is insisting it will retroactively enforce Advanced Clean Trucks

5    and Omnibus if CARB prevails at the end of this litigation. Lang Decl., Dkt. 73-30, ¶ 45. The

6    Manufacturers explain the threat, risks, and potential penalties in detail, including a retroactive

7    "adjusted penalty of up to $48,788 per vehicle sold." OEM Reply 9. CARB's threats force industry

8    to certify new vehicles to the preempted standards now or face substantial fines later, an "offer

9    which can not, in practical effect, be refused." *Metro. Taxicab Bd. of Trade v. City of New York*,

10   633 F. Supp. 2d 83, 99 (S.D.N.Y. 2009), *aff'd*, 615 F.3d 152 (2d Cir. 2010). This conduct is an

11   attempt to enforce a preempted standard, which includes preliminary acts falling short of

12   enforcement, *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 257 (2004),

13   and it thereby causes irreparable harm to the United States by usurping exclusive federal authority.

14   This Court should preliminarily enjoin the standards, and should expressly enjoin retroactive

15   enforcement during the time the injunction is in effect. *See* OEM Reply 16-18.

16       The court should also enjoin enforcement of the CTP because it causes irreparable harm for

17   the same reason—it usurps exclusive federal authority where California lacks a preemption waiver.

18   None of California's arguments applies to the United States's sovereign injury. The United States

19   did not voluntarily enter into the CTP, certainly does not have "unclean hands," and has no need to

20   seek a supposed contract remedy (Opp. 12-14) because the United States did not enter into the CTP.

21   Instead, California used its regulatory power to adopt the CTP as a regulatory enforcement device

22   for the Advanced Clean Trucks and Omnibus regulations, which are now preempted. California

23   refuses to acknowledge the unlawfulness of the CTP, and refuses to stipulate that it will not enforce

24   the CTP. For these reasons, the CTP should be enjoined.

25       ***Irreparable Harm to Parens Patriae Interests***. "[T]he Federal Government [is] the ultimate

26   parens patriae of every American citizen." *South Carolina v. Katzenbach*, 383 U.S. 301, 324

27   _____

28   [5] *Id.*

(1966). With respect to federal law, "the United States . . . represents [the American People] as parens patriae," *Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923), and has standing to assert "quasi-sovereign" injuries on behalf of the public—including an injury to the "economic" well-being of a "substantial segment" of the population, *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).

Courts have found irreparable harm when the lack of certainty makes it impossible for businesses to make strategic business decisions. See, e.g., *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020) (affirming preliminary injunction where challenged rule "forces plaintiffs to overhaul their programs and pursue more complex and time-and-resource intensive" processes). If businesses face irreparable harms due to uncertainty, a fortiori, then the United States suffers irreparable injury to its parens patriae interests to take care of our economic well-being when a state introduces regulatory chaos into our markets.

Such is the case here. By refusing to yield to the supremacy of federal emissions standards, California has disrupted the regulatory environment for emissions standards in an industry vital to our national economy: trucking. *See, e.g.*, U.S. Joinder 3-4 (citing declarations about regulatory uncertainty). And the economic harms are not confined to that industry. As the truck manufacturers explain, they are reaching a tipping point where they will be forced to forfeit significant investments, with deleterious "upstream and downstream" effects. OEM Reply 13-15. The United States has a manifest interest in preventing those harmful effects. Instead, the United States has promoted policies to safeguard our markets, which necessarily depend upon predicable legal rules. Regulatory certainty promotes "affordable and reliable" markets that are a cornerstone of the United States' current economic policy. See, e.g., Exec. Order No. 14260, § 1, 90 Fed. Reg. 15513 § 1 (Apr. 8, 2025). The United States made this policy by "careful[ly] balanc[ing]" environmental protection and "economic growth" when Congress revoked the preemption waivers in favor of uniform national emissions standards. U.S. Joinder 3 (citing *City of New York v. Chevron Corp.*, 993 F.3d 81, 93 (2d Cir. 2021)). Thus, by inflicting significant uncertainty and market-disorienting effects by refusing to follow federal emissions standards, CARB is irreparably injuring the United States' parens patriae interests.

California downplays these interests, claiming that the United States' asserted parens patriae injuries derive from the truck manufacturers' asserted harms, but that is incorrect. Opp. 18. That is incorrect: the self-evident regulatory uncertainty and harm to affected markets is distinct from the manufacturers' individual economic harms. This Court need look no further than the flurry of activity that CARB has launched in reaction to this lawsuit. Constantly shifting its regulatory goalposts, CARB inflicts significant "economic" harms on affected markets and a "substantial segment" of our population, including the manufactures. *Snapp*, 458 U.S. at 607.

***The Equities and Public Interest.*** The equities and public interest factors merge when the United States is a party. *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020). California has no interest in violating federal law by attempting to enforce its preempted regulations directly or through the CTP. *Arizona*, 641 F.3d at 366. Therefore, the State will suffer no harm from a preliminary injunction prohibiting its unlawful conduct. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

The per se irreparable harm to the United States and the public tips sharply in favor of an injunction here. Therefore, in the Ninth Circuit, the United States need show only that there are at least serious questions on the merits of whether the California's regulations and the CTP are preempted. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## CONCLUSION

The motion for a preliminary injunction should be granted.

1

Respectfully submitted,

2

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

3

4

Dated: September 30, 2025

*/s/ David Mitchell*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

5

6

ERIC GRANT
*United States Attorney*
EDWARD A. OLSEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
(916) 554-2821

JOHN K. ADAMS
DAVID D. MITCHELL
United States Department of Justice
Environment & Natural Resources Div.
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5905
 robert.stander@usdoj.gov
 john.adams3@usdoj.gov
 david.mitchell@usdoj.gov

*Counsel for Intervenors-Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28