GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5395
Facsimile:    640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8293
Facsimile:    415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone:    202.955.8500
Facsimile:    202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*
(additional counsel on signature pages)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,

        Plaintiffs,

        v.

CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,

        Defendants,

        v.

THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

        Plaintiffs-Intervenors.

Case No. 2:25-cv-02255-DC

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Judge:        Hon. Dena Coggins
Action Filed:    August 11, 2025

Gibson, Dunn & Crutcher LLP

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.   Plaintiffs Are Likely to Prevail on the Merits of Their Preemption Challenges ...................... 3

   A.   ACC II, ACT, and Omnibus are Preempted ............................................................. 4

   B.   CARB Lacks Authority to Require Certification of New Vehicles ...................................... 6

   C.   CARB's Attempts to Enforce Its Preempted Standards Must Be Enjoined ......................... 7

     i.   CARB's August and September Efforts to Enforce Preempted Standards ...................... 8

     ii.   The CTP, EO 27-25, and May MAC Are Also Attempts to Enforce ............................. 10

II.   Plaintiffs Face Irreparable Harm Redressable by Injunctive Relief ........................................ 12

   A.   Attempted Enforcement of Preempted Regulations Irreparably Harms Plaintiffs .............. 13

   B.   Plaintiffs Face Irreparable Harm from Enforcement of the CTP ...................................... 15

   C.   Plaintiffs' Injuries are Redressable by An Injunction from This Court .............................. 16

III.   Plaintiffs Are Likely to Prevail on Their First Amendment Claims ..................................... 19

CONCLUSION ..................................................................................................................... 20

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Agency for Int'l Dev. v. All. for Open Society Int'l, Inc.*,
    570 U.S. 205 (2013) ..............................................................................................................19

*Airlines for Am. v. City & Cnty. of San Francisco*,
    78 F.4th 1146 (9th Cir. 2023) ..............................................................................................10

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ..............................................................................................15

*Am. Motorcyclist Ass'n v. Watt*,
    534 F. Supp. 923 (C.D. Cal. 1981) ......................................................................................18

*Am. Trucking Ass'n, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009).............................................................................................15

*Am. Trucking Ass'n, Inc. v. City of Los Angeles, Ca.*,
    569 U.S. 641 (2013)..............................................................................................................10

*American Airlines, Inc. v. Wolens*,
    513 U.S. 219 (1995)..............................................................................................................11

*Ass'n of Int'l Manuf., Inc. v. Comm'r, Mass. Dep't of Env. Prot.*,
    208 F.3d 1 (1st Cir. 2000)..............................................................................................10, 11

*Bennett v. Isagenix International LLC*,
    118 F.4th 1120 (9th Cir. 2024) ............................................................................................16

*Boardman v. Pac. Seafood Grp.*,
    822 F.3d 1011 (9th Cir. 2016)..............................................................................................15

*California v. United States*,
    Case No. 4:25-cv-04966-HSG ...............................................................................................5

*Chamber of Com. of United States v. Becerra*,
    438 F. Supp. 3d 1078 (E.D. Cal. 2020)................................................................................13

*City & Cnty. of San Francisco v. Trump*,
    783 F. Supp. 3d 1148 (N.D. Cal. 2025) ...............................................................................13

*City & Cnty. of San Francisco v. Trump*,
    897 F.3d 1225 (9th Cir. 2018)..............................................................................................11

*City of Los Angeles v. Sessions*,
    No. 18-cv-7347-R, 2019 WL 1957966 (C.D. Cal. Feb. 15, 2019) .......................................15

ii

Gibson, Dunn &
Crutcher LLP

*Ctr. for Biological Diversity v. Bernhardt*,
  946 F.3d 553 (9th Cir. 2019)........................................................................................5

*E. Bay Sanctuary Covenant v. Garland*,
  994 F.3d 962 (9th Cir. 2020)......................................................................................14

*Ellenburg v. Brockway, Inc.*,
  763 F.2d 1091 (9th Cir. 1985)....................................................................................16

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
  541 U.S. 246 (2004)......................................................................................................8

*F.B.I. v. Fikre*,
  601 U.S. 234 (2024)....................................................................................................12

*Friends of Earth v. Laidlaw*,
  528 U.S. 167 (2000)....................................................................................................12

*Gilder v. PGA Tour, Inc.*,
  936 F.2d 417 (9th Cir. 1991)......................................................................................17

*Kansas Nat. Res. Coal. v. United States Dep't of Interior*,
  971 F.3d 1222 (10th Cir. 2020)....................................................................................5

*Koontz v. St. Johns River Water Mgmt. Dist.*,
  570 U.S. 595 (2013)...............................................................................................19, 20

*Labrador v. Poe by & through Poe*,
  144 S. Ct. 921 (2024) (Kavanaugh, J., concurring in the grant of stay) .........................18

*Legal Servs. Corp. v. Velasquez*,
  531 U.S. 533 (2001)....................................................................................................19

*Marshall Field & Co. v. Clark*,
  143 U.S. 649 (1892)......................................................................................................5

*Metro. Taxicab Bd. of Trade v. City of New York*,
  633 F. Supp. 2d 83 (S.D.N.Y. 2009), *aff'd on other grounds*, 615 F.3d 152 (2d Cir.
  2010) .........................................................................................................................8, 9

*Montanans for Multiple Use v. Barbouletos*,
  568 F.3d 225 (D.C. Cir. 2009) (Kavanaugh, J.)............................................................5

*New Jersey v. Trump*,
  No. 1:25-cv-10139 (D. Mass. Jan. 21, 2025) ..............................................................11

*NRA v. Vullo*,
  602 U.S. 175 (2024)....................................................................................................19

*Ocean Garden, Inc. v. Marktrade Co.*,
  953 F.2d 500 (9th Cir. 1991)......................................................................................17

iii

Gibson, Dunn &
Crutcher LLP

*Oklahoma Operating Co. v. Love*,
  252 U.S. 331 (1920) ................................................................................................17

*Powell v. SEC*,
  149 F.4th 1029 (9th Cir. 2025) ...............................................................................20

*Pub. Utilities Comm'n of State of Cal. v. FERC*,
  100 F.3d 1451 (9th Cir. 1996) .................................................................................12

*Schwenk v. Hartford*,
  204 F.3d 1187 (9th Cir. 2000) ...............................................................................3, 4

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
  240 F.3d 832 (9th Cir. 2001) ...................................................................................14

*Turner Broad Sys., Inc. v. F.C.C.*,
  507 U.S. 1301 (1993) (Rehnquist, J., in chambers) ................................................5

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) .................................................................................19

*United States v. Ballin*,
  144 U.S. 1 (1982) ......................................................................................................5

*United States v. Howald*,
  104 F.4th 732 (9th Cir. 2024) ...................................................................................4

*United States v. Mancuso*,
  139 F.2d 90 (3d Cir. 1943) ......................................................................................17

*United States v. Texas*,
  No. 21-588 (Nov. 1, 2021) .......................................................................................17

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) .............................................................................8, 18

*Villas at Parkside Partners v. City of Farmers Branch*,
  577 F. Supp. 2d 858 (N.D. Tex. 2008) ....................................................................13

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) (Roberts, C.J., concurring in part) ..........................................17

*WildEarth Guardians v. Montana Snowmobile Association*,
  790 F.3d 920 (9th Cir. 2015) ...................................................................................11

*Williams v. United States*,
  426 F.2d 253 (9th Cir. 1970) .....................................................................................5

