# EXHIBIT A

# DAIMLER TRUCK
### North America

September 26, 2025

OAL Reference Attorney
300 Capitol Mall, Suite 1250
Sacramento, CA 95814

**Re: Emergency Amendment and Adoption of Vehicle Emissions Regulations**

Daimler Truck North America (DTNA) appreciates the opportunity to comment on the California Air Resources Board (CARB) Emergency Amendment and Adoption of Vehicle Emissions Regulation ("Emergency Regulation"). DTNA is the largest producer of medium- and heavy-duty (M/HD) vehicles in North America. DTNA is committed to providing our customers with a diverse lineup of technologies to suit their needs and applications, including zero-emission solutions.

In June, pursuant to the Congressional Review Act, the federal government statutorily preempted California's emissions standards governing heavy-duty vehicles and engines. Notwithstanding that new legislation, California has continued to (1) demand compliance with its heavy-duty emissions standards and (2) require manufacturers to obtain certification to those standards as a condition precedent to retail sale, despite the fact that Section 209(a) of the Clean Air Act, provides that, absent a waiver, "No State … shall adopt or attempt to enforce any standard relating to the control of emissions" from new vehicles or engines, and further mandates, "No State shall require certification … as condition precedent to the initial retail sale" of those vehicles or engines.  42 U.S.C. § 7543(a).

With this Emergency Rulemaking, CARB is attempting to sidestep federal legislation by promulgating new heavy-duty emissions standards stitched together from old and inapplicable standards for which CARB had once received now-obsolete preemption waivers.  The end result is (a) new preempted emissions standards in violation of Section 209(a) of the Clean Air Act, and (b) conflicting state emissions standards simultaneously adopted as California regulations.

OAL should not approve CARB's Emergency Rulemaking. This action violates both federal and state law and is inconsistent with OAL's standards. CARB's proposal also raises due process concerns, fails to comply with the California APA, and does not satisfy the requirements for an emergency rulemaking under California law.

**1)  CARB lacks the authority to adopt or enforce the Emergency Regulation.**

Federal law prohibits CARB from attempting to enforce emissions standards without a waiver of preemption from the U.S. Environmental Protection Agency (EPA), 42 U.S.C. §§ 7543(a)-(b), or without notice to and a determination from EPA that the emissions standards are "within the scope" of a previously granted waiver.  This rulemaking is preempted because CARB does not have an applicable waiver or a within-the-scope determination.

1

**DAIMLER TRUCK**
North America

> a) *The Emergency Regulation creates new emissions standards requiring a federal preemption waiver. CARB cannot rely on previous EPA waivers for authorization to adopt or enforce new standards.*

In its Emergency Regulation, CARB purports to rely on previous waivers from EPA to adopt and enforce new emissions standards. But because CARB added these standards as new sections in the California Code of Regulations, changed the language of the emissions standards, and merged the old standards together in a new way, it cannot rely on those prior waivers.

Without analysis, CARB asserts that the Emergency Regulation are "earlier-adopted standards, which have extant preemption waivers not subject to the recent congressional resolutions." Notice at 2-3. But this ignores that the standards as they are stitched together in the Emergency Rulemaking did not exist in the California Code of Regulations prior to September 22, 2025. Regulated parties had no notice or reason to think these emissions standards applied to current and future model years prior to CARB's announcement on September 15, 2025 or that these standards would be pulled together in this new way and with the new language added. This is therefore a new rule and needs a new waiver.

Rather than using the Emergency Regulation to undo Omnibus changes and restore the previous version of title 13, section 1956.8, CARB is adopting entirely new regulatory sections with standards applicable to current and subsequent model years and inserting new language into provisions. For example, the tailpipe standards that would purportedly apply to heavy-duty engines are in a newly created section of the regulations and add two new paragraphs of text not found in earlier versions of this rule. And more broadly, the entire structure of the Emergency Regulation demonstrates why these emissions standards are new. In Appendix A-1-2 to the Emergency Regulation, CARB proposes an assemblage of emissions standards—including tailpipe emissions standards from 2005 and 2010 as well as 2013 on-board diagnostic standards—with waivers granted at separate times. Notice at 5 nn.7, 9. In doing so, CARB creates something both new and newly applicable to current and future model year vehicles.[1]

This proposal is not a workable standard that manufacturers can use. Combining elements from various regulatory programs spanning the last two decades and applying them as certification requirements for new engines presents significant practical and legal challenges, which is another reason that this action requires new authorization from EPA under Section 209(b).

