# EXHIBIT B

STATE OF CALIFORNIA
OFFICE OF ADMINISTRATIVE LAW

| | | |
|---|---|---|
| **California Air Resources Board;** | ) | **Comment Deadline:** |
| **Proposed Emergency Amendment and** | ) | **September 27, 2025** |
| **Adoption of Vehicle Emissions** | ) | **OAL File Number:** |
| **Regulations** | ) | **2025-0922-01E** |

## COMMENTS OF THE
## TRUCK AND ENGINE MANUFACTURERS ASSOCIATION

September 27, 2025
By email: staff@oal.ca.gov
        cotb@arb.ca.gov

Timothy A. French
Truck & Engine Manufacturers Association
333 West Wacker Drive, Suite 810
Chicago, IL 60606

STATE OF CALIFORNIA
OFFICE OF ADMINISTRATIVE LAW

| | |
|---|---|
| **California Air Resources Board;** ) | **Comment Deadline:** |
| **Proposed Emergency Amendment and** ) | **September 27, 2025** |
| **Adoption of Vehicle Emissions** ) | **OAL File Number:** |
| **Regulations** ) | **2025-0922-01E** |

## Introduction

The Truck and Engine Manufacturers Association (EMA) appreciates the opportunity to comment on the California Air Resources Board's (CARB) proposed "Emergency Amendment and Adoption of Vehicle Emissions Regulation" (Emergency Regulation) that CARB submitted to the Office of Administrative Law (OAL) for its approval on September 22, 2025. Under the emergency rulemaking process that CARB is trying to invoke, key stakeholders such as EMA – the trade association that represents the interests of the manufacturers of the heavy-duty and medium-duty (HDMD) vehicles and engines that would be subject to the Emergency Regulations – are being provided with only five (5) days to comment to OAL on a regulatory proposal that would have major and sweeping impacts on the trucking industry throughout California. Consequently, for the multiple procedural and substantive reasons as explained below, OAL should act swiftly to disapprove the Emergency Regulation.

The components of the Emergency Regulation that are of greatest concern to EMA are those that would (i) terminate the implementation of certain Omnibus Low-NOx (Omnibus) regulations, which are currently contained in the California Code of Regulations (CCR), and which established very stringent HDMD engine and vehicle emission standards for oxides of nitrogen (NOx) and particulate matter (PM), and (ii), "revive" and amend "certain antecedent" NOx and PM standards that the Omnibus standards previously "displaced." Importantly, on June 12, 2025, the President signed legislation that Congress passed under the Congressional Review Act (CRA) preempting and nullifying the Omnibus regulations.

Now, more than three months after the enactment of the CRA legislation, CARB seeks to move unilaterally to "amend" titles 13 and 17 of the California Code of Regulations (CCR) to implement a new revised mix of NOx and PM emission standards for the certification of new HDMD trucks and engines, effective immediately, including for the 2026 model year (MY), without any notice and comment process whatsoever. For multiple reasons, OAL should not endorse this attempted misuse of the emergency rulemaking process, which CARB itself has undercut through its recent filing of a regular rulemaking (with a November 20th CARB hearing date) to accomplish the very same objectives at issue in this emergency action. (See CARB "Notice of Public Hearing," issued on September 24, 2025.) Accordingly, as explained below, OAL should not approve the Emergency Regulation, because it cannot meet at least three of the statutory prerequisites for OAL approval: consistency, necessity and authority. (See Cal. Govt Code, section 11349.6(b).)

1

As an initial matter, the emergency situation that CARB cites as the reason for trying to evade the applicable notice and comment provisions of the California Administrative Procedures Act arose on June 12, 2025 – more than three months ago – when the President signed into law Congressional disapprovals of the preemption waiver that EPA had previously issued for the Omnibus regulations. That law, enacted under the CRA, nullified the prior preemption waiver and similarly nullified and conclusively preempted the Omnibus regulations, thereby making them void and unenforceable as a matter of federal law. CARB fully understood the profound impacts of that CRA legislation, and immediately initiated litigation in federal district court challenging that legislation (see California v. United States, 25-cv-04966) (N.D. Cal.)).

