ROB BONTA, State Bar No. 202668
Attorney General of California
MYUNG J. PARK, State Bar No. 210866
Supervising Deputy Attorney General
BENJAMIN P. LEMPERT, State Bar No. 344239
DAVID M. MEEKER, STATE BAR NO. 273814
JONATHAN A. WIENER, State Bar No. 265006
M. ELAINE MECKENSTOCK, State Bar No. 268861
Deputy Attorney General
    1515 Clay Street, 20th Floor
    P.O. Box 70550
    Oakland, CA 94612-0550
    Telephone: (510) 879-0299
    Fax: (510) 622-2270
    E-mail: Elaine.Meckenstock@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAIMLER TRUCK NORTH AMERICA, LLC; INTERNATIONAL MOTORS, LLC; PACCAR, INC.;** and **VOLVO GROUP NORTH AMERICA, LLC,**<br><br>Plaintiffs,<br><br>**THE UNITED STATES OF AMERICA;** and **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br><br>Plaintiff-Intervenors<br><br>v.<br><br>**CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF,** in his official capacity as the Executive Officer of the California Air Resources Board; and **GAVIN NEWSOM,** in his official capacity as the Governor of California,<br><br>Defendants. | 2:25-cv-02255-DC-AC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS DAIMLER TRUCK NORTH AMERICA ET AL.'S COMPLAINT (ECF 1)**<br><br>Date:          November 21, 2025<br>Time:         1:30 PM<br>Courtroom:  8, 13th Floor<br>Judge:        Hon. Dena Coggins<br>Trial Date:   Not Set<br>Action Filed:  August 11, 2025 |

**TO ALL PARTIES AND ATTORNEYS OF RECORD:**

YOU ARE HEREBY GIVEN NOTICE that on November 21, 2025, at 1:30 p.m., or as soon thereafter as this matter may be heard, the California Air Resources Board, Steven S. Cliff, in his official capacity as Executive Officer of the California Air Resources Board, and Gavin Newsom, in his official capacity as the Governor of the State of California, will and hereby do respectfully move to dismiss Plaintiffs' Complaint in its entirety, except as to Count I against Defendant Cliff.

This Motion to Dismiss is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and attached papers, all documents in the Court's file, and other such written and oral argument as may be presented to the Court.

Counsel for Defendants and Plaintiffs have exhausted meet and confer efforts. On Tuesday, October 7, 2025, counsel for Defendants and Plaintiffs met and conferred via videoconference and exchanged emails following that meeting. Plaintiffs indicated they would not oppose dismissal of their state law claims (specifically, Counts V, VI, and VII) without prejudice). The parties were unable to resolve the disputed issues in this motion through meet and confer.

Dated: October 10, 2025                    Respectfully submitted,

                                           ROB BONTA
                                           Attorney General of California
                                           MYUNG J. PARK
                                           Supervising Deputy Attorney General


                                           */s/ M. Elaine Meckenstock*
                                           M. ELAINE MECKENSTOCK
                                           Deputy Attorney General
                                           *Attorneys for Defendants*

1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MYUNG J. PARK, State Bar No. 210866
   Supervising Deputy Attorney General
3  BENJAMIN P. LEMPERT, State Bar No. 344239
   DAVID M. MEEKER, State Bar No. 273814
4  JONATHAN A. WIENER, State Bar No. 265006
   M. ELAINE MECKENSTOCK, State Bar No. 268861
5  Deputy Attorney General
     1515 Clay Street, 20th Floor
6    P.O. Box 70550
     Oakland, CA 94612-0550
7    Telephone: (510) 879-0299
     Fax: (510) 622-2270
8    E-mail: Elaine.Meckenstock@doj.ca.gov
   *Attorneys for Defendants*

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14  **DAIMLER TRUCK NORTH AMERICA,**          2:25-cv-02255-DC-AC
    **LLC; INTERNATIONAL MOTORS, LLC;**
15  **PACCAR, INC.;** and **VOLVO GROUP**
    **NORTH AMERICA, LLC,**
16                                            **DEFENDANTS' MEMORANDUM OF**
                               Plaintiffs,    **POINTS AND AUTHORITIES IN**
17                                            **SUPPORT OF THEIR MOTION TO**
                                              **DISMISS DAIMLER TRUCK NORTH**
18  **THE UNITED STATES OF AMERICA;** and     **AMERICA ET AL.'S COMPLAINT**
    **UNITED STATES ENVIRONMENTAL**           **(ECF 1)**
19  **PROTECTION AGENCY,**
                                              Date:        November 21, 2025
20                      Plaintiff-Intervenors  Time:        1:30 PM
                                              Courtroom:   8, 13th Floor
21                                            Judge:       Hon. Dena Coggins
                                              Trial Date:  Not Set
22            **v.**                          Action Filed: August 11, 2025

23

24  **CALIFORNIA AIR RESOURCES BOARD,**
    **STEVEN S. CLIFF,** in his official capacity as
25  the Executive Officer of the California Air
    Resources Board; and **GAVIN NEWSOM,** in
26  his official capacity as the Governor of
    California,
27
                               Defendants.

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    A.   A Brief History of State and Federal Regulation of Motor Vehicle
Emissions ............................................................................................... 2

    B.   The Challenged CARB Regulations ....................................................... 3

    C.   The Clean Truck Partnership .................................................................. 4

    D.   Congress "Disapproves" of Certain Preemption Waivers, and California
Responds ................................................................................................ 4

    E.   Procedural History ................................................................................. 6

STANDARD OF REVIEW ............................................................................................ 6

ARGUMENT .................................................................................................................. 7

I.    Sovereign Immunity Bars All of Plaintiffs' Claims Against CARB ................................. 7

II.   Sovereign Immunity Bars All of Plaintiffs' Claims against the Governor ........................ 8

III.  Sovereign Immunity Bars All of Plaintiffs' State-Law Claims (Counts V, VI, VII)
Against All Defendants ........................................................................................... 10

IV.  All Claims Against the Executive Order Should Be Dismissed ..................................... 10

    A.   All of Plaintiffs' Challenges to the EO Are Unripe (Counts II, IV, V) ............... 10

    B.   Plaintiffs Fail to State a Claim that the EO Violates their Speech or
Petitioning Rights (Counts IV and V) ................................................. 11

    C.   Plaintiffs Fail to State a Clean Air Act Preemption Claim against the EO
Because It Neither Sets Nor Enforces Emission Standards (Count II) ................. 12

V.   All Claims Against the May MAC Should Be Dismissed ............................................. 13

    A.   The May MAC Was Superseded and Claims Against It Are Moot .................... 13

    B.   Plaintiffs Fail to State a Preemption Claim Against the May MAC .................... 14

    C.   Plaintiffs Fail to State Speech-Based Claims Against the May MAC ................. 14

    D.   Plaintiffs Fail to State a Claim (Count VI) that the May MAC Is an
Underground Regulation ...................................................................... 15

VI.  All Claims Against the CTP Should Be Dismissed ...................................................... 15

    A.   Plaintiffs Fail to Establish Standing to Bring their CTP Preemption Claim
and Also Fail to State that Claim (Count III) ..................................... 15

    B.   Plaintiffs Fail to Establish Standing to Bring Their CTP First Amendment
Claim (Count IV) ................................................................................. 17

    C.   Sovereign Immunity Bars Plaintiffs' State Law CTP Claims ........................... 19

VII. All Claims Against the Advanced Clean Fleet Regulation's 2036 Sales
Requirement Should Be Dismissed ........................................................................... 19

CONCLUSION ............................................................................................................. 20

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4
5

*Airlines for Am. v. City & Cnty. of San Francisco*
    78 F.4th 1146 (9th Cir. 2023)..................................................................... 17

6

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*
    569 U.S. 641 (2013).................................................................................... 17

7
8

*Arc of Cal. v. Douglas*
    757 F.3d 975 (9th Cir. 2014)...................................................................... 13

9
10

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
    729 F.3d 937 (9th Cir. 2013)................................................................... 8, 9

