# Exhibit C

# Title 13 and Title 17, California Code of Regulations
# California Air Resources Board

## 5-Day Public Notice and Comment Period
### Emergency Amendment and Adoption of Vehicle Emissions Regulations

The California Air Resources Board (CARB or Board) proposes to adopt emergency vehicle emissions regulations (the "Emergency Vehicle Emissions Regulation") that will amend California Code of Regulations, titles 13 and 17, and adopt new sections into California Code of Regulations, titles 13 and 17. The amendments would confirm that, until a court resolves the uncertainty created by the federal government's actions, certain antecedent regulations (displaced by Advanced Clean Cars II and Omnibus) remain operative (as previously adopted) with the caveat that CARB may enforce Advanced Clean Cars II and Omnibus, to the extent permitted by law, in the event a court of law holds invalid the resolution purporting to disapprove those waivers. The Emergency Vehicle Emissions Regulations will become effective upon filing with the Office of Administrative Law.

## Written Comment Period and Submittal of Comments

Government Code section 11346.1(a)(2) requires that at least five working days prior to submission of the proposed emergency rulemaking to the Office of Administrative Law (OAL), CARB provides a notice of the proposed emergency rulemaking to every person who has filed a request for notice of regulatory action. After submission of the proposed emergency rulemaking to OAL, interested parties will be provided five calendar days to submit comments on the proposed emergency regulations, as set forth in Government Code section 11349.6.

CARB intends to submit the Emergency Vehicle Emissions Regulation to OAL on September 22, 2025. The submitted action will appear on the list of "Emergency Regulations Under Review" on OAL's website at:
*https://oal.ca.gov/emergency_regulations/Emergency_Regulations_Under_Review/*.

Comments must be submitted in writing directly to OAL:

    Postal mail:  OAL Reference Attorney
                         300 Capitol Mall, Suite 1250
                         Sacramento, California 95814
                         Fax Number: (916) 323-6826

    Electronic submittal:  *staff@oal.ca.gov*

CARB requests that comments submitted via email include a carbon copy ("cc") to *cotb@arb.ca.gov*. Additionally, CARB requests but does not require that interested parties

submit written comments reference the title of the proposal in their comments to facilitate review.

Please note that under the California Public Records Act (Government Code section 7920.000 et seq.), your written and oral comments, attachments, and associated contact information (e.g., your address, phone, email, etc.) become part of the public record and can be released to the public upon request.

## Finding of Emergency

On January 6, 2025, U.S. EPA published its notices of decision granting California's requests for Clean Air Act preemption waivers, authorizing the enforcement of the LEV IV regulations (as part of the Advanced Clean Cars II regulation) and the Omnibus regulation.[1] On June 12, 2025, President Trump signed congressional resolutions that purported to disapprove these and one other waiver not at issue here.[2] California and a coalition of states promptly filed suit to challenge these resolutions targeting three waiver actions granted to California.[3] That case remains pending.

The congressional resolutions have introduced an unprecedented degree of uncertainty into the California market for new motor vehicles. Specifically, the resolutions purported to invalidate preemption waivers authorizing enforcement of more recently adopted (and more stringent) vehicle emission standards, which themselves had displaced earlier-adopted regulations (applicable to all future model years), for which preemption had also been waived. That has left questions about which regulations apply.

Most recently, in an exhibit to a court filing on September 4, 2025, vehicle manufacturers argued that CARB's earlier-adopted vehicle certification requirements—for which CARB has received separate waivers not affected by the congressional resolutions and not at issue in the litigation described above—are invalid because those requirements became "defunct" when the more recent, more stringent standards displaced them.[4] Thus, according to the vehicle manufacturer challengers, "amending state law" would be required to revive the earlier-adopted standards even if the displacing standards are ultimately found to be unenforceable on account of Congress's actions. CARB disagrees.

Nevertheless, in the event the vehicle manufacturer's claim were to be deemed correct—that CARB must affirmatively revive its earlier-adopted emissions requirements before it can resume enforcement of them—then CARB must take immediate action to maintain a stable vehicle market in the state and prevent the sale of vehicles into the state that would not be certified to *either* set of standards—*neither* the more recent ones that are subject to the recent congressional action *nor* the earlier-adopted ones that are undisputedly authorized by a federal waiver. Otherwise, in light of these unprecedented circumstances, there may remain questions—for the first time since CARB's program began decades ago—as to whether *any* California standard is in effect. There is therefore an emergency need to clarify the law to confirm that, at a minimum, CARB's earlier-adopted standards, which have extant federal

---

[1] 90 Fed. Reg. 642 (Jan. 6, 2025), 90 Fed. Reg. 643 (Jan. 6, 2025).
[2] H.J. Res. 88 (119th Congress), H.J. Res. 89 (199th Congress).
[3] *State of California, et al., v. United States of America, et al.,* (ND Cal., case no. 3:25-cv-04966).
[4] Pl. Mot. For Leave to File Reply in Support of Mot. For Admin. Relief to Expedite, *Daimler Truck North Am. LLC v. CARB*, Case No. 2:25-cv-02255-DC (Sep. 4, 2025), at Exh. 1, page 2 n.3.

preemption waivers not subject to the recent congressional resolutions, are operative. This emergency regulation thus responds to an unprecedented and unanticipated set of circumstances: the suggestion by a regulated party that, for the first time in half a century, CARB has *no* operative emissions standards to which it can certify new motor vehicles to be sold in the State.

Every day that passes without clarity in this matter risks the health of millions of Californians, CARB's ability to enforce its long-standing vehicle emissions certification program (including its ability to ensure vehicles meet emission requirements as sold into California and over their full useful lives), and the stability of the California vehicle market. There are currently over 27 million light-, medium-, and heavy-duty vehicles that operate on California roads, traveling an estimated 305 billion miles annually. Each day, these vehicles emit 290 tons of nitrogen oxides (NOx) and over 200 tons of reactive organic gases (this includes evaporative emissions, if just exhaust emissions the number is 83 tons/day)—both of which are smog precursors—and 11.9 tons of particulate matter smaller than 2.5 microns (Fine PM or PM2.5).

