ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General
JOHN K. ADAMS
DAVID D. MITCHELL
United States Department of Justice
Environment & Natural Resources Div.
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5905
robert.stander@usdoj.gov
john.adams3@usdoj.gov
david.mitchell@usdoj.gov

ERIC GRANT
United States Attorney
EDWARD A. OLSEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
(916) 554-2821

*Counsel for Intervenors-Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC; INTERNATIONAL MOTORS, LLC; PACCAR INC; and VOLVO GROUP NORTH AMERICA LLC,<br><br>Plaintiffs,<br><br>and<br><br>THE UNITED STATES OF AMERICA; and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Intervenors-Plaintiffs,<br><br>v.<br><br>CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,<br><br>Defendants. | 2:25-cv-02255-DC-AC<br><br>**UNITED STATES' OPPOSITION IN PART TO DEFENDANTS' MOTION TO DISMISS THE UNITED STATES' COMPLAINT IN INTERVENTION (Dkt. No. 77)**<br><br>Date: November 21, 2025<br>Time: 1:30 PM<br>Courtroom: 8, 13th Floor<br>Judge: Hon. Dena Coggins<br>Trial Date: Not Set<br>Action Filed: August 11, 2025 |

## INTRODUCTION

Heavy-duty trucks, such as the 18-wheelers ubiquitously used in interstate shipping, are central to American commerce. California's unlawful vehicle emissions regulations pose a serious threat to the trucking industry and to the American shipping economy. At issue in this motion is just one of those regulations: the Advanced Clean Fleets Rule, adopted in 2023 into the Code of California Regulations by the California Air Resourced Board (CARB). The Rule bans sales of fossil-fuel powered trucks with a gross vehicle weight rating over 8,500 pounds (Heavy-Duty Trucks), requiring all truck manufacturers to sell 100% zero-emissions trucks (electric vehicles) and engines beginning in model year 2036. California's adoption of this rule was unlawful. It conflicts with the plain terms of section 209(a) of the Clean Air Act, which provides: "No State … shall adopt . . . any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a)-(b). Although section 209(b) authorizes the U.S. Environmental Protection Agency (EPA) to grant a preemption waiver to CARB under limited circumstances, CARB adopted this electric-vehicle mandate without first seeking or obtaining a preemption waiver from EPA. CARB is not seeking and has not obtained a preemption waiver, even though it adopted the regulations more than three years ago. CARB's adoption of the Advanced Clean Fleets Rule is accordingly unlawful under section 209(a) of the Clean Air Act and the Supremacy Clause of the United States Constitution.

On top of that, in 2023, CARB adopted the Clean Truck Partnership (CTP), a regulatory enforcement tool styled as a "contract" with certain truck manufacturers. It requires the manufacturers to comply with the Advanced Clean Fleets Rule's electric-vehicle mandate, among other emissions standards, even if a court determines that the Rule is unlawful or that California lacks authority to enforce it. CARB entered into the CTP even though the Clean Air Act prohibits any "attempt to enforce any standard relating to the control of emissions from new motor vehicles" or "engines" without a preemption waiver from EPA. *Id.* The CTP expressly incorporates CARB's unlawful emissions standards, and CARB adopted the CTP in the position of a regulator, rather than of a market participant. The CTP is therefore an unlawful attempt to enforce the electric-

vehicle mandate in violation of section 209(a) of the Clean Air Act and the Supremacy Clause of the United States Constitution.

It is well settled that the United States' sovereign interests are harmed when its laws are violated and when any state usurps the United States' exclusive authority to regulate. Here, EPA possesses exclusive authority to adopt and enforce standards related to emissions from new motor vehicles and engines. CARB's adoption of the Advanced Clean Fleets Rule, its adoption of the CTP as a means of enforcing that rule, and CARB's usurpation of EPA's exclusive regulatory authority inflict an ongoing injury to the sovereignty of the United States. An order from this Court permanently enjoining California's illegal action would redress that injury. Thus, the United States has standing to sue and its claims are ripe. California's arguments to the contrary are meritless.[1]

## BACKGROUND

### I. Statutory and Regulatory Background

#### A. The Clean Air Act's Motor Vehicle Emissions Program

In 1965, Congress amended Title II of the Clean Air Act to authorize federal emission standards for motor vehicles. Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965). Then as now, section 202 governs federal emission standards for air pollutants emitted from new motor vehicles or engines found to "cause, or contribute to . . . air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). But many states continued developing their own emission programs. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Env't Conservation*, 17 F.3d 521, 525 (2d. Cir. 1994). Congress responded in 1967 by adding a broad preemption provision that is the "cornerstone" of Title II. *Motor Vehicle Mfrs.*, 17 F.3d at 526.

