GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:     650.849.5395
Facsimile:     640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     415.393.8293
Facsimile:     415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone:     202.955.8500
Facsimile:     202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

(additional counsel on signature pages)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,

        Plaintiffs,

        v.

CALIFORNIA AIR RESOURCES BOARD; STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,

        Defendants,

        v.

THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

        Plaintiffs-Intervenors.

Case No. 2:25-cv-02255-DC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS DAIMLER TRUCK NORTH AMERICA ET AL.'S COMPLAINT**

Date:          November 21, 2025
Time:          1:30 PM
Courtroom:   8, 13th Floor
Judge:       Hon. Dena Coggins
Action Filed:  August 11, 2025

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT .................................................................................................................. 5

   I.   Counts III And IV State Justiciable Claims Challenging The CTP. ............................ 5

     A.   Count III Adequately Pleads That The CTP Is Preempted. ..................................... 5

     B.   Plaintiffs Have Standing To Assert Claims Based On The CTP. ............................ 8

   II.   Counts II and IV State Viable Claims Against The May MAC. ............................... 14

     A.   Plaintiffs' Challenges To The May MAC Are Not Moot. .................................... 14

     B.   Count II Adequately Pleads That The May MAC Is Preempted. ......................... 15

     C.   Count IV Adequately Pleads That The May MAC Violates The First Amendment. .......... 15

   III.   Counts II And IV State Viable Claims Against the EO. ........................................... 16

     A.   Plaintiffs' Challenges To The EO Are Ripe. ....................................................... 16

     B.   Count II Adequately Pleads That The EO Is Preempted. ..................................... 17

     C.   Count IV Adequately Pleads That The EO Violates the First Amendment. ......... 18

   IV.   Defendant Newsom Is Not Immune From Suit For The Federal Law Claims. ......... 19

     A.   Defendant Newsom Is Not Immune from Suit. .................................................... 19

   V.   Plaintiffs Face Imminent Injury From The 2036 Sales Requirement. ..................... 22

CONCLUSION .............................................................................................................. 25

i

**TABLE OF AUTHORITIES**

**Cases**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) ............................................................ 24

*Airlines for Am. v. City and Cnty. of San Francisco*, 78 F.4th 1146 (9th Cir. 2023) ...................... 6, 7

*Allied Artists Pictures Corp. v. Rhodes*, 473 F. Supp. 560 (S.D. Ohio 1979) ................................... 20

*Am. Encore v. Fontes*, 152 F.4th 1097 (9th Cir. 2025) ........................................................ 11, 12, 13

*Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022) ...................................................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 5

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013).......... 20

*Ass'n of Int'l Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1 (1st Cir. 2000)............... 6

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) .............................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 5

*Bhd. of Locomotive Eng'rs & Trainmen, a Div. of Rail Conf.-Int'l Bhd. of Teamsters v. Surface Transp. Bd.*, 457 F.3d 24 (D.C. Cir. 2006) ........................................................................ 13

*Biden v. Nebraska*, 600 U.S. 477 (2023)................................................................................ 11

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) ........................................... 5

*Brach v. Newsom*, 38 F.4th 6(9th Cir. 2022) ......................................................................... 15

*Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021) .............................................. 9, 10

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 563 F. Supp. 2d 1158 (E.D. Cal. 2008) ................ 24

*Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*, 2007 WL 135688 (E.D. Cal. Jan. 16, 2007).......... 16

*City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018) .................................... 17

*Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017)...................................... 16

*Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390 (9th Cir. 1991).............................. 13

*Diamond Alt. Energy v. EPA*, 606 U.S. ___, 145 S. Ct 2121 (2025)........................................... 8

*Dietz v. Comcast Corp.*, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006)...................................... 11

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031 (9th Cir. 2007)................ 18

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004)............................ 15

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................... 19, 22

*FBI v. Fikre*, 601 U.S. 234 (2024) ................................................................................... 14

*Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846 (9th Cir. 1999) ............................... 2

*Friends of the Eel River v. N. Coast R.R. Auth.*, 3 Cal. 5th 677 (2017)................................ 7

*Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583 (1926) .............................................. 8

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015)........................................................ 9

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295 (D. Vt. 2007). ... 24

*Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844 (9th Cir. 2017) ................................. 2

*Jeong v. Nexo Fin. LLC*, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ............................... 13

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ............................ 5, 19

*Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) .................................. 8

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ......................................................... 5

*Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992) .................................... 20

*LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000)........................................................ 10

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ....................................................... 4

*Makaryan v. Volkswagen Grp. Of Am., Inc.*, 2017 WL 6888254 (C.D. Cal. Oct. 13, 2007).............. 13

*MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007) ............................................. 24

*Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014) ........................................................ 13

*Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152 (2d Cir. 2010)............................ 17

*Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83 (S.D.N.Y. 2009).............. 17, 18

*NAACP v. California*, 511 F. Supp. 1244 (E.D. Cal. 1981).............................................. 20

*NAACP v. California*, 711 F.2d 121 (9th Cir. 1983) ...................................................... 20

*Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175 (2024)............................................................ 15

*Palsgaard v. Christian*, 2025 WL 318716 (E.D. Cal. Jan. 28, 2025) ................................. 9

*Peace Ranch, LLC v. Bonta*, 93 F.4th 482 (9th Cir. 2024) ............................................. 11

*Platinum Sports Ltd. v. Snyder*, 715 F.3d 615 (6th Cir. 2013) ....................................... 24

*Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017) ............................................................ 24

iii

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ................................................................ 22

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47 (2006) ............................ 11

*Savage v. Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036 (9th Cir. 2003) ........... 4

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128 (9th Cir. 2024) ................ 24

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................. 8, 12

*Twitter Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022) ............................... 12, 13, 16, 22

*United States v. King Cnty.*, 122 F.4th 740 (9th Cir. 2024) ............................................ 16

*Valenzuela v. Ducey*, 329 F. Supp. 3d 982 (D. Ariz. 2018) ............................................. 21

*W. States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056 (E.D. Cal. 2019) .................... 4

*Walsh v. Nevada*, 471 F.3d 1033 (9th Cir. 2006) ........................................................... 11

*Washington v. Trump*, 766 F. Supp. 3d 1138 (W.D. Wash. 2025) .................................. 16

*WildEarth Guardians v. Montana Snowmobile Association*, 790 F.3d 920 (9th Cir. 2015) .............. 16

*Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282 (1986) .................... 18

## Statutes

42 U.S.C. § 7410 ............................................................................................................ 22

42 U.S.C. § 7543 ....................................................................................................... 1, 5, 22

Cal. Health & Safety Code § 39510 .............................................................................. 21

Cal. Health & Safety Code § 39511 .............................................................................. 21

Cal. Health & Safety Code § 43151 .............................................................................. 10

Cal. Health & Safety Code § 43152 .............................................................................. 10

Cal. Health & Safety Code § 43153 .............................................................................. 10

Cal. Health & Safety Code § 43154 .............................................................................. 15

## Regulations

Cal. Code Regs. tit. 13, § 1963.6 ................................................................................. 24

Cal. Code Regs. tit. 13, § 2016 ..................................................................................... 22

**Other Authorities**

CARB, Drive Forward Light-Duty Vehicle Program (October 21, 2025) ........................................ 20

CARB, Press Release, California moves forward on public health and clean vehicles as federal
    agencies move backwards (Aug. 19, 2025) ............................................................. 19, 25

CARB, Public Hearing to Consider the Proposed Advanced Clean Fleets Regulation, Staff Report:
    Initial Statement of Reasons, (Aug. 30, 2022) ................................................................. 27

Oral Argument Transcript, *Diamond Alternative Energy LLC v. EPA,* No. 24-7 (Apr. 23, 2025) ..... 28

**INTRODUCTION**

Plaintiffs filed this lawsuit to challenge Defendants' ongoing violation of the federal Clean Air Act, which bars States from adopting, enforcing, or attempting to enforce emissions standards for new heavy-duty vehicles and engines without a waiver of federal preemption. 42 U.S.C. § 7543. Defendants move to dismiss discrete claims against two of the three named defendants, but their Motion does not request dismissal of Count I—Plaintiffs' core claim that California's emissions standards are federally preempted. Nor do they dispute that Defendant Cliff, the Executive Officer of the California Air Resources Board ("CARB"), is a proper defendant, or that the Court has the power to order him to comply with federal law. As a result, the Court can and should promptly grant the relief sought by the Complaint and the pending motion for a preliminary injunction and immediately enjoin Defendants from attempting to enforce compliance with their preempted state emissions standards.

