ROB BONTA, State Bar No. 202668
Attorney General of California
MYUNG J. PARK, State Bar No. 210866
Supervising Deputy Attorney General
BENJAMIN P. LEMPERT, State Bar No. 344239
DAVID M. MEEKER, State Bar No. 273814
CECILIA D. SEGAL, State Bar No. 310935
JONATHAN A. WIENER, State Bar No. 265006
M. ELAINE MECKENSTOCK, State Bar No. 268861
Deputy Attorney General
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-0299
 Fax:  (510) 622-2270
 E-mail:  Elaine.Meckenstock@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAIMLER TRUCK NORTH AMERICA, LLC; INTERNATIONAL MOTORS, LLC; PACCAR, INC.;** and **VOLVO GROUP NORTH AMERICA, LLC,**<br><br>Plaintiffs,<br><br>**THE UNITED STATES OF AMERICA;** and **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>**CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF**, in his official capacity as the Executive Officer of the California Air Resources Board; and **GAVIN NEWSOM**, in his official capacity as the Governor of California,<br><br>Defendants. | 2:25-cv-02255-DC-AC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE UNITED STATES' COMPLAINT IN INTERVENTION**<br><br>Judge:        Hon. Dena Coggins<br>Trial Date:    Not Set<br>Action Filed:  8/11/2025 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.    The United States' Challenge to the Advanced Clean Fleets Regulation Should Be Dismissed for Lack of Jurisdiction ..................................................................................... 1

    A.    The United States' Second Claim for Relief Cannot Save Its First ........................ 2

    B.    No Factual Allegations Support the United States' *Parens Patriae* Theory .......... 3

    C.    The Mere Presence of the Advanced Clean Fleets Regulation in the California Code of Regulations Does Not Injure the United States ........................ 4

CONCLUSION ................................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Trucking Ass'ns v. EPA*
  600 F.3d 624 (D.C. Cir. 2010) .................................................................................................. 7

*Cent. Valley Chrysler-Jeep v. Goldstene*
  563 F. Supp. 2d 1158 (E.D. Cal. 2008) ..................................................................................... 5

*Ford Motor Co. v. EPA*
  606 F.2d 1293 (D.C. Cir. 1979) ................................................................................................ 5

*Greater Westchester Homeowners Ass'n v. City of Los Angeles*
  603 P.2d 1329 (Cal. 1979) ........................................................................................................ 9

*Marcotte v. Gen. Elec. Capital Servs. Inc.*
  709 F. Supp. 2d 994 (S.D. Cal. 2010) ....................................................................................... 9

*Motor & Equip. Mfrs. Ass'n v. EPA*
  627 F.2d 1095 (D.C. Cir. 1979) ................................................................................................ 5

*Motor Vehicle Mfrs. Ass'n of U.S. v. N.Y. State Dep't of Env't. Conservation*
  17 F.3d 521 (2d Cir. 1994) ........................................................................................................ 5

*Murphy v. NCAA*
  584 U.S. 453 (2018) .................................................................................................................. 8

*New York v. United States*
  505 U.S. 144 (1992) .................................................................................................................. 8

*Richlin Sec. Serv. Co. v. Chertoff*
  553 U.S. 571 (2008) .................................................................................................................. 7

*Unocal Corp. v. Kaabipour*
  177 F.3d 755 (9th Cir. 1999) ..................................................................................................... 9

*Wolfe v. Strankman*
  392 F.3d 358 (9th Cir. 2004) ..................................................................................................... 3

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

42 U.S.C.
   § 7410(a) ............................................................................................................... 7
   § 7410(c) ............................................................................................................... 7
   § 7521(a)(2) .......................................................................................................... 8
   § 7543(a) ....................................................................................................... 3, 4, 5
   § 7543(b) ............................................................................................................... 5
   § 7543(b)(1) .......................................................................................................... 6
   § 7543(b)(1)(C) .................................................................................................... 8
   § 7543(b)(2) .......................................................................................................... 6
   § 7602(k) ........................................................................................................... 4, 6

Cal. Gov't Code § 11346.4(b) ...................................................................................... 7

Cal. Health & Saf. Code § 43154(a) ............................................................................ 3

