1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MYUNG J. PARK, State Bar No. 210866
   Supervising Deputy Attorney General
3  BENJAMIN P. LEMPERT, State Bar No. 344239
   DAVID M. MEEKER, State Bar No. 273814
4  CECILIA D. SEGAL, State Bar No. 310935
   JONATHAN A. WIENER, State Bar No. 265006
5  M. ELAINE MECKENSTOCK, State Bar No. 268861
   Deputy Attorney General
6   1515 Clay Street, 20th Floor
    P.O. Box 70550
7   Oakland, CA  94612-0550
    Telephone:  (510) 879-0299
8  Fax:  (510) 622-2270
    E-mail:  Elaine.Meckenstock@doj.ca.gov
9  *Attorneys for Defendants*

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

14  **DAIMLER TRUCK NORTH AMERICA,**          2:25-cv-02255-DC-AC
    **LLC; INTERNATIONAL MOTORS, LLC;**
15  **PACCAR, INC.; and VOLVO GROUP**
    **NORTH AMERICA, LLC,**
16                                            **DEFENDANTS' REPLY IN SUPPORT**
                                Plaintiffs,   **OF THEIR MOTION TO DISMISS**
17                                            **DAIMLER TRUCK NORTH AMERICA**
                                              **ET AL.'S COMPLAINT**
18  **THE UNITED STATES OF AMERICA;**
    and **UNITED STATES ENVIRONMENTAL**       Date:       N/A
19  **PROTECTION AGENCY,**                    Time:       N/A
                                              Judge:      Hon. Dena Coggins
20                        Plaintiff-Intervenors,  Trial Date: Not Set
                                              Action Filed: 8/11/2025
21              v.

22

23  **CALIFORNIA AIR RESOURCES BOARD,**
    **STEVEN S. CLIFF,** in his official capacity as
24  the Executive Officer of the California Air
    Resources Board; and **GAVIN NEWSOM,** in
25  his official capacity as the Governor of
    California,
26                              Defendants.

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.      CARB Is Immune from This Suit and Should Be Dismissed ............................................ 1

II.     The Governor Is Immune from This Suit and Should Be Dismissed ................................ 1

III.    Plaintiffs' Claims Against the EO Should Be Dismissed ................................................. 3

        A.      Plaintiffs' Challenges to the EO Are Not Ripe ...................................................... 3

        B.      Plaintiffs Fail to State a Preemption Challenge to the EO ..................................... 4

        C.      Plaintiffs Fail to State a First Amendment Challenge to the EO ........................... 6

IV.     Plaintiffs' Claims Against the CTP Should Be Dismissed ................................................ 7

        A.      Plaintiffs Have Not Alleged Facts Sufficient to Establish Standing for
                Their First Amendment Challenge to the CTP ....................................................... 7

        B.      Plaintiffs Have Not Alleged Facts Sufficient to Establish Standing for
                Their Preemption Challenge to the CTP ................................................................ 8

        C.      Plaintiffs Fail to State a Preemption Challenge to the CTP ................................... 9

V.      Plaintiffs' Claims Against the May MAC Should Be Dismissed .................................... 13

        A.      The May MAC Is Moot ....................................................................................... 13

        B.      Plaintiffs Fail to State a Preemption Challenge to the May MAC ....................... 13

        C.      Plaintiffs Fail to State a First Amendment Challenge to the May MAC ............. 14

VI.     Plaintiffs' Challenge to the Advanced Clean Fleets Regulation's 2036 Sales
        Requirements Should be Dismissed ................................................................................ 14

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

Airlines for Am. v. City & Cnty. of San Francisco
   78 F.4th 1146 (9th Cir. 2023)..................................................................... 11, 12

Alton v. Alaska
   No. 1:13-CV-00008-SLG, 2014 WL 3895261 (D. Alaska Aug. 8, 2014)................................ 1

Am. Airlines, Inc. v. Wolens
   513 U.S. 219 (1995).......................................................................................... 11

American Encore v. Fontes
   152 F.4th 1097 (9th Cir. 2025).............................................................................. 7

American Trucking Association, Inc. v. City of Los Angeles
   569 U.S. 641 (2013).......................................................................................... 11

Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris
   729 F.3d 937 (9th Cir. 2013)............................................................................. 2, 3

Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.
   208 F.3d 1 (1st Cir. 2000)................................................................................. 12

Ass'n of Taxicab Operators USA v. City of Dallas
   720 F.3d 534 (5th Cir. 2013).............................................................................. 5

B&L Prods., Inc. v. Newsom
   No. 21-CV-01718-AJB-KSC, 2022 WL 3567064 (S.D. Cal. Aug. 18, 2022)......................... 2

Biden v. Nebraska
   600 U.S. 477 (2023).......................................................................................... 9

Black Diamond Asphalt, Inc. v. Superior Ct.
   109 Cal. App. 4th 166 (2003).............................................................................. 10

Cal. Trucking Ass'n v. S. Coast Air Quality Mgmt. Dist.
   No. LA CV21-06341 (C.D. Cal. Dec. 14, 2023) ....................................................... 5

Central Valley Chrysler-Jeep, Inc. v. Witherspoon
   No. CVF 04-6663 AWI LJO, 2007 WL 135688 (E.D. Cal. Jan. 16, 2007)............................ 3

Challenge v. Moniz
   218 F. Supp. 3d 1171 (E.D. Wash. 2016) ............................................................... 9

City & Cnty. of San Francisco v. Trump
   897 F.3d 1225 (9th Cir. 2018)............................................................................. 4

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*City of Los Angeles v. Santa Monica Baykeeper*
    254 F.3d 882 (9th Cir. 2001)................................................................... 10

4

*Cnty. of Santa Clara v. Trump*
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ...................................................... 4

5

6

*Davies v. Grossmont Union High School District*
    930 F.2d 1390 (9th Cir. 1991)................................................................... 7

7

*Engine Mfrs. Ass'n v. EPA*
    88 F.3d 1075 (D.C. Cir. 1996) ................................................................. 15

