ADAM R.F. GUSTAFSON                          ERIC GRANT
~~Acting~~ _Principal Deputy_ _Assistant Attorney General_———— _United States Attorney_

ROBERT N. STANDER                          EDWARD A. OLSEN
_Deputy Assistant Attorney General_        _Assistant United States Attorney_
JOHN K. ADAMS                              501 I Street, Suite 10-100
DAVID D. MITCHELL                          Sacramento, California 95814
United States Department of Justice        (916) 554-2821
Environment & Natural Resources Div.
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5905
robert.stander@usdoj.gov
john.adams3@usdoj.gov
~~David.Mitchell~~_david.mitchell_@usdoj.gov

_Counsel for_ ~~_Plaintiffs_~~-_Intervenors_-_Plaintiffs_

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>_THE UNITED STATES OF AMERICA,_ and _UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,_<br><br>_Intervenors-Plaintiffs._<br><br>_v._<br><br>CALIFORNIA AIR RESOURCES BOARD_, and_ STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, ~~and GAVIN NEWSOM, in his official capacity as the Governor of California,~~<br><br>Defendants_._<br><br>~~~~ | ~~Civil Action~~ No. 2:25-cv-02255-DC-AC<br><br>_FIRST AMENDED_ COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>_Judge: Hon. Dena Coggins_<br>_Trial Date: Not Set_<br>_Action Filed: August 11, 2025_ |

~~First Amended~~ Complaint-in-Intervention
~~Case No. 2:25-cv-02255-DC-AC~~

1    THE UNITED STATES OF AMERICA, and
2    UNITED STATES ENVIRONMENTAL
     PROTECTION AGENCY,
3                Plaintiffs-Intervenors.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                          2

**INTRODUCTION**

1.     In defiance of federal law, the State of California is attempting to use its own vehicle and engine emissions standards through a so-called "Clean Truck Partnership" to ban internal-combustion engines in heavy-duty trucks, notwithstanding duly enacted federal statutes specifically providing that those regulatory standards are preempted. The Clean Truck Partnership is California's attempt to enforce three sets of stringent emissions standards adopted by the California Air Resources Board ("CARB"): the Omnibus' Low NOx ("Omnibus") rule, the Advanced Clean Trucks ("ACT") rule, and the Advanced Clean Fleets ("ACF") rule. Individually or collectively, these emission standards effectively impose a nationwide ban on internal-combustion engines in heavy-duty trucks by 2036.

2.     The decision whether to ban internal-combustion engines in heavy-duty trucks rests ultimately with the federal government. And it has declined to take such a far-reaching step. In June 2025, the President signed into law Congressional joint resolutions providing that Environmental Protection Agency ("EPA") preemption waivers for the Omnibus and ACT rules "shall have no force or effect." Pub. L. No. 119-15, 139 Stat. 65 (ACT); Pub. L. No. 119-17, 139 Stat. 67 (Omnibus). These rules, along with the ACF regulation for which EPA had never issued a waiver, are now preempted under the express prohibition in the Clean Air Act that bars *any* State from *attempting to* enforce its own emissions standards. *See* 42 U.S.C. § 7543(a).

3.     But neither the Clean Air Act nor the Congressional disapprovals signed into law by the President have stopped CARB from demanding compliance with California's preempted emissions standards. To the contrary, CARB continues to threaten truck manufacturers who refuse to comply with its preempted regulations with severe civil sanctions and hostile regulatory treatment. Recently in August 2025, CARB issued a Manufacturers Advisory Correspondence stating its intent to continue certifying heavy-duty trucks to the preempted standards. While that guidance

Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook
Formatted: Font: Century Schoolbook

1    provides other certification options, those options are also preempted. The guidance

2    also threatens retroactive enforcement of the preempted emissions standards.

3        4.    On August 11, 2025, the U.S. House of Representatives Committee on

4    Energy and Commerce notified CARB of its illegal actions: "[T]he Committee has been

5    made aware that CARB staff is denying auto manufacturers approval to bring vehicles

6    to market unless the manufacturers agree to comply with the preempted regulations."

7    U.S. House of Representatives Committee on Energy and Commerce, *Letter to Steven*

8    *S. Cliff* at 2 (Aug. ~~11, 2025), https://perma.cc/EB5X-FZR2.~~11, 2025),

9    https://perma.cc/EB5X-FZR2.

10        5.    And CARB continues to its attempts to impose unlawful emissions

11    standards on heavy-duty trucks. On September 15, 2025, CARB initiated an

12    emergency vehicle emissions rulemaking that purports to revive the emissions

13    standards that preceded the Omnibus rule but is in fact different. That rule was

14    adopted on an emergency basis and CARB plans to make the amendments permanent.

15    This rule is preempted and unlawful without an EPA preemption waiver that CARB

16    has not sought and does not have.

17        ~~5.~~6.    California's defiance of federal constitutional and statutory law must

18    stop: CARB's ongoing enforcement of preempted California emissions standards

19    grossly intrudes on the exclusive authority of the federal government to regulate

20    motor vehicle and engine emissions under the Clean Air Act, according to national

21    uniform standards. And it harms ordinary citizens from coast to coast by blocking the

22    sale of fossil-fuel powered heavy-duty trucks, which are the lifeblood of our interstate

23    commerce, as they transport a vast amount of goods and materials every day that keep

24    businesses operating, consumers stocked, and prices low.

25        ~~6.~~7.    Because CARB is defying the supremacy of federal authority that

26    Congress enacted in the Clean Air Act's Title II mobile-source program in its

27    determination of the public interest, ~~Plaintiffs~~ Intervenors-Plaintiffs the United

28    States EPA (collectively, the "United States") bring this action against CARB,

First Amended Complaint-in-Intervention

~~Case No. 2:25-cv-02255-DC-AC~~ 2

1    California, and its Governor to stop California's ongoing usurpation of federal
2    authority to set national uniform emissions standards for mobile sources. The
3    Supremacy Clause of the Constitution and the Clean Air Act's preemption provision
4    prevent California from enforcing preempted emissions standards, through the Clean
5    Truck Partnership or otherwise.

6    7.8.  The Court should declare the ACT, ACF, and Omnibus, and Emergency
7    rules, the August 2025 Manufacturers Advisory Correspondence, and the Clean Truck
8    Partnership preempted and therefore unlawful, and itthe Court should enjoin their
9    implementation and enforcement.

**JURISDICTION AND VENUE**

11    8.9.  This Court has subject matter jurisdiction over the claims in this
12    Complaint in Intervention under 28 U.S.C. §§ 1331 and 1345.

13    9.10.  This Court may order the injunctive relief requested under its authority
14    to hear cases in equity seeking to enjoin violations of federal law. *See Arizona v. United*
15    *States*, 567 U.S. 387 (2012); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575
16    U.S. 320, 327 (2015); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477,
17    491 n.2 (2010); *United States v. Abbott*, 85 F.4th 328, 332 (5th Cir. 2023). The Court
18    may order the declaratory relief requested under 28 U.S.C. §§ 2201 and 2202.

19    10.11. Defendants California Air Resources Board and Steven S. Cliff
20    (collectively, "CARB"), in his official capacity as the Executive Officer of the California
21    Air Resources Board, are charged with implementing and enforcing the regulations at
22    issue. Defendant Gavin Newsom, in his official capacity as the Governor of California,
23    is charged with enforcing state law and has directed CARB to take actions related to
24    enforcement of the state regulations discussed herein.

25    11.12. Venue is proper in this District under 28 U.S.C. § 1391(b) because all
26    Defendants maintain an office and conduct their official duties within this judicial
27    district, and a substantial part of the events or omissions giving rise to this action
28    occurred within this judicial district.

