Rob Bonta, State Bar No. 202668
Attorney General of California
Myung J. Park, State Bar No. 210866
Supervising Deputy Attorney General
Benjamin P. Lempert, State Bar No. 344239
David M. Meeker, State Bar No. 273814
Cecilia D. Segal, State Bar No. 310935
Jonathan A. Wiener, State Bar No. 265006
M. Elaine Meckenstock, State Bar No. 268861
Deputy Attorney General
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA 94612-0550
 Telephone: (510) 879-0299
 Fax: (510) 622-2270
 E-mail: Elaine.Meckenstock@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAIMLER TRUCK NORTH AMERICA, LLC; INTERNATIONAL MOTORS, LLC; PACCAR, INC.;** and **VOLVO GROUP NORTH AMERICA, LLC,**<br><br>Plaintiffs,<br><br>**THE UNITED STATES OF AMERICA;** and **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>**CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF**, in his official capacity as the Executive Officer of the California Air Resources Board; and **GAVIN NEWSOM**, in his official capacity as the Governor of California,<br><br>Defendants. | 2:25-cv-02255-DC-AC<br><br>**DEFENDANTS' RESPONSE AND PARTIAL OPPOSITION TO OEM PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT (ECF 107)**<br><br>Date:        N/A (ECF 112)<br>Judge:       The Honorable Dena Coggins<br>Trial Date:  Not Set<br>Action Filed: August 11, 2025 |

## INTRODUCTION

Plaintiffs—four original engine manufacturers (hereafter OEM Plaintiffs)—seek leave to amend their complaint to dismiss some of the claims and one of the defendants that Defendants moved to dismiss on October 11, 2025. They also seek leave to add claims against actions Defendants took in August, September, and October of that same year. Although OEM Plaintiffs do not explain their delay in seeking leave and (erroneously) describe the proposed complaint as asserting no new claims, Defendants do not oppose most of the request. Defendants oppose the motion for leave solely as to the amendments concerning a state-court lawsuit filed by the California Air Resources Board (CARB) against these same four manufacturers (*CARB v. Daimler Truck North America LLC et al.,* No. 25CV151420 (Alameda Sup. Ct. Oct. 27, 2025) (hereafter *CARB v. Daimler* or state-court suit). Those specific proposed amendments would be futile, as explained below.

Additionally, if the Court grants OEM Plaintiffs leave to amend their complaint (whether as proposed or without the state-court suit allegations), Defendants respectfully request 28 days to respond to the amended complaint when filed. That time is necessary to assess and consider responses to the dramatically expanded scope of OEM Plaintiffs' preemption claims—which now, *inter alia*, target *all* of CARB's regulations governing new heavy-duty vehicles sold in the State. OEM Plaintiffs will not be prejudiced by this limited request, as evinced by the fact that they waited months to seek leave to amend. Finally, to aid the Court in considering schedules in this case and a related one referenced by OEM Plaintiffs' motion, Defendants also provide below their responses to OEM Plaintiffs' scheduling contentions.

## BACKGROUND

To protect public health and the State's natural resources, California has been regulating harmful emissions from motor vehicles since the 1950s. *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA* (*MEMA I*), 627 F.2d 1095, 1109 (D.C. Cir. 1979). In 1967, when Congress generally preempted States from regulating new motor vehicle emissions, it required the United States Environmental Protection Agency (EPA) to waive that preemption for California upon request, unless record evidence supports one of three limited findings that allow the agency to deny a waiver request.

Pub. L. No. 90-148, § 208(a), (b), 81 Stat. 485, 501 (1967); 42 U.S.C. § 7543(b)(1). Accordingly, since 1967, California has regulated the emissions of new motor vehicles sold in the State pursuant to a series of more than seventy-five preemption waivers granted by EPA.[1] As part of this program, CARB certifies new motor vehicles and engines before they can be sold in California. Cal. Health & Safety Code § 43105.

In 2025, the Executive and Legislative Branches of the federal government launched an unprecedented attack on this California regulatory program that resulted in congressional resolutions purporting to disapprove of three preemption waivers EPA had granted to California. ECF 73 at 9:7-10:10. Those waivers permitted California to enforce three particular sets of amendments CARB had made to its long-standing regulatory program. *See id.* at 9:7-10:10. The day the resolutions were signed by the President, California and other States challenged them as unconstitutional, filing suit in the Northern District of California. *California v. United States*, No. 4:25-cv-04966-HSG (N.D. Cal., June 12, 2025).

