GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:     650.849.5395
Facsimile:     640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     415.393.8293
Facsimile:     415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
JACOB T. SPENCER, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone:     202.955.8500
Facsimile:     202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
JSpencer@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*
(additional counsel on signature pages)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,<br><br>          Plaintiffs,<br><br>     v.<br><br>STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,<br><br>          Defendants.<br>_____<br>THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>          Plaintiffs-Intervenors,<br><br>     v.<br><br>CALIFORNIA AIR RESOURCES BOARD; and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,<br><br>          Defendants. | Case No. 2:25-cv-02255-DC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS DAIMLER TRUCK NORTH AMERICA ET AL.'S FIRST AMENDED COMPLAINT (DKT. 118)**<br><br>Date:          May 1, 2026<br>Time:          1:30 PM<br>Courtroom:  8, 13th Floor<br>Judge:         Hon. Dena Coggins<br>Action Filed: August 11, 2025 |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

STANDARD OF REVIEW .......................................................................................... 4

ARGUMENT .............................................................................................................. 5

   I.   COUNT III STATES A JUSTICIABLE CLAIM CHALLENGING THE CLEAN TRUCK PARTNERSHIP. ...... 6

      A.   *Count III Adequately Pleads that the CTP Is Preempted.* ....................................... 6

         1.   *CARB Is Exercising Its Regulatory Authority Through the CTP.* ..................................... 6

         2.   *Whether Plaintiffs Voluntarily Signed the CTP Is Irrelevant.* ........................................... 8

      B.   *Plaintiffs Have Standing to Assert Claims Based on the CTP.* ........................................... 10

   II.   DEFENDANTS' PIECEMEAL ATTACKS ON THE AMENDED COMPLAINT ARE PROCEDURALLY IMPROPER AND FAIL ON THE MERITS. ...................................................................... 12

      A.   *Defendants' Arguments Improperly Seek Dismissal of Part of Plaintiffs' Claims.* ............. 12

      B.   *Plaintiffs Face Imminent Injury from the 2036 Sales Requirement.* .................................... 13

      C.   *Defendants' Voluntary Cessation Does Not Moot any Challenge to the May MAC.* .......... 17

      D.   *Count II States a Viable Claim Against the EO.* ..................................................... 18

   III.   DEFENDANT NEWSOM IS NOT IMMUNE FROM SUIT. ............................................... 21

CONCLUSION .......................................................................................................... 24

**TABLE OF AUTHORITIES**

Page

**Cases**

*Airlines for America v. City & County of San Francisco*,
78 F.4th 1146 (9th Cir. 2023).................................................................................................7

*Allen v. Wright*,
468 U.S. 737 (1984).............................................................................................................13

*American Automobile Manufacturers Association v. Commissoner, Massachusetts
Department of Environmental Protection*,
998 F. Supp. 10 (D. Mass. 1997) .........................................................................................10

*American Trucking Associations, Inc. v. City of Los Angeles*,
569 U.S. 641 (2013)................................................................................6, 8, 9, 10, 11, 12

*American Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)...............................................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................5, 6

*Association of International Automobile Manufacturers, Inc. v. Commissioner,
Massachusetts Department of Environmental Protection*,
208 F.3d 1 (1st Cir. 2000) .....................................................................................................9

*B&L Products, Inc. v. Newsom*,
No. 21-cv-01718-AJB-KSC, 2022 WL 3567064 (S.D. Cal. Aug. 18, 2022) ................................23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................................5

*Benyamin v. Topgolf Payroll Servs., LLC*,
2025 WL 745827 (E.D. Cal. Mar. 6, 2025) .................................................................................12

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024)..............................................................................................5

*Brach v. Newsom*,
38 F.4th 6 (9th Cir. 2022)....................................................................................................18

*California Institute of Technology v. City of Pasadena*,
2024 WL 6938009 (C.D. Cal. Aug. 23, 2024)..........................................................................12

*City & County of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018)..............................................................................................19

*County of Santa Clara v. Trump*,
250 F. Supp. 3d 497 (N.D. Cal. 2017) ...........................................................................19, 20

*Coventry Health Care of Missouri, Inc. v. Nevils*,
581 U.S. 87 (2017)...............................................................................................................16

ii

//

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025) .................................................................................................................10, 14

*Dietz v. Comcast Corp.*,
2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ...............................................................................11

*Doe v. Napa Valley Unified School Dist.*,
2018 WL 4859978 (N.D. Cal. Apr. 24, 2018) ...............................................................................13

*Engine Manufacturers Association v. South Coast Air Quality Management District*,
498 F.3d 1031 (9th Cir. 2007).......................................................................................................21

*Engine Manufacturers Association v. South Coast Air Quality Management District*,
541 U.S. 246 (2004) .......................................................................................................................20

*FBI v. Fikre*,
601 U.S. 234 (2024) .......................................................................................................................17

*Fikre v. FBI*,
904 F.3d 1033 (9th Cir. 2018)...................................................................................................17, 18

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000) .......................................................................................................................17

*Hughes v. Alexandria Scrap Corp.*,
426 U.S. 794 (1976) .......................................................................................................................21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)............................................................................................................5

*Koontz v. St. Johns River Water Management District*,
570 U.S. 595 (2013) .........................................................................................................................9

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)..........................................................................................................5

*Los Angeles County Bar Association v. Eu*,
979 F.2d 697 (9th Cir. 1992).....................................................................................................22, 23

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).......................................................................................................................11

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990).........................................................................................................................4

*McAdory v. M.N.S. & Assocs., LLC*,
952 F.3d 1089 (9th Cir. 2020).....................................................................................................14, 18

*Metropolitan Taxicab Board of Trade v. City of New York*,
633 F. Supp. 2d 83 (S.D.N.Y. 2009).............................................................................................20, 21

iii

//

*Ms. L. v. U.S. Immigration & Customs Enforcement*,
302 F. Supp. 3d 1149 (S.D. Cal. 2018) ................................................................................18

*Murphy v. National Collegiate Athletic Ass'n*,
584 U.S. 453 (2018) ...............................................................................................16, 17

*National Audubon Society, Inc. v. Davis*,
307 F.3d 835 (9th Cir. 2002) ...............................................................................................23

*Nebraska v. Cliff*,
No. 2:24-cv-01364-TKN-CKD (E.D. Cal. 2024) ..........................................................15

*New York v. United States*,
505 U.S. 144 (1992) ...............................................................................................................16

*Olivier v. City of Brandon*,
No. 24-993 (U.S. Sup. Ct. Mar. 20, 2026), slip op. ........................................................15

*Olympic Pipe Line Co. v. City of Seattle*,
437 F.3d 872 (9th Cir. 2006) .......................................................................................8, 9, 12

*Pacific Rivers Council v. U.S. Forest Service*,
942 F. Supp. 2d 1014 (E.D. Cal. 2013) .............................................................................10

*Pathways, Inc. v. Dunne*,
329 F.3d 108 (2d Cir. 2003) .................................................................................................12

*Peace Ranch, LLC v. Bonta*,
93 F.4th 482 (9th Cir. 2024) ................................................................................................11

*Printz v. United States*,
521 U.S. 898 (1997) ...............................................................................................................16

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979) ...............................................................................................................16

*Savage v. Glendale Union High School District No. 205*,
343 F.3d 1036 (9th Cir. 2003) ...............................................................................................4

*Estate of Temple v. Placer County Sheriff's Office*,
2025 WL 950523 (E.D. Cal. Mar. 28, 2025) ....................................................................13

*Texas v. United States*,
523 U.S. 296 (1998) .........................................................................................................19, 20

*Twitter, Inc. v. Paxton*,
56 F.4th 1170 (9th Cir. 2022) ..............................................................................................19

*United States v. King County*,
122 F.4th 740 (9th Cir. 2024) .........................................................................................18, 21

//

*Western States Trucking Association v. Schoorl*,
377 F. Supp. 3d 1056 (E.D. Cal. 2019)................................................................................................4

*Walsh v. Nevada*,
471 F.3d 1033 (9th Cir. 2006)..............................................................................................11

*Washington v. Trump*,
766 F. Supp. 3d 1138 (W.D. Wash. 2025)..............................................................................19

*Wisconsin Department of Industry, Labor & Human Relations v. Gould Inc.*,
475 U.S. 282 (1986)................................................................................................21

*Ex parte Young*,
209 U.S. 123 (1908)................................................................................................22

**Statutes**

42 U.S.C. § 7543 ................................................................................................1, 16

Cal. Code Regs., tit. 13, § 1963.6 ................................................................................15

Cal. Code Regs., tit. 13, § 2016 ................................................................................13, 15

Pub. L. 95-504, 92 Stat. 1708 (Oct. 24, 1978) ................................................................17

**Other Authorities**

CARB, Public Hearing to Consider the Proposed Advanced Clean Fleets Regulation,
Staff Report: Initial Statement of Reasons (Aug. 30, 2022) ................................................14

**INTRODUCTION**

Plaintiffs amended their complaint to make clear that it challenges *all* of the various ways in which Defendants are violating the federal Clean Air Act ("CAA") by adopting and attempting to enforce emissions standards and requiring certification for new heavy-duty vehicles and engines without a waiver of federal preemption. 42 U.S.C. § 7543. Defendants' motion to dismiss the amended complaint—like their original motion to dismiss—does not address the central issues in this case. It does not even try. It does not dispute that Defendants are adopting and attempting to enforce preempted standards, in violation of federal law. It ignores the new federal laws enacted under the Congressional Review Act in 2025 ("CRA Resolutions") explicitly barring California from enforcing those preempted standards. And it does not dispute that Defendant Cliff, the Executive Officer of the California Air Resources Board ("CARB"), is a proper defendant.

Indeed, Defendants move to dismiss only *one* of Plaintiffs' three counts—Count III—which alleges that the CAA preempts the Clean Truck Partnership ("CTP"). Their standing and merits arguments about the CTP are futile. This Court has already found—under a higher standard of review than applicable to the motion to dismiss—that Plaintiffs are likely to succeed on the merits *and* suffer *irreparable* harm (not merely injury-in-fact) from the CTP. *See* Dkt. 94 at 31–32. Defendants chose not to appeal this Court's order, which rejected all of the arguments they advance here. Those arguments have not become more persuasive through repetition.

Defendants do not move to dismiss Plaintiffs' other two counts at all. Rather, they attack a smattering of discrete allegations within each count on justiciability and merits grounds. That piecemeal approach is procedurally improper and should be rejected for that reason alone: Rule 12(b) contemplates the dismissal of *claims*, not *allegations*. In any event, Defendants' arguments remain meritless. They have engaged in a continuous course of conduct to impermissibly sidestep federal preemption by requiring that Plaintiffs conform to California's preempted standards to sell heavy-duty trucks and engines in the State. Defendants' own public-record documents establish this, including an Executive Order ("EO"), Manufacturers Advisory Correspondences ("MACs"), the CTP, and an Emergency Rulemaking. Defendants' present enforcement of the CTP and repeated and credible threats of enforcement against any entity that does not comply with the preempted emissions standards are causing

significant business harm to Plaintiffs today. Plaintiffs need to know now whether they can lawfully sell trucks in California without certifying to or complying with the preempted standards. Defendants' continued attempts to enforce preempted standards create imminent, concrete, and particularized harm to Plaintiffs. Accordingly, the Court should deny Defendants' Motion.

## BACKGROUND

The CAA authorizes the Environmental Protection Agency ("EPA") to regulate emissions from heavy-duty vehicles and engines, preempting state standards to ensure uniform national regulations. First Amended Complaint ("FAC") ¶¶ 2, 27, 28. One state, California, may request a waiver of preemption from the federal government to issue its own emissions standards in limited circumstances. *Id.* ¶¶ 2, 30.

CARB has promulgated a series of regulations significantly departing from federal standards and "created an unstable and untenable landscape for manufacturers of heavy-duty trucks and engines …." FAC ¶¶ 5–6. Those regulations include Advanced Clean Trucks ("ACT"), Omnibus Low NOx, and Advanced Clean Fleets ("ACF"). *Id.* ¶¶ 34–35. To address the uncertainty created by these regulations, Original Equipment Manufacturers ("OEMs") petitioned CARB for relief. The result, in July 2023, was the CTP, in which CARB outlined a plan to undertake regulatory changes—specifically, that CARB would exercise its regulatory authority to harmonize federal and California tailpipe emissions standards, promulgate agreed-upon regulatory amendments, and provide sufficient lead time for future regulations. *Id.* ¶ 7. "As conditions for this relief, CARB extracted new concessions from the manufacturers, including that the manufacturers would comply with CARB's emissions standards 'irrespective of the outcome of any litigation challenging' them or CARB's authority to implement those standards." *Id.* ¶¶ 7, 40–42 (quoting CTP).

Between 2023 and January 2025, EPA issued preemption waivers for ACT, Omnibus Low NOx, and Advanced Clean Cars II. FAC ¶¶ 8, 34. In May 2025, however, Congress passed joint resolutions disapproving those waivers ("CRA Resolutions"), and on June 12, 2025, the President signed those resolutions into law. *Id.* ¶ 8. CARB never sought an EPA waiver of federal preemption for other emissions standards applicable to heavy-duty trucks and engines, such as ACF's 100% sales requirement for zero-emission vehicles. *Id.* ¶ 35. As a result, federal law prohibits California from adopting

or attempting to enforce any of those standards. *Id.* ¶¶ 47–49. On August 7, 2025, DOJ issued a letter ordering Plaintiffs to cease compliance with the CTP "and its preempted state vehicle emission regulations." *Id.* ¶ 51, Ex. B.

Undeterred, Defendants have undertaken a series of actions intended to continue their attempts to enforce CARB's preempted standards (FAC ¶ 10), and at the same time attempt to evade effective judicial review of their illegal actions by claiming that their challenged actions were no longer operative and new litigation was necessary to stop the subsequent violations. *See, e.g.*, Dkt. 80 at 1; Prelim. Inj. Hr'g Tr. 43:23–44:9. Yet all of Defendants' actions form part of a single course of conduct intended to defy Section 209 and the CRA Resolutions. In the May 23, 2025 MAC (the "May MAC"), CARB stated that manufacturers must continue to follow CARB's preempted standards, including the certification requirement, to ensure "lawful" sales of vehicles and engines in California. FAC ¶¶ 10, 59. On June 12, 2025, Governor Newsom issued Executive Order N-27-25 ("EO"), instructing CARB to disadvantage manufacturers that dispute the validity of the CTP or fail to comply with the preempted standards. *Id.* ¶¶ 10, 26, 62–63.

Then, on August 25, 2025, CARB issued a new MAC that purported to "supersede" the May MAC by offering three alternative "pathways" for OEMs to receive certifications from CARB during the "unprecedented uncertainty" facing the heavy-duty vehicle and engine industry (the "August MAC"). Dkt. 79-2 at 2–3; FAC ¶ 64. Notwithstanding the fact that California has no certification authority for heavy-duty vehicles and engines in model year 2026, *see* FAC ¶¶ 10–12, 64–69, the so-called "pathways" include (1) applying for CARB certification under preempted regulations that preceded the regulations subject to the CRA Resolutions; (2) applying for CARB certification using federal certifications; or (3) applying for CARB certification pursuant to the regulations subject to the CRA Resolutions and/or the CTP. Dkt. 79-2 at 2; FAC ¶ 67. Even then, two of the supposed pathways were illusory: CARB threatened that OEMs could only "have confidence" that they would be "in compliance with their obligations" to CARB by seeking certification to CARB's preempted standards. Dkt. 79-2 at 2; FAC ¶ 66. Finally, on September 15, 2025, CARB commenced an Emergency Rulemaking attempting to insert new emissions standards into the California Code of Regulations without a preemption waiver. Dkt. 79-3; FAC ¶ 70. Among other things, the Emergency Rulemaking attempts

to codify new language threatening retroactive enforcement of preempted standards into California law. *See* Dkt. 79-3 at 6 (stating that OEMs "assume the risk if they choose to certify only to the antecedent provisions"); FAC ¶ 74.

Defendants are using the CTP, the May MAC, the EO, the August MAC, and the Emergency Rulemaking to coerce heavy-duty truck and engine OEMs into seeking California certification and to compel the entire industry to follow California emissions standards that have been expressly preempted by federal law. *See* FAC ¶¶ 10–12. At the same time, "the federal government has reiterated that CARB's vehicle emissions standards are preempted and thus California is prohibited from attempting to enforce those state emissions standards and certification requirements." *Id.* ¶ 12. OEMs are thus caught in the crossfire, without certainty as to which regulatory regime applies to their present and future truck sales in California. *Id.* ¶¶ 13–14. Plaintiffs seek clarification of the law and declaratory and injunctive relief. *Id.* ¶ 16.

On October 31, 2025, this Court granted Plaintiffs' Motion for Preliminary Injunction in part. Dkt. 94 at 34. This Court held that "as to Plaintiffs' claim that the [CTP] is preempted and should be enjoined, Plaintiffs have satisfied the first and second *Winter* factors." *Id.* at 32. As to Plaintiffs' other claims regarding Defendants' adoption of and attempts to enforce preempted emissions standards, this Court found that Plaintiffs did not establish irreparable harm under *Winter* because, under the August MAC, "manufacturers are not required to obtain CARB certification to [preempted] standards (or any CARB standards) to sell vehicles in California"; rather, "OEM Plaintiffs may sell federal vehicles in California by certifying to federal EPA standards." *Id.* at 28.

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must defer to the plaintiff's factual allegations and "presume[ ] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (citation omitted). In a facial challenge, a Rule 12(b)(1) motion will succeed "only if the non-moving party fails to allege an element necessary for subject matter jurisdiction." *W. States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056, 1064 (E.D. Cal. 2019) (citing *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003)). When a Rule 12(b)(1) motion raises "a

4

factual attack on standing … the court 'must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] is intertwined with an element of the merits of the plaintiff's claim.'" *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144 (9th Cir. 2024) (alteration in original) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.3 (9th Cir. 2014)).

A complaint survives a Rule 12(b)(6) motion to dismiss where it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All reasonable inferences must be drawn in plaintiffs' favor, and "district courts may not consider material outside the pleadings …." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998, 1003 (9th Cir. 2018).

## ARGUMENT

Defendants seek full dismissal as to only one claim in the amended complaint—Count III, regarding the CTP. But the amended complaint and a prior order by this Court establish that the CTP is an exercise of CARB's regulatory authority preempted by Section 209. *See infra* Section I.a. And Plaintiffs' standing to assert claims based on the CTP is plain, particularly since CARB has taken steps attempting to enforce the CTP—*e.g.*, seeking specific performance through a lawsuit. *See infra* Section I.b. Defendants' arguments for dismissal of Count III fall flat.

In procedurally improper challenges, Defendants attempt to carve apart and seek dismissal of only portions of Count I, which alleges that Defendants' emissions standards are federally preempted, and Count II, alleging Defendants have unlawfully attempted to enforce those standards. Defendants' arguments are defective under Rule 12(b) and should be denied on that basis alone. *See infra* Section II.a. And on the merits, none of Defendants' arguments withstand examination. The amended complaint adequately alleges that Plaintiffs have standing to challenge Defendants' attempts to enforce preempted standards and states a claim that the challenged course of conduct is federally preempted. Governor Newsom is a proper defendant because he issued the EO being challenged and is directly responsible for harm to Plaintiffs. And Plaintiffs have standing to challenge California's complete ban on the sale of internal-combustion trucks because it is causing present and ongoing harm to Plaintiffs. Defendants' Motion fails at every turn.

//

I.    **Count III States a Justiciable Claim Challenging the Clean Truck Partnership.**

Defendants raise two arguments in support of their Motion to Dismiss Count III—that Plaintiffs fail to state a claim that the CTP is preempted by the CAA and that Plaintiffs lack standing to pursue Count III. This Court already rejected those arguments in concluding that Plaintiffs were likely to succeed on the merits. It should reject them again and permit Count III to proceed to the merits.

### A.   Count III Adequately Pleads that the CTP Is Preempted.

#### 1.   CARB Is Exercising Its Regulatory Authority Through the CTP.

This Court has already recognized that the CTP reflects CARB's exercise of regulatory authority, preliminarily enjoining its enforcement. *See* Dkt. 94 at 31–32. As this Court held—under the more demanding *Winter* standard—because the CTP constitutes an attempt by CARB to enforce preempted standards, Plaintiffs are likely to succeed on the merits of this claim. *See* Dkt. 94 at 31–32. This alone strongly supports a finding of preemption in the current posture, where Plaintiffs need only establish a plausible claim to relief. *See Iqbal*, 556 U.S. at 678.

That conclusion also follows directly from the governing framework. The Supreme Court has explained that when governments "exercise [their] regulatory authority" through a contract, that contract is subject to preemption. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641, 652 (2013). The key question in that preemption analysis is not whether the agreement is "voluntary." *Contra* Mot. 17–19. The question is whether the government "enters into a contract just as a private party would" or instead is "acting in a regulatory rather than proprietary mode." *Am. Trucking Ass'ns*, 569 U.S. at 649–50.

The CTP is fundamentally about certification to and compliance with CARB emissions standards and, therefore, is a "classic" exercise of CARB's "regulatory authority." *Am. Trucking Ass'ns*, 569 U.S. at 650. As this Court already explained, the CTP requires "Plaintiffs to certify to CARB's standards," Dkt. 94 at 31—specifically, ACT, Omnibus Low NOx, and the ACF 100% zero-emission vehicle mandate, FAC ¶ 41; CTP, App'x B, at i–ii. The CTP provides that "California will maintain its certification program" and requires Plaintiffs "to submit applications for certification including test data, certification documents, etc. to demonstrate compliance with applicable California requirements." CTP, App'x B ¶ 1. In exchange, the "consideration" CARB purports to provide consists entirely of

6

regulatory commitments—agreeing to initiate rulemakings, amend and harmonize emissions standards with federal requirements, and provide compliance flexibility and lead time through future regulatory action. *See, e.g.*, CTP ¶¶ 1, 5, 6, App'x A, App'x C. CARB has explicitly invoked the CTP as the method for manufacturers to obtain certification—*i.e.*, regulatory approval—of new vehicles and engines in the August MAC. Dkt. 79-2 at 2 (stating manufacturers "may … continue to seek … applications for CARB certification on the terms provided for" in the CTP). Failure to follow the emissions standards set forth in the CTP results in "non-compliant" sales. CTP, App'x A, n.1. And the express purpose of the CTP is to ensure "current and future CARB regulations affecting new [heavy-duty] vehicles and engines will achieve significant reductions of air pollutants." CTP at 1.

This Court does not need to look further than the CTP's plain terms and purpose to determine that CARB is acting as a regulator, not as a market participant. Yet other factors confirm that conclusion here, too. In *Airlines for America v. City & County of San Francisco*, for example, the Ninth Circuit held that a state's use of civil enforcement mechanisms, unavailable to private parties, shows the state acting as a regulator as opposed to a market participant. 78 F.4th 1146, 1153–54 (9th Cir. 2023). The Ninth Circuit ruled that a governmental enforcement scheme "is not available to private parties and is similar to other schemes which have been held to be regulatory." *Id.* at 1154 (citation omitted). Here, the CTP contains no contract remedies to enforce OEMs' obligations; instead, it incorporates penalty-carrying regulatory provisions. *See* CTP, App'x B, at i–ii nn.1–5. As this Court previously observed, the CTP lacks enforcement or damages terms, but does dictate that OEMs that violate the CTP will be "non-compliant," CTP, App'x A, at i nn.1–2—in other words, violating the CTP leads to *regulatory* non-compliance. *See* Dkt. 94 at 12 (noting the CTP "does not include any enforcement or penalty provisions"); *id.* at 12 n.11 (observing that, where a signatory did not comply with Appendix A legacy caps, the CTP states that such sales are "non-compliant"). And the CTP allows CARB to monitor Plaintiffs' compliance with the preempted regulations through CARB's certification process. *See* CTP, App'x B, ¶ 1. This enforcement scheme—unavailable to any private party—readily satisfies the test set forth in *Airlines for America*.

Defendants protest that the CTP's reference to regulatory provisions is merely a means to define contractual terms so that "all the parties could easily understand" the contract's requirements. Mot. 23.

But where the government secures "[c]ontractual commitments" that "manifest the government *qua* government, performing its prototypical regulatory role," those contractual commitments are subject to preemption. *Am. Trucking Ass'ns*, 569 U.S. at 651.

As this Court has already held, CARB's enforcement of the CTP—including through its state-court contract action—"clearly … attempt[s] to enforce preempted standards," Dkt. 94 at 32, confirming that the CTP operates as a regulatory mechanism trespassing on the ground reserved for the federal government by Section 209(a). Because the CTP "functions as part and parcel of a governmental program wielding coercive power over private parties," and that coercive power is exercised in a domain reserved for the federal government, it is preempted. *See Am. Trucking Ass'ns*, 569 U.S. at 650.

### 2.    Whether Plaintiffs Voluntarily Signed the CTP Is Irrelevant.

Repeating their failed argument made in opposition to Plaintiffs' motion for a preliminary injunction, Defendants contend that Plaintiffs voluntarily consented to the CTP. *Compare* Mot. 19–21 *with* Dkt. 73 at 14. That argument remains irrelevant. Indeed, the Ninth Circuit rejected this exact argument in *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006). There, like Defendants here, the City of Seattle argued that a private party "knowingly and voluntarily consented to the City's regulations" by entering an agreement with the City that allowed Seattle to contractually impose safety standards that were preempted under federal law. *Id*. at 882–83.[1] The Ninth Circuit rejected Seattle's argument because "[p]reemption is a power of the federal government, not an individual right of a third party that the party can 'waive.'" *Id*. at 883. The purpose of preemption is to allocate specific powers to the federal government to the exclusion of state and local governments. *Id*. at 882. If states and private parties could enter an agreement that allowed a state to regulate those parties in a way that would be preempted under federal law, then states and private parties could eviscerate the federal government's preemption power and, as a result, the Supremacy Clause. Defendants' argument that there "is no Supremacy Clause issue to 'contract around' because preemption provisions do not generally reach 'contractual agreements voluntarily undertaken[,]'" Mot. 18, suffers from a

---

[1] The agreement in *Olympic Pipe Line Co*. was adopted in a local ordinance, 437 F.3d at 875, but the Ninth Circuit analyzed the agreement as a contractual document, assessing whether "Seattle was acting as a regulator rather than as a municipal proprietor," *id.* at 881.

foundational mistake. The relevant inquiry is what power the state has vis-à-vis the federal government, not whether private parties agree to submit to governmental powers a state would otherwise lack. *See Olympic Pipe Line Co.*, 437 F.3d at 882; *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013) (holding that states cannot use a contract to compel action "that the government could not have [otherwise] constitutionally ordered the person" to take).

Similarly, Defendants' reliance on *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), is misplaced. *Wolens* stands for the unremarkable proposition that a frequent flyer agreement between private parties did not result from state regulatory power but rather was a prototypical example of market participants agreeing to commercial terms. *Id.* at 228–29, 232–33. As the Supreme Court explained in *American Trucking Associations*, the "reasoning" of *Wolens* can apply to agreements with a state government, but only "*if the government enters into a contract just as a private party would.*" 569 U.S. at 649–50 (emphasis added). Here, CARB is not acting "just as a private party would"—on the contrary, CARB is mandating industry-wide standards for emissions certification and compliance. *Cf.* Dkt. 103 at 11 n.11 (Defendants concede that their "contention is not that the market participant exception applies to the CTP").

The First Circuit's holding in *Association of International Automobile Manufacturers, Inc. v. Commissioner, Massachusetts Department of Environmental Protection,* 208 F.3d 1 (1st Cir. 2000) ("*AIAM*"), similarly fails to support Defendants' position. In *AIAM*, California had *repealed* the relevant regulatory requirements governing zero-emission vehicles, and replaced the requirements with a purely voluntary pilot program that was embodied in contracts called Memoranda of Agreement ("MOAs"). 208 F.3d at 3. *AIAM* then asked whether Massachusetts legislatively could adopt the emission requirements reflected in those contracts under Section 177 of the CAA—a question far afield from what is at issue here. *Id.* at 8. And the MOAs in *AIAM* contrast sharply with the CTP. The CTP, as this Court has already recognized, is an attempt to enforce and mandate compliance with preempted emissions regulations. *See* Dkt. 94 at 31–32. The MOAs were not a mechanism for enforcing extant state law—the framework that had formerly governed was repealed. *AIAM*, 208 F.3d at 3. Rather, the MOAs at issue in *AIAM* reflected California's efforts to work with automakers to help promote and support the market for zero-emission vehicles, including OEM agreements to individualized

development targets in exchange for CARB "promis[ing] to facilitate purchases [of zero-emission ve-hicles] in state fleets." *See Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't of Env't Prot.*, 998 F. Supp. 10, 14 (D. Mass. 1997), *aff'd sub nom. AIAM*, 208 F.3d at 8. In sum, *AIAM* is not only irrele-vant; there is nothing inconsistent between the First Circuit's decision in *AIAM* and the Supreme Court's subsequent decision in *American Trucking* that a contract is subject to preemption when a state is "acting in a regulatory rather than proprietary mode." 569 U.S. at 650. To the extent any such incon-sistency were to exist, the Supreme Court's decision in *American Trucking* controls.

**B.  Plaintiffs Have Standing to Assert Claims Based on the CTP.**

Plaintiffs, as parties to the CTP and targets of Defendants' attempted enforcement thereof, plainly have standing to challenge the CTP. Defendants have attempted to enforce the CTP by threat-ening future enforcement actions that could result in fines, FAC ¶ 81; making compliance a condition of contracting preferences and favorable regulatory treatment, FAC ¶¶ 62–63; and filing a state-court breach of contract action, FAC ¶ 56. All of this injures the Plaintiffs, is caused by Defendants' attempts to enforce the CTP, and can be redressed by the relief sought. *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 116 (2025) (Courts should employ "commonsense" when analyzing causation and re-dressability).

This Court already held that Plaintiffs would suffer "concrete, irreparable harm" from the CTP absent a preliminary injunction. Dkt. 94 at 32; *see id.* at 31 (explaining that Defendants' arguments "ring hollow" following the filing of the state court action). Plaintiffs necessarily clear the lower thresh-old for pleading standing. *See Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1025 n.8 (E.D. Cal. 2013) ("Establishing injury-in-fact for purposes of standing is less demanding th[a]n demonstrating irreparable harm to obtain injunctive relief."). Defendants have threatened—and already attempted—to enforce the CTP, FAC ¶¶ 55, 81, despite the federal government's instruction that Plain-tiffs cease and desist their compliance, FAC ¶ 51. As a result, Plaintiffs face a concrete and particular-ized risk of significant liability, as well as ongoing uncertainty that directly impacts business planning and operations. FAC ¶¶ 14, 120. Being subject to preempted regulatory power that impacts business is a concrete injury. *See Diamond Alt. Energy*, 606 U.S. at 112 ("[I]f a plaintiff is 'an object of the action (or forgone action) at issue,' then 'there is ordinarily little question that the action or inaction has caused

10

him injury, and that a judgment preventing or requiring the action will redress it.'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992)).

Defendants point out that, in letters to the FTC, each Plaintiff affirmed that the CTP was rendered unenforceable by congressional joint resolutions, *see, e.g.*, Dkt. 121-5 at 2, and that Plaintiffs would make independent decisions regarding vehicle sales without regard to the restrictive terms of the CTP, *see e.g.*, Dkt. 121-5 at 2–3; Mot. 6–7, 16.[2] Here, too, Defendants raise arguments already considered and rejected by this Court. Dkt. 94 at 31 (specifically considering the FTC letters in the context of Plaintiffs' alleged irreparable harm and finding that Defendants' state court lawsuit demonstrated "concrete, irreparable harm"). Defendants' argument also attempts to flip the standard on a Rule 12 motion and invite this Court to determine, relying on self-serving inferences from matters extrinsic and contrary to Plaintiffs' amended complaint, that each of the four Plaintiffs is making complex business decisions without any regard for Defendants' ongoing threats to enforce the CTP. FAC ¶¶ 38, 54, 82, 85; *see Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 488 (9th Cir. 2024) ("[The Supreme Court] has instructed us to take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff.") (internal quotations omitted). The affirmations in the FTC letters do not eliminate Plaintiffs' injuries from Defendants' threats and attempts to enforce the CTP, which hamper Plaintiffs as they plan product development, sales strategies, and compliance approaches. FAC ¶¶ 38, 54, 82, 85. Rather, the fact that Plaintiffs refuse to comply with the CTP so long as it is preempted by federal law is precisely what makes those injuries immediate and concrete. And the regulatory clash between the federal government and CARB is why Plaintiffs face business uncertainty that this lawsuit will resolve.

Defendants' reliance on *Walsh v. Nevada*, 471 F.3d 1033 (9th Cir. 2006), and *Dietz v. Comcast Corp.*, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006), is misplaced. Mot. 16. Those cases turn on the absence of any ongoing or imminent injury due to changed circumstances created by the plaintiff, and thus have no bearing here, where Defendants can enforce, have enforced, and have threatened additional enforcement of the CTP against Plaintiffs. Like the plaintiffs in *Olympic Pipe Line* and *American*

---

[2] As explained in Plaintiffs' separate Objections to Defendants' Request for Judicial Notice, Plaintiffs do not object to judicial notice of the FTC letters for the limited purpose of noticing the existence of the letters, but object to the extent that Defendants seek notice of the truth of the statements in the documents and inferences therefrom.

*Trucking*, Plaintiffs have standing to challenge regulatory mandates reflected in an "agreement." *See Olympic Pipe Line Co.*, 437 F.3d at 882–83; *Am. Trucking Ass'ns*, 569 U.S. at 650–51. Defendants' repeated assertions that standing is lacking because injuries from the CTP are "self-inflicted," Mot. 16, fare no better than their theory that preemption can be displaced by "voluntary" agreements. The CTP and Defendants' enforcement efforts impose preempted compliance obligations and certification requirements that directly cause actual and imminent injury in fact. *See Olympic Pipe Line Co.*, 437 F.3d at 882–83; *Am. Trucking Ass'ns*, 569 U.S. at 650–51.

Finally, Plaintiffs seek a declaratory judgment that the CTP violates the CAA and the Constitution and an injunction enjoining Defendants from enforcing or attempting to enforce the CTP. FAC, Prayer for Relief at IV, V.e. Declaratory relief would redress Plaintiffs' injuries by declaring that the CTP is unenforceable as a matter of federal law. To the extent the declaratory judgment would support a defense to the Alameda County CTP Litigation, that would not violate the Anti-Injunction Act. *Cal. Inst. of Tech. v. City of Pasadena*, 2024 WL 6938009, at *15 (C.D. Cal. Aug. 23, 2024) (explaining that the Anti-Injunction Act does not prevent declaratory judgment on question of federal law where state court lawsuit may turn on the same federal question). And a declaratory judgment would redress Plaintiffs' injuries by preventing enforcement of the CTP beyond the Alameda County CTP Litigation. Similarly, enjoining Defendants from enforcing or attempting to enforce the CTP would redress Plaintiffs' injuries by stopping Defendants' efforts to impose their regulatory powers on Plaintiffs through the CTP by means other than the Alameda County CTP Litigation, for example, through the EO, August MAC, or future litigation. *See Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) ("The Anti–Injunction Act does not prevent a federal court from restraining a party from instituting future state proceedings.").

## II. Defendants' Piecemeal Attacks on the Amended Complaint Are Procedurally Improper and Fail on the Merits.

### A. Defendants' Arguments Improperly Seek Dismissal of Part of Plaintiffs' Claims.

Defendants' challenges to parts of Counts I and II should be denied because they do not seek to dismiss those Counts entirely, and Rule 12(b) does not permit Defendants to "'attack portions of a single claim on a motion to dismiss.'" *Benyamin v. Topgolf Payroll Servs., LLC*, 2025 WL 745827, at

*4 (E.D. Cal. Mar. 6, 2025) (quoting *Doe v. Napa Valley Unified Sch. Dist.*, 2018 WL 4859978, at *2 (N.D. Cal. Apr. 24, 2018)); *see also Estate of Temple v. Placer Cnty. Sheriff's Office*, 2025 WL 950523, at *12 n.2 (E.D. Cal. Mar. 28, 2025) (contrasting Rule 12 motions from Rule 56 motions because Rule 56 expressly contemplates moving on "part of [a] claim"). Defendants' arguments seeking dismissal of Counts I and II only insofar as Plaintiffs' claims relate to the EO, the May MAC, and the ACF regulation's sales requirement violate this basic rule. Each argument should be rejected on that basis alone.

Count II of the Amended Complaint alleges that Defendants are violating the express preemption clause of the CAA by "'attempt[ing] to enforce' their preempted emissions standards in a variety of ways." FAC ¶ 109. Yet Defendants do not contend that Plaintiffs lack standing to bring Count II, nor do they argue that Count II fails to state a claim. Instead, Defendants seek dismissal only of certain allegations *within* Count II. *See* Mot. §§ II–III (arguing only that a challenge to the EO would be unripe or would not state a claim, and that a challenge to the May MAC would be moot).

That same defect applies to Defendants' argument that a single component of Count I—the 2036 Sales Requirement of the ACF standard—should be dismissed. Rule 12(b)(1) and Rule 12(b)(6) motions cannot be used in a piecemeal fashion to pick apart individual allegations within a single claim. *See, e.g.*, *Napa Valley Unified Sch. Dist.*, 2018 WL 4859978, at *2 (rejecting attempt to dismiss portion of a single claim); *cf. Allen v. Wright*, 468 U.S. 737, 752 (1984) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular *claims* asserted" (emphasis added)). Although Defendants' arguments all fail on the merits, *infra* II.b–II.d, the Court need not reach the merits as to Counts I and II. Defendants do not seek dismissal of the *Counts*, and cannot move to dismiss cherry-picked allegations. Defendants' attempts to attack isolated components of Counts I and II should be rejected.

### B. Plaintiffs Face Imminent Injury from the 2036 Sales Requirement.

Plaintiffs face distinct injuries now from both CARB's adoption of the Advanced Clean Fleets ("ACF") ban on internal-combustion trucks in California beginning in 2036 and attempts to enforce it now. *See* Cal. Code Regs., tit. 13, § 2016(c). As this Court has already held, the filing of the Alameda County lawsuit to enforce the CTP "is clearly an attempt to enforce preempted standards a[t] least in

13

part, because the model year 2036 emissions requirement is included in the [CTP] yet CARB never obtained a preemption waiver for that requirement." Dkt. 94 at 32 (holding that "there is concrete, irreparable harm due to the attempted enforcement by CARB through its recently-filed lawsuit against the OEM Plaintiffs"). The inquiry into the justiciability of Plaintiffs' challenge to ACF can stop there.

Nevertheless, as Plaintiffs' amended complaint explains in detail, ACF harms Plaintiffs now, and at the Rule 12 stage, those allegations must be accepted as true. *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1092 (9th Cir. 2020). Beyond ACF's incorporation into CTP, which Defendants have already attempted to enforce, 2036 is less than ten years away, an incredibly short window for achieving the fundamental restructuring of the heavy-duty trucking industry required by a complete ban on internal-combustion engines. FAC ¶ 88. Recognizing that such a transformative ban would require enormous efforts long before it takes effect, Defendants sought a waiver from EPA in 2024, before strategically withdrawing that request weeks before the end of the Biden Administration. FAC ¶ 35.a. Indeed, CARB itself initially proposed that the ban begin in 2040 on the theory that a 2036 ban would prove too ambitious, explaining "sufficient time is needed to build-out maintenance, supply, and infrastructure networks and to make a full transition to [zero-emission vehicles]." CARB, Public Hearing to Consider the Proposed Advanced Clean Fleets Regulation, Staff Report: Initial Statement of Reasons, (Aug. 30, 2022) at 254; FAC ¶ 88.

Likewise, CARB itself acknowledged that the now-preempted Advanced Clean Trucks ("ACT") was needed to gradually ramp up zero-emission vehicle supply. FAC ¶ 88. Without ACT, there is *no* ramp up to the combustion ban, making a complete transition away from internal combustion engines by 2036 even more difficult to achieve. *Id.* ¶ 89. As a result, OEMs must decide *now* how, and how quickly, to transition fleets to zero-emission vehicles, including how to invest capital in research and development and new production facilities—waiting until CARB obtains a waiver would make compliance impossible. *Id.* ¶ 90.

Thus, long before CARB could initiate a potential enforcement action for violating the internal combustion ban, OEMs will be forced to make significant investments towards compliance or risk not being able to ramp up fast enough later and face steep compliance penalties. FAC ¶ 88–90; *Diamond Alt. Energy*, 606 U.S. at 123 ("To deny standing based on a theory that invalidating an important

regulation would actually have zero impact on a dynamic and heavily regulated market requires a degree of economic and political clairvoyance that is difficult for a court to maintain. That is particularly so when the government regulation itself may be skewing the market at issue.”); *see also Olivier v. City of Brandon*, No. 24-993 (U.S. Sup. Ct. Mar. 20, 2026), slip op. at 12 (no citizen is “required to flout the law and risk another prosecution;” he may instead sue for an injunction “to prevent future enforcement”). Plaintiffs have standing because if this Court adjudicates the issue now, OEMs will be able to make major compliance and investment decisions with the certainty and clarity of a judgment on CARB’s combustion ban.

CARB points to a stipulation and order in another case, Mot. 24, which states that CARB will not enforce the ACF combustion ban without a waiver—a stipulation CARB signed in May 2025. Stipulation & Order to Hold Case in Abeyance Pending Outcome of Rulemaking ¶ 3, *Nebraska v. Cliff*, No. 2:24-cv-01364-TKN-CKD (E.D. Cal. 2024), ECF No. 95 (May 2, 2025 order by Judge Nunley prohibiting CARB from “enforc[ing] the … 100% zero-emission-vehicle sales [requirement] beginning with model year 2036 (Cal. Code Regs., tit. 13, § 2016), until CARB obtains a [CAA] preemption waiver from EPA for that regulatory requirement”). Yet less than six months after that order was entered, CARB did *exactly what it forbids* by seeking specific performance of the CTP—and, thus, the ACF 2036 combustion ban—in state court. *See* Dkt. 94 at 31–32. The order in *Nebraska* does not mitigate (let alone eliminate) Plaintiffs’ here-and-now injury. *Contra* Mot. 24. And even if it did, CARB has already contravened it.

CARB’s stipulation, had CARB not already defied it, also fails to fully capture the injury caused by the 2036 combustion ban. CARB stipulated only that it will not enforce the 2036 ban *as part of ACF*. Mot. 24. This is a sleight of hand because CARB also amended its *ACT* standards to include the 2036 combustion ban in that section of its regulations as well, and it has taken repeated efforts to attempt to enforce ACT standards in violation of Section 209—including by seeking to enforce the CTP, which incorporates ACT. *See* Cal. Code Regs., tit. 13, § 1963.6; Dkt. 94 at 31–32. For that separate reason, ACF imposes a concrete injury now, notwithstanding Defendants’ attempt to disclaim attempts at enforcement.

This Court should also reject Defendants’ argument that Plaintiffs cannot identify a legally

15

cognizable injury from California's codification of the 2036 ban. Mot. 24. The reality is that there is no ACF waiver, and the CAA preempts ACF *now* because the CAA requires California to have a waiver *before* it adopts an emission standard. Under the plain text of Section 209, "[n]o State … shall adopt *or* attempt to enforce any standard" without a waiver. 42 U.S.C. § 7543(a) (emphasis added). The disjunctive "or" means that adopting and enforcing are two different government actions, *either* of which violates federal law. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

CARB's adoption of the 2036 ban infringes on the federally protected right conferred on Plaintiffs by Congress in Section 209. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 478–79 (2018) (explaining that valid preemption provisions "confer[] on private entities … a federal right to engage in certain conduct subject only to certain (federal) constraints"). Defendants' reference to *Murphy*, namely that "Congress cannot 'dictate[] what a state legislature may and may not do,'" misreads that case entirely. *See* Mot. 25 (quoting *Murphy*, 584 U.S. at 474). That "anticommandeering doctrine" prohibits Congress from issuing direct orders to state legislatures or executive officers—when the federal government attempts to forcibly conscript state government to enforce federal law. *Murphy*, 584 U.S. at 475; *Printz v. United States*, 521 U.S. 898, 905–06 (1997). But that principle has nothing to do with statutes like the CAA, which validly and indisputably preempt state law. The anticommandeering problem in *Murphy* was not that Congress *phrased* the relevant statutes as a direct order. *See id.* at 478 ("[I]t is a mistake to be confused by the way in which a preemption provision is phrased. As we recently explained, 'we do not require Congress to employ a particular linguistic formulation when preempting state law.'") (quoting *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 99 (2017)). Rather, the problem was that the relevant statute could *not* be understood as "a valid preemption provision"—*i.e.*, one that ultimately "imposes restrictions or confers rights on private actors." *Id.* at 477.

Here, Section 209 is *obviously* a preemption provision. And like most preemption provisions, it negates the effect of particular laws the several states might adopt; it does not conscript the state legislature or its executive agents to enforce federal laws: "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles," 42 U.S.C. § 7543(a). *Cf. Printz*, 521 U.S. at 902 (requiring state law enforcement to perform background checks unconstitutional); *New York v. United States*, 505 U.S. 144 (1992) (federal law

cannot require states to take title to radioactive waste). In fact, Section 209 is a replica of the Airline Deregulation Act, which similarly provides that "no State or political subdivision thereof … shall enact or enforce any law … relating to rates, routes, or services of any [covered] air carrier." Pub. L. 95-504, 92 Stat. 1708 (Oct. 24, 1978) (renumbered and revised, Pub. L. 103-272, 108 Stat. 1143, and codified at 49 U.S.C. § 41713(b)(1)). As *Murphy* itself explained, "if we look beyond the phrasing employed in the Airline Deregulation Act's preemption provision, it is clear that this provision operates just like any other federal law with preemptive effect. It confers on private entities … a federal right to engage in certain conduct subject only to certain (federal) constraints." 584 U.S. at 478–79. Just so here. Section 209 confers on private entities, including Plaintiffs, a federal right to sell new heavy-duty trucks and make compliance and investment decisions subject only to federal emissions standards. And Section 209 makes clear that states interfere with that federal right either by adopting *or* by attempting to enforce their own emissions standards. CARB's intent in keeping the ban on internal-combustion engines around is clear: To scare OEMs into taking steps to comply with the preempted ban today, regardless of whether CARB ever seeks or secures a waiver. California's codification of the 2036 ban accordingly infringes on Plaintiffs' legally protected interest secured by Section 209, causing here-and-now injury.

### C.  Defendants' Voluntary Cessation Does Not Moot any Challenge to the May MAC.

Defendants insist that any challenge to the May MAC is moot because they voluntarily replaced the May MAC with the August MAC after Plaintiffs filed this suit. Mot. 14–15. But voluntary cessation of challenged conduct moots a case "only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000)). And Defendants cannot meet their "formidable burden," *id.*, of showing it is "absolutely clear … considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s)," that the challenged conduct will not recur, *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018).[3]

---

[3] Respectfully, although the Court stated in the preliminary injunction order that "Plaintiffs' arguments with regard to the May MAC have been rendered moot," Dkt. 94 at 29, the Court did not address whether Defendants have carried their burden under the voluntary cessation doctrine.

Indeed, the entire course of conduct undertaken by Defendants since the CRA Resolutions demonstrates that Defendants very much intend to defy federal law until enjoined and that measures such as the May MAC may well be redeployed in that quest and should likewise be enjoined.

Plaintiffs allege—and the August MAC confirms—that CARB acted in response to this litigation. FAC ¶ 64; *see* Dkt. 79-2 at 1 (explicitly referencing this suit). At the pleading stage, those allegations must be accepted as true. *McAdory*, 952 F.3d at 1092. Thus, Defendants' claimed cessation does not moot Plaintiffs' litigation challenge. *See Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1157–58 (S.D. Cal. 2018) (applying voluntary cessation exception because government failed to show that it released plaintiff from detention for non-litigation-related reasons).

Defendants point to purported "procedural safeguards," Mot. 15, but identify none that eliminate the risk of reissuance. First, CARB has never "renounce[d]" its "prerogative and authority" to reissue the May MAC, *Fikre*, 904 F.3d at 1041, rendering CARB's purported commitment to a different course hollow. This alone defeats mootness. Second, the August MAC and Emergency Rulemaking continue the same course of conduct at issue in Count II—requiring CARB certification notwithstanding preemption—rather than abandoning it. *See* FAC ¶¶ 8, 100, 109; *see also* Dkt. 75 at 6–8 (noting Emergency Rule involves new standards without preemption waivers). Nor have Defendants rescinded the underlying policies. To the contrary, Defendants continue to assert authority to require certification and threaten retroactive enforcement. *See, e.g.*, Dkt. 73-33 at 3; FAC ¶ 79. This is the opposite of the unequivocal renunciation that led to mootness in *Brach v. Newsom*, 38 F.4th 6, 13, 15 (9th Cir. 2022). And Defendants' reference to unspecified "procedural limitations inherent in reverting the California Code of Regulations," Mot. 15, contradicts the reality that CARB's own Emergency Rulemaking demonstrates its ability to rapidly alter regulatory requirements—confirming that nothing prevents reissuance of materially similar directives.

The burden under the voluntary cessation doctrine is high and Defendants have not cleared it. Plaintiffs' challenge to the May MAC is not moot.

**D. Count II States a Viable Claim Against the EO.**

***Plaintiffs' Challenges to the EO Are Ripe***. The ripeness doctrine prevents courts "from entangling themselves in abstract disagreements." *United States v. King Cnty.*, 122 F.4th 740, 753 (9th Cir.

2024) (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022)) (internal quotation marks omitted). That principle has no application to the EO, which forces Plaintiffs to choose *now* between complying with preempted standards or immediately forfeiting state procurement opportunities, incentive programs, regulatory flexibility, and incurring the risk of retroactive enforcement. *See* FAC ¶¶ 13–14, 62–63; Dkt. 23-17 ¶ 3.

Ripeness challenges are improper where, as here, the government defendant has already implemented parts of the challenged order. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 529–30 (N.D. Cal. 2017) (finding ripeness where agency began implementing executive order and made statements indicating enforcement intent); *Washington v. Trump*, 766 F. Supp. 3d 1138, 1149, 1151 n.4 (W.D. Wash. 2025) (finding ripeness where executive order directed immediate action and threatened plaintiffs for noncompliance). And CARB, by launching its Drive Forward initiative in response to the EO, has started implementing the EO's direction to give preferential regulatory treatment and special considerations to manufacturers who comply with preempted standards. FAC ¶ 69 (noting that CARB stated in December 2025 at a Drive Forward public workshop regarding heavy-duty vehicle standards and strategies that it "is developing criteria for manufacturers to be designated as 'Drive Forward Leaders,' which will be linked to 'incentive funding' and 'state procurement'").

Furthermore, pre-enforcement challenges to executive orders are ripe where the plaintiffs have articulated plans that conflict with the orders, the authorities have articulated specific warnings or threats, and there is a history of past enforcement. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1236–37 (9th Cir. 2018). The amended complaint alleges each. *See* FAC ¶¶ 10, 54–55, 99–100, 115–120 (alleging CARB's emissions standards and CTP are preempted and unconstitutional); *id.* ¶¶ 10, 64–65, 78, 81 (alleging CARB has continued to declare its intent to enforce the CTP and preempted regulations, including with threats of retroactive enforcement of preempted rules, in the August MAC and Emergency Rulemaking); *id.* ¶ 63 (alleging California has previously placed disfavored manufacturers on a state purchasing restriction list as retaliation for challenging emissions regulations).

Defendants rely on *Texas v. United States*, 523 U.S. 296 (1998), to argue that Plaintiffs' claim is unripe because it rests upon "contingent future events." Mot. 11–12. But *Texas* involved a state

19

remedial scheme for enforcing student achievement standards in local school districts, where Texas was unable to point to any situation where it was "currently foreseen or even likely" that the sanctions at issue would be applied against a particular district. 523 U.S. at 298, 300. At least one other court in this Circuit has thus rejected a government defendant's reliance on *Texas* to challenge ripeness when the "uncertainty concerning how the Government will enforce the Order [was] currently causing [the Plaintiffs] injury." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 529–30 ("'[C]ontingent future events' … are always at issue in a pre-enforcement case …. Under the Government's line of reasoning, virtually all pre-enforcement cases would be non-justiciable on prudential ripeness grounds."). Plaintiffs have alleged a here-and-now injury in this case: Plaintiffs face immediate consequences from the EO's directives unless they conform their current conduct. FAC ¶¶ 13–14, 82, 110, 112. The only judicial safeguard is this pre-enforcement suit.

   ***Count II Adequately Pleads that the EO Is Preempted***. Defendants next wrongly try to limit the CAA's bar on a state's "attempt to enforce" to: (1) penalties for violations of standards, and (2) pre-sale certification and inspection requirements. Mot. 13. Supreme Court precedent establishes otherwise; an "'attempt to enforce' … is not limited to the actual imposition of penalties for violation, but includes steps preliminary to that action." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 257 (2004). Contrary to Defendants' suggestion, the Supreme Court has not restricted what "'steps preliminary' to such penalties" could encompass. *See* Mot. 13. Even indirect efforts to achieve "an effective mandate of a preempted outcome" have been held preempted, such as where the government does not offer regulated parties "viable, non-preempted options[.]" *Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 95–96 (S.D.N.Y. 2009), *aff'd*, 615 F.3d 152 (2d Cir. 2010).

   Here, the EO compels OEM compliance with the preempted standards by conditioning access to preferential *governmental* programs, and the competitive advantages they confer, on compliance with CARB's prohibited emissions regulations—"*regardless of the status of those regulations under federal law*." Dkt. 23-17 ¶ 3 (emphasis added); s*ee* FAC ¶¶ 62–63. It is therefore an "effective mandate" of compliance with preempted standards, rendering the EO preempted. *Metro. Taxicab*, 633 F. Supp. 2d at 95–96. And while Defendants vaguely assert—without support—that "*the EO's reference* to incentives that have yet to materialize cannot cross the line," Mot. 14, courts have rightly

20

concluded otherwise: "[a] sensible business person … would choose to avoid [the economic] loss" imposed by the rule from the start. *Metro. Taxicab*, 633 F. Supp. 2d at 99–100.

Defendants invoke the market-participant exception to federal preemption. Mot. 14. But that does not save the EO for two reasons. *First*, the punishments the EO metes out are not limited to state procurement decisions. *See, e.g.*, *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1045 (9th Cir. 2007) (rule directed government entities to procure and lease vehicles). Rather, the EO's mandates include a directive that CARB provide regulatory flexibility to compliant OEMs, which requires *regulatory action* to effectuate.[4] Dkt. 23-17 ¶ 3.c. *Second*, even for the procurement-related threats, a state does not act as a mere market participant when its actions are "tantamount to regulation," *Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 289 (1986), including where an executive order has an "obvious policy and regulatory basis" and the "clear substance and tenor" is objecting to a federal policy, *King Cnty.*, 122 F.4th at 759. Here, the EO—which Governor Newsom's office published on the same day that the CRA Resolutions became law—has a manifest policy and regulatory basis because it responds to and rejects the federal government's revocation of California's waivers. *See* Dkt. 23-17 at 2. Even the State's supposed market-based actions, such as placing OEMs who do not follow the preempted rules on the "manufacturer purchasing restriction list," *id.* ¶ 3, attempt to enforce the preempted standards and are themselves preempted.

## III.    Defendant Newsom Is Not Immune from Suit.

Plaintiffs properly allege an overall course of conduct by both CARB and Defendant Newsom that attempts to enforce (Count II) preempted rules (Count I), including through the CTP (Count III). As explained in Section II, *supra*, both Counts I and II seek relief against Defendants' ongoing efforts to adopt and attempt to enforce preempted emissions standards, and Defendants cannot pick apart these claims on a Rule 12(b)(1) or Rule 12(b)(6) motion to dismiss. Specific instances of this conduct, like Governor Newsom's EO, are examples of an overall program to compel Plaintiffs to comply with preempted standards—and all such efforts are encompassed by Plaintiffs' prayer for relief, which seeks

---

[4] The EO's integrated procurement-incentive-regulatory flexibility structure also distinguishes it from *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 796–801, 805–09 (1976) (statute authorized use of state funds to pay bounties to scrap processors for destroying automobile hulks).

to enjoin and declare preempted all underlying standards and attempts to enforce by CARB *and* Defendant Newsom. FAC at 49 ¶¶ I–II, 50 ¶ IV–V. Plaintiffs amended the complaint to make this overarching point even more clear, and to put an end to Defendants' penchant for moving the goal posts so they can then claim the new actions are not included in Plaintiffs' prayer for relief. *See* Dkt. 115 at 3. On the basis of conduct already undertaken, Plaintiffs have stated a claim for relief preventing Defendant Newsom from current or future violations of Plaintiffs' federal right to operate independently of preempted state standards.

The amended complaint properly alleges that Defendant Newsom has the requisite "connection with the enforcement" of the challenged laws. *Ex parte Young*, 209 U.S. 123, 157 (1908); *see also Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (finding that *Ex parte Young* connection requirement was satisfied when provisions challenged under the Supremacy Clause were "currently being given effect by" named officials). Governor Newsom's EO on its own violates the CAA, but it also forms an integral part of Defendants' overall efforts to thumb their noses at federal law. Ordinarily, agencies like CARB are expected to comply with federal law and, if they fail to do so, the relevant responsible political actors would be expected to intervene. But Defendant Newsom's EO turns that on its head and orders CARB to take actions directly contrary to federal law—*i.e.*, enforcing preempted emissions standards and the CTP. The EO states three times that the "California Air Resources Board *shall*" take specific actions to uphold the preempted standards and the CTP. *See* Dkt. 23-17 at 3  (emphasis added). It "command[s] CARB to enforce the rules at issue here" through the CTP and "direct[s] … detrimental regulatory treatment and exclusion from government purchase and incentive programs for vehicle and engine manufacturers that do not follow the CTP or do not certify their products in compliance with preempted CARB standards." FAC ¶ 26. Thus, Governor Newsom is not a Defendant merely because he exercises general oversight of CARB. Rather, Defendant Newsom is appropriately named because he is responsible for issuing an EO that mandates CARB's illegal attempts to adopt and attempt to enforce preempted rules, including through the CTP. And that connection is more than sufficient to bring Defendant Newsom within the scope of all three Counts. *See Los Angeles Cnty. Bar Ass'n*, 979 F.2d at 704.

Ignoring the express language of the EO, Defendants argue that Defendant Newsom is

22

immunized because, "[w]hile the Governor may have *issued* the EO," he does not necessarily "*enforce*[] it," insisting that "the EO is not enforceable against Plaintiffs at all." Mot. 10–11. That argument fails. As the Ninth Circuit held in *Los Angeles County Bar Association v. Eu*, the Eleventh Amendment does not protect a governor from suit simply because the law in question is "not the type of statute that gives rise to enforcement proceedings," or because of the "lack of any enforcement proceeding" against the party challenging the law. 979 F.2d at 704. And the notion that Defendant Newsom does not enforce *his own executive order* defies logic. Defendants offer no support for that proposition, the implication of which is that when the Governor of California issues an executive order, it can be ignored. Defendant Newsom is exercising more than general supervisory powers with *his own executive order*, which he has the "direct authority and practical ability to enforce." *See B&L Prods., Inc. v. Newsom*, No. 21-cv-01718-AJB-KSC, 2022 WL 3567064, at *4 (S.D. Cal. Aug. 18, 2022) (finding that Governor Newsom did not have the practical ability to enforce a bill simply because he was Governor and where he issued no EO instructing a state agency to do so); *see also Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (finding that the governor did not have the "requisite enforcement connection" to a California proposition that was enacted by voters and where the governor issued no EO instructing a state agency to do so).

Of course, CARB is directly charged with enforcing the preempted standards and the CTP. Mot. 9. But CARB has already acted in response to the EO. FAC ¶ 69; *supra* Section II.d (discussing "Drive Forward" workshops). And the EO's mandates lead directly to Plaintiffs' injuries, including the mandate that CARB should subject manufacturers, including Plaintiffs, to unfavorable regulatory treatment for failing to comply with the preempted standards (either directly or through compliance with the CTP). Thus, through his commands to CARB, Defendant Newsom is "giv[ing] effect" to the challenged emissions standards and the CTP—which is sufficient to overcome Eleventh Amendment immunity. *Los Angeles Cnty. Bar Ass'n*, 979 F.2d at 704.

//

//

//

//

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. 120)
CASE NO. 2:25-CV-02255-DC

## CONCLUSION

Counts I, II, and III of Plaintiffs' amended complaint should not be dismissed.

Dated: March 24, 2026                    Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

_____
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:     650.849.5395
Facsimile:     640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     415.393.8293
Facsimile:     415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
JACOB T. SPENCER, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone:     202.955.8500
Facsimile:     202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
JSpencer@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

**LATHAM & WATKINS LLP**
*/s/ Robin M. Hulshizer*
(as authorized Mar. 24, 2026)
ROBIN M. HULSHIZER, SBN 158486
ARTHUR FOERSTER, *pro hac vice*
KEVIN M. JAKOPCHEK, *pro hac vice*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com
BELINDA S. LEE, SBN 199635

**CLIFFORD CHANCE LLP**
*/s/ Joseph A. Ostoyich*
(as authorized Mar. 24, 2026)
JOSEPH A. OSTOYICH, *pro hac vice*
WILLIAM LAVERY, *pro hac vice*
STEVE NICKELSBURG, *pro hac vice*
DANIELLE MORELLO, *pro hac vice*
DOROTHEA R. ALLOCCA, *pro hac vice*
2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. 120)
CASE NO. 2:25-CV-02255-DC

505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*


**TROUTMAN PEPPER LOCKE LLP**
*/s/ Jeffrey M. Goldman*
(as authorized Mar. 24, 2026)

JEFFREY M. GOLDMAN, SBN 233840
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:    213.928.9800
Facsimile:    213.928.9850
jeffrey.goldman@troutman.com

T. SCOTT MILLS, SBN 313554
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:    404.885.3000
Facsimile:    404.885.3900
scott.mills@troutman.com

JEREMY HEEP, *pro hac vice*
DANIEL J. BOLAND, *pro hac vice*
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:    215.981.4000
Facsimile:    215.981.4750
jeremy.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North America, LLC*

dodi.allocca@cliffordchance.com

**ILLOVSKY GATES & CALIA LLP**
EUGENE ILLOVSKY, SBN 117892
KEVIN CALIA, SBN 227406
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: 415.500.6643
Eugene@illovskygates.com
Kevin@illovskygates.com

*Attorneys for Plaintiff PACCAR Inc*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. 120)
CASE NO. 2:25-CV-02255-DC