ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
JOHN K. ADAMS
DAVID D. MITCHELL
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5905
robert.stander@usdoj.gov
john.adams3@usdoj.gov
david.mitchell@usdoj.gov

ERIC GRANT
*United States Attorney*
501 I Street, Suite 10-100
Sacramento, California 95814
United States Department of Justice
(916) 554-2700

*Counsel for the United States*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC, | No. 2:25-cv-02255-DC-AC |
| Plaintiffs, | |
| THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | **Memorandum in Support of the United States' Motion for Summary Judgment** |
| Plaintiffs-Intervenors, | |
| v. | Date: May 15, 2026 |
| CALIFORNIA AIR RESOURCES BOARD and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board, | Time: 1:30 p.m. Location: Courtroom 8, 13th Floor Judge: Hon. Dena Coggins |
| Defendants. | |

Mem. in Support of the United States' Mot. for Summary Judgment

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    I.  Statutory Background...................................................................................................... 2

        A.  The Clean Air Act, 42 U.S.C. § 7401, *et seq.* ..................................................... 2

        B.  The Congressional Review Act, 5 U.S.C. §§ 801–808 ...................................... 4

    II. Factual Background ...................................................................................................... 4

        A.  Seeking to Ban Sales of Internal-Combustion Engines and Vehicles, CARB Adopted Regulations and EPA Issued Preemption Waivers ..................................... 4

        B.  CARB Created the Clean Truck Partnership to Enforce its Emissions Standards........... 6

        C.  Congress Invalidated the Clean Trucks and Omnibus Waivers Under the Congressional Review Act ..................................................................................... 6

        D.  CARB Adopted and Attempted To Enforce Its Clean Trucks and Omnibus Rules by Issuing Manufacturers Advisory Correspondence and an Emergency Rule ................... 7

    III. Procedural History ...................................................................................................... 9

        A.  After this Court Granted, In Part, the United States' Motion for a Preliminary Injunction, CARB Declined to Dismiss its Clean Truck Partnership State Action and Moved to Dismiss the United States Complaint-In-Intervention ................................... 9

        B.  California Sought to Invalidate Bipartisan Congressional Statutes Revoking the Clean Trucks and Omnibus Waivers in *California v. United States* (N.D. Cal.) .......... 10

STANDARD OF REVIEW ..................................................................................................... 11

ARGUMENT ........................................................................................................................... 12

    I.  COUNT I: CARB's Three Waiverless Emissions Standards—Clean Fleets, Clean Trucks, and Omnibus—are Preempted Under Section 209(a) of Clean Air Act .............................. 12

        A.  The Clean Air Act Prohibits CARB From Either Adopting or Attempting to Enforce the Waiverless Electric-Vehicle Mandate in Clean Fleets ........................................... 13

        B.  Congress Invalidated the Preemption Waivers for the Clean Trucks and Omnibus Emissions Standards, Leaving Those Standards Waiverless and Preempted................ 16

        C.  The Clean Air Act Separately Prohibits CARB from Imposing Certification Requirements for Waiverless Emissions Standards ....................................................... 16

    II. COUNT II: The Clean Truck Partnership, Which is Subject to Preemption, is an Unlawful Attempt to Enforce Preempted Emissions Standards ......................................... 18

III. COUNT III: The Waiverless August 2025 Manufacturers Advisory Correspondence Is an Unlawful "Attempt to Enforce" Preempted Emissions Standards ................................... 21

IV. COUNT IV: The Waiverless September 2025 Emergency Rule Is an Unlawful "Adopt[ion]" of and "Attempt to Enforce" Preempted Emissions Standards ...................... 22

CONCLUSION .............................................................................................................................. 24

**TABLE OF AUTHORITIES**

**U.S. Constitution**

U.S. Const. art. I, § 5, cl. 2 ........................................................................................ 4

U.S. Const. art. VI, cl. 2 ........................................................................................... 13

**Cases**

*Airlines for Am. v. City & County of San Francisco*,

    78 F.4th 1146 (9th Cir. 2023) .......................................................................... 19, 20

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,

    569 U.S. 641 (2013) ................................................................................ 18, 19, 20, 21

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (1986) ........................................................................................... 11

*City of Ozark v. Union Pac. R.R. Co.*,

    843 F.3d 1167 (8th Cir. 2016) ............................................................................. 21

*Diamond Alt. Energy, LLC v. EPA*,

    606 U.S. 100 (2025) ............................................................................................. 3

*eBay Inc. v. MercExchange, L.L.C.*,

    547 U.S. 388 (2006) ........................................................................................... 11

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,

    498 F.3d 1031 (9th Cir. 2007) ......................................................................... 12, 19

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,

    541 U.S. 246 (2004) .............................................................................. 12, 13, 20, 23

*Gentry v. Manteca Police Dep't*,

    2025 WL 2829423 (E.D. Cal. 2025) ................................................................... 11

*In re Oracle Corp. Sec. Litig.*,

    627 F.3d 376 (9th Cir. 2010) .............................................................................. 11

*McNeil v. Gittere*,

    150 F.4th 1205 (9th Cir. 2025) ........................................................................... 12

*Metro. Taxicab Bd. of Trade v. City of New York*,

633 F. Supp. 2d 83 (S.D.N.Y. 2009), *aff'd on other grounds*, 615 F.3d 152 (2d Cir. 2010)... 22

*Momox-Caselis v. Donohue*,

987 F.3d 835 (9th Cir. 2021).............................................................................................. 11

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. N.Y. State Dep't of Env't Conservation*,

17 F.3d 521 (2d. Cir. 1994)................................................................................................. 3

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,

567 U.S. 519 (2012)........................................................................................................... 22

*Olympic Pipe Line Co. v. City of Seattle*,

437 F.3d 872 (9th Cir. 2006).............................................................................................. 19

*Principal Life Ins. Co. v. Robinson*,

394 F.3d 665 (9th Cir. 2005).............................................................................................. 12

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,

754 F.3d 754 (9th Cir. 2014).......................................................................................... 2, 12

*Rodriguez v. Robbins*,

715 F.3d 1127 (9th Cir. 2013)............................................................................................ 24

*Snow v. Conagra Brands Inc.*,

2026 WL 21710 (E.D. Cal. Jan. 5, 2026)........................................................................... 11

*United States v. Flores*,

729 F.3d 91 (9th Cir. 2013)................................................................................................ 17

*Valle del Sol Inc. v. Whiting*,

732 F.3d 1006 (9th Cir. 2013)............................................................................................ 24

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,

529 U.S. 765 (2000) ........................................................................................................... 10

**Statutes**

5 U.S.C. § 801(a)(1)(A) ........................................................................................................ 4

5 U.S.C. § 801(b)(1)...................................................................................................... 4, 5, 6, 16

5 U.S.C. § 801(b)(2)............................................................................................................ 4, 16

5 U.S.C. § 802(a) ................................................................................................................. 4, 7

5 U.S.C. § 802(g) .................................................................................................... 4

5 U.S.C. § 805 ......................................................................................................... 4

5 U.S.C. §§ 801–08 ................................................................................................ 4

28 U.S.C. § 2201 ................................................................................................... 12

42 U.S.C. § 7507 .................................................................................................... 4

42 U.S.C. § 7521(a)(1) ........................................................................................... 3

42 U.S.C. § 7521(a)(2) ........................................................................................... 3

42 U.S.C. § 7521(a)(3)(C) ................................................................ 2, 3, 14, 20, 23, 24

42 U.S.C. § 7543(a) ............................................... 1, 3, 12, 14, 16, 22, 24, 25

42 U.S.C. § 7543(b) ........................................................................................ 3, 13

42 U.S.C. § 7543(b)(1) ..................................................................................... 3, 13

42 U.S.C. § 7602(k) ............................................................................................. 12

52 U.S.C. § 7543(a) ............................................................................................... 6

Pub. L. No. 104-121, § 251, 110 Stat. 847 (1996) ................................................ 4

Pub. L. No. 119-15, 139 Stat. 65 (2025) ........................................................... 5, 7

Pub. L. No. 119-17, 139 Stat. 67 (2025) ........................................................... 5, 7

Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965) .................................................... 2

Pub. L. No. 95-95, 91 Stat. 685 (1977) ................................................................. 3

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................ 11

Fed. R. Civ. P. 56(c)(1)(A) .................................................................................. 11

Fed. R. Civ. P. 56(c)(1)(B) .................................................................................. 11

**Federal Register**

50 Fed. Reg. 35122 (Aug. 29, 1985) .................................................................... 17

78 Fed. Reg. 44112 (July 23, 2013) ..................................................................... 17

88 Fed. Reg. 20688 (Apr. 6, 2023) .................................................................... 5, 14

90 Fed. Reg. 15513 (Apr. 8, 2025) ........................................................................ 2

90 Fed. Reg. 643 (Jan. 6, 2025) ............................................................................ 5

**State Statutes**

Cal. Health & Saf. Code § 43151(a) ................................................................................. 6

**State Regulations**

Cal. Code Regs. tit. 13, § 1956.8 ................................................................................. 5, 8

Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C) ..................................................................... 20

Cal. Code Regs. tit. 13, § 1956.8.1(a)(2)(A) ................................................................... 8

Cal. Code Regs. tit. 13, § 1963 ..................................................................................... 15

Cal. Code Regs. tit. 13, § 1963.1 .............................................................................. 5, 15

Cal. Code Regs. tit. 13, § 1963.2 .................................................................................... 5

Cal. Code Regs. tit. 13, § 1976.0.1 ................................................................................ 8

Cal. Code Regs. tit. 13, § 1978.0.1 ................................................................................ 8

Cal. Code Regs. tit. 13, § 2016 ...................................................................................... 5

Cal. Code Regs. tit. 13, § 2016(c) ................................................................................ 13

**State Adminstrative Register**

No. 53-Z, Cal. Regulatory Notice Reg. 1809 (Dec. 31, 2021) ...................................... 20

**Legislative History**

H.R.J. Res. 87, 119th Cong. (2025) ............................................................................ 5, 6

H.R.J. Res. 89, 119th Cong. (2025) ............................................................................ 5, 6

Statement on Signing Legislation Regarding Congressional Disapproval of Environmental
Protection Agency Rules Relating to Vehicle Fuel Efficiency Standards in California, 2025
Daily Comp. Pres. Doc. DCPD202500684 (June 12, 2025) ........................................ 5

# GLOSSARY

| | |
|---|---|
| August 2025 MAC | CARB's Manufacturers Advisory Correspondence issued in August 2025 |
| Clean Fleets | Advanced Clean Fleets, Cal. Code Regs. tit. 13, § 2016. |
| Clean Trucks | Advanced Clean Trucks, Cal. Code Regs. tit. 13, §§ 1963.1, 1963.2 |
| CARB | California Air Resources Board |
| CTP | Clean Truck Partnership, SUMF, Ex. 1 |
| Emergency Rule | CARB Emergency Vehicle Emissions Rulemaking Public Notice, Dkt. 73-33, SUMF, Ex. 7 |
| EPA | United States Environmental Protection Agency |
| Heavy-Duty Trucks | Vehicles with a gross vehicle weight rating (the loaded weight of a single vehicle) of more than 8,500 lbs. *See* 40 C.F.R. § 1037.801 |
| Truck Manufacturers | Plaintiffs Original Engine Manufacturers: Daimler Truck North America LLC; International Motors, LLC; PACCAR Inc.; Volvo Group North America LLC, and other similarly situated manufacturers that must comply with CARB regulations |
| Omnibus | Omnibus Low NOx Rule, Cal. Code Regs. tit. 13, § 1956.8 |
| PI Order | Order Granting In Part and Denying in Part Plaintiffs' Motion for a Preliminary Injunction, Dkt. 94 (Oct. 31, 2025) |
| SUMF | Statement of Undisputed Material Fact |

Mem. in Support of the United States' Mot. for Summary Judgment                                                viii

## INTRODUCTION

In no uncertain terms, section 209(a) of the Clean Air Act expressly preempts state regulations of motor vehicle emissions. "No State" shall "adopt" or "attempt to enforce" "any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a). "No State shall require certification" or "any other approval" "relating to the control of emissions" as a condition for sale of new motor vehicles. *Id.* Section 209(b) authorizes Plaintiff, the United States EPA, to grant a preemption waiver to California, but only under certain conditions. Unless and until California obtains a valid waiver, the Clean Air Act mandates a uniform federal emissions standard that applies nationwide. This system is essential to prevent a chaotic, non-uniform emissions regime for engine and vehicle manufacturers, which build their products for a national market.

In recent years, Defendant California Air Resources Board (CARB) has waged war against internal-combustion engines, including engines used in heavy-duty trucks. CARB adopted the Clean Fleets, Clean Trucks, and Omnibus regulations that (among other things) purport to completely ban sales of those engines and attempt to create an artificial market for fully electric heavy-duty trucks, which are many years away from primetime. None of those regulations has a valid preemption waiver and, therefore, they are all preempted under the Clean Air Act.

Seeking to insulate these regulations from federal preemption, CARB adopted the Clean Truck Partnership (CTP) in 2023 as a regulatory enforcement device disguised as a contract with heavy-duty truck manufacturers. The CTP purports to require truck manufacturers to comply with the Clean Fleets, Clean Trucks, and Omnibus regulations regardless of countervailing federal law. When the United States sued CARB to prevent it from enforcing these standards, CARB knuckled down with aggressive actions to adopt and enforce *new* emissions standards: its August 2025 MAC and its September 2025 Emergency Rule. CARB's brazen defiance of federal law must stop.

The United States now moves for summary judgment to resolve the purely legal issues of whether federal law preempts Clean Fleets, Clean Trucks, and Omnibus (Count I); the CTP (Count II), the August 2025 MAC (Count III); and the Emergency Rule (Count IV). Federal law does indeed preempt all those regulations. *See* PI Order at 30–34. And there is no need for further factual development given that "[p]reemption is almost always a legal question," *ReadyLink Healthcare,*

Mem. in Support of the United States' Mot. for Summary Judgment                                    1

*Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 761–62 (9th Cir. 2014). In short, this Court should grant the United States' motion because CARB lacks a valid preemption waiver for its regulations at issue here and yet has "clearly . . . attempt[ed] to enforce" them through, for example, the CTP, PI Order at 32, or certification efforts in the August 2025 MAC. CARB has also boasted about "adopting" Clean Fleets and the Emergency Rule, *see* SUMF ¶¶ 3, 18, to coerce compliance, even though it lacks a waiver from the EPA for these regulations, *see* SUMF ¶¶ 11, 20.

To enforce section 209(a), the United States seeks straightforward declaratory and injunctive relief. This Court should (1) declare that Clean Fleets, Clean Trucks, Omnibus, the August 2025 MAC, and the Emergency Rule are preempted by federal law and therefore unenforceable. In so doing, this Court should declare that CARB must provide industry with the statutorily required lead time for heavy-duty vehicles, 42 U.S.C. § 7521(a)(3)(C) (four years), beginning from the date of any future preemption waiver, and that CARB may not retroactively enforce those preempted emissions if it obtains a preemption waiver. This Court should also (2) permanently enjoin CARB from taking actions to enforce the standards in, or any certification requirements related to, these regulations unless it obtains a waiver. Lastly, this Court should (3) declare the CTP void and unenforceable in its entirety and (4) permanently enjoin CARB from attempting to enforce it.

This Court should not delay final judgment here. California has wishcasted a fantasy market for electric heavy-duty trucks and used coercive state regulations to fabricate it. These regulatory actions have real-world consequences, as explained in the declaration of EPA Assistant Administrator Aaron Szabo, who describes how CARB has frustrated EPA's ability to administer the Clean Air Act. *See* Szabo Decl. ¶¶ 13–19. Burdensome state regulations that directly conflict with federal law also "weaken our national security and devastate Americans by driving up energy costs for families coast-to-coast." Exec. Order No. 14260, 90 Fed. Reg. 15513, 15513 (Apr. 8, 2025).

## BACKGROUND

### I.    Statutory Background

#### A.  The Clean Air Act, 42 U.S.C. § 7401, *et seq.*

In 1965, Congress amended Title II of the Clean Air Act to authorize federal emission standards for motor vehicles. Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965). As subsequently

revised, section 202(a) governs federal emission standards for air pollutants emitted from new motor vehicles or new motor vehicle engines found to "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). Section 202(a) requires adequate time "to permit the development and application of the requisite technology, giving appropriate consideration to the cost of compliance within such period," *id.* § 7521(a)(2), and mandates that any heavy-duty vehicle standard may apply "no earlier than the model year commencing 4 years after such revised standard is promulgated," *id.* § 7521(a)(3)(C).

When Congress enacted the federal emission standard program, many states continued developing their own emission programs. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. N.Y. State Dep't of Env't Conservation*, 17 F.3d 521, 525 (2d. Cir. 1994). Congress responded in 1967 by adding a broad preemption provision that is the "cornerstone" of Title II. *Id.* at 526.

Section 209(a) provides: "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). Further, "[n]o State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment." *Id.*

Section 209(b) contains a "unique preemption exception" that applies only to California. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 106 (2025). That section authorizes EPA to grant a preemption waiver for standards that California demonstrates "will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b)(1). "No such waiver shall be granted" if EPA finds that California's determination is arbitrary and capricious, that California "does not need" such standards "to meet compelling and extraordinary conditions," or that the standards are "not consistent with" requirements of section 202(a). *Id.* Unless EPA issues a waiver, it remains unlawful for California to "adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles." *Id.* § 7543(a).

In 1977, Congress again amended the Act and added section 177. *See* Pub. L. No. 95-95, 91 Stat. 685 (1977). That provision permits certain states to "adopt and enforce" emissions

Mem. in Support of the United States' Mot. for Summary Judgment                    3

standards for new motor vehicles or new motor vehicle engines that are "identical to the California standards for which a waiver has been granted" under certain conditions. 42 U.S.C. § 7507. Thus, no more than two standards may exist nationwide—the federal standard and the California standard—and states may not "create [any] 'third vehicle.'" *Id.* Unless EPA issues a preemption waiver, the federal standard exclusively and uniformly applies nationwide.

### B. The Congressional Review Act, 5 U.S.C. §§ 801–808

In 1996, Congress enacted the Congressional Review Act, 5 U.S.C. §§ 801–08. *See* Pub. L. No. 104-121, § 251, 110 Stat. 847, 868 (1996). With exceptions not relevant here, the Act provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" the rule, including its effective date "to each House of the Congress and to the Comptroller General." 5 U.S.C. § 801(a)(1)(A).

Upon receipt, Congress may enact a joint resolution "disapprov[ing] the rule." 5 U.S.C. § 802(a). If a joint resolution of disapproval passes both Houses of Congress, and is signed into law by the President, "such rule shall have no force or effect." *Id.* Two consequences then follow. First, and most immediately, the rule "shall not take effect (or continue)." *Id.* § 801(b)(1). Second, the rule "may not be reissued in substantially the same form." *Id.* § 801(b)(2). The Act is "an exercise of the rulemaking power of the Senate and House of Representatives" that recognizes "the constitutional right of either House to change the rules . . . at any time, in the same manner, and to the same extent as in the case of any other rule of that House," *Id.* § 802(g), consistent with the constitutional authority of each House of Congress to "determine the Rules of its Proceedings," U.S. Const. art. I, § 5, cl. 2. As such, "[n]o determination, finding, action, or omission" under the Act "shall be subject to judicial review." 5 U.S.C. § 805.

## II. Factual Background

### A. Seeking to Ban Sales of Internal-Combustion Engines and Vehicles, CARB Adopted Regulations and EPA Issued Preemption Waivers

Between 2021 and 2023, CARB adopted emissions standards for heavy-duty trucks that became effective in model year 2024: (1) Advanced Clean Trucks Rule (Clean Trucks), (2) Omnibus Low NOx Rule (Omnibus), and (3) Advanced Clean Fleets Rule (Clean Fleets). SUMF ¶¶ 1–

Mem. in Support of the United States' Mot. for Summary Judgment                    4

3; *see also* PI Order at 5–8 (describing regulations).

First, Clean Trucks imposes yearly increasing quotas for sales of zero-emission electric trucks. Cal. Code Regs. tit. 13, §§ 1963.1, 1963.2. In April 2023, EPA issued a preemption waiver for Clean Trucks. *See* Notice of Decision; Advanced Clean Trucks; Waiver of Preemption, 88 Fed. Reg. 20688, 20689 (Apr. 6, 2023); SUMF ¶ 6. On June 12, 2025, the President signed legislation disapproving this waiver such that Clean Trucks is "fully and expressly preempted by the Clean Air Act and cannot be implemented." Statement on Signing Legislation Regarding Congressional Disapproval of Environmental Protection Agency Rules Relating to Vehicle Fuel Efficiency Standards in California, 2025 Daily Comp. Pres. Doc. DCPD202500684 (June 12, 2025); H.R.J. Res. 87, 119th Cong. (2025); Pub. L. No. 119-15, 139 Stat. 65 (2025); SUMF ¶ 7. Clean Trucks thus has no preemption waiver. 5 U.S.C. § 801(b)(1).

Second, Omnibus requires manufacturers to reduce heavy-duty vehicle emissions of oxides of nitrogen (NOx) and particulate matter. *See* Cal. Code Regs. tit. 13, § 1956.8; CARB, Final Regulation Order, Title 13, at 3, Doc. ID EPA-HQ-OAR-2022-0332-0005. In December 2024, just before the Presidential inauguration, EPA issued a preemption waiver for Omnibus. *See* Notice of Decision, "Omnibus" Low NOx Regulation; Waiver of Preemption, 90 Fed. Reg. 643 (Jan. 6, 2025); SUMF ¶ 8. On June 12, 2025, the President signed legislation disapproving this waiver such that Omnibus is "fully and expressly preempted by the Clean Air Act and cannot be implemented." Statement on Signing Legislation Regarding Congressional Disapproval of Environmental Protection Agency Rules Relating to Vehicle Fuel Efficiency Standards in California, 2025 Daily Comp. Pres. Doc. DCPD202500684 (June 12, 2025); H.R.J. Res. 89, 119th Cong. (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025); SUMF ¶ 9. Omnibus thus has no preemption waiver. 5 U.S.C. § 801(b)(1).

Third, Clean Fleets requires, among other things, that manufacturers exclusively sell zero-emission vehicles in California beginning in model year 2036, which was linked to the Clean Trucks' ramp-up requirements that culminated in model year 2036. Cal. Code Regs. tit. 13, § 2016; *see* SUMF ¶ 5 (CARB recognized that Clean Trucks would be necessary to effect a full transition to electric vehicles). CARB adopted Clean Fleets in 2023. *See* SUMF ¶ 3. CARB requested a waiver from EPA in July 2024 but later withdrew the request in January 2025. *Id.* ¶¶ 10–11. Clean

Mem. in Support of the United States' Mot. for Summary Judgment                                    5

Fleets thus has no preemption waiver. 5 U.S.C. § 801(b)(1). Clean Fleets was challenged in multiple lawsuits in federal court. *Id.* ¶ 12. The California defendants in *Nebraska v. Cliff*, No. 2:24-cv-1364 (E.D. Cal. May 13, 2024), are under a court order not to enforce the electric-vehicle mandate unless CARB obtains a preemption waiver from EPA. *Id.* ¶ 13. CARB has not stated that it will repeal the electric-vehicle sale requirement. *See, e.g.*, Dkt. 73 at 32.

To sell a vehicle in California, state law requires manufacturers to certify compliance with its vehicle emissions standards. *See* Cal. Health & Saf. Code § 43151(a) ("A person shall not offer for sale . . . a new motor vehicle . . . unless the . . . motor vehicle has been certified pursuant to this chapter."). However, section 209(a) prohibits states—absent a waiver—from requiring "certification . . . relating to the control of emissions from any new motor vehicle . . . as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle." 52 U.S.C. § 7543(a).

**B.  CARB Created the Clean Truck Partnership to Enforce its Emissions Standards**

In July 2023, CARB entered the CTP. *See* SUMF ¶ 15, Ex. 1. The CTP requires, among other things, that the truck manufacturers who signed it comply with the Clean Fleets electric-vehicle mandate "as it existed on April 28, 2023" (and other recent emissions regulations), even if those regulations are unlawful or California lacks the authority to enforce them. SUMF, Ex. 1 at 2 ¶ 2; *id*, App. B at ii ¶ 2 (requiring compliance with "100 percent [electric-vehicle] sales requirement set forth in Cal. Code Regs title 13, section 2016"); *see also* PI Order at 10–14 (describing CTP).

**C.  Congress Invalidated the Clean Trucks and Omnibus Waivers Under the Congressional Review Act**

EPA submitted its Clean Trucks and Omnibus waivers to Congress under the Act. *See* H.R.J. Res. 87, Clean Trucks; H.R.J. Res. 89, Omnibus. On April 2, 2025, members of the House of Representatives introduced disapproval resolutions for each waiver under the Act. *See* H.R.J. Res. 87, Clean Trucks; H.R.J. Res. 89, Omnibus. By April 30, a majority of the House of Representatives had voted in favor of all both disapproval resolutions. *See* H.R.J. Res. 87, Clean Trucks; H.R.J. Res. 89, Omnibus. On May 22, 2025, the Senate voted on each of the resolutions and passed all three with votes of 51-45 (H.R.J. Res. 87, Clean Trucks), and 49-46 (H.R.J. Res. 89, Omnibus). *See* H.R.J. Res. 87, Clean Trucks; H.R.J. Res. 89, Omnibus. Each of the enacted statutes track the

model language in 5 U.S.C. § 802(a). So, for example, the full text of Public Law 119-15 (Clean Trucks) reads as follows:

> Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That Congress disapproves the rule submitted by the Environmental Protection Agency relating to "California State Motor Vehicle and Engine Pollution Control Standards; Heavy-Duty Vehicle and Engine Emission Warranty and Maintenance Provisions; Advanced Clean Trucks; Zero Emission Airport Shuttle; Zero-Emission Power Train Certification; Waiver of Preemption; Notice of Decision" (88 Fed. Reg. 20688 (April 6, 2023)), and such rule shall have no force or effect.

Pub. L. No. 119-15, 139 Stat. 65 (2025); *see also* Pub. L. No. 119-17, 139 Stat. 67 (2025). The President signed the joint resolutions into law on June 12, 2025. SUMF ¶¶ 7, 9.

### D. CARB Adopted and Attempted To Enforce Its Clean Trucks and Omnibus Rules by Issuing Manufacturers Advisory Correspondence and an Emergency Rule

*August 2025 MAC.* CARB issued a Manufacturers Advisory Correspondence ECCD-2025-08 (August 25, 2025) in response to the United States' lawsuit. *See* SUMF ¶ 16, Ex. 6. Under the August 2025 MAC, CARB proclaimed that heavy-duty truck manufacturers must still certify their model year 2025 vehicles and subsequent models before selling them in California. SUMF, Ex. 6 at 3 (noting that "[m]anufacturers who seeking certification through . . . alternative pathways . . . *will therefore be able to continue to offer to sell and deliver new vehicles and engines in the state*") (emphasis added); *see also* PI Order at 20–21 (describing August 2025 MAC). CARB threatened retroactive enforcement of the Omnibus rule in the August 2025 MAC: "CARB reserves its right to enforce the regulations covered by the waivers targeted by the congressional resolutions in the event a court of law holds those resolutions invalid, including with respect to model years that such manufacturers ask CARB to certify." SUMF ¶ 16(d); Ex. 6 at 3; PI Order at 21; *see also supra* § II.A (describing Congressional resolutions). The MAC also stated that CARB would provide preferential regulatory treatment to manufacturers that certify to the Clean Trucks or the Omnibus standards. *See* SUMF, Ex. 6 at 3 ("CARB will continue developing programs to reduce vehicle emissions and support the development and application of advanced emission control technologies. In doing so, CARB will consider measures . . . that account for whether manufacturers have continued to request certification to the regulations covered by the [Clean Truck and Omnibus]

waivers.").

***Emergency Rule.*** On September 15, 2025, CARB moved to adopt an "emergency" vehicle emissions rule ("Emergency Rule") in response to Congress's disapproval of the preemption waivers for Omnibus and another emission standard not at issue. *See* SUMF ¶ 17, Ex. 7. The Emergency Rule "clarif[ies] that protective emission standards for vehicles and engines remain operative" during the pendency of this suit and *State of California, et al. v. United States, et al.*, No. 4:25-cv-04966 (N.D. Cal.), described below. *See* SUMF, Ex. 7 at 2, 6. CARB permanently adopted the Emergency Rule on March 26, 2026. SUMF ¶ 18, Ex. 8.

The Emergency Rule purports to "amend" and "adopt new sections" in the California Code of Regulations to "confirm that"—until a court resolves the validity of Congressional resolutions revoking the waivers—"certain earlier-adopted regulations (displaced by . . . Omnibus) remain operative (as previously adopted)." SUMF ¶ 17(b), Ex. 7 at 10. For example, the Emergency Rule includes new language throughout the code showing CARB's intent to retroactively enforce Clean Trucks and Omnibus should it prevail in *State of California, et al. v. United States, et al.*, No. 4:25-cv-04966 (N.D. Cal.), which, as described below, challenges the legality of the Congressional resolutions revoking CARB's preemption waivers for those two rules. *See, e.g.*, Cal. Code Regs. tit. 13, § 1956.8. Another example: the Emergency Rule adds 2005 criteria-pollutant standards, 2010 NOx requirements, and 2013 on-board diagnostic standards. *See, e.g.*, Cal. Code Regs. tit. 13, § 1976.0.1 (evaporative emissions); *id*. § 1978.0.1 (refueling emissions). CARB applies these new rules prospectively to model year 2026 and subsequent vehicles, thereby changing which emissions standards presently apply. *See, e.g.*, SUMF, Ex. 7 at 4 (noting "[p]roposed adoption of new section[] . . . 1956.8.1); Cal. Code Regs. tit. 13, § 1956.8.1(a)(2)(A) (imposing emissions standards for 2007 and subsequent model year heavy-duty diesel engines). CARB made this change with no lead time in a situation where, as a matter of law, there should be no applicable California standards.

EPA wrote to CARB in response to the Emergency Rule. SUMF ¶ 19, Exs. 9, 10. EPA stated that CARB must obtain a preemption waiver for its Emergency Rule. *See* SUMF, Ex. 9 at 1–2. CARB has neither sought nor obtained a preemption waiver for its Emergency Rule. SUMF ¶ 20.

**III.  Procedural History**

> **A. After this Court Granted, In Part, the United States' Motion for a Preliminary Injunction, CARB Declined to Dismiss its Clean Truck Partnership State Action and Moved to Dismiss the United States Complaint-In-Intervention**

This Court is familiar with the procedural history. *See* PI Order at 21–25. On August 22, 2025, the United States filed its complaint-in-intervention against CARB, Dkt. 56, after the Court granted its motion to intervene, Dkt. 54. The complaint asserted two claims: (1) Clean Fleets, Clean Trucks, and Omnibus are preempted by federal law (Count I); and (2) the CTP is an unlawful attempt to enforce those preempted emission standards (Count II). The United States joined in Plaintiffs' motion for a preliminary injunction, Dkt. 57, that sought to prohibit CARB from implementing or enforcing (1) six emissions regulations (including Clean Fleets, Clean Trucks, and Omnibus), (2) the CTP, (3) and other official acts by California, Dkt. 23.

Days before this Court's hearing on the motion for a preliminary injunction, CARB sued Plaintiffs in state court for allegedly breaching the CTP. *See* Dkt. 85-1. CARB requested "specific performance, by way of an injunction compelling [Plaintiffs] to satisfy" the regulations in the CTP, including electric-vehicle mandate in Clean Fleets, *id*. at 7 ¶¶ a–f, and "[r]eliance [d]amages" for "several rulemaking proceedings," *id*. ¶¶ g–j. Right after CARB told the Court of its state court case, the United States responded that the state court action is yet another attempt by CARB to enforce preempted emissions standards. *See* Dkt. 91 at 3.

This Court granted, in part, the motion for a preliminary injunction. PI Order at 34. The Court concluded that CARB's defenses against the CTP preemption claim "evaporated" and "ring hollow" since CARB attempted to enforce the preempted emissions standards contained therein. *Id*. at 31. "Even if the validity of the resolutions of disapproval as to [Clean Trucks], Omnibus, and" other "regulations remain in doubt," this Court reasoned, "CARB's filing of that lawsuit is clearly an attempt to enforce preempted standards at least in part, because the model year 2036 zero-emissions requirement is included in the Clean Truck Partnership yet CARB never obtained a preemption waiver for" Clean Fleets. *Id*. at 32. This Court also found "per se irreparable harm" to the United States. *Id*. (citing *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771

Mem. in Support of the United States' Mot. for Summary Judgment                    9

(2000)). This Court thus preliminarily enjoined CARB from enforcing the CTP. *Id*. at 34.

Notwithstanding this Court's order, CARB pressed forward with its state court action. On December 2, 2025, CARB tried to serve Plaintiffs its state court complaint. SUMF ¶ 22. The United States objected, citing this Court's order, but CARB refused to dismiss its case without prejudice. Instead, CARB obtained an order from the state court in March 2026 staying the state court case until February 2027. *Id*. ¶¶ 23.

The United States amended its complaint in February 2026. *See* Dkt. 119. Because CARB twice shifted the regulatory mechanism by which it tried to enforce preempted emission standards, the United States added two Clean Air Act preemption claims: one against the August 2025 MAC (Count III) and the other against the Emergency Rule (Count IV). CARB moved to dismiss the amended complaint on two narrow grounds. First, CARB argued that the preemption claim against the CTP should be dismissed because the CTP is a voluntary agreement; second, CARB argued that the United States lacked standing to challenge Clean Fleets because CARB says it is not currently enforcing that regulation. *See* Dkt. 122. The United States opposed, explaining that the CTP is subject to preemption and is preempted, and the United States has standing. *See* Dkt. 126.

### B. California Sought to Invalidate Bipartisan Congressional Statutes Revoking the Clean Trucks and Omnibus Waivers in *California v. United States* (N.D. Cal.)

On June 12, 2025—the day the President signed the bipartisan joint resolutions of disapproval into law, *see* SUMF ¶¶ 7, 9—California and ten other States sued federal defendants in the Northern District of California, alleging that the bipartisan joint disapprovals that revoked the preemption waivers for Clean Trucks and Omnibus are unlawful. Their complaint alleges that the federal defendants (1) misinterpreted the Congressional Review Act by labeling the preemption waivers for Clean Trucks and Omnibus as "rules" in their submission to Congress; (2) acted in excess of their statutory authority; (3) violated the separation of powers; and (4) violated the Tenth Amendment, among other claims. The federal defendants explained that policy disagreement with the legislative body constitutionally empowered to set national policy is not a basis for alleging a violation of the law. The court heard oral argument on the federal defendants' motion to dismiss

on February 19, 2026, and has taken that motion under advisement.[1]

**STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings, disclosure materials, and discovery establish "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the action under the governing law." *Snow v. Conagra Brands Inc.*, 2026 WL 21710, at *6 (E.D. Cal. Jan. 5, 2026) (Coggins, J.) (quoting *Momox-Caselis v. Donohue*, 987 F.3d 835 (9th Cir. 2021) (citation modified). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The moving party may do this by "citing to particular parts of materials in the record," or by showing that such materials "do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden shifts to the nonmoving party to establish that a genuine issue as to any material fact exists. *Gentry v. Manteca Police Dep't*, 2025 WL 2829423, at *4 (E.D. Cal. 2025) (Coggins, J.). "The nonmoving party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention." *Id*.

The United States requests both injunctive and declaratory relief. *See* Dkt. 119 at 27. Courts award permanent injunctive relief when the plaintiff demonstrates (1) irreparable injury; (2) the inadequacy of legal remedies; (3) that the balance of hardships favors equitable relief; and (4) that the public interest supports entry of an injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Courts enter declaratory relief when the plaintiff shows the existence of an actual controversy, prevails on the merits, and establishes that a declaratory judgment would clarify the parties' legal relations or resolve the uncertainty underlying the dispute. *See Principal Life Ins. Co.*

---

[1] On September 8, 2025 this Court discharged its order to show cause asking the parties why this case should not be transferred to the Northern District of California. *See* Dkt. 72.

Mem. in Support of the United States' Mot. for Summary Judgment                    11

*v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005); 28 U.S.C. § 2201.

## ARGUMENT

Federal preemption occurs when, as here, "Congress enacts a statute that explicitly pre-empts state law." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,* 498 F.3d 1031, 1039 (9th Cir. 2007). "Preemption is almost always a legal question, the resolution of which is rarely aided by development of a more complete factual record." *ReadyLink*, 754 F.3d at 761–62 (citation modified). Here, just like in *ReadyLink*, the preemption issues are pure questions of law appropriate for summary judgment. *See id.* (rejecting argument that the preemption issue could not be decided "without conducting discovery or presenting evidence to a trial court" as preemption can be resolved "as a matter of law") (collecting cases). The relevant facts are also undisputed and consist entirely of official government actions. The Court should grant summary judgment on each count.

**I.    COUNT I: CARB's Three Waiverless Emissions Standards—Clean Fleets, Clean Trucks, and Omnibus—are Preempted Under Section 209(a) of Clean Air Act**

Section 209(a) of the Clean Air Act provides: "No State . . . shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles . . . ." 42 U.S.C. § 7543(a). Courts interpret statutory text according to its "plain meaning." *McNeil v. Gittere*, 150 F.4th 1205, 1208 (9th Cir. 2025). The plain meaning of "standard" under section 209(a) is "that which 'is established by authority, custom, or general consent, as a model or example; criterion; test.'" *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,* 541 U.S. 246, 252–53 (2004) (quoting Webster's Second New International Dictionary 2455 (1945)). Rules "that compel manufacturers to meet specified emission limits" are a classic example of preempted state emission standards. *Id.* at 252–53; *accord* 42 U.S.C. § 7602(k) (defining "emission standard" as "a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions"). The plain meaning of "adopt," meanwhile, is "to accept formally" or "to endorse and assume official responsibility for." *Adopt*, Webster's Third International Dictionary of the English Language 29 (Philip B. Gove, 1967); *see also Adopt*, https://www.merriam-webster.com/dictionary/adopt, [https://perma.cc/9EDH-GD6R] (defining adopt as "to accept and establish (something, such as a law or policy) in a formal or official way"). An "attempt" to enforce

Mem. in Support of the United States' Mot. for Summary Judgment                    12

emissions "standards" includes preliminary acts falling short of enforcement. *Engine Mfrs. Ass'n*, 541 U.S. at 257 (defining "attempt to enforce").

Congress left one exception to section 209(a)'s broad preemptive reach for new motor vehicles in section 209(b). *See* 42 U.S.C. § 7543(b). Under section 209(b), EPA shall issue a preemption waiver in limited circumstances and shall not issue such a waiver under three enumerated circumstances described above. *See id.* § 7543(b)(1). If California does not have a waiver—either because it failed to obtain one or the waiver is invalidated under the Congressional Review Act—its adoption or attempt to enforce such state emissions standards is unlawful under the Supremacy Clause. *See* U.S. Const. art. VI, cl. 2.

**A. The Clean Air Act Prohibits CARB From Either Adopting or Attempting to Enforce the Waiverless Electric-Vehicle Mandate in Clean Fleets**

Clean Fleets requires truck manufacturers to produce and deliver for sale in California only electric heavy-duty trucks starting in model year 2036. *See* Cal. Code Regs. tit. 13, § 2016(c). This regulation sets standards related to the control of emissions by requiring covered fleets to purchase zero-emission vehicles for heavy-duty trucks and by banning internal-combustion engines in heavy-duty trucks by 2036, among other requirements. Put simply, it is an electric-vehicle mandate.

CARB admits that it "adopted the proposed Clean Fleets" regulation in 2023. SUMF ¶ 3; Ex. 2 at 11, https://perma.cc/9CJQ-4DXG, (referring to "adopted Regulations" and "adopting" Clean Fleets). Subsequently, CARB "ordered that" the Clean Fleets' code sections be "adopted" into the California code of regulations. SUMF ¶ 3, Ex. 3. Despite adopting this emissions standard, CARB never obtained a preemption waiver for Clean Fleets, having withdrawn its request in January 2025, right before the change in presidential administrations. *Id.* ¶ 11. Lacking a valid waiver, CARB's adoption of Clean Fleets is preempted under section 209(a).[2]

CARB argues that section 209(a) permits it to formally adopt emissions standards into its code without first obtaining a waiver, so long as it does not put the standard into "effective operation" or "attempt to enforce" it before obtaining a preemption waiver. *See* Dkt. 102 at 4–5. This

---

[2] The United States has standing to challenge the electric-vehicle mandate in Clean Fleets for reasons stated in its opposition to CARB's motion to dismiss, which the United States incorporates here. *See* Dkt. 126 at 16–20.

Mem. in Support of the United States' Mot. for Summary Judgment                    13

conflicts with the text of section 209(a), which prohibits states from "adopt[ing]" emissions standards without a waiver. But even accepting CARB's argument, the United States is still entitled to declaratory relief stating that (1) Clean Fleets cannot be enforced retroactively for any period in which a waiver was not in effect, and (2) the required four years of lead time does not begin until CARB obtains a waiver. The first point flows directly from section 209(a)'s prohibition on enforcing an emission standard without obtaining a waiver under section 209(b). The second point stems from section 209(b)(1)(C), which prohibits EPA from granting a waiver if CARB's standards are "not consistent" with the mandatory four-year lead time and three-year regulatory stability period for heavy-duty emissions standards. *See* 42 U.S.C. § 7521(a)(3)(C).[3]

A declaration declaring both points would provide the United States relief. For starters, it would vindicate the supremacy of federal law that prohibits states from "adopt[ing]" emissions standards without a waiver—which CARB just did. *Id*. § 7543(a). Section 209(a) is not a paper tiger. Far from lacking meaning, section 209(a) is "critical" to EPA's "regulatory scheme" and ability to implement the Clean Air Act, as explained in the declaration submitted by EPA Assistant Administrator Aaron Szabo. *See* Szabo Decl. ¶ 14. Indeed, section 209(a) "safeguards EPA's ability to develop standards in a rational way by understanding the technical, economic, and practical factors impacting manufacturers' ability to comply and the degree to which standards can be expected to further public health and welfare without disrupting Americans' access to affordable transportation or products transported throughout the country every day by interstate trucks." *Id.* ¶ 15. "Absent preemption," Assistant Administrator Szabo testifies, "the possibility of multiple competing and potentially conflicting sets of standards disrupts EPA's ability to develop, propose, and promulgate standards that comply with relevant statutory requirements and achieve Congress' design for the national vehicle market." *Id*.

Moreover, declaratory relief would prevent an undue burden on interstate commerce. Market participants nationwide must begin taking steps now to comply with the fundamental

---

[3] While EPA has, in the past, stated that section 202(a)(3)(C)'s requirement of four years of lead time and a three-year regulatory stability period for heavy-duty emissions standards does not apply to California's regulation of heavy-duty trucks, *see, e.g.*, 88 Fed. Reg. 20688, 20711–23 (Apr. 6, 2023), the best reading of the statute is that these requirements *do* apply to such standards.

transformation of our transportation system, ranging from engine redesigns to charging stations, that CARB seeks with its adoption of Clean Fleets. *See, e.g.*, Hergart Decl. ¶ 13, Dkt. 23-22 (detailing "critical" steps PACCAR is taking now to comply with Clean Trucks, a necessary bridge to Clean Fleets' electric-vehicle mandate, "given the lead time, effort, and investment requirements for new trucks and aftermarket support"); *see also* Szabo Decl. ¶ 10 (explaining the expenditure of "substantial resources on research and development, testing, and production planning" to comply with "regulatory requirements"); *id*. ¶ 12 (same with infrastructure changes). In fact, considering these challenges, CARB initially proposed that the mandate take effect in 2040. SUMF ¶ 4. CARB also recognized that Clean Trucks would be necessary to effect the full transition to heavy-duty electric vehicles mandated in Clean Fleets. *See id*. ¶ 5. That is because Clean Trucks required manufacturers to sell an increasing percentage of zero-emission heavy-duty trucks, from, for example, 10% for model year 2026 to 75% for mode year 2035, depending on the class of heavy-duty truck. *See* Cal. Code Regs. tit. 13, § 1963.1, Table A-1; *id.* § 1963 (defining relevant classes of vehicles). But Congress disapproved the waiver for Clean Trucks and that rule is preempted, making it even harder for our market to transition to only electric vehicles by 2036.

Market participants bear too much risk in the form of penalties or non-compliant sales to avoid complying with CARB's adopted rule. *See* SUMF ¶ 24; Hergart Decl. ¶ 13, Dkt. 23-22 (describing need to make imminent decisions regarding Clean Trucks, a critical predecessor to Clean Fleets); Szabo Decl. ¶ 15; *id*. ¶ 19 ("[R]egulatory uncertainty . . . forces manufacturers to work toward compliance with the most stringent requirements."). Their substantial compliance costs, in turn, interferes with the United States' sovereign interests in the supremacy of the Clean Air Act that mandates one—and only one—uniform emissions standard for our national vehicle market. An order from this Court making clear that CARB cannot retroactively enforce its regulations and, if CARB obtains a waiver, affording the truck manufacturers the statutorily required four-year lead time beginning *after* CARB obtains that waiver would effectuate the plain text and purpose of section 209(a). *See* Szabo Decl. ¶ 11 (discussing the importance of "lead time").

Such an order also would be consistent with common sense. Consider the alternative: CARB obtains a Clean Fleets waiver in, for example, 2038 and retroactively imposes its 100% electric-

Mem. in Support of the United States' Mot. for Summary Judgment                    15

vehicle requirement, with no lead time, per the terms of its currently "adopted" Clean Fleets rule. That position flouts the express preemption provision in section 209(a), violates the lead-time requirement in section 209(b)(1)(C), and puts our national market in the untenable situation of forced anticipatory compliance with a state vehicle emission standard that is expressly preempted and lacks a preemption waiver. It also undermines EPA's ability to administer the Clean Air Act. *See* Szabo Decl. ¶¶ 13–19. Fortunately, that is not the law.

**B. Congress Invalidated the Preemption Waivers for the Clean Trucks and Omnibus Emissions Standards, Leaving Those Standards Waiverless and Preempted**

Under the Congressional Review Act, two consequences follow a duly enacted joint resolution of disapproval signed into law: the rule "shall not take effect (or continue)," 5 U.S.C. § 801(b)(1), and the rule "may not be reissued in substantially the same form," *id.* § 801(b)(2). Here, because the President signed into law bipartisan joint resolutions of disapproval invalidating waivers CARB received for its Clean Trucks and Omnibus regulations, those waivers "shall not . . . continue" to have "effect." *Id.* § 801(b)(1). Accordingly, CARB may not continue enforcing its Clean Trucks or Omnibus standards, including through certification.

CARB has contended that the joint resolutions, enacted through bicameralism and presentment to the President, are unconstitutional. Dkt. 80 at 8. But its arguments are exceedingly weak, as the United States demonstrated in support of its motion for preliminary injunction. Dkt. 74 at 5–14. California asserted these same meritless arguments in *California,* No. 4:25-cv-04966 (N.D. Cal.). Although that court is considering them in relation to the federal defendants' motion to dismiss, *see supra* p. 10, this Court should recognize the validity of duly enacted, bipartisan joint resolutions of disapproval invalidating the waivers for Clean Trucks and Omnibus. As such, CARB may not enforce Clean Trucks and Omnibus because they lack preemption waivers.

**C. The Clean Air Act Separately Prohibits CARB from Imposing Certification Requirements of Waiverless Emissions Standards**

Section 209(a) bars State requirements for "certification, inspection, or any other approval relating to the control of emissions" as a condition precedent to sale or registration, absent a waiver. 42 U.S.C. § 7543(a). This prohibits CARB from requiring certification of emissions from vehicles

or engines for compliance with emission standards unless those standards have a preemption waiver. *See United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) ("The interpretation of a statutory provision must begin with the plain meaning of its language.").

EPA has interpreted section 209(a) as requiring CARB to have a waiver for its emissions standards for affected classes of vehicles and engines to maintain the certification program for those vehicles and engines. In 1985, for example, EPA stated that CARB did not need a separate preemption waiver for its certification program requirements because CARB had received waivers for the underlying emissions standards and certification procedures. *See* EPA, *Final Agency Actions Regarding the Motor Vehicle Provisions of the Clean Air Act*, 50 Fed. Reg. 35122, 35123 (Aug. 29, 1985) (maintaining that "[CARB] was free to set conditions precedent to registration, titling, and sale of motor vehicles without the necessity of a separate waiver determination" because California had "received waivers of federal preemption for its motor vehicle emission standards and certification procedures"). In 2013, EPA repeated this interpretation, explaining that "once EPA has granted California a waiver of section 209(a)'s preemption for emission standards and/or accompanying enforcement procedures, California may then require other such conditions precedent. *California State Motor Vehicle Pollution Control Standards; Urban Buses; Request for Waiver of Preemption; Notice of Decision*, 78 Fed. Reg. 44112, 44114 (July 23, 2013) (footnotes omitted). EPA determined "that a California requirement is a condition precedent to sale, titling, or registration, if: (1) The requirements do not constitute new or different standards or accompanying enforcement procedures, and (2) the requirements do not affect the basis for the previous waiver decision." *Id*.

Here, CARB has unlawfully claimed authority to require manufacturers to certify their vehicles or engines for compliance with California's emission standards for which it does not have waivers—namely, Clean Fleets, Clean Trucks, and Omnibus—before allowing sale of those vehicles or engines in California. CARB has claimed this authority in the CTP, *see* SUMF, Ex. 1, App'x B ¶ 1; *see* SUMF, Ex. 6; and in the Emergency Rule, *see* SUMF, Ex. 7 at 6 (stating that "CARB continues to accept and process certification applications" for "Omnibus emission standards"). CARB's authority to require certification as a condition precedent to sale is preempted because its underlying emission standards—Clean Fleets, Clean Trucks, and Omnibus—are preempted.

Mem. in Support of the United States' Mot. for Summary Judgment                    17

## II.  COUNT II: The Clean Truck Partnership, Which is Subject to Preemption, is an Unlawful Attempt to Enforce Preempted Emissions Standards

The material facts about the CTP are undisputed. CARB incorporated elements of the three preempted regulations at issue here into the CTP: (1) Clean Fleets, SUMF, Ex. 1 at 1 ¶ 1, App. C–D; (2) Clean Trucks, *id*. at App. C; and (3) Omnibus, *id*. at App. A–B; *see also* PI Order at 11–12 (recounting emission standards in the CTP). In Appendix D, for example, CARB mandates that the truck manufacturers "sell as many zero-emission trucks as reasonably possible in every state that has or will adopt CARB's [Clean Trucks] regulations . . . , irrespective of the outcome of any litigation . . . challenging the waivers or authorizations for those regulations or CARB's or any state's overall authority to implement those regulations." SUMF, Ex. 1 at App. D ¶ F; *see also id*. ¶ 2 (same); *id*. App. B at ii ¶ 2 (requiring "100 percent ZEV sales requirement").

CARB promised to undertake regulatory action in exchange for the manufacturers' commitment to follow the three regulations just described. For example, exercising core regulatory power, CARB committed to "initiate rulemaking actions and present" specific amendments to Omnibus. *Id*. App. A at ii (listing regulatory action such as "allow[ing] engine manufacturers in [Model Year] 2024 to certify legacy engines prior to certification of Omnibus-compliant engine families"). CARB also promised to amend its existing regulations. *Id*. App. B.

The penalties for failing to follow the CTP are regulatory. As an example, the CTP provides that "California will maintain its certification program" and "independently evaluate whether to" certify the truck manufacturers' executive orders to allow them to sell their vehicles in California. *Id.*, App. B ¶ 1. As a related example, the CTP describes regulatory "consequence[s]" if the Omnibus rule's "caps are exceeded": the manufacturers' sales "would be considered as non-compliant sales." *Id*. App. A nn.1–2. Yet one more, CARB has sued manufacturers for specific performance to compel compliance with its regulations. *See* Dkt. 85-1 (state court action).

As the United States explained in its recent opposition to CARB's motion to dismiss, *see* Dkt. 126 at 6–10, federal law preempts local standards that expressly conflict with federal statutes, even when the government enforces those standards through a contract. This is the clear rule of *American Trucking Associations, Inc. v. City of Los Angeles*, 569 U.S. 641 (2013), *Airlines for*

Mem. in Support of the United States' Mot. for Summary Judgment                    18

*America v. City & County of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023), and *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 881 (9th Cir. 2006). These cases draw a line "between a government's exercise of regulatory authority and its own contract-based participation in a market" to determine whether federal law preempts contractual provisions. *Am. Trucking*, 569 U.S. at 649; *Olympic Pipe Line*, 437 F.3d at 881 (same). And each case held that federal law preempted the contractual provisions at issue because the government had acted in a regulatory rather than a proprietary mode in enforcing provisions contained in the contracts.

Here, (1) CARB entered and uses the CTP in its regulatory capacity, thereby subjecting the CTP to federal preemption; and (2) the CTP is preempted because it is an "attempt to enforce" emission standards in violation of section 209(a).

**1.** As an initial matter, CARB created the CTP to "encourage a general policy rather than [to] address a specific proprietary problem." *Olympic Pipe Line*, 437 F.3d at 881; *see also Engine Mfrs.*, 498 F.3d at 1041–44 (explaining distinction between "proprietary" and "regulatory" interests when applying the market participant doctrine under the Clean Air Act). The CTP identifies only public policy goals: (1) "preserving and protecting the environment"; (2) "ensuring current and future CARB regulations . . . will achieve significant reductions of air pollutants"; (3) promoting a ZEV mandate; (4) "maintaining a strong and viable industry"; and (5) providing regulatory "certainty and stability." SUMF, Ex. 1 at 1. None of these goals reflects an "interest in [the] efficient procurement of needed goods and services." *Olympic Pipe Line*, 437 F.3d at 881. CARB also stated that it uses the CTP to "protect public health." Dkt. 73 at 6. CARB "thus acted pursuant to its general duty to protect the public health and safety—a duty grounded in [California's] regulatory, police power—rather than" to address a proprietary problem. *Olympic Pipe Line*, 437 F.3d at 881.

Next, the CTP uses tools "to fulfill [its] goals which only a government can wield: the hammer" of certification and regulatory penalties. *Am. Trucking*, 569 U.S. at 651; *Airlines for Am.*, 78 F.4th at 1152 ("A governmental entity acts as a market regulator when it employs tools in pursuit of compliance that no private actor could wield."). The CTP requires manufacturers "to submit applications for certification . . . to demonstrate compliance with applicable California requirements." CTP, App. B ¶ 1. The threat of denying certification is meant to ensure compliance. And

it's something only the government can accomplish. The CTP uses another tool unavailable to private parties: threatening to label vehicle sales as "non-compliant" if the truck manufacturers do not follow the Omnibus regulation. CTP, App. A at i nn.1–2. "[W]hen the government employs such . . . coercive mechanism[s], available to no private party, it acts with the force and effect of law" to bring its contract within the scope of federal preemption. *Am. Trucking*, 569 U.S. at 651–52; *Airlines for Am.*, 78 F.4th at 1152 (holding government contracts were regulatory actions because they threatened "civil penalties" "unavailable to private parties").

The parties' consideration for entering the CTP is regulatory. CARB agreed not to use government power in conflict with federal law in exchange for the truck manufacturers' agreement to follow regulations. To illustrate, CARB promised to provide four years of lead time for industry to adopt its Omnibus rule, as required by federal law, instead of two years. *Compare* 42 U.S.C. § 7521(a)(3)(C), *with* Cal. Code Regs. tit. 13, § 1956.8(a)(2)(C); *see also* 2021, No. 53-Z, Cal. Regulatory Notice Reg. 1809 (Dec. 31, 2021). And just like the government in *American Trucking*, CARB promised to amend its regulations in exchange for signatures. *See* 569 U.S. at 649.

**2.** CARB attempts to enforce preempted emissions standards through the CTP in multiple ways, as this Court already found. *See* PI Order at 31–32; *see also Engine Mfrs. Ass'n*, 541 U.S. at 257 (explaining that an "attempt to enforce" under section 209(a) reaches preliminary, coercive, and indirect enforcement actions).

First, the CTP dictates that even when CARB *lacks authority* for Clean Fleets, Clean Trucks, or Omnibus, manufacturers must still comply with them. CTP at 2 ¶ 2 ("The [manufacturers] commit to meet, in California, the relevant provisions of the CARB regulations . . . irrespective of" their legality). As just described, CARB attempts to enforce these standards with coercive government power via the CTP. *See Airlines for Am.*, 78 F.4th at 1152 (holding that government contracts function as regulatory action when backed by coercive state power).

Second, CARB asserts its authority through the CTP to impose certification requirements. CTP, App. B ¶ 1. Conditioning regulatory benefits, certification treatment, or enforcement discretion on compliance with preempted standards is an attempt to enforce those standards, even if no penalties have yet been imposed. *See, e.g.*, *Engine Mfrs. Ass'n*, 541 U.S. at 257 (an "attempt to

Mem. in Support of the United States' Mot. for Summary Judgment                    20

enforce . . . is not limited to the actual imposition of penalties"); *Am. Trucking*, 569 U.S. at 649–50 (rejecting use of contract backed by regulatory authority to impose preempted requirements).

Third, CARB has used breach-of-contract claims to indirectly enforce compliance. *See* PI Order 32, 34 (concluding that CARB's lawsuit is an unlawful attempt to enforce). But CARB may not use state litigation to enforce preempted standards because federal preemption "does not depend upon the source of a state law claim." *City of Ozark v. Union Pac. R.R. Co.,* 843 F.3d 1167, 1172 (8th Cir. 2016). CARB cannot sidestep federal preemption through a lawsuit. *See* Dkts. 94 at 32 (concluding that request for specific performance to abide by emission standards is "clearly an attempt to enforce" those standards); 91 at 2 (explaining that regulation can be effectively exerted through an award of damages) (collecting cases); 85-1 (state court action).

## III.  COUNT III: The Waiverless August 2025 Manufacturers Advisory Correspondence Is an Unlawful "Attempt to Enforce" Preempted Emissions Standards

Truck manufacturers must certify their vehicles before selling them in California. CARB offers three options "for model year 2025 and subsequent model years": (1) manufacturers may certify to the requirements in Omnibus; (2) manufacturers may certify to "regulations that immediately preceded those covered by" Omnibus, irrespective of whether a waiver exists for those regulations; or (3) manufacturers may submit a "U.S. EPA certification to [their] motor vehicle emissions standards." SUMF, Ex. 6 at 2–3. CARB threatens retroactive enforcement against manufacturers that do not abide by its preempted regulations. *Id*. at 3 ("CARB reserves its right to enforce the regulations covered by the waivers targeted by the congressional resolutions . . . ."). Put differently, CARB offers executive orders allowing truck manufacturers to sell vehicles in California without complying with preempted rules, but at the same time, says that they may not be able to rely on compliance with the terms of such executive orders to avoid later enforcement of the preempted rules. CARB will also "continue developing programs" that could provide favorable treatment to manufacturers that do certify to the preempted rules. *Id*.

Like its use of the CTP, CARB leverages the August 2025 MAC in yet another attempt to enforce preempted emission standards in violation of section 209(a). CARB's so-called guidance— *i.e.*, follow its preempted laws now or risk tremendous penalties later if the truck manufacturers'

Mem. in Support of the United States' Mot. for Summary Judgment                    21

reliance on duly enacted federal statutes disapproving EPA's waivers proves erroneous—"constitutes an offer which can not, in practical effect, be refused." *Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 99 (S.D.N.Y. 2009), *aff'd on other grounds*, 615 F.3d 152 (2d Cir. 2010). CARB further bullies manufacturers into compliance with threats of mistreatment in future regulatory proceedings while favoring their competitors who "continue[] to request certification to the regulations" that no longer have valid waivers. SUMF, Ex. 6 at 3. Individually or collectively, these provisions act as "a gun to the head" of industry to coerce compliance with preempted regulations. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 581 (2012).

Consequently, because CARB is using the waiverless August 2025 MAC to enforce preempted regulations, the August 2025 MAC is preempted. CARB also may not require certification here for reasons explained above. This Court should declare that CARB may not retroactively enforce the Omnibus rule or any certification requirement in the August 2025 MAC. It should also permanently enjoin any attempt to retroactively enforce the Omnibus rule described therein.

## IV. COUNT IV: The Waiverless September 2025 Emergency Rule Is an Unlawful "Adopt[ion]" of and "Attempt to Enforce" Preempted Emissions Standards

Finally, CARB has neither sought nor obtained a waiver from EPA to cover the Emergency Rule. SUMF ¶ 20. Therefore, the Emergency Rule is preempted. *See* 42 U.S.C. § 7543(a).

The Emergency Rule added dozens of new provisions to the California Code of Regulations and amended dozens more. SUMF, Ex. 7 at 3–4. CARB admits that the Emergency Rule "adopt[s] new sections into [the] California Code of Regulations," SUMF ¶ 17(a), and has made these changes permanent, *id*. ¶ 18. Moreover, the Emergency Rule sets up a two-track certification process backed up by a threat. CARB purports to offer truck manufacturers the "choice" of complying with either Omnibus or older regulations that Omnibus replaced (and, as a result, CARB removed from its regulatory code). *See, e.g.*, SUMF ¶ 17(b), Ex. 7 at 2, 6. And truck manufacturers "assume the risk if they choose to certify only to the [older standards], and the congressional resolutions disapproving the waivers of federal preemption are invalid. SUMF ¶ 17(c), Ex. 7 at 6.

This new regulatory structure is an unlawful attempt to enforce and require certification to Omnibus. By threatening retroactive enforcement if the State prevails in *California*, No. 4:25-cv-

Mem. in Support of the United States' Mot. for Summary Judgment                    22

04966 (N.D. Cal.), CARB attempts to enforce regulations that no longer have a preemption waiver. *See Engine Mfrs. Ass'n*, 541 U.S. at 257. And CARB has done all of this without providing the truck manufacturers with the required four-year lead time under 42 U.S.C. § 7521(a)(3)(C) (standards applicable to heavy-duty vehicles shall not apply "earlier than the model year commencing 4 years after such revised standard is promulgated"). CARB provided notice of the Emergency Rule on September 15, 2025, SUMF ¶ 17, Ex. 7 at 11, and it went into effect less than *three weeks* later, SUMF ¶ 17(d), Ex. 14 at 1. Manufacturers cannot comply with the Emergency Rule on such short notice, and the Clean Air Act prohibits CARB from compelling them to do so.

CARB does not claim that it has sought or obtained a waiver for the Emergency Rule. Instead, according to CARB, earlier waivers—some of which date back over two decades—in combination cover the many new provisions and amendments for the Emergency Rule. SUMF, Ex. 7 at 5. But CARB may not spring old emissions regulations on manufacturers at the last minute, vitiating their rights to four years of lead time under section 7521(a)(3)(C). *See* Ex. 9 at 2 (EPA letter explaining that, "even if a preexisting regulation previously obtained a waiver, such waiver is no longer extant if the regulation became ineffective at any time, whether through the passage of time, repeal, or by any other means"). Thus, because the Emergency Rule is a new set of emissions standards, CARB may not attempt to enforce it or require certification absent a waiver from EPA.

Nor may CARB adopt it without a waiver. But CARB admits that the Emergency Rule "*adopt[s]* new sections into [the] California Code of Regulations." SUMF, Ex. 7 at 1 (emphasis added). So even if individual provisions had received preemption waivers in the past, CARB has created a new regulatory structure that combines regulations from disparate rulemakings and a two-track certification structure that attempts to compel compliance with Omnibus. There is no dispute that EPA has never authorized this novel arrangement. *See* SUMF ¶ 20. Because CARB yet again unlawfully adopted an emissions standard without a waiver, this Court should declare that the Emergency Rule is preempted and that CARB must provide abide by the statutorily required lead time under 42 U.S.C. § 7521(a)(3)(C), for reasons described above. *See supra* § I.A. This Court should also permanently enjoin any retroactive enforcement of or certification requirement under the Emergency Rule. *See id*.

Mem. in Support of the United States' Mot. for Summary Judgment                           23

**CONCLUSION**

The United States has carried its burden to obtain a permanent injunction and declaration. For reasons explained, section 209(a) of the Clean Air Act preempts Clean Fleets, Clean Trucks, Omnibus, the August 2025 MAC, and the Emergency Rule. Absent injunctive relief, there is no other legal remedy and the United States will suffer "per se irreparable harm." PI Order at 32 (collecting cases). The balance of equities and public interest, which merge here, tip in the United States' favor because "[i]t is clear that it would not be equitable or in the public's interest to allow [CARB] . . . to violate the requirements of federal law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). And CARB "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). Declaratory relief will clarify the uncertainty underlying this dispute due to CARB's resolve to adopt, to enforce, and to require compliance with preempted emission standards.

Accordingly, this Court should grant the motion and:

- Declare that Clean Fleets, Clean Trucks, Omnibus, the August 2025 MAC, and the Emergency Rule are preempted under section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a), and therefore are void and unenforceable;
  - Declare that the electric-vehicle mandate is preempted and that CARB must provide industry with the statutorily required lead time, 42 U.S.C. § 7521(a)(3)(C) (four years), beginning from the date it obtains a waiver;
  - Declare that CARB may not retroactively enforce the Omnibus rule in the August 2025 MAC;
  - Declare that the Emergency Rule is preempted and that CARB must provide industry with the statutorily required lead time, 42 U.S.C. § 7521(a)(3)(C) (four years), beginning from the date it obtains a waiver;
  - Declare that CARB may not retroactively enforce waiverless regulations in the Emergency Rule.
- Permanently enjoin CARB from taking actions to implement or enforce the standards in, or any certification requirement related to, Clean Fleets, Clean Trucks, Omnibus, the August

Mem. in Support of the United States' Mot. for Summary Judgment                    24

2025 MAC, and the Emergency Rule;

- o Permanently enjoin any retroactive enforcement of the electric-vehicle mandate in Clean Fleets;

- o Permanently enjoin any retroactive enforcement of the August 2025 MAC;

- o Permanently enjoin any retroactive enforcement of the Emergency Rule;

- Declare that the Clean Truck Partnership is preempted under section 209(a) of the Clean Air Act, 42 U.S.C. § 7543(a), and is therefore void and unenforceable in its entirety; and

- Permanently enjoin CARB from taking any action to implement, enforce, attempt to enforce, or threaten to enforce the Clean Truck Partnership.

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

Dated: April 1, 2026

_/s/ *John Adams*_____
JOHN K. ADAMS
DAVID D. MITCHELL
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-5905
robert.stander@usdoj.gov
john.adams3@usdoj.gov
david.mitchell@usdoj.gov

ERIC GRANT
*United States Attorney*
501 I Street, Suite 10-100
Sacramento, California 95814
(916) 554-2700

*Counsel for United States*

**CERTIFICIATE OF SERVICE**

I certify that counsel of record were served a copy of this document via the Court's CM/ECF system this 1st day of April, 2026.

_/s/ John Adams_____
JOHN K. ADAMS

Mem. in Support of the United States' Mot. for Summary Judgment                    26