**Statutes**

5 U.S.C. § 805 ....................................................................................................................5

iv

Gibson, Dunn &
Crutcher LLP

42 U.S.C. § 7521(a)(3)(C) ...................................................................................................20

42 U.S.C. § 7543(a) ....................................................................................................1, 6, 8

42 U.S.C. § 7543(b)(2)..........................................................................................................7

Cal. Health & Safety Code § 43154(a)(1) ............................................................................9

**Constitutional Provisions**

U.S. Const. amend. I .......................................................................................11, 18, 19, 20

v

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

Plaintiffs are caught in the crossfire between the United States's revocation of California's heavy-duty truck emissions standards and Defendants' continued enforcement of these preempted rules.  Federal laws passed by Congress and signed by the President (the "CRA Resolutions") revoked California's authority to regulate emissions for new heavy-duty trucks.  As a result, the Clean Air Act prohibits California from requiring state certification of these vehicles and from "attempt[ing] to enforce" the state standards Congress rejected.  42 U.S.C. § 7543(a).  Undeterred, Defendants have doubled down, ramping up threats of severe financial penalties if Plaintiffs refuse to comply with California's preempted regulatory regime.  This Court should enter a preliminary injunction to prevent Defendants from violating federal law and protect Plaintiffs from immediate, irreparable harm.

Plaintiffs are likely to succeed in challenging Defendants' attempts to exercise regulatory authority that either the CRA Resolutions revoked or that they never had at all.  The legal issue is straightforward: The CRA Resolutions are federal law, no less than the Clean Air Act itself.  And Defendants do not dispute that under the CRA Resolutions, California's emissions standards and certification requirement are preempted.  Federal statutes are presumptively constitutional and enforceable, and until Defendants obtain an injunction enjoining the CRA Resolutions, which they have not sought, they must comply with federal law.  California is challenging the CRA Resolutions in the Northern District of California, but has not sought an injunction there.  Defendants cannot require OEMs to conform their conduct to California's preempted laws during the pendency of that litigation.  Allowing Defendants to do so would permit them to effectively nullify federal legislation merely by filing a lawsuit.  This end-run around bedrock principles of federal supremacy cannot stand.

Defendants offer no meaningful defense of their preempted standards in this case.  Yet Defendants have escalated enforcement efforts since Plaintiffs filed this motion.  Citing an "unprecedented degree of uncertainty," Dkt. 73-33, at 2, CARB has twice sought to entrench its regulatory scheme in response to Plaintiffs' claims.  In August, CARB issued a new regulatory guidance document (the "August MAC"), which cited this litigation and again asserted that certification is required for heavy-duty trucks notwithstanding federal law prohibiting that requirement.  *See* Dkt. 73-32.  Then, the day

before Defendants filed their Opposition, CARB commenced an Emergency Rulemaking, *see* Dkt. 73-33, attempting to insert new emissions standards (a novel patchwork of antiquated standards) into the California Code of Regulations.  With the August MAC and Emergency Rulemaking, CARB supposedly offered "alternative pathways" for certification.  *See* Dkt. 73-32, at 3.  But the August MAC makes clear that CARB threatens to punish any OEM that does not fully comply with the California emissions standards expressly preempted by the CRA Resolutions.  The Emergency Rulemaking would turn that threat into law.

That leaves Plaintiffs with three bad options, all of which cause irreparable harm:  (1) Defy the Department of Justice's cease-and-desist letter by fully complying with California's preempted emissions rules and certification requirements, thereby incurring significant costs as well as lost sales and customer goodwill, (2) risk significant retroactive fines by selling EPA-certified or "alternative pathway[]" products during the pendency of this lawsuit, or (3) cease selling EPA-certified products in California altogether.  By threatening enforcement for any pathway other than the first (full compliance with preempted rules), Defendants seek to force OEMs to comply with federally preempted state standards.  Defendants' insistence that they are not "currently" attempting enforcement ignores reality.

Defendants' attempt to defend their conduct by invoking the Clean Truck Partnership ("CTP") falls flat.  The CTP bears no resemblance to the private contracts at issue in the cases on which Defendants rely, because from the beginning it was, and today remains, part and parcel of the state's now-preempted *regulatory* structure.  The CTP incorporates now-preempted state emissions standards, requires certification under now-preempted California law, and threatens statutory penalties for non-compliance.  And CARB agreed in the CTP to exercise its *regulatory* authority in specific ways—actions that no private party or market participant could possibly perform.  In short, CARB's reliance on the CTP is just another attempt to enforce California's now-preempted emissions standards, which is why the Department of Justice has ordered the Plaintiffs to cease complying.

From the outset, Defendants have attempted to evade a preliminary injunction by insisting they are not enforcing (or attempting to enforce) their preempted emissions standards, while simultaneously threatening Plaintiffs with retroactive penalties should Plaintiffs fail to comply.  At the same time,

2

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02255-DC

California has never sought preliminary relief to enjoin the CRA Resolutions. Rather, Defendants are playing for time because they believe time is on their side: Without certainty now, Plaintiffs may be forced to certify to CARB's illegal emissions standards if they wish to sell product in California in 2026 and for the foreseeable future. That decision must be made almost immediately: October 31 is the final business day to apply for a California certification for it to be granted by the start of model year 2026. Whether an OEM has started certification or not, CARB's conduct imposes an impossible choice: Take a high-risk gamble on the outcome of California's litigation by selling EPA-certified vehicles, or remove EPA-certified product from the California market. All OEMs must begin production planning now and need certainty. *See* Mot. to Expedite, Dkt. 64, at 2–3. If Plaintiffs do not receive an answer immediately, they will effectively be denied relief.

This Court should end Defendants' enforcement threats by preliminarily enjoining them from enforcing or attempting to enforce preempted law, including a bar on retroactive enforcement based on conduct occurring during the period of the injunction, and from continued attempts to require Plaintiffs to certify heavy-duty trucks under preempted state standards.

## ARGUMENT

### I.    Plaintiffs Are Likely to Prevail on the Merits of Their Preemption Challenges

Defendants' Opposition confirms that Plaintiffs are likely to succeed on the merits. Defendants do not dispute that Congress has expressly revoked CARB's preemption waivers through the CRA Resolutions. And because the CRA Resolutions, like all other federal laws, are presumptively valid, California's agencies and officials are bound to adhere to them unless and until a Court declares them unconstitutional. *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000). As the Ninth Circuit explained when adjudicating a state official's qualified immunity defense:

> It is well-established that acts of Congress enjoy a strong presumption of consti-tutionality and that newly-passed statutes do not require judicial ratification in order to take effect . . . . Under this rule, state officials—like all other persons—*are responsible for obeying a law passed by Congress unless the Supreme Court or, at a minimum, a United States Court of Appeals or district court in the circuit or district in which the state official performs his duties, strikes down the law as unconstitutional*. . . . Thus, [defendant] was required to presume the statute's constitutionality and conform his conduct to that law. *State officials are*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02255-DC

> *certainly not entitled, as [defendant] apparently believes, to ignore a new federal law in the hopes that a court will subsequently strike it down.*

*Id.* (internal citations omitted) (emphasis added); *see United States v. Howald*, 104 F.4th 732, 736 (9th Cir. 2024) (noting "presumption of constitutionality" for federal legislation).

Contrary to these principles, CARB continues to claim regulatory power it no longer has by reasserting its certification role in two separate manufacturers' guidance documents and most recently in an Emergency Rulemaking (filed hours before Defendants' Opposition).[1]  *See* Dkt. 73-33. Defendants pair that improper enforcement of preempted laws with a threat to punish OEMs who fail to certify to California's preempted standards with retroactive penalties and other retaliatory actions, functionally conditioning California sales on unlawful certification.  These acts each violate Section 209(a) of the Clean Air Act and compel immediate relief.

### A.  ACC II, ACT, and Omnibus are Preempted

Defendants concede that (i) without waivers, CARB's emissions standards are expressly preempted by the Clean Air Act, (ii) the Clean Air Act's express preemption of emissions standards that lack waivers is lawful and constitutional, and (iii) the CRA Resolutions passed by both houses of Congress and signed by the President on their face revoke the waivers for the regulations at issue.  *See* Opp. 22 ("This is not to say that Congress accomplished nothing through the Resolutions, whose clear purpose was to revoke the three subject EPA waivers.").  As one CARB Board member put it when discussing another CARB regulation without a waiver, "[w]ithout federal approval, the regulation would have been a zombie: dead on its feet, but still scaring the living."[2]  Those concessions alone confirm Plaintiffs are likely to succeed on the merits.

Defendants' sole merits defense—that the CRA Resolutions are illegal—is both irrelevant to

---

[1] The Truck and Engine Manufacturer Association ("EMA") and OEMs have filed comments objecting to CARB's Emergency Rulemaking.  These comments will be posted by CARB in the normal course on the rulemaking page, https://ww2.arb.ca.gov/rulemaking/2025/emergencyvehemissions.  We attach copies here for the Court's convenience. *See* Ex. A (Daimler Comment), Ex. B (EMA Comment), Ex. C (International Comment).

[2] Dean Florez, *Why California recently revised its clean air regulations for zero-emission trucks*, The Sacramento Bee (May 6, 2025) https://www.sacbee.com/opinion/op-ed/article305738891.html.

Gibson, Dunn &
Crutcher LLP

this motion and wrong.  *See* Opp. 20.  "[L]ike all Acts of Congress," the CRA Resolutions are "presumptively constitutional.  As such, [they] should remain in effect pending a final decision on the merits by this Court." *Turner Broad Sys., Inc. v. F.C.C.*, 507 U.S. 1301, 1301 (1993) (Rehnquist, J., in chambers); *Williams v. United States*, 426 F.2d 253, 255 (9th Cir. 1970) ("presumption of validity attaches to an Act of Congress").  That presumption is strong in a normal case; it is insurmountable here.  Federal law expressly strips federal courts of jurisdiction to review any action under the CRA. *See* 5 U.S.C. § 805 ("No determination, finding, action, or omission under this chapter shall be subject to judicial review.").  Whether the Executive properly submitted a rule under the CRA falls within the heartland of that prohibition.  *See Kansas Nat. Res. Coal. v. United States Dep't of Interior*, 971 F.3d 1222, 1235 (10th Cir. 2020) (no jurisdiction to review agency determination on whether agency action is a rule under the CRA); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.) (Section 805 "denies courts the power to void rules on the basis of agency non-compliance with the Act"); *see also* Plaintiff-Intervenors' Br., Dkt. 74 at 5–7.

Regardless, Defendants' arguments about the procedures used to pass the CRA Resolutions are non-justiciable and meritless.  The CRA Resolutions were passed by a majority of both chambers of Congress, signed by the President, and are now federal law coequal to the Clean Air Act.  As the Ninth Circuit explained when rejecting a similar argument, a joint resolution under the CRA complies "with the process of bicameralism and presentment" required by the Constitution for valid legislation, and therefore "is enforceable as a change to substantive law." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 (9th Cir. 2019); *see also United States v. Ballin*, 144 U.S. 1, 5–6 (1982); *Marshall Field & Co. v. Clark*, 143 U.S. 649, 671–73 (1892).  As explained more fully by Plaintiff-Intervenors, Dkt. 74 at 8–15, and incorporated by reference, Plaintiffs are likely to prevail in showing ACC II, ACT, and Omnibus are preempted because the CRA Resolutions are constitutional and binding federal law.[3]

---

[3] The United States House of Representatives has similarly filed an amicus brief in the Northern District of California matter, arguing that California's claims are barred by Section 805 and are nonjusticiable. *California v. United States*, Case No. 4:25-cv-04966-HSG, Brief of U.S. House of Representatives as Amicus Curiae in Support of Defendants' Motion to Dismiss, Dkt. 138-1 (N.D. Cal.).

## B. CARB Lacks Authority to Require Certification of New Vehicles

Contrary to Defendants' argument, Opp. 18, CARB's latest regulatory maneuvers—the August MAC and Emergency Rulemaking—do not fix Defendants' preemption problem because those actions both violate the Clean Air Act and confirm that Defendants will impose preempted certification requirements unless enjoined by this Court. CARB neatly summarized Plaintiffs' position in its Emergency Rulemaking: "CARB has *no* operative emissions standards to which it can certify new motor vehicles to be sold in the State." Opp. Ex. B3, Dkt. 73-33, at 3. That reality is dispositive, because Section 209(a) provides that, for new vehicles and engines, "[n]o State shall require certification . . . as condition precedent to [] initial retail sale." 42 U.S.C. § 7543(a).[4]

As Defendants concede, the CRA Resolutions erased CARB's waivers for ACT, ACC II, and Omnibus, Opp. 10, eliminating these standards as a potential basis for requiring heavy-duty vehicle or engine certification. In an attempt to fill this gap, CARB initiated an Emergency Rulemaking on September 15, explicitly stating that this is an attempt to create authority over heavy-duty trucks and thereby require state certification to California emissions standards. *See* Opp. 11. But CARB's attempt fails because, as the opening sentence of the Emergency Rulemaking explains, its purpose is to "adopt new sections" of the California Code of Regulations. Opp. Ex. B3, Dkt. 73-33, at 1. The Emergency Rulemaking itself therefore is preempted under Section 209(a)'s command that "[n]o State . . . shall adopt . . . any standard relating to the control of emissions . . . ." 42 U.S.C. § 7543(a). Adopting new regulatory sections facially requires a preemption waiver before any attempt to enforce the standards can take place given the plain language of Section 209(a)—yet CARB has no waiver.

CARB tries to evade federal law by counterfactually asserting its new standards are "earlier-adopted standards, which have extant federal preemption waivers not subject to the recent

---

[4] Historically, EPA waived this statutory prohibition on certification requirements for California when the state had a waiver of preemption for emissions standards governing a particular class of vehicles. *See, e.g.*, 50 Fed. Reg. 35,122, 35,123 (Aug. 29, 1985) ("[S]ince California has received waivers of federal preemption for its motor vehicle standards and certification procedures, it is therefore free to set conditions precedent to registration, titling and sale of motor vehicles without … a separate waiver determination."). But with no waivers for emissions standards governing heavy-duty trucks now, California is prohibited from requiring state law certification; federal certification by EPA is the basis for nationwide sale of heavy-duty trucks.

Gibson, Dunn & Crutcher LLP

congressional resolutions." Opp. Ex. B3, Dkt. 73-33, at 2–3. First, this is belied by CARB's own admission that it is "adopt[ing] new sections" of the regulations. *Id.* at 1. Second, this is a new rule not just in name, but in substance. The "new sections" of the California Code of Regulations are not a cohesive rule that has been granted a waiver by EPA, but instead a hodgepodge of separate earlier emissions standards—including tailpipe emissions standards from 2005 and 2010 as well as 2013 on-board diagnostic standards—with waivers granted at separate times. *See id.* at 5 nn.7, 9. And it imposes different requirements on manufacturers for model year 2026 than were in place on September 21 without any lead-time for implementation. *See* Potter Reply Decl. ¶ 8.[5]

As a newly adopted rule presenting a new combination of standards that change the applicable standard for current and future model years, this Emergency Rule does not benefit from any "extant preemption waivers," Opp. 1; none of the past waivers were issued for anything that resembles this new, prospective rule. The Emergency Rule therefore requires a new preemption waiver from EPA, which CARB has neither sought nor received.[6] Any attempt to enforce the rule is therefore barred by Section 209(a). And without this last-ditch effort, CARB lacks any valid emissions standards on which to base a requirement for certification.

### C. CARB's Attempts to Enforce Its Preempted Standards Must Be Enjoined

Current federal law allows Plaintiffs to offer federally certified trucks for sale in California without seeking additional certification from CARB (just as it does for every other state). CARB's unique heavy-duty emissions standards are preempted by federal law, and any requirement for separate CARB certification is consequentially preempted as well. Plaintiffs do not seek to change this status quo, but merely to stop Defendants' attempts to undermine it.

While CARB tries to convince the Court that CARB is "not currently requiring manufacturers

---

[5] The attached declaration addresses only the material actions that were undertaken by CARB since Plaintiffs' Motion was filed and put at issue in CARB's Opposition. *See* Potter Reply Decl. ¶ 6.

[6] Nor could CARB obtain one, underscoring that this is a litigation ploy and not a real proposal. The Emergency Rulemaking adopts $CO_2$ and $NO_x$ standards less stringent than the EPA's model year 2027 standards; they therefore do not meet the Clean Air Act's waiver standard. *See* Potter Reply Decl. ¶11; 42 U.S.C. § 7543(b)(2) (to obtain a preemption waiver, a "[s]tate standard" must be "at least as stringent as the comparable applicable Federal standard").

Gibson, Dunn &
Crutcher LLP

1    to meet [the preempted] standards" and so there is "no need for an injunction *now*," Opp. 1, CARB's

2    behavior outside this Court confirms the opposite. The goal, and effect, of CARB's actions and state-

3    ments in the August MAC (and others) and Emergency Rulemaking is to pressure Plaintiffs to conform

4    their conduct *now* to preempted rules through in terrorem threat. CARB is "attempt[ing] to enforce"

5    its emissions standards, violating Section 209(a). 42 U.S.C. § 7543(a). The Supreme Court has ex-

6    plained that an "'attempt to enforce' . . . is not limited to the actual imposition of penalties for violation,

7    but includes steps preliminary to that action." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,

8    541 U.S. 246, 257 (2004) (quoting Section 209(a)). And make no mistake, CARB has taken more than

9    mere preliminary steps, as explained below.

10         **i. CARB's August and September Efforts to Enforce Preempted Standards**

11         The August MAC and the Emergency Rulemaking are continuations of CARB's ongoing at-

12    tempts to enforce its preempted emissions standards and certification requirements and demonstrate

13    the need for a preliminary injunction. Preliminary injunctions are proper where a plaintiff demonstrates

14    a "credible threat" that a state will attempt to enforce a preempted state law. *See Valle del Sol Inc. v.*

15    *Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (affirming preliminary injunction against preempted state

16    law). And efforts to achieve "an effective mandate of a preempted outcome" are themselves preempted.

17    *Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 95 (S.D.N.Y. 2009), *aff'd on*

18    *other grounds*, 615 F.3d 152 (2d Cir. 2010).

19         Defendants claim the August MAC and the Emergency Rulemaking provide "pathways" to

20    "sell in California without certifying to standards [that Plaintiffs] claim are preempted," Opp. 19, but

21    these so-called "pathways" are illusory. First, all of the "pathways" require as a prerequisite that a

22    manufacturer obtain certification from CARB. *See* August MAC, Dkt. 58-2, at 2. CARB's authority

23    to require certification is wholly preempted, *see supra* at 6–7, and CARB's requirement is not just a

24    "credible threat" of enforcement but *is* current enforcement of preempted laws.

25         Second, for those OEMs who choose any "pathway" other than CARB certification and com-

26    plying fully with CARB's preempted regulations, Defendants have threatened to impose per-vehicle

27    penalties retroactively if California succeeds in its separate attempt to have the CRA Resolutions

28

invalidated.[7]  In Defendants' own words:  "CARB reserve[s] its right to enforce the regulations covered by the targeted waivers, including for sales during the period of litigation," *i.e.*, right now.  Lang Decl., Dkt. 73-30, ¶ 45.  This threat was also explicit in the August MAC.  Dkt. 58-2, at 4.  And the Emergency Rulemaking goes even further, attempting to codify the threat of retroactive enforcement in the California Code of Regulations and in an Executive Order issued by Defendant Cliff.  *E.g.*, CARB Proposed Amendments to Title 13 Regulation Order, Emergency Vehicle Emissions Regulations, App'x A-1 at 9, https://perma.cc/GTE9-VQ6S (adding language to Cal. Code Regs. tit. 13, § 1956.8); *see also* CARB Exec. Order R-25-002 (Sept. 15, 2025) at 5 ("[I]f a court of competent jurisdiction issues a final ruling that [the CRA Resolutions] are invalid or that the waivers U.S. EPA granted California on January 6, 2025, [for Omnibus and ACC II], are in effect, the *regulated parties are subject to the requirements of the regulations* targeted by these congressional resolutions.") (emphasis added); CARB, Notice of Public Hearing (Sept. 22, 2025), Dkt. 73-33, at 6, ("CARB may enforce the Omnibus regulation, to the extent permitted by law, in the event a court of law holds invalid the resolution purporting to disapprove that waiver. . . . Regulated parties [] assume the risk if they choose to certify only to the antecedent provisions, and the congressional resolutions disapproving the waivers of federal preemption under the Clean Air Act are declared invalid.").

Any OEM that follows CARB's so-called "alternative pathways" therefore risks an inflation-adjusted penalty of up to $48,788 *per vehicle sold*.  *See* Cal. Health & Safety Code § 43154(a)(1).  This threat is precisely why Plaintiffs sought injunctive relief in the first place.  CARB's proffered bargain—follow our preempted laws now or risk tremendous fines later if your reliance on federal law proves erroneous—"constitutes an offer which can not, in practical effect, be refused" without incurring irreparable harm.  *Metro. Taxicab Bd. of Trade*, 633 F. Supp. 2d at 99.  CARB's requirement of California certification and its present threats of retroactive enforcement are attempts to enforce emissions standards that violate Section 209(a).[8]

---

[7] Such an OEM would also incur the unrecoverable costs of complying with CARB's preempted rules.

[8] Plaintiffs submitted a revised Proposed Order that makes clear that the requested relief includes all attempts to enforce the preempted regulations, including the post-motion regulatory efforts by Defendants.

Gibson, Dunn &
Crutcher LLP

**ii.  The CTP, EO 27-25, and May MAC Are Also Attempts to Enforce**

The CTP, EO 27-25, and May MAC are all attempts to enforce preempted standards, are ripe for review by this Court, and should likewise be enjoined:

**1. The CTP.**  California's attempt to recast the CTP from a regulatory mandate into a "voluntary agreement," Opp. 13–14, contravenes law and fact alike.  Every material aspect of the CTP commands compliance with preempted state regulations that are enforced by statutory penalties:  It (1) mandates that OEMs obtain California Certifications, *see* Dkt. 1-2, App'x B, at i ("[M]anufacturers will still be required to submit applications for certification including test data, certification documents, etc. to demonstrate compliance with applicable California requirements."); (2) requires compliance with preempted regulations, *id.* (OEMs must "meet, in California, the requirements of the relevant regulations"); (3) contains no contract remedies, meaning that penalties for violations necessarily arise under the regulatory provisions, *see id.*, App'x B, at i–ii nn.1–5 (citing regulatory sections); and (4) requires CARB to undertake action *as a regulator* rather than a market participant; *see id.* at 2, App'x A at ii (committing among other things, to "initiate rulemaking actions," "amend" existing rules, and "implement" the regulatory actions contemplated); *see also id.* at 2 (CARB must follow "all applicable provisions of California's Administrative Procedures Act" when doing so); App'x. B at i ("CARB Carries Out Its Authority Per the Following" regulatory authorities).

This is no voluntary contract; the CTP is a straightforward attempt to enforce preempted regulations using the State's standard regulatory arsenal and therefore is itself preempted.  *See Am. Trucking Ass'n, Inc. v. City of Los Angeles, Cal.*, 569 U.S. 641, 649–50 (2013) (distinguishing between contracts entered into "just as a private party would" from those where the state is "acting in a regulatory rather than proprietary mode"); *Airlines for Am. v. City & Cnty. of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023) (holding government contracts were regulatory actions because the government threatened the "use of civil penalties" that were "unavailable to private parties").

Defendants' reliance on *Association of International Manufacturers, Inc. v. Commissioner, Massachusetts Department of Environmental Protection*, 208 F.3d 1 (1st Cir. 2000) ("*AIAM*") is misplaced.  There, the court held that Massachusetts could not adopt the emissions standards included in

Gibson, Dunn &
Crutcher LLP

1  memoranda of agreement ("MOA") between California and manufacturers because the MOA's re-

2  quirements were not "emissions standards" under the Clean Air Act. *AIAM*, 208 F.3d at 7–8. The

3  court did not consider when a purported agreement could constitute an "attempt to enforce" a

4  preempted regulation. And, in any event, the court's reasoning supports *Plaintiffs* here. There, the

5  emissions requirements were provided *solely* in the agreement, "rather than legislation or formal ad-

6  ministrative regulations," *id.* at 7; the CTP, by contrast, implements compliance with formally adopted

7  (now preempted) state regulations. Similarly, in *AIAM*, there were "contractual remedies in the event

8  of nonperformance," *id.* at 8; yet the CTP neither contemplates nor includes contract-based remedies.[9]

9      **2. EO 27-25.** CARB's arguments as to EO 27-25, https://perma.cc/9HZG-EHRV, fail for the

10  same reasons. EO 27-25 directs CARB to "work with manufacturers consistent with the commitments

11  made in the Clean Truck Partnership," thereby mandating the continued enforcement of the preempted

12  (and speech-restricting) CTP. Potter Decl. Ex. B, Dkt. 23-17, ¶ 4. Because the CTP is preempted by

13  the Clean Air Act and violates the First Amendment, *supra* at 9; *infra* at 19–20, the executive order—

14  which mandates enforcement of the CTP—is preempted and unconstitutional too.

15      Defendants' counterarguments, Opp. 33–34, fall short. First, this claim is ripe for judicial re-

16  view. Defendants appear to suggest that, as a rule, claims challenging executive orders are ripe only

17  after an "agency implements the EO's direction." Opp. 34. No such rule exists—California itself

18  joined a pre-implementation suit this year to enjoin a federal executive order. *See New Jersey v. Trump*,

19  No. 1:25-cv-10139 (D. Mass. Jan. 21, 2025). That is because pre-enforcement claims challenging ex-

20  ecutive orders are routinely found ripe where, as here, plaintiffs have articulated plans to violate the

21  law in question, the prosecuting authorities have articulated specific warnings to initiate proceedings,

22  and there is a history of past prosecution or enforcement under the statute. *See City & Cnty. of San*

23  *Francisco v. Trump*, 897 F.3d 1225, 1236 (9th Cir. 2018). Each of these elements is satisfied here.

24  *See* Mot. 26–27. And this is no dormant directive—unlike *WildEarth Guardians v. Montana Snowmo-*

25  *bile Association*, 790 F.3d 920, 933 (9th Cir. 2015), this dispute is not a "purely abstract disagreement"

26

27  _____

[9] California also relies on *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), which is inapposite,
as it involved two private parties. Opp. 14. As such, there were no attempts by the state to enforce a
28  state regulation via a contract.

11

over a provision never applied.  Rather, EO 27-25 has immediate legal effect on Plaintiffs, who are forced to decide whether to comply with unconstitutional restrictions or relinquish state procurement opportunities, incentive programs, and regulatory flexibility, *see* EO 27-25 ¶ 3.

**3. May MAC.**  Defendants do not seriously contest that the May MAC is an attempt to enforce preempted standards and concede the ultimate issue:  The May MAC is "repetitive of" CARB's emissions standards, and as such, the lawfulness of the underlying regulations and the May MAC rises and falls together.  Opp. 33.  And Plaintiffs' challenge to the May MAC is not moot, *see* Opp. 33, because "voluntary cessation of allegedly illegal conduct" does not moot a controversy unless "there is no reasonable expectation that the wrong will be repeated."  *Pub. Utilities Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996) (citation omitted); *see also F.B.I. v. Fikre*, 601 U.S. 234, 241–242 (2024) (holding that challenge to placement on no-fly list not mooted by declaration that plaintiff "will not be placed on the No Fly List in the future," and noting defendant bears "formidable burden" that the "practice cannot reasonably be expected to recur").  Defendants suggest that the August MAC, which expressly superseded the May MAC, was not issued "because of" this litigation, but the August MAC expressly *references this litigation* as a reason for its issuance.  *See* Lang Decl., Ex. B2, Dkt. 73-32, at 1 ("[I]n August 2025, the federal government and certain manufacturers filed suit to nullify the Clean Truck Partnership[.]").  And given that the August MAC can be just as quickly abandoned—and there are no "procedural safeguards" against reissuance of the May MAC, Opp. 33—the Court should enjoin the May MAC and any similar future attempts to enforce the preempted regulations.[10]  *Friends of Earth v. Laidlaw*, 528 U.S. 167, 189 (2000) (burden is on the defendant to demonstrate that "it is absolutely clear" that the alleged behavior "could not reasonably be expected to recur").

**II.    Plaintiffs Face Irreparable Harm Redressable by Injunctive Relief**

Unless this Court *immediately* grants injunctive relief, Plaintiffs will be unlawfully coerced to obtain CARB certification and comply with CARB's preempted standards for all trucks they offer for sale in California, or else risk facing significant penalties for selling EPA-certified trucks as permitted by federal law.  Potter Reply Decl. ¶¶ 12–14.  Putting OEMs in this position constitutes irreparable

---

[10] Plaintiffs withdraw their state law allegations, *see* Mot. 22–26, as a basis for this court to preliminarily enjoin Defendants' conduct.

harm. Mot. 26–33. And OEMs also face unrecoverable costs of complying with preempted rules, the potential for lost sales and lost customers, and ongoing uncertainty about the legal regime applicable to heavy-duty trucks. *See* Mot. 27–29; Potter Reply Decl. ¶¶ 13–14. All of these harms are irreparable, and they are redressable by an injunction that prohibits Defendants from attempting to enforce its preempted rules, including by barring Defendants from undertaking retroactive enforcement for acts taken while the injunction was in force.

### A. Attempted Enforcement of Preempted Regulations Irreparably Harms Plaintiffs

Defendants' position that CARB's threats of retroactive enforcement and any resulting "future injury" are "speculative" because such future enforcement depends on litigation outcomes and CARB's future choices, Opp. 19, is contrary to both caselaw and reality. Those threats put Plaintiffs to a Hobson's choice, imposing irreparable injury *now*.

On one hand, OEMs could offer federally certified trucks for sale in California, as permitted by federal law. If they do so, OEMs are subjected to Defendants' *present attempts to enforce* preempted regulations—CARB's threats of retroactive enforcement and Defendant Newsom's threats to withdraw government benefits and favorable regulatory treatment. *See supra* at 8–12; Mot. 26–34. Courts routinely find that scenarios like these warrant a preliminary injunction, whether or not the threatened enforcement has yet materialized. *See*, *e.g.*, *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1186–87 (N.D. Cal. 2025) (granting preliminary injunction because uncertainty about whether Executive Orders would be enforced caused irreparable harm even without active enforcement); *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 878 (N.D. Tex. 2008) ("A party may be irreparably injured in the face of the threatened enforcement of a preempted law.").

On the other hand, full compliance with CARB's preempted standards and certification requirements will inflict significant expenses that are unrecoverable and contradict a Department of Justice cease-and-desist letter. Mot. 27–29. It will also require abstaining from selling EPA-certified trucks in California—leading to forgone sales and the potential loss of customers. Potter Reply Decl. ¶ 14. Foregoing a federally protected right (such as the right to sell EPA-certified product nationwide) out of fear of state civil penalties constitutes irreparable harm. *Chamber of Com. of United States v.*

Gibson, Dunn &
Crutcher LLP

1  *Becerra*, 438 F. Supp. 3d 1078, 1103–05 (E.D. Cal. 2020).

2        And no matter which option Plaintiffs choose, they are also irreparably harmed by the ongoing

3  uncertainty regarding what legal regime applies to their products.  Each OEM must make product de-

4  cisions without knowing what the regulatory environment will be, what products will comply with

5  those regulations, and what products customers will ultimately be permitted to purchase.  CARB's

6  conduct is forcing Plaintiffs to guess at important business decisions, such as whether they can sell

7  EPA-certified vehicles in California without fear of retroactively imposed penalties, with no way to

8  know the regulatory environment in which they are or will be operating.  *See, e.g.*, Potter Decl.,

9  Dkt. 23-15, ¶ 14; Noonan Decl., Dkt. 23-20, ¶ 8; Hergart Decl., Dkt. 23-22, ¶ 12; Brown Decl.,

10  Dkt. 23-23, ¶¶ 15–19. That problem becomes a crisis on October 31, the last day to begin certification

11  for model year 2026.  *See, e.g.*, Pls.' Resp. O.S.C., Dkt. 62, at 6–7; Potter Reply Decl. ¶ 13.  And

12  whether one has started certification or not, each Plaintiff OEM is harmed; if an OEM chooses wrongly

13  (for example, by pulling EPA-certified vehicles from the market), its competitive position will be ir-

14  reparably harmed, as they will lose customers and customer goodwill to competitors who have guessed

15  correctly (for example, by continuing to sell EPA-certified vehicles).  *Stuhlbarg Int'l Sales Co., Inc. v.*

16  *John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("threatened loss of prospective customers

17  or goodwill" supports irreparable harm).

18        These downstream and upstream effects further irreparably harm Plaintiffs by damaging their

19  reputation with customers and suppliers and eroding trust in Plaintiffs' ability to supply them with a

20  compliant product.  Plaintiffs have made significant investments to develop compliant product based

21  on prevailing regulations.  Effectively changing the rules of the game after the fact puts Plaintiffs and

22  their suppliers in an impossible position, especially given the necessary lead times related to product

23  development, operations, and supply chain management.  *See, e.g.*, Compl., Dkt. 1, ¶¶ 13, 37–39;

24  Mot. 33–34.  Courts in this District and throughout the country have found irreparable harm when the

25  lack of certainty makes it impossible for businesses to make strategic business decisions or to compete

26  on a level playing field without the ground shifting beneath them. *See, e.g.*, *E. Bay Sanctuary Covenant*

27  *v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020) (affirming preliminary injunction in case challenging

28

14

Department of Homeland Security rule as inconsistent with statute, where challenged rule "forces plaintiffs to overhaul their programs and pursue more complex and time-and-resource intensive" processes); *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) ("A lessening of competition constitutes an irreparable injury under our case law."); *City of Los Angeles v. Sessions*, No. 18-cv-7347-R, 2019 WL 1957966, at *5 (C.D. Cal. Feb. 15, 2019) (similar).

In any event, Plaintiffs must only show that "irreparable harm is likely." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Irreparable harm is more than likely; it is ongoing. Plaintiffs are already irreparably harmed by the extant uncertainty regarding what legal regime applies to their products. And although Defendants' Opposition suggests that CARB might not retroactively enforce its regulations, Opp. 11, it explicitly included that threat in the August MAC, revised dozens of sections of the California Code of Regulations to include retroactivity provisions, made clear in the Emergency Rulemaking that the preempted rules *will apply* retroactively, and repeated the retroactivity threat in its filings with this Court, both in supporting declarations and its brief. *See supra* at 8–9 (collecting threats). This is sufficient for this Court to enjoin Defendants' conduct.

### B. Plaintiffs Face Irreparable Harm from Enforcement of the CTP

Enforcement of the CTP imposes the exact same irreparable harms on Plaintiffs as would enforcement of the underlying preempted regulations. In either case, Plaintiffs are faced with the choice of either certifying to preempted regulations—which forces them to incur unrecoverable fees and compliance costs and ignore a Department of Justice cease-and-desist letter—or selling EPA-certified products, risking retroactive penalties. *See* Potter Reply Decl. ¶¶ 12–14; *see also Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009) (choice of complying with preempted law or risking penalties constitute irreparable harm).

None of Defendants' arguments to the contrary are persuasive. They argue that because Plaintiffs' "publicly affirmed" that they will make decisions without consideration of the CTP, that there is no adverse consequence. Opp. 12–13. But if Defendants use the CTP to sidestep the operation of the CRA Resolutions, mandate certification with preempted regulations, and threaten statutory penalties on entities that do not comply, then of course Plaintiffs will be harmed. It is the same impossible choice

1    that Plaintiffs face when deciding whether to certify to the underlying regulations in the first place.

2    Defendants next argue that there is a "mismatch" between the claim asserted and relief sought,

3    suggesting that this should be addressed through contract remedies.  Opp. 12–13.  But Plaintiffs' re-

4    quested relief is enjoining CARB from using the CTP to require OEMs, via the threat of statutory

5    penalties and the operation of CARB's regulatory power, to certify to preempted emissions standards—

6    a requirement that violates federal law.  There is no "mismatch."

7    Defendants pivot to asserting that Plaintiffs cannot be irreparably injured by terms to which

8    they agreed.  Opp. 13–14.  The case they cite, *Bennett v. Isagenix International LLC*, 118 F.4th 1120

9    (9th Cir. 2024), held that a court cannot base an irreparable harm finding "*solely* on the fact that the

10   applicable agreements limited the availability of consequential damages" and that plaintiff had "chosen

11   to forego a legal remedy."  *Id.* at 1129 (emphasis added).  That common-sense rule has no bearing here.

12   Plaintiffs did not bargain away non-equitable remedies.  And the harm here is the result of intervening

13   circumstances—the CRA Resolutions invalidating CARB's certification program and the Department

14   of Justice's cease-and-desist order—which Plaintiffs neither control nor bargained for.

15   Finally, Defendants suggest (in a cursory sentence) that Plaintiffs cannot obtain relief because

16   they have "unclean hands."  Opp. 14.  Defendants cite *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091,

17   1097 (9th Cir. 1985), which highlights why the unclean hands doctrine has no application here.  In that

18   case, the plaintiff sued his employer for retirement benefits and provided a fraudulent birth certificate

19   to prove he was sufficiently old to retire.  *Ellenburg*, 763 F.2d at 1094, 1097.  The Ninth Circuit held

20   that the plaintiff's "bad faith" "in acquiring the right he now asserts" barred recovery because his bad

21   faith action created the cause of action.  *Id.* at 1097.  The doctrine is inapplicable here given that there

22   is no evidence OEMs acquired the benefits of the CTP through bad faith and Plaintiffs are not seeking

23   to enforce the CTP.

### C.  Plaintiffs' Injuries are Redressable by An Injunction from This Court

25   Because Defendants' attempts to enforce include threats of retroactive enforcement, this Court

26   can, and should, grant an injunction that protects Plaintiffs from retroactive enforcement for acts taken

27   while the injunction was in force.  If a plaintiff has "reasonable ground" to challenge enforcement of a

28

state law in federal court and obtains a temporary injunction against enforcement, even if the challenged state law is ultimately vindicated, "a permanent injunction should, nevertheless, issue to restrain enforcement of penalties accrued pendente lite." *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 337–38 (1920); *cf. United States v. Mancuso*, 139 F.2d 90, 92 (3d Cir. 1943) ("If the litigant does something, or fails to do something, while under the protection of a court order he should not, therefore, be subject to criminal penalties for that act or omission.").

Otherwise, any state could evade the Supremacy Clause with legislation contravening federal law accompanied by threats that failure to comply risks retroactive punishment if federal law ever changes. Texas in fact attempted as much in its state abortion ban, drawing skepticism from the Supreme Court. *See* Transcript of Oral Argument at 76:5–77:24, *United States v. Texas*, 595 U.S. 74 (2021) (No. 21-588) (Justice Kavanaugh noting state statute purporting to "allow suits that would reach back and retroactively impose liability on entities" who had acted pursuant to an injunction restraining the statue would "almost certainly" have a "chilling effect" due to the "prospect of future changes" leading to "millions and millions [in liability] retroactively imposed … even though the activity was perfectly lawful under all court orders and precedent at the time it was undertaken"). While the Court did not ultimately reach the legality of this retroactive approach, in a companion case, Justices Roberts, Breyer, Sotomayor, and Kagan sharply criticized attempts by states to circumvent federal law as an affront to the Constitution. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 61–62 (2021) (Roberts, C.J., concurring in part).[11]

Defendants argue that this Court cannot issue the requested injunction and thereby relieve Plaintiffs' harms. Opp. 19–20. That assertion rests on a mangled quote from *American Motorcyclist Association v. Watt*, a case arising under a different statute and markedly different facts. 714 F.2d 962 (9th

---

[11] Plaintiffs acted diligently to resolve these issues with CARB before seeking judicial relief. *See* Opp. 19. CARB dodged Plaintiffs' clarification requests for months. *See* Ex. D. After the Department of Justice issued cease-and-desist letters, Plaintiffs filed this lawsuit four days later. None of this suggests delay, and finding otherwise would contradict Ninth Circuit law and incentivize parties to run to court for any potential disagreement with a regulator. *See, e.g.*, *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 508 (9th Cir. 1991) (six-month delay in moving for preliminary injunction not undue in part because the parties were engaged in settlement negotiations); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991) (seven-month delay not undue because the plaintiff sought a meeting with the defendant about the litigation issues).

Cir. 1983) ("*Watt II*").[12]   There, the County of Inyo, California, sought to preliminarily enjoin a federal desert conservation plan that was inconsistent with its own land use plan.  *See Am. Motorcyclist Ass'n v. Watt*, 534 F. Supp. 923, 936 (C.D. Cal. 1981) ("*Watt I*").   The district court denied a preliminary injunction and the Ninth Circuit affirmed, agreeing that although the situation had "caused uncertainty in Inyo's planning process," Inyo nevertheless was required to engage in planning—which in turn would remain subject to "uncertain[ty] until judgment."  *Watt II*, 714 F.2d at 966–67 (cleaned up). That reasoning does not apply when a plaintiff asks for preliminary relief to prevent the government from inflicting irreparable harm during the litigation challenging the government's conduct.

Of course, the "validity" of the restrained conduct always "remain[s] uncertain until judgment has been entered on the merits," *Watt II*, 714 F.2d at 966–67 (citation omitted)—that's why the injunction is *preliminary*.  But Plaintiffs cannot—and should not—have to wait years for a determination of what conduct is permissible for them to undertake *now*.  This is the purpose of preliminary injunctive relief.  *See Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 928–29 (2024) (Kavanaugh, J., concurring in the grant of stay) (explaining that "in cases where a party has sought to enjoin enforcement of a new state or federal law in the often years-long period until a final decision on the merits," preliminary injunctions dictate "*whether the law is enforceable* during the several years while the parties wait for a final merits ruling" (emphasis added)).  Here, Plaintiffs need to know now whether CARB is restrained from enforcing or attempting to enforce emissions standards and conditions precedent to sale that are preempted by presumptively valid federal laws.  This Court should answer in the affirmative and enter an injunction preventing CARB from doing so.[13]

---

[12] Defendants also point to *Ray v. County of Los Angeles*, which does not address injunctions at all, but rather the rights of third parties following vacatur and restoration of a federal administrative rule.  935 F.3d 703 (9th Cir. 2019).  *Ray* says nothing about retroactive enforcement against a party who sought an injunction, was granted one, and conformed its conduct accordingly.  It is uninstructive here.

[13] An injunction is also in the public interest.  Congress passed federal legislation revoking waivers for California's emissions regulations.  It "would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available."  *Valle del Sol*, 732 F.3d at 1029 (enjoining state from enforcing preempted state law) (citation omitted).

18

Gibson, Dunn & Crutcher LLP

### III.    Plaintiffs Are Likely to Prevail on Their First Amendment Claims

Defendants' Opposition highlights that the current and future threats to Plaintiffs' speech rights are real and present.  Far from being either moot or unripe, Plaintiffs' First Amendment claims are supported by Defendants' continued threats of enforcement, which are a concrete constitutional injury and confirm the need for preliminary relief.

Plaintiffs seek to prevent only *ongoing and future* enforcement of the CTP's speech restrictions. *See* Pls.' Proposed Order Granting PI Mot., Dkt. 23-25 (framing relief sought in prospective terms); Mot. 3, 35 (same).  These restrictions continue to impose constitutional harm by chilling Plaintiffs' speech and advocacy.  Rather than retreat from their threats, Defendants defend the CTP as binding and enforceable, *see* Opp. 15–16, even while attempting to argue that Plaintiffs' "disavowal" of the CTP somehow eliminates any First Amendment harm, Opp. 15.  Defendants cannot have it both ways.

Defendants rely on *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022), to suggest that Plaintiffs' "claims of future chilled speech are speculative and unripe." Opp. 15.  But in that case, the Ninth Circuit affirmed dismissal of a First Amendment claim where Twitter offered only a "naked assertion" of a chilling effect "imped[ing]" speech stemming from a state civil investigative demand that was not self-enforcing, imposed no penalties, and provided only for enforcement by a district court with full judicial safeguards.  *Paxton*, 56 F.4th at 1175–77.  By contrast, here Defendants have continually asserted their ability and intention to enforce the restraints on speech, including in the May MAC and EO 27-25.[14]  *See* Mot. 19–22.  These actions constitute immediate, credible threats of enforcement. *See NRA v. Vullo*, 602 U.S. 175, 187 (2024) (upholding First Amendment claim based on allegations that the government "threaten[ed] enforcement actions . . . in order to punish or suppress" speech).

Nor can Defendants sidestep their attempt to restrain Plaintiffs' speech by characterizing the CTP restrictions as a voluntary, bargained-for waiver of Plaintiffs' constitutional rights.  Opp. 15–16.

---

[14] Defendants implausibly claim that EO 27-25 silently carves out the CTP's unconstitutional gag provisions.  *See* Opp. 35.  By explicitly tying state benefits to compliance with "requirements agreed to," EO 27-25 necessarily incorporates these speech restrictions and thus runs afoul of the First Amendment.  *See Koontz*, 570 U.S. at 607–08 (government may not withhold discretionary benefits to coerce forfeiture of constitutional rights).  And to the extent that those state benefits require paying for and participating in unlawful certification processes, they are unconstitutional compelled speech as well. *See* Mot. 20–21; *Agency for Int'l Dev. v. All. for Open Society Int'l, Inc.*, 570 U.S. 205, 218–19 (2013).

19

Gibson, Dunn &
Crutcher LLP

Courts consistently invalidate broad restrictions designed to insulate government action from challenge. *See Legal Servs. Corp. v. Velasquez*, 531 U.S. 533, 547–48 (2001) (striking down funding restriction that "operate[d] to insulate" a government program "from constitutional scrutiny and certain other legal challenges, a condition implicating central First Amendment concerns"). Defendants freely admit that the CTP was structured to prevent an entire industry and their trade association from petitioning courts or regulators to challenge CARB's standards. *See* Opp. 6–7. Defendants' candid acknowledgement of this express purpose confirms the CTP is a device calculated to suppress core First Amendment activity—the type of restriction the unconstitutional conditions doctrine forbids.

In any event, the unconstitutional conditions doctrine forbids leveraging discretionary benefits to coerce surrender of constitutional rights. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) ("[T]he unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them."). CARB's conditioning of its regulatory concessions—including the four years of lead time *required* by statute, *see* 42 U.S.C. § 7521(a)(3)(C)—on Plaintiffs relinquishing their speech and petitioning rights falls squarely within that prohibition.

Finally, any nexus between Defendants' interests and the restrictions has evaporated. As the Ninth Circuit recently explained (in a case Defendants otherwise embrace), the nexus requirement is not static—the government's interest in conditioning favorable treatment on a private party forfeiting a constitutional right "may wane as time passes." *Powell v. SEC*, 149 F.4th 1029, 1045 (9th Cir. 2025). In *Powell*, the court found the government's *current* interest in preserving the integrity of settlements sufficient to support a narrow, limited restriction on speech preventing defendants from publicly denying the settled allegations. *Id*. at 1036–37. Whatever interest Defendants may have claimed when the CTP was executed in 2023 disappeared when Congress revoked CARB's preemption waivers and the Department of Justice ordered Plaintiffs to cease complying. Defendants now have no lawful interest in restricting Plaintiffs' First Amendment rights.

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction.

Gibson, Dunn &
Crutcher LLP

1    Dated: September 30, 2025                Respectfully submitted,

2                                             **GIBSON, DUNN & CRUTCHER LLP**

3                                             *Benjamin Wagner*

4                                             _____
                                              BENJAMIN WAGNER, State Bar No. 163581
5                                             310 University Avenue
                                              Palo Alto, CA 94301-1744
6                                             Telephone:    650.849.5395
                                              Facsimile:    640.849.5095
7                                             BWagner@gibsondunn.com

8                                             RACHEL S. BRASS, SBN 219301
                                              One Embarcadero Center, Suite 2600
9                                             San Francisco, CA 94111-3715
                                              Telephone:    415.393.8293
10                                            Facsimile:    415.393.8306
                                              RBrass@gibsondunn.com

11                                            STACIE B. FLETCHER, *pro hac vice*
                                              MIGUEL ESTRADA, *pro hac vice*
12                                            VERONICA J.T. GOODSON, SBN 314367
                                              1700 M Street, N.W.
13                                            Washington, D.C. 20036-4504
                                              Telephone:    202.955.8500
14                                            Facsimile:    202.467.0539
                                              SFletcher@gibsondunn.com
15                                            MEstrada@gibsondunn.com
                                              VGoodson@gibsondunn.com
16
                                              *Attorneys for Plaintiff Daimler Truck North*
17                                            *America LLC*

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02255-DC

| | |
|---|---|
| 1 | |
| 2 | |

/s/ Robin M. Hulshizer
(as authorized Sep. 30, 2025)
ROBIN M. HULSHIZER, SBN 158486

**LATHAM & WATKINS LLP**

ROBIN M. HULSHIZER, SBN 158486
ARTHUR FOERSTER, *pro hac vice*
KEVIN M. JAKOPCHEK, *pro hac vice*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com

BELINDA S. LEE, SBN 199635
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*

/s/ Jeffrey M. Goldman
(as authorized Sep. 30, 2025)
JEFFREY M. GOLDMAN, SBN 233840
**TROUTMAN PEPPER LOCKE LLP**

JEFFREY M. GOLDMAN, SBN 233840
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:   213.928.9800
Facsimile:    213.928.9850
jeffrey.goldman@troutman.com

T. SCOTT MILLS, SBN 313554
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:   404.885.3000
Facsimile:    404.885.3900
scott.mills@troutman.com

JEREMY HEEP, *pro hac vice*
DANIEL J. BOLAND, *pro hac vice*
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:   215.981.4000
Facsimile:    215.981.4750
jeremy.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North America, LLC*

/s/ Joseph A. Ostoyich
(as authorized Sep. 30, 2025)
JOSEPH A. OSTOYICH, *pro hac vice*

**CLIFFORD CHANCE LLP**

JOSEPH A. OSTOYICH, *pro hac vice*
WILLIAM LAVERY, *pro hac vice*
STEVE NICKELSBURG, *pro hac vice*
DANIELLE MORELLO, *pro hac vice*
DOROTHEA R. ALLOCCA, *pro hac vice*
2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com
dodi.allocca@cliffordchance.com

**ILLOVSKY GATES & CALIA LLP**

EUGENE ILLOVSKY, SBN 117892
KEVIN CALIA, SBN 227406
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone:  415.500.6643
Eugene@illovskygates.com
Kevin@illovskygates.com

*Attorneys for Plaintiff PACCAR Inc*

22