---

[1] Even if CARB only restored prior emissions standards, applying those standards to the current and subsequent model year without notice violates federal law. The application of these standards to new model years when industry had no notice these standards would apply after model year 2023 is the creation of a new rule that requires a waiver. It does not matter if the standards covered an indefinite time span when the waiver was initially granted. Notice at 5 n.7. Regulated parties had no notice that these standards applied after model year 2023 once CARB's prior rulemakings removed the language indicating that the standards applied to "subsequent model years" and added applicability end dates.

2

**DAIMLER TRUCK**
North America

b) *The emissions standards proposed in the Emergency Regulation are not "within the scope" of the prior waivers.*

EPA will only consider CARB's amendments to be within the scope of a previously granted waiver if the amended regulations do not undermine California's determination that its standards are as protective as applicable Federal standards, if they do not impact consistency with section 202(a), and if they raise no new issues that would affect EPA's previous waiver decision. California State Motor Vehicle Pollution Control Standards; Within-the-Scope Determination for Amendments to California's Motor Vehicle Greenhouse Gas Regulations; Notice of Decision, 76 Fed. Reg. 34693 (June 14, 2011). CARB cannot meet these requirements for the Emergency Regulation, and it is therefore not within the scope of prior waivers (even if it was not a new standard). As described in more detail below, CARB's new regulations are *less* stringent than the federal standards and they are inconsistent with section 202(a) of the Clean Air Act, including the lead-time requirements.

EPA has also held that if California's test procedures differ from those required by EPA, this can be an impermissible violation of section 202(a) of the Clean Air Act. EPA determined that "if the Federal and California test procedures impose inconsistent certification requirements, the California test procedures are deemed not to be consistent with Section 202(a)." 44 Fed Reg. 61096 (Oct. 23,1979). EPA also provided that California's test procedures can be more stringent than EPA's, but that manufacturers must be able to meet federal and California requirements with the same test vehicle. 43 Fed. Reg 32183. With these new proposed requirements, CARB creates new test procedures, meaning that test procedures that may have originally been consistent with EPA's, no longer are. For example, EPA's new requirements for aging to determine and validate Deterioration Factors, 40 CFR 1036.245 and 40 CFR 1036.246, differ significantly from the test procedures in the Emergency Regulation, which adopts Test Procedures last amended October 21, 2014 predating EPA's changed Test Procedures and could not reasonably be performed on the test vehicle. Rulemaking Appendix A-2-1 13 CCR § 1965.8.1(b) *Test Procedures*. Accordingly, CARB's proposed test procedures cannot meet the requirements of Section 202 of the Clean Air Act.

EPA has also made it clear that major regulatory overhauls raise "new issues" affecting prior waiver decisions and require analysis under the full waiver criteria. Since CARB received its prior waivers for its now-eliminated standards, EPA has issued new federal rules under the Clean Trucks Plan, including a rule that tightened criteria pollutant standards for heavy-duty trucks. *See* Control of Air Pollution From New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4296 (Jan. 24, 2023). And CARB is currently undertaking separate amendments to harmonize its standard with the federal standards. These all raise new issues that would affect EPA's previous waiver decision.

3

In addition, new issues also can preclude a within-the-scope determination if there are a large number of changes in CARB's proposed rule. For instance, CARB amended its on-board diagnostic regulations multiple times and asked EPA to issue a finding that the amendments were within the scope of its prior waiver grant. California State Motor Vehicle Pollution Control Standards; Malfunction and Diagnostic System Requirements and Enforcement for 2004 and Subsequent Model Year Passenger Cars, Light Duty Trucks, and Medium Duty Vehicles and Engines; Notice of Decision, 81 Fed. Reg. 78143 (Nov. 7, 2016). EPA refused to conduct a within-the-scope analysis of these amendments. Because "of the significant evolution of CARB's [on-board diagnostic] regulatory program" and "the sheer number of amendments— some in part designed to address a variety of manufacturers concerns with the technological feasibility of complying with previous versions of the [] regulations," EPA assessed the amendments under the full waiver criteria. *Id*. Here, CARB seeks to adopt and enforce a hodgepodge of standards including a 2005 diesel tailpipe emissions standard, a 2010 gasoline tailpipe emissions standard, and a 2013 on-board diagnostic standard. *See* Notice at 5 nn.7, 9. CARB's emergency rulemaking is a massive overhaul that creates an entirely new set of alternative emissions standards, and it is not within the scope of CARB's prior waivers.

   c) *The Emergency Regulation cannot satisfy the Section 209(b) waiver criteria.*

To enforce these emissions standards, CARB needs a new waiver of federal preemption or a within-the-scope determination as to an existing waiver. But these emissions standards cannot satisfy the requirements of Section 209 of the Clean Air Act. Sections 202 and 209 of the Act require CARB to provide lead time for any heavy-duty emissions standard, meaning that CARB cannot meet the requisite lead-time requirements for the next several model years' certifications—including the MY2026 certifications underway now. *See* 42 U.S.C. §§ 7543(b)(1)(C), 7521(a)(1)(C). Putting aside development timelines (which is the core purpose of statutory lead time), emissions and on-board diagnostic testing for any given model year takes months—if not more than a year. CARB is well aware that manufacturers cannot actually use this proposal without months of advance preparation.

CARB will also not be able to show that its standards are technologically feasible and consistent with federal requirements and, therefore, consistent with Sections 202 and 209 of the Clean Air Act. *See* 42 U.S.C. §§ 7543(b)(1)(C), 7521(a). For example, CARB's new regulation excludes several flexibilities added to on-board diagnostic standards in the Omnibus rulemaking package to ensure technical feasibility, including changes to certain test-out criteria and failure adoption thresholds. *See* CARB, Initial Statement of Reasons, Proposed Heavy-Duty Engine and Vehicle Omnibus Regulation and Associated Amendments (June 23, 2020) at III-10.

And CARB has adopted standards that are less significantly stringent than the federal standards. CARB's new section 1956.8.1 in title 13 of the California Code of Regulations adopts $CO_2$ and NOx standards that are less stringent than EPA's corollary standards at 40 C.F.R. § 1036 that

4

will take effect in MY2027.  CARB itself recognizes this point in Omnibus amendments proposed after this emergency rulemaking commenced. For these reasons, the new rule cannot satisfy Clean Air Act waiver criteria.

All of this makes clear the true purpose of the proposed rule: this rulemaking is CARB's attempt to enforce its preempted Omnibus emissions standards and an attempt to enact new heavy-duty emissions standards to save CARB's certification program from preemption.  The rulemaking creates a contradictory regulatory regime, where newly re-enacted pre-Omnibus standards and the Omnibus standards are both codified and "operative" depending on litigation outcomes, leaving the entire industry without clarity or certainty as to which standard governs, threatening product planning, sales, and customer goodwill.  The rulemaking itself and the new regulatory text also explicitly threaten retroactive enforcement for manufacturers that do not obtain a CARB certification pursuant to the Omnibus standards, discussed further below.  This is a flagrant attempt to enforce the Omnibus emissions standards and conditions precedent to sale of new heavy-duty vehicles and engines now, through the threat of potential future retroactive enforcement, even though CARB's heavy-duty vehicle emissions standards are all preempted by the Clean Air Act, and its conditions precedent to sale are likewise preempted in the absence of an emissions waiver.

> d) *The Emergency Regulation is an impermissible attempt to sidestep federal preemption of CARB's certification program.*

Section 209(a) of the Clean Air Act also provides that "[n]o State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment."  Absent a waiver of federal preemption from EPA, California cannot require certification or any other conditions precedent to initial retail sale.

For decades, EPA has implemented this statutory prohibition by requiring CARB to have a preemption waiver for its emission standards prior to enforcement of its certification program and related conditions precedent to initial sale.  In the normal course, CARB receives this waiver for its certification program when it receives a waiver for emissions standards applicable to a particular class of regulated vehicles.  *See* EPA, Conditions Precedent to the Sale, Titling, or Registration of New Motor Vehicles in California, 50 Fed. Reg. 35123 (Aug. 29, 1985). EPA has affirmed the need for a preemption waiver prior to enforcement of certification on at least several prior occasions and in both Republican and Democratic federal administrations.[2]

---

[2] *See* 50 Fed. Reg. 35,123 (Aug. 29, 1985) (Reagan Admin.); 55 Fed. Reg. 28,824 (July 13, 1990) (Bush Admin.) ("EPA's prior issuance of waivers for the affected classes of vehicles and engines, based on California's standards

5

**DAIMLER TRUCK**
North America

As CARB's emergency notice acknowledges, plaintiffs in *Daimler Truck North America LLC v. CARB,* No. 2:25-cv-02255-DC (E.D. Cal), are seeking clarity in federal court on whether CARB can require certification where the state has no authority for any emissions standards and whether CARB can attempt to enforce these rules while CARB challenges the legality of the statutory revocation of their waivers in another legal action. All regulations that could be the basis of CARB's certification authority for heavy- and medium-duty vehicles in model year 2026 have lost (or do not have) federal preemption waivers, either because the waivers for the regulations were directly revoked (ACT, Omnibus), CARB failed to apply for the waiver (California greenhouse gas requirements), or the regulation was modified by a program that lost its waiver (OBD, evaporative emissions). As such, CARB cannot require certification of heavy-duty vehicles unless and until EPA grants a waiver for CARB's "condition precedent" requirements or CARB secures a new waiver for emissions standards applicable to model year 2026 and subsequent heavy-duty vehicles.

Because CARB cannot require "any …approval … as condition precedent" to sale, the requirement for a CARB Executive Order prior to initial sale also is preempted. Federal Certificates of Conformity are now the basis for sale of new vehicles and engines into California. This entire enterprise violates the prohibition on requiring any condition precedent that Congress expressly placed on states under Section 209(a) of the Clean Air Act.

CARB seeks to end-run plaintiffs' claims in federal litigation by starting this "emergency rulemaking" purporting to "revive" old emissions standards and relying on old waivers for those outdated standards. As described above, the result is an entirely new rule for heavy-duty cobbled together from various state programs with no relationship to the current applicable technology and no synergy in how the standards will operate together to create a standard that actually works in practice. And this new rule was proposed without notice to and the appropriate waivers from U.S. EPA.

All of this underscores the true nature of what CARB is trying to do: argue that it has *some* waiver in place for heavy-duty vehicles and engines so that it can require manufacturers to pay for certification and submit to its jurisdiction. While the Emergency Regulation may suit CARB's needs as a litigation tactic, it is completely unworkable as a set of actual standards that

---

and/or accompanying enforcement procedures, removes the prohibitions of section 209(a) regarding such conditions precedent for those classes."); 78 Fed. Reg 44112 (July 23, 2013) (Obama Admin.) ("[O]nce EPA has granted California a waiver of section 209(a)'s preemption for emission standards and/or accompanying enforcement procedures, California may then require other such conditions precedent.").

6

could be implemented for vehicles and engines to be sold in California and is preemption. It therefore cannot save their certification authority.

**2) CARB's attempt to codify its threat of retroactive enforcement violates federal law.**

The threat of retroactive enforcement is an impermissible attempt to enforce Omnibus. Put another way, under the new rules, manufacturers can only avoid the potential for penalties if they follow the Omnibus regulation as opposed to the new proposed Emergency Rule" or "deem to comply," the two alternatives for certification offered by CARB in the August MAC. Putting aside that CARB has no authority to certify heavy-duty trucks at this time, the "choice" presented by CARB is not a real choice – the potential for significant penalties is coercing manufacturers to conform conduct to CARB's preempted rules before they can be tested in court, particularly where CARB insists on litigating to "final judgment," which creates years of uncertainty for industry. All the while, the penalties would be accruing, creating significant business risk for companies that ask a court to clarify the law when two regulators disagree or presume that federal legislation is valid. As such, CARB's new regulatory language and board order stating that it will enforce Omnibus (without regard to court orders or enforcement discretion) violates Section 209's attempt to enforce clause (among other issues). *See* Executive Order R-25-002 ("if a court of competent jurisdiction issues a final ruling that [the resolutions] are invalid or that the waivers US EPA granted California . . . are in effect, the regulated parties are subject to the requirements of the regulations targeted by these congressional resolutions.")

**3) Section 177 States no longer have a regulation that is identical to the California standards.**

Section 177 of the Clean Air Act permits other states to adopt California's emissions standards provided their standards are "identical" to those for which California has received a waiver under Section 209(b) of the Clean Air Act. 42 U.S.C. §§ 7507, 7543(b); *see Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1043 (9th Cir. 2007). With the adoption of the new sections in this emergency rulemaking, all other states may lack identicality with California's standards.

**4) The Emergency Rulemaking creates significant due process concerns.**

Both the rules here and the process by which they are being implemented raise serious fair notice and due process concerns. Principles of due process require the government to give individuals "an opportunity [1] to know what the law is and [2] to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). But CARB's new rules create a contradictory regime that makes it impossible for regulated entities to know what the law is and then conform their conduct. Under the Emergency Regulation, mutually exclusive earlier standards (revived here) and newer standards (ACC II, Omnibus) are simultaneously "operative"

7

depending on litigation outcomes, leaving the entire industry without clarity or certainty as to which standard governs, threatening product planning, sales, and customer goodwill.

This creates a serious threat to regulated industry because CARB asserts it retains the ability to retroactively "enforce Advanced Clean Cars II and Omnibus, to the extent permitted by law, in the event a court of law holds invalid the resolutions purporting to disapprove the waivers for those more recent regulations." Notice at 3. In other words, unless manufacturers follow the rules that are currently preempted by federal law—and which the U.S. Department of Justice has directed manufacturers, including DTNA, to "cease and desist" from following—CARB may impose penalties on manufacturers if the law changes later. CARB is attempting to adopt new rules while essentially stating that if manufacturers follow these rules, they may be punished later. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Such fair notice is absent here. And the lack of clarity on the law sets manufacturers up for potential retroactive enforcement, which itself is a due process issue. *See PHH Corp. v. CFPB*, 839 F.3d 1, 46 (D.C. Cir. 2016) (Kavanaugh, J.), *reinstated in relevant part*, 881 F.3d 75, 83 (D.C. Cir. 2018) (en banc) ("Retroactivity … contravenes the bedrock due process principle that the people should have fair notice of what conduct is prohibited.").

Furthermore, regulated parties—or anyone else seeking to participate in the rulemaking process cannot adequately comment on the proposal because it is impossible to assess CARB's claim that this rule is subject to "extant preemption waivers" in the five-day comment period. CARB characterizes this rulemaking as "confirm[ing]" that "earlier-adopted standards, which have extant preemption waivers not subject to the recent congressional resolutions, are operative." Notice at 2-3. It is prohibitively difficult, however, to quickly find these "extant preemption waivers" and trace their applicability to the "earlier-adopted standards" (Notice at 2-3) that are now being promulgated as "new language" in the California Code of Regulations (App'x A-2-1 at 1).

This is because when CARB submits a waiver package to EPA, it generally does not submit a complete version of the current rule planned for adoption and enforcement, but rather submits a redline "Final Regulation Order" that only shows revisions to the rule. *See*, *e.g.*, "2008 Enclosure 9, Final Regulation Order 13 CCR 1956.8 and 2485," Nonrulemaking Docket EPA-HQ-OAR-2016-0017, Document 0012, https://www.regulations.gov/document/EPA-HQ-OAR-2016-0017-0012. In other words, CARB's waiver submissions to EPA (and indeed the Rulemaking section of CARB's website) do not contain the complete version of the regulation that received a waiver. As a result, matching the new emissions standards here with past waivers requires not merely a section-by-section analysis across 700 pages of new regulatory text, but a line-by-line one. Compounding the difficulty, the prior versions of these new rules are spread across ten or more waiver applications spanning twelve years.

8

DAIMLER TRUCK
North America

Without undertaking this analysis, regulated parties cannot fully assess, much less adequately comment on, the validity of CARB's approach here. But it is simply not possible to perform this analysis in the five calendar days that CARB is providing for comment under this "emergency" rulemaking—a period overlapping almost entirely with the ten-day period when four key regulated entities must reply to CARB's opposition to a motion for a preliminary injunction against CARB's enforcement of preempted regulations. *See* Dkt. #54 (Scheduling Order), *Daimler Truck North America LLC v. CARB*, No. 2:25-cv-02255-DC (E.D. Cal. Aug. 20, 2025).

Further, CARB proposed additional amendments to its Omnibus standards after the emergency rulemaking commenced. CARB plans to adopt these Omnibus amendments through a combination of amending existing rules and adopting new sections of the California Code of Regulations. This leads to a bizarre result: the emergency rulemaking attempts to "restore" prior standards, and the Omnibus amendments propose to amend those same prior standards. CARB is pursuing simultaneous amendments to the same set of standards that cut in opposite directions. The lack of clarity makes it difficult for parties to assess and adequately comment on the proposal.

5) **CARB's emergency regulation does not comply with the "Clarity" and "Consistency" requirements of the California Administrative Procedure Act, Cal. Gov. Code § 11349.1(a)(3)-(4).**

CARB regulations must satisfy the "Clarity" and "Consistency" standards of the California Administrative Procedure Act (APA). Cal. Gov. Code § 11349.1(a)(3)-(4); § 11349(c)-(d). "Clarity" requires that the regulations "be easily understood by those persons directly affected by them." Cal. Gov. Code § 11349(c). "Consistency" requires the regulations to be "in harmony with, and not in conflict with or contradictory to, existing statutes, court decisions, or other provisions of law." Cal. Gov. Code § 11349(d).

CARB's emergency regulation is not clear as regulated parties have no way to determine which regulatory standard governs. OAL also points to a regulation that "presents information in a format that is not readily understandable by those who are 'directly affected'" as a quintessential example of an unclear regulation. *See* OAL, Review of Compliance with the Six Substantive Standards of the Administrative Procedure Act, at ¶ 3.03, https://oal.ca.gov/wp-content/uploads/sites/166/2023/04/OAL-Review-for-6-APA-Standards.pdf. As described above, directly regulated parties cannot readily confirm CARB's assertion in its emergency regulation that its new standards have "extant preemption waivers," and are therefore valid and enforceable.

The emergency regulation also violates the "Consistency" standards of the APA. As noted above, adoption of the rule would conflict with federal law, and it is an attempt to enforce CARB's preempted Omnibus emissions standards in contradiction of the Clean Air Act. The Emergency Regulation is also internally inconsistent. It creates a facially contradictory

9

regulatory regime: both revived standards and newer Omnibus standards are "operative" depending on litigation outcomes.

**6) CARB fails to demonstrate an "emergency," Cal. Gov. Code § 11346.1(b), and lacks substantial evidence of necessity, Cal. Gov. Code § 11349.1(a)(1); § 11349(a).**

An emergency "calls for immediate action to avoid serious harm to the public peace, health, safety, or general welfare." Cal. Gov. Code § 11342.545. CARB cannot simply declare an emergency. Any finding of emergency must "describe specific facts demonstrating the existence of an emergency and the need for immediate action," and any regulation needed to address the emergency must be supported "by substantial evidence." Cal. Gov. Code § 11346.1(b)(2). CARB does not and cannot meet these standards. CARB's claim of an "emergency" lacks credibility, as the situation was neither unexpected nor abrupt. CARB was well aware that Congress has long been openly deliberating revoking the waivers under the Congressional Review Act.

CARB will not experience "serious harm" in the absence of the emergency rulemaking. EPA's emission standard remain in effect, and as described above, several of the standards are *more* stringent than the standards CARB seeks to revive through emergency rulemaking, including with respect to NOx emissions. This federal regulatory framework is sufficient to protect public health or welfare.

CARB's showing amounts to little more than a speculative and redundant effort to reassert its own authority over emissions control, lacking the substantial evidence necessary to justify an emergency rulemaking under California law. CARB must make a showing of objective, imminent, and serious harm, *see* Cal. Gov. Code §§ 11342.545, 11346.1(b)(2). The Government Code provides that "[a]ny finding of emergency based only upon expediency, convenience, best interest, general public need, or speculation, shall not be adequate," Cal. Gov. Code § 11346.1(b)(2). Here, EPA's regulations are protective of public health and welfare (and in some respects, more protective) and negate CARB's purported public harms—and vehicles sold in California will continue to adhere to the same comprehensive emissions standards as those sold in non-Section 177 states. CARB's justifications thus seem to boil down to a desire to preserve some semblance of the regulatory authority revoked by the federal government. The urgency of CARB's rulemaking is likely related to its litigation strategy rather than any actual threat to public health or safety. This institutional anxiety is not a cognizable emergency. CARB's proposed rule is an unlawful and improper attempt to circumvent normal rulemaking procedures to address a problem of CARB's own making, which poses only speculative and hypothetical harms.