Notwithstanding that backdrop and CARB's predicament, what CARB is proposing to do here on an emergency basis is improper and in direct conflict with the federal Clean Air Act (CAA). More specifically, the Emergency Regulation is inconsistent with the CAA because: (i) CARB needs to obtain a preemption waiver from U.S. EPA before adopting or attempting to enforce any new amended mix of emission standards for new HDMD trucks and engines, and (ii) CARB also needs to provide four years of lead time before attempting to enforce any revised mix of emission standards applicable to new HDMD trucks and engines. The Emergency Regulation fails to satisfy both of those federal mandates and so is preempted and in direct violation of the controlling provisions of federal law.

Second, the Emergency Regulation is not necessary. Even though federal legislation has nullified the Omnibus standards, corollary federal HDMD low-NOx and PM emission standards, adopted and enforced by the U.S. Environmental Protection Agency (EPA), remain in effect nationwide to comprehensively control emissions from 2026 MY and later trucks and engines. More importantly, starting with the 2027 MY, those federal emission standards will be *more stringent* than the emergency standards CARB is attempting to implement to address a supposed public health "emergency."

Third, in promulgating the Emergency Regulation, CARB is claiming enforcement authority it does not have. Specifically, CARB is proposing to reserve the right to retroactively enforce the Omnibus regulations, notwithstanding that the whole point of this "emergency" exercise is to terminate any enforcement of the CRA-voided Omnibus standards, and to instead amend the CCR to "revive" the antecedent NOx and PM standards until such time as "a court of law holds invalid the [CRA] resolution purporting to disapprove the [Omnibus] waiver." It should go without saying that there is no lawful basis for CARB to threaten retroactive enforcement of regulations that it is expressly seeking to "displace" though emergency action. Simply stated, CARB has no authority – none – to punish manufacturers at some point in the future for not complying with regulations that it took emergency measures to take off the books and replace.

Indeed, CARB's threat of retroactive enforcement is just that, a coercive threat to try to strong-arm manufacturers into still complying with Omnibus regulations that CARB knows full well it has no power to enforce, and will have no power to enforce until after the litigation that CARB commenced to overturn the CRA legislation is fully resolved (and, even then, only if CARB prevails). Trying to hold manufacturers hostage during the pendency of that litigation is not only unlawful, it is also the type of targeted ex post facto coercion that OAL should denounce.

2

The remainder of EMA's comments will expand upon each of the foregoing points, while also discussing CARB's failure to satisfy the applicable provisions of California Environmental Quality Act.

**<u>The Emergency Regulation is Inconsistent and in Direct Conflict With the CAA</u>**

As noted above, in June, pursuant to the CRA, the federal government statutorily preempted and nullified California's Omnibus emissions standards. As a result, federal law prohibits CARB from adopting or attempting to enforce any new set of amended replacement HDMD emissions standards without a waiver of preemption from EPA, see 42 U.S.C. §§ 7543(a)-(b), or without a determination from EPA that the new set of emission standards are "within the scope" of a previously granted waiver. More specifically, CAA section 209(a) provides that, absent a waiver, "no State … shall adopt or attempt to enforce any standard relating to the control of emissions" from new motor vehicles or engines, and further mandates, "no State shall require certification … as condition precedent to the initial retail sale" of those new motor vehicles or engines. 42 U.S.C. § 7543(a).

In this emergency rulemaking, CARB is attempting to circumvent federal legislation by promulgating a new amended set of emission standards stitched together from parts of earlier HDMD regulations and standards for which CARB had once received now-superseded preemption waivers. But the end result of CARB's emergency rulemaking is a new proposed set of standards that has no operative preemption waiver, and so violates section 209(a) of the CAA. 42 U.S.C. §7543(a). As a consequence, this rulemaking is directly preempted by and in conflict with federal law because it attempts to enforce a newly revised and amended mix of state MDHD vehicle and engine emissions standards without first having a new EPA preemption waiver in place.

In light of that direct conflict with the CAA, CARB attempts to rely on previous waivers from EPA to adopt and enforce the new amended mix of "emergency" emission standards. But given the intervening regulatory changes and the proposed inclusion of the emergency standards as entirely new sections and new language in the California Code of Regulations (CCR), reliance on prior since-superseded waivers is both improper and insufficient. CARB's characterization of these new emergency standards as "earlier-adopted standards, which have extant preemption waivers not subject to the recent congressional resolutions" (CARB Notice, at 2-3) is wholly inaccurate and does not relieve CARB of the obligation to obtain a new CAA waiver or "within the scope" determination. Indeed, in its own Public Notice for this action (at p.1), CARB concedes that the Emergency Regulation will "*amend* California Code of Regulations, titles 13 and 17, and *adopt new sections* into California Code of Regulations, titles 13 and 17." By CARB's own words, therefore, this is a rulemaking to adopt new amended standards in new sections of the CCR, which requires a new preemption waiver.

Describing new regulatory sections and amended language as "earlier-adopted standards" also does not reflect the reality that regulated parties are facing. Until now, the new set of emergency standards at issue was not contained in the CCR, and regulated parties had no way to ascertain that these emergency emissions standards would apply to 2026 MY products or to future model years. From that perspective as well, implementation of these emergency standards is therefore a clear "adopt[ion]" and attempted enforcement of a new set of emissions standards that

3

requires a new preemption waiver from EPA. CARB's invocation of prior waivers cannot relieve CARB from its current obligations under the operative provision of the CAA.

Illustrating this point, the emergency standards do not simply reverse the regulatory changes and CCR additions effectuated through CARB's now-nullified Omnibus rulemaking. See CARB, Heavy-Duty Engine and Vehicle Omnibus Regulation and Associated Amendments (OAL Approval Dec. 21, 2022).[1] For example, the Omnibus regulations changed CCR, title 13, section 1956.8 to remove language that applied the prior tailpipe emissions standards to "2007 and subsequent" model years, as shown in the table below:

Exhaust Emission Standards for 2004 ~~and Subsequent~~ Through 2023 Model Heavy-Duty Engines, and Optional, Reduced Emission Standards for 2002 ~~and Subsequent~~ Through 2023 Model Heavy-Duty Engines Produced Beginning October 1, 2002, Other than Urban Bus Model-Year Engines Produced From October 1, 2002 Through 2006[L]
(grams per brake horsepower-hour [g/bhp-hr])

| Model Year | Oxides of Nitrogen Plus Non-methane Hydrocarbons | Optional Oxides of Nitrogen Plus Non-methane Hydrocarbons | Oxides of Nitrogen | Optional Oxides of Nitrogen | Non-methane hydrocarbons | Carbon Monoxide | Particulates |
|---|---|---|---|---|---|---|---|
| 2004-2006[H] | 2.4[A,C,E,J] | 2.5[B,C,E,J] | n/a | | n/a | 15.5 | 0.10[C] |
| October 1, 2002-2006 | n/a | 1. 8 to 0.3[A,D,F] | n/a | | n/a | 15.5 | 0.03 to 0.01[G] |
| 2007 ~~and subsequent~~ 2023[M] | n/a | n/a | 0.20[I] | | 0.14 | 15.5 | 0.01[K] |
| 2015 ~~and Subsequent~~ 2021 (Optional)[N,O] | n/a | n/a | n/a | 0.10, 0.05, or 0.02 | 0.14 | 15.5 | 0.01 |
| 2022-2023 (Optional)[N,O] | n/a | n/a | n/a | 0.10, 0.05, 0.02, or 0.01 | 0.14 | 15.5 | 0.01 |

CARB, Title 13 Final Regulation Order (Date of Hearing: Aug. 27, 2020), at 5.[2]

Here, the Emergency Regulation does not simply "undo" those Omnibus-implemented strike-outs to restore the prior version of CCR, title 13, section 1956.8. Rather, CARB is adopting new and separate regulatory sections with a new mix of HDMD emissions standards applicable to current and subsequent model year HDMD trucks and engines. Moreover, the new sections and amended regulatory language presented in Appendix A-1-2 to the Emergency Regulation are not a mere replica of a prior rule that was subject to a specific prior EPA preemption waiver. Instead, this proposed emergency rulemaking seeks to codify a new mix of emissions standards and requirements made up from various regulatory provisions covered by separate prior preemption waivers granted over a twelve-year period, and blended together to create something both new and newly applicable to current and future model year HDMD vehicles and engines. For example, the new emergency standards include a 2005 diesel tailpipe emissions standard, a 2010 gasoline tailpipe emissions standard, and 2013 on-board diagnostic standards (see Notice at 5 nn.7, 9)—all applied immediately to 2026 MY HDMD vehicles and engines. No such blended hybrid set of HDMD vehicle standards has ever existed before. Consequently, because CARB is proposing to

---

[1] Available at https://ww2.arb.ca.gov/rulemaking/2020/hdomnibuslownox.
[2] Available at https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2020/hdomnibuslownox/froa-1.pdf.

4

enforce immediately a new amended set of mixed emissions standards, CARB's action requires that a new EPA waiver or authorization first be in place under CAA section 209(b).

Moreover, even if this emergency rule were as simple as CARB says (which it is not), "restoring" prior emissions standards to apply them to the current and subsequent model year without notice violates federal law, because that approach similarly creates new HDMD regulations without a waiver. Any argument that this is not a "new" adoption and enforcement of amended HDMD standards as applied to current or future model years, supposedly because the antecedent standards originally had an indefinite duration (i.e., applicable to "2007 and subsequent" model years) at the time of the initial grant of a preemption waiver in 2005[3], is belied by the fact that, as shown in the table above, the Omnibus regulations *eliminated* the language applying the antecedent standards to all subsequent model years. See supra notes 1 and 2. The antecedent standards therefore ceased to be indefinitely applicable in 2021. Instead, those standards expressly ceased to apply after the 2023 MY. Indeed, CARB specifically "sunset" those prior standards such that they ceased to exist years ago. Thus, any attempt to amend (not "revive") those antecedent standards for current and future model years with an immediate effective date necessarily (as CARB admits) *amends* the current emission standards applicable for this model year and subsequent model years, which requires a new preemption waiver.

In sum, CARB cannot escape the fact that any attempted implementation of its emergency hybrid blend of amended HDMD emission standards absolutely requires a new preemption waiver or "within the scope" determination. In the absence of such a waiver, the Emergency Regulation, slated to be implemented immediately, is in violation of federal law and cannot be approved by OAL.

### The Emergency Regulation Cannot Satisfy the CAA Section 209(b) Waiver Criteria

As detailed above, to implement or enforce the emergency amended emissions standards, CARB needs a new waiver of federal preemption or an EPA "within the scope" determination as to an existing waiver. But even if CARB were to belatedly apply to EPA for such a waiver, the emergency standards cannot satisfy the criteria for a preemption waiver under the CAA. Among other things, CAA sections 202 and 209 require CARB to provide at least four years of lead time before enforcing any new set of HDMD emission standards. See 42 U.S.C. sections 7543(b)(1)(C) and 7521(a)(3)(C).

In this case, however, CARB is providing *no lead time whatsoever*. CARB is maintaining that the emergency standards took effect on September 22nd, "upon filing with OAL." Putting aside manufacturers' initial product design and development timelines for new HDMD trucks and engines (the core issue warranting the CAA-mandated lead time period of at least four years), emissions and OBD testing for any given model year of trucks and engines takes months—if not more than a year. And, with respect to MY 2026, manufacturers have already taken new truck orders and mapped out their production schedules, which have in fact already begun. Thus, there is no real possibility for manufacturers to in essence "drop what they are doing" to comply

---

[3] Notice at 5 n.7.

5

immediately with emergency standards that supposedly took effect earlier this week. CARB's clear violation of the CAA's lead time requirement is again in direct conflict with federal law.

CARB also has not shown that its emergency standards are technologically feasible, which too is inconsistent with CAA sections 202 and 209. *See* 42 U.S.C. §§ 7543(b)(1)(C), 7521(a). For example, CARB's new mix of amended regulatory provisions excludes several changes to on-board diagnostic standards that were included in the Omnibus rulemaking package to ensure technical feasibility, such as modifications to certain test-out criteria and changes to thresholds at which failures must be reported and addressed. *See* CARB, Initial Statement of Reasons, Proposed Heavy-Duty Engine and Vehicle Omnibus Regulation and Associated Amendments (June 23, 2020) at III-10.

On top of that, CARB's new mix of emergency standards is less stringent than the corollary federal emission standards for new 2027 MY HDMD vehicles and engines. For example, CARB's amended section 1956.8.1 in title 13 of the CCR adopts $CO_2$ and NOx standards that are less stringent than EPA's standards codified at 40 C.F.R. § 1036, which take effect in MY 2027. Because CARB's amended standards must be at least as stringent as any corollary federal standards to warrant a preemption waiver from EPA, the emergency standards fail to meet the waiver criteria on this ground as well. (See 42 U.S.C. section 7543(b)(1).)

Further, EPA will only consider CARB's amendments to previously approved standards to be "within the scope of a previously granted waiver" if they do not undermine California's determination that its standards, in the aggregate, are at least as protective of public health and welfare as applicable federal standards, do not create any inconsistency with section 202(a) of the Act, and do not raise any new issues affecting EPA's previous waiver decision. "California State Motor Vehicle Pollution Control Standards; Within the Scope Determination and Waiver of Preemption Decision for Amendments to California's Zero-Emission Vehicle (ZEV) Standards," 76 Fed. Reg. 61095 (Oct. 3, 2011). As described above, CARB's new emergency regulatory provisions are less stringent than the federal standards, are inconsistent with the lead time requirements of section 202(a) of the CAA, and are foreclosed in any event by the CRA legislation.

### **CARB Has No Authority for its Threats of Retroactive Enforcement**

As also noted above, CARB is threatening retroactive enforcement of the Omnibus standards notwithstanding their nullification under the CRA legislation signed into law on June 12, 2025. CARB is, in essence, using coercion to compel compliance with standards that are not in effect as a matter of law. Such threatened retroactive enforcement, which in this instance hinges upon CARB's potential future litigation success and a restoration of the Omnibus preemption waiver, is indeed heavily coercive. In the face of CARB's threats, manufacturers face the dilemma of complying with the regulations that Congress voided, thereby acting in contravention of federal law, or not complying with the Omnibus regulations, which creates the specter of heavy fines and other enforcement actions during any interim period that might lead up to a successful litigation outcome for CARB in the future. Administrative law has a strong presumption against any form of retroactivity, and retroactive penalties would be especially unreasonable and unlawful in this case. Accordingly, since CARB has no authority to retroactively enforce its now-void Omnibus emission standards, OAL should not participate in or countenance creating such unlawful dilemmas for HDMD truck and engine manufacturers.

6

Simply stated, CARB's threat of retroactive enforcement amounts to an unauthorized attempt to enforce the Omnibus regulations that Congress invalidated under the CRA. Through its threats to retroactively enforce the Omnibus regulations, if CARB succeeds in its lawsuit against the United States, CARB is deliberately creating an untenable "Catch-22" for truck and engine manufacturers. They can continue to comply with regulations that Congress has found to be void and of no effect, or they can follow federal law while facing potentially crippling financial penalties if CARB proves to be a prevailing litigant in the future. CARB has no authority to impose such a "catch" through an unlawful threat of retroactive ex post facto enforcement tactics. The CRA-related litigation that CARB has commenced against the United States could take years to reach a final solution, which creates years of uncertainty for industry. All the while, the potential retroactive penalty clock is ticking at a rate of $48,788 per new non-Omnibus-compliant vehicle sold or operating in California. (See CARB Memo re Maximum Penalties, February 21, 2025.) Thus, in any decision that OAL renders in this matter, it must make clear that CARB has no authority to enforce any aspect of the Omnibus regulations retroactively if they are later reinstated as an outcome of any intervening litigation.

## CARB Has Failed to Demonstrate the Requisite Necessity for the Emergency Regulation

A regulatory emergency "calls for immediate action to avoid serious harm to the public peace, health, safety, or general welfare." Cal. Gov. Code § 11342.545. CARB cannot make that showing of immediate serious harm to public health in this instance. See also section 11346.1(b)(2).

CARB's claim of serious and immediate harm to public health is undermined by the federal EPA regulations that already establish current and ongoing nationwide HDMD emissions standards. Those federal regulations remain in effect and in several respects, including for NOx emissions starting in MY 2027, are more stringent than the amended "antecedent" standards CARB seeks to implement through emergency rulemaking. The in-place federal regulatory framework provides a robust backstop against any lapse in California-specific HDMD emission standards, completely undercutting CARB's claim that immediate action is required to protect against a public health emergency.

Viewed against this regulatory landscape, CARB's filing with OAL amounts to little more than an untimely and preempted effort to reassert its own authority over HDMD emissions control notwithstanding the CRA legislation, falling far short of the required substantial evidence of serious harm to public health necessary to justify an emergency rulemaking under California law. The Government Code demands a showing of objective, imminent, and serious harm, *see* Cal. Gov. Code §§ 11342.545, 11346.1(b)(2), and makes clear that "[a]ny finding of emergency based only upon expediency, convenience, best interest, general public need, or speculation, shall not be adequate," Cal. Gov. Code § 11346.1(b)(2). Here, federal regulations strictly limit (and in some respects, better protect against) any near-term concerns regarding emissions from new HDMD vehicles and engines. HDMD vehicles sold in California will continue to adhere to the same comprehensive protective federal emissions standards as those sold in other states. There is no immediate public health emergency.

Though CARB recites statistics related to vehicle emissions in California, tellingly CARB does not state that emissions levels will worsen in the absence of CARB's proposed emergency

7

standards. Nor can it, since, again, the new "emergency" set of $CO_2$, NOx and PM standards are less stringent than EPA's corollary standards codified at 40 C.F.R. § 1036 and that take effect in MY 2027.

CARB has further demonstrated the fallacy of its invocation of a state of emergency even while this matter is still pending. On September 23rd, CARB published a new notice of rulemaking and Initial Statement of Reasons (ISOR) for a rule that CARB intends to adopt on November 20th to, among other things, align its HDMD NOx and PM emission standards with EPA's HDMD emission standards starting with the 2027 MY, and perhaps more significantly, to "permanently adopt the Emergency Regulation that CARB previously noticed as an emergency rulemaking on September 15, 2025." (ISOR, p.1.). No doubt sensing that there is no actual basis for its Emergency Regulation, CARB has initiated the new regular rulemaking, with a full 45-day notice and comment process, to try to accomplish the same objective as the emergency rule, which necessarily moots this "emergency" proceeding. Given CARB's clear about-face on this matter, OAL should promptly disapprove and dismiss the "emergency" proceeding.

### CARB Has Not Met its CEQA Obligations

Through the submittal of the Emergency Regulation, CARB seeks to avoid the environmental review required under the California Environmental Quality Act ("CEQA") by invoking the "common sense" exemption provided under 14 Cal. Code Regs. sections 15061(b)(3). CARB's claim of exemption is not valid.

Specifically, the "common sense" exemption only applies if CARB demonstrates with substantial evidence that "it can be seen with certainty there is no possibility that the activity in question may have a significant effect on the environment." 14 Cal. Code Regs. § 15061(b)(3); see also *Muzzy Ranch Co. v. Solano County Airport Land Use Comm'n*, 41 Cal. 4th 372, 386-87 (2007), *quoting Davidon Homes v. City of San Jose*, 54 Cal. App. 4th 106, 114 (1997) ("'[T]he agency's exemption determination must [rely on] evidence in the record demonstrating that the agency considered possible environmental impacts in reaching its decision.'"). Further, the protective-purpose of categorical exemptions (14 Cal. Code Regs. sections 15307, 15308) do not apply where the action may relax existing standards or otherwise risk environmental degradation. 14 Cal. Code Regs § 15308 ("relaxation of standards allowing environmental degradation are not included in this exemption"); see also *Dunn-Edwards Corp. v. BAAQMD*, 9 Cal. App. 4th 644, 653-58 (1992) (no exemption where possibility of increased emissions); *Int'l Longshoremen's & Warehousemen's Union v. Board of Supervisors*, 116 Cal. App. 3d 265, 276 (1981) (no exemption where NOx emissions standards are relaxed); *California Unions for Reliable Energy v. Mojave Desert AQMD*, 178 Cal. App. 4th 1225, 1240-47 (2009) (exemption invalid absent evidence of no significant adverse effects).

Here, the Emergency Regulation would amend and put in place "relaxed" antecedent HDMD emission standards in lieu of more stringent federal standards, especially those starting in MY 2027. CARB's own pending Notice of Rulemaking, issued on September 23rd, specifically acknowledges that the current and continuing HDMD federal diesel standards are comparable to the now-void Omnibus standards starting in MY 2027. See Notice at 8. That statement makes it clear that adopting and implementing the relaxed antecedent standards could lead to higher emissions, especially from and after the 2027 MY.

8

      Under the applicable CEQA Guidelines, any attempt to make emission standards less stringent bars the application of CARB's claimed CEQA exemptions. Accordingly, OAL also should disapprove the Emergency Regulations on the ground that CARB has not fulfilled its CEQA obligations in this instance.

## **Conclusion**

      The Emergency Regulation, which CARB has effectively mooted through its initiation of a parallel regular rulemaking process, cannot meet the statutory requirements for consistency, necessity and authority (or CEQA compliance). Accordingly, OAL should promptly issue its disapproval of CARB's proposed Emergency Regulation, while also noting that CARB has no authority to threaten retroactive enforcement of supplanted regulations.

      Respectfully Submitted,

      TRUCK AND ENGINE
      MANUFACTURERS ASSOCIATION