11

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot.*
    208 F.3d 1 (1st Cir. 2000) ......................................................................... 17

12
13
14

*Bhd. of Locomotive Eng'rs & Trainmen, a Div. of Rail Conf.-Int'l Bhd. of*
    *Teamsters v. Surface Transp. Bd.*
    457 F.3d 24 (D.C. Cir. 2006) ..................................................................... 18

15

*Brach v. Newsom*
    38 F.4th 6 (9th Cir. 2022) (en banc).................................................... 13, 14

16
17

*Buscemi v. Bell*
    964 F.3d 252 (4th Cir. 2020) ..................................................................... 19

18
19

*California v. United States*
    Case No. 4:25-cv-04966 (N.D. Cal. filed June 12, 2025) .......................... 5

20

*Chandler v. State Farm Mut. Auto. Ins. Co.*
    598 F.3d 1115 (9th Cir. 2010)...................................................................... 6

21
22

*Deitz v. Comcast Corp.*
    No. C 06-06352 WHA, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006)................................. 16

23

*Doe v. Regents of the Univ. of Cal.*
    891 F.3d 1147 (9th Cir. 2018)..................................................................... 10

24
25

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*
    498 F.3d 1031 (9th Cir. 2007)..................................................................... 12

26
27

*Env't Conservation Org. v. City of Dallas*
    529 F.3d 519 (5th Cir. 2008)...................................................................... 19

28

# TABLE OF AUTHORITIES
### (continued)

Page

*ESG Cap. Partners, LP v. Stratos*
   828 F.3d 1023 (9th Cir. 2016)................................................................................ 11

*Fikre v. FBI*
   904 F.3d 1033 (9th Cir. 2018)................................................................................ 13

*Fin. Indem. Co. v. Messick*
   606 F. Supp. 3d 996 (E.D. Cal. 2022).................................................................... 17

*Garcia v. Google, Inc.*
   786 F.3d 733 (9th Cir. 2015).................................................................................. 16

*Hughes v. Alexandria Scrap Corp.*
   426 U.S. 794 (1976) ............................................................................................... 13

*In re Gilead Sci. Sec. Litig.*
   536 F.3d. 1049 (9th Cir. 2008)............................................................................ 7, 8

*John & Vincent Arduini Inc. v. NYNEX*
   129 F. Supp. 2d 162 (N.D.N.Y. 2001) .................................................................. 18

*Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*
   616 F.3d 963 (9th Cir. 2010).................................................................................... 7

*L.A. Cnty. Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992)............................................................................. 8, 18

*Makaryan v. Volkswagen Grp. of Am., Inc.*
   No. CV 17-5086 PA (KSX), 2017 WL 6888254 (C.D. Cal. Oct. 13, 2017) ......... 18

*Mendia v. Garcia*
   768 F.3d 1009 (9th Cir. 2014)............................................................................... 18

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA (MEMA I)*
   627 F.2d 1095 (D.C. Cir. 1979) .............................................................................. 2

*Nat'l Conf. of Pers. Managers, Inc. v. Brown*
   690 F. App'x 461 (9th Cir. 2017) ............................................................................ 9

*Nickles v. United States*
   699 F. Supp. 3d 898 (E.D. Cal. 2023).................................................................... 10

*Papasan v. Allain*
   478 U.S. 265 (1986) ................................................................................................. 7

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Pennhurst State School & Hosp. v. Halderman*
    465 U.S. 89 (1984) ................................................................................................ 10

4

5

*Platinum Sports Ltd. v. Snyder*
    715 F.3d 615 (6th Cir. 2013) ............................................................................... 20

6

*Pub. Utils. Comm'n of Cal. v. FERC*
7
    100 F.3d 1451 (9th Cir. 1996) ............................................................................. 13

8

*Reddy v. Foster*
    845 F.3d 493 (1st Cir. 2017) ............................................................................... 19

9

10

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004) ............................................................................... 6

11

*Shaw v. Cal. Dep't. of Alcoholic Beverage Control*
12
    788 F.2d 600 (9th Cir. 1986) ................................................................................. 7

13

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*
    108 F.4th 1128 (9th Cir. 2024) ........................................................................... 19

14

15

*Stockton v. Brown*
    No. 24-3777, 2025 WL 2656631 (9th Cir. Sept. 17, 2025) ................................ 20

16

*Tidewater Marine W., Inc. v. Bradshaw*
17
    14 Cal. 4th 557 (1996) ........................................................................................ 15

18

*Twitter, Inc. v. Paxton*
    56 F.4th 1170 (9th Cir. 2022) ....................................................................... 11, 17

19

20

*Walden v. Nevada*
    945 F.3d 1088 (9th Cir. 2019) ............................................................................... 7

21

*Walsh v. Nevada Dep't of Hum. Res.*
22
    471 F.3d 1033 (9th Cir. 2006) ............................................................................. 16

23

*Warth v. Seldin*
    422 U.S. 490 (1975) ............................................................................................ 20

24

25

*WildEarth Guardians v. Mont. Snowmobile Ass'n*
    790 F.3d 920 (9th Cir. 2015) ............................................................................... 11

26

*Wilson v. Craver*
27
    994 F.3d 1085 (9th Cir. 2021) ............................................................................... 7

28

Defendants' Memo in Supp. of Motion to Dismiss Plaintiffs' Complaint (2:25-cv-02255-DC-AC)

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Woods v. U.S. Bank N.A.*
  831 F.3d 1159 (9th Cir. 2016).................................................................................... 7

*Ex parte Young*
  209 U.S. 123 (1908)............................................................................ 8, 9, 10, 18

**CONSTITUTIONAL PROVISIONS**

Eleventh Amendment........................................................................... 7, 10, 18

**STATUTES**

42 U.S.C.
  § 7543(a)......................................................................................... 12, 14
  § 7543(b)..................................................................................... 12, 14, 19
  § 7543(b)(1)........................................................................................... 2

Pub. L. No. 89-272, § 202, 79 Stat. 992 (1965)........................................................ 2

Pub. L. No. 90-148, § 208(a), (b), 81 Stat. 485, 501 (1967)........................................... 2

Cal. Gov. Code
  § 8550 et seq. ..................................................................................... 11
  § 11342.600........................................................................................ 15
  § 11346.1(e) ........................................................................................ 6

Cal. Health & Saf. Code
  § 43000(a) .......................................................................................... 2
  § 43013(a).......................................................................................... 3, 8
  § 43017........................................................................................... 3, 8
  § 43154(b).......................................................................................... 8, 9

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ........................................................... 6, 7

Federal Rule of Civil Procedure 12(b)(6) ........................................................... 7, 11

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

**REGULATIONS**

4

Cal. Code Regs., Title 13

5

§ 1900 ................................................................................................................ 6
§ 1900(b)(6) ...................................................................................................... 3

6

§ 1900(b)(13) .................................................................................................... 3
§ 1956.8(a)(2)(C) .............................................................................................. 4

7

§ 1956.8(a)(2)(D) .............................................................................................. 4
§ 1963(c) ........................................................................................................... 3

8

§ 1963 *et seq.* ................................................................................................... 3
§ 1963.1(b) ........................................................................................................ 3

9

§ 1963.5(a)(4) .................................................................................................. 14

10

§ 2016 ................................................................................................................ 3
§ 2016(c) .......................................................................................................... 19

11

§ 2016(e) .......................................................................................................... 19

12

**FEDERAL REGISTER**

13

88 Fed. Reg. 20,688 (Apr. 6, 2023) ................................................................... 3

14

90 Fed Reg. 644 (Jan. 6, 2025) .......................................................................... 4

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Memo in Supp. of Motion to Dismiss Plaintiffs' Complaint (2:25-cv-02255-DC-AC)

1

**INTRODUCTION**

2      Four manufacturers of vehicles or engines filed this suit challenging multiple California

3  regulations, an agreement the manufacturers signed in 2023 with the California Air Resources

4  Board (CARB), a Governor's Executive Order, and an advisory notice issued in May 2025 by

5  CARB.  Plaintiffs named CARB, as well as California's Governor and CARB's Executive Officer

6  in their official capacities, as Defendants.  To begin, all of Plaintiffs' claims against CARB and

7  the Governor, as well as all of Plaintiffs' state-law claims against all Defendants, should be

8  dismissed because sovereign immunity bars all of these claims.

9      The Court should likewise dismiss all of Plaintiffs' claims against the Executive Order

10  (EO) because it simply directs state agencies to take various steps and consider certain factors

11  when doing so.  Those future actions cannot be predicted, much less enjoined, here.  The EO does

12  not injure Plaintiffs; any allegation of such injury is speculative, and all claims against the EO are

13  unripe.  Plaintiffs also fail to state a claim against the EO because they cannot allege that the EO

14  sets or enforces emission standards, as required for their preemption claim, or that the EO limits

15  speech, as required for their other claims.

16      Plaintiffs' challenges to the May advisory notice should also be dismissed because that

17  notice has been superseded, and challenges to it are moot.  Moreover, Plaintiffs have failed to

18  state any claim against the notice.  As with their challenges to the EO, they fail to allege facts

19  sufficient to establish the necessary elements of their preemption, First Amendment, and state law

20  claims (which are also barred by sovereign immunity).

21      Plaintiffs' claims against the Clean Truck Partnership (CTP)—an agreement Plaintiffs

22  voluntarily signed with CARB two years ago and now disavow—fare no better.  Having clearly

23  asserted that the CTP is not affecting their conduct, Plaintiffs cannot establish standing to

24  challenge the agreement.  Nor do they state a preemption claim against the CTP.

25      Finally, Plaintiffs' challenges to the 2036 sales requirement of the Advanced Clean Fleets

26  regulation should also be dismissed.  That requirement will first apply *nine years from now*, and

27  CARB has stipulated (in a separate case) it will not enforce unless and until it receives a

28

1

preemption waiver from EPA.  Plaintiffs thus cannot establish injury or ripeness for a challenge to this requirement.

**BACKGROUND**

**A.    A Brief History of State and Federal Regulation of Motor Vehicle Emissions**

California has long faced severe air quality challenges, including ozone (or smog) pollution, which increases incidences of respiratory ailments; and particulate matter pollution, which can lead to heart attacks and premature deaths.[1]  Motor vehicles are substantial sources of this pollution.  Cal. Health & Saf. Code § 43000(a).  Accordingly, California has been setting emission standards for new motor vehicles since the 1950s.  *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA* (*MEMA I*), 627 F.2d 1095, 1109 (D.C. Cir. 1979).

Congress began requiring federal vehicle emission standards in 1965 but did not initially preempt the States.  Pub. L. No. 89-272, § 202, 79 Stat. 992 (1965).  Two years later, manufacturers "raised the spectre of an anarchic patchwork of federal and state regulatory programs."  *MEMA I*, 627 F.2d at 1109.  Acting on this concern, Congress generally preempted States from setting emission standards for new motor vehicles but required EPA to waive that preemption for California, upon request, absent limited conditions.  Pub. L. No. 90-148, § 208(a), (b), 81 Stat. 485, 501 (1967).  Congress did so in recognition of "the benefits for the Nation to be derived from permitting California to continue its experiments in the field of emissions control … and the benefits for the people of California to be derived from letting that State improve on 'its already excellent program.'"  *MEMA I*, 627 F.2d at 1109-10 (quoting S. Rep. No. 90-403, at 33 (1967)).  Thus, following "notice and opportunity for public hearing," EPA "shall … waive" Clean Air Act preemption for California unless the record evidence supports one of the three limited findings that permit denial.  42 U.S.C. § 7543(b)(1).  Since the enactment of this waiver

---

[1] *See* CARB, *2022 State Strategy for the State Implementation Plan* 1-2 (2022), https://ww2.arb.ca.gov/sites/default/files/2022-08/2022_State_SIP_Strategy.pdf; CARB, *Revised Proposed 2016 State Strategy for the State Implementation Plan* 15-16 (2017), https://ww2.arb.ca.gov/sites/default/files/classic/planning/sip/2016sip/rev2016statesip.pdf.

2

1    provision in 1967, EPA has granted more than seventy-five preemption waivers to California as

2    the State has expanded and strengthened its program.[2]

3         **B.    The Challenged CARB Regulations**

4         CARB is the California agency tasked with designing, promulgating, and enforcing the

5    State's motor vehicle pollution control program.  *E.g.*, Cal. Health & Saf. Code § 43013(a) ("The

6    state board shall adopt and implement motor vehicle emission standards…."); *id.* § 43017 ("The

7    state board may enjoin any violation of any provision of this part, or of any order, rule, or

8    regulation of the state board…").  Plaintiffs challenge numerous regulations CARB adopted

9    pursuant to this state authority, Compl. (ECF 1) ¶¶ 35-36, but only three are relevant to this

10   motion:  the Advanced Clean Trucks, Omnibus, and Advanced Clean Fleets regulations.  CARB

11   adopted the Advanced Clean Trucks (ACT) regulation in 2021.  *See* Cal. Code Regs., tit. 13,

12   § 1963 *et seq.*  Like CARB's longstanding zero-emission-vehicle requirements for passenger cars

13   and light trucks, ACT requires increasing sales of zero-emission vehicles—but in the medium-

14   and heavy-duty sector—beginning with model year 2024.[3]  Cal. Code Regs., tit. 13, § 1963.1(b).

15   EPA waived preemption for ACT in 2023.  88 Fed. Reg. 20,688 (Apr. 6, 2023).

16        As part of a different regulation (the Advanced Clean Fleets rule) also challenged by

17   Plaintiffs in this action, CARB adopted a requirement that all medium- and heavy-duty vehicles

18   sold in California in model year 2036 be zero emission.  Cal. Code Regs., tit. 13, § 2016.[4]  EPA

19   has not yet waived preemption for this requirement, and CARB has stipulated—in a court order in

20   another case—that it will not enforce this requirement until it has such a waiver.  Defendants'

21   Request for Judicial Notice in Support of Motion to Dismiss (RJN) Exh. A.

22        At the same time, CARB has required new vehicles with combustion engines sold in the

23   State to reduce emission levels.  Relevant here, CARB tightened its oxide of nitrogen (NOx)

24        [2] *See* EPA, *Vehicle Emissions California Waivers and Authorizations*,
25   https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations, last visited October 5, 2025.
26        [3] As currently defined, a zero-emission vehicle is one that produces zero exhaust emissions of any pollutant—e.g., a battery-electric vehicle.  Cal. Code Regs., tit. 13, § 1963(c).
27   Vehicles are classified as medium- or heavy-duty based primarily on their weight.  Cal. Code Regs., tit. 13, § 1900(b)(6), (b)(13).
28        [4] The Advanced Clean Fleets regulation contains several other components that are not at issue here.

3

1    standards for medium- and heavy-duty vehicles and engines in the Omnibus regulation which

2    Plaintiffs also challenge.  Cal. Code Regs., tit. 13, § 1956.8(a)(2)(C), (a)(2)(D).  EPA once again

3    waived preemption.  90 Fed. Reg. 644 (Jan. 6, 2025).

4        **C.    The Clean Truck Partnership**

5        In 2023, several manufacturers of medium- or heavy-duty engines and vehicles (including

6    Plaintiffs) and their trade association (the Engine Manufacturers Association (EMA)) signed the

7    CTP with CARB.  All parties sought to reduce or resolve uncertainties they faced through this

8    voluntary agreement.  CARB agreed to provide manufacturers four years of lead time in future

9    heavy-duty vehicle regulations.  CTP at 1, ECF 1-2.  CARB also agreed to commence

10   consideration of certain amendments to its existing regulations by specified dates.  *Id.* at App. B.

11   EMA and the manufacturers promised not to bring legal challenges to the Omnibus, ACT, or

12   Advanced Clean Fleets regulations, and to refrain from supporting challenges brought by others.

13   *Id.* at App. D, ¶ A.  The manufacturers also agreed to sell clean vehicles in California consistent

14   with the Omnibus and ACT regulations, and with the 2036 requirement in Advanced Clean

15   Fleets, regardless of CARB's authority to enforce those regulations.  *Id.* at App. D, ¶ B.

16       After signing the CTP, EMA issued a press release stating that "[t]his agreement reaffirms

17   EMA's and its members' longstanding commitment to reducing emissions and to a zero-

18   emissions commercial vehicle future."  RJN Exh. I at 1.  EMA also asserted the CTP

19   "demonstrates how EMA and CARB can work together to achieve shared clean air goals" and

20   highlighted the CTP's benefits for EMA's members, including "lead time and stability" and

21   "regulatory changes."  *Id.*  Several Plaintiffs also directly lauded the agreement, touting the

22   "regulatory certainty" it would provide and the "cooperative effort[]" it reflected.  *Id.* at 2, 3.

23       California's Governor did not sign the CTP, *see* CTP at 4-6; and, indeed, the agreement

24   does not reference the Governor at all, *see id.* at 1-6.

25       **D.    Congress "Disapproves" of Certain Preemption Waivers, and California**
             **Responds**
26

27       On May 22, 2025, the Senate followed the House and passed congressional resolutions

28   purporting to disapprove of three Clean Air Act preemption waivers EPA had previously granted

                                              4

1  to California.  H.J. Res. 87 (ACT), H.J. Res. 88 (Advanced Clean Cars II), and H.J. Res. 89

2  (Omnibus).  On June 12, 2025, the President signed the resolutions.  That same day, California

3  and ten other States filed suit in the Northern District of California challenging those resolutions.

4  *California v. United States*, Case No. 4:25-cv-04966 (N.D. Cal. filed June 12, 2025).  That

5  litigation is ongoing.[5]

6       On May 23, 2025, after Congress passed the Resolutions, but before the President signed

7  them, CARB issued Manufacturers Advisory Correspondence ECCD-2025-03 (May MAC) to

8  provide initial and "necessary guidance" in light of Congress's actions.  May MAC at 1, ECF 73-

9  31.  CARB noted that model year 2026 vehicle and engine certifications were already "well

10  underway" and indicated it would "continue to accept and process certification applications" for

11  that model year in order to, *inter alia*, "provide certainty to affected parties and consumers,

12  provide consistent treatment of regulated entities, [and] maintain stability in the market."  *Id.* at 2.

13  This would also allow manufacturers to meet their commitments under the CTP.  *Id.*  CARB

14  indicated that additional information would be forthcoming.  *Id.*

15       After the President signed the Resolutions, on June 12, 2025, Governor Newsom issued EO

16  N-27-25, reaffirming the State's commitment to reducing air pollution.  ECF 23-17 (EO).  The

17  EO directs CARB to begin developing new regulations, *id.* at ¶ 2, and to "identify, maintain, and

18  update publicly available lists of" manufacturers and fleets that choose to follow various

19  requirements, *id.* at 3.  The EO further directs CARB and other state agencies to align state

20  vehicle procurement and state-funded incentives with those lists, and directs CARB to "explore

21  opportunities for special considerations and flexibilities for listed manufacturers and fleets" as

22  part of its consideration of future regulations.  *Id.* at ¶ 3.

23       On August 25, 2025, CARB provided the "further clarity" about its certification processes

24  that it had promised, issuing a new, superseding Manufacturers Advisory Correspondence

25  (August MAC).  RJN Exh. B at 2.  CARB recognized that the intervening enactment of the

26

27

28  [5] These issues are more fully described in Defendants' opposition to Plaintiffs'
preliminary injunction motion.  ECF 73.

1    Resolutions had created "unprecedented uncertainty" in California's vehicle market, prompting

2    more manufacturer questions.  *Id.* at 1-2.

3        On September 15, 2025, CARB issued a notice of emergency rulemaking to confirm that its

4    earlier-adopted standards remain operative, as described in the August MAC, "until a court

5    resolves the uncertainty created by the federal government's actions."  RJN Exh. C at 1.  That

6    emergency rulemaking is now complete and codified in the California Code of Regulations.  *See*

7    Cal. Code Regs., tit. 13, § 1900.  CARB has also begun a non-emergency rulemaking to adopt

8    these same regulations, RJN Exh. D, because (under California law) an emergency regulation

9    may remain in effect for only 180 days, Cal. Gov. Code § 11346.1(e).

10       **E.    Procedural History**

11       Plaintiffs filed suit on August 11, 2025.  ECF 1.  They submitted a preliminary injunction

12   motion on all claims the next day, along with a motion to file an overlength brief.  ECF 22, 23.

13   The Court permitted the filing on August 13.  ECF 36.  The United States moved to intervene.

14   ECF 43.  This Court granted that motion and set a briefing and hearing schedule for the

15   preliminary injunction, after considering the parties' competing schedule proposals.  ECF 54.

16   The United States joined that motion in part, only as to the preemption challenges to the CTP and

17   the ACT, Advanced Clean Fleets, and Omnibus regulations.  ECF 57.  Defendants and Plaintiffs

18   stipulated to extend the time to respond to Plaintiffs' complaint, as well as the United States'

19   complaint in intervention, and the Court entered an order extending Defendants' time to respond

20   to October 10, 2025.  ECF 65.  Defendants do not seek to present oral testimony on this Motion,

21   unless Plaintiffs offer such testimony, and anticipate that 50 minutes will be required for any

22   hearing on this Motion.

23                              **STANDARD OF REVIEW**

24       "The party asserting federal subject matter jurisdiction bears the burden of proving its

25   existence."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  "A

26   Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373

27   F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack" under Rule 12(b)(1), "the challenger asserts

28   that the allegations contained in a complaint are insufficient on their face to invoke federal

                                        6

1  jurisdiction." *Id.* However, if Defendants mount a factual attack on jurisdiction, the district court

2  may review evidence beyond the complaint, and *"*[t]he court need not presume the truthfulness of

3  the plaintiff's allegations." *Id.*

4       Under Rule 12(b)(6), a complaint fails "to state a claim to relief" when it lacks either "a

5  cognizable legal theory or … sufficient facts alleged under a cognizable legal theory." *Woods v.*

6  *U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016) (internal quotation marks omitted). The

7  Court must generally "accept the plaintiffs' allegations as true and construe them in the light most

8  favorable to plaintiffs," but need not "accept as true allegations that contradict matters properly

9  subject to judicial notice" or "that are merely conclusory, unwarranted deductions of fact, or

10  unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

11  (internal quotation marks omitted). Courts also "need not accept as true legal conclusions

12  couched as factual allegations." *Wilson v. Craver*, 994 F.3d 1085, 1090 (9th Cir. 2021).

13  **ARGUMENT**

14  **I.**    **SOVEREIGN IMMUNITY BARS ALL OF PLAINTIFFS' CLAIMS AGAINST CARB**

15       The Court lacks subject matter jurisdiction over CARB in this action because sovereign

16  immunity bars Plaintiffs' claims against CARB. Under the Eleventh Amendment, a state is

17  immune from suits brought in federal court by its own citizens or citizens of other states.

18  *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir.

19  2019). This immunity extends to state agencies, including CARB. *Krainski v. Nevada ex rel. Bd.*

20  *of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh

21  Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal

22  consent by the state." (quoting *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999))); *Shaw v.*

23  *Cal. Dep't. of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986) ("[A] suit against a

24  state agency is considered to be a suit against the state, and thus is barred by the Eleventh

25  Amendment."). Plaintiffs have not alleged—and cannot allege—that California has waived

26  immunity here, so CARB must be dismissed, with prejudice, from all claims. *Krainski*, 616 F.3d

27  at 968 (affirming dismissal of state agency); *Shaw*, 788 F.2d at 603-04 (same).

28

7

## II.  SOVEREIGN IMMUNITY BARS ALL OF PLAINTIFFS' CLAIMS AGAINST THE GOVERNOR

Even when a plaintiff names a state official (as opposed to a state agency) as a defendant, sovereign immunity still bars suit in federal court unless the limited exception to sovereign immunity recognized in *Ex parte Young*, 209 U.S. 123, 155-56 (1908), applies.  To utilize that exception, a plaintiff must establish that the named state official has the requisite "connection with the enforcement" of the challenged laws.  *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (quoting *Ex parte Young*, 209 U.S. at 157).  "This connection must be fairly direct"— more than "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." *Id*.  Plaintiffs here have not established, and cannot establish, that connection as to the Governor; and he should be dismissed with prejudice. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (Governor entitled to immunity where only connection is general duty to enforce California law).

Starting with Plaintiffs' challenges to CARB's regulations, Plaintiffs allege that the Governor "direct[s] CARB to enforce the rules at issue here."  Compl. ¶ 28.  This conclusory allegation is insufficient.  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Rather, Plaintiffs must identify a source of the Governor's alleged authority to enforce CARB's regulations.  *Ass'n des Eleveurs*, 729 F.3d at 943-44 (dismissing Governor where statute empowered district attorneys to enforce and no provision gave that authority to Governor). Plaintiffs cannot do so because, under California law, it is CARB officials—not the Governor— that "and implement motor vehicle emission standards…."  Cal. Health & Saf. Code § 43013(a). It is likewise CARB—not the Governor—that "may enjoin any violation … of any order, rule, or regulation of the state board…," *id.* § 43017, and on whose behalf the Attorney General may bring an "action to recover a penalty," *id.* § 43154(b).  At most, Plaintiffs' conclusory allegation amounts to a claim that the "only connection to [CARB's regulations] is [the Governor's] general

1  duty to enforce California law"—an insufficient connection to invoke *Ex parte Young*. *Ass'n des*

2  *Eleveurs*, 729 F.3d at 943.[6]

3      The same is true for Plaintiffs' claims against the CTP (Count III, parts of Counts IV, V).

4  Plaintiffs do not and cannot contend that the Governor is a party to the CTP or that he can enforce

5  that agreement.  To the contrary, Plaintiffs allege the CTP is "an independent regulatory

6  mechanism by which *CARB* attempts to enforce its preempted emissions standards."  Compl. ¶ 42

7  (emphasis added) (cleaned up); *see also id.* (referring to "CARB's authority"); *id.* ¶ 45 ("CARB

8  imposed the Clean Truck Partnership in its capacity as an industry regulator").  Plaintiffs have

9  also now asserted that the CTP can only be enforced through "penalties for violations … under

10  [CARB's] regulatory provisions," Plaintiffs' PI Reply (ECF 75) at 10:11-12—penalties the

11  Governor does not impose, *see* Cal. Health & Saf. Code § 43154(b).[7]  Nothing in Plaintiffs'

12  filings, or the CTP itself, establishes an enforcement role for the Governor, and he should be

13  dismissed, with prejudice, from all challenges to that agreement.

14      Finally, all claims against the EO (parts of Counts II, IV, V) should be dismissed for the

15  reasons provided below in section IV, *and* because Plaintiffs cannot invoke *Ex parte Young* to

16  bring these claims against the Governor (or any official).  They cannot show the Governor has

17  any "connection with the enforcement of the act."  *Nat'l Conf. of Pers. Managers, Inc. v. Brown*,

18  690 F. App'x 461, 463 (9th Cir. 2017) (cleaned up).  Indeed, the EO is not *enforceable*—certainly

19  not against Plaintiffs.  Plaintiffs' allegations only underscore the point, when they claim the

20  Governor "threatened through Executive Order detrimental regulatory treatment and exclusion

21  from government purchase and incentive programs."  Compl. ¶ 28.  As this allegation—and the

22  EO itself—make clear, it is not *the Governor* who would promulgate the future regulations

23  Plaintiffs fear or who would exclude them from state-funded programs.  EO at ¶ 3, ECF 23-17.

24  _____

25      [6] Plaintiffs would face a similar problem with any claim that the Governor is empowered
to "enforce" CARB's May MAC, but they do not even allege any connection to that document.
26  *See* Compl. ¶ 28 (discussing regulations, EO, and CTP only).  All claims against the May MAC
should be dismissed, *infra* Sec. V, but should any such claims remain, the Governor should be
27  dismissed, with prejudice, as a Defendant.
      [7] Defendants disagree with Plaintiffs that the CTP would be enforced through regulatory
28  provisions, rather than contract remedies.  But that dispute is not relevant here because Plaintiffs
do not allege the Governor could seek contract remedies either.

To the contrary, the EO directs *state agencies* to take certain actions. *See supra* 5:13-20. If those actions occur and are enforceable against Plaintiffs in ways they believe are injurious, they might have a claim (later) against the relevant *agency official*. They cannot bring a claim against the Governor—now or ever.

### III.    SOVEREIGN IMMUNITY BARS ALL OF PLAINTIFFS' STATE-LAW CLAIMS (COUNTS V, VI, VII) AGAINST ALL DEFENDANTS

Sovereign immunity also bars Counts V, VI, and VII in Plaintiffs' complaint, as to all Defendants, because these claims allege California officials have violated (or are violating) state law.[8] When a plaintiff makes such allegations in federal court, "the entire basis for the [*Ex parte Young* exception to sovereign immunity] disappears." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) ("[T]he *Young* exception does not apply when a suit seeks relief under state law . . . ."). "Those Eleventh Amendment principles require dismissal of [Counts V, VI, and VII], which [are] state law claim[s]," *Doe*, 891 F.3d at 1153, because Plaintiffs do not—and cannot— allege that California has "unequivocally" waived immunity, *id.* at 1152.

### IV.    ALL CLAIMS AGAINST THE EXECUTIVE ORDER SHOULD BE DISMISSED

As shown in the preceding section, Plaintiffs' claim against the EO under the California Constitution (Count V) must be dismissed on sovereign immunity grounds. And *all* claims against the EO should be dismissed because none of them are ripe and because Plaintiffs fail to state any such claim under any speech and petitioning or preemption theories.

#### A.    All of Plaintiffs' Challenges to the EO Are Unripe (Counts II, IV, V)

As Plaintiffs concede, the EO merely directs state agencies to take further actions, without prescribing the time or manner of performance. *E.g.*, Compl. ¶ 28 (alleging EO "threatened" *future* adverse treatment by state agencies); *id.* at ¶ 64 (alleging EO "*suggests* that such manufacturers *will be* put on" a list in the future by state agencies) (emphasis added); *id.* at ¶ 69

---

[8] During the parties' meet and confer, Plaintiffs stated they are willing to have their state law claims dismissed without prejudice. But these claims should be dismissed *with prejudice* because "Plaintiff[s] cannot amend the present complaint to avoid the sovereign immunity bar." *Nickles v. United States*, 699 F. Supp. 3d 898, 926 (E.D. Cal. 2023).

1  (alleging that, under the EO, "CARB will identify 'opportunities for special considerations and

2  flexibilities for' manufacturers *when crafting future standards*") (emphasis added); *see also* Mot.

3  for Prelim. Inj. (ECF 23) 11:23-25 (referring to "future regulations"); *id.* at 16:15 (same); *id.* at

4  29:2-3 (referring to "future government incentive programs").  The EO thus does not operate on

5  these Plaintiffs at all.  An Executive Order by the Governor is merely a tool for organizing and

6  administering state government by giving direction to state agencies.  Such an Executive Order

7  does not and *cannot* compel or prohibit action by private actors.[9]  *If and when* CARB or another

8  state agency implements the EO's direction, and if the Plaintiffs believe that implementation

9  adversely affects them, then and only then could they have a concrete, ripe claim.  *WildEarth*

10  *Guardians v. Mont. Snowmobile Ass'n*, 790 F.3d 920, 933 (9th Cir. 2015); *see also Twitter, Inc.*

11  *v. Paxton*, 56 F.4th 1170, 1173-74 (9th Cir. 2022).

12  **B.    Plaintiffs Fail to State a Claim that the EO Violates their Speech or**
    **Petitioning Rights (Counts IV and V)**

13

14  Plaintiffs' challenges to the EO under the First Amendment and Article I, § 3 of the

15  California Constitution fail to state a claim, even if they were ripe, because the EO does not

16  restrict Plaintiffs' speech or petitioning rights or deny benefits based on the exercise of such

17  rights. The EO directs CARB to keep and publish lists of vehicle manufacturers that continue to

18  follow several enumerated emissions requirements.  EO ¶ 3.  State agencies are then to use these

19  lists to prioritize manufacturers for their own vehicle procurement, for certain incentive programs,

20  and when developing regulatory flexibilities for new emissions requirements.  *Id.*  Plaintiffs

21  allege that the EO directs CARB to leave manufacturers—such as themselves—off the lists for

22  failing to comply with speech conditions they agreed to when they signed the CTP.  *See* Compl.

23  ¶ 111.  But Plaintiffs' "mere legal conclusions" about the EO's meaning "are not entitled to an

24  assumption of truth" in reviewing a Rule 12(b)(6) motion, *ESG Cap. Partners, LP v. Stratos*, 828

25

26

27  [9] Executive orders issued in response to a state of emergency proclaimed under
    California's Emergency Services Act, Cal. Gov. Code § 8550 et seq., are distinct; those do have
    the force and effect of law and may regulate private conduct.  Plaintiffs do not and cannot allege

28  this EO is an *emergency* executive order.

11

F.3d 1023, 1031 (9th Cir. 2016), and Plaintiffs' interpretation of the EO is belied by its text.  The

CTP is referenced only once, and only indirectly, in the EO:

> [CARB] shall identify, maintain, and update publicly available lists of … medium-
> and heavy-duty vehicle manufacturers that are continuing to certify to and follow the
> requirements of the [ACT] regulation and the [Omnibus] regulation, or requirements
> agreed to as part of any agreements between such manufacturer and [CARB]….

The reference to requirements "as part of any agreements" (which would include the CTP) has the

same meaning as "requirements" listed in the above part of the same paragraph: *emissions*

requirements, not speech.  Because the EO directs nothing with respect to the CTP's speech

restrictions, it has no plausible impact on Plaintiffs' rights under the First Amendment or

California Constitution.

## C.    Plaintiffs Fail to State a Clean Air Act Preemption Claim against the EO Because It Neither Sets Nor Enforces Emission Standards (Count II)

Plaintiffs also fail to state a preemption claim against the EO.  They rely on Section 209(a)

of the Clean Air Act, which preempts state "standard[s] relating to the control of emissions from

new motor vehicles or new motor vehicle engines," absent a preemption waiver.  42 U.S.C.

§ 7543(a), (b); Compl. ¶ 80.  Plaintiffs do not—and cannot—allege that the EO purports to

"adopt" such standards.  42 U.S.C. § 7543(a).  Rather, they claim the EO is an "attempt to

enforce" such standards, Compl. ¶ 80, because it purportedly "directed CARB to penalize any

heavy-duty vehicle manufacturers that fail to certify compliance with" certain CARB standards,

*id*. ¶ 82.b.  As shown above, however, the Governor does not enforce CARB's standards and

cannot do so through an Executive Order.  *Supra* Sec. II.  Moreover, any actual enforcement

penalties would be imposed through a court proceeding, not by EO.  *Id.*  In fact, what Plaintiffs

label as "penalties" are not emission standard enforcement at all.  They complain about the State

"deprioritizing" certain manufacturers when the State purchases vehicles or awards state-funded

incentives for consumer vehicle purchases.  *Id.*  In other words, the EO directs state agencies to

implement the State's priorities vis a vis the use of its own funds.  These are classic market

participant behaviors, not regulation enforcement, and, in any event, are not preempted.  *Engine*

*Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1040, 1043, 1045 (9th Cir. 2007);

12

1    *see also Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 809 (1976).  Plaintiffs cannot state a

2    preemption claim by pointing to California's decisions about its own expenditures.[10]

3    ## V.    ALL CLAIMS AGAINST THE MAY MAC SHOULD BE DISMISSED

4          Plaintiffs attempt to mount many challenges to the May MAC, alleging that it is preempted

5    by the Clean Air Act (Count II), that it violates the First Amendment (Count IV), that it violates

6    Article I, § 3 of the California Constitution (Count V), and that it is an impermissible

7    "underground regulation" in violation of the California APA (Count VI).  All of these claims

8    must be dismissed as moot.  But, even if that were not the case, these claims should be dismissed

9    because the state-law claims are barred by sovereign immunity, *supra* Sec. III, and because

10   Plaintiffs have failed to state any claim against the May MAC.

11   ### A.    The May MAC Was Superseded and Claims Against It Are Moot

12         All claims against the May MAC are moot because the August MAC expressly superseded

13   it.  RJN, Exh. B at 2; *Arc of Cal. v. Douglas*, 757 F.3d 975, 982 (9th Cir. 2014); *see also Brach v.

14   Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) (en banc) (challenge to rescinded executive order was

15   moot).  The voluntary cessation exception to mootness is inapplicable since Plaintiffs cannot

16   allege that the August MAC was issued "because of" this litigation, *Pub. Utils. Comm'n of Cal. v.

17   FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996).  Moreover, CARB cannot reasonably be expected to

18   reissue the May MAC.  It was an initial advisory, as evinced by the express indication that further

19   information would be forthcoming.  May MAC at 2.  CARB has also since adopted emergency

20   regulations—and begun the process to adopt non-emergency ones—to further clarify a

21   certification pathway described in the August MAC (but not the May MAC).  *See* RJN Exhs. C,

22   D.  Thus, the May MAC is now inconsistent with the California Code of Regulations, and those

23   regulatory modifications cannot be "easily abandoned," *Brach*, 38 F.4th at 13 (quoting *Fikre v.

24   FBI*, 904 F.3d 1033, 1037-38 (9th Cir. 2018)), to bring back the May MAC.  These "procedural

25   safeguards" against reissuance of the May MAC, *Fikre*, 904 F.3d at 1039, confirm the voluntary

---

26   [10] Nor can Plaintiffs do so by alleging the possibility that they might be "disadvantage[d]"
27   in "*future rules*," Compl. ¶ 82.b, as any such claim would be ripe only when CARB attempted to
     enforce these hypothetical and allegedly preempted standards.  *Supra* Sec. IV.A.  Moreover,
     Plaintiffs cannot explain why crediting manufacturers who voluntarily produce cleaner cars
28   would be preempted by the Clean Air Act.

13

1  cessation exception does not apply.  For the same reasons, the May MAC is not capable of

2  repetition yet evading review.  *Brach*, 38 F.4th at 15.

3      **B.    Plaintiffs Fail to State a Preemption Claim Against the May MAC**

4      Plaintiffs' preemption challenge to the May MAC fares no better.  Compl. ¶¶ 82.a, 83.  As

5  discussed above, Section 209(a) of the Clean Air Act preempts States from "adopt[ing] or

6  attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles

7  or new motor vehicle engines," absent a preemption waiver.  42 U.S.C. § 7543(a), (b).  Plaintiffs

8  do not—and cannot—allege that the May MAC establishes emission standards.  Instead, they

9  assert that the May MAC is an attempt to enforce previously adopted standards that Plaintiffs

10  claim (in Count I) are preempted.  *See* Compl. ¶¶ 74, 75, 82.a, 83.  But the May MAC is simply

11  an advisory notice that informed regulated parties and the public that CARB would "continue to

12  accept and process certification applications for model year 2026" in the event the President

13  signed certain congressional resolutions.  May MAC at 2.  Providing such information is not an

14  attempt to enforce anything.  Indeed, the regulations Plaintiffs allege are preempted describe how

15  enforcement occurs, and it is not through information sharing in an advisory notice.  Rather,

16  enforcement occurs through, *inter alia*, imposition of penalties for noncompliance.  *E.g.*, Cal.

17  Code Regs., tit. 13, § 1963.5(a)(4); *see supra* Background Sec. B.  The May MAC neither

18  changes nor imposes those.

19      **C.    Plaintiffs Fail to State Speech-Based Claims Against the May MAC**

20      Plaintiffs also fail to state a claim that the May MAC violates the First Amendment or

21  Article I, Section 3 of the California Constitution.[11]  Compl. ¶¶ 112, 120.  Plaintiffs do not (and

22  cannot) allege that the May MAC contained any language that restricts their speech or petitioning

23  rights, or conditions any benefits on the exercise of such rights.  Instead, they allege that the May

24  MAC threatened fines for the failure to comply with CARB's emissions standards and

25  certification requirements.  *Id.* ¶ 112.  Those allegations are not supported by any text in the May

26  MAC itself.  But, regardless, such threats would be wholly unrelated to Plaintiffs' *speech*.  Thus,

27

28      [11] This state law claim is barred by sovereign immunity.  *Supra* Sec. III.

14

1    the Court should dismiss Plaintiffs' challenges to the May MAC under the First Amendment and

2    California Constitution in Counts IV and V for failure to state a claim.

3        **D.    Plaintiffs Fail to State a Claim (Count VI) that the May MAC Is an
            Underground Regulation**

4

5        Plaintiffs' claim that the May MAC is a "regulation" adopted without following the

6    California APA is barred by sovereign immunity.  *Supra* Sec. III.  But Plaintiffs also fail to

7    identify a "regulation" adopted by the May MAC.  Certainly, the APA definition "include[s]

8    every rule, regulation, order, or standard of general application or the amendment, supplement, or

9    revision of any rule, regulation, order, or standard adopted by any state agency to implement,

10   interpret, or make specific the law enforced or administered by it."  *Tidewater Marine W., Inc. v.*

11   *Bradshaw*, 14 Cal. 4th 557, 571 (1996) (cleaned up); Cal. Gov. Code § 11342.600 (definition of

12   "regulation").  As its plain text indicates, however, the May MAC described CARB's plan to

13   "continue" implementing regulations that Plaintiffs concede "went through the California APA

14   process."  Compl. ¶ 129(b).  Plaintiffs fail to identify a new or altered rule, regulation, order or

15   standard adopted via the May MAC and thus cannot state an underground regulation claim.  And

16   that remains true even if, as Plaintiffs allege, the relevant, duly adopted standards were later

17   preempted by congressional action.  *Id.*  Whether a state agency has established a state law rule

18   without appropriate procedures does not turn on federal preemption at all, much less on allegedly

19   preempting actions occurring long after the State's proper rulemaking procedure concluded.

20   **VI.    ALL CLAIMS AGAINST THE CTP SHOULD BE DISMISSED**

21       **A.    Plaintiffs Fail to Establish Standing to Bring their CTP Preemption Claim
            and Also Fail to State that Claim (Count III)**

22

23        Plaintiffs claim that the Clean Air Act preempts the terms of the CTP by which they

24   agreed to sell clean vehicles in California consistent with the ACT, Omnibus, and Advanced

25   Clean Fleets regulations.  Compl. ¶¶ 88-94.  But each of the four plaintiff manufacturers has

26   separately disavowed any intention of abiding by these terms.  Specifically, in formal letters to

27   the Federal Trade Commission, each manufacturer has positively "affirm[e]d that it will

28   independently make decisions about the type and quantity of vehicles it sells without regard to

15

1    whether those decisions are compliant with any restrictive terms of the CTP." RJN Exh. E at 2-3

2    (DTNA); *see also* Exhs. F at 2, G at 2-3, H at 2. Having definitively stated that the CTP is no

3    longer affecting their decisions about which vehicles to produce for, and sell in, California,

4    Plaintiffs cannot also claim the CTP is injuring them by interfering with their plans for "product

5    production and allocation." Compl. ¶ 67. Nor can they tie any alleged injuries from "[a]pplying

6    for a CARB certification" to the CTP, *id.* ¶ 68, because they have disavowed any intention to

7    pursue such certification pursuant to the CTP. Indeed, they assert they will only "apply[] for a

8    California emissions certification" "*voluntarily*," and not because of the CTP  *See* RJN Exh. E at

9    3 n.4 (emphasis added). Plaintiffs simply cannot allege any ongoing injury-in-fact caused by the

10    CTP's purportedly preempted provisions. Nor is any redress necessary, let alone warranted,

11    when the manufacturers themselves have opted not to honor those provisions.[12] Plaintiffs lack

12    standing for their preemption claim against the CTP. *Walsh v. Nevada Dep't of Hum. Res.*, 471

13    F.3d 1033, 1037 (9th Cir. 2006) (plaintiff lacked standing absent allegation she "has any interest

14    in returning" to work with defendant employer); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA,

15    2006 WL 3782902, at *3 (N.D. Cal. Dec. 21, 2006) (plaintiff lacked standing where "[h]is saga"

16    as a cable subscriber was over and he had no intent to subscribe again).

17        Even if Plaintiffs could establish standing, they fail to state a claim that the Clean Air Act

18    preempts the CTP—under either of the two theories they lay out. Plaintiffs first allege the

19    agreement "operates as an *adoption* of a standard" under Section 209(a). Compl. ¶ 89. But the

20    only standards they (or the CTP) reference are ones CARB formally adopted well before the CTP

21    was signed. *Id.* ¶ 42. Subsequent actions by the federal government cannot change when CARB

22    adopted the relevant regulations. *Contra id.* ¶ 89. Plaintiffs concede as much when they allege

23    the CTP is "an *attempt to enforce* the cited standards," *id.* ¶ 90—i.e., the standards previously

24    adopted by CARB. That second theory fails, as well because Plaintiffs voluntarily entered into

25    the CTP.

26    _____

27    [12] To the extent Plaintiffs seek to be free of any contractual consequences for their
    decision to disavow their CTP commitments, they cannot obtain that relief through a preemption
    claim. *See Garcia v. Google, Inc.*, 786 F.3d 733, 737 (9th Cir. 2015) (denying relief due, in part,
28    to "mismatch" between claim asserted and relief sought).

Enforcement of a voluntary agreement is not enforcement of any emission standard. Rather, "federal preemption is generally confined to formal state laws and regulations and not applicable to contracts and other voluntary agreements" like the CTP that, by definition, are not "command[s]." *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot.*, 208 F.3d 1, 7 (1st Cir. 2000) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995)). And Section 209(a) of the Clean Air Act was "intended to govern formal regulations adopted by the states, rather than voluntary and cooperative agreements between the states and automakers." *Id.* The analysis is no different because a public entity (CARB) is a party to the CTP. Contracts with the government *may* be subject to preemption when they "result[] not from ordinary bargaining … but instead from the threat of criminal sanctions," *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641, 650-51 (2013), or are enforceable in ways only available to governmental actors, *Airlines for Am. v. City & Cnty. of San Francisco*, 78 F.4th 1146, 1150, 1152 (9th Cir. 2023). But Plaintiffs do not allege either is true here.[13] And, although Plaintiffs attempt to obliquely suggest otherwise in their Complaint, they cannot escape the fact that the CTP was a *voluntary* agreement. They lauded it as such when it was signed—individually and through their trade association (also a signatory). RJN Exh. I. Indeed, Plaintiffs' own evidence indicates the signatories understood the CTP to be "a consensual path forward toward cleaner conventionally-fueled trucks, and increasing percentages of ZEV trucks." ECF 23-12. Consensual paths are not preempted standards or attempts to enforce them. Plaintiffs fail to state a preemption claim.

## B. Plaintiffs Fail to Establish Standing to Bring Their CTP First Amendment Claim (Count IV)

Plaintiffs also fail to allege injuries from the CTP's speech restrictions that "meet the concreteness and particularity standards that Article III requires." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022). Plaintiffs first allege that "California is suppressing [Plaintiffs]

---

[13] Plaintiffs have asserted in their reply brief on their motion for a preliminary injunction that "penalties for [CTP] violations necessarily arise under [CARB's] regulatory provisions." ECF 75 at 10:11-12. But that assertion does not alter their complaint. *Fin. Indem. Co. v. Messick*, 606 F. Supp. 3d 996, 1002 (E.D. Cal. 2022) ("New averments in a brief cannot cure a complaint's shortcomings."). Moreover, even in that brief, Plaintiffs have not explained how or why regulatory penalties would apply to breach of a voluntary agreement.

speech and petitioning rights to insulate State officials from judicial oversight."  Compl. ¶ 69.
But Plaintiffs fail to provide any details to support this conclusory allegation—e.g., where or how
they would speak but for the CTP.  Moreover, this allegation is entirely belied by the filing of this
very lawsuit, which establishes that, as with the CTP's sales commitments, Plaintiffs no longer
view the speech conditions to which they agreed as binding.  Plaintiffs then claim they "face both
current and imminent injuries from . . . California's threats to punish [them] based on their
speech," *id*. ¶ 65, but attribute these alleged threats to the EO, not the CTP, *id*. ¶ 69.  Those
allegations fail to support a challenge to the EO, *supra* Sec. IV, but, in any event, they do not
establish injury-in-fact to challenge *the CTP*.[14]

Even if Plaintiffs had alleged a sufficiently concrete injury, Plaintiffs fail to meet their
burden to establish standing because their alleged injury lacks the "requisite causal connection" to
Defendants' actions.  *Makaryan v. Volkswagen Grp. of Am., Inc.*, No. CV 17-5086 PA (KSX),
2017 WL 6888254, at *6 (C.D. Cal. Oct. 13, 2017).  "To the extent that an injury is self-
inflicted …, the causal chain is broken and standing will not be established."  *John & Vincent
Arduini Inc. v. NYNEX*, 129 F. Supp. 2d 162, 168 (N.D.N.Y. 2001); *see also Mendia v. Garcia*,
768 F.3d 1009, 1013 n.1 (9th Cir. 2014) (no standing to challenge pre-trial detention where
plaintiff chose to remain in custody after being offered release on his own recognizance); *Bhd. of
Locomotive Eng'rs & Trainmen, a Div. of Rail Conf.-Int'l Bhd. of Teamsters v. Surface Transp.
Bd.*, 457 F.3d 24, 28 (D.C. Cir. 2006) (no standing where plaintiff union agreed to complained of
limitation in a collective bargaining agreement).  Here, if there are any remaining restrictions on
Plaintiffs' First Amendment rights, they stem, not from Defendants' conduct, but from Plaintiffs'
decisions to voluntarily enter into the CTP agreement and waive any such rights in the CTP.  The
Court should dismiss Plaintiffs' First Amendment challenge to the CTP for lack of standing.

_____

[14] While Plaintiffs' complaint nowhere alleges that Defendants' actions have "chilled"
their speech, Plaintiffs' pending Preliminary Injunction Motion claims as much by arguing that
their trade association, EMA, would have spoken differently in several state regulatory
proceedings absent the CTP.  Mot. for Prelim. Inj. 21:12-27, ECF 23; Mandel Decl. ¶¶ 9-11, ECF
23-4.  Any such claim would be without merit, given the voluntary nature of the CTP, but, in any
event, there is no remedy for that alleged injury both because the speech cannot be retroactively
altered and because the Eleventh Amendment forbids retrospective relief here.  *See Ex parte
Young*, 209 U.S. 123, 150 (1908); *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

18

**C.    Sovereign Immunity Bars Plaintiffs' State Law CTP Claims**

Plaintiffs' state law challenges regarding the CTP in Counts V and VII are barred by sovereign immunity.  *Supra* Sec. II.

**VII.  ALL CLAIMS AGAINST THE ADVANCED CLEAN FLEET REGULATION'S 2036 SALES REQUIREMENT SHOULD BE DISMISSED**

Plaintiffs also seek to enjoin enforcement of the model year 2036 sales requirement adopted as part of the Advanced Clean Fleets regulation.  Compl. at 48 (Prayer for Relief VII.a).  Plaintiffs assert that requirement has no waiver under Section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b), and is therefore preempted.  *See id.* ¶¶ 36.a, 74.b, 75.  But Plaintiffs cannot meet their burden to demonstrate a concrete, particularized injury from the 2036 sales requirement because CARB has already stipulated—in a signed court order in another case—that it will not enforce this regulatory requirement unless and until it has a preemption waiver from EPA.  RJN Ex. A; *see Buscemi v. Bell*, 964 F.3d 252, 260 (4th Cir. 2020) (no standing where state agency "has stipulated that it … will not" engage in challenged conduct); *Reddy v. Foster*, 845 F.3d 493, 501-02 (1st Cir. 2017) ("plaintiffs lack standing, at this time" where "the government has affirmatively disavowed prosecution" unless or until specified conditions occur); *cf. Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 529 (5th Cir. 2008) (claims for injunctive relief moot because plaintiff could not "show a realistic prospect that any of the violations alleged in its citizen suit [would] continue notwithstanding the consent decree").

The possibility of enforcement during the pendency of this litigation is thus entirely speculative—all the more so because this requirement does not become enforceable for at least *nine years*.  Cal. Code Regs., tit. 13, § 2016(c) (establishing requirement "[b]eginning with the 2036 model year"); *id.* § 2016(e) (requiring submission of compliance reports "no later than 90 calendar days following the end of each model year").  In the meantime, "the mere existence of [the regulation], which may or may not ever be applied to [anyone], is not sufficient to create a case or controversy within the meaning of Article III."  *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1142 (9th Cir. 2024) (cleaned up) (quoting *Cal. Tow Truck Ass'n v. City & Cnty. of San Francisco*, 693 F.3d 847, 866 (9th Cir. 2012)).  Thus, Plaintiffs lack standing and

19

1   this claim is not constitutionally ripe. *Stockton v. Brown*, No. 24-3777, 2025 WL 2656631, at *10

2   (9th Cir. Sept. 17, 2025) ("Whether framed as an issue of standing or ripeness, an injury must

3   involve an invasion of a legally protected interest that is (a) concrete and particularized, *and (b)*

4   *actual or imminent, not conjectural or hypothetical*.") (emphasis added) (cleaned up).[15]

5          In any event, in light of CARB's stipulation, the possibility of *preempted* enforcement—the

6   asserted cause of Plaintiffs' alleged injury—is nil.  Plaintiffs must allege facts sufficient to

7   establish that they "would benefit in a tangible way from the court's intervention." *Warth v.*

8   *Seldin*, 422 U.S. 490, 508 (1975).  They cannot do so because CARB is already subject to a court

9   order barring enforcement absent a preemption waiver.  *Platinum Sports Ltd. v. Snyder*, 715 F.3d

10  615, 616-17 (6th Cir. 2013) ("stipulated final judgment" entered in earlier case and enjoining

11  enforcement of challenged laws made clear "the federal courts have no authority to resolve this

12  'dispute'").  The only question then "is which Article III defect to invoke"—standing or ripeness.

13  *Id.* at 616.  The Court should dismiss this claim against all Defendants for lack of subject matter

14  jurisdiction.

## CONCLUSION

16         The Court should grant Defendants' motion to dismiss.

17  Dated:  October 10, 2025                          Respectfully submitted,

18                                                    ROB BONTA
                                                      Attorney General of California
19                                                    MYUNG J. PARK
                                                      Supervising Deputy Attorney General
20

21

22                                                    */s/ M. Elaine Meckenstock*
                                                      M. ELAINE MECKENSTOCK
23                                                    Deputy Attorney General
                                                      *Attorneys for Defendants*
24

25

26

---

27         [15] This claim is also prudentially unripe because Plaintiffs have not alleged—and cannot
    allege—that the 2036 sales requirement "requires an immediate and significant change in
28  [*anyone's*] conduct of their affairs."  *Id.* at *16.