To clarify and ensure that new vehicles and engines can continue to be sold in California, despite the ongoing uncertainty created by the federal government's actions, CARB has taken several steps, including its proposal here to adopt the Emergency Vehicle Emissions Regulations. The amendments proposed here would confirm that, until a court resolves the uncertainty created by the federal government's actions, then at a minimum certain earlier-adopted regulations (displaced by Advanced Clean Cars II and Omnibus) remain operative (as previously adopted) with the caveat that CARB may enforce Advanced Clean Cars II and Omnibus, to the extent permitted by law, in the event a court of law holds invalid the resolutions purporting to disapprove the waivers for those more recent regulations.

## Authority and Reference

This emergency regulation is proposed under the authority granted in California Health and Safety Code, sections 38501, 38505, 38510, 38560, 39002, 39003, 39010, 39500, 39600, 39601, 39602.5, 39614, 39658, 39667, 40000, 43000.5, 43013, 43016, 43018, 43100, 43101, 43102, 43104, 43105, 43105.5, 43106, 43154, 43200, 43200.1, 43204, 43205, 43205.5, 43210, 43211, 43212, 43214, 43600 and 43806, and Vehicle Code sections 27156 and 28114. This action is proposed to implement, interpret, and make specific sections 38501, 38505, 38510, 38560, 38562, 38580, 39002, 39003, 39010, 39500, 39600, 39601, 39602.5, 39614, 39658, 39667, 40000, 43000, 43000.5, 43013, 43016, 43018, 43018.5, 43100, 43101, 43102, 43104, 43105, 43105.5, 43106, 43107, 43154, 43200, 43200.1, 43204, 43205, 43205.5, 43211, 43212, 43214, 43600 and 43806 of the California Health and Safety Code; and California Vehicle Code section 28114.

## Informative Digest of Proposed Action and Policy Statement Overview (Gov. Code, § 11346.5, subd. (a)(3))

### Sections Affected:

Proposed amendments to California Code of Regulations, title 13, sections: 1900, 1956.8, 1961.2, 1961.3, 1962.2, 1962.3, 1965, 1968.2, 1968.5, 1969, 1971.1, 1971.5, 1976, 1978, 2035, 2036, 2037, 2038, 2040, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2121, 2123, 2125, 2126, 2127, 2128, 2129, 2130, 2131, 2133, 2137, 2139, 2139.5, 2140, 2141,

2142, 2143, 2144, 2145, 2146, 2147, 2148, 2149, 2166, 2166.1, 2167, 2168, 2169, 2169.1, 2169.2, 2169.3, 2169.4, 2169.5, 2169.6, 2169.7, 2169.8, 2170, 2317, 2423, 2485, and 2903.

Proposed adoption of new sections 1900.0.1, 1956.8.1, 1961.2.1, 1961.3.1, 1962.2.1, 1962.3.1, 1965.0.1, 1968.2.1, 1968.5.1, 1969.0.1, 1971.1.1, 1971.5.1, 1976.0.1, 1978.0.1, 2035.0.1, 2036.0.1, 2037.0.1, 2038.0.1, 2040.0.1, 2111.0.1, 2112.0.1, 2113.0.1, 2114.0.1, 2115.0.1, 2116.0.1, 2117.0.1, 2118.0.1, 2119.0.1, 2121.0.1, 2123.0.1, 2125.0.1, 2126.0.1, 2127.0.1, 2128.0.1, 2129.0.1, 2130.0.1, 2131.0.1, 2133.0.1, 2137.0.1, 2139.0.1, 2140.0.1, 2141.0.1, 2142.0.1, 2143.0.1, 2144.0.1, 2145.0.1, 2146.0.1, 2147.0.1, 2148.0.1, 2149.0.1, 2317.0.1, 2423.0.1, 2485.0.1, 2903.0.1 in title 13 of the California Code of Regulations.

Proposed amendments to California Code of Regulations, title 17, sections 95300, 95301, 95302, 95303, 95304, 95305, 95306, 95307, 95308, 95309, 95310, 95311, 95312, 95660, 95661, 95662, 95663, and 95664.

Proposed adoption of new sections 95300.0.1, 95301.0.1, 95302.0.1, 95303.0.1, 95304.0.1, 95305.0.1, 95306.0.1, 95307.0.1, 95308.0.1, 95309.0.1, 95310.0.1, 95311.0.1, 95312.0.1, 95660.0.1, 95661.0.1, 95662.0.1, 95663.0.1, and 95664.0.1.

## Documents Incorporated by Reference (Cal. Code Regs., tit. 1, § 20, subd. (c)(3)):

See APPENDIX A: Documents Incorporated by Reference.

## Background and Effect of the Proposed Emergency Regulatory Action

### Existing Advanced Clean Cars and Medium- and Heavy-Duty Vehicle and Engine Regulatory Requirements

Passenger cars and light trucks are a significant source of NOx, other smog-forming emissions and PM2.5 in California, with over 26 million such vehicles on the road, which are estimated to travel over 285 billion miles in 2025. Heavy-duty vehicles add approximately 1 million additional vehicles and an additional 15+ billion miles.

California's Low Emission Vehicle III (LEV III) regulations, adopted on January 26, 2012, and subsequently updated, tightened light-duty and chassis-certified medium-duty vehicle criteria pollutant standards for 2015 through 2025 and subsequent model years.[5] The U.S. EPA granted California's request for a Clean Air Act preemption waiver, authorizing enforcement of these regulations, in 2013.[6] As part of the Advanced Clean Cars II (ACC II) regulations adopted on June 9, 2022, more stringent criteria-emission standards known as Low Emission

---

[5] The LEV III regulations were subsequently amended in 2012 (Register 2012, No. 32 and Register 2013, No. 1), 2015 (Register 2015, No. 41) and 2018 (Register 2018, No. 50).

[6] 78 Fed. Reg. 2,113 (Jan. 9, 2013)Other parts of this waiver—covering other standards than those at issue here—were purportedly withdrawn in 2019 but reinstated in 2022.; 87 Fed. Reg. 14,332 (Mar. 14, 2022) [restoring waiver].

4

Vehicle IV (LEV IV) established new requirements for 2026 and subsequent model years, thereby displacing the LEV III criteria pollutant regulation beginning with the 2026 model year.

California first regulated heavy-duty vehicle exhaust emissions in 1969. In 2005 and 2010, U.S. EPA granted waivers for California's medium- and heavy-duty engine and vehicle regulations for diesel and Otto-cycle engine standards.[7] In 2017, the U.S. EPA granted California a waiver of federal preemption for several sets of amendments to CARB's emission standards for medium- and heavy-duty vehicles adopted in 2011, 2008, 2007, and 2006.[8] In 2016, the U.S. EPA granted California's requests for waivers for its on-board diagnostic (OBD) systems for light-, medium-, and heavy-duty vehicles adopted in 2013 (the OBD II and HD OBD regulations).[9] California's Omnibus regulations, adopted in 2020 and amended in 2023, tightened CARB's criteria pollutant standards for medium- and heavy-duty vehicles.[10] Omnibus and Advanced Clean Cars encompass OBD requirements. In 2016, U.S. EPA also granted California a waiver for its Phase 1 Greenhouse Gas emission standards adopted in 2013.[11]

On January 6, 2025, U.S. EPA published its notices of decision granting California's requests for Clean Air Act preemption waivers, authorizing the enforcement of the LEV IV regulations and amendments to OBD requirements (as part of the ACC II regulation) and the Omnibus regulation (including its amendments to OBD requirements).[12] On June 12, 2025, President Trump signed congressional resolutions that purported to disapprove these and one other waiver not at issue here.[13] California and a coalition of states promptly filed suit to challenge these resolutions targeting three waiver actions granted to California.[14] That case remains pending.

The congressional resolutions have introduced an unprecedented degree of uncertainty into the California market for new motor vehicles. Specifically, the resolutions purported to invalidate preemption waivers authorizing enforcement of recently adopted, more stringent vehicle emission standards that had displaced earlier standards that themselves were applicable to all future model years and for which preemption has been waived. That has left questions for at least some regulated parties about which regulations apply, as evinced in the court filing by a manufacturer described above. To clarify and ensure that new vehicles and engines can continue to be sold in California, despite the ongoing uncertainty created by the federal government's actions, CARB has taken several steps, including this proposed adoption of the Emergency Vehicle Emissions Regulations.

---

[7] 70 Fed. Reg. 50,322 (Aug. 26, 2005); 75 Fed. Reg. 70,238 (Nov. 17, 2010).
[8] 82 Fed. Reg. 4,867 (Jan. 17, 2017).
[9] 81 Fed. Reg. 78,143 (Nov. 7, 2016), 81 Fed. Reg. 78,149 (Nov. 7, 2016).
[10] *See* Register 2020, No. 4 (26-Z), and Register 2024, No. 22 (31-Z).
[11] The Proposed Greenhouse Gas (GHG) Regulations For Medium- And Heavy-Duty Engines And Vehicles, Optional Reduced Emission Standards For Heavy-Duty Engines, And Amendments To The Tractor-Trailer GHG Regulation, Diesel-Fueled Commercial Motor Vehicle Idling Rule, And The Heavy-Duty Hybrid-Electric Vehicles Certification Procedures, adopted 2014, Register 2014, No. 49; 81 Fed. Reg. 52,680 (June 9, 2016).
[12] 90 Fed. Reg. 642 (Jan. 6, 2025), 90 Fed. Reg. 643 (Jan. 6, 2025).
[13] H.J. Res. 88 (119th Congress), H.J. Res. 89 (199th Congress).
[14] *State of California, et al., v. United States of America, et al.,* (ND Cal., case no. 3:25-cv-04966).

## Summary of the Proposed Regulatory Actions

CARB is proposing its Emergency Vehicle Emissions Regulations to clarify that protective emission standards for vehicles and engines remain operative, while ensuring manufacturers can sell vehicles and engines into California despite the emergency the federal government has created through unconstitutional congressional resolutions targeting certain preemption waivers.

To ensure that new motor vehicles can continue to be sold in California, despite the ongoing uncertainty introduced by the federal government into the State's longstanding regulatory program, CARB staff is proposing to amend its regulations to clarify that the criteria pollution provisions of the LEV III regulation (adopted as part of ACC I) and associated on-board diagnostic requirements remain operative, with the caveat that CARB may enforce the more recently adopted LEV IV requirements (adopted as part of ACC II) to the extent permitted by law, in the event a court of law holds invalid the resolution purporting to disapprove that waiver.

CARB staff is similarly proposing to amend its medium- and heavy-duty regulations to clarify that the provisions antecedent to Omnibus[15] remain operative, with the caveat that CARB may enforce the Omnibus regulation, to the extent permitted by law, in the event a court of law holds invalid the resolution purporting to disapprove that waiver.

CARB continues to accept and process certification applications for the LEV IV and Omnibus emission standards. Hence, both sets of standards will be present in the California Code of Regulations during this period of unprecedented uncertainty. Regulated parties may choose to follow either the LEV IV or Omnibus standards or the antecedent LEV III and pre-Omnibus provisions. Regulated parties, however, assume the risk if they choose to certify only to the antecedent provisions, and the congressional resolutions disapproving the waivers of federal preemption under the Clean Air Act are declared invalid.

CARB may also consider other changes to the sections affected, as listed on page 3 of this notice, or other sections within the scope of this notice, during this rulemaking process.

## Objectives and Benefits of the Proposed Regulatory Action:

The goal of the Emergency Vehicle Emissions Regulations is to clarify and ensure that new motor vehicles can be sold in California despite the unprecedented uncertainty introduced by the federal government into CARB's longstanding regulatory program. These amendments will ensure that new vehicles and engines sold in California will, at a minimum, meet the emission standards and requirements for which U.S. EPA has granted a waiver that was not targeted by the congressional resolutions.

## Environmental and Health Benefits

CARB's Emergency Vehicle Emissions Regulations will provide clarity and ensure that, at a minimum, the pollutant emission standards for new passenger cars, light trucks, and chassis-certified medium-duty vehicles up to 14,000 pounds, which had become status quo starting with the 2017 model year, remain operative. The Regulations will also clarify that the standards

---

[15] These regulations encompass provisions for OBD systems for light-, medium-, and heavy-duty engines and vehicles, greenhouse gas emissions from medium- and heavy-duty vehicles, and related requirements in the sections of titles 13 and 17 listed as encompassed in this proposal.

antecedent to the Omnibus regulations also remain operative. CARB has enforced LEV III and pre-Omnibus standards, or stricter standards, since those standards went into effect, and thus the proposed regulatory action has no adverse environmental or health impact.

## Economic Impacts

CARB does not anticipate any cost or economic impacts from its Emergency Vehicle Emissions Regulations because the compliance pathways available to manufacturers have already been understood for years; and manufacturers have either already achieved or planned to achieve one or more of the compliance pathways.

## Comparable Federal Regulations:

Both California and U.S. EPA have authorities to set emissions standards for new motor vehicles and for new motor vehicle engines. U.S. EPA's authority is contained in Section 202(a)(1) of the Clean Air Act.[16]

The California Legislature has placed the responsibility of controlling vehicular air pollution on CARB, and has designated CARB as the state agency that is "charged with coordinating efforts to attain and maintain ambient air quality standards, to conduct research into the causes of and solution to air pollution, and to systematically attack the serious problems caused by motor vehicles, which is the major source of air pollution in many areas of the State."[17] CARB is authorized to adopt standards, rules and regulations needed to properly execute the powers and duties granted to and imposed on CARB by law.[18] Health and Safety Code sections 43013 and 43018 broadly authorize and require CARB to achieve the maximum feasible and cost-effective emission reductions from motor vehicles, including the adoption and implementation of vehicle emission standards and in-use performance standards[19] and by improving emission system durability and performance,[20] resulting in an expeditious reduction of NOx emissions from diesel vehicles, "which significantly contribute to air pollution problems."[21]

CARB is further authorized to adopt and implement emission standards for new motor vehicles and new motor vehicle engines that are necessary and technologically feasible.[22] CARB also has the authority to adopt test procedures and any other procedures necessary to determine whether vehicles and engines are in compliance with the emission standards established under Part 5 of the Health and Safety Code.[23] Finally, CARB has the authority to not certify a new motor vehicle or motor vehicle engine unless the vehicle or engine meets the emission standards adopted by CARB pursuant to Part 5 of the HSC under test procedures adopted pursuant to section 43104[24]

---

[16] 42 U.S.C. § 7521.
[17] Cal. Health & Saf. Code, §§ 39002, 39003.
[18] Cal. Health & Saf. Code, §§ 39600 and 39601.
[19] Cal. Health & Saf. Code, §43013(a).
[20] Cal. Health & Saf. Code, § 43018(c)(2)
[21] Cal. Health & Saf. Code, § 43013(h).
[22] Cal. Health & Saf. Code, §43101.
[23] Cal. Health & Saf. Code, § 43104.
[24] Cal. Health & Saf. Code, § 43102.

On January 24, 2023, U.S. EPA adopted the EPA-NOx rule which established criteria pollutant emissions standards and test procedures for 2027 and subsequent MY HDEs that are comparable in stringency to the 2027 MY HD Omnibus requirements.

For 2026 model year, U.S. EPA's Tier 3 criteria pollutant standards are similar to the LEV III requirements for non-methane organic gas (NMOG) plus NOx, but not as stringent for particulate matter. On March 20, 2024, U.S. EPA adopted their Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles Rule, that sets new Tier 4 standards to further reduce harmful air pollutant emissions from light-duty and medium-duty vehicles starting with model year 2027. Portions of this rule are identical to elements of the LEV IV requirements for those model years but are more stringent once they are fully phased in by the 2033 model year than the LEV III requirements would be.

On August 1, 2025, U.S. EPA published a notice of reconsideration and proposed repeal of its greenhouse has emission standards for light-, medium-, and heavy-duty vehicles.[25]

## An Evaluation of Inconsistency or Incompatibility with Existing State Regulations (Gov. Code, § 11346.5, subd. (a)(3)(D)):

During the process of developing the proposed regulatory action, CARB conducted a search of similar regulations on this topic and concluded these regulations are neither inconsistent nor incompatible with existing state regulations.

## Other Statutory Requirements (Gov. Code, § 11346.5 subd. (a)(4))

The Emergency Vehicle Regulations proposal would clarify that certain antecedent regulations remain operative. When these regulations were adopted, any other matters prescribed by statute applicable to CARB or these specific regulations or class or regulations were identified. These antecedent regulations were identified in OAL File Numbers:

- Z-00-1010-10 [Consider Requiring Certain California Light-and Medium-Duty Vehicles to be Subject to Federal Tier 2 Exhaust Standards, and Adopting Additional Exhaust Emission Standards for Heavy-Duty Gasoline Vehicles and Engines],
- Z-01-0828-14 [Amendments Adopting More Stringent Emission Standards for 2007 and Subsequent Model Year New Heavy-Duty Diesel Engines],
- Z-02-0917-02 [Consider the Incorporation of Federal Exhaust Emission Standards for 2008 and Later Model-Year Heavy-Duty Gasoline Engines and the Adoption of Minor Amendments to the Low-Emission Vehicle Regulations],
- Z-2011-1129-12 [Amendments To The California Greenhouse Gas And Criteria Pollutant Exhaust And Evaporative Emission Standards And Test Procedures And To The On-Board Diagnostic System Requirements For Passenger Cars, Light-Duty Trucks, And Medium-Duty Vehicles, And To The Evaporative Emission Requirements For Heavy-Duty Vehicles],
- Z-2012-0626-07 [Proposed Revisions to On-Board Diagnostic System Requirements for Heavy-Engines, Passenger Cars, Light-Duty Trucks, Medium-Duty Vehicles and Engines],

---

[25] 90 Fed. Reg. 36,288, Aug. 1, 2025.

- Z-2012-0831-01 [Proposed Amendments To The New Passenger Motor Vehicle Greenhouse Gas Emission Standards For Model Years 2017-2025 To Permit Compliance Based On Federal Greenhouse Gas Emissions Standards And Additional Minor Revisions To The LEV III And ZEV Regulations],
- Z-2013-1015-07 [Proposed Greenhouse Gas (GHG) Regulations For Medium- And Heavy-Duty Engines And Vehicles, Optional Reduced Emission Standards For Heavy-Duty Engines, And Amendments To The Tractor-Trailer GHG Regulation, Diesel-Fueled Commercial Motor Vehicle Idling Rule, And The Heavy-Duty Hybrid-Electric Vehicles Certification Procedures],
- Z-2014-0819-06 [Proposed Amendments To The LEV III Criteria Pollutant Requirements For Light- And Medium-Duty Vehicles, The Hybrid Electric Vehicle Test Procedures, And The Heavy-Duty Otto-Cycle And Heavy-Duty Diesel Test Procedures],
- Z-2018-0724-07 [Proposed Amendments to the Low-Emission Vehicle III Greenhouse Gas Emission Regulation], and
- Z-2018-0821-02 [Amendments to California Specification for Fill Pipes and Openings Of Motor Vehicle Fuel Tanks].

## Disclosure Regarding the Proposed Regulation

## Fiscal Impact/Local Mandate Determination Regarding the Proposed Action (Gov. Code, § 11346.5, subds. (a)(5)&(6)):

The determinations of the Board's Executive Officer concerning the costs or savings incurred by public agencies and private parties and businesses in reasonable compliance with the proposed regulatory actions are presented below.

Under Government Code sections 11346.5, subdivision (a)(5) and 11346.5, subdivision (a)(6), the Executive Officer has determined that the proposed regulatory actions would not create costs or savings to any State agency, would not create costs or savings in federal funding to the State, would not create costs or mandates to any local agency or school district, whether or not reimbursable by the State under Government Code, title 2, division 4, part 7 (commencing with section 17500), or other nondiscretionary cost or savings to State or local agencies.

Cost to any Local Agency or School District Requiring Reimbursement under Gov. Code section 17500 et seq.:

The Emergency Vehicle Emissions Regulations proposal is not expected to result in a cost to any local agency or school district requiring reimbursement under Government Code section 17500 et seq. (state-mandated costs under California Constitution Article XIII B, section 6, i.e., "unfunded mandate"), where the proposal is clarifying that regulations that have been in place for years remain operative, in light of the unusual circumstances here, and manufacturers were planning to achieve, or already were achieving, compliance with more stringent standards..

Cost or Savings for State Agencies:

The Emergency Vehicle Emissions Regulations proposal is not expected to result in a change to fiscal impacts on state government, where the proposal is clarifying that regulations that have been in place for years remain operative in light of the unusual

circumstances here, and manufacturers were planning to achieve, or already achieving, compliance with more stringent standards.

<u>Other Non-Discretionary Costs or Savings on Local Agencies</u>:

The Emergency Vehicle Emissions Regulations proposal is not expected to have non-discretionary costs or savings on local agencies, where the proposal is clarifying that regulations that have been in place for years remain operative in light of the unusual circumstances here, and manufacturers were planning to achieve, or already achieving, compliance with more stringent standards.

<u>Cost or Savings in Federal Funding to the State</u>:

The Emergency Vehicle Emissions Regulations proposal is not expected to impose any costs or savings in federal funding to the state.

## Environmental Analysis

CARB, as the lead agency under the California Environmental Quality Act (CEQA), has reviewed the proposed Emergency Vehicle Emissions Regulation and concluded that it is exempt pursuant to CEQA Guidelines, section 15061(b)(3). The proposed regulatory action will provide clarity and confirm that, until a court resolves the uncertainty created by the federal government's actions, certain antecedent regulations (displaced by Advanced Clean Cars II and Omnibus) remain operative (as previously adopted) with the caveat that CARB may enforce Advanced Clean Cars II and Omnibus, to the extent permitted by law, in the event a court of law holds invalid the resolutions purporting to disapprove those waivers.

CARB has also determined this proposal is exempt pursuant to CEQA Guidelines sections 15307 (actions for protection of natural resources) and 15308 (actions for protection of the environment).

## Agency Contact Persons

Inquiries concerning the substance of the proposal to make permanent CARB's Emergency Vehicle Emissions Regulations may be directed to the agency representative Michelle Buffington, Ph.D., Chief, Mobile Source Control Division, California Air Resources Board, (279) 208-7982 (VOIP), *Michelle.Buffington@arb.ca.gov*.

## Availability of Documents

Copies of the emergency rulemaking documents, including the full text of the proposed regulatory language, in underline and strikeout format to allow for comparison with the existing regulations, and proposed new text, may be accessed on CARB's website listed below, on Monday, September 15, 2025. Please contact Lindsay Garcia, Regulations Coordinator, at *Regulations@arb.ca.gov* or (916) 546-2286 if you need physical copies of the documents. Pursuant to Government Code section 11346.5, subdivision (b), upon request to the Regulations Coordinator, physical copies would be obtained from the Public Information Office, California Air Resources Board, 1001 I Street, Visitors and Environmental Services Center, First Floor, Sacramento, California, 95814.

Further, the agency representative to whom non-substantive inquiries concerning the proposed administrative action may be directed is Lindsay Garcia, Regulations Coordinator, (916) 546-2286. CARB staff has compiled a record for this rulemaking action, which includes all the information upon which the proposal is based. This material is available for inspection upon request to the contact persons.

## Internet Access

This Notice and the proposed regulatory text, and all subsequent regulatory documents, when completed, are available on CARB's website for this rulemaking at
*https://ww2.arb.ca.gov/rulemaking/2025/emergencyvehemissions*

California Air Resources Board

_____
Steven S. Cliff, Ph.D.,
Executive Officer

Date: September 15, 2025

*The energy challenge facing California is real. Every Californian needs to take immediate action to reduce energy consumption. For a list of simple ways you can reduce demand and cut your energy costs,* see *CARB's website* (ww2.arb.ca.gov).

11

# APPENDIX A: Documents Incorporated by Reference

The Emergency Vehicle Emissions Regulations previously incorporated documents by reference as identified in OAL File Numbers:

- Z-00-1010-10 [Consider Requiring Certain California Light-and Medium-Duty Vehicles to be Subject to Federal Tier 2 Exhaust Standards, and Adopting Additional Exhaust Emission Standards for Heavy-Duty Gasoline Vehicles and Engines],
- Z-01-0828-14 [Amendments Adopting More Stringent Emission Standards for 2007 and Subsequent Model Year New Heavy-Duty Diesel Engines],
- Z-02-0917-02 [Consider the Incorporation of Federal Exhaust Emission Standards for 2008 and Later Model-Year Heavy-Duty Gasoline Engines and the Adoption of Minor Amendments to the Low-Emission Vehicle Regulations],
- Z-2011-1129-12 [Amendments To The California Greenhouse Gas And Criteria Pollutant Exhaust And Evaporative Emission Standards And Test Procedures And To The On-Board Diagnostic System Requirements For Passenger Cars, Light-Duty Trucks, And Medium-Duty Vehicles, And To The Evaporative Emission Requirements For Heavy-Duty Vehicles],
- Z-2012-0626-07 [Proposed Revisions to On-Board Diagnostic System Requirements for Heavy-Engines, Passenger Cars, Light-Duty Trucks, Medium-Duty Vehicles and Engines],
- Z-2012-0831-01 [Proposed Amendments To The New Passenger Motor Vehicle Greenhouse Gas Emission Standards For Model Years 2017-2025 To Permit Compliance Based On Federal Greenhouse Gas Emissions Standards And Additional Minor Revisions To The LEV III And ZEV Regulations],
- Z-2013-1015-07 [Proposed Greenhouse Gas (GHG) Regulations For Medium- And Heavy-Duty Engines And Vehicles, Optional Reduced Emission Standards For Heavy-Duty Engines, And Amendments To The Tractor-Trailer GHG Regulation, Diesel-Fueled Commercial Motor Vehicle Idling Rule, And The Heavy-Duty Hybrid-Electric Vehicles Certification Procedures],
- Z-2014-0819-06 [Proposed Amendments To The LEV III Criteria Pollutant Requirements For Light- And Medium-Duty Vehicles, The Hybrid Electric Vehicle Test Procedures, And The Heavy-Duty Otto-Cycle And Heavy-Duty Diesel Test Procedures],
- Z-2018-0724-07 [Proposed Amendments to the Low-Emission Vehicle III Greenhouse Gas Emission Regulation], and
- Z-2018-0821-02 [Amendments to California Specification for Fill Pipes and Openings Of Motor Vehicle Fuel Tanks].

The following documents are incorporated in the Emergency Vehicle Emissions regulatory action by reference as specified by the following sections of emergency regulations or by the original regulatory section in which they were adopted and are noted here for completeness.

- "California 2015 And Subsequent Model Criteria Pollutant Exhaust Emission Standards and Test Procedures And 2017 And Subsequent Model Greenhouse Gas Exhaust Emission Standards and Test Procedures For Passenger Cars, Light-Duty Trucks, And Medium-Duty Vehicles", amended December 6, 2012, incorporated by reference in title 13, CCR, sections 1961.2.1, 1965.0.1, 2037.0.1, and 2038.0.1.

- "California Evaporative Emission Standards and Test Procedures For 2001 And Subsequent Model Motor Vehicles", amended December 2012, incorporated by reference in title 13, CCR, section 1976.0.1.

- "California Refueling Emission Standards and Test Procedures For 2001 And Subsequent Model Motor Vehicles", amended March 22, 2012[Insert Date of Adoption], re-incorporated by reference to reflect new amended date in title 13, CCR, section 1978.0.1.

- "California Non-Methane Organic Gas Test Procedures for 2017 And Subsequent Model Year Vehicles", adopted September 2015, incorporated by reference in title 13, CCR, section 1961.2.1.

- "California Test Procedures For Evaluating Substitute Fuels and New Clean Fuels In 2015 and Subsequent Years" adopted March 2012, incorporated by reference in title 13, CCR, section 2317.0.1.

- "California Exhaust Emission Standards and Test Procedures For 2018 and Subsequent Model Zero-Emission Vehicles and Hybrid Electric Vehicles, In The Passenger Car, Light-Duty Truck And Medium-Duty Vehicle Classes", amended September 3, 2015, incorporated by reference in title 13, CCR, sections 1961.2.1 and 1962.2.1.

- "California Exhaust Emission Standards and Test Procedures For 2004 and Subsequent Model Heavy-Duty Diesel-Engines and Vehicles", amended October 21, 2014, incorporated by reference in title 13, CCR, section 1956.8.1(b).

- "California Exhaust Emission Standards and Test Procedures For 2004 and Subsequent Model Heavy-Duty Otto-Cycle Engines", amended October 21, 2014, incorporated by reference in title 13, CCR, section 1956.8.1(d).

- "California Greenhouse Gas Exhaust Emission Standards and Test Procedures for 2014 and Subsequent Model Heavy-Duty Vehicles", adopted October 21, 2014, incorporated by reference in title 17, CCR, section 95663(c).

- "California Interim Certification Procedures For 2004 and Subsequent Model Hybrid-Electric and Other Hybrid Vehicles in the Urban Bus and Heavy-Duty Vehicle Classes", amended October 21, 2014, incorporated by reference in title 13, CCR, section 1956.8.1(b).

- "California Non-Methane Organic Gas Test Procedures for 1993 Through 2016 Model Year Vehicles", amended September 2, 2015, incorporated by reference in title 13, CCR, section 1956.8.1(d).

- Society of Automotive Engineers (SAE) J1979 "E/E Diagnostic Test Modes," incorporated by reference in title 13, CCR, section 1968.2.1(c).

- SAE J1939 "Recommended Practice for a Serial Control and Communications Vehicle Network," incorporated by reference in title 13, CCR, section 1968.2.1(c).

- The evaporative emission standards and test procedures incorporated by reference in title 13, CCR, section 1976, as referenced in title 13, CCR, section 1968.2.1(c).

- The exhaust emission levels to which an engine family is certified under the averaging, banking, and trading program incorporated by reference in title 13, CCR, section 1956.8, as referenced in title 13, CCR, section 1968.2.1(c).

- The certification requirements and test procedures incorporated by reference in title 13, CCR, section 1961(d), as referenced in title 13, CCR, section 1968.2.1(c).

- The certification exhaust emission standards and test procedures applicable to the SET cycle incorporated by reference in title 13, CCR, section 1956.8(b) and section 1956.8(d), as referenced in title 13, CCR, section 1968.2.1(c).

- "Speed Versus Time Data for California's Unified Driving Cycle", dated December 12, 1996, incorporated by reference in title 13, CCR, section 1968.2.1(c).

- 40 CFR 86, Appendix 1, section (g) "EPA US06 Driving Schedule for Light-Duty Vehicles and Light-Duty Trucks," amended July 13, 2005, incorporated by reference in title 13, CCR, section 1968.2.1(c).

- Air Resources Board (ARB) Manufacturers Advisory Correspondence (MAC) No. 99-06, adopted December 20, 1999, incorporated by reference in title 13, CCR, section 1968.2.1(e)(14.1.2)(A).

- SAE J1930 "Electrical/Electronic Systems Diagnostic Terms, Definitions, Abbreviations, and Acronyms – Equivalent to ISO/TR 15031-2:April 30, 2002", incorporated by reference in title 13, CCR, section 1968.2.1(e)(14.1.2)(B).

- SAE J1930 "Electrical/Electronic Systems Diagnostic Terms, Definitions, Abbreviations, and Acronyms – Equivalent to ISO/TR 15031-2", October 2008, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.1).

- SAE J1962 "Diagnostic Connector – Equivalent to ISO/DIS 15031-3:December 14, 2001", April 2002, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.2).

- SAE J1978 "OBD II Scan Tool – Equivalent to ISO/DIS 15031-4:December 14, 2001", April 2002, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.3).

- SAE J1979 "E/E Diagnostic Test Modes", May 2007, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.4).

- SAE J1979-DA, "Digital Annex of E/E Diagnostic Test Modes", October 2011, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.4.1).

- SAE J1850 "Class B Data Communications Network Interface", May 2001, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.5).

- SAE J2012 "Diagnostic Trouble Code Definitions – Equivalent to ISO/DIS 15031-6", December 2007, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.6).

- ISO 9141-2:1994 "Road Vehicles-Diagnostic Systems-CARB Requirements for Interchange of Digital Information", February 1994, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.7).

- ISO 14230-4:2000 "Road Vehicles-Diagnostic Systems-KWP 2000 Requirements for Emission-related Systems", June 2000, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.8).

- ISO 15765-4:2005 "Road vehicles-Diagnostics on Controller Area Network (CAN) - Part 4: Requirements for emissions-related systems", January 2005, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.9).

- SAE J1939 "Recommended Practice for a Serial Control and Communications Vehicle Network" March 2009, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.1).

- SAE J1939/1 "Recommended Practice for Control and Communications Network for On-Highway Equipment", September 01, 2000, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.2).

- SAE J1939/11 "Physical Layer, 250K bits/s, Twisted Shielded Pair", September 18, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.3).

- SAE J1939/13 "Off-Board Diagnostic Connector", March 11, 2004, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.4).

- SAE J1939/15 "Reduced Physical Layer, 250K bits/sec, UN-Shielded Twisted Pair (UTP)", August 21, 2008, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.5).

- SAE J1939/21 "Data Link Layer", December 22, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.6).

- SAE J1939/31 "Network Layer", April 02, 2004, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.7).

- SAE J1939/71 "Vehicle Application Layer (Through February 2008)", January 20, 2009, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.8).

- SAE J1939/73 "Application Layer - Diagnostics", September 08, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.9).

- SAE J1939/81 "Network Management", May 08, 2003, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.10).

- SAE J1939/84 "OBD Communications Compliance Test Cases For Heavy Duty Components and Vehicles", December 2008, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.10.11).

- SAE J1699-3 – "OBD II Compliance Test Cases", May 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.11).

- SAE J2534-1 – "Recommended Practice for Pass-Thru Vehicle Programming", December 2004, incorporated by reference in title 13, CCR, section 1968.2.1(g)(1.12).

- Attachment E: CAL ID and CVN Data of ARB Mail-Out #MSC 06-23, December 21, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(g)(4.7.4).

- Attachment A of ARB Mail-Out #95-20, May 22, 1995, incorporated by reference in title 13, CCR, section 1968.2.1(i)(2.2).

- Attachment A: Misfire Disablement and Detection Chart of ARB Mail-Out #06-23, December 21, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(i)(2.5.1)(C).

- Attachments F and G of ARB Mail-Out #MSC 06-23, December 21, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(i)(2.16).

- Attachment D: Rate Based Data of ARB Mail-Out #06-23, December 21, 2006, incorporated by reference in title 13, CCR, section 1968.2.1(j)(3.2).

- Health and Safety Code section 39010 et seq., incorporated by reference in title 13, CCR, section 1968.5.1(a)(3).

- Title 13, CCR, sections 1900(b) and 1968.2(c), incorporated by reference in title 13, CCR, section 1968.5.1(a)(3).

- EMFAC2000 "Public Meeting to Consider Approval of Revisions to the State's On-Road Motor Vehicle Emissions Inventory: Technical Support Document, Section 7.1, 'Estimation of Average Mileage Accrual Rates from Smog Check Data,'" May 2000, incorporated by reference in title 13, CCR, section 1968.5.1(b)(3)(A)(iv).

- SAE J1979 as incorporated by reference in title 13, CCR section 1968.2(g)(1) and section 1968.2.1(g)(4.1).

- SAE J1979 "E/E Diagnostic Test Modes," February 2012, incorporated by reference in title 13, CCR, section 1971.1.1(c).

- The evaporative emission standards and test procedures incorporated by reference in title 13, CCR, section 1976, as referenced in title 13, CCR, section 1971.1.1(c).

- The exhaust emission levels to which an engine family is certified under the averaging, banking, and trading program incorporated by reference in title 13, CCR, section 1956.8, as referenced in title 13, CCR, section 1971.1.1(c).

- The certification exhaust emission standards and test procedures applicable to the SET cycle incorporated by reference in title 13, CCR, section 1956.8(b) and section 1956.8(d), as referenced in title 13, CCR, section 1971.1.1(c).

- SAE J1930 "Electrical/Electronic Systems Diagnostic Terms, Definitions, Abbreviations, and Acronyms – Equivalent to ISO/TR 15031-2", October 2008, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.1).

- SAE J1930-DA "Electrical/Electronic Systems Diagnostic Terms, Definitions, Abbreviations, and Acronyms Web Tool Spreadsheet", March 2012, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.1.1).

- SAE J1962 "Diagnostic Connector – Equivalent to ISO/DIS 15031-3:December 14, 2001", April 2002, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.2).

- SAE J1978 "OBD II Scan Tool – Equivalent to ISO/DIS 15031-4:December 14, 2001", April 2002, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.3).

- SAE J1979 "E/E Diagnostic Test Modes", May 2007, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.4).

- SAE J1979-DA, "Digital Annex of E/E Diagnostic Test Modes", October 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.4.1).

- SAE J2012 "Diagnostic Trouble Code Definitions – Equivalent to ISO/DIS 15031-6", December 2007, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.5).

- SAE J2012-DA "Digital Annex of Diagnostic Trouble Code Definitions and Failure Type Byte Definitions", July 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.5.1).

- ISO 15765-4 "Road Vehicles-Diagnostics Communication over Controller Area Network (CAN) - Part 4: Requirements for emission-related systems", February 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.6).

- SAE J1939 "Recommended Practice for a Serial Control and Communications Vehicle Network", April 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.1).

- SAE J1939/1 "On-Highway Equipment Control and Communication Network", May 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.2).

- SAE J1939/11 "Physical Layer, 250K bits/s, Twisted Shielded Pair", September 2006, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.3).

- SAE J1939/13 "Off-Board Diagnostic Connector", October 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.4).

- SAE J1939/15 "Reduced Physical Layer, 250K bits/sec, UN-Shielded Twisted Pair (UTP)", August 2008, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.5).

- SAE J1939/21 "Data Link Layer", December 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.6).

- SAE J1939/31 "Network Layer", May 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.7).

- SAE J1939/71 "Vehicle Application Layer (Through May 2010)", March 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.8).

- SAE J1939/73 "Application Layer - Diagnostics", February 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.9).

- SAE J1939/81 "Network Management", June 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.10).

- SAE J1939/84 "OBD Communications Compliance Test Cases For Heavy Duty Components and Vehicles", December 2010, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.7.11).

- SAE J2403 "Medium/Heavy-Duty E/E Systems Diagnosis Nomenclature," February 2011, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.8).

- SAE J1699-3 – "OBD II Compliance Test Cases", December 2009, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.9).

- SAE J2534-1 – "Recommended Practice for Pass-Thru Vehicle Programming", December 2004, incorporated by reference in title 13, CCR, section 1971.1.1(h)(1.10).

- Attachment F of ARB Mail-Out #MSC 09-22, July 7, 2009, incorporated by reference in title 13, CCR, section 1971.1.1 (h)(4.7.6).

- Attachments G and H of ARB Mail-Out #MSC 09-22, July 7, 2009, incorporated by reference in title 13, CCR, section 1971.1.1 (j)(2.17).

- Health and Safety Code section 39010 et seq., incorporated by reference in title 13, CCR, section 1971.5.1(a)(3).

- Title 13, CCR, section 1900(b) and section 1971.1(c), incorporated by reference in title 13, CCR, section 1971.5.1(a)(3).

- EMFAC2007, incorporated by reference in title 13, CCR, section 1971.5.1(b)(3)(A)(iv).
- Society of Automotive Engineers J1979 (SAE J1979) or J1939 (SAE J1939) as incorporated by reference in Cal. Code Regs., title 13, section 1971.1.1(h)(1) and section 1971.1.1(h)(4.1).