Relevant here, section 209(a) provides: "No State . . . shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). Next, section 209(b) contains a "unique preemption exception" that applies only to California. *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2130 (2025).

---

[1] The position of the United States is that no hearing is necessary on this motion, which can be decided on the Parties' written submissions.

That provision authorizes EPA to grant a preemption waiver for proposed standards that are at least as strict as federal standards, but only if California "need[s] such State standards to meet compelling and extraordinary conditions," and the State standards are consistent with other requirements in section 202(a) of the Clean Air Act. 42 U.S.C. § 7543(b)(1). Unless and until California obtains a preemption waiver from EPA, however, it remains unlawful for California to "adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles." *Id.* § 7543(a).

In 1977, Congress again amended the Act and added section 177. *See* Pub. L. No. 95-95, 91 Stat. 685 (1977). That provision permits certain states to "adopt and enforce" emissions standards for new motor vehicles or engines that are "identical to the California standards for which a waiver has been granted." 42 U.S.C. § 7507. Thus, no more than two standards exist nationwide—the federal standard and the California standard—and states may not "create [any] 'third vehicle.'" *Id.* Unless EPA issues a preemption waiver to California, the federal standard exclusively applies nationwide.

**B. CARB's Recent Truck Emissions Standards and the Electric-Vehicle Mandate**

In recent years, CARB has adopted several emissions standards for Heavy-Duty Trucks that became effective in model year 2024: the Advanced Clean Trucks Rule (Clean Trucks), the Omnibus Low Nox Rule (Omnibus), and the Advanced Clean Fleets Rule (Clean Fleets). *See* Compl. in Intervention, Dkt. No. 56, ¶¶ 33-55. Clean Trucks imposes yearly increasing quotas for sales of electric trucks, and Clean Fleets requires the purchase of electric trucks. *Id.* ¶¶ 33-35, 40-42. By 2036, Clean Fleets imposes a 100% electric vehicle requirement for Heavy-Duty Trucks that are produced and delivered for sale in California. Cal. Code Regs. Tit. 13, § 2016(c).

CARB adopted Clean Fleets without obtaining a Clean Air Act preemption waiver from EPA. Compl. in Intervention ¶ 43. CARB requested a waiver from EPA but later withdrew the request. *Id.* EPA has not issued a preemption waiver for Clean Fleets. *Id.*

Clean Fleets was challenged in multiple lawsuits in state and federal court. *Id.* ¶ 44. The California defendants in *Nebraska v. Cliff*, No. 2:24-cv-1364 (E.D. Cal. May 13, 2024), are currently under a court order not to enforce the electric-vehicle mandate unless and until CARB

obtains a Clean Air Act preemption waiver from EPA. *Id.* ¶ 46. CARB has not indicated that it will repeal the electric-vehicle sale requirement. *Id.* ¶ 47.

### C. The Clean Truck Partnership

In July 2023, CARB announced the CTP with certain truck manufacturers. *See* CTP, Dkt. No. 1-2; Compl. in Intervention ¶ 67. The CTP requires that the manufacturers comply with the Clean Fleets electric-vehicle mandate "as it existed on April 28, 2023" (and other recent emissions regulations) even if the regulation is unlawful or California lacks the authority to enforce it. *See* CTP, App'x B at ii ¶ 2 (requiring compliance with "100 percent [electric-vehicle] sales requirement as set forth in Cal. Code Regs title 13, section 2016" (Clean Fleets), D; Compl. in Intervention ¶¶ 67, 70, 74-78.

### D. The United States' Complaint-in-Intervention

On August 22, 2025, the United States filed its Complaint-in-Intervention ("Complaint") against CARB, its executive director Steven S. Cliff, and California Governor Gavin Newsom after the Court granted the motion to intervene. Dkt. Nos. 54, 56. The Complaint asserts two claims: (1) that Clean Trucks, Omnibus, and Clean Fleets are preempted by the Clean Air Act under 42 U.S.C. § 7543(a) and the Supremacy Clause of the United States Constitution; and (2) that the CTP is an unlawful attempt to enforce the preeempted Rules in violation of 42 U.S.C. § 7543(a) and the Supremacy Clause of the United States Constitution. Compl. in Intervention ¶¶ 98-114.

The Complaint alleges that CARB adopted the Clean Fleets electric-vehicle mandate without an EPA preemption waiver, and that the mandate is preempted and therefore unlawful because it does not have the required waiver from EPA. *Id.* ¶¶ 40-43, 106-07. The Complaint also alleges that the CTP requires the truck manufacturers to comply with the electric-vehicle mandate (and other emissions regulations) even though that mandate is unlawful and California lacks the authority to enforce it, and it alleges that the CTP imposes regulatory consequences for failing to comply with the CTP. *See id.* ¶¶ 67, 70, 74-78, 111-14. Thus, the Complaint alleges that the CTP is an unlawful attempt to enforce the electric vehicle mandate. *Id.* ¶¶ 111-14.

Case No. 2:25-cv-02255-DC-AC                                                                                              4

## E. Defendants' Motion to Dismiss

Defendants' motion to dismiss is narrow and requests only that the Court dismiss the United States' challenge to the Clean Fleets electric-vehicle mandate and dismiss Governor Gavin Newsom as a defendant. Defendants' Motion to Dismiss (Mot.), Dkt. No. 77, at 9-11.[2]

## LEGAL STANDARD

Motions to dismiss based on standing challenge a courts subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The Court must presume that the allegations in the complaint are true and construe them in favor of the plaintiff. *Id.* at 1068. General factual allegations are sufficient to survive a standing challenge because courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal citation and quotation omitted).

Constitutional ripeness "is synonymous with the injury-in-fact prong of the standing inquiry." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 57 (9th Cir. 2024). Courts therefore apply the same standard of review to constitutional ripeness as for standing. *See Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022).

## ARGUMENT

**I.    The United States Has Standing for Its Claim that CARB Unlawfully Adopted and Is Attempting to Enforce the Advanced Clean Fleets Rule.**

The United States adequately pleaded in the Complaint claims that CARB violated the Clean Air Act and Supremacy Clause of the United States Constitution by adopting the Clean Fleets electric-vehicle mandate and by attempting to enforce it through the CTP. These allegations adequately plead violations of federal law and therefore allege injury to the United States' sovereign interests sufficient to establish standing.

---

[2] The United States does not oppose dismissal of Governor Newsom as a defendant as to the United States' claims. The United States does not challenge California Executive Order N-27-25. The United States takes no position on the arguments that the Manufacturer Plaintiffs assert in response to Defendants' motion the Manufacturers' claims against the Governor.

### A. The Complaint Plausibly Alleges that CARB Unlawfully Adopted Clean Fleets and Is Illegally Attempting to Enforce the Electric-Vehicle Mandate through the CTP.

CARB's Clean Fleets regulation requires truck manufacturers to produce and deliver for sale in California only electric Heavy-Duty Trucks starting in model year 2036. Cal. Code Regs. Tit. 13, § 2016(c). This electric vehicle mandate, adopted in 2023, is codified in California's regulations and applicable to all covered manufacturers. *Id.* California admits that it adopted the regulation but never obtained a preemption waiver for this regulation. Mot. 3. And the CTP on its face is an attempt to enforce the mandate that California has made clear it intends to implement.

#### 1. CARB Unlawfully Adopted Clean Fleets without a Preemption Waiver.

Courts interpret statutory text according to its "plain meaning." *McNeil v. Gittere*, 150 F.4th 1205, 1208 (9th Cir. 2025). CARB's adoption of Clean Fleets violates the plain text of section 209(a). As that provision states: "No state shall . . . adopt . . . any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines . . . ." 42 U.S.C. § 7543(a). The plain meaning of "adopt" is "to accept formally" or "to endorse and assume official responsibility for." *Adopt*, Webster's Third International Dictionary of the English Language (3d ed. 1967); *see also Adopt,* Merriam-Webster, https://perma.cc/9EDH-GD6R (defining adopt as "to accept and establish (something, such as a law or policy) in a formal or official way"). California therefore may not accept Clean Fleets now. California's adoption of the electric-vehicle mandate is unlawful and that requirement is preempted. *Id.*

Finding it more convenient to beg forgiveness than ask permission, California thinks it can adopt emissions standards without a waiver, so long as the State obtains a waiver before enforcing them. Not so. The Clean Air Act unequivocally provides that no state shall "adopt or attempt to enforce" emissions standards for new motor vehicles. 42 U.S.C. § 7543(a). The use of the disjunctive "or" in section 209(a) means that these prohibitions on adopting and enforcing are independent and discrete from each other unless statutory context demands otherwise. *See Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024). Nothing in section 209 or elsewhere in the Clean Air Act supports an argument that adopting preempted emissions standards becomes unlawful only

if a state attempts to enforce them without a preemption waiver. And where the text is clear the interpretive inquiry ends. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018).

Section 209(b)'s preemption waiver provision supports the plain text of section 209(a). Section 209(b) provides that EPA shall waive section 209(a) preemption for California but only "if the State . . . standards will be, in the aggregate, at least as protective as [EPA's standards]." 42 U.S.C. § 7543(b). Reference to state standards that "*will be* . . . at least as protective" indicates that the standards are not yet adopted. *Id.* (emphasis added). The future tense in section 209(b) is consistent with section 209(a)'s clear prohibition on adopting standards without a waiver.

Beyond the plain text prohibiting California from adopting Clean Fleets before obtaining a waiver, "the structure of the statute as a whole, including its object and policy," show that Clean Fleets was unlawful *ab initio* because it lacks a preemption waiver. *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1168 (9th Cir. 2007). Congress knows how to authorize states to adopt regulations and seek EPA approval later. For the Clean Air Act Title I stationary source program, for example, Congress directed states to "adopt and submit" state implementation plans for EPA review to achieve appliable air quality standards. 42 U.S.C. § 7410(a). The adopt first, seek approval later procedure makes sense for Title I's cooperative federalism model where the states are charged with the responsibility to implement, maintain, and enforce federal air quality standards. *Ohio v. EPA*, 603 U.S. 279, 283 (2024).

In contrast, the Title II prohibition on adopting new motor vehicle emissions standards without an EPA preemption waiver reflects Congress's choice of uniformity absent a preemption waiver. 42 U.S.C. § 7543(a)-(b); *Motor Vehicle Mfrs.*, 17 F.3d at 526. For a program that requires national uniformity absent a waiver, it makes sense for California to seek a waiver before formally adopting emission standards. And Congress's policy choice is mirrored in section 209(a)'s clear text requiring an EPA waiver before California can adopt new motor vehicle emissions standards. 42 U.S.C. § 7543(a)-(b).

As to policy, Congress recognized that automotive markets require sufficient lead time to adjust to changes in heavy-duty emissions standards for purposes of stability. *See, e.g.*, 42 U.S.C. § 7521(a)(1)(C) (requiring four-year lead time). The fundamental restructuring of our heavy-duty

trucking industry to achieve the electric-vehicle mandate that Clean Fleets seeks would require considerable lead time. *See* Manufacturer Plaintiffs' Opposition to Defendants' Motion to Dismiss Daimler Truck North America et al.'s Complaint. (Mfrs.' Opp.) at 23-24 (explaining that the manufacturers must take steps now to achieve the electric-vehicle mandate within a decade). Congress's express prohibition on adopt first, waiver later in section 209(a) is consistent with this policy of promoting market stability in the automotive industry.

Decisions that have upheld the adopt first, waiver later procedure cannot be squared with the text and structure of section 209. *Central Valley Chrysler-Jeep v. Goldstene* mistakenly concluded that section 209(b)'s reference to "any state which has adopted standards" allowed adoption before waiver. 563 F. Supp. 2d 1158, 1163 (E.D. Cal. 2008). But the reference to "any State which has adopted standards" identifies which states can seek a waiver—namely California, which is the only state that "had adopted standards" as of March 30, 1966. 42 U.S.C. § 7543(b). It does not speak to the standards that such a state may adopt after section 209(a)'s enactment.

The Second Circuit's decision in *Motor Vehicle Manufactures Association of U.S., Inc. v. New York State Department of Environmental Conservation* 17 F.3d 521, 534 (2d Cir. 1994), is equally flawed. That court upheld New York's adoption of California's emissions standards before California obtained a preemption waiver on the theory that "waiver is a precondition to enforcement" rather than adoption and that "California's waiver applications are almost always approved." *Id.* Finding that the waiver is a limitation only on enforcement is contrary to the clear text and structure of section 209. And it simply is not true that California "almost always" gets waivers for its new motor vehicle emissions standards. Indeed, EPA denied the very first greenhouse gas-related waiver California requested, and EPA later rescinded such a waiver granted by an intervening administration. *See Diamond Alternative Energy*, 145 S. Ct. at 2130-31. Congress itself recently disapproved California's preemption waivers for Clean Trucks and Omnibus. *See* Pub. L. No. 119-15, 139 Stat. 65 (Clean Trucks); Pub. L. No. 119-17, 139 Stat. 67 (Omnibus).

In the past, EPA has allowed California to adopt new motor vehicle emissions standards and then seek a waiver later. *See* 88 Fed. Reg. 20688 (Apr. 6, 2023). But after *Loper Bright Enterprises v. Raimondo*, what matters is the best interpretation of the statute, not what EPA has

done (or said) before. 603 U.S. 369, 412-13 (2024). The best interpretation of section 209 is what its plain text requires: California may not adopt new motor vehicle emissions standards without obtaining an EPA preemption waiver first. 42 U.S.C. § 7543(a).

### 2. The CTP Is an Unlawful Attempt to Enforce the Electric-Vehicle Mandate.

Even it were permissible for California to adopt preempted regulations and then seek a waiver, Defendants are also unlawfully attempting to enforce the electric-vehicle mandate through the CTP. The CTP requires that the manufacturers comply with the electric-vehicle mandate "as it existed on April 28, 2023" regardless of whether it is lawful or California lacks the authority to enforce it. CTP, App'x B, D.

Defendants have made clear in this litigation CARB's refusal to disavow the CTP. Defendants' Opposition to Preliminary Injunction, Dkt. No. 73, at 13-14. And CARB continues to certify vehicles under the terms of the CTP. Manufacturers Advisory Correspondence ECCD-2025-08, Dkt. No. 73-32, at 2. That is exactly what the United States' Complaint alleges: California is attempting to enforce through the CTP its preempted regulations, including the electric-vehicle mandate. *See* Compl. in Intervention ¶¶ 69-79, 110-114. Attempting to enforce the mandate without a preemption waiver is unlawful. 42 U.S.C. § 7543(a).

### B. The United States Is Suffering Ongoing Injury to Its Sovereign Interests.

The United States has standing to seek a remedy for the violations of federal law pleaded in the Complaint, and those claims are ripe. The United States is suffering ongoing irreparable injury to its sovereignty because, by "adopting" emissions standards in violation of the Clean Air Act, California has usurped exclusive federal authority to adopt new motor vehicle emissions standards absent an EPA preemption waiver.

As the Supreme Court has explained: "It is beyond doubt" that a complaint "asserts an injury to the United States" if it alleges an "injury to its sovereignty arising from violation of its laws." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). "When state governments enact laws that impugn the United States' sovereignty, a personal injury to the United States arises." *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 527 (W.D. Tex. 2022).

"Undoubtedly, the United States suffers a concrete harm to its sovereignty when its laws are violated" by a state. *Id.*

Courts have repeatedly and uniformly applied this principle to hold that "the United States' sovereign interests are harmed when its laws are violated." *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022); *see also, e.g.*, *Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1326 (Fed. Cir. 2010) ("From the government's perspective, a harm arises from an 'injury to its sovereignty arising from violation of its laws.'" (quoting *Vt. Agency of Nat. Res.*, 529 U.S. at 771)); *United States v. California*, 2020 WL 8183945, at *3 (E.D. Cal. Feb. 26, 2020) ("The United States has plausibly alleged its claimed injury—the usurpation of federal authority to conduct foreign affairs."); *N.Y. by James v. Pa. Higher Educ. Assistance Agency*, No. 19-9155, 2020 WL 2097640, at *11 (S.D.N.Y. May 1, 2020) ("[A] sovereign is injured by a violation of its law"); *Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 192 (D. Conn. 2017) (The United States suffers an "injury to its sovereignty . . . from violation of its laws.").

When the violation of federal law at issue is a constitutional infringement, courts summarily conclude that a plaintiff is injured in the context of a preliminary injunction. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 366-67 (1989) (noting that injury may be established "by a showing that the challenged state statute is flagrantly and patently violative of" the Supremacy Clause); *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (finding irreparable harm from only the "alleged constitutional infringement" because "the interest of preserving the Supremacy Clause is paramount"), *aff'd in part, rev'd on other grounds,* 567 U.S. 387 (2012); *United States v. Texas*, 557 F. Supp. 3d 810, 821 (W.D. Tex. 2021) ("Because the United States has established a likelihood that the [state law] violates the Supremacy Clause, irreparable harm is presumed."); *Nat'l Collegiate Athletic Ass'n v. Christie*, 926 F. Supp. 2d 551, 578 (D.N.J. 2013) (A "violation of the Supremacy Clause, alone, likely constitutes an irreparable harm."), *reversed on other grounds Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018).

Defendants attempt to sidestep the sovereign injury to the United States by insisting that CARB has stipulated not to enforce the electric-vehicle mandate unless it receives a waiver from

EPA. Mot. 9-11. But CARB's violation of the Clean Air Act in adopting the mandate injures the United States independent of enforcement. Section 209(a) prohibits the *adoption* of new motor vehicle emissions standards. 42 U.S.C. § 7543(a). The United States' allegations that CARB violated the Clean Air Act in *adopting* the electric-vehicle mandate without a preemption waiver plead an injury to the United States' sovereign interests sufficient for standing. *See, e.g.*, *Vt. Agency of Nat. Res.*, 529 U.S. at 771. Indeed, as the enforcer of all federal laws—civil and criminal—the United States has sovereign-interest standing to enforce all violations of federal law in federal court.

Moreover, and as the Complaint alleges, Defendants also are unlawfully attempting to enforce the electric-vehicle mandate through the CTP. *See supra* 9. These allegations plead a violation of federal law, 42 U.S.C. § 7543(a), and thus plead an injury to the United States' sovereign interests sufficient for standing.

Relatedly, as the Manufacturer Plaintiffs explain, Defendants' adoption and enforcement of the electric-vehicle mandate through CTP requires the manufacturers to act now to meet the electric-vehicle mandate by 2036. Mfrs.' Opp. at 24. This, in effect, defeats Congress's choice for federal standards absent a waiver for new motor vehicle emissions and intrudes on exclusive federal authority to regulate. 42 U.S.C. §§ 7521(a), 7543(a)-(b). That is an obvious harm to the United States, *Arizona*, 641 F.3d at 366, which is alleged in the Complaint, Compl. in Intervention ¶ 6.

Defendants' reliance on *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128 (9th Cir. 2024), for the proposition that the mere existence of a regulation is insufficient to establish standing, is misplaced. Mot. 10. That case did not involve the United States and analyzed standing in the context of the likelihood of a future individualized injury; namely, the probability of a future unannounced regulatory inspection. *Id.* at 1142. Here, the injury to the United States is based on Defendants' violation of federal law by adopting the electric-vehicle mandate and by attempting to enforce the mandate through the CTP. *See supra* 6-9. Those injuries are ongoing, not possible future injuries. The Supreme Court has made clear that allegations of violations of federal law plead injury to the United States' sovereign interests sufficient to establish standing. *See Vt. Agency of Nat. Res.*, 529 U.S. at 771.

And because the United States' injury to its sovereign interests is definite and concrete, the United States' challenge to Clean Fleets is also constitutionally ripe. *Stavrianoudakis*, 108 F.4th at 1139. Defendants' violations of federal law in adopting the electric-vehicle mandate without a preemption waiver and its unlawful attempt to enforce the mandate through the CTP are injuring the United States' sovereign interests right now. This is not hypothetical or abstract. These claims are ripe. *Id.*

## CONCLUSION

Defendants' Motion to Dismiss the United States' challenge to the Advanced Clean Fleets Rule should be denied.

Respectfully submitted,
ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

Dated: October 24, 2025

/s/ David Mitchell
ROBERT N. STANDER
*Deputy Assistant Attorney General*

ERIC GRANT
*United States Attorney*
EDWARD A. OLSEN
*Assistant United States Attorney*

JOHN K. ADAMS
DAVID D. MITCHELL
United States Department of Justice
Environment & Natural Resources Div.

*Counsel for Intervenors-Plaintiffs*