As to the claims subject to Defendants' Motion, the Complaint—drawn from Defendants' own public-record documents—establishes that Defendants are attempting to enforce those same preempted state standards through Executive Orders, Manufacturers Advisory Correspondence ("MAC"), the Clean Truck Partnership ("CTP"), and, since the Complaint was filed, an Emergency Rulemaking. Each of these actions mandates that Plaintiffs conform their conduct to California's preempted standards if Plaintiffs want to sell heavy-duty trucks and engines in the State. Some of these state actions mandate that outcome explicitly, such as the CTP, which seeks to require Plaintiffs to continue to comply with the preempted standards. Others, such as CARB's recent Emergency Rulemaking, do so by threatening punitive, and retroactive, consequences for any Original Equipment Manufacturer ("OEM") that does not certify to the preempted standards if California succeeds in overturning the federal laws revoking California's preemption waivers. Through all these actions, Defendants seek to coerce industry into compliance with its preempted rules.

Defendants' Motion does not raise any serious dispute as to these assertions. Instead, it attempts to manufacture ripeness and justiciability concerns where none exist. Defendants' repeated and credible threats of enforcement against any entity that does not comply with the preempted emissions standards are causing significant business harm to Plaintiffs today. Plaintiffs need to know now whether they can lawfully sell trucks in California without certifying to or complying with the preempted standards. The

1

allegations in the Complaint thus allege imminent, concrete, and particularized harms that satisfy Article III and state valid claims. Accordingly, the Court should deny Defendants' Motion.[1]

## BACKGROUND

The Clean Air Act authorizes the Environmental Protection Agency ("EPA") to regulate emissions standards for heavy-duty vehicles and engines. Compl. ¶¶ 2, 29. To ensure uniform national standards, the Clean Air Act explicitly preempts states from enacting their own emissions standards. *Id.* ¶¶ 2, 31, 88. One state, California, may request a waiver of preemption to issue its own emissions standards in certain circumstances, and other states may opt into California's standards. *Id.* ¶¶ 2, 32.

From 2021 to 2023, CARB promulgated a series of regulations that "created an unstable and untenable landscape for manufacturers of heavy-duty trucks and engines," including Plaintiffs. *Id.* ¶¶ 4–5. Those regulations include Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Fleets. *Id.* ¶¶ 35–36. To address the uncertainty created by CARB's new regulations, OEMs petitioned CARB for relief. "The result, in July 2023, was the [CTP], in which CARB outlined a plan to undertake regulatory changes sought by industry—specifically, that CARB would harmonize federal and California tailpipe emissions standards with agreed-upon regulatory amendments and provide sufficient lead time for future regulations. As conditions for this relief, CARB extracted new concessions from the manufacturers, including that the manufacturers would comply with CARB's emissions standards 'irrespective of the outcome of any litigation challenging' them or CARB's authority to implement those standards." *Id.* ¶¶ 6, 41–43 (quoting CTP).

Between 2023 and January 2025, EPA issued preemption waivers for Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II. *Id.* ¶¶ 7, 35. In May 2025, however, Congress passed joint resolutions disapproving those waivers ("CRA Resolutions"), and on June 12, 2025, the President

---

[1] Plaintiffs acknowledge that sovereign immunity prevents this Court from adjudicating their state law claims (Counts V, VI, and VII) and respectfully ask the Court to dismiss those claims *without prejudice* to re-file in another forum. *See Hampton v. Pac. Inv. Mgmt. Co. LLC,* 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice…."); *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (explaining that dismissals for lack of jurisdiction "should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.") (internal citations omitted). Plaintiffs sought a stipulated resolution of that issue, but were unsuccessful. Defendants' request for dismissal with prejudice should be denied.

signed those resolutions into law. *Id.* ¶ 7. For other CARB emissions standards applicable to heavy-duty trucks and engines, CARB has never sought an EPA waiver of federal preemption. *Id.* ¶ 36. As a result, federal law now prohibits California from adopting, enforcing, or attempting to enforce any of those standards. *Id.* ¶¶ 35–36. And, on August 7, 2025, DOJ issued a letter ordering Plaintiffs to cease compliance with the CTP "and its preempted state vehicle emission regulations." *Id.* ¶ 7 & Ex. B.

Nevertheless, CARB and Governor Newsom have continued to enforce and attempt to enforce CARB's preempted standards. *Id.* ¶ 9. In the May 23, 2025 MAC, CARB stated that manufacturers must continue to follow CARB's preempted standards, including the certification requirement, to ensure "lawful" sales of vehicles and engines in California. *Id.* ¶¶ 9, 61. On June 13, 2025, Governor Newsom issued Executive Order N-27-25 ("EO"), instructing CARB "to continue implementing the [CTP] and threatening unfavorable regulatory treatment, as well as exclusion from government purchase and incentive programs, for [OEMs] who dispute the validity of the [CTP] or do not comply with the preempted standards." *Id.* ¶¶ 9, 28, 63, 69; Dkt. 23-17. The EO thus "purports to adopt and enforce California's state emissions regulatory regime in direct conflict with federal law." *Id.* ¶ 64.

Then, on August 25, 2025, CARB issued a new MAC that purported to "supersede" the May MAC by offering three alternative "pathways" for OEMs to receive certifications from CARB during the "unprecedented uncertainty" facing the heavy-duty vehicle and engine market (the "August MAC"). Dkt. 79-2 at 2–3. The so-called "pathways" include (1) applying for CARB certification under preempted regulations that preceded the regulations subject to the CRA Resolutions; (2) applying for CARB certification using federal certifications; or (3) applying for CARB certification pursuant to the regulations subject to the CRA Resolutions and/or the CTP. *Id.* at 3–4. Notwithstanding the fact that California has no certification authority for heavy-duty vehicles and engines in model year 2026, *see* Compl. ¶¶ 12–13, 74–78, and CARB's offer to certify to standards other than those preempted by the CRA Resolutions, in the August MAC CARB threatened that OEMs can only "have confidence" that they will be "in compliance with their obligations" to CARB under the preempted regulations or the CTP by seeking certification to CARB's preempted standards. Dkt. 79-2 at 3–4. Finally, on September 15, 2025, CARB commenced an Emergency Rulemaking attempting to insert new emissions standards into the California Code of Regulations without a preemption waiver. Dkt. 79-3. Among other things,

the Emergency Rulemaking attempts to codify new language threatening retroactive enforcement into California law. *See id.* at 6 (OEMs "assume the risk if they choose to certify only to the antecedent provisions"). The new emissions standards in the Emergency Rulemaking also lack a Clean Air Act waiver and therefore are preempted. *See* Dkt. 75 at 6–7.

Defendants are using the CTP, the May MAC, the EO, the August MAC, and the Emergency Rulemaking to coerce industry into seeking California certification in contravention of the Clean Air Act and "to compel an entire industry to follow California emissions standards that are now in conflict with federal law, and which have been expressly preempted by federal law." Compl. ¶ 9. Defendants are irreparably harming Plaintiffs through these regulatory actions. *Id.* ¶ 13. "[P]roduct development in the heavy-duty truck and engine [industry] requires long lead times[,]" *id.* ¶ 39, and Plaintiffs urgently need regulatory clarity "[t]o adequately plan product production and allocation[.]" *Id.* ¶¶ 13, 67. "Citing the CTP, California contends that OEMs must obtain [CARB] certification to have lawful vehicle sales in California[,]" while at the same time "[t]he federal government contends that the regulatory bases for such a California certification are fully preempted by federal law and invalid." *Id.* ¶ 13; *see also id.* ¶¶ 67–68. OEMs are thus caught in the crossfire, without certainty as to which regulatory regime applies to their present and future truck sales in California. Plaintiffs seek clarification of the law and declaratory and injunctive relief. *Id.* ¶ 16.

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must defer to the plaintiff's factual allegations and "presume[ ] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). In a facial challenge, a Rule 12(b)(1) motion will succeed "only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction." *W. States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056, 1064 (E.D. Cal. 2019) (citing *Savage v. Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003)). When a 12(b)(1) motion is predicated on extrinsic evidence challenging the truth of the otherwise sufficient factual allegations, "the court 'must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] is intertwined with an element of the merits of the plaintiff's claim.'" *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144

(9th Cir. 2024) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014)).

A complaint survives a Rule 12(b)(6) motion to dismiss where it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All reasonable inferences must be drawn in plaintiffs' favor, and "'a district court may not consider material beyond the pleadings.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 988, 1003 (9th Cir. 2018).

## ARGUMENT

Defendants have not moved to dismiss Count I, which alleges that Defendants' emissions standards are federally preempted. The Court should deny Defendants' arguments for dismissal regarding Counts II, III, and IV. The Complaint adequately alleges that Plaintiffs have standing to challenge the CTP, Governor Newsom's EO, and the May MAC, and have stated a plausible claim that all three are both federally preempted and violate the First Amendment. Governor Newsom is a proper defendant because he issued the EO being challenged and is directly responsible for harm to Plaintiffs. And Plaintiffs have standing to challenge California's complete ban on the sale of internal-combustion trucks because it is causing present and ongoing harm to Plaintiffs.

### I.    Counts III And IV State Justiciable Claims Challenging The CTP.

Defendants argue that Plaintiffs fail to state a claim that the CTP is preempted by the Clean Air Act (Count III) and that Plaintiffs lack standing for both Count III and their claim that the CTP imposes unacceptable restrictions on protected speech (Count IV). All these arguments fail.

### A.    Count III Adequately Pleads That The CTP Is Preempted.

The CTP violates Section 209 of the Clean Air Act, which prohibits any state from "adopt[ing] or attempt[ing] to enforce…any standard relating to the control of emissions" from a new motor vehicle or engine. Compl. ¶ 88; 42 U.S.C. § 7543(a). The CTP impermissibly both adopts California's preempted emissions standards and also attempts to enforce those standards. Defs.' Mot. to Dismiss (Dkt. 78) ("Mot.") 16–17.

*First*, the CTP adopts emissions standards because it "readopt[s] and implement[s]" CARB's Advanced Clean Trucks and Omnibus Low NOx standards, as well as the Advanced Clean Fleets 100% zero-emission vehicle ("ZEV") mandate, "in the event of litigation outcomes adverse to CARB."

5

Compl. ¶ 89; *see also id*. ¶ 42. Under the CTP's own terms, the CTP is a "backstop regulatory mechanism for CARB to implement" its emissions regulations. *Id*.; *see* Dkt. 1-2 ¶ 2 (requiring the OEMs "to meet, in California, the relevant provisions of the CARB regulations set forth in [the CTP] . . . irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations"); *id*. at App. B at 1. Defendants' argument that the only standards referenced in the CTP "are ones CARB formally adopted well before the CTP was signed" misses the point. Mot. 16. The CTP itself adopts the regulations by mandating that manufacturers comply regardless of the "outcome of any litigation challenging the waivers or authorizations for those regulations," Dkt. 1-2 ¶ 2. This is evidenced by Defendants' efforts to enforce the CTP notwithstanding that the CRA Resolutions preempted the underlying regulations.

*Second*, the CTP is an attempt to enforce emissions standards and is materially different than the voluntary agreements discussed in *Association of International Manufacturers, Inc. v. Commissioner, Massachusetts Department of Environmental Protection*, 208 F.3d 1 (1st Cir. 2000) ("*AIAM*"). In that case, the First Circuit held that Massachusetts could not adopt standards included in memoranda of agreement ("MOA") between California and certain OEMs because the MOA's requirements were not "emissions standards" under the Clean Air Act. *AIAM,* 208 F.3d at 7–8. The court did not even consider when a purported agreement could constitute an "attempt to enforce" a preempted regulation. And, unlike the CTP, the MOA in *AIAM* did not attempt to enforce preempted regulations; rather, in the MOA, OEMs agreed to develop ZEV technology in exchange for state infrastructure support. *Id.* at 3. Moreover, the requirements at issue in *AIAM* were provided *solely* in the MOA, "rather than legislation or formal administrative regulations." *Id.* at 7. Here, by contrast, the CTP directs compliance with formal (and now preempted) state regulations. Thus, Defendants' assertion that "[e]nforcement of a voluntary agreement is not enforcement of any emission standard," Mot. 17, ignores the fact that the CTP itself incorporates certain emissions regulations, meaning that enforcement of the CTP *would* constitute enforcement of the standards incorporated therein.[2]

---

[2] Defendants point to Plaintiffs' statements approving of the CTP as evidence that it is purely a consensual agreement, but OEMs' "willingness to abide" by CTP's terms "in the past does not mean that they are not coercive or that [Plaintiffs] cannot challenge them now." *Airlines for Am.*, 78 F.4th at 1154.

As Defendants concede, contracts with the government may be preempted when such contracts are "enforceable in ways only available to governmental actors." Mot. 17. In *Airlines for America v. City and County of San Francisco*, a case cited by Defendants, the Ninth Circuit held that contracts between San Francisco and airlines operating at the San Francisco airport were not voluntary agreements because, unlike any other market participant, the City was exercising regulatory authority through the contracts. 78 F.4th 1146, 1153–54 (9th Cir. 2023). That is precisely the case here. The CTP attempts to enforce the regulatory regime set forth in Advanced Clean Trucks, Omnibus Low NOx, and the 100% ZEV mandate in Advanced Clean Fleets. Compl. ¶¶ 42, Dkt. 1-2 ¶ 2. Likewise, the CTP requires CARB to undertake governmental actions such as "initiat[ing] rulemaking actions," preparing MACs, and amending regulations. *See* Dkt. 1-2, ¶ 1, App. A at ii, App. B at i, ii.  No market participant could enforce a regulatory regime through a voluntary contract; only the State exercising regulatory authority could do so. *See Airlines for Am.*, 78 F.4th at 1154 (holding that City was not acting as a market participant where "'a private actor would be unable, even by contract, to create and implement a system of *government* proceedings'") (quoting *Friends of the Eel River v. N. Coast R.R. Auth.*, 3 Cal. 5th 677, 735 (2017)).

This is made clear by the CTP's incorporation of regulations that are subject to penalties for noncompliance, like the contracts found to be exercises of regulatory authority in *Airlines for America*. *See* 78 F.4th at 1148, 1154. The CTP requires Plaintiffs to "commit to meet, in California, the relevant provisions of the CARB regulations set forth [therein]," indicating that non-compliance would be subject to the enforcement provisions *of those regulations*. Dkt. 1-2 ¶ 2; *see also id.* App. A n.1 ("All sales volume above 1 percent more than the threshold…would be considered as non-compliant sales."), n.2 (similar). This also distinguishes the CTP from the MOA in *AIAM*, which contained "contractual remedies in the event of nonperformance." 208 F.3d at 8. By contrast, the CTP neither contemplates nor includes contract-based remedies. And far from disclaiming enforcement of regulatory penalties for claimed CTP violations, Defendants have instead said in the August MAC—a document of which Defendants ask this Court to take judicial notice—that the only way for OEMs to "have confidence" that they will be "in compliance with their obligations" to CARB is seeking certification (a means of enforcement only available to government actors) according to currently preempted rules or "on the terms

provided for in [the CTP]." Dkt. 79-2 at 2. This is a false choice because "the terms provided for" in the CTP require compliance *with those same preempted rules*. Should an OEM not adhere to the preempted rules, this would also constitute failing to abide by "the terms provided for in [the CTP]." And in that scenario, CARB threatens retroactive enforcement based on Plaintiffs' conduct today and in the near future. *Id.*

States cannot use a contract to compel action "that the government could not have [otherwise] constitutionally ordered the person" to take. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013). "It would be a palpable incongruity to strike down an act" that directly compels compliance with a preempted law, while "uphold[ing] an act by which the same result is accomplished under the guise of a surrender of a right in exchange for a valuable privilege[.]" *Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583, 593 (1926). Allowing CARB to adopt and attempt to enforce a preempted emissions regulation regime through the CTP, when CARB could not lawfully do so directly because those very same regulations are preempted, would be a "palpable incongruity" and a violation of the Supremacy Clause. *See id.*

**B. Plaintiffs Have Standing To Assert Claims Based On The CTP.**

Defendants' argument that Plaintiffs lack standing to bring a claim to determine the validity of the CTP, an agreement to which Plaintiffs are parties, makes no sense. Defendants are threatening to impose substantial fines through enforcement actions, remove government contracting preferences, restrict government purchases of Plaintiffs' vehicles, and apply unfavorable regulatory treatment if Plaintiffs do not comply with the CTP and the preempted rules incorporated therein. Defendants' argument also contradicts recent Supreme Court precedent directing courts to use a commonsense approach towards standing and redressability when evaluating standing for Clean Air Act preemption claims. *Diamond Alt. Energy v. EPA*, 606 U.S. ___, 145 S. Ct. 2121, 2136–38 (2025).

"To establish Article III standing, a plaintiff must show (1) 'an injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014). In a challenge to governmental regulatory actions *before* they are enforced, a plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation

8

or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). The Ninth Circuit has identified three elements to evaluate "'the genuineness of a claimed threat of prosecution': '[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute.'" *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 652 (9th Cir. 2021) (internal citations omitted). These same standards apply to pre-enforcement challenges to contracts with governmental actors. *Palsgaard v. Christian*, 2025 WL 318716, at *9 (E.D. Cal. Jan. 28, 2025). While Defendants never mention these standards, Plaintiffs meet them for each of their claims.

**1. Plaintiffs Have Standing to Challenge the CTP on Preemption Grounds:** Defendants first argue that Plaintiffs' statements in letters to the Federal Trade Commission that they will not comply with the CTP prove that Plaintiffs lack standing. Mot. 15-16. But Defendants have this issue entirely backwards: Plaintiffs' disavowal of the CTP *demonstrates* their standing in this pre-enforcement case. *California Trucking Ass'n*, 996 F.3d at 652 (finding plaintiffs had standing because they "demonstrated that their policies presently conflict with the challenged provision"); *Palsgaard*, 2025 WL 318716, at *9 ("Plaintiffs must allege that their intended conduct is arguably proscribed by the challenged provisions of the Faculty Contract."). Plaintiffs' letters prove their intention *not* to conform their conduct to the challenged governmental action, which grants, not denies, Plaintiffs standing to bring this claim.[3]

Defendants also ignore their own threats to enforce the CTP. *Cal. Trucking Ass'n*, 996 F.3d at 652 (threat to enforce sufficient for pre-enforcement standing). Here, Defendants have "repeatedly asserted that [they] will use the Clean Truck Partnership [] to compel the industry to comply with now-preempted California emissions standards over federal law." Compl. ¶ 54. In the EO, Governor Newsom directed CARB to maintain lists of OEMs that certify to CARB's preempted emissions standards

---

[3] Defendants' argument that Plaintiffs cannot use a preemption claim to "be free of any contractual consequences for their decision to disavow their CTP commitments," Mot. 16 n.12, falls flat. Plaintiffs' requested relief here—declaratory and injunctive relief against enforcement of the CTP—is tied to their claim that the CTP is preempted by the Clean Air Act. *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) is irrelevant. That case involved a "mismatch" between plaintiff's copyright claim and her alleged irreparable harm, the latter of which related to risk of death and emotional distress from a fatwa issued against her, not to her legal interests as an author. *Id.* at 744.

as required "as part of any agreements between" OEMs and CARB, and OEMs that are noncompliant with such agreements are subject to unfavorable regulatory treatment and de-prioritization for government contracts and incentive funding. *Id.* ¶ 64; Dkt. 23-17 ¶¶ 3, 4. In the August MAC, CARB advised OEMs, including Plaintiffs, that they could only "have confidence that they are in compliance with their obligations under CARB's regulations" or the CTP if they sought certifications from CARB under the preempted regulations or "on the terms provided for in" the CTP. Dkt. 79-2 at 2. The alternative for failing to follow the preempted regulations—which would also be a failure to certify "on the terms provided for" *in the CTP*—is exposure to statutorily defined penalties. *Id.* at 2 n.5 (citing Cal. Health & Safety Code §§ 43151-43153). Even now while seeking to dismiss Plaintiffs' CTP claims, Defendants decline to disavow the CTP. *See Cal. Trucking Ass'n*, 996 F.3d at 653 (finding that "the state's refusal to disavow enforcement . . . during this litigation is strong evidence that the state intends to enforce the law and that [Plaintiff's] members face a credible threat"); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[F]ailure to disavow 'is an attitudinal factor the net effect of which would seem to impart some substance to the fears of [plaintiffs].'").[4]

Defendants' assertion—that the CTP does not factor into Plaintiffs' decisions—contradicts the Complaint's allegations. *See* Compl. ¶ 93. Defendants also attempt to flip the burden of proof and invite this Court to determine, as a matter of fact and in contradiction to Plaintiffs' sworn declarations, that each of the four OEMs is making complex decisions regarding the development of its products, Compl. ¶¶ 39, 67; Hergart Decl., Dkt. 23-22, ¶ 13; Brown Decl., Dkt. 23-23, ¶ 18, including when and how to sell those products, now and in the future, Compl. ¶ 67; Potter Decl., Dkt. 23-15, ¶¶ 12–13, Noonan Decl., Dkt. 23-20, ¶¶ 11–12, and whether to take steps to bring those products into compliance with multiple, conflicting regulatory regimes, Compl. ¶ 68; Hergart Decl., Dkt. 23-22, ¶¶ 10–12; Noonan Decl., Dkt. 23-20, ¶¶ 7–9; Brown Decl., Dkt. 23-23, ¶ 18, without any regard for California's threats to enforce the CTP or the uncertainty created by the CTP. Accepting that invitation would be

---

[4] As to the third factor for pre-enforcement standing, "the history of enforcement, this factor has 'little weight' when the challenged law is 'relatively new and the record contains little information as to enforcement or interpretation.'" *Cal. Trucking Ass'n*, 996 F.3d at 653. Here, the CRA Resolutions were only passed this year, and therefore CARB's opportunity to enforce the CTP notwithstanding its preemption occurred relatively recently.

error. *See Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 488 (9th Cir. 2024) ("[S]tanding 'in no way depends on the merits' and [the Supreme Court] has instructed us to take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff.") (quoting *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022)); *see also Am. Encore v. Fontes*, 152 F.4th 1097, 1110 (9th Cir. 2025) (Courts are encouraged to be "careful to avoid adjudicating merits issues at the standing phase.").

Defendants' passing reliance on *Walsh v. Nevada*, 471 F.3d 1033 (9th Cir. 2006) and *Dietz v. Comcast Corp.*, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) is misplaced. Mot. 16. *Walsh* held that a plaintiff could not request an injunction requiring her former employer to establish anti-discrimination procedures, because she "would not likely benefit" from that injunction as she no longer worked for the defendant. 471 F.3d at 1037. And *Dietz* held that a former cable TV subscriber could not get injunctive relief under consumer fraud statues, because he was no longer a consumer of the defendant's cable TV services. 2006 WL 3782902 at *2–3. Neither case has any bearing here, where Defendants can enforce and have threatened to *still enforce* the CTP against Plaintiffs.

**2. Alternatively, The United States' Standing Is Sufficient to Maintain the CTP Preemption Claim:** "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). Courts thus have discretion to allow a case to proceed if any party has standing. *Biden v. Nebraska*, 600 U.S. 477, 489 (2023). The United States and EPA (the "United States"), Plaintiffs-Intervenors here, have pleaded that the CTP is preempted by Section 209(a) of the Clean Air Act and have met the burden of standing. Pls.-Intervenors' Compl. ¶¶ 110–14 (Count II), Dkt. 56. Plaintiffs-Intervenors have demonstrated an injury-in-fact. *See id.* ¶ 6 (Count II), Dkt. 56. They have causally connected this injury to the CTP, explaining that the CTP is the vehicle for Defendants' "attempts to enforce three sets of regulatory standards" preempted by the CRA Resolutions. *Id.* ¶ 78, *see also id.* ¶¶ 112–13. And they have established that this Court can redress the injury through declaratory and injunctive relief. *Id.* ¶¶ 25–26, Prayer for Relief. Defendants have not challenged the United States' standing to challenge the CTP as preempted by the Clean Air Act. Therefore, regardless of Defendants' flawed arguments that Plaintiffs lack standing, the United States has established standing to bring a claim that the CTP is preempted, and the case can go forward on that basis alone.

**3. Plaintiffs Have Standing to Challenge the CTP's Restrictions on Free Speech and Petitioning Activity:** The CTP expressly and severely limits Plaintiffs' free speech and petitioning activity. *See* Dkt. 1-2 ¶¶ 2, 4, App. D. Nonetheless, and despite evidence that Defendants have *enforced* these provisions in the past, Defendants incorrectly contend that Plaintiffs lack standing to challenge the speech-limiting provisions of the CTP.

*First*, Defendants argue that Plaintiffs must plead additional details about how the CTP suppresses their speech and petitioning rights to establish a concrete injury. Mot. 17–18. Not so. Plaintiffs identify the relevant provisions of the CTP and explain how the CTP restricts their right and ability to engage in free speech and protected petitioning activity under the First Amendment. Compl. ¶¶ 43–45, 69–70, 107–14 & Ex. A. Plaintiffs also explain that they face imminent, threatened retaliation from Defendants as a result of their intention to challenge the CTP's enforceability. *Id*. ¶¶ 54–55, 60, 69–70, 107-14.[5] These allegations, combined with the credible threat of enforcement as detailed above, are more than enough to establish a concrete injury in fact (and particularly so given the evidence already provided to the Court of the chilling effect the CTP's speech restrictions have had, *see, e.g.*, Mandel Decl., Dkt. 23-4 ¶¶ 9–11; Brown Decl., Dkt. 23-23 ¶¶ 7, 22; Noonan Decl., Dkt. 23-20 ¶¶ 14–15; Potter Decl., Dkt. 23-15 ¶¶ 16–17). *See Driehaus*, 573 U.S. at 162 (plaintiff challenging Ohio statute prohibiting "false statements" during the course of political campaigns had established standing where they intended to engage in political speech that was "arguably proscribed by the statute"—even if it was not clear the intended speech would violate the statute); *Am. Encore*, 152 F.4th at 1113–19 (rejecting argument that plaintiffs failed to adequately specify the conduct in which they intend to engage where the complaint discussed the expressive conduct at issue, explaining that "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury").

Defendants' reliance on *Twitter Inc. v. Paxton* is misplaced. 56 F.4th 1170 (9th Cir. 2022). In

---

[5] Defendants' contention that Plaintiffs "attribute" threats to punish Plaintiffs for their speech "to the EO, not the CTP," Mot. 18, is wrong. In the very same paragraph of the Complaint cited by Defendants, Plaintiffs allege that "[b]oth the May 23, 2025 MAC and Executive Order N-27-25 root the requirement to comply with preempted regulations in the Clean Truck Partnership—a document that, as detailed above, includes measures to restrict manufacturers' ability to challenge the legality of CARB's standards." Compl. ¶ 69. In other words, the May MAC and EO are examples of the CTP *being enforced*; they do not supplant the CTP as the source of the speech restrictions.

that case, the court rejected on ripeness grounds a challenge to Twitter's claim that an investigation conducted by the Texas Office of the Attorney General was performed in retaliation for protected speech. *Id.* at 1172–73. The court found Twitter's allegations that it was "forced to 'weigh the consequences' of investigations when it makes moderation decisions" to be "too indefinite," and noted that Twitter had not included any examples of how the investigation "has actually chilled employees' speech." *Id*. at 1175. But Defendants do not raise ripeness with respect to Defendants' First Amendment claim, and Plaintiffs have provided specific examples of how the challenged provisions of the CTP have chilled Plaintiffs' exercise of their free speech and political petitioning rights.

*Second*, Defendants argue that Plaintiffs lack standing to challenge the CTP's speech restrictions because Plaintiffs are signatories to the CTP, and thus the injury is self-inflicted, rather than traceable to Defendants' conduct. Mot. 18. But Defendants' theory would mean that *no plaintiff* could ever bring an action for declaratory judgment or injunctive relief against a contract—no matter how illegal—because a plaintiffs' "decision[] to voluntarily enter" an agreement would, on Defendants' theory, deprive the plaintiff of a traceable injury. This is not the law. *See, e.g.*, *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1399 (9th Cir. 1991) (signatory to settlement agreement successfully sued to invalidate contract on First Amendment grounds). Defendants rely on a smattering of caselaw that involved self-inflicted wounds in different contexts. For example, *Mendia v. Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014) involved a plaintiff who chose to remain in custody and then sued regarding his pre-trial detention. *Makaryan v. Volkswagen Grp. of Am., Inc.*, 2017 WL 6888254, at *6 (C.D. Cal. Oct. 13, 2007) involved an alleged product defect that only caused harm when plaintiff took a specific action that "is disavowed by the [defendant] and generally is illegal." And *Brotherhood of Locomotive Engineers* involved a lawsuit to stop a sale where a union had negotiated away its own rights in the transaction. *Bhd. of Locomotive Eng'rs & Trainmen, a Div. of Rail Conf.-Int'l Bhd. of Teamsters v. Surface Transp. Bd.*, 457 F.3d 24, 28 (D.C. Cir. 2006). "[B]lame-the-victim arguments" like Defendants' "fail in the standing context," *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *5 (N.D. Cal. Jan. 19, 2022), and Plaintiffs' First Amendment claim presents no traceability problem.

The Ninth Circuit has long recognized that "First Amendment cases raise unique standing considerations, …that tilt[] dramatically toward a finding of standing." *Am. Encore*, 152 F.4th at 1113

13

1  (internal quotations omitted) (collecting cases). Defendants' thin, scattershot criticisms fall well short

2  of providing any persuasive basis for the Court to avoid that tilt in this case.

3  **II.    Counts II and IV State Viable Claims Against The May MAC.**

4  **A.  Plaintiffs' Challenges To The May MAC Are Not Moot.**

5  Defendants contend that their mid-litigation issuance of a superseding MAC moots Plaintiffs'

6  claims. But voluntary cessation of challenged conduct moots a case "only if the defendant can show

7  that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024)

8  (internal quotation marks and citations omitted). This is a "formidable burden," *id.*, and Defendants

9  have not come close to meeting it here.

10  *First*, far from a cessation, the August MAC represents an escalation of the May MAC's threats

11  to enforce the preempted regulations and CTP. The August MAC makes clear that, absent compliance

12  with preempted regulations right now, OEMs cannot have any certainty or predictability that they will

13  be free from retroactive punishment in the future. Dkt. 79-2 at 2. Defendants contend that the voluntary

14  cessation exception does not apply because the August MAC was not issued "because of" this litigation,

15  Mot. 13, but this unsupported factual assertion is incorrect. The August MAC cites this litigation as

16  one of the reasons for its issuance. *See* Dkt. 79-2 at 1 ("[I]n August 2025, the federal government and

17  certain manufacturers filed suit to attempt to nullify the Clean Truck Partnership[.]"). Similarly, De-

18  fendants' contention that "Plaintiffs cannot allege that the August MAC was issued 'because of' this

19  litigation," Mot. 13, is wrong: Plaintiffs allege exactly that. *See* Dkt. 75 at 12.

20  *Second*, Defendants contend that CARB cannot reissue the May MAC, but there are no "pro-

21  cedural safeguards" against reissuance. Mot. 13. Defendants' vague allusions otherwise fail scrutiny.

22  For one thing, CARB's Emergency Rulemaking (and its efforts to adopt non-emergency regulations)

23  do not prevent the reissuance of the May MAC. Defendants have not rescinded the preempted state

24  emissions standards. In fact, Defendants have repeatedly doubled down on the May MAC by reiterating

25  their intent and purported power to retroactively enforce the preempted emissions standards if OEMs

26  refuse to certify to the preempted standards now. *See* Dkt. 79-3 at 3. And further, both the August MAC

27  and Emergency Rulemaking still require a manufacturer to obtain certification from CARB, notwith-

28  standing that CARB's authority to require certification is preempted. *See* Compl. ¶¶ 7, 74; *see also*

14

Dkt. 75 at 6–8 (noting Emergency Rule involves new standards without preemption waivers). Thus, unlike in *Brach v. Newsom*, 38 F.4th 6, 13, 15 (9th Cir. 2022), California has not unequivocally renounced its intention to engage in the challenged conduct again. To the contrary, Defendants' latest actions continue to pursue their position that they have authority to require OEM certification and that the preempted regulations remain in force.

### B. Count II Adequately Pleads That The May MAC Is Preempted.

Far from being a simple informational notice, the May MAC compelled manufacturers to continue to certify their compliance with CARB's now-preempted standards, and to adhere to the CTP, as conditions precedent to selling trucks in California. *See* May MAC at 2–3. CARB further explained that such compliance was necessary to "ensure the requirements of certification are met to enable lawful vehicle sales in California" under California Health and Safety Code Section 43151, *id.* at 2, which is enforceable through substantial fines, Cal. Health & Safety Code § 43154(a)(1). Under the Clean Air Act, "'attempt to enforce' . . . is not limited to the actual imposition of penalties for violation, but includes steps preliminary to that action." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 257 (2004) (quoting § 209(a)). CARB's statements and invocation of the Health and Safety Code serve as a threat that CARB will penalize any manufacturer who sells new vehicles in California without complying with the preempted standards. This threat is a clear "attempt to enforce" an emissions standard and is therefore preempted.

### C. Count IV Adequately Pleads That The May MAC Violates The First Amendment.

The May MAC contravenes the First Amendment because it signals CARB's intention to enforce the CTP's unconstitutional speech restrictions. *See supra* Section I.B.3. CARB states that manufacturers' compliance with its preempted emissions standards and certification requirements was "necessary" to "facilitate meeting the commitments of the" CTP and "enable lawful vehicle sales." May MAC at 2–3. And as explained above, the May MAC invoked provisions authorizing hefty fines to pressure compliance with the preempted standards. *Cf. Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 193 (2024) (noting that threats of adverse action do not need to be explicit). Regardless, the document's clear reference to the CTP's commitments provides a plausible basis for Plaintiffs' allegations, which must be accepted as true. Defendants' bald assertion that the MAC does not mean what it says is not a

15

basis for dismissal.

**III.    Counts II And IV State Viable Claims Against the EO.**

> **A.  Plaintiffs' Challenges To The EO Are Ripe.**

The ripeness doctrine is designed to prevent courts "from entangling themselves in abstract disagreements." *United States v. King Cnty.*, 122 F.4th 740, 753 (9th Cir. 2024). That principle has no application to the EO, which forces Plaintiffs to make the choice *now* between incurring the costs of complying with preempted standards or immediately forfeiting state procurement opportunities, incentive programs, and regulatory flexibilities, and incurring the risk of retroactive enforcement. *See* Compl. ¶¶ 12–13, 85; Dkt. 23-17 ¶ 3. Courts in this District have found similar "uncertainty in the business climate" sufficient to make preemption challenges to CARB regulations ripe. *See, e.g.*, *Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*, 2007 WL 135688, at *9 (E.D. Cal. Jan. 16, 2007). Defendants' cases are inapposite. *WildEarth Guardians v. Montana Snowmobile Association* concerned an abstract disagreement over a regulatory provision that an agency had not invoked to justify its challenged land management plan. 790 F.3d 920, 933-34 (9th Cir. 2015). And *Twitter Inc. v. Paxton* involved a First Amendment challenge to a state civil investigative demand that was not self-enforcing, imposed no penalties until enforcement, and permitted enforcement only by a district court with judicial safeguards. 56 F.4th at 1175–77. Conversely, here Plaintiffs face immediate consequences from the EO's directives unless they conform their current conduct. Their only judicial safeguard is this pre-enforcement suit.

A government agency's argument that it has not yet implemented or enforced an executive order does not render an injunction action unripe where, as here, the agency has admitted that state agencies have begun implementing some parts of the EO. *See* Compl. ¶ 10 (citing CARB press release);[6] *see Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 529–30 (N.D. Cal. 2017); *Washington v. Trump*, 766 F. Supp. 3d 1138, 1149, 1151 n.4 (W.D. Wash. 2025) (finding ripeness where an

---

[6] CARB, Press Release Number 25-26, *California moves forward on public health and clean vehicles as federal agencies move backwards* (Aug. 19, 2025) https://ww2.arb.ca.gov/news/california-moves-forward-public-health-and-clean-vehicles-federal-agencies-move-backwards; CARB, Drive Forward Light-Duty Vehicle Program (Oct. 21, 2025), at 10, https://ww2.arb.ca.gov/sites/default/files/2025-10/2025_10_21_Workshop_Presentation_for_ADA_V5.pdf.

executive order directed immediate action and threatened plaintiffs for noncompliance with funding conditions). To the contrary, the Ninth Circuit has found that pre-enforcement challenges to executive orders are ripe where plaintiffs articulated plans to violate the law in question, the prosecuting authorities articulated specific warnings or threats, and there is a history of past prosecution or enforcement. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1236–37 (9th Cir. 2018).

These elements are met here. *First*, Plaintiffs' position that CARB's emissions standards and the CTP are preempted and unconstitutional directly conflicts with the EO's directive to continue implementation of the CTP and the standards contained therein. *See id.* at 1237. *Second*, CARB continues to declare its intent to enforce the CTP and preempted regulations, rendering disingenuous Defendants' assertion that a challenge to the EO is speculative because "future actions cannot be predicted." Mot. 1. In the August MAC and Emergency Rulemaking, CARB has threatened retroactive enforcement of the preempted rules—and because the CTP incorporates the preempted rules, this would be retroactive enforcement of the rules *and* the CTP. *See* Dkt. 79-2 at 2–3; Dkt. 79-3 at 3. CARB's intent to enforce is thus anything but speculative. *Third*, California has previously placed disfavored vehicle manufacturers on a state purchasing restriction list during a separate dispute over preemption of its emissions standards. Compl. ¶ 64.

## B.  Count II Adequately Pleads That The EO Is Preempted.

The Supreme Court has made clear that an "'attempt to enforce' . . . is not limited to the actual imposition of penalties for violation, but includes steps preliminary to that action." *Engine Mfrs. Ass'n*, 541 U.S. at 257 (quoting § 209(a)). Indirect efforts to achieve "an effective mandate of a preempted outcome" are likewise preempted, such as where the government does not offer regulated parties "viable, non-preempted options[.]" *Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 95–96 (S.D.N.Y. 2009), *aff'd*, 615 F.3d 152 (2d Cir. 2010). Accordingly, contrary to Defendants' argument that only bringing an enforcement action is preempted, the Complaint states a valid claim that the EO is an attempt to enforce compliance with preempted regulations.

Here, the EO attempts to force OEMs' compliance by promising preferential *governmental* treatment for OEMs who continue to comply with the preempted standards "or requirements agreed to as part of any agreements between such manufacturer and [CARB]"—*e.g.*, the CTP—"*regardless of*

17

*the status of those regulations under federal law.*" Dkt. 23-17 ¶ 3 (emphasis added). Non-compliant OEMs are excluded from such considerations by the State and its agencies. *See id*. This scheme of incentives and disincentives deals out consequences based not on the emissions of any particular vehicle but upon an OEM's compliance with the CTP and regulations subject to the CRA Resolutions. *See* Compl. ¶¶ 12, 85. It is therefore an "effective mandate" of compliance with preempted standards, rendering the EO preempted. *Metro. Taxicab*, 633 F. Supp. 2d at 95–96; *see also id.* at 99–100 (explaining that rules regarding hybrid taxis were a mandate with no viable alternative because even though businesses could generate *some* profits using non-hybrid taxis, "[a] sensible business person . . . would choose to avoid [the] loss" imposed by the rule for doing so).

The market-participant exception to federal preemption does not save the EO for two reasons. *First*, the punishments the EO metes out are not limited to state procurement decisions, as in the cases Defendants cite. *See*, *e.g.*, *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1045 (9th Cir. 2007) (rule directed government entities to procure and lease vehicles). Rather, the EO mandates that CARB provide regulatory flexibility to compliant OEMs, which requires *regulatory action* to effectuate. Dkt. 23-17 ¶ 3.c. *Second*, even for the procurement-related threats in the EO, a state does not act as a mere market participant when its actions are "tantamount to regulation," *Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 289 (1986), including where an executive order has an "obvious policy and regulatory basis" and the "clear substance and tenor" is objecting to a federal policy, *King Cnty.*, 122 F.4th at 759. Here, the EO—which Governor Newsom's office published on the same day that the CRA Resolutions became law—has a manifest policy and regulatory basis because it was designed to respond to and reject the federal government's revocation of California's waivers. *See* Dkt. 23-17 at 2. Even the State's supposed market-based actions, such as placing OEMs who do not follow the preempted rules on the "manufacturer purchasing restriction list," *id*. ¶ 3, attempt to enforce the preempted standards and are themselves preempted.

### C.  Count IV Adequately Pleads That The EO Violates the First Amendment.

Defendants' claim that the EO does not restrict Plaintiffs' speech or petitioning rights or deny benefits based on the exercise of such rights is contradicted by the EO itself. Namely, the EO ties a manufacturer's receipt of regulatory benefits to compliance with "requirements agreed to as part of any

18

agreements between such manufacturer" and CARB. *Id.* ¶ 3. As Defendants concede, such agreements encompass the CTP. Mot. 12. The EO's reference to "requirements agreed to as part of any agreements" necessarily includes the CTP's speech restrictions; therefore, the EO also violates the First Amendment. *See supra* Section I.B.3.

Defendants try to recast the language of the EO as Plaintiffs' legal conclusion. Although that argument is wrong, the crucial point is that Defendants' argument urging the Court to adopt its opposing interpretation of the EO is improper on a motion to dismiss. It is well-settled that all reasonable inferences must be drawn in plaintiffs' favor at the motion to dismiss stage, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018), and Plaintiffs' plain-language interpretation of the EO is more than plausible. Because the EO incorporates the CTP's unconstitutional speech restrictions, it also runs afoul of the First Amendment. *See Koontz*, 570 U.S. at 606–8 (holding that the government cannot withhold discretionary benefits to induce the forfeiture of constitutional rights).

## IV.    Defendant Newsom Is Not Immune From Suit For The Federal Law Claims.

Defendant Newsom enforces his unlawful EO, and that EO is itself an enforcement mechanism for the other unlawful standards and regulatory actions here. As to CARB, the Eleventh Amendment is inapplicable to the United States' claims, and therefore CARB is a proper defendant.

### A.    Defendant Newsom Is Not Immune from Suit.

A state official is subject to federal suit for injunctive relief whenever that official has a "connection with the enforcement" of the challenged laws. *Ex parte Young*, 209 U.S. 123, 155–56 (1908). The Complaint alleges that connection here through the EO, CTP, and preempted emissions standards.

**1. The Executive Order:** Plaintiffs challenge the EO because it "directed CARB to implement the Clean Truck Partnership," Compl. ¶ 63, and "threatened . . . detrimental regulatory treatment and exclusion from government purchase and incentive programs for vehicle and engine manufacturers that do not follow the Clean Truck Partnership or do not certify their products in compliance with preempted CARB standards," *id.* ¶ 28. The EO was issued by Defendant Newsom, and the EO has *no other enforcement mechanism* beyond Defendant Newsom's control over California's regulatory apparatus. Defendant Newsom's "connection" to the challenged EO is plain, and the *ipse dixit* argument that he has no "connection with the enforcement of [his own EO]" should be rejected.

Governor Newsom is not a Defendant merely because he exercises "general oversight" of CARB. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (Governor Harris dismissed under Eleventh Amendment because she was sued only in her general capacity as governor). Rather, Governor Newsom is a Defendant because he issued the EO to mandate that an agency he controls enforce regulations that violate federal law. The Complaint thus adequately alleges that Defendant Newsom, through the EO, has assumed a principal role in directing the enforcement of the preempted California emissions standards, which constitutes the requisite connection between Defendant Newsom and the challenged conduct. Underscoring this point, the EO is the genesis of several causes of Plaintiffs' injuries here—namely, the threats of unfavorable regulatory treatment, exclusion from government purchasing, and de-prioritization for government incentive programs if Plaintiffs do not comply with the preempted standards (standing alone or through compliance with the CTP). The Governor does not need to be the actual enforcement authority. *See Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). It is enough that there is a "real, not ephemeral, likelihood or realistic potential that the connection will be employed against plaintiffs' interests." *NAACP v. California*, 511 F. Supp. 1244, 1255 (E.D. Cal. 1981), *aff'd sub nom. NAACP v. California*, 711 F.2d 121 (9th Cir. 1983) (quoting *Allied Artists Pictures Corp. v. Rhodes*, 473 F. Supp. 560 (S.D. Ohio 1979)).

Defendants nonetheless contend that Governor Newsom cannot be subject to suit for his own EO. Defendants argue that Governor Newsom does not have "connection with the enforcement of the act," because the EO is not "enforceable" at all, and because the EO is not enforceable against "against Plaintiffs." Mot. 9. That assertion ignores the language of the EO. To start, that a governor does not have "any connection" with the enforcement of *his own executive order* defies logic: Defendants offer no support for that proposition, the implication of which is that when the Governor of California issues an executive order, it can be ignored.

The EO states three times that the "California Air Resources Board *shall*" take specific actions. *See* Dkt. 23-17 at 3. Further, CARB has already acted in response to the EO, emphasizing Defendant Newsom's driving role. For example, on August 19, 2025, CARB issued a report "*in response to Governor Gavin Newsom's executive order* on zero-emission vehicle (ZEV) deployment" stating that

20

"State agencies *are acting on Governor Gavin Newsom's direction* to push forward with a 21st century economy that prioritizes public health and clean transportation…."[7] Defendant Newsom's connection to the challenged enforcement of the EO is further established through his specific control over CARB's leadership, including appointing twelve of the Board's fourteen voting members, Cal. Health & Safety Code § 39510(a), and selecting the chairperson, who "shall serve as the principal advisor to the Governor on, and shall assist the Governor in establishing, major policy and program matters on environmental protection," *id.* § 39511(a). Because CARB's policy is responsive to the EO and the EO mandates agency policy, the Eleventh Amendment does not bar suit against Defendant Newsom. *See Valenzuela v. Ducey*, 329 F. Supp. 3d 982, 992 (D. Ariz. 2018) (executive order that "mandated [agency] policy" is likely sufficient to establish governor's direct enforcement for jurisdiction).

Defendants' argument that the EO is not enforceable at all, or not enforceable against Plaintiffs, is similarly baseless. As the Ninth Circuit held in *Eu*, the Eleventh Amendment does not protect a governor from suit simply because the law in question is "not the type of statute that gives rise to enforcement proceedings," or because of the "lack of any enforcement proceeding" against the party challenging the law. 979 F.2d at 704.

**2. The CTP, May MAC, and Preempted Emissions Standards:** Defendant Newsom is also not immune from the claims related to the CTP, May MAC, and the preempted emissions standards, because the EO *is* an enforcement of these preempted standards and regulatory actions. Ordinarily, agencies like CARB are expected to comply with federal law and, if they fail to do so, the relevant responsible political actors would be expected to intervene. But Defendant Newsom's EO turns that on its head and instead orders CARB to enforce the preempted (and otherwise unlawful) CTP, May MAC, and state emissions standards. Defendant Newsom is responsible for issuing an EO that mandates CARB's illegal enforcement.

Defendant Newsom's EO "direct[s] CARB to enforce the rules at issue here through the Clean Truck Partnership," Compl. ¶ 63, and "threaten[s] . . . detrimental regulatory treatment and exclusion from government purchase and incentive programs for vehicle and engine manufacturers that do not

---

[7] *See supra* note 6, Press Release Number 25-26 (emphasis added).

follow the Clean Truck Partnership or do not certify their products in compliance with pre-empted CARB standards," *id.* ¶ 28. In other words, the EO enforces compliance with the CTP, which itself enforces the preempted regulations, and therefore Defendant Newsom's EO is an enforcement mechanism of the CTP, preempted regulations, and the May MAC. Put plainly, the inquiry under *Ex Parte Young*—whether the defendant has any "connection with the enforcement" of the challenged laws, 209 U.S. at 155–56—is easily met as to the CTP, May MAC, and preempted standards, because the EO *is an enforcement mechanism* of those actions. Defendant Newsom is directing CARB to violate federal law, and a judgment against him is necessary to provide Plaintiffs complete relief.

## V.     Plaintiffs Face Imminent Injury From The 2036 Sales Requirement.

This Court should also reject Defendants' argument that Plaintiffs lack standing to challenge the Advanced Clean Fleets ("ACF") ban on the production and delivery for sale of internal-combustion trucks in California beginning in 2036. *See* Cal. Code Regs. tit. 13, § 2016(c). Recognizing that such a transformative ban would require enormous efforts long before it takes effect, Defendants initially sought a waiver from EPA in 2023, before strategically withdrawing that request weeks before the end of the Biden Administration. Defendants' argument that the ban imposes no harm on Plaintiffs because CARB will not enforce it until it receives an EPA preemption waiver ignores reality. *See* Dkt. 78 at 19.

As an initial matter, the Clean Air Act preempts ACF *now* because the Clean Air Act requires California to have a waiver *before* it adopts a mobile source rule. Under the plain text of Section 209, "[n]o State . . . shall adopt *or* attempt to enforce any standard" without a waiver. 42 U.S.C. § 7543(a) (emphasis added). The disjunctive "or" means that adopting and enforcing are two different government actions, *either* of which violates federal law. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (noting that the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately). And other sections of the Clean Air Act confirm that Congress knew how to permit States to adopt first and seek EPA approval later. For example, the process for state implementation plans related to federal air quality standards, located in Section 110 of Title I, directs states to "adopt and submit" to EPA for review. 42 U.S.C. § 7410(a). Congress made a different choice in Section 209 and barred States from adopting first and only then seeking permission.

ACF imposes a here-and-now injury on Plaintiffs. *See Twitter, Inc.*, 56 F.4th at 1173 ("[T]he

constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry.") (citation omitted). Defendants note that it will not take effect "for at least *nine years*." Mot. 19. But nine years is an incredibly short window for achieving the fundamental restructuring of the heavy-duty trucking industry required by a complete ban on internal-combustion engines, as "product development in the heavy-duty truck and engine [industry] requires long lead times[.]" Compl. ¶ 39. And every day that goes by shortens the period in which Plaintiffs can comply. Thus, Plaintiffs must take steps *now* to achieve this 100% ZEV sales mandate by 2036. Indeed, CARB itself initially proposed that the ban begin in 2040 on the theory that a 2036 ban would prove too ambitious, explaining "sufficient time is needed to build-out maintenance, supply, and infrastructure networks and to make a full transition to ZEVs," and stating that a 2036 deadline "would result in a fast ramp-up of additional ZEV demand significantly above the expected supply of ZEVs."[8] Likewise, CARB itself acknowledged that the now-preempted ACT standards were needed to gradually ramp up ZEV supply. *See id.*

But without ACT, there is no technical ramp up to the combustion ban, making the 2036 ban even more difficult to achieve. As a result, OEMs must decide *now* how, and how quickly, to transition fleets to ZEVs, including how to invest capital in research and development and new production facilities. *See, e.g.*, Hergart Decl., Dkt. 23-22 ¶ 12–13 (describing participation "in a multibillion-dollar, multiyear effort to establish domestic manufacturing of batteries" and noting "[W]e are to a large extent frozen in making critical decisions about where to prioritize our investment efforts without regulatory clarity."); Brown Decl., Dkt. 23-23 ¶ 18 ("Volvo needs to know . . . whether Volvo needs to make the substantial investments now to develop, certify, and build vehicles and engines that will comply with CARB's Preempted Emissions Regulations for future model year[s] . . . .").

CARB's disclaimer that it will not enforce the ACF combustion ban without a waiver does not mitigate (let alone eliminate) Plaintiffs' current injury. CARB repealed much of ACF (although not the combustion ban at issue in this case) when it withdrew its waiver request because, as a CARB Member explained, "without federal approval, the regulation would have been a legal zombie: dead on its feet,

---

[8] CARB, Public Hearing to Consider the Proposed Advanced Clean Fleets Regulation, Staff Report: Initial Statement of Reasons, (Aug. 30, 2022) at 254, https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2022/acf22/isor2.pdf.

but still scaring the living." Compl. at 16 n.6. CARB's intent in keeping the ban on internal-combustion engines around as a "zombie" is clear: to scare OEMs into taking steps to comply with the preempted ban today, regardless of whether CARB ever seeks or secures a waiver.[9]

CARB's disclaimer also fails to fully capture the 2036 combustion ban. CARB has only stipulated it will not enforce the 2036 ban as part of the Advanced Clean Fleets regulation. Dkt. 78 at 19–20. But CARB amended its ACT standards to include the 2036 combustion ban in that section of its regulations as well, and CARB has not disavowed enforcement of this amendment. *See* Cal. Code Regs. tit. 13, § 1963.6. Rather, CARB has taken repeated efforts to attempt to enforce ACT standards in violation of Section 209, including codifying a threat to retroactively punish OEMs that do not follow the preempted standards. *See* Dkt. 73-33 at 1.

Defendants' reliance on *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128 (9th Cir. 2024) and *Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017), is misplaced. In both cases, plaintiffs only claimed fear of possible prosecution or inspection which was insufficiently concrete; plaintiffs' current behavior was not affected. *Stavrianoudakis*, 108 F.4th at 1411; *Reddy*, 845 F.3d at 502. Here, ACF imposes a concrete injury now. Likewise, in *Platinum Sports Ltd. v. Snyder*, the defendants "stipulated to a final judgment declaring both laws facially unconstitutional and *permanently enjoining* their enforcement." 715 F.3d 615, 616 (6th Cir. 2013) (emphasis added). That final judgment, unlike CARB's declaration here, took future enforcement entirely off the table.

Courts "do not require [plaintiffs] to expose [themselves] to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 129 (2007). Rather, a case is ripe when "there is sufficient 'hardship to the parties [in] withholding court consideration' until there is enforcement action." *Id.* at 128 n.8 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). And long before CARB could initiate a potential enforcement action for violating

---

[9] Early cases holding that CARB could adopt regulations prior to receiving waiver approval from EPA were premised on the now-defunct assumption that CARB always receives waivers. *See, e.g., Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 563 F. Supp. 2d 1158, 1161 (E.D. Cal. 2008); *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 302 (D. Vt. 2007). That assumption is now incorrect. *See, e.g.*, Transcript of Oral Argument at 49:25–50:4, *Diamond Alt. Energy LLC v. EPA*, 606 U.S. ___ (2025) (No. 24-7) (J. Alito) (noting "EPA has now changed its mind on this four times" about allowing California to regulate greenhouse gas emissions from vehicles).

the internal combustion ban, OEMs will be forced to take steps towards compliance or risk not being able to ramp up fast enough later and face steep compliance penalties. If this Court adjudicates the issue now, OEMs will be able to make major compliance and investment decisions with the certainty and clarity of a judgment on CARB's combustion ban.

## CONCLUSION

Counts I, II, III, and IV of Plaintiffs' Complaint should not be dismissed, and Counts V, VI, and VII should be dismissed without prejudice to their re-filing in state court.

//

Dated: October 24, 2025

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

*Benjamin Wagner*

_____
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:     650.849.5395
Facsimile:      640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     415.393.8293
Facsimile:      415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL ESTRADA, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone:     202.955.8500
Facsimile:      202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

*Additional signature page follows*

//

//

**LATHAM & WATKINS LLP**

/s/ Robin M. Hulshizer
(as authorized Oct. 24, 2025)

ROBIN M. HULSHIZER, SBN 158486
ARTHUR FOERSTER, *pro hac vice*
KEVIN M. JAKOPCHEK, *pro hac vice*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com

BELINDA S. LEE, SBN 199635
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*


**TROUTMAN PEPPER LOCKE LLP**

/s/ Jeffrey M. Goldman
(as authorized Oct. 24, 2025)
JEFFREY M. GOLDMAN, SBN 233840
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:    213.928.9800
Facsimile:    213.928.9850
jeffrey.goldman@troutman.com

T. SCOTT MILLS, SBN 313554
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:    404.885.3000
Facsimile:    404.885.3900
scott.mills@troutman.com

JEREMY HEEP, *pro hac vice*
DANIEL J. BOLAND, *pro hac vice*
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:    215.981.4000
Facsimile:    215.981.4750
daniel.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North America, LLC*

**CLIFFORD CHANCE LLP**

/s/ Joseph A. Ostoyich
(as authorized Oct. 24, 2025)

JOSEPH A. OSTOYICH, *pro hac vice*
WILLIAM LAVERY, *pro hac vice*
STEVE NICKELSBURG, *pro hac vice*
DANIELLE MORELLO, *pro hac vice*
DOROTHEA R. ALLOCCA, *pro hac vice*
2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com
dodi.allocca@cliffordchance.com

**ILLOVSKY GATES & CALIA LLP**

EUGENE ILLOVSKY, SBN 117892
KEVIN CALIA, SBN 227406
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone:  415.500.6643
Eugene@illovskygates.com
Kevin@illovskygates.com

*Attorneys for Plaintiff PACCAR Inc*

26