**FEDERAL REGISTER**

33 Fed. Reg. 10,160 (July 16, 1968) ............................................................................ 5

34 Fed. Reg. 7348 (May 6, 1969) ................................................................................ 5

59 Fed. Reg. 36,969 (July 20, 1994) ............................................................................ 6

**OTHER AUTHORITIES**

H.R. Rep. No. 95-294 (1977) ....................................................................................... 5

Black's Law Dictionary (4th ed. 1968) ........................................................................ 4

**INTRODUCTION**

Defendants moved to dismiss two components of the Complaint-in-Intervention filed by the United States and the United States Environmental Protection Agency (EPA) (collectively, United States or Plaintiffs). First, defendants sought dismissal of the Governor as a Defendant. ECF 77 (MTD) at 6:3-8:18. The United States does not object, ECF 83 (Opp.) at 5 n.2, and the Governor should be dismissed.

Second, Defendants also moved to dismiss, for lack of standing or ripeness, the United States' preemption challenge to the Advanced Clean Fleets (ACF) regulation promulgated by the California Air Resources Board (CARB). MTD 9:19-11:6.[1] CARB is already prohibited—by court order in another case—from enforcing this regulation unless or until EPA provides an applicable preemption waiver. Thus, there is *no* prospect of *preempted* enforcement and no standing for a preemption challenge. In response, the United States does not point to allegations in its Complaint that could establish otherwise—i.e., that the Federal Government (or anyone else) is being injured by enforcement of this regulation. Instead, the United States veers away from more than fifty years of Clean Air Act implementation, asserting that the Clean Air Act required CARB to obtain a preemption waiver *before* it could finalize this state rulemaking and that the mere presence of this allegedly preempted regulation injures the United States. Notably, no one has ever understood the Act to operate in the way the United States now claims it must— not EPA, Congress, CARB, or regulated parties. The United States cannot establish standing and ripeness by advancing this novel and erroneous interpretation. Its challenges to the ACF regulation (part of its First Claim for Relief) should be dismissed.

**ARGUMENT**

I. **THE UNITED STATES' CHALLENGE TO THE ADVANCED CLEAN FLEETS REGULATION SHOULD BE DISMISSED FOR LACK OF JURISDICTION**

The United States lacks standing and a ripe challenge with regard to its preemption claim against the ACF regulation—part of its First Claim for Relief. MTD 9:19-11:6. CARB is already

---

[1] The United States challenges only the sales requirements that begin in model year 2036. ECF 56 (Compl.) at ¶¶ 47, 106; MTD 3 n.4; 9:21-23. References to this regulation are thus to that part only.

1  subject to a court order preventing enforcement of that regulation absent an applicable preemption
2  waiver from EPA.  ECF 56 (Compl.) at ¶¶ 45-46.  There is, thus, no "ongoing enforcement" of
3  this regulation for the Court to "stop."  *Id.* ¶ 5.  And if CARB ever enforces this regulation in the
4  future, it will be because EPA—a Plaintiff here—issued an applicable preemption waiver.  ECF
5  79-1 at 3 ¶ 3.  The United States has no plausible claim to a concrete injury from a state
6  regulation that will only ever be enforced if the United States authorizes it.  The United States
7  asserts otherwise, positing three theories.  None saves this part of their Complaint, and it should
8  be dismissed.

### A.  The United States' Second Claim for Relief Cannot Save Its First

The United States attempts to save its challenge to the ACF regulation by arguing that the Clean Truck Partnership (CTP) agreement is a preempted "attempt to enforce" the regulation. Opp. 6:7-8; 9:4-16.  That restatement of the United States' Second Claim for Relief, Compl. ¶¶ 111-114, is entirely irrelevant here because Defendants did not move to dismiss that claim. Defendants moved to dismiss part of the United States' First Claim for Relief (*id.* ¶¶ 99-109)—its challenge to the ACF *regulation*—not the challenge to the CTP.  MTD 9:19-11:6.  Indeed, there is no reference to the CTP or the Second Claim for Relief in the relevant part of Defendants' opening brief.  *Id.*  Defendants did describe the CTP in the background section.  *Id.* at 3:16-4:8. As the brief makes clear, however, that description was relevant to Defendants' separate arguments to dismiss the Governor.  *Id.* at 8:12-9:8.

Certainly, Defendants have argued, and will argue again, that the CTP is not an "attempt to enforce" any standards (including those in the ACF regulation).  Rather, the execution of the CTP created *contractual* obligations for its signatories, including the manufacturers, but those are independent of any *regulatory* obligations.  Unlike a regulation (that is imposed by the State), the CTP "imposes" obligations on its signatories only because the parties *chose* to take on those obligations after negotiating their terms.  And because those terms arose from contract negotiations (not unilateral state action), any enforcement of the CTP will be *of its terms* (not of regulatory provisions) and will occur through contract remedies (not regulatory penalties).  *E.g.*,

1  Cal. Health & Saf. Code § 43154(a) (providing for penalties for violation of statutory and
2  regulatory provisions, not contracts). It makes no difference that some of the CTP's terms cross-
3  reference regulatory code provisions as a way of precisely and succinctly defining the parties'
4  voluntarily assumed contractual obligations. The agreement could have spelled out those
5  obligations in detailed requirements, rather than shorthand cross-references, but that would not
6  change the nature of the terms—including how they were "imposed" and how they can be
7  enforced. The voluntary, contractual obligations under the CTP are entirely separate and distinct
8  from any regulatory requirements that could fall within the scope of Clean Air Act Section
9  209(a), 42 U.S.C. § 7543(a). But, regardless, these questions are not presented on this motion
10  because Defendants did not move to dismiss the United States' challenge to this agreement—i.e.,
11  its Second Claim for Relief.

**B.     No Factual Allegations Support the United States' *Parens Patriae* Theory**

The United States also attempts to establish standing by asserting that "California's unlawful vehicle emissions regulations pose a serious threat to the trucking industry and to the American shipping economy," Opp. 1:3-4, and that manufacturers must "act now to meet the electric-vehicle mandate by 2036," *id.* at 11:12-14. These naked assertions cannot defeat Defendants' facial attack on standing because the United States cites no allegation in the Complaint as support for these purported *parens patriae* harms. It does cite to paragraph 6 for an alleged "intru[sion] on exclusive federal authority" injury, Opp. 11:15-17, but that only highlights that the United States fails to identify a single allegation that speaks to purported threats to the trucking industry or shipping economy or to manufacturers' production timelines for model year 2036 vehicles and engines. To support *those* assertions, the United States cites only to the other Plaintiffs' opposition brief. Opp. 11:14. But Defendants' facial attack turns on "the allegations in [the] complaint," not assertions made by other parties in other filings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).[2] *See also* MTD 10 n.8. Nothing in the United States' complaint

---

[2] Even if a brief filed by other parties could cure defects in the United States' Complaint, the brief at issue also identifies no supportive allegations and does not actually make the same claim the United States does about the shipping economy. The manufacturers posit an unsupported theory about CARB's motive for actions in 2023, ECF 84 at 24:2-3, and that too fails to support the United States' argument here.

1   mentions, let alone could establish, harms to the trucking industry or the shipping economy from
2   this regulation—that, again, would be enforceable, at the earliest, more than nine years from now.

      **C.   The Mere Presence of the Advanced Clean Fleets Regulation in the California Code of Regulations Does Not Injure the United States**

The United States dedicates most of its brief to a third theory.  Opp. 6–10.  It alleges injury from the mere presence of the ACF regulation in the California Code of Regulations because the Clean Air Act purportedly forbids the State from even finalizing the state regulatory process underlying an emission standard until after it holds in hand an EPA waiver that covers the standard.  On this newly articulated theory, Congress ordered the State's Legislature not to enact, and its agencies not to promulgate, standards subject to Section 209(a) until EPA gets around to granting an applicable waiver under Section 209(b).

The United States is wrong.  In almost 60 years of EPA granting waivers for California's standards, that is never how the Clean Air Act has been implemented.  Rather, California always finalizes its new or amended standards *first*, after completing the required notice-and-comment process, and only *then* does EPA consider whether to grant a waiver—so that EPA knows it is examining California's actual regulatory program, not a mere proposal.  Although Section 209(a) prevents the new or amended regulation's *effective operation* or *enforcement* unless and until EPA waives the application of that subsection, the Clean Air Act does not (indeed, *cannot*) prohibit CARB from finalizing a new regulation under state administrative procedures before receiving an applicable EPA waiver.

Section 209(a) provides that, absent an applicable waiver of preemption from EPA, "[n]o State … shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles … subject to this part."  42 U.S.C. § 7543(a).  "Adopt" means "[t]o accept, consent to, *and put into effective operation*."  Black's Law Dictionary (4th ed. 1968) (emphasis added).  And, the object of "adopt"—a standard of emissions control—is defined by the Clean Air Act in past tense as "a requirement *established* by the State."  42 U.S.C. § 7602(k) (emphasis added).  In other words, California is free to establish an emission requirement—which, for CARB, requires completion of the formal notice-and-comment rulemaking prescribed by the

1  California Administrative Procedure Act—but California cannot put that standard into effective
2  operation or "attempt to enforce" it until and unless EPA acts under Section 209(b) to "waive
3  application of" Section 209(a).  42 U.S.C. § 7543(a), (b).

4     That is how Section 209 has operated since its inception.  EPA granted the State's inaugural
5  waiver for *already promulgated* provisions of the California Administrative Code.  33 Fed. Reg.
6  10,160 (July 16, 1968).  The waiver was needed for those provisions of state law to be effective
7  and enforceable, but not to be promulgated through the state rulemaking process in the first place.
8  *See also, e.g.*, 34 Fed. Reg. 7348 (May 6, 1969) (EPA waiving preemption of standards "adopted
9  by the State of California").  Like the federal executive branch, Congress has understood Section
10 209 to operate this way:  Against the backdrop of the practice just noted, Congress revisited and
11 amended Section 209(b) ten years after enactment and, in so doing, "expressed general approval
12 of [EPA's] subsection (b) decisions"—i.e., the ones that waived preemption for laws already on
13 California's books but not effective or enforceable until the waiver issued.  *Motor & Equip. Mfrs.*
14 *Ass'n v. EPA*, 627 F.2d 1095, 1114 (D.C. Cir. 1979); *see* H.R. Rep. No. 95-294 at 301–02 (1977)
15 ("In general, [EPA] has liberally construed the waiver provision so as to permit California to
16 proceed with its own regulatory program in accordance with the intent of the 1967 Act.").

17    The courts have shared this understanding as well, agreeing that California can finalize an
18 emission standard before being granted a waiver that "place[s]" it "into effect."  *Ford Motor Co.*
19 *v. EPA*, 606 F.2d 1293, 1298 (D.C. Cir. 1979); *see Motor Vehicle Mfrs. Ass'n of U.S. v. N.Y. State*
20 *Dep't of Env't. Conservation*, 17 F.3d 521, 534 (2d Cir. 1994) (rejecting the contrary argument);
21 *Cent. Valley Chrysler-Jeep v. Goldstene*, 563 F. Supp. 2d 1158, 1163 (E.D. Cal. 2008) (same).

22    But now, in an effort to challenge a California regulation that California *agrees* is neither
23 effective nor enforceable until and unless it receives a waiver from EPA in the future (ECF 79-1
24 at 3 ¶ 3), the United States and plaintiff manufacturers (*see* ECF 84 at 22:17-27) claim that
25 everyone has been wrong about the Clean Air Act all along and that the ACF regulation cannot
26 even exist on California's books.[3]

---

27    [3] Indeed, the United States' argument contradicts not only the longstanding understanding
28 of the entire federal government, state government, and regulated industry, but also the United
    (continued…)

5

The United States seizes (Opp. 7:6-8) on Congress's use of future tense in the requirement that California determine its "standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b)(1). "Will be" simply reflects the fact that new-motor-vehicle emission standards are forward-looking—i.e., take effect in future model years. It cannot change the meaning of "standards" as requirements already established, *id.* § 7602(k), and thus does not suggest the State cannot have established the requirements under the state legislative or rulemaking process before EPA acts. Under the succeeding statutory paragraph, moreover, EPA considers before issuing a waiver whether "each State standard *is* [present tense] at least as stringent as the comparable applicable Federal standard." *Id.* § 7543(b)(2) (emphasis added). This direction, too, applies to standards already *finalized* by the State. Across the board, Congress's tense choices support Defendants' reading of Section 209 as allowing California to establish standards before obtaining a waiver from EPA. California simply cannot make those standards effective or attempt to enforce them without an applicable preemption waiver.

The practical implications of the United States' reading only confirm it is wrong. As EPA has recognized, *see* 59 Fed. Reg. 36,969, 36,982 (July 20, 1994), it would be wasteful for CARB and EPA to expend effort to formulate and review the determinations set out in Section 209(b)(1) with respect to standards that the State might never end up establishing, or that predictably might be modified in the course of a notice-and-comment rulemaking.[4] The United States' reading also

States' own Complaint *in this very case*. The Complaint manifests—explicitly and implicitly—the understanding that EPA has employed since these provisions were enacted: that California's standards are first "promulgated by CARB *and then approved* through an EPA preemption waiver." Compl. ¶ 26 (emphasis added); *see also id.* ¶¶ 33, 48-49, 52 (describing California's "adopt[ion]" of specific regulations); *id.* ¶¶ 36, 54 (describing later waiver grants). The thrust of the Complaint is that the ACF regulation violates "the express prohibition in the Clean Air Act that bars any State *from attempting to enforce* its own emissions standards." *Id.* ¶ 2 (emphasis added). Accordingly, the United States claims injury from California's allegedly "ongoing enforcement" of the ACF regulation, *id.* ¶ 5, not finalization of the state regulatory process.
    Not only does the Complaint support the longstanding understanding of how Section 209 operates, but it also precludes the United States from arguing this theory of standing—at least without first seeking and being granted leave to amend its Complaint. This Court can reject the United States' theory on that ground alone.
    [4] It would be challenging for CARB to finalize *any* emission standard under the United States' reading of Section 209. The California Administrative Procedure Act, as amended in 1978, requires that CARB finalize an emission standard within one year of notification to the
(continued…)

would render EPA's waiver grants and California's standards unripe for judicial review, leaving "litigants, their attorneys, administrative agencies, and the courts" confronting "uncertain[ty] and complex[ity]" instead of the "predictable, workable framework," *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589 (2008), of post-promulgation waiver grants that has prevailed since 1967.

For similar reasons, the United States is wrong to suggest (Opp. 8:5-6) that its waiver-before-promulgation construction of Section 209(a) "is consistent with [Congress's] policy of promoting market stability in the automotive industry." The scenario where EPA grants California a waiver but the State does not immediately promulgate new or amended standards (or never promulgates them but leaves the option open indefinitely) would not foster regulatory stability. It is preferable for industry to know for sure what California's standards *are*, even before they become effective or enforceable following an EPA waiver. In fact, industry has flourished for many decades under precisely this system—the one the United States now asks this Court to reject. *See e.g.*, ECF 1 at ¶ 24 (alleging manufacturers sell "many thousands of … heavy-duty trucks" annually in California and other States that have "opt[ed]-in" to California's standards); ECF 23-18 at 1 (CTP parties, including manufacturers, asserting that industry is "strong and viable" and should maintain that status).[5] In any event, Section 209 requires EPA to affirm California standards' "consisten[cy] with" the requirement of adequate regulatory lead time before issuing waivers. 42 U.S.C. § 7543(b)(1)(C); *see also id.* § 7521(a)(2). Thus, the

---

public of a proposed standard, or else CARB must go through another round of notice and comment. Cal. Gov't Code § 11346.4(b). If EPA delayed in granting a waiver for any reason, CARB would be forced into serial and wasteful rounds of rulemaking for the same hypothetical standard. The Clean Air Act was not meant to impose such burdens on state rulemaking, much less to unreasonably delay reductions in harmful emissions. *See Am. Trucking Ass'ns v. EPA*, 600 F.3d 624, 629 (D.C. Cir. 2010) ("Congress consciously chose to permit California to blaze its own trail with a minimum of federal oversight.") (quoting *Ford Motor Co.*, 606 F.2d at 1297).

[5] The United States leans on Section 110 of the Clean Air Act, Opp. 7:13-16, but "adopt" means the same thing there as in Section 209. Section 110 allows (but does not require) States to "adopt and submit" laws to EPA that comprise a program to attain national ambient air quality standards. 42 U.S.C. § 7410(a); *see also id.* § 7410(c) (directing EPA to promulgate an adequate program for a State that does not do so). Because there is no federal preemption of the relevant state laws under Section 110, those state laws are "put into effective operation" before plans are submitted to EPA.

Clean Air Act promotes market stability not through the word "adopt" in Section 209(a), but through Section 209(b)(1)'s explicit criterion for EPA's waiver decisions.

The United States' interpretation also would raise constitutional infirmities that should be avoided. The Clean Air Act was enacted pursuant to the Commerce Clause, which "authorizes Congress to regulate interstate commerce directly," but "does not authorize Congress to regulate state governments' regulation of interstate commerce." *New York v. United States*, 505 U.S. 144, 166 (1992). The Act cannot "prohibit[] a State from enacting new laws." *Murphy v. NCAA*, 584 U.S. 453, 474-75 (2018).

Thus, in *Murphy v. NCAA*, the Supreme Court "look[ed] beyond the phrasing" of a federal preemption statute that provided that "*no State ... shall enact* or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to the rates, routes, or services of any covered air carrier." 584 U.S. at 478 (quoting 49 U.S.C. App. § 1305(a)(1) (1988)) (cleaned up, emphasis added). That language "might appear to operate directly on the States, but it is a mistake to be confused by the way in which a preemption provision is phrased." *Id.* at 478. The Court read this statutory text as instead "regulat[ing] the conduct of private actors, not the States," *id.* at 479, avoiding an interpretation that would prohibit the enactment of new laws, *id.* at 474. This Court should likewise avoid a construction that would be "as if federal officers were installed in [CARB's Board hearings] … armed with the authority to stop [Board members] from voting on any offending proposals." *Id.* at 474. There is no cause for interpreting Section 209(a) as regulating *California's* conduct, particularly as doing so would, at least, raise serious commandeering questions. Rather, where a state standard has been promulgated but EPA has not yet acted under Section 209(b) to waive preemption, Section 209(a) "confers on private entities [i.e., vehicle manufacturers] a federal right to engage in certain conduct [i.e., selling new motor vehicles]," without regard to not-yet-effective-or-enforceable California standards. *Id.* at 478-79.

Lastly, even if the above arguments were somehow insufficiently persuasive, the proper course would be not to declare California's laws preempted, but instead to construe them as contingent on EPA granting an applicable waiver—that is, to treat California's promulgation of

regulations as at most a *conditional* adoption of new emission standards that is not actualized until and unless a waiver is granted. Because no applicable waiver for the ACF regulation has yet issued, there has been no adoption of a standard in violation of Section 209(a), and the United States cannot have suffered an injury. Wherever possible, "[t]he Court is obligated to construe [state law] in such a way to avoid a construction that results in" preemption. *Marcotte v. Gen. Elec. Capital Servs. Inc.*, 709 F. Supp. 2d 994, 999 (S.D. Cal. 2010); *accord Unocal Corp. v. Kaabipour*, 177 F.3d 755, 769 (9th Cir. 1999); *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 603 P.2d 1329, 1331 (Cal. 1979). California has long understood, and does not dispute, that any emission standard subject to Section 209(a) must have an applicable EPA waiver to be effective. *See supra* 5:5-10.[6] CARB's formal request that EPA waive preemption for the ACF regulation, and its stipulation to an order preventing enforcement absent such a waiver (ECF 79-1 at 3 ¶ 3), are both irrefutable evidence of the State's understanding and intent in this regard.[7] Interpreting the ACF regulation as contingent under state law would not change anything on the ground because the State is not treating the regulation as effective or trying to enforce it.

## CONCLUSION

The Governor should be dismissed from the United States' Complaint for the reasons identified in Defendants' motion and because the United States does not object. The United States' challenge to the ACF regulation—part of its First Claim for Relief—should be dismissed for lack of standing or ripeness.

---

[6] *See also*, *e.g.*, CARB, Board Resolution 95-40 (Sept. 28, 1995) at 7 ("BE IT FURTHER RESOLVED that the Executive Officer shall, upon adoption, forward the amendments pertaining to new motor vehicle emission standards and accompanying enforcement procedures to the U.S. EPA with a request for a waiver of federal preemption, or confirmation that the amendments are within the scope of an existing waiver…."), *available at* https://ww2.arb.ca.gov/sites/default/files/barcu/regact/lev1995/lev1995resolution.pdf.

[7] CARB's waiver request is publicly available in the EPA docket on regulations.gov by entering the document number (EPA-HQ-OAR-2023-0589-0004). The portions specific to the part of the ACF regulation at issue here can be found at pages 15, 22-24, 39-40.

| | | |
|---|---|---|
| 1 | Dated: November 18, 2025 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | MYUNG J. PARK<br>Supervising Deputy Attorney General |

/s/ *M. Elaine Meckenstock*
M. ELAINE MECKENSTOCK
Deputy Attorney General
*Attorneys for Defendants*