8

9

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*
    541 U.S. 246 (2004)................................................................................ 13

10

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist. (South Coast II)*
    498 F.3d 1031 (9th Cir. 2007)................................................................... 5

11

12

*Griffin & Griffin Expl., LLC v. United States*
    116 Fed. Cl. 163 (2014) .......................................................................... 10

13

14

*Hughes v. Alexandria Scrap Corp.*
    426 U.S. 794 (1976).................................................................................. 6

15

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*
    304 F.3d 829 (9th Cir. 2002)................................................................... 15

16

17

*Krainski v. Nevada*
    616 F.3d 963 (9th Cir. 2010).................................................................... 1

18

19

*Los Angeles Cnty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992)............................................................ 1, 2, 7

20

*Metropolitan Taxicab Board of Trade v. City of New York*
    633 F. Supp. 2d 83 (S.D.N.Y. 2009)..................................................... 4, 5

21

22

*Mobil Oil Expl. & Producing Se., Inc. v. United States*
    530 U.S. 604 (2000)............................................................................ 10, 12

23

24

*Montana v. BNSF Ry. Co.*
    623 F.3d 1312 (9th Cir. 2010).................................................................. 9

25

*Murphy v. Nat'l Collegiate Athletic Ass'n*
    584 U.S. 453 (2018) ............................................................................... 12

26

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Nutt v. United States*
    12 Cl. Ct. 345 (1987) ................................................................................... 10

*Our Watch With Tim Thompson v. Bonta*
    682 F. Supp. 3d 838 (E.D. Cal. 2023).......................................................... 8

*Rocky Mountain Farmers Union v. Corey*
    913 F.3d 940 (9th Cir. 2019)........................................................................ 14

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*
    547 U.S. 47 (2006) ....................................................................................... 9

*S. Cal. All. of Publicly Owned Treatment Works v. EPA*
    8 F.4th 831 (9th Cir. 2021).......................................................................... 14

*Susan B. Anthony List v. Driehaus*
    573 U.S. 149 (2014) ..................................................................................... 7

*United States v. King Cnty., Wash.*
    122 F.4th 740 (9th Cir. 2024)...................................................................... 6

*Valenzuela v. Ducey*
    329 F. Supp. 3d 982 (D. Ariz. 2018)........................................................... 3

*Washington v. Trump*
    766 F. Supp. 3d 1138 (W.D. Wash. 2025)................................................... 4

*Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*
    475 U.S. 282 (1986) ..................................................................................... 6

*Wolfe v. Strankman*
    392 F.3d 358 (9th Cir. 2004)........................................................................ 4

**STATUTES**

28 U.S.C. § 2283 ................................................................................................ 9

42 U.S.C.
    § 7543(a) ...................................................................................................... 9
    § 7543(e)(2)(A) ............................................................................................ 15

Cal. Health & Saf. Code
    § 39510(g) .................................................................................................... 3
    § 43016......................................................................................................... 2
    § 43016(a)(1)................................................................................................ 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XI ........................................................................................... 1, 7, 14

**REGULATIONS**

Cal. Code Regs. Title 13, § 1963.6 ............................................................................. 15

**FEDERAL REGISTER**

59 Fed. Reg. 36,969 (July 20, 1994) ........................................................................... 15

**OTHER AUTHORITIES**

11 Williston on Contracts § 30:19 (4th ed.) ................................................................ 11

Defendants' Reply I S O Motion to Dismiss Private Plaintiffs' Complaint (2:25-cv-02255-DC-AC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

The parties agree "that sovereign immunity prevents this Court from adjudicating [Plaintiffs'] state law claims (Counts V, VI, and VII)." ECF 84 (Opp.) at 2 n.1; *see also* ECF 78 (MTD) at 10:5-15. This Court should dismiss those claims without leave to amend *here* but without prejudice to re-filing in a proper forum. *See Alton v. Alaska,* No. 1:13-CV-00008-SLG, 2014 WL 3895261, at *4 (D. Alaska Aug. 8, 2014) ("This dismissal is without prejudice to [plaintiff] refiling his claims in state court."). The rest of Defendants' motion should also be granted for the reasons in the opening brief and below.

# ARGUMENT

## I.    CARB IS IMMUNE FROM THIS SUIT AND SHOULD BE DISMISSED

Plaintiffs' claims against CARB must be dismissed because "[t]he Eleventh Amendment bars suits against [state] agencies." *Krainski v. Nevada*, 616 F.3d 963, 967 (9th Cir. 2010) (cleaned up); *see also* MTD 7:14-27. Plaintiffs concede as much, arguing "CARB is a proper defendant" because "the Eleventh Amendment is inapplicable to *the United States'* claims." Opp. 19:15-16 (emphasis added). The United States' separate complaint does not provide these private Plaintiffs with an end-run around sovereign immunity to keep CARB in *their* Complaint.

## II.   THE GOVERNOR IS IMMUNE FROM THIS SUIT AND SHOULD BE DISMISSED

The Governor is also immune from this suit because Plaintiffs have failed to allege any facts that, if proven, could establish the connection with enforcement that *Ex parte Young* requires. This is true for all of the myriad state actions Plaintiffs challenge. MTD 8:1-10:4.

Seeking to keep the Governor in their challenges to the Executive Order (EO), Plaintiffs assert his "'connection' to [it] is plain." Opp. 19:27.[1] The Governor's connection to the EO's *issuance* is "plain," but that is insufficient. "[T]he state officer sued must have some connection with the *enforcement* of the [challenged] act." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (emphasis added) (cleaned up). Otherwise, the Governor and the Legislature would be proper defendants in any suit challenging a state statute, and that is not the law. *E.g.,*

---

[1] All challenges to the EO (against all Defendants) should be dismissed due to lack of ripeness, *infra* III.A, and for failure to state claims, *infra* III.B, III.C.

1

1    *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013);

2    *see also B&L Prods., Inc. v. Newsom*, No. 21-CV-01718-AJB-KSC, 2022 WL 3567064, at *4

3    (S.D. Cal. Aug. 18, 2022).[2]  Plaintiffs' 1981 district court decision, Opp. 20:15-17, cannot change

4    later Ninth Circuit precedent.  Nor can Plaintiffs find support in an atypical case—challenging the

5    numeric limit on judges appointed to a particular bench—where "enforcement" took the form not

6    of "enforcement proceeding[s]" but of appointing judges and overseeing their elections.  *Eu*, 979

7    F.2d at 704.  The Governor effectuates no similar legal condition through this EO—which, as

8    Plaintiffs effectively concede, merely provides intra-executive-branch directions to be carried out,

9    if at all, by *other* officials at later, indeterminate times.  Opp. 20:25 ("The EO states three times

10   that the 'California Air Resources Board *shall'* take specific actions.").  Plaintiffs are wrong that

11   "[t]he Governor does not need to be the actual enforcement authority," and that assertion

12   effectively concedes that they cannot establish the requisite enforcement connection.  Opp. 20:12.

13       Plaintiffs also seek to keep the Governor in their challenges to CARB regulations, the CTP,

14   and the May MAC, but this effort likewise fails because CARB officials, not the Governor, would

15   enforce those actions (if the May MAC were enforceable).  MTD 8:14-9:13.  Plaintiffs claim the

16   EO "is an enforcement mechanism" for these other actions, but California regulations and

17   contracts are not enforced through executive orders.  Plaintiffs themselves assert as much,

18   claiming that CARB's regulations and the CTP are both enforced through regulatory penalties.

19   Compl. 13:11-13; ECF 75 at 2:19-20, 10:11-12, 15:25-27; *but see infra* 12:7-9 (CTP enforced

20   through contract remedies).  The EO does not and could not impose penalties.  *E.g.*, Cal. Health

21   & Saf. Code § 43016.  Plaintiffs also argue that the May MAC is itself an enforcement

22   mechanism (e.g., Opp. 15:17-18), but never explain how (or why) the EO could be an

23   enforcement mechanism for another enforcement mechanism.

24       Plaintiffs fall back on arguing that the Governor "controls" CARB.  Opp. 20:5; *see also id.*

25   at 20:26-27; 21:16-23.  But if governors' "influence [over] state executive branch policies" were

26   sufficient to support an exception to sovereign immunity, they "would always be subject to suit

27   _____

28   [2] Plaintiffs cannot challenge the issuance of the EO because sovereign immunity bars
     retrospective relief (i.e., against *past* actions).  MTD 18:28.

2

1   [and the] exception would become the rule," *Valenzuela v. Ducey*, 329 F. Supp. 3d 982, 993 (D.

2   Ariz. 2018).[3]   True, the Governor appoints some members of the CARB Board, and the CARB

3   Chair advises the Governor.  Opps. 21:2-7.  But that does not give the Governor enforcement

4   "control."  Far from it.  Board members are required to "exercise their independent judgment as

5   officers of the state."  Cal. Health & Saf. Code § 39510(g).  Just as in *Association des Eleveurs*,

6   the Governor should be dismissed "because his only connection to [any enforcement] is his

7   general duty to enforce California law."  729 F.3d at 943.

8   **III.   PLAINTIFFS' CLAIMS AGAINST THE EO SHOULD BE DISMISSED**

9       **A.   Plaintiffs' Challenges to the EO Are Not Ripe**

10      The EO "merely provides policy priorities and directives for state agencies and

11  departments" pertaining to "future actions that might be undertaken," but "those actions have not

12  happened and might not happen."  ECF 94 (PI Order) at 30:1-4; MTD 10:21-11:11.  Plaintiffs

13  nonetheless strive to establish ripeness, claiming they have "articulated plans to violate" the EO

14  and can establish "a history of past prosecution or enforcement."  Opp. 17:3-16.  Plaintiffs cannot,

15  however, "violate" the EO—and there is no history of "enforcement"—because the EO imposes

16  no requirements on them (or any private party).  As Plaintiffs elsewhere reveal, when they speak

17  of violating the law and enforcement, they really mean CARB's regulations or the CTP—not the

18  EO.  *E.g.*, *id.* at 17:8-9; 17:12-13.  In fact, Plaintiffs assert the "EO has no other enforcement

19  mechanism beyond … California's regulatory apparatus."  Opp. 19:25-27.  In other words, any

20  regulatory direction in the EO "requires *regulatory action* to effectuate."  *Id.* at 18:13-15.

21  Plaintiffs might well have a ripe challenge, if and when that regulatory action occurs and injures

22  them.  *E.g.*, *Valenzuela*, 329 F. Supp. 3d at 986-989, 992 (challenge to agency action allegedly

23  taken to effectuate Executive Order).  They do not have a ripe challenge to this EO.

24      Plaintiffs' cases only underscore the point because they all involve challenges to actions

25  that, unlike this EO, were *enforceable* against the plaintiffs.  *See* Opp. 16-17; *Central Valley*

26  *Chrysler-Jeep, Inc. v. Witherspoon*, No. CVF 04-6663 AWI LJO, 2007 WL 135688 (E.D. Cal.

27       [3] The *Valenzuela* court dismissed the governor.  Plaintiffs' speculation, based on
ambiguous dicta, that the case might have come out differently in a hypothetical situation

28  different from this one is entirely irrelevant.  *See* Opp. 21:7-10.

1    Jan. 16, 2007) (challenging regulations); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225

2    (9th Cir. 2018); *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017); and

3    *Washington v. Trump*, 766 F. Supp. 3d 1138 (W.D. Wash. 2025) (challenging presidential

4    Executive Orders declaring new federal policies and directing enforcement of those policies).

5    Indeed, in *County of Santa Clara*, the court concluded the Executive Order "purport[ed] to create

6    real legal obligations." 250 F. Supp. 3d at 517. Here, in marked contrast, Plaintiffs cannot point

7    to a single legal obligation the EO purportedly imposes on them.

8        Plaintiffs now advance a last-ditch argument that agencies have purportedly "begun

9    implementing some parts of the EO." Opp. 16:20-23. No such facts are alleged in the Complaint,

10   so they cannot provide a defense to Defendants' facial attack. *See Wolfe v. Strankman*, 392 F.3d

11   358, 362 (9th Cir. 2004). Regardless, Plaintiffs cite nothing indicating implementation of the

12   parts of the EO they challenge and provide no authority for the proposition that implementation of

13   *one* part ripens a challenge to *other* parts. In fact, the press release on which Plaintiffs rely

14   simply announces a 7-page report recommending certain actions to the Governor. Opp. 16:23 &

15   n.6. Like the EO itself, this press release and this report do not compel or prohibit any action by

16   Plaintiffs.[4] And Plaintiffs are not injured by recommendations to the Governor for future actions

17   that, again, "have not happened and might not happen." PI Order 30:4.

18       **B.    Plaintiffs Fail to State a Preemption Challenge to the EO**

19       Even if it were ripe, Plaintiffs' preemption challenge to the EO should be dismissed for

20   failure to state a claim. MTD 12:11-13:2. The EO does not regulate Plaintiffs at all, much less in

21   ways preempted by Clean Air Act Section 209(a). *Id.* Nor can the EO be understood as a

22   "preliminary" step to the imposition of regulatory penalties, Opp. 17:19, particularly as it contains

23   no mention of such penalties, *see* ECF 23-17 (EO).

24       Relying on *Metropolitan Taxicab Board of Trade v. City of New York*, 633 F. Supp. 2d 83,

25   95-96 (S.D.N.Y. 2009), Plaintiffs contend that the EO indirectly creates an "effective mandate" to

26

27       [4] Plaintiffs also cite to a PowerPoint presentation from a public workshop in October 2025
     announcing a *future* CARB rulemaking proceeding regarding *light-duty* vehicle standards that
28   would not even apply to the medium- and heavy-duty vehicles at issue here. Opp. 16:23 & n.6.

                                                    4

comply with CARB's allegedly preempted standards.  Opp. 17:18-18:9.[5]  But there, the court concluded a regulatory rate differential was so enormous that it foreclosed any real choice and "instead operate[d] as an effective mandate."  633 F. Supp. 2d at 96-100.  The EO, in contrast, is not a regulation.  At most, it can be said to direct state agencies to establish certain incentives.  EO at 3.  And, unlike in *Metropolitan Taxicab*, the force of any such incentives is unknown because it remains to be seen whether, how, and when state agencies will act to implement the EO.  That underscores the lack of ripeness here, *see supra* III.A, but Plaintiffs also cannot allege facts sufficient to establish that any of these yet-to-be-implemented incentives will affect manufacturers' behavior at all, let alone to the extreme extent that all choice is eliminated.  *See Ass'n of Taxicab Operators USA v. City of Dallas*, 720 F.3d 534, 542 (5th Cir. 2013) (rejecting argument that law "effectively compel[led] a particular course of action"); *Cal. Trucking Ass'n v. S. Coast Air Quality Mgmt. Dist.*, No. LA CV21-06341, 2023 WL 9622548, at *23 (C.D. Cal. Dec. 14, 2023) (rejecting contention that rule's effects were "tantamount to a compulsion").  Plaintiffs especially cannot allege such facts about the EO's direction to CARB to "*explore opportunities for special considerations and flexibilities*" in future regulations, EO at 3 ¶ 3c (emphasis added), and their resort to mischaracterizing this soft direction to CARB as a "mandate" to manufacturers only highlights the infirmities in this claim, Opp. 17:13-14.

And Plaintiffs' challenges to the EO's other possible incentives fail for the additional reason that any such incentives (if they materialize) would fall within the market participant exception.  MTD 12:26-13:2.  The procurement and funding actions anticipated by the EO reflect the State's "own interest in its efficient procurement of needed goods and services."  *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.* (*South Coast II*), 498 F.3d 1031, 1044-49 (9th Cir. 2007) (cleaned up).  And courts have squarely rejected Plaintiffs' argument that the exception is inapplicable because of the EO's "manifest policy" purpose.  Opp. 18:15-24; *see South Coast II*, 498 F.3d at 1046 (State may further "policy goals" "to reduce air pollution" through market

---

[5] Plaintiffs similarly argue, but do not allege, that the EO enforces the CTP.  *Compare* Opp. 17:16-18:9 *with* Compl. ¶¶ 82b, 83.  The EO directs CARB to "*work with* manufacturers"— not to take enforcement action against them.  EO at 4.

participation); *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 809 (1976) ("Maryland entered the market for the purpose … of protecting the State's environment.").

Finally, Plaintiffs claim the EO had a hidden motive—not to reduce air pollution, as it says (EO at 1-2)—but to "object[] to" the Federal Government's actions targeting certain preemption waivers. Opp. 18:21-22. Certainly, the EO reiterates California's disagreement with those actions and describes the adverse impacts they will have on the State. EO at 2. But nothing in the Clean Air Act preempts Governors from expressing their disagreement with federal actions— whether through press release or Executive Order. And the EO's directions speak for themselves: they are instructions to consider actions that would reduce air pollution. *Id.* at 2-3. Unlike in Plaintiffs' cases (Opp. 18:15-19), this direction to reduce harmful impacts to state residents does not "diminish[]" the Federal Government's "control over enforcement of" any federal statute, *Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 288 (1986), or "interfer[e] with or control[] the operations of the Federal Government" in any way, *United States v. King Cnty., Wash.*, 122 F.4th 740, 756 (9th Cir. 2024). If it did, the United States would have joined this challenge. It did not. ECF 83 at 5 n.2.

**C.    Plaintiffs Fail to State a First Amendment Challenge to the EO**

Plaintiffs have also failed to allege "how the Executive Order restricts their exercise of free speech rights." PI Order at 33:27-34:2; *see also* MTD 11:12-12:10. Instead, Plaintiffs continue to assert their bare legal conclusion—which is entitled to no presumption on a motion to dismiss—that the "EO's reference to 'requirements agreed to as part of any agreements' necessarily includes the CTP's speech restrictions." Opp. 19:2-4. Plaintiffs do not dispute that "requirements" elsewhere refers only to *emission* requirements, MTD 12:6-8, but offer no explanation as to how or why the word would take on a different meaning within the same paragraph. If there were any doubt, the subject-verb relationship between "requirements" and "certify" confirms that the EO refers exclusively to emissions requirements (to which vehicles can be certified) and has nothing to do with speech. EO at 3 ¶ 3. And the EO's clear objective to "reduc[e] air pollution from transportation" does the same. EO at 1; *see also id.* at 2 ¶ 1. Plaintiffs cannot conjure restrictions on their speech from this text.

6

**IV.    PLAINTIFFS' CLAIMS AGAINST THE CTP SHOULD BE DISMISSED**

**A.    Plaintiffs Have Not Alleged Facts Sufficient to Establish Standing for Their First Amendment Challenge to the CTP**

Plaintiffs' Complaint does not establish standing for their First Amendment challenge to the CTP. MTD 17:20-18:28. Plaintiffs attempt to rely (Opp. 12-13) on *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), but the pleadings there identified "specific statements" petitioners "intend[ed] to make," which were "arguably proscribed by [the challenged] statute." *Id.* at 161-62 (cleaned up). Likewise, in *American Encore v. Fontes*, 152 F.4th 1097, 1114-15 (9th Cir. 2025), the plaintiffs submitted "declarations" with "specific examples" of speech and conduct that "they regularly engage[d] in," but would cease. Here, Plaintiffs point only to *past* conduct they allegedly curtailed due to their CTP commitments not to oppose certain CARB regulations. Opp. 12:14-16. There is no remedy for *past* speech, as it cannot be retroactively altered. Moreover, the Eleventh Amendment forbids retrospective relief here. *Eu*, 979 F.2d at 704. Plaintiffs' failure to allege any specific future conduct that will be (or even could be) chilled by the CTP precludes standing.

In their opposition, Plaintiffs mischaracterize Defendants' argument, contending that under "Defendants' theory … *no plaintiff* could ever bring an action for declaratory judgment or injunctive relief against a contract." Opp. 13:11-12. Not so. Defendants challenge Plaintiffs' standing on the basis of the allegations in *this* Complaint, which, as shown above, are a far cry from those where courts have found standing. Plaintiffs' reliance (Opp. 13:14-16) on *Davies v. Grossmont Union High School District*, 930 F.2d 1390, 1399 (9th Cir. 1991) is misplaced. That decision does not address standing, and for good reason: like plaintiffs in the cases discussed above, the *Davies* plaintiff sought to remove restrictions on specific future conduct. *Id.* at 1393. The Plaintiffs here lack standing to bring their First Amendment challenge to the CTP's non-opposition provisions because they have failed to allege any future speech that could be chilled or any credible threat of future enforcement of the CTP's non-opposition provisions.[6] Conceding

---

[6] Unlike in *Davies*, Defendants here have not asked any court—not this one and not the superior court where CARB filed its suit for breach—to enforce the non-opposition provisions in the CTP. ECF 85-1 at 7-9 (causes of action).

the latter point, Plaintiffs point to the EO and May MAC as "examples of the CTP being [currently] enforced," Opp. 12:27-28, but those actions do not enforce anything and, moreover, have no plausible impact on Plaintiffs' *speech*, *supra* III, *infra* V.  Plaintiffs have not met their burden to allege any specific, concrete injury-in-fact, or one that is fairly traceable to Defendants' conduct, as opposed to their voluntary decision to waive First Amendment rights in the CTP.

**B.    Plaintiffs Have Not Alleged Facts Sufficient to Establish Standing for Their Preemption Challenge to the CTP**

Plaintiffs likewise fail to establish standing for their CTP preemption claim.  The Complaint alleges that the sales commitments Plaintiffs made (as part of a bargained-for exchange) adversely impact their product plans and impose certification costs.  MTD 16:4-6 (citing Complaint).  Plaintiffs cannot sustain this standing theory after each of them unequivocally stated the opposite:  that all of their product plans are and will be independent of the CTP's terms and that they will not certify products with CARB pursuant to the CTP.  *Id.* at 15:25-16:9; *see also* 16:12-16 (no standing where plaintiffs removed themselves from allegedly injurious contractual relationships).[7]  Nor should the Court credit Plaintiffs' claims that they are injured by threats of lost "government contracting preferences" or the like, Opp. 8:17-20, because Plaintiffs *have already evaluated those risks* and chosen to disavow their CTP sales commitments.[8]

Plaintiffs attempt to avoid dismissal by asserting they bring a "pre-enforcement case," Opp. 9:13, but none of Plaintiffs' cases support the extension of pre-enforcement standing principles to voluntarily assumed *contractual* obligations—much less when plaintiffs had already begun carrying them out.  In fact, this new argument simply confirms that Plaintiffs seek to be immunized against any consequence for breaching contractual promises they made two years ago.  But the risk of such consequences does not support standing because Plaintiffs voluntarily assumed it and could have avoided it by declining to do so.  *See Our Watch With Tim Thompson v. Bonta*, 682 F. Supp. 3d 838, 852 (E.D. Cal. 2023) ("[P]laintiff's voluntary decision to [take

---

[7] Plaintiffs may be "making complex decisions" about the vehicles and engines they sell for other reasons, Opp. 10:18, but they cannot credibly tell the Federal Trade Commission they are making those decisions independent of the CTP *and* allege the CTP is controlling those decisions.  Resolving the contradiction between judicially noticeable statements and mere allegations does not require adjudication of the merits of any claim.  *Contra* Opp. 10:24-11:5.

[8] Plaintiffs also face no risk of regulatory "fines" (*id.*) under the CTP.  *Infra* 12:7-9.

1  certain steps] is a self-inflicted injury [that is not] fairly traceable to the defendant and thus is

2  insufficient to confer standing upon plaintiff.") (cleaned up).

3       Finally, CARB's separate suit in state court alleging Plaintiffs have breached or will breach

4  the CTP agreement does not undercut this motion to dismiss.  Plaintiffs have alleged (and argued)

5  that the CTP could be enforced only through regulatory penalties, Opp. 10:8; ECF 75 at 10:11-12,

6  and have not amended to allege injury from the state-court breach suit (which was filed after the

7  Complaint signaled Plaintiffs' intention to breach).  More significantly, under the Anti-Injunction

8  Act, these private Plaintiffs cannot obtain redress for any "injury" that might ultimately result

9  from the state-court suit.  28 U.S.C. § 2283; *see also, e.g.*, *Montana v. BNSF Ry. Co.*, 623 F.3d

10  1312, 1315 (9th Cir. 2010) ("Any doubts as to the propriety of a federal injunction against state

11  court proceedings should be resolved in favor of permitting the state courts to proceed....")

12  (cleaned up).  That the United States may be able to obtain such an injunction, ECF 91 at 4:1-5,

13  does not establish the requisite redressability for *this* Complaint.  Plaintiffs' cases treating one

14  plaintiff's standing as sufficient for other plaintiffs *in the same complaint* do not demonstrate

15  otherwise.  Opp. 11:15-16 (citing *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47,

16  53 n. 2 (2006); *Biden v. Nebraska*, 600 U.S. 477, 489 (2023)); *see also Challenge v. Moniz*, 218

17  F. Supp. 3d 1171, 1179 (E.D. Wash. 2016) (declining to apply "the 'standing for one is standing

18  for all' doctrine" across complaints).

19      **C.    Plaintiffs Fail to State a Preemption Challenge to the CTP**

20       Even if Plaintiffs had established standing, the Complaint would still fail to state a

21  preemption claim as to the CTP.  Plaintiffs seek to bring voluntarily made sales commitments

22  within the preempted scope of Clean Air Act Section 209(a), 42 U.S.C. § 7543(a), arguing that

23  these commitments either "readopt" the CARB regulations referenced in the agreement or

24  "attempt to enforce" those regulations.  Opp. 5:26, 6:11.[9]  Plaintiffs are wrong.

25       Plaintiffs rely almost exclusively on the incorporation of certain regulations as terms of the

26  CTP that specify the vehicles the manufacturers agreed to sell in California.  *Id.* at 6:2-10, 6:20-

27       [9] Plaintiffs' claim that the CTP "implements" CARB regulations (*id.* at 5:26), fails along

28  with their other theories—and for the additional reason that Section 209(a)'s text does not
    reference "implementation," whatever Plaintiffs mean by that term.  *See* 42 U.S.C. § 7543(a).

1   21, 7:6-8, 7:16.[10]  But this kind of incorporation does nothing more than define a term of the

2   contract, providing a shorthand and readily understood description of what one or more parties

3   agreed to do.  Such a term does not (re)adopt or attempt to enforce the laws it references.  Rather,

4   "obligations created by statute [or regulation] are separate animals from those which emanate

5   from contract." *Black Diamond Asphalt, Inc. v. Superior Ct.*, 109 Cal. App. 4th 166, 171 (2003).

6   Thus, when the government "exact[s] promises from a party with whom it contracts that he will

7   comply with [certain] regulations," those promises are independent of the referenced regulation

8   and are enforceable through "breach of contract" suit. *Nutt v. United States*, 12 Cl. Ct. 345, 351

9   (1987), *aff'd sub nom. Smithson v. United States*, 847 F.2d 791 (Fed. Cir. 1988).  And, as

10  independent *contractual* terms, these promises can continue to exist and remain enforceable—as a

11  matter of contract law—against the promisors, even if the referenced public law changes or is no

12  longer enforceable as a *regulatory* requirement.

13       Accordingly, when oil companies and the Federal Government "incorporated [statutory]

14  provisions" into contracts "as promises," *Mobil Oil Expl. & Producing Se., Inc. v. United States*,

15  530 U.S. 604, 609, 614 (2000), the Supreme Court held that the Government broke *its promise*—

16  not that it violated the incorporated statute—when the Government failed to abide, *id.* at 624.

17  Similarly, when one of the "regulations incorporated into the terms of" federal lease agreements

18  provided that "[l]eases shall be subject to cancellation if improperly issued," the Court of Federal

19  Claims enforced the cancellation of the leases as consistent with *their terms*. *Griffin & Griffin*

20  *Expl., LLC v. United States*, 116 Fed. Cl. 163, 176-77 (2014).

21       The CTP is no different.  In exchange for promises from CARB, Plaintiffs promised to sell

22  cleaner vehicles in California, with the terms (i.e., the agreed-upon vehicles) defined in a way all

23  the parties could easily understand—by reference to particular CARB regulations.  These same

24  requirements could have been restated in full in the agreement and would have had the same

---

25        [10] Plaintiffs' continuously shifting legal theories and the precedent contradicting all of
them (including their latest incorporation theory) are more than sufficient cause for this Court to

26  revisit it preliminary conclusion "that there are serious questions going to the merits of [this]
claim."  PI Order 32:6-7; *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th

27  Cir. 2001).  *See also* ECF 23 at 17:8-11 (arguing CARB repurposed the CTP); ECF 75 at 10:4-5,
10:18-19 (arguing CTP was not voluntary); *id.* at 10:11-12 (arguing CTP enforceable only

28  through regulatory penalties).

1    meaning; that the parties chose the simpler shorthand of cross-referencing regulatory provisions

2    does not change the nature of the commitment.  11 Williston on Contracts § 30:19 (4th ed.)

3    ("When a contract expressly incorporates a statutory enactment by reference, that enactment

4    *becomes part of the contract* for the indicated purposes just as though the words of that enactment

5    were set out in full in the contract.") (emphasis added).  The manufacturers' promises are thus

6    terms of the contract, not "readoption" of state law (an action only the State could take); and any

7    action to enforce the contract's terms is just that.

8         Cases considering whether a contractual term amounts to a regulation with the force of law

9    underscore that Plaintiffs cannot state a claim.  Courts considering such questions look to two

10   factors: 1) whether the allegedly preempted obligations were imposed unilaterally by the State (as

11   through statute or regulation) or were negotiated and agreed upon by the parties, and 2) whether

12   the obligations are enforced through civil or criminal penalties—i.e., a law enforcement means

13   available only to government actors—rather than contract remedies.  Thus, in *American Trucking

14   Association, Inc. v. City of Los Angeles*, 569 U.S. 641, 650 (2013), the challenged contract term

15   was preempted 1) because it was imposed not through "the parties' voluntary commitments" but

16   unilaterally through "a form of municipal ordinance," and 2) because violations were "punishable

17   by a fine or a prison sentence."  *See also id.* at 651 ("commitments result[ed] not from ordinary

18   bargaining…, but instead from the threat of criminal sanctions."); *Am. Airlines, Inc. v. Wolens*,

19   513 U.S. 219, 233 (1995) (distinguishing "what the State dictates" from "what the [party] itself

20   undertakes"); *cf. Airlines for Am. v. City & Cnty. of San Francisco*, 78 F.4th 1146, 1152 (9th Cir.

21   2023) (contrasting "government-imposed policies … with contractual commitments voluntarily

22   undertaken") (cleaned up); *id.* at 1152 ("use of civil penalties" relevant).[11]  These cases reflect the

23   constitutional principle that valid preemption provisions "impose[] restrictions or confer[] rights"

24   _____

25   [11] Relying on *Airlines for America*, Plaintiffs argue that the CTP's sales commitments
     must be preempted because CARB was purportedly not acting as a "market participant" when it
26   joined the agreement.  Opp. 7:1-15.  That case involved requirements *imposed by ordinance*, 78
     F.4th at 1147, not by negotiated agreement, so the market participant exception to preemption
27   was the City's sole defense.  Here, Defendants' contention is not that the market participant
     exception applies to the CTP but that voluntary agreements enforceable only through contract
28   remedies are not state laws preempted by Section 209(a).  This contention is supported by every
     preemption case *involving an agreement* cited by either party.

1    not on States, but "on private actors." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453,

2    477 (2018).  Such rights—once conferred—may be bargained away *voluntarily*.

3         That's precisely what happened here.  Indeed, Plaintiffs no longer dispute that the CTP is a

4    voluntary agreement with bargained-for terms by which all parties exchanged meaningful

5    consideration.  *E.g.*, Opp. 6 n.2.[12]  They point to cases involving compelled conduct, Opp. 8:6-14,

6    but allege no facts that could establish CARB compelled them to sign the CTP, *id.*  Nor could

7    they so allege.  MTD 7:13-19.  Plaintiffs' counter-factual assertion that CARB has refused to

8    disclaim regulatory penalties for CTP violations, *id.* at 7:24-25, likewise cannot sustain this

9    preemption claim, ECF 80 at 15:19-20; *see also* ECF 85-1 (seeking contract remedies).  And it is

10   of no import that the CTP does not expressly "include[] contract-based remedies," Opp. 7:23-24,

11   given that regulatory penalties are only available for violations of a statutory "provision" or of an

12   agency "order, rule, or regulation."  Cal. Health & Saf. Code § 43016(a)(1).

13        Plaintiffs resort to claiming that one form of consideration CARB offered—its agreement to

14   "initiat[e] rulemaking actions"—means the contract itself is an exercise of regulatory authority.

15   Opp. 8:12.  That assertion is belied by *Mobil Oil* in which the Federal Government's commitment

16   to engage in regulatory activity—"to approve an Exploration Plan that satisfied [statutory]

17   requirements within 30 days of its submission"—was a "contractual promise."  *Mobil Oil*, 530

18   U.S. at 613; *see also* ECF 81 ¶¶ 7, 8 (other examples).  Indeed, none of the cases addressing

19   whether a *contract term* is preempted discuss, much less turn on, the form of consideration

20   offered.  Plaintiffs' exclusive citation (Opp. 7:12-15) to an *ordinance*'s "enforcement

21   mechanisms," *Airlines for Am.*, 78 F.4th at 1154, concedes the point.

22        The Clean Air Act's preemption provision was "intended to govern formal regulations," not

23   "voluntary and cooperative agreements," like the CTP, "between the states and [manufacturers]."

24   *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1, 7 (1st Cir.

25   2000).  Plaintiffs' claim should be dismissed.

26   _____

27       [12] *Airlines for America* does not suggest that a voluntary commitment can somehow
     become involuntary later.  *Contra id.*  Plaintiffs there could object to the city's unilateral
     application of existing penalties to new conduct even though they had not previously challenged

28   those penalties.  78 F.4th at 1154.  No such extension (or other unilateral) action is at issue here.

**V.    PLAINTIFFS' CLAIMS AGAINST THE MAY MAC SHOULD BE DISMISSED**

    **A.    The May MAC Is Moot**

      The May MAC has been superseded by the August MAC, so challenges to it are moot. MTD 13:11-14:2. Plaintiffs cannot establish the threshold point that the August MAC was issued "because of" this litigation. *Id*. at 13:15-17. They erroneously claim the August MAC "cites this litigation as one of the reasons for its issuance," Opp. 14:15-16, when, in fact, there is only a background reference to this case, ECF 73-32 at 1. Plaintiffs also argue that the August MAC is an "escalation"—rather than a repeal—of the May MAC because the later advisory does not provide them with "certainty or predictability." Opp. 14:10-12. "Escalations" are typically sufficiently different from the actions that preceded them to preclude preservation of a challenge to the earlier action. Regardless, the relevant part of the August MAC merely advises the public that a future judicial opinion concerning the invalidity of allegedly preemptive resolutions would mean the relevant CARB regulations never ceased to have effect. ECF 73-32 at 3. That CARB will consider its enforcement options *when and if such an opinion issues*, *id.*, does not escalate anything, much less render the May MAC operative or likely to become so in the future. Plaintiffs may well have objections to "the August MAC and Emergency Rulemaking," Opp. 14:26-15:5, but to have those objections heard, Plaintiffs must amend or supplement their complaint. The August MAC was a significant departure from the May MAC such that its plain text—followed by a rulemaking to codify pathways absent from, and inconsistent with, the May MAC—demonstrates mootness. MTD 13:17-14:2; PI Order 29:18-19.

    **B.    Plaintiffs Fail to State a Preemption Challenge to the May MAC**

      Even assuming the May MAC is not moot, Plaintiffs fail to state a preemption claim against it. Plaintiffs weakly contend that the May MAC is an "attempt to enforce" allegedly preempted standards, Opp. 15:7-18, relying on the Supreme Court's statement that such attempts are "not limited to the actual imposition of penalties for violation" but can include certain "steps preliminary to that action," *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 257 (2004) ("*South Coast*"). But, as the Supreme Court made clear, "attempts to enforce" take the form of "command[s], accompanied by sanctions," *id.* at 255, and the May MAC does not

13

1  "command" anything, much less impose sanctions.  On Plaintiffs' view, any advisory guidance

2  automatically becomes a "preliminary" step to enforcement.  The Court should reject such an

3  expansive reading of the statute.  *Cf. S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8

4  F.4th 831, 838 (9th Cir. 2021) (affirming dismissal of challenge to agency guidance document

5  that, "standing alone, will [not] cause [plaintiffs] to face" enforcement action).

6      **C.    Plaintiffs Fail to State a First Amendment Challenge to the May MAC**

7      Plaintiffs' attempts to save their First Amendment claim also fail.  They misconstrue the

8  May MAC and attempt to conflate it with the CTP in a failed attempt to sidestep the fact that the

9  May MAC does not contain any language that restricts, or even concerns, Plaintiffs' speech.  The

10  fact that the May MAC refers to the CTP's commitments concerning *vehicle sales*, Opp. 15:23,

11  does not transform that advisory into a *speech* condition.  The Complaint simply does not, and

12  cannot, allege that the May MAC touches on speech.  Compl. ¶ 112; Opp. 15:20-25 (contending

13  May MAC addresses only *emissions* regulations).  It is Plaintiffs, not Defendants, who now say

14  the May MAC means something other than what it says.  *See* Opp. 15:28.  Plaintiffs cannot state a

15  claim.

16  **VI.    PLAINTIFFS' CHALLENGE TO THE ADVANCED CLEAN FLEETS REGULATION'S 2036
17  SALES REQUIREMENTS SHOULD BE DISMISSED**

18      Finally, Plaintiffs cannot save their preemption challenge to sales requirements that do not

19  take effect for at least nine years and that will only ever be enforced if EPA waives the very

20  preemption Plaintiffs assert injures them.  Plaintiffs now argue that the "adopt[ion]" of these sales

21  requirements—rather than future enforcement—is preempted.  Opp. 22:17-27.  That argument is

22  wrong, as explained in the concurrently filed reply on Defendants' motion to dismiss the United

23  States' complaint.  But, regardless, these private Plaintiffs cannot state a claim on that ground.

24  Retrospective relief for a "state's past [alleged] violation of law"—such as for CARB's past

25  adoption of a regulation—"is barred by the Eleventh Amendment" in suits by private parties.

26  *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 950 (9th Cir. 2019).  And, even if they

27  could overcome sovereign immunity (they cannot), these Plaintiffs would still have to allege facts

28  sufficient to overcome a laches defense.  "Laches is an equitable time limitation on a party's right

1    to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep

2    on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002)

3    (cleaned up). These Plaintiffs have slept on their rights for more than forty years, opting not to

4    assert that California must obtain a preemption waiver before it even codifies new motor vehicle

5    emission standards. *See* ECF 73-30 ¶¶ 4-17 (history of heavy-duty emission regulations). In fact,

6    EPA finalized a rule more than twenty years ago, confirming the opposite interpretation from the

7    one Plaintiffs advance here. 59 Fed. Reg. 36,969, 36,982 (July 20, 1994) ("[S]ections 209(a) and

8    (b) … provide that the waiver process commences after state regulatory adoption"); *see also id.*

9    (adopting same interpretation for similar language in then-new Section 209(e)(2)(A), 42 U.S.C.

10   § 7543(e)(2)(A)). They very "industry trade association" that represents these Plaintiffs (Compl.

11   ¶ 38) challenged *other* parts of that rule but *not* the interpretation of "adopt." *Engine Mfrs. Ass'n*

12   *v. EPA*, 88 F.3d 1075, 1082 (D.C. Cir. 1996) (describing EMA's challenges). Plaintiffs point to

13   nothing that could render reasonable their decades-long delay in claiming that EPA and CARB

14   have been wrong all along.

15   　　　Plaintiffs also try to preserve this claim by asserting "nine years is an incredibly short

16   window" for them to prepare to meet these requirements and thus they are injured now. Opp.

17   23:3. But the one paragraph they cite to, *id.* at 23:5, says different: that "four years" of lead time

18   is required, Compl. ¶ 39. Plaintiffs also imply that CARB conceded Plaintiffs need lots of lead

19   time for these requirements because it originally sought a waiver in 2023 and that a single former

20   CARB official referred to these requirements as a "zombie." Opp. 22:12-14, 23:24-24:3. But the

21   original Advanced Clean Fleets regulation had *other* provisions designed to take effect as early as

22   2024. *Those* provisions resulted in a waiver request in 2023; and *those* provisions might have

23   been referred to by some as "zombies" if not repealed (as they have been). None of that suggests

24   Plaintiffs have established standing for, or stated, a claim against the 2036 sales requirements.[13]

25   　　　　　　　　　　　　　　　**CONCLUSION**

26   　　　Defendants' motion to dismiss should be granted.

27   　　　[13] Plaintiffs' reference to Cal. Code Regs. tit. 13, § 1963.6, Opp. 23:27-28, is misplaced
     both because such a reference is absent from the Complaint and because this provision mirrors the
28   one that is unenforceable, absent a waiver, pursuant to stipulation and court order.

Dated:  November 18, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General



*/s/ M. Elaine Meckenstock*
M. ELAINE MECKENSTOCK
Deputy Attorney General
*Attorneys for Defendants*

16