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                           3

**THE PARTIES**

1

2    ~~12.~~13. Plaintiff-Interventor the United States of America is suing on its own

3    behalf, on behalf of its citizens, and on behalf of its executive department.

4    ~~13.~~14. Plaintiff-Intervenor the U.S. Environmental Protection Agency is a

5    federal executive agency with responsibility for administering the Clean Air Act,

6    including the regulation of motor vehicle and engine emissions.

7    ~~14.~~15. Defendant California Air Resources Board is a branch of the California

8    Environmental Protection Agency, which is an agency of the State of California. The

9    California Health and Safety Code authorizes CARB to promulgate and enforce

10   regulations to control emissions from new motor vehicles and engines. CARB is

11   headquartered in Sacramento, in the State and Eastern District of California, and it

12   performs its official duties throughout the State of California.

13   ~~15.~~16. Defendant Steven S. Cliff is the Executive Officer of CARB. Defendant

14   Cliff is responsible, directly and through CARB, for the promulgation,

15   implementation, and enforcement of the ACT rule, the ACF rule, and the Omnibus

16   rule, including through the Clean Truck Partnership. He is also authorized to

17   implement and enforce all motor vehicle emission standards in the State of California.

18   The Executive Officer maintains an office in Sacramento, in the State and Eastern

19   District of California, and he performs his official duties in Sacramento, California.

20   He is sued in his official capacity.

21   ~~16.    Defendant Gavin Newsom is the Governor of the State of California.~~

22   ~~Governor Newsom has directed CARB to continue enforcing preempted CARB~~

23   ~~regulations.   Governor Newsom issued an Executive Order threatening vehicle~~

24   ~~manufacturers with detrimental regulatory treatment for failure to follow the Clean~~

25   ~~Truck Partnership or for failing to certify their products in compliance with preempted~~

26   ~~CARB regulations.   This suit is brought against the Governor in his official capacity.~~

27   ~~The Governor maintains an office in Sacramento, in the State and Eastern District of~~

28   ~~California, and performs his official duties in Sacramento, California.~~

First Amended Complaint-in-Intervention
~~Case No. 2:25-cv-02255-DC-AC~~                                                                  4

1                           **APPLICABLE LAW**

2    **I.**      **The Clean Air Act's Mobile Source Program**

3       17.     In 1965, Congress amended Title II of the Act to authorize federal

4 emission standards for motor vehicles. Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965).

5 Then as now, section 202 governs federal emission standards for air pollutants

6 emitted from new motor vehicles or engines found to "cause, or contribute to . . . air

7 pollution which may reasonably be anticipated to endanger public health or welfare."

8 42 U.S.C. § 7521(a)(1). In setting those standards, EPA must consider technological

9 feasibility, lead time, and "cost of compliance." *Id.* § 7521(a)(2).

10       18.     Even after section 202's enactment, many states continued developing

11 their own emission programs. *See, e.g., Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't*

12 *of Envtl. Conservation*, 17 F.3d 521, 525 (2d. Cir. 1994). Congress responded in 1967

13 by adding section 209(a), a broad preemption provision. This provision is the

14 "cornerstone" of Title II. *Motor Vehicle Mfrs.*, 17 F.3d at 526.

15       19.     Section 209(a) provides: "No State . . . shall adopt or attempt to enforce

16 any standard relating to the control of emissions from new motor vehicles." 42 U.S.C.

17 § 7543(a). Further: "No State shall require certification, inspection, or any other

18 approval relating to the control of emissions from any new motor vehicle or new motor

19 vehicle engine as condition precedent to the initial retail sale, titling (if any), or

20 registration of such motor vehicle, motor vehicle engine, or equipment." *Id.* This

21 differs from the Act's other programs. Congress chose cooperative federalism in Title

22 I (generally governing stationary sources) but national uniformity in Title II (mobile

23 sources). *Compare id.* § 7416 (retention of state authority), with *id.* §7543(a)

24 (preemption of state emission regulations).

25       20.     Congress left only one narrow path to an exception to section 209(a)'s

26 broad preemptive reach with respect to emission standards for new motor vehicles

27 and engines. Specifically, in what is now section 209(b), Congress allowed EPA to

28

<u>First Amended </u>Complaint-in-Intervention
~~Case No. 2:25-cv-02255-DC-AC~~                                                        ~~5~~

1  grant a preemption waiver to a state that adopted certain emissions standards before
2  March 30, 1966. 42 U.S.C. § 7543(b). Congress knew this meant only California.

3      21.    To receive a waiver for an emissions standard, and then impose the
4  certification requirements, California must first "determine[] that [its own] State
5  standards will be, in the aggregate, at least as protective of public health and welfare
6  as applicable Federal standards." *Id.* § 7543(b)(1).

7      22.    But EPA cannot promulgate a waiver if it finds, after notice and
8  opportunity for a public hearing, that: (1) "the determination by [California] is
9  arbitrary and capricious," (2) California "does not need such State standards to meet
10 compelling and extraordinary conditions"; or (3) "such State standards and
11 accompanying enforcement procedures are not consistent with [section 202(a)]." *Id.*
12 § 7543(b)(1).

13     23.    Congress included the California waiver provision because of the State's
14 "unique" smog problems at the time. H.R. Rep. 90-728, at 1958, 1986 (1967). These
15 were the "compelling and extraordinary circumstances sufficiently different from the
16 Nation as a whole" to justify limited deviation from section 209(a)'s demand for
17 uniformity. *Id.* at 1956; *see* S. Rep. 90-403, at 33 (1967).

18     24.    In 1977, Congress again amended the Act and added section 177. *See*
19 Pub. L. No. 95-95. That provision permits "any State" with EPA-approved plans for
20 regulations of certain air pollutants under Title I of the Act to "adopt and enforce"
21 standards for new motor vehicles or vehicle engines governed by Title II of the Act
22 that are "identical to the California standards for which a waiver has been granted."
23 42 U.S.C. § 7507.

24     25.    In other words, States can comply with Title II of the Act by adopting
25 EPA's Title II standards, or California's standards with an EPA approved preemption
26 waiver. *Id.*  But in doing so, Congress reaffirmed the national preemption policy for
27 motor vehicle and engine emissions regulation by explicitly prohibiting States from

28

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                     6

1  taking any action that would create a vehicle or engine different than one certified in

2  California, "or otherwise create such a 'third vehicle.'" *Id.*

3      26.    Consequently, if EPA issues a waiver, there are at most two sets of

4  emissions standards applicable to vehicle manufacturers: (1) the federal standards;

5  and (2) the California standards, promulgated by CARB and then approved through

6  an EPA preemption waiver, and adopted by any other opt-in State under section 177.

7      **II.    The Congressional Review Act**

8      27.    Congress enacted the Congressional Review Act ("CRA") in 1996 "as an

9  exercise of the rulemaking power of the Senate and House of Representatives." 5

10  U.S.C. § 802(g)(1). The CRA establishes a set of Congressional procedures for

11  reviewing and disapproving certain agency rules through joint resolutions passed by

12  majority vote of both the House and Senate and presented to the President.  A joint

13  resolution under the CRA is federal law, enacted in accordance with "the process of

14  bicameralism and presentment."  *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d

15  553, 563 (9th Cir. 2019).

16      28.    Before any administrative rule can take effect, the agency must submit

17  a "report" to Congress containing a copy of the rule. *Id.* § 801(a)(1). If it chooses,

18  Congress may then disapprove the rule by passing a "joint resolution" that is

19  presented to the President for his signature or veto. *Id.* § 802. Once a joint resolution

20  disapproving an agency rule is signed into law by the President, the rule "shall be

21  treated as though such rule had never taken effect," *id.* § 801(f), and "shall have no

22  force or effect," *id.* § 802(a).  Further, the agency cannot reissue a "new rule that is

23  substantially the same" "unless the reissued or new rule is specifically authorized by

24  a law enacted after the date of the joint resolution disapproving the original rule." *Id.*

25  § 801(b)(2).

26      29.    The CRA expressly precludes judicial review: "No determination, finding,

27  action, or omission under this chapter shall be subject to judicial review."  5 U.S.C.

28  § 805; *Bernhardt*, 946 F.3d at 563 (barring review of whether Congress complied with

First Amended Complaint-in-Intervention

Case No. 2:25-cv-02255-DC-AC                                                7

1  the CRA procedures); *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222,

2  1236 (10th Cir. 2020) (barring review of whether administrative agencies complied

3  with the CRA procedures because "the CRA unambiguously prohibits judicial review

4  of any omission by any of the specified actors").

5  **FACTUAL ALLEGATIONS**

6  **I.     California's Regulatory Overreach for Heavy-Duty Trucks**

7       30.     On September 23, 2020, California Governor Gavin Newsom issued

8  Executive Order N-79-20 that directed CARB to develop and propose regulations that

9  would increase the share of zero- and near zero-emissions vehicle sales in California

10 toward a 100% sales goals for 2035 or 2045, depending on the vehicle category. *See* CA

11 Exec. Order N-79-20 §§ 1-2 (Sept. 23, 2020).

12      31.     This order was not based on unique air pollution challenges in California

13 but instead responded to the global "climate change crisis that is happening now," to

14 "accelerate [California's] actions to mitigate and adapt to climate change," and to

15 prioritize "clean transportation" options and "zero emissions" technologies. *Id.* at

16 Preamble.

17      32.     CARB responded with an assault on heavy-duty trucks with internal-

18 combustion engines—the backbone of the ground shipping in the United States.[1]

19 **A.     The Advanced Clean Trucks Rule (ACT)**

20      33.     In January 2021, CARB adopted the "Advanced Clean Trucks" ("ACT")

21 rule. *See* CARB, Exec. Order R-20-004 (Jan. 26, 2021).  Under the ACT rule, vehicle

22 manufacturers incurred "deficits" based on the number of heavy-duty trucks produced

23 and sold in California for each model year beginning in 2024 and ending in 2035. *See*

24 Cal. Code Regs. tit. 13, § 1963.1(a) (2025).

25      34.     Covered manufacturers were required to make up those deficits with

26 "credits" obtained by selling zero- and near zero-emissions heavy-duty trucks. *See id*

---

27      [1] "Heavy-duty" vehicles means vehicles with a gross vehicle weight rating (the

28 loaded weight of a single vehicle) of more than 8,500 lbs. 40 C.F.R. § 1037.801.

§§ 1963.2-.3. For each model year, the deficit calculation increased, but the credit calculation remained the same. *Id.* §§ 1963.1-.2(a)-(b). The effect was to require covered manufacturers to sell an increasing number of zero- and near zero-emitting vehicles each model year.

35.    Covered manufacturers could also meet their annual credit quota by trading, selling or otherwise transferring credits from other manufacturers. *See id.* § 1963.2(e) (2025). But that option existed only if other manufacturers had produced excess credits for the relevant model year. *See id.* §§ 1963.2(g) (imposing limited credit lifetime), 1963.3(a) (requiring compliance for each model year).

36.    On April 6, 2023, EPA approved California's request for a preemption waiver for the ACT rule under section 209 of the Clean Air Act. 88 Fed. Reg. 20688 (Apr. 6, 2023). As of June 2025, the ACT rule had been adopted by Colorado, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington.[2]

37.    On March 19, 2024, CARB approved amendments to the ACT ~~Rule~~rule. *See* CARB, Exec. Order R-24-001 (Mar. 19, 2024). The amendments clarified that passenger cars and certain trucks were not subject to the ACT rule, allowed complete zero-emissions vehicles between 8,501 and 14,000 pounds to count toward credits, and extended the period to make-up for a credit deficit from one year to three years, among other changes. *See* Final Regulation Order, Amendments to Title 13, California Code of Regulations, Hearing Dates May 23, 2024, and October 24, 2024.[3]

38.    On March 18, 2025, CARB requested from the California Office of Administrative Law an early effective date for the ACT rule. *See* CARB Request for an Early Effective Date.[4]

---

[2] https://ww2.arb.ca.gov/our-work/programs/advanced-clean-cars-program/states-have-adopted-californias-vehicle-regulations.

[3] https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2024/actzepcert/fro.pdf.

[4] https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2024/actzepcert/reed.

First Amended Complaint-in-Intervention
~~Case No. 2:25-cv-02255-DC-AC~~                                                    9

39.     On May 13, 2025, CARB issued a notice of public hearing for further proposed amendments to the ACT ~~Rule~~rule. These amendments would have changed the compliance demonstration requirements and provided for trading, sale, and transfer of credits between manufacturers in "pooling states," among other changes. *See* Proposed Regulation Order, Amendments to Title 13, California Code of Regulations, Hearing Date July 24, 2025.[5] CARB finalized the amendments on July 24, 2025.[6]

**B.     The Advanced Clean Fleets Rule (ACF)**

40.     In October 2022, CARB enacted the Advanced Clean Fleets rule ("ACF"). *See* CARB Executive Order R-23-003 (Oct. 27, 2022).[7] CARB did not obtain an EPA preemption waiver before adopting the ACF rule.

41.     The ACF rule was the demand-side complement to the supply-side ACT. The ACF rule required certain "fleets" operating in California to transition to zero-emissions heavy-duty trucks through phasing out the use of internal combustion engines and a purchase mandate of zero- and near zero-emissions vehicles in their operations. Covered fleets included drayage vehicles (trucks that transport shipping containers); fleets owned by state, local and federal agencies; and "high priority" fleets—those that have more than $50 million in annual revenue or more than 50 covered trucks, among others. Cal. Code Regs., tit. 13, §§ 2013(a)(1), 2014(a)(1), 2015(a)(1) (2023).

42.     Covered fleets were required to purchase zero-emissions vehicles as early as 2024, but no later than 2042. *See* Cal. Code Regs., tit. 13, §§ 2013(d), 2014.1(a)(1)-(2), 2015.2(a) (2023). And manufacturers were allowed to sell only zero-emissions

---

[5]  https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2025/actpooling/appa1.pdf.

[6]     https://ww2.arb.ca.gov/news/carb-approves-amendments-clean-truck-standards-provide-flexibility-while-maintaining-emissions.

[7] https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2022/acf22/ac/eo.pdf.

First Amended Complaint-in-Intervention
~~Case No. 2:25-cv-02255-DC-AC~~                                        10

1  heavy-duty trucks starting in model year 2036. Cal. Code Regs., tit. 13, § 2016(c)

2  (2023).

3      43.   On November 15, 2023, CARB requested a Clean Air Act preemption

4  waiver from EPA, but after the presidential election, it withdrew the request on

5  January 13, 2025. *See* https://perma.cc/N5EN-BLNJ. As such, EPA has not

6  promulgated a Clean Air Act preemption waiver for the ACF rule.

7      44.   The ACF rule has been challenged in multiple lawsuits, both in state and

8  federal court. For example, on May 13, 2024, 16 States, the Arizona State Legislature,

9  and the Nebraska Trucking Association filed suit in the U.S. District Court for the

10  Eastern District of California challenging the ACF rule as preempted by federal law

11  and violating the Commerce Clause. *See* Compl., *Nebraska v. Cliff*, No. 2:24-cv-1364

12  (E.D. Cal. May 13, 2024), Dkt. No. 1.

13      45.   After CARB withdrew its waiver request in January 2025, the parties in

14  that case reached an agreement to put the case in abeyance while Defendant Cliff

15  presents to CARB a new proposal to repeal the high-priority fleet and drayage fleet

16  requirements in the ACF regulation. *See* Order, *Nebraska v. Cliff*, No. 2:24-cv-1364

17  (E.D. Cal. May 5, 2025), Dkt. No. 95.

18      46.   CARB has also agreed not to enforce the ACF rule requirement for 100%

19  zero-emission heavy-duty trucks by 2036 until CARB obtains a Clean Air Act

20  preemption waiver from EPA. *Id.* ¶ 3.

21      47.   Importantly, CARB has not indicated that it will repeal the model year

22  2036 100% zero-emission vehicle sale requirement, creating market uncertainty about

23  whether California will follow federal uniform national emissions standards.

24  **C.   The Omnibus Low Nox Rule (Omnibus)**

25      48.   In September 2021, CARB adopted its Omnibus rule requiring truck

26  manufacturers to significantly reduce heavy-duty vehicle nitrogen oxides (NOx) and

27  particulate emissions. *See* Cal. Code Regs. tit. 13, § 1956.8 (2025).

28

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                    11

49.    In December 2021, CARB amended its rule to slash NOx and particulate matter emissions limits starting in model year 2024, among other extensive changes. *See* CARB, Executive Order R-21-007; Final Regulation Order, Amendments to Title 13, California Code of Regulations, Hearing Date August 27, 2020.[8]

50.    After the amendment, in January 2022, CARB requested from EPA a Clean Air Act preemption waiver for its Omnibus rule, and EPA noticed the waiver request for comment on June 13, 2022. 87 Fed. Reg. 35765 (June 13, 2022).

51.    But the Omnibus rule was so onerous that manufacturers decided not to produce California-compliant vehicles in response. Manufacturers then sued CARB for failing to provide the four years of compliance lead time mandated by section 202(a) of the Clean Air Act, 42 U.S.C. § 7521(a)(3)(C), and incorporated into section 209 as a ground for EPA to refuse to issue a preemption waiver, *id.* § 7543(b)(1)(C).

52.    In December 2023, CARB yet again amended the Omnibus rule to allow certain heavy-duty trucks to meet applicable federal requirements for model years 2024 to 2026 and certain "legacy" engine provisions, among other changes. CARB Order, Executive Order R-23-006; Final Regulation Order, Amendments to Title 13, California Code of Regulations, Hearing Date Oct. 20, 2023.[9]

53.    In July 2024, CARB amended its request for a Clean Air Act preemption waiver to cover the revised amendments. *See* https://perma.cc/U2ZQ-RSUP.

54.    On January 6, 2025, EPA promulgated the requested preemption waiver for the Omnibus rule as amended. 90 Fed. Reg. 643 (Jan. 6, 2025).

55.    As of June 2025, Colorado, Massachusetts, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington had adopted the Omnibus rule.

---

[8]  https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2020/hdomnibuslownox/froa-1.pdf.

[9]  https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2023/hdomnibus2023/fro_atta-1.pdf.

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                              12

**D.    CARB's Vehicle Certification Requirements**

56.    A preemption waiver issued by EPA under section 209(b) allows California not only to impose emissions standards, but also to impose a requirement for "certification . . . or any other approval relating to the control of emissions . . . as a condition precedent to sale"—a practice otherwise forbidden by the second clause of section 209(a).  42 U.S.C. § 7543(a).

57.    EPA has implemented this provision by allowing CARB to mandate conditions for certification where California has obtained a separate preemption waiver for the relevant emission standards applicable to a particular class of vehicles. *See* Conditions Precedent to the Sale, Titling, or Registration of New Motor Vehicles in California, 50 Fed. Reg. 35123 (Aug. 29, 1985).

58.    Under California law, these conditions precedent include a requirement that new vehicles and engines receive certification from CARB before they are sold in the State. Cal. Health & Safety Code, §§ 43151 & 43512; *see also* § 1036.801 "Certification," California Exhaust Emission Standards and Test Procedures for 2004 and Subsequent Model Heavy-Duty Diesel Engines and Vehicles (Sept. 9, 2021) ("September 2021 CARB Heavy-Duty Test Procedures"), incorporated by reference into Cal. Code Regs. tit. 13, § 1956.8(b) (2025).

59.    When successful, certification culminates in an order from CARB approving a particular vehicle or engine for sale in California during that model year. *See id.* § 1036.801 "Certificate of Conformity," September 2021 CARB Heavy-Duty Test Procedures.

60.    Selling vehicles in California without a CARB certification is a serious offense that subjects the seller to substantial civil penalties.  *See* Cal. Health & Safety Code § 43154(a)(1).

## II.    The Clean Truck Partnership

61.    As CARB continued with stringent and ever-changing regulations, the truck manufacturers raised serious concerns about the legality and technical feasibility of these standards. Two objections are especially relevant here.

62.    First, the Omnibus rule was dramatically different from the federal criteria pollutant emissions standards, effectively requiring the truck manufacturers to make two different internal-combustion engines.  As EPA noted in its rulemaking for criteria pollutant standards, CARB's Omnibus rule contained emissions standards "even more stringent" than the *most* stringent rules considered by EPA.[10]

63.    Second, the truck manufacturers' product development requires long lead times—a fact so well-recognized that the Clean Air Act itself specifically requires at least four years of lead time and a three-year regulatory stability period for heavy-duty criteria pollutant emissions standards. 42 U.S.C. § 7521(a)(3)(C).

64.    But when CARB promulgated new criteria pollutant emissions standards in the Omnibus rule, it did not provide the requisite statutory lead time. Instead, CARB adopted rules on December 22, 2021, which then became effective in model year 2024—providing only two years of lead time, as manufacturing for a model year begins well in advance.[11]

65.    Consequently, the Truck and Engine Manufacturers Association ("EMA") filed suit against CARB asserting that the Omnibus rule did not comply with the Clean Air Act's mandated lead time. *See Engine Mfgrs. Ass'n v. Cal. Air Resources*

---

[10] See Final Rule, Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4296, 4301 (Jan. 24, 2023).

[11] Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C) (2025) (establishing model year 2024-2026 standards); Cal. Reg. Notice Register 2021, 1809 Vol. 53-Z (Dec. 31, 2021), https://oal.ca.gov/wp-content/uploads/sites/166/2021/12/2021-Notice-Regiter-Number-53-Z-December-31-2021.pdf (indicating adoption date for revised California Code of Regulations title 13, section 1956.8); CARB, Final Regulation Order, Title 13, at    7-11,    Nonrulemaking    Docket    No.    EPA-HQ-OAR-2022-0332, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005.

1  *Bd.*, No. 2:22-cv-03663 (C.D. Cal. May 25, 2022). When EPA proposed to promulgate

2  a waiver for the Omnibus rule and accepted comments on the lead time issue, EMA

3  withdrew its lawsuit.[12]

4      66.    Shortly thereafter, Defendant Cliff wrote to EMA stating that in

5  recognition of EMA dropping its litigation, CARB sought "discussion" with EMA and

6  was open to "exploring areas of alignment between state and federal combustion

7  rules"—a potential path out of the regulatory quagmire for the truck manufacturers.[13]

8      67.    Nine months later, in July 2023, CARB announced the Clean Truck

9  Partnership.[14]  Although stylized as an "agreement," in substance, the Clean Truck

10  Partnership incorporates regulations and imposes compliance obligations on

11  regulated entities.

12      68.    To illustrate, while "agreements" ordinarily have defined terms or

13  dispute-resolution provisions, the Clean Truck Partnership does not. Nor does the

14  Clean Truck Partnership have other typical contractual provisions ordinarily found

15  in California contracts including, for example, assignment, choice of law, severability,

16  termination, venue, and more. To the contrary, a key goal of the Clean Truck

17  Partnership is to "ensur[e] current and future *CARB regulations* affecting new [heavy-

18  duty on-highway] vehicle and engines . . . achieve significant reductions of air

19  pollutants from such vehicles and engines." CTP at 1 (emphasis added).

20

21

22     [12] EMA Press Release, Truck & Engine Manufacturers Withdraw Lawsuit on

23  Leadtime Requirement for Heavy-Duty Emissions Standards (Aug. 11, 2022), https://shorturl.at/43iU3.

24     [13] Letter from Steven S. Cliff, Executive Officer, CARB, to Jed Mandel,

25  President, EMA (Oct. 14, 2022), https://ww2.arb.ca.gov/sites/default/files/2022-10/EMA%20Letter%20to%20Mandel%20SSC_Signed.pdf.

26     [14] Press Release, CARB and truck and engine manufacturers announce

27  unprecedented partnership to meet clean air goals (July 6, 2023), https://ww2.arb.ca.gov/news/carb-and-truck-and-engine-manufacturers-announce-

28  unprecedented-partnership-meet-clean-air.

<u>First Amended</u> Complaint-in-Intervention

~~Case No. 2:25-cv-02255-DC-AC~~    15

69.     To this end, the Clean Truck Partnership adopts California regulatory standards to, in part, facilitate compliance with California vehicle emission standards irrespective of federal law while still threatening regulatory consequences if the truck manufacturers do not comply with those stringent regulations.

70.     CARB detailed these regulatory standards in appendices attached to the Clean Truck Partnership:

a.     **Appendix A** – "Amendments to Omnibus Legacy Provisions in Title 13 California Code of Regulations (CCR) 1956.8 to Ease Transition": "The intent of the actions set forth in Appendix A is to revise the existing compliance flexibility provisions of CARB's Omnibus Regulation by raising the existing caps on legal engines and streamlining certain other provisions without increasing emissions compared to the preexisting Omnibus Regulation." CTP ¶ 1. CARB also committed to "initiat[ing] rulemaking actions" to further its compliance goals. *Id*. App'x A at 2.

b.     **Appendix B** – "CARB Truck Regulations Compliance and U.S. EPA Clean Trucks Plan Harmonization": "The intent of the actions set forth in Appendix B" is to "clarify which authorities and regulations remain status quo in California," to "specify which regulations are covered by the [signatories'] commitment" to meet "CARB regulations," and to "amend the Omnibus Regulation's 2027 and later model year requirements." CTP ¶ 1 (incorporating elements of the ACT rule, the ACF rule, and the Omnibus rule).

c.     **Appendix C** – "Emission Warranty Information Reporting, In Use Compliance, Advanced Clean Trucks and Advanced Clean Fleet Regulatory Implementation Efforts": Appendix C describes actions related to CARB's emission warranty and information reporting program, among other things. The appendix also describes CARB's "ongoing efforts" to enforce the ACT and ACF regulations. *Id*. at 1–2 (discussing credits, deficits, and sales reporting requirements).

d.     **Appendix D** – "Support for CARB's Regulations and for States' that have Adopted CARB Regulations per S177 CAA": The Clean Truck Partnership

mandates production of zero-emissions vehicles regardless of customer demand. It requires the truck manufacturers to "commit to put forth their best efforts to sell as many zero-emission trucks as reasonably possible in every state that has or will adopt CARB's ACT regulations . . . irrespective of the outcome of [their legality or state authority to implement and enforce them]." *Id*. App'x D ¶ F.

71.    The penalties for failing to follow the Clean Truck Partnership are regulatory in nature. First, and most crucially, the Clean Truck Partnership provided that "California will maintain its certification program," trumpeting CARB's authority to impose certification requirements on manufacturers regardless of countervailing federal legal authority.  *Id*. App'x B ¶ 1. And building a car without a certificate is like driving a car without an engine.

72.    Second, the Clean Truck Partnership describes regulatory "consequence[s]" if the Omnibus rule's "caps are exceeded": the truck manufacturers' sales "would be considered as non-compliant sales." *Id*. App'x A nn.1–2.

73.    Finally, the Clean Truck Partnership reminds its signatories "that CARB's Executive Officer is authorized to consider specified information in determining whether a recall of a vehicle or engine family is required." *Id*. App'x C at 1.

74.    To try and insulate California's preempted regulations from challenge, the Clean Truck Partnership imposes a series of conditions restricting manufacturers' ability to petition the federal government. Specifically, the Clean Truck Partnership prohibits the truck manufacturers from (1) challenging the relevant CARB regulations; (2) filing requests for EPA Clean Air Act preemption waivers or authorizations; (3) filing amicus briefs challenging such actions; or (4) supporting motions challenging such waivers or authorizations. CTP ¶ 4. They also swore not to (5) challenge any states' adoption of similar regulations or (6) participate in any such rulemakings or proposals. *Id*. Appendix D ¶ A.

75. Even worse, the truck manufacturers must comply with the relevant regulations "irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations." *Id.* ¶ 4.

76. CARB makes clear that the purpose of the Clean Truck Partnership is not to simply memorialize the terms of compliance, but rather to insulate CARB's regulations from judicial or congressional review.

77. The Clean Truck Partnership states that manufacturers will continue abiding by the regulations "irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations." *Id.* ¶ 2; *accord id.* App'x D, ¶¶ B, F (same for any state that adopts CARB's standards)).

78. In all, the Clean Truck Partnership does not seek to replace previously enacted regulations or standards with bargained-for contractual provisions. Instead, the Clean Truck Partnership expressly incorporates and attempts to enforce three sets of regulatory standards—ACT, Omnibus, and ACF.

79. CARB sought to impose emissions standards and certification requirements on the industry in a manner that it hoped might insulate those regulations from federal oversight and judicial review. CARB imposed the standards included in the Clean Truck Partnership in its capacity as an industry regulator—not in its capacity as a market participant.

**III.    Congressional and Presidential Disapproval of EPA's Clean Air Act Preemption Waivers**

80. The ACT rule and Omnibus rule preemption waivers were challenged in federal court. *See W. States Trucking Ass'n, Inc. v. EPA*, No. 23-1143 (D.C. Cir. 2023) (ACT rule); *Am. Free Enter. Chamber of Com. v. EPA*, No. 25-106 (9th Cir. 2025) (Omnibus rule); *Am. Fuel & Petrochem. Mfrs. v. EPA*, No. 25-1083 (D.C. Cir. 2025) (Omnibus rule). Congress also disapproved of them.

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                    18

81.    As explained, California's authority to regulate heavy-duty vehicle and engine emissions depended on Clean Air Act waivers granted by EPA.

82.    On May 22, 2025, Congress passed CRA resolutions disapproving EPA's Clean Air Act preemption waivers for CARB's ACT rule and the Omnibus rule, among other actions. Referring to the EPA's preemption waiver for the ACT and Omnibus rules, the legislation states that "Congress disapproves the rule submitted by the Environmental Protection Agency," and that "such rule shall have no force or effect." *See* Pub. L. No. 119-15, 139 Stat. 65 (ACT); Pub. L. No. 119-17, 139 Stat. 67 (Omnibus).

83.    On June 12, 2025, the President signed this legislation disapproving these EPA preemption waivers. The President stated that the resolutions make clear that "California's attempts to impose an electric vehicle mandate, regulate national fuel economy, and regulate greenhouse gas emissions are not eligible for waivers of preemption under section 209 of the Clean Air Act" and that the waivers can "never again be misused to regulate greenhouse gas emissions."[15]

84.    Once Congress passed and the President signed the measures voiding the recent EPA waivers, CARB lost Clean Air Act authority for its regulations. *See Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2131 n.1 (2025) ("Acting under the Congressional Review Act, Congress recently passed and the President signed legislation to block . . . California regulations").

85.    Congress' disapproval of EPA's preemption waivers is not subject to judicial review. *See* 5 U.S.C. § 805 ("No determination, finding, action, or omission under this chapter shall be subject to judicial review."); *see also Bernhardt*, 946 F.3d at 563 (barring review ); *Kan. Nat. Res. Coal.*, 971 F.3d at 1236 (barring review).

86.    Upon enactment of the joint resolutions, no preemption waiver applied to California's ACT and Omnibus rules, and no preemption waiver had ever been in

---

[15] https://www.whitehouse.gov/briefings-statements/2025/06/statement-by-the-president/.

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                              19

place for California's ACF rule. Accordingly, those regulations and any attempt to enforce them are preempted under section 209(a) of the Clean Air Act.

**IV.    California's Defiance of Congress' CRA Disapprovals and CARB's Ongoing Attempt to Enforce Preempted Regulations Enshrined in the Clean Truck Partnership**

87.    In response to Congressional and Presidential disapprovals of EPA's Clean Air preemption waivers, California has declared its intent to keep enforcing the standards embedded in the ACT, ACF, and Omnibus rules. California cites the Clean Truck Partnership as the source of its authority.

~~A.    Manufacturers Advisory Correspondence~~

~~88.    On May 23, 2025, CARB issued a Manufacturers Advisory Correspondence ("MAC") document styled as "Regulatory Guidance" in response to the federal statutes disapproving the prior preemption waivers.[16]~~

~~89.    The MAC document expressly declares that the preempted regulations remain "applicable to manufacturers." *Id.* at 2.  It then affirms that CARB "will continue to accept and process certification applications," justifying this as "necessary" to "facilitate meeting the commitments of the Clean Truck Partnership." *Id.* at 2; *see also id.* at 3 ("CARB will continue to accept and process certification applications for model year 2025 and 2026 model year medium- and heavy-duty vehicles under the certification requirement of the Heavy Duty Engine and Vehicle Omnibus regulation.").~~

~~90.    California has thus taken the position that compliance with CARB's emissions standards and their related conditions precedent to sale are required by the Clean Truck Partnership — even though the underlying regulations establishing those emissions standards have been expressly and specifically preempted by statute.~~

~~91.    CARB's directive further demands compliance with the preempted standards to "ensure the requirements of certification are met to enable lawful vehicle~~

---

~~[16] Manufacturers Advisory Correspondence ECCD 2025-3, CARB (May 23, 2025).~~

First Amended Complaint-in-Intervention
~~Case No. 2:25-cv-02255-DC-AC~~                                                                          20

1  ~~sales in California" under the California Health and Safety Code, *id.* at 2, citing~~
2  ~~statutory provisions that a "person shall not offer for sale . . . a new motor~~
3  ~~vehicle . . . unless the motor vehicle . . . has been certified" under California law. Cal.~~
4  ~~Health & Safety Code § 43151. Notably, violations of this section can incur penalties~~
5  ~~of up to $48,788 "for each such action." Cal. Health & Safety Code § 43154(a)(1).[17]~~

6  ~~92.    CARB continues to threaten substantial regulatory fines against any~~
7  ~~manufacturer who sells vehicles in California without a CARB certificate: "CARB~~
8  ~~would continue accepting and processing certification applications for 2026 models to~~
9  ~~ensure continuity and enable lawful vehicle sales in California."[18] And it does so~~
10 ~~notwithstanding that the Clean Air Act expressly prohibits such certifications in the~~
11 ~~absence of a waiver. 42 U.S.C. § 7543(a).~~

12 **~~B.~~A.   California Executive Order N-27-25**

13 ~~93.~~88. On June 12, 2025, Governor Newsom ordered CARB to keep enforcing
14 the regulatory standards in the ACT, Omnibus, and ACF rules through the Clean
15 Truck Partnership. See CA Executive Order N-27-25 (June 12, 2025) ("Compliance
16 Order"); https://perma.cc/5UV5-DSPE.

17 ~~94.    The Compliance Order declares that Congress's CRA disapprovals of the~~
18 ~~waivers are unenforceable. See CA Executive Order N-27-25, Preamble. Further,~~
19 ~~according to Governor Newsom, the truck manufacturers must comply with the Clean~~
20 ~~Truck Partnership "regardless of the outcome of any change in law concerning~~
21 ~~California's authority to implement its more stringent emissions standards under the~~

22

23 ─────────────────────────
24 ~~[17] The statutory penalty is annually adjusted for inflation. *See* CARB, Memorandum to Enforcement Division Staff, Increase in Maximum Penalties Based~~
25 ~~on 2024 California Consumer Price Index (Feb. 21, 2025), https://ww2.arb.ca.gov/sites/default/files/2025-02/2025_CA_CPI_Penalty_Memo.pdf.~~

26 ~~[18] *CARB approves amendments to clean truck standards to provide flexibility*~~
27 ~~*while maintaining emissions benefits* (July 24, 2025), https://ww2.arb.ca.gov/news/carb-approves-amendments-clean-truck-standards-~~
28 ~~provide-flexibility-while-maintaining-emissions.~~

1    federal Clean Air Act." CA Executive Order N-27-25, Preamble. California thus

2    declared that it has the power to nullify federal law.

3        95. 89. Governor Newsom directed CARB to continue to implement the ACT

4    rule, Omnibus rule, and internal combustion engine ban in 2036 under the ACF rule

5    "regardless of the status of those regulations under federal law," and he independently

6    ordered CARB to continue implementing those standards through the Clean Truck

7    Partnership. CA Executive Order N-27-25 ¶¶ 3-4.

8        **B.    August 2025 Manufacturers Advisory Correspondence**

9        90. On August 25, 2025, CARB issued Manufacturers Advisory

10   Correspondence ECCD-2025-08 (August 25, 2025) ("August 2025 MAC"), Dkt. No. 58-

11   2. Under the August 2025 MAC, CARB stated that heavy-duty truck manufactures

12   must certify their model year 2025 vehicles and subsequent models before selling

13   them in California but gave three certification options, each of which is preempted:

14           a.  First, relevant here, manufactures may certify to the requirements in

15               the Omnibus rule;[19]

16           b.  Second, manufactures may certify to "regulations that immediately

17               preceded those covered by" the Omnibus rule.

18           c.  Third, manufacturers may submit a "U.S. EPA certification to its

19               motor vehicle emissions standards applicable to the given vehicle in

20               the relevant model year."

21       91.  However, CARB threatened retroactive enforcement of the Omnibus

22   rule: "CARB reserves its right to enforce the regulations covered by the waivers

23   targeted by the congressional resolutions in the event a court of law holds those

24   resolutions invalid, including with respect to model years that such manufacturers

25   ask CARB to certify." August 2025 MAC at 3.

26   _____

27       [19] The August MAC covers other emissions standards certification
     requirements that were preempted by Congress' CRA actions, but the Omnibus rule

28   is the only requirements applicable to the United States claims here.

     First Amended Complaint-in-Intervention
     Case No. 2:25-cv-02255-DC-AC                                                    22

92. And CARB stated in the August 2025 MAC its intention to provide preferential treatment to manufacturers that certify to the Omnibus rule emissions standards. *Id.*

**C.    CARB's Emergency Emissions Standards Rulemaking**

93. On September 15, 2025, CARB initiated an emergency vehicle emissions rulemaking ("Emergency Rule") to "clarify that protective emission standards for vehicles and engines remain operative" during what CARB characterized as "unprecedented uncertainty" following congressional disapproval of the preemption waivers for the Omnibus rule, as relevant here. CARB Emergency Vehicle Emissions Rulemaking Public Notice, Dkt. No. 73-33 at 6-7. CARB adopted the Emergency Rule on an interim basis and is working to make the rule permanent.[20] CARB has not sought or obtained an EPA preemption waiver for the Emergency Rule.

96. The Emergency Rule purports to "amend" and "adopt new sections into" the California Code of Regulations to "confirm that"—until a court resolves the validity of the Congressional Resolutions revoking the waivers—"certain earlier-adopted regulations (displaced by [] Omnibus) remain operative (as previously adopted)." *Id.* Failure to adhere to the Clean Truck Partnership results in severe regulatory penalties. Executive Order N-27-25 states that manufacturers that continue to certify compliance with California's preempted regulations will be "prioritize[d] . . . in government vehicle procurement decisions," will receive priority "funding" to "support the purchase of zero emission vehicles" and, perhaps most egregiously, directed CARB to identify other "opportunities for special considerations and flexibilities for" certifying manufacturers when crafting future regulations. Executive Order N-27-25. By contrast, none of those privileges or opportunities will

---

[20] https://ww2.arb.ca.gov/rulemaking/2025/emergencyvehemissions#:~:text=These%20corrections%20were%20made%20before,Regulations%20%7C%20California%20Air%20Resources%20Board

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                           23

1   be extended to manufacturers who do not follow the regulations "regardless of the

2   status of those regulations under federal law."

3       94.    Instead, Executive Order N-27-25 suggests that such manufacturers will

4   be put on California's "manufacturer purchasing restriction list," as indeed California

5   has done to disfavored vehicle manufacturers during a prior dispute over whether

6   California's emissions regulations were preempted.  *See, e.g.*, David Shepardson,

7   *California to Stop Buying GM, Toyota and Fiat Chrysler Vehicles Over Emissions*

8   *Fight*, Reuters, (Nov. 18, 2019), (reporting that Governor Newsom halted all

9   purchases of new vehicles for state government fleets from manufacturers that did not

10   agree with CARB's positions in preemption litigation).[21]  The California Executive

11   Order thus purports to adopt and enforce an emissions regulatory regime under the

12   Clean Truck Partnership.at 1. In reality, the Emergency Rule seeks to establish new

13   emissions standards that lack an EPA preemption waiver.

14        **a.**  First, the Emergency Rule would add dozens of sections to title 13 of

15           the California Code of Regulations, requiring a new review for

16           whether the rulemaking as a whole meets the preemption waiver

17           criteria in Section 209(b) of the Clean Air Act.

18        **b.**  Second, the Emergency Rule emissions standards are new standards

19           that apply to different model years than the emissions standards that

20           the Omnibus rule replaced.

21        **c.**  Third, the Emergency Rule adds new language throughout the

22           California Code of Regulations evincing CARB's intent to

23           retroactively enforce its currently preempted rules should it prevail

24           in litigation later.

25       95.   The public notice announcing the Emergency Rule repeatedly explains

26   that CARB reserves the right to retroactively enforce the Omnibus rule if the

27

28      [21] https://www.reuters.com/article/idUSL2N27Y0HU/.

First Amended Complaint-in-Intervention

Case No. 2:25-cv-02255-DC-AC                                 -24

Congressional Resolution is invalidated, Dkt. 73-33 at 1, 3, 10. The notice explicitly warns that manufacturers "assume the risk" of this retroactive enforcement if they "choose to certify only to the antecedent provisions" that the Emergency Rule codifies into California law. *Id.* at 6. This is an attempt to enforce CARB's preempted Omnibus rule and an attempt to put into effect new heavy-duty truck emissions standards to save CARB's certification program from preemption.

97.96. CARB has taken steps to make the Emergency Rule permanent. On September 23, 2025, CARB invited written comments and noticed a public hearing on a proposal to permanently adopt the Emergency Rule. CARB, Notice of Public Hearing (Sept. 23, 2025), https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2025/orhdlcfs/notice.pdf. On November 7, 2025, CARB postponed the hearing, but it did not withdraw its proposal or extend the comment period. CARB, Notice of Postponement (Nov. 7, 2023) https://ww2.arb.ca.gov/sites/default/files/classic/BARCU/postponement.pdf. As of the filing of this Amended Complaint, CARB has not announced a rescheduled hearing for this rulemaking.

### FIRST CLAIM FOR RELIEF
**Preemption of the ACT, ACF, and Omnibus Rules**
**Under the Clean Air Act and U.S. Constitution**

98.97. The United States incorporates by reference all allegations stated above.

99.98. The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2.

100.99. Section 209(a) of the Clean Air Act provides that "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a). An "attempt" to enforce an emissions

First Amended Complaint-in-Intervention

1  standard includes preliminary acts falling short of enforcement. *Engine Mfrs. Ass'n v.*
2  *S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 257 (2004). The term "attempt to
3  enforce" in section 209(a) is not limited to the actual imposition of penalties for
4  violations but includes steps preliminary to that action. *Id.*

5  ~~101.~~100.   Section 209(a) also provides that "No State shall require
6  certification, inspection, or any other approval relating to the control of emissions from
7  any new motor vehicle or new motor vehicle engine as condition precedent to the
8  initial retail sale, titling (if any), or registration of such motor vehicle, motor
9  vehicle engine, or equipment." 42 U.S.C. § 7543(a).

10  ~~102.~~101.   California vehicle emissions standards are preempted under
11  section 209(a) of the Clean Air Act unless the regulation is authorized by a valid
12  preemption waiver issued by the EPA under 42 U.S.C. § 7543(b).

13  ~~103.~~102.   The ACT rule, the ACF rule, and the Omnibus rule are
14  "standards" under section 209(a) of the Clean Air Act. 42 U.S.C. § 7543(a). Because
15  they are "standards" under section 209(a), CARB sought waivers for these rules.

16  ~~104.~~103.   The ACT rule sets standards relating to the control of emissions
17  from new motor vehicles or engines by requiring the manufacture of zero-emission or
18  near zero-emission heavy-duty trucks—irrespective of whether meaningful advances
19  in zero-emissions power-train technology occurred—and banning internal-combustion
20  engines in heavy-duty trucks by 2036, among other requirements.

21  ~~105.~~104.   Congress disapproved EPA's Clean Air Act preemption waiver for
22  the ACT rule by joint resolution, and President Trump signed that joint resolution.
23  The ACT rule therefore is preempted and void under 42 U.S.C. § 7543(a) and the
24  Supremacy Clause of the United States Constitution, and Defendants cannot enforce
25  or attempt to enforce it.

26  ~~106.~~105.   The ACF rule sets standards relating to the control of emissions
27  from new motor vehicles or engines by requiring covered fleets to purchase zero- and

28

First Amended Complaint-in-Intervention
~~Case No. 2:25-cv-02255-DC-AC~~                                                    26

1  near zero-emissions heavy-duty trucks vehicles and banning internal-combustion

2  engines in heavy-duty trucks by 2036, among other requirements.

3      107.106.    EPA never issued a Clean Air Act preemption waiver for the ACF

4  rule. The ACF Rulerule therefore is preempted and void under 42 U.S.C. § 7543(a)

5  and the Supremacy Clause of the United States Constitution, and Defendants cannot

6  enforce or attempt to enforce it. Further, CARB's adoption of the ACF rule before

7  seeking an EPA preemption waiver is unlawful.  ACF is also preempted on this basis

8  and void under 42 U.S.C. § 7543(a) and the Supremacy Clause of the United States

9  Constitution, and Defendants can neither obtain a valid waiver for it, nor enforce or

10  attempt to enforce it.

11      108.107.    The Omnibus rule as amended sets standards relating to the

12  control of emissions from new motor vehicles or engines by setting emissions limits on

13  NOx and particulate matter in heavy-duty trucks, among other requirements.

14      109.108.    Congress disapproved EPA's Clean Air Act preemption waiver for

15  the Omnibus rule by joint resolution, and President Trump signed that joint

16  resolution. The Omnibus rule as amended thus is preempted and void under 42 U.S.C.

17  § 7543(a) and the Supremacy Clause of the United States Constitution, and

18  Defendants cannot enforce or attempt to enforce it.

19              **SECOND CLAIM FOR RELIEF**
20          **Preemption of the Clean Truck Partnership**
            **Under the Clean Air Act and U.S. Constitution**

21      110.109.    The United States incorporates by reference all allegations stated

22  above.

23      111.110.    By dictating that manufacturers must "meet, in California, the

24  requirements of the relevant regulations . . . regardless of the outcome of any

25  litigation challenging the waivers/authorizations for those regulations, or CARB's

26  overall authority to implement those regulations," CTP App'x B, the Clean Truck

27  Partnership adopts "attempt[s] to enforce . . . standard[s] relating to the control

28

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                    27

1    of emissions from new motor vehicles or new motor vehicle engines" subject to section
2    209(a) of Clean Air Act. 42 U.S.C. § 7543(a).

3    ~~112.~~111.    The Clean Truck Partnership purports to incorporate and
4    implement three regulatory standards at issue: the ACT, Omnibus, and ACF rules.
5    By its own terms, the Clean Truck Partnership is the enforcement mechanism for the
6    emissions standards applicable to the truck manufacturer signatories under the ACT,
7    ACF, and Omnibus rules. CTP ¶ 2, App'x B, at 1

8    ~~113.~~112.    By purporting to require compliance by the manufacturers, the
9    Clean Truck Partnership represents an *attempt to enforce* the incorporated
10   regulations.   *See* Executive Order N-27-25 at 2 (describing the Clean Truck
11   Partnership as requiring manufacturers "to meet California's heavy-duty vehicle
12   emission standards that will require the sale and adoption of zero-emissions
13   technology in California, regardless of the outcome of any change in law concerning
14   California's authority to implement its more stringent emissions standards under the
15   federal Clean Air Act").

16   ~~114.~~113.    Therefore, the Clean Truck Partnership is preempted under
17   section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a), and the Supremacy Clause of
18   the United States Constitution, both because it has not received an EPA waiver under
19   the Clean Air Act, and because it is an attempt to enforce California emissions
20   regulations that have received no EPA preemption waiver.   *See* 5 U.S.C. § 801(f)
21   (disapproved rules "shall be treated as though such rule had never taken effect").
22   Defendants cannot attempt to enforce the preempted Clean Truck Partnership or the
23   preempted regulations embedded in it.

24                        **THIRD CLAIM FOR RELIEF**
25                  **Preemption of the August 2025 MAC**
                **Under the Clean Air Act and U.S. Constitution**
26       114.   The United States incorporates by reference all allegations stated above.

27       115.   The August 2025 MAC restates that CARB will continue to certify heavy-
28   duty trucks under the Omnibus rule but threatens retroactive enforcement of the

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                    28

1  Omnibus rule if manufactures chose to certify by the two other pathways CARB

2  provides for certification of model year 2025 and later heavy-duty trucks. August 2025

3  MAC at 2.

4      116.  Further, CARB stated that it would penalize manufacturers that did not

5  continue to certify to the preempted standards, including by denying those

6  manufacturers "eligibility for procurement and other incentives." *Id.* at 3.

7      117.  CARB's threats of retroactive enforcement of the preempted Omnibus

8  rule and stated penalties for not certifying to preempted standards are an unlawful

9  attempt to enforce the preempted emissions standards.

10     118.  Therefore, the August 2025 MAC is preempted under section 209(a) of

11  the Clean Air Act, 42 U.S.C. § 7543(a), and the Supremacy Clause of the United States

12  Constitution.

13                    **FOURTH CLAIM FOR RELIEF**
                **Preemption of the Emergency Rule**
14            **Under the Clean Air Act and U.S. Constitution**

15     119.  The United States incorporates by reference all allegations stated above.

16     120.  The Emergency Rule adopts new emissions standards for heavy-duty

17  trucks on an interim basis that do not have an EPA preemption waiver. These

18  standards enact new provisions that add dozens of sections to title 13 of the California

19  Code of Regulations. CARB purports to simply replace the Omnibus rule with the

20  applicable emissions standards that preceded it. But the Emergency Rule

21  promulgates new standards, including by applying to different model years than those

22  that the Omnibus rule replaced.

23     121.  CARB has stated its intention to make the Emergency Rule permanent.

24     122.  CARB must obtain an EPA preemption waiver before adopting the new

25  emissions standards in the Emergency Rule that replace the Omnibus rule. 42 U.S.C.

26  § 7543(b).

27     123.  CARB does not have a EPA preemption waiver for the Emergency Rule.

28

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                    29

124. Thus, the Emergency Rule standards that replace the Omnibus rule are preempted under section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a), and the Supremacy Clause of the United States Constitution and Defendants cannot enforce or attempt to enforce them.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

A. Declare the ACT, ACF and, Omnibus and Emergency rules preempted under 42 U.S.C. § 7543(a) and therefore void and unenforceable;

B. Permanently enjoin Defendants from taking actions to implement or enforce the heavy-duty trucks standards in the ACT, ACF, and Omnibus, and Emergency rules;

C. Declare the Clean Truck Partnership and August 2025 MAC are preempted under 42 U.S.C. § 7543(a) and therefore void and unenforceable;

D. Permanently enjoin Defendants from taking actions to implement or enforce the Clean Truck Partnership and the August 2025 MAC;

E. Award the United States its costs and disbursements in this action; and

F. Award such other and further relief as the Court may deem just and proper.

First Amended Complaint-in-Intervention
Case No. 2:25-cv-02255-DC-AC                                                    30

Respectfully submitted,

ADAM R.F. GUSTAFSON
~~Acting~~Principal Deputy Assistant Attorney
General

Dated: ~~August 14, 2025~~ _January 26, 2026_        /s/ ~~Robert N. Stander~~ _David Mitchell_

ROBERT N. STANDER
*Deputy Assistant Attorney General*

ERIC GRANT
*United States Attorney*
EDWARD A. OLSEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
(916) 554-2821

JOHN K. ADAMS
DAVID D. MITCHELL
United States Department of Justice
Environment & Natural Resources Div.
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5905
robert.stander@usdoj.gov
john.adams3@usdoj.gov
david.mitchell@usdoj.gov

*Counsel for ~~Plaintiffs~~ Intervenors-Plaintiffs*