OEM Plaintiffs filed this complaint on August 11, 2025, challenging the Clean Truck Partnership (an agreement between OEM Plaintiffs, CARB, and others that had been executed two years earlier), six distinct sets of CARB regulatory actions (including, but not limited to, the three sets covered by waivers targeted by congressional resolutions), a CARB advisory notice, and an Executive Order issued by Governor Newsom. ECF 1. The next day, August 12, 2025, OEM Plaintiffs moved for a preliminary injunction on every claim and against every action identified in the Complaint. ECF 23. On August 14, 2025, the United States and EPA (collectively, United States) moved to intervene. ECF 43.[2] On August 27, 2025, after this Court

---

[1] *See* EPA, *Vehicle Emissions California Waivers and Authorizations*, https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations, last visited January 30, 2026.

[2] The United States had also sought to intervene in a separate challenge to the Clean Truck Partnership (but not CARB's regulations or other actions) filed by a trade association in the Northern District of Illinois. *See Am. Free Enter. Chamber of Com. v. Engine Mfrs. Ass'n*, No. 3:24-cv-50504 (N.D. Il.) (hereafter *AmFree*). Defendant Cliff opposed intervention, including because the United States' proposed complaint-in-intervention raised nearly identical claims to the complaint-in-intervention filed here (which, like the OEM Plaintiffs' complaint, challenges both the Clean Truck Partnership *and* CARB regulations on preemption grounds). ECF 101 at 2:17-20, 3:1-6. The *AmFree* case was later transferred to this district and related to this case due to the (limited) overlap regarding the Clean Truck Partnership. *Id.* at 2:25-28, 3:8-14; ECF 106. The United States' opposed motion to intervene in *AmFree* remains pending.

granted its unopposed motion to intervene, the United States joined OEM Plaintiffs' preliminary injunction motion. ECF 57.

Meanwhile, CARB continued to receive questions from vehicle and engine manufacturers about the decades-old process for obtaining certification for California sales, in light of the unparalleled uncertainty created by the federal government's extraordinary actions. ECF 73-32 at 1-2. To address those questions and bring stability back to the California market, CARB issued a Manufacturer Advisory Correspondence on August 26, 2025 (August MAC), clarifying the three available pathways to obtain approval from CARB to sell vehicles or engines in the State. *Id.* at 2. Then, on September 15, 2025, CARB issued a notice of emergency rulemaking to confirm that its earlier-adopted standards (which preceded those covered by the targeted waivers) remain operative, as described in the August MAC, "until a court resolves the uncertainty created by the federal government's actions." ECF 73-33.

Separately, after due consideration of OEM Plaintiffs' public disavowals of the commitments they had made in the Clean Truck Partnership, CARB filed the *CARB v. Daimler* suit in Alameda Superior Court on October 27, 2025. ECF 85, 85-1. In that state-court suit, CARB alleges breach of contract, rescission of contract, and breach of the implied covenant of good faith and fair dealing against the manufacturers who are OEM Plaintiffs here. ECF 85-1.

Although not mentioned in the earlier-filed Complaint or Complaint-in-Intervention, the parties referenced all of these events in briefing to this Court in the lead up to the October 31, 2025 hearing on the motion for preliminary injunction. Indeed, OEM Plaintiffs effectively sought to expand the scope of their Complaint and motion, asking this Court to enjoin the August MAC and emergency regulations. *E.g.*, ECF 75-5 at 1:15-17 (revised proposed order). And the United States—which, unlike OEM Plaintiffs, "is not subject to the Anti-Injunction Act," ECF 91 at 4:1—specifically asked this Court to enjoin the *CARB v. Daimler* suit, *id.* at 3:15-17. OEM Plaintiffs did not seek that relief.

The Court ultimately denied most of the sweeping relief sought in the preliminary injunction motion. ECF 90. The Court did, however, enjoin Defendants "from implementing, enforcing, attempting to enforce, or threatening to enforce the Clean Truck Partnership," which

"includes enjoining CARB from enforcing the Clean Truck Partnership by seeking specific performance as a remedy in [the *CARB v. Daimler*] lawsuit." ECF 94 at 34:18-20, 34 n.22. Defendants have sought and obtained a 90-day extension of the service deadline in the state-court suit to allow them to consider proposals from OEM Plaintiffs and the United States concerning that suit. Meckenstock Decl., Exh. A. Defendants now plan to seek a stay of the state-court suit until this Court lifts the current injunction, should that occur.

Additionally, on October 10, 2025, Defendants filed their motion to dismiss OEM Plaintiffs' Complaint. ECF 78. The motion sought dismissal of CARB and the Governor, and of all state law claims against all Defendants, on sovereign immunity grounds. *Id.* at 7-10. Defendants' motion also sought dismissal of all claims against the Executive Order for lack of ripeness and failure to state claims, *id.* at 10-13; of all claims against the May Manufacturers Advisory Correspondence (May MAC) due to mootness and failure to state claims; *id.* at 13-14; and of all claims against the Advanced Clean Fleets regulation on standing and ripeness grounds, *id.* at 19-20. Finally, Defendants' motion sought to dismiss OEM Plaintiffs' claims that the Clean Truck Partnership is preempted and violates the First Amendment. *Id.* at 15-19. On that preemption claim, Defendants argued that the original Complaint failed to meet OEM Plaintiffs' standing burden because they allege the Clean Truck Partnership is adversely affecting their business decisions—including as to which vehicles to sell—but have elsewhere affirmatively and definitively disavowed any such effects. *Id.* at 15-16. Defendants also argued that the Clean Truck Partnership is not a regulation with the force of law that could be preempted by 42 U.S.C. § 7543(a), which does not reach voluntary agreements enforceable through contract or related remedies (rather than through civil or criminal penalties). *Id.* at 17.[3]

In response to Defendants' motion to dismiss, OEM Plaintiffs declined to amend their complaint, as the federal rules allow as of right. Fed. R. Civ. Proc. 15(a)(1)(B). Instead, they

---

[3] Recognizing that this Court had granted preliminary relief on this claim after Defendants filed their opening brief on their motion to dismiss, Defendants asserted, in reply, that "Plaintiffs' continuously shifting legal theories and the precedent contradicting all of them (including their latest incorporation theory) are more than sufficient cause for this Court to revisit it[s] preliminary conclusion." ECF 103 at 10 n.10.

opposed Defendants' motion. ECF 84. The Court took the hearing off calendar (ECF 96), Defendants filed their reply (ECF 103); and the motion to dismiss remains pending.

Now, five months after the August MAC issued and four months after the emergency rulemaking notice, OEM Plaintiffs seek leave to amend their Complaint to challenge those actions. Although the proposed complaint is ambiguous (*see infra* Sec. I), OEM Plaintiffs may also seek leave to challenge, or seek relief as to, the *CARB v. Daimler* case filed in October in state court. OEM Plaintiffs also press various scheduling concerns, asserting an urgent need for this case to proceed on their (just now) proposed complaint.

## ARGUMENT

### I. THE MOTION FOR LEAVE SHOULD BE DENIED AS TO PROPOSED AMENDMENTS CONCERNING CARB'S STATE-COURT LAWSUIT

Defendants oppose OEM Plaintiffs' motion for leave to amend their complaint as to the proposed amendments concerning the *CARB v. Daimler* state-court suit.[4] While it repeatedly references that suit (including in the first paragraph of the introduction), the proposed complaint does not indicate whether OEM Plaintiffs seek relief as to that suit, much less what form that relief might take, or whether OEM Plaintiffs seek to state a preemption claim against the state-court suit itself. This glaring ambiguity renders the allegations concerning that suit futile, though the basis for that futility depends on what Plaintiffs actually intend to plead (which Defendants cannot ascertain).[5]

**1.** The proposed complaint is strikingly ambiguous on whether OEM Plaintiffs seek relief as to the *CARB v. Daimler* suit and, indeed, is entirely silent as to what form that relief might take (if sought). Notably, the prayer for relief contains *no* specific reference to the state-court suit. Prop. FAC at 49-51. The impression that creates—that the proposed complaint seeks no relief as

---

[4] By limiting the scope of their opposition to OEM Plaintiffs' motion for leave to amend, Defendants do not waive any right to object to any part of the proposed complaint, including through a renewed motion to dismiss, if the proposed complaint is filed.

[5] These amendments would also be subject to a well-founded motion for a more definite statement under Federal Rule of Civil Procedure 12(e). *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035, 1045 (N.D. Cal. 2009) ("The rule is aimed at unintelligibility … and is only appropriate when the defendants cannot understand the substance of the claim asserted." (cleaned up)). There is no reason to allow these unintelligible amendments.

5

to the state-court suit—is amplified by OEM Plaintiffs' first cause of action, where they include the suit as the "sixth" alleged "'attempt to enforce' preempted emission standards," *id.* ¶¶ 109-110, but then expressly omit it from the specifically listed actions from which they seek relief, *id.* ¶ 113. Their vague catch-all reference to "any and all similar actions," *id.*, is highly ambiguous given the choice to specifically identify the state-court suit in the immediately preceding allegations, *id.* ¶¶ 109-110, and the failure to mention it in the prayer for relief, *id.* at 49-51.

The proposed complaint further obfuscates the relief sought when it describes its "goal" as "clarifying and establishing the *regulatory* obligations that [OEM Plaintiffs] must follow to lawfully offer products for sale in California." Prop. FAC ¶ 16 (emphasis added); *see also id.* ¶ 83 ("To plan their businesses, Plaintiff OEMs need certainty on the applicable *regulations*…." (emphasis added)); *id.* ¶ 84 (alleging injuries from "the enforceability of CARB's *rules*" (emphasis added)); *id.* ¶ 92 (alleging need for "relief clarifying which *laws* [OEM Plaintiffs] must follow" (emphasis added)). In contrast, the state-court suit concerns *contractual and state-law covenant* obligations—including the implied covenant of good faith and fair dealing. ECF 85-1, Exh. 1 to Exh. A (complaint). OEM Plaintiffs effectively concede as much, alleging "CARB continues to assert that Plaintiff OEMs are *contractually bound*" by the Clean Truck Partnership. Prop. FAC ¶ 25 (emphasis added). Thus, relief as to the state-court suit would not serve the stated goal of the complaint, as it could not clarify or establish any *regulatory* obligations—i.e., obligations to which the prospect of regulatory penalties attach.[6] Taken as a whole, the proposed amendments seem to suggest that OEM Plaintiffs do *not* seek relief as to the state-court suit, but, if that is true, it begs the question why that suit features prominently in the proposed complaint.

**2.** Because the proposed amendments do not make clear whether OEM Plaintiffs seek relief as to the state-court suit, much less what form that relief might take, they are futile.

---

[6] The allegation that the state-court suit is brought "under the guise of contract law," Prop. FAC ¶ 1, does not illuminate. OEM Plaintiffs do not explain how a complaint alleging only contract law and implied covenant claims could be hiding other claims, much less how such claims could ever be used to enforce codified regulations that provide distinct means (civil penalties) for enforcement. In fact, precedent is to the contrary, holding that the use of contract remedies—rather than civil or criminal penalties—is a key factor (along with voluntariness) that establishes that an agreement is *not* a regulation subject to preemption. ECF 103 at 11:8-12:12.

On the one hand, if OEM Plaintiffs do, in fact, intend to seek relief from the state-court suit, the proposed amendments are futile because they fail to establish standing. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (cleaned up). OEM Plaintiffs cannot do so without making clear what relief (if any) they seek as to the *CARB v. Daimler* suit. Thus, amendments that might or might not seek such relief (in some unidentified form) are futile because they cannot establish a threshold (indeed, jurisdictional) element. *See Musial v. Telesteps Inc.*, No. CV-14-01999-PHX-JJT, 2015 WL 13840687, at *2 (D. Ariz. Apr. 10, 2015) (denying leave to amend where proposed complaint did not allege essential element of claim); *MacDonald v. Schriro*, No. CIV-04-1001-PHX-SMM, 2007 WL 4404880, at *2 (D. Ariz. Dec. 14, 2007) (same), *order clarified*, No. CIV-04-1001-PHX-SMM, 2008 WL 234128 (D. Ariz. Jan. 24, 2008).

Similarly, these amendments fail to overcome application of the Anti-Injunction Act, which prohibits federal courts from enjoining or staying "proceedings in a State court except" where one of three exceptions applies. 28 U.S.C. § 2283. Those "exceptions are narrow and are not to be enlarged by loose statutory construction." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (cleaned up). Thus, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed...." *Montana v. BNSF Ry. Co.*, 623 F.3d 1312, 1315 (9th Cir. 2010). Further, where "an injunction would be barred by § 2283," so too is "the issuance of a declaratory judgment that would have the same effect as an injunction." *Tex. Emps.' Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988) (citing "weight of authority" across multiple circuits); *see also Am. Ass'n of Cosmetology Schs. v. Riley*, 170 F.3d 1250, 1254 (9th Cir. 1999) ("[T]he anti-injunction bar cannot be skirted by the simple expedient of labeling an action that really seeks injunctive relief as an action for 'declaratory relief.'").

Where, as here, the Anti-Injunction Act is a plainly applicable affirmative defense, amendments are futile if they do not overcome it. *Cancer Ctr. Assocs. for Rsch. & Excellence, Inc. v. Phila. Ins. Cos.*, No. 1:15-CV-00084 LJO MJS, 2015 WL 2235347, at *1-3 (E.D. Cal. May 12, 2015) (denying leave to amend where claim was barred by affirmative "arbitral immunity"

defense); *Bacon v. T-Mobile USA, Inc.*, No. C09-5608RJB, 2010 WL 3211972, at *1 (W.D. Wash. Aug. 10, 2010) (denying leave to amend where claim was barred by affirmative preemption defense). OEM Plaintiffs tacitly acknowledged the Anti-Injunction Act applies to their claims by declining to seek a preliminary injunction against the state-court suit in their prior motion. *See* ECF 94 at 34 n.22 ("*Plaintiffs-Intervenors* requested the court enjoin CARB from pursuing the breach-of-contract lawsuit it filed against OEM Plaintiffs in Alameda County Superior Court." (emphasis added)). As Defendants stated in their reply on their motion to dismiss, "under the Anti-Injunction Act, these private Plaintiffs cannot obtain redress for any 'injury' that might ultimately result from the state-court suit." ECF 103 at 9:7-9. These proposed amendments that do not even identify the nature of relief sought (if any) as to the state-court suit—much less applicability of any exception to the Anti-Injunction Act—are futile.

On the other hand, if OEM Plaintiffs do not, in fact, intend to seek relief as to the state-court suit, then the allegations about that suit are futile for a different reason: because they are wholly irrelevant. *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997) (affirming denial of leave to amend to add allegations "not relevant to" legal issues before the court). Indeed, it would be futile to allow gratuitous amendments that should be struck immediately thereafter. *See Gay-Straight All. Network v. Visalia Unified Sch. Dist.*, 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001) ("A court 'may order stricken from any pleading … any redundant, immaterial, impertinent or scandalous matter.'" (quoting Fed. R. Civ. P. 12(f))).[7]

**3.** The proposed amendments are equally ambiguous as to whether OEM Plaintiffs seek to state a claim directly against the state-court suit itself. This raises another futility problem because OEM Plaintiffs cannot state the essential elements of a claim by leaving significant doubt about whether the claim is asserted at all. *See Musial*, 2015 WL 13840687, at *2 (denying leave to

---

[7] Even if *some* of the proposed amendments concerning the state-court suit were relevant (e.g., because OEM Plaintiffs could somehow seek relief as to that suit), leave should still be denied as to paragraph 58 where Plaintiffs appear to allege that CARB is barred from fulfilling its contractual obligations under the Clean Truck Partnership. Prop. FAC ¶ 58. These allegations "have no possible bearing on the issues in the litigation" (i.e., preemption) and should be stricken. *Gay-Straight All.*, 262 F. Supp. 2d at 1099. They are futile for the same reason. *Sweaney*, 119 F.3d at 1393. To the extent OEM Plaintiffs intend those allegations to suggest breach of contract, sovereign immunity bars such claims here. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

amend where proposed complaint did not allege essential element of claim); *MacDonald*, 2007 WL 4404880, at *2 (same).

In their moving papers, OEM Plaintiffs claim they "do not seek to add any causes of action" to the original complaint, OEM Mot. 1:17, and suggest that the references to the state-court suit are mere "factual allegations," *id.* at 3:20. *See also id.* at 4:10 ("This amendment does not add any new legal claims to the case."); *id.* at 5:12-14 ("Plaintiff OEMs have merely added additional factual allegations to keep pace with Defendants' own actions since the original complaint was filed."). Seemingly consistent with these assertions, the proposed complaint repeatedly alleges the state-court suit is an attempt to enforce the Clean Truck Partnership—an action challenged in the original complaint. Prop. FAC ¶ 117 ("CARB attempted to enforce the Clean Truck Partnership by filing a civil action in the Superior Court of Alameda County."); *id.* ¶ 56 (alleging state-court suit is a "means of … compelling Plaintiffs to satisfy [the agreement's] alleged commitments").

Elsewhere, however, the proposed amendments seem to veer from this theory and suggest OEM Plaintiffs seek to challenge the state-court suit, independent of the challenge to the Clean Truck Partnership. Indeed, in the second count of the proposed complaint, OEM Plaintiffs include the state-court suit (but not the Clean Truck Partnership) in a list of six, enumerated "attempt[s] to enforce" allegedly preempted standards. Prop. FAC ¶¶ 109-110. If those allegations amount to a new claim directly targeting the *CARB v. Daimler* suit, that would contradict OEM Plaintiffs' assertion that they do not seek to add new claims. It would also contradict the allegations in the rest of the complaint, leaving the nature of any claim against the state-court suit unintelligible. Do OEM Plaintiffs claim that suit is independently preempted, as suggested in Count II (but only there), and if so on what basis? Or do OEM Plaintiffs claim the state-court suit is an attempt to enforce the Clean Truck Partnership (itself allegedly an attempt to enforce, *id.* ¶ 117) and, if so, what is the basis of *that* claim?

In sum, leave should be denied as to the amendements concerning the state-court suit because those allegations are futile. They do not establish the essential elements (including

standing)—or overcome clearly applicable affirmative defenses—for any claim for relief; and, to the extent OEM Plaintiffs do not intend to state such a claim, the allegations are irrelevant.

## II. IF THE COURT GRANTS LEAVE TO AMEND, IT MAY ALSO ADDRESS SEVERAL RELATED SCHEDULING ISSUES IN THE SAME ORDER

### A. The Court Need Not Set a Deadline for the Parties to Meet and Confer, But Should Provide Twenty-Eight Days for Defendants to File a Renewed Motion to Dismiss

OEM Plaintiffs seek to have the court set a deadline for the parties to meet and confer, if the Court grants the motion for leave to amend. OEM Mot. 4:2-3. Defendants remain willing, as always, to meet and confer with OEM Plaintiffs and do not see a need for the Court to set a deadline. The parties have met and conferred many times during this litigation, pursuant to this Court's standing order, without the need for any additional direction or deadlines. Should the Court nonetheless conclude a meet-and-confer deadline is warranted here, Defendants have already indicated they are willing to meet and confer within seven days of the filing of any amended complaint. *See* OEM Mot. 4:3-4. That is ample time before a response to any amended complaint would be due; and OEM Plaintiffs' allusions to urgency to file a motion for summary judgment are undercut by their own delay in seeking to amend their complaint. Moreover, seven days would also accommodate uncertainties about counsel unavailability that are inherent in deadlines triggered by events with unknown timing. *See* Meckenstock Decl., Exh. B.

In addition, because of the complexity of this case and conflicting workload demands, Defendants respectfully request that the Court extend the ordinary time to respond to any amended complaint by a modest 14 days, providing a total of 28 days for that response. *See* Fed. R. Civ. Proc. 15(a)(3). Defendants intend to file a renewed motion to dismiss, given that their fully briefed motion to dismiss would be mooted by the filing of an amended complaint. *See* OEM Mot. 5:15-16; *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); Fed. R. Civ. Proc. 15(a)(3) (providing new opportunity to respond to an amended complaint). Additional time is warranted for at least two reasons.

First, despite OEM Plaintiffs' claims to the contrary, the proposed amendments give this case a new and sweeping scope. Unlike the original complaint which alleges, *inter alia*, that

particular CARB regulations are preempted, the proposed complaint purports to challenge the existence of *any* CARB authority to certify or otherwise regulate new heavy-duty vehicles. *E.g.*, Prop. FAC ¶¶ 81, 85, 99, 100, 109. Specifically, the original complaint alleges two preemption theories each covering an identified set of specific regulations: 1) that three waivers covering certain regulations had been invalidated by congressional resolution; and 2) that waivers had never been requested or issued for other, specified regulations. ECF 1 ¶ 74(a), (b). Neither of those theories supports OEM Plaintiffs' new request to declare *all* CARB heavy-duty vehicle regulations preempted. So, the proposed complaint adds a new legal theory—that these additional CARB regulations are preempted even though waivers had issued for them and those waivers were never subject to any congressional resolutions. Prop. FAC ¶ 99(c). OEM Plaintiffs also appear to seek to prevent CARB from proceeding with *future* regulations as it has in the past. *Id.* ¶¶ 98, 99(a); *see also id.* ¶ 49. Defendants require sufficient time to assess these significant changes in scope, to determine whether to move to dismiss any of these new claims, and to prepare their motion and obtain all the requisite management and client reviews. Second, while Defendants' counsel will continue to work diligently on this matter, they also have time-sensitive work in other matters. Meckenstock Decl., ¶¶ 4-6. Accordingly, Defendants request 28 days to file a renewed motion to dismiss, should the Court grant the motion for leave to amend.

OEM Plaintiffs will not be prejudiced by this request. Indeed, they opted *not* to amend their complaint as of right (under Rule 15(a)(1)(B)) after Defendants moved to dismiss the original complaint on October 10, 2025, even though CARB had issued both the August MAC and emergency rulemaking notice by that point. Instead, OEM Plaintiffs opted to oppose Defendants' motion and then seek leave to amend *more than three months* later. Having taken all that time to develop their new and additional legal theories, OEM Plaintiffs should not now be heard to complain about two additional weeks for Defendants to prepare a response.

### B.   Coordinating Clean Truck Partnership Briefing Across this Case and *AmFree* Could Be Efficient, but Coordinating All Briefing Would Not Be

OEM Plaintiffs also asserted that "it would be most efficient for the Court and the parties to brief summary judgment on these issues in parallel" with a schedule proposed for dispositive

motions in *AmFree*. OEM Mot 3:24-26; *see also id.* at 2:15-18. This Court later declined to enter that proposed schedule, indicating the Court "will set a deadline for the parties to file an Updated Joint Status Report regarding scheduling" when it rules on the United States' opposed motion to intervene in that case. *AmFree* ECF 165.

In case it is helpful to the Court in managing these two matters, Defendants respond briefly to OEM Plaintiffs' contention. In Defendants' view, any simultaneous briefing across the two cases should be limited to the single overlapping issue—whether the Clean Truck Partnership is preempted. That is the only claim in *AmFree*. *AmFree* ECF 142. But it is only one of OEM Plaintiffs' three "counts" in this case, where the other two counts mount sprawling and diverse attacks on *every* CARB regulation governing new heavy-duty vehicles as well as two CARB advisory notices and an Executive Order issued by Governor Newsom. Prop. FAC at 39-47; *supra* 11:1-12.

Preemption challenges to the Clean Truck Partnership turns on whether the agreement was voluntary and whether it is enforceable via civil or criminal penalties or via breach of contract suit (because the former suggests an "agreement" actually has the same force of law as a regulation while the latter suggests the opposite). ECF 78 at 16:17-17:19; ECF 103 at 9:19-12:28. By contrast, OEM Plaintiffs' challenges to CARB's regulations involve myriad distinct and complex questions—such as whether the congressional resolutions purporting to disapprove of certain preemption waivers violated separation of powers and federalism principles. ECF 73 at 20-32; ECF 80 at 6-14. OEM Plaintiffs' proposed complaint would expand this complexity by challenging earlier-adopted regulations on a distinct and novel legal theory—that the waivers covering the requirements confirmed by the emergency regulations are no longer operative. *E.g.*, Prop. FAC ¶ 99(c). AmFree's complaint raises *none* of these issues.

While there may well be some efficiency in coordinated (or even simultaneous) briefing of overlapping issues (i.e., the Clean Truck Partnership), there is no such efficiency to layering briefing of numerous unrelated, novel, and highly complex questions on top of Clean Truck Partnership briefing. Defendants have already moved to dismiss OEM Plaintiffs' Clean Truck Partnership claim for lack of standing and failure to state a claim, ECF 78, ECF 103, and

Defendant Cliff plans to move for judgment on the pleadings or summary judgment on similar grounds in *AmFree*, *AmFree* ECF 164 at 5:4-17. Defendants suggest that coordinated briefing of *those* issues—separate (or at least staggered) from the issues *particular to this case*, such as constitutional questions about the congressional resolutions and OEM Plaintiffs' novel arguments about CARB's emergency regulations—would be an efficient path forward.

## CONCLUSION

Defendants respectfully request that this Court deny OEM Plaintiffs' motion for leave to amend in so far as it challenges and/or seeks relief from the state-court suit, *CARB v. Daimler*. Defendants also respectfully request that this Court afford them 28 days to respond to any amended complaint that is filed and, if the Court decides to set a timeline for the parties to meet and confer, that it provide seven days for the parties to do so.

Dated:  January 30, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General


*/s/ M. Elaine Meckenstock*
M. ELAINE MECKENSTOCK
Deputy Attorney General
*Attorneys for Defendants*