ROB BONTA, State Bar No. 202668
Attorney General of California
M. ELAINE MECKENSTOCK, State Bar No. 268861
Acting Supervising Deputy Attorney General
DAVID M. MEEKER, State Bar No. 273814
SARAH M. PFANDER, State Bar No. 347902
CECILIA D. SEGAL, State Bar No. 310935
BENJAMIN P. LEMPERT, State Bar No. 344239
Deputy Attorneys General
  455 Golden Gate Ave
  San Francisco, CA 94102-7014
  Telephone:  (415) 510-3375
  Fax:  (415) 703-1107
  E-mail:  Benjamin.Lempert@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAIMLER TRUCK NORTH AMERICA, LLC; INTERNATIONAL MOTORS, LLC; PACCAR, INC.; and VOLVO GROUP NORTH AMERICA, LLC,**<br><br>Plaintiffs,<br><br>**THE UNITED STATES OF AMERICA**; and **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>**CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF**, in his official capacity as the Executive Officer of the California Air Resources Board; and **GAVIN NEWSOM**, in his official capacity as the Governor of California,<br><br>Defendants. | 2:25-cv-02255-DC-AC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS DAIMLER TRUCK NORTH AMERICA ET AL.'S AMENDED COMPLAINT**<br><br>Date:         N/A<br>Time:        N/A<br>Dept:        N/A<br>Judge:       The Honorable Dena Coggins<br>Trial Date:  Not Set<br>Action Filed: 8/11/2025 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.     Sovereign Immunity Bars All Claims Against the Governor ........................................ 1

II.    Count III, Against the Clean Truck Partnership, Should Be Dismissed ........................... 2

     A.     Plaintiffs Lack Standing to Challenge the CTP ....................................................... 2

     B.     Plaintiffs Also Fail to State a Claim Against the CTP ............................................ 5

III.    The Remainder of Defendants' Motion Is Properly Tailored to Claims............................ 9

IV.    Plaintiffs' Claim Against the EO Should Be Dismissed................................................... 10

     A.     The Claim Against the EO Is Not Ripe.................................................................. 10

     B.     Plaintiffs Fail to State a Claim Against the EO..................................................... 11

V.     Plaintiffs' Claim Against the May MAC Is Moot........................................................... 11

VI.    Plaintiffs' Claim Against the 2036 Sales Requirement Should Be Dismissed ................. 13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Airlines for Am. v. City and Cnty. of San Francisco*
78 F.4th 1146 (9th Cir. 2023) ................................................................................... 5, 7, 8

*Alcoa, Inc. v. Bonneville Power Admin.*
698 F.3d 774 (9th Cir. 2012) ......................................................................................... 14

*Am. Airlines v. Wolens*
513 U.S. 219 (1995) ......................................................................................................... 6

*Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't of Env't Prot.*
998 F. Supp. 10 (D. Mass. 1997) .................................................................................... 8

*Am. Trucking Ass'ns v. City of Los Angeles*
559 F.3d 1046 (9th Cir. 2009) ............................................................................ 5, 6, 7, 9

*American Trucking Ass'ns, Inc. v. City of Los Angeles*
569 U.S. 641 (2013) .............................................................................................. *passim*

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013) .......................................................................................... 1

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot. (AIAM)*
208 F.3d 1 (1st Cir. 2000) ........................................................................................... 8, 9

*B.K.K. Co. v. Schultz*
7 Cal. App. 3d 786 (1970) .............................................................................................. 7

*Bank of Am., N.A. v. Miller*
No. CIV.S-06-1971-LKK/KJM, 2007 WL 184804 (E.D. Cal. Jan. 19, 2007) ............... 4

*Bautista v. County of Los Angeles*
216 F.3d 837 (9th Cir. 2000) .......................................................................................... 9

*Benyamin v. Topgolf Payroll Services LLC*
No. 2:23-CV-00303-DAD-SCR, 2025 WL 745827 (E.D. Cal. Mar. 6, 2025) .............. 10

*Brach v. Newsom*
38 F.4th 6 (9th Cir. 2022) ............................................................................................. 12

*Cal. Chamber of Com. v. Becerra*
No. 2:19-CV-02019-KJM-EFB, 2020 WL 1030980 (E.D. Cal. Mar. 3, 2020) .............. 4

*Cal. Tow Truck Ass'n v. City of San Francisco*
693 F.3d 847 (9th Cir. 2012) ........................................................................................ 10

**TABLE OF AUTHORITIES**
(continued)

**Page**

*California Institute of Technology v. City of Pasadena* (*CIT*)
    No. 2:23-CV-07681-AB-AJR, 2024 WL 6938009 (C.D. Cal. Aug. 23, 2024) ........................ 4

*Cardenas v. Anzai*
    311 F.3d 929 (9th Cir. 2002) .............................................................................................. 3

*Carpenter v. OneWest Bank, FSB*
    No. CV-1200895, 2012 WL 13012420 (C.D. Cal. Apr. 25, 2012) .......................................... 2

*Challenge v. Moniz*
    218 F. Supp. 3d 1171 (E.D. Wash. 2016) .......................................................................... 4

*City of San Francisco v. Trump*
    897 F.3d 1225 (9th Cir. 2018) ........................................................................................ 11

*Driftless Area Land Conservancy v. Valcq*
    16 F.4th 508 (7th Cir. 2021) ........................................................................................... 15

*Elliot v. Conagra Brands, Inc.*
    No. 2:23-CV-01417-DJC-AC, 2025 WL 950522 (E.D. Cal. Mar. 28, 2025) ......................... 3

*EMA v. S. Coast Air Quality Mgmt. Dist.*
    541 U.S. 246 (2004) .................................................................................................... 2, 9

*Est. of Temple v. Placer Cnty. Sheriff's Off.*
    No. 2:23-CV-01713-DAD-CKD, 2025 WL 950523 (E.D. Cal. Mar. 28, 2025) ................... 10

*Fikre v. Fed. Bureau of Investigation*
    904 F.3d 1033 (9th Cir. 2018) ........................................................................................ 12

*Hyatt v. Yee*
    871 F.3d 1067 (9th Cir. 2017) .......................................................................................... 2

*In re Gilead Scis. Sec. Litig.*
    536 F.3d. 1049 (9th Cir. 2008) ....................................................................................... 12

*Koontz v. St. Johns River Water Mgmt. Dist.*
    570 U.S. 595 (2013) ........................................................................................................ 6

*L.A. Cnty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992) ........................................................................................... 1

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ........................................................................................................ 3

**TABLE OF AUTHORITIES**
(continued)

Page

*Mesa Golfland, Ltd. v. Ducey*
  No. CV-20-01616-PHX-JJT, 2020 WL 5632141 (D. Ariz. Sept. 21, 2020) ........................... 2

*Metro. Taxicab Bd. of Trade v. City of New York*
  633 F. Supp. 2d 83 (S.D.N.Y. 2009) ................................................................................ 1, 11

*Mobil Oil Expl. & Producing Se., Inc. v. United States*
  530 U.S. 604 (2000) ................................................................................................................ 5

*Monster Beverage Corp. v. Herrera*
  650 F. App'x 344 (9th Cir. 2016) .......................................................................................... 4

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA, (MEMA)*
  627 F.2d 1095 (D.C. Cir. 1979) ........................................................................................... 15

*Murphy v. Nat'l Collegiate Athletic Ass'n*
  584 U.S. 453 (2018) ........................................................................................................ 6, 15

*Murthy v. Missouri*
  603 U.S. 43 (2024) .................................................................................................................. 2

*Olympic Pipe Line Company v. City of Seattle*
  437 F.3d 872 (9th Cir. 2006) ............................................................................................. 6, 7

*Pub. Utils. Comm'n of Cal. v. FERC*
  100 F.3d 1451 (9th Cir. 1996) .............................................................................................. 12

*Safe Air for Everyone v. Meyer*
  373 F.3d 1035 (9th Cir. 2004) ............................................................................................ 2, 3

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*
  No. 93-cv-20613-RMW-EAI, 1995 WL 150089 (N.D. Cal. Mar. 28, 1995) ........................ 10

*TransUnion LLC v. Ramirez*
  594 U.S. 413 (2021) ................................................................................................................ 3

*United States v. Abbott*
  85 F.4th 328 (5th Cir. 2023) ................................................................................................... 2

*Whole Woman's Health v. Jackson*
  595 U.S. 30 (2021) ................................................................................................................ 13

*Ex parte Young*
  209 U.S. 123 (1908) .............................................................................................................. 13

Defendants' Reply I S O Motion to Dismiss Daimler et al.'s Amended Complaint (2:25-cv-02255-DC-AC)

**TABLE OF AUTHORITIES**
(continued)

Page

STATUTES AND REGULATIONS

42 U.S.C.
§ 7543(b)(1) ............................................................................................................... 13
§ 7543(b)(1)(C) ......................................................................................................... 15
§ 7607(b)(1) ............................................................................................................... 15

Cal. Health & Saf. Code § 43105.................................................................................. 12

Cal. Code of Regs., Title 13
§ 1963.6..................................................................................................................... 13
§ 2016................................................................................................................... 13, 14

FEDERAL REGISTER

36 Fed. Reg. 8172 (Apr. 30, 1971) ............................................................................... 15

Defendants' Reply I S O Motion to Dismiss Daimler et al.'s Amended Complaint (2:25-cv-02255-DC-AC)

**INTRODUCTION**

Defendants moved to dismiss the Governor from this Complaint entirely and to dismiss Plaintiffs' claims against the Clean Truck Partnership (CTP), Executive Order N-27-25 (EO), May Manufacturers Advisory Correspondence (May MAC), and 2036 Sales Requirement. ECF 120. Plaintiffs' opposition fails to establish any reason for the Court to deny any part of Defendants' request, and the motion should be granted in full.

**ARGUMENT**

**I.    SOVEREIGN IMMUNITY BARS ALL CLAIMS AGAINST THE GOVERNOR**

The Governor's sovereign immunity bars all of Plaintiffs' claims against him because he lacks the requisite "connection with the enforcement of" any challenged act. *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)) (cleaned up); MTD 8:23-11:19. Plaintiffs seek to evade that result by arguing they challenge "an overall course of conduct by both CARB and Defendant Newsom." ECF 123 (Opp.) at 21:19; *see also id.* at 22:13 (pointing to "Defendants' overall efforts"). But sovereign immunity is particular to the official. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (separate assessment for each official). Plaintiffs must establish a "fairly direct," not generalized, connection *to the Governor*, *id.* at 943, and cannot do so for actions they concede *other* officials will enforce, Opp. 23:17 ("CARB is directly charged with enforcing the preempted standards and the CTP."). *See also* MTD 9:19-28, 10:15-21. Indeed, the only "specific instance" of the alleged "course of conduct" that Plaintiffs even try to tie to the Governor is the EO. Opp. 21:24. The Governor must, at a minimum, be dismissed from all other claims.

And, even as to the EO, Plaintiffs attempt to circumvent the Governor's sovereign immunity falls short. First, Plaintiffs assert the EO "orders *CARB*" to "enforc[e] preempted standards and the CTP." Opp. 22:16-17 (emphasis added); *see also id.* 22:19, 22:22-25, 23:17-18. That assertion undermines any enforcement connection to *the Governor*.[1] Second, Plaintiffs claim

---

[1] Plaintiffs' characterization of the EO is also wildly inaccurate. The EO instructs CARB to develop *new* standards, not to enforce the ones at issue here. ECF 121-17 at 4. It also instructs CARB to develop a list of manufacturers and to "work with" manufacturers who seek to honor their obligations under the CTP. *Id.* None of that involves pre-conditions on sales or fines for

(continued…)

1

that a governor necessarily enforces his own executive order. Opp. 23:6-7. Not so. *Mesa Golfland, Ltd. v. Ducey*, No. CV-20-01616-PHX-JJT, 2020 WL 5632141, at *4 (D. Ariz. Sept. 21, 2020) (Governor immune where executive order "will be enforced pursuant to the regulatory authority of" others); *United States v. Abbott*, 85 F.4th 328, 334-35 (5th Cir. 2023) (same). Plaintiffs' challenge to the EO can proceed only against an official who is enforcing it, not against "defendants as a monolith." *Cf. Murthy v. Missouri*, 603 U.S. 43, 69 (2024).

In fact, *no one* is enforcing the EO against Plaintiffs because it is not enforceable against them. MTD 11:1. Plaintiffs assertion that "CARB has already acted in response to the EO" does not establish otherwise. Opp. 23:18. A CARB workshop about a possible regulation the agency *might propose in the future*, *id.*, does nothing to establish CARB is enforcing the EO (or anything else) against Plaintiffs, much less that the Governor is doing so. The Governor must be dismissed.

## II.   COUNT III, AGAINST THE CLEAN TRUCK PARTNERSHIP, SHOULD BE DISMISSED

### A.   Plaintiffs Lack Standing to Challenge the CTP

The Complaint fails to establish Article III standing to challenge the CTP. Plaintiffs ask (Opp. 11 n.2) this Court to accept, as true, the Complaint's allegations that the CTP has "impacts [on Plaintiffs'] business," *id.* 10:26, despite their contrary representations to the Federal Trade Commission (FTC) that Plaintiffs' "decisions about the type and quantity of vehicles" they sell will be made "without regard to" the CTP, *e.g.*, ECF 121-5 at 2-3. The FTC took Plaintiffs at their words and "close[d] its … investigation." *E.g.*, *id.* at 1; FAC ¶ 52. There is no reason this Court should infer that Plaintiffs misrepresented their abilities or intentions to conduct business wholly independent of the CTP.[2] Indeed, Plaintiffs cite no case in which a court has ever done so.

Unable to sustain the injury alleged in the Complaint, Plaintiffs resort to new tacks. They first point to injuries allegedly *caused by the EO*. Opp. 10:11-12; FAC ¶¶ 62-63. But "plaintiffs

non-compliance. *EMA v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 254-55 (2004) (describing means of enforcing vehicle emission standards).

[2] Defendants' attack on Plaintiffs' standing is facial because it relies on the judicially noticeable facts that Plaintiffs made contradictory representations to resolve a government investigation. *Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017); *Carpenter v. OneWest Bank, FSB*, No. CV-1200895, 2012 WL 13012420, at *2 (C.D. Cal. Apr. 25, 2012). But a factual attack would still succeed because Plaintiffs failed to "furnish affidavits or other evidence," *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)—e.g., declarations that reconcile Plaintiffs' no-effect representations to the FTC with their allegations of effects.

must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). These speculative injuries cannot even support a ripe challenge the EO, *infra* Sec. IV.A, but, regardless, they are not "fairly ... traceable to" the CTP, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

Plaintiffs next assert that they must have standing because they are "parties to the CTP," Opp. 10:9, and face a "risk of significant liability" from CARB's breach-of-contract suit, *id.* at 10:24-25. This contracting-party theory fails because the Complaint's allegations undercut it. *See Elliot v. Conagra Brands, Inc.*, No. 2:23-CV-01417-DJC-AC, 2025 WL 950522, at *5 (E.D. Cal. Mar. 28, 2025). Plaintiffs allege that the CTP is *not* a contract reached through bargained-for exchanges, but, instead, a collection of "regulatory mandates" imposed by CARB. Opp. at 12:1; FAC ¶ 119 (alleging CARB acted "as a regulator" in the CTP); *id.* at ¶ 1 (alleging CARB's contract claims are a "guise"). If the CTP is regulatory (as Plaintiffs allege), they are not "parties to" it because regulations do not have "parties to" them. Nor would Plaintiffs face a risk of significant liability for breach. Plaintiffs cannot have it both ways—asserting contract-based injuries for standing to bring a claim that the CTP is not a contract but a regulation.[3] Moreover, these "injuries" are self-inflicted (MTD 16:18-26)—caused, not by Defendants' actions, but by Plaintiffs' choices to become "parties to the CTP." Opp. 10:9. It is that choice that gives rise to any alleged "uncertainty" about whether Plaintiffs will be required to perform. Opp. 10:25.[4]

Plaintiffs' contract-based "injuries" further fail because no relief that could provide redress is available from this Court on this Complaint. Plaintiffs can only bring this suit pursuant to *Ex parte Young*'s exception to sovereign immunity, under which they may only seek relief that would remedy "an ongoing violation of federal law." *E.g.*, *Cardenas v. Anzai*, 311 F.3d 929, 935 (9th Cir. 2002). The only such conduct Plaintiffs identify concerning the CTP is CARB's state-

---

[3] This is not a case where the standing theory is intertwined with the merits. *See Safe Air for Everyone*, 373 F.3d at 1040. To the contrary, this standing theory is wholly at odds with Plaintiffs' merits theory and must be *rejected* because this Court assumes, for standing purposes, that Plaintiffs' claim has merit.

[4] This distinguishes *American Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641 (2013), as it involved a purported agreement with terms were set by "municipal ordinance," not by bargaining or any other form of "voluntary commitments." *Id.* at 650.

court suit for breach of contract.[5] But the Anti-Injunction Act precludes this Court from enjoining that suit and from affording declaratory relief that would "have the same effect." *Cal. Chamber of Com. v. Becerra*, No. 2:19-CV-02019-KJM-EFB, 2020 WL 1030980, at *4 (E.D. Cal. Mar. 3, 2020). For that reason, Plaintiffs asserted they "do not seek an injunction to stay the proceedings in Alameda County Superior Court or a declaratory judgment that would have the same effect" when they sought leave to amend. ECF 115 at 2:24-25. Now, however, Plaintiffs assert they can and do seek precisely that relief. Opp. 12:11-15. This Court should hold Plaintiffs to the assertions on which they obtained leave to amend.

Those assertions were also correct. The Anti-Injunction Act bars declaratory relief that "would decide the issue of [an] affirmative defense," thereby preventing a state-court "action from moving forward." *Cal. Chamber of Com.*, 2020 WL 1030980, at *4; *see also, e.g.*, *Monster Beverage Corp. v. Herrera*, 650 F. App'x 344, 347 (9th Cir. 2016); *Bank of Am., N.A. v. Miller*, No. CIV.S-06-1971-LKK/KJM, 2007 WL 184804, at *5 (E.D. Cal. Jan. 19, 2007) (finding "both declaratory and injunctive relief are barred by the Anti-Injunction Act" where "this court's decision would have claim preclusive effect"). *California Institute of Technology v. City of Pasadena* (*CIT*), No. 2:23-CV-07681-AB-AJR, 2024 WL 6938009, at *15 (C.D. Cal. Aug. 23, 2024), does not indicate otherwise. *See* Opp. 12:12-15. Both that decision, and the Third Circuit case on which it relies, involved "a federal question best determined by a federal court," *CIT*, 2024 WL 6938009 at *16—i.e., an issue over which federal courts generally have exclusive jurisdiction.  Preemption is not such an issue, the state court could issue a "competent" ruling, and the Anti-Injunction Act applies. *See Bank of Am.*, 2007 WL 184804, at *5.[6]

---

[5] Plaintiffs also point to a purported risk of "fines" for non-compliance, Opp. 10:11, but cite to allegations concerning actions *other than* the CTP, FAC ¶ 81. *See also* Opp. 11:17 (citing FAC ¶¶ 38, 82, 85); *id.* at 10:11-12 (pointing to EO). Finally, Plaintiffs speculatively refer to "preventing enforcement of the CTP beyond the Alameda County CTP Litigation," Opp. 12:16, but do not explain how or why steps "beyond" the existing state-court suit for breach might occur.

[6] It is irrelevant to the dismissal of *this* Complaint from *these* Plaintiffs that a different plaintiff with its own complaint may be able to obtain redress. *Challenge v. Moniz*, 218 F. Supp. 3d 1171, 1179 (E.D. Wash. 2016) (declining to apply "the 'standing for one is standing for all' doctrine" across complaints). Likewise, this Court's conclusion concerning irreparable *injury* does not satisfy the *redressability* element of standing for these Plaintiffs. *Contra* Opp. 10:19-20.

Defendants' Reply I S O Motion to Dismiss Daimler et al.'s Amended Complaint (2:25-cv-02255-DC-AC)

### B.    Plaintiffs Also Fail to State a Claim Against the CTP

Even if Plaintiffs had alleged facts to support a valid standing theory, the Complaint would still fail to state a preemption claim against the CTP. Plaintiffs cannot dispute that "federal law generally preempts state or local government action that has the force and effect of law," while agreements that lack such force and effect are not preempted. *Airlines for Am. v. City and Cnty. of San Francisco*, 78 F.4th 1146, 1150 (9th Cir. 2023) (cleaned up); *see also* MTD 17:20-24. Instead, Plaintiffs dispute how to distinguish the former from the latter, arguing that the voluntariness of agreements is irrelevant. Opp. 6:17. But the Supreme Court and the Ninth Circuit have consistently distinguished between "quintessential regulation action" and "contractual commitment[s] *voluntarily undertaken*." *See Am. Trucking*, 569 U.S. at 649 (2013) (quoting *Am. Airlines v. Wolens*, 513 U.S. 219, 229 (1995)) (emphasis added); *see also* MTD 17:24-19:12. Plaintiffs do not plausibly dispute that the CTP is a bargained-for exchange of voluntary commitments in which each party gave and received valuable consideration. *See* MTD 20:6-23. Indeed, in their opposition they affirm that they are "parties to the CTP," Opp. 10:9, implicitly conceding the CTP is an agreement and not a regulation. That should be the end of this claim. Plaintiffs' attempts to save it are untethered from precedent and should be rejected.

**1.** Plaintiffs contend that the divide between regulatory actions disguised as agreements (which can be subject to preemption) and actual, bargained-for agreements (which cannot) is defined by the nature and purpose of the parties' commitments. Opp. 6:23-7:3. But Plaintiffs cite no authority even suggesting that the nature of the consideration offered is relevant. *See id*. Indeed, the sole case they do cite (*id.* at 6:22-23) concerned a tariff imposed through "municipal ordinance"—not through "the parties' voluntary commitments"—and enforceable with "criminal penalties." *Am. Trucking*, 569 U.S. at 650. Far from holding that the type of consideration is relevant, that case indicates that "contracts [which are] the result merely of the parties' voluntary commitments" are not regulatory action subject to preemption. *Id.* In other words, it is the use of a "tool…which only a government can wield"—like an ordinance or criminal penalties—that indicates regulatory action. *Id.* at 651; *see also Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 607, 613 (2000) (readily applying "the law applicable to contracts between

5

private individuals" where government party's consideration included promise to take regulatory action on statutory timelines). A bargained-for exchange of consideration is not such a tool, regardless of what was offered and accepted.

Plaintiffs claim the Ninth Circuit decided voluntariness is irrelevant in *Olympic Pipe Line Company v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006). Opp. 8:13-14. But the Supreme Court later confirmed otherwise in *American Trucking*, 569 U.S. at 650, and, as Plaintiffs recognize, that "decision … controls," Opp. 10:7. Moreover, the Supreme Court has since rejected the premise on which *Olympic Pipe Line*'s voluntariness analysis rested—that "[p]reemption is a power of the federal government, not an individual right of a third party that the party can 'waive.'" *Olympic Pipe Line*, 437 F.3d at 883.[7] To the contrary, a preemption provision "confers *on private entities* . . . a federal right to engage in certain conduct subject only to certain (federal) constraints." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 478-79 (2018) (emphasis added).[8] Plaintiffs agree. Opp. 16:7-8 (asserting a "federally protected right conferred on Plaintiffs by Congress in Section 209"). Indeed, if this were not so, the Supreme Court's decision in *Wolens* would make little sense. The contractual obligations at issue there directly concerned airline rates and were thus within the preempted domain. 513 U.S. at 226. But enforcement of those obligations was not preempted because the obligations were "self-imposed," rather than "state-imposed." *Id.* at 228. In other words, the airlines could waive—and had waived—their statutory preemption rights through contract. So too here. Plaintiffs cannot plausibly allege otherwise; and the agreement is not preempted.

**2.** That result is confirmed by a point on which *Olympic Pipe Line is* consistent with Supreme Court precedent—that preemption was appropriate where the city's attempt to enforce the "agreement" expressly "invoked its police and regulatory powers." *Olympic Pipe Line*, 437 F.3d at 881-82. As Defendants demonstrated, the means of enforcement is the other factor—along with the voluntariness with which the obligations were undertaken—that can establish a

---

[7] *Olympic Pipe Line* also relied on the city's "purpose," *id.* at 881, but the Supreme Court later instructed that "intentions are not what matters," *Am. Trucking*, 569 U.S. at 651.

[8] *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) did not hold otherwise. *See* Opp. 9:3-5. That case concerned unconstitutionally coercive conditions on land-use permits. It never once mentions preemption or any related statutory rights.

purported agreement is actually a regulation with the force and effect of law. MTD 21:3-17. But on this point, *Olympic Pipe Line* supports dismissal here because CARB has invoked no such police or regulatory powers to enforce the CTP. Rather, it filed a suit for breach. This is not a "coercive mechanism" for enforcement, like a criminal prohibition, available to "no private party." *Am. Trucking*, 569 U.S. at 651; *see also Airlines for Am.*, 78 F.4th at 1152 (same analysis for "agreement" with civil penalties).

Ignoring the enforcement mechanism CARB has actually used, Plaintiffs argue enforcement will come through regulatory penalties. Opp. 7:17-18. But the fact that the CTP does not mention contract remedies does not support that contention. *E.g.*, *B.K.K. Co. v. Schultz*, 7 Cal. App. 3d 786, 794 (1970) (employing "conventional contract" remedies "where the contract is silent as to remedies"). Indeed, Plaintiffs effectively concede that the agreement is enforceable through suit for breach, by failing to deny they could bring such a suit against CARB. *Compare* MTD 21:15-17, *with* Opp. 7:10-26.

None of the CTP terms to which Plaintiffs point indicates otherwise. Indeed, Plaintiffs point to no term of the agreement in which they (or CARB) agreed to be subject to regulatory penalties. Instead, they first point to Appendix A (Opp. 7:6-7, 7:19-23) which "set[s] forth" part of the consideration with which CARB bargained: the amendments to the Omnibus regulation that CARB agreed to consider. ECF 118-1 (CTP) at 1; *id.*, App'x A at i (title). The setting forth of *CARB's* obligations says nothing about the enforcement of those obligations, much less enforcement of the obligations *Plaintiffs* voluntarily undertook.[9] Plaintiffs next describe incorporated vehicle requirements as "*penalty-carrying* provisions," Opp. 7:16-18 (emphasis added), but that artful characterization concedes that no *penalty-imposing* provisions were incorporated as terms of the CTP. In other words, the parties did not agree to regulatory penalties for non-compliance. Likewise, the statement that manufacturer signatories "will still be required" to comply with "applicable California requirements," CTP, App'x B at i ¶ 1—including

---

[9] Certainly, the proposed amendments define the terms of compliance and non-compliance with the proposed regulation, *id.*, App'x A at i n.1, n.2.; that is the function of regulatory text. But CARB's commitment to consider adopting particular regulatory text does not make that text an enforcement mechanism for the agreement.

certification requirements—confirms that the CTP obligations are *distinct from* obligations under the State's regulations (which continue independent of the CTP). *Contra* Opp. 6:25-28. In other words, the agreement is not a regulation; and all the parties understood that when they signed it.

**3.** Unable to allege either of the two factors that can render an "agreement" preempted, Plaintiffs resort to bald assertions that CARB was not acting as a "market participant." Opp. 7:11, 7:14, 9:9, 9:14. Again, though, Plaintiffs misapprehend how courts define market participation in this context. When the government engages in "contract-based" activity involving "commitments voluntarily undertaken," it is acting like a private party making "everyday contractual arrangements." *Airlines for Am.*, 78 F.4th at 1152 (cleaned up). By contrast, "when the government employs a coercive mechanism, available to no private party, it acts with the force and effect of the law." *Id.* (cleaned up). It is that use of "the force and effect of law" that divides "the State acting as a State" from the State acting as a contracting entity or "market actor." *Id.* (cleaned up). In other words, participation in the "market" here means bargaining with whatever consideration the parties are able and willing to offer and accept.

The First Circuit understood this when it concluded that agreements similar to this one—"entered into by California and the automakers" regarding vehicle sales in the State—were "voluntary contractual agreements" not subject to preemption. *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.* (*AIAM*), 208 F.3d 1, 7-8 (1st Cir. 2000). Plaintiffs attempt to distinguish this case on the grounds that the automaker obligations were not "extant state law," Opp. 9:25-26, but that does not transform the agreement into an exercise in buying or selling, as Plaintiffs contend is required to avoid preemption, *id.* at 10:6. Moreover, Plaintiffs contend that *any* obligation to sell vehicles with certain emission control properties is preempted absent a waiver, *e.g.*, FAC ¶ 28, so the fact that the State had not promulgated the obligations is irrelevant under Plaintiffs' own theory. Finally, Plaintiffs' attempt to characterize CARB's consideration in *AIAM* as "proprietary," Opp. 9:26-10:6, fails because CARB agreed to "to work with the Department of Insurance and with banks" to make it easier for Californians to insure zero-emission vehicles and agreed "to work on battery disposal and re-cycling" issues, *Am. Auto. Mfrs. Ass'n v. Comm'r, Massachusetts Dep't of Env't Prot.*, 998 F. Supp. 10, 14 (D. Mass. 1997), *aff'd*

*sub nom. AIAM*, 208 F.3d at 8. None of that involves buying or selling. Nor did the *AIAM* court rely on the nature of CARB's consideration in concluding the agreements were not preempted, *AIAM*, 208 F.3d at 7-8—confirming that the nature of consideration offered and accepted is not relevant to whether an "agreement" is actually a regulation in disguise.

## III.   THE REMAINDER OF DEFENDANTS' MOTION IS PROPERLY TAILORED TO CLAIMS

Plaintiffs' argument that the rest of Defendants' motion seeks improper dismissal of *parts* of claims misunderstands what constitutes a claim. Opp. 12:26-13:23. "A claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Bautista v. County of Los Angeles*, 216 F.3d 837, 840 (9th Cir. 2000) (cleaned up). In the context of alleged preemption, both the operative facts and the enforceable right are specific to each provision or requirement the plaintiff challenges. *E.g.*, *Am. Trucking*, 569 U.S. at 648 (finding two provisions of "agreement" preempted but declining to reach others due to different operative facts); *EMA v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 259 (2004) (similarly variable operative facts and enforceable rights across provisions of single rule). Thus, "when preemption is claimed, a court must pay careful attention to the particular provisions that a state or local entity seeks to impose." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1054 (9th Cir. 2009).

Ignoring all of this, Plaintiffs improperly characterize Counts I and II of their Complaint as single "claims," Opp. 13:8-15, although these counts challenge, respectively, no fewer than seven and four separate rulemakings or other actions—most of which contain multiple provisions. FAC ¶¶ 99, 113.[10] Moreover, Plaintiffs themselves plead *different operative facts* as to why these actions are allegedly preempted. *E.g., id.* ¶ 99(a) (alleging some regulations are preempted because "waivers … were *explicitly* revoked by Congressional Resolutions"); *id.* ¶ 99(b) (alleging other regulations are preempted because no waiver was ever granted); *id.* ¶ 99(c) (alleging still other regulations are preempted due to "readopt[ion]"). Because each challenged action has its own operative facts and Plaintiffs must establish entitlement to relief as to each, Defendants are

---

[10] Plaintiffs' stylization of their "counts" has no determinative effect on the number of claims. Indeed, Defendants might have moved under Rule 10 for a separate statement of each claim but determined that the subparagraphs in each Count made it possible to reasonably distinguish each distinct regulatory claim. *See* FAC ¶ 109a-f (separately identifying claims against May MAC, EO, and August MAC).

9

free to seek dismissal of claims against certain actions but not others. Plaintiffs cannot avoid this by combining multiple claims into one "count" and then recasting the operative facts for distinct claims as "allegations." Opp. 13:11-13.

Notably, Plaintiffs cite no *preemption* precedent suggesting that they may lump challenges to myriad regulations and other allegedly regulatory actions into one "claim" and thereby defeat a motion to dismiss. Plaintiffs rely solely on employment cases, in which course-of-conduct claims are common and cognizable. Opp. 12:28-13:4. Those cases cannot overcome black-letter law that preemption claims proceed "on a provision-by-provision basis" because the "fact that one part of the regulatory scheme is preempted does not mean that other parts of the scheme are preempted, or that the scheme as a whole is preempted." *Cal. Tow Truck Ass'n v. City of San Francisco*, 693 F.3d 847, 860 (9th Cir. 2012).[11] Indeed, one need look no further than the United States' Amended Complaint-in-Intervention to see that these Plaintiffs' Complaint groups multiple claims into a single count. *See* ECF 119 ¶¶ 114-124 (separate claims against August MAC and emergency rulemaking). Defendants' motion properly seeks to dismiss specific claims (contained within Counts I and II) against the EO, the May MAC, and the 2036 Sales Requirement.

## IV. PLAINTIFFS' CLAIM AGAINST THE EO SHOULD BE DISMISSED

### A. The Claim Against the EO Is Not Ripe

Plaintiffs' challenges to the EO are not ripe because, as this Court correctly concluded, the EO "merely provides policy priorities and directives for state agencies and departments," which "pertain to future actions that might [or might not] be undertaken." ECF 94 at 30:1-4; *see also* MTD 11:26-12:15. Plaintiffs respond by arguing that CARB "has already implemented parts" of

---

[11] The reasoning in Plaintiffs' employment cases is also inapposite. For example, in *Benyamin v. Topgolf Payroll Services LLC*, there was no need to dismiss one of plaintiff's two agency theories when doing so would still allow plaintiff to proceed under the other one. No. 2:23-CV-00303-DAD-SCR, 2025 WL 745827, at *4 (E.D. Cal. Mar. 6, 2025). *See also Est. of Temple v. Placer Cnty. Sheriff's Off.*, No. 2:23-CV-01713-DAD-CKD, 2025 WL 950523, at *11 (E.D. Cal. Mar. 28, 2025) (refusing to consider dismissal of one of three ways plaintiffs might support negligent supervision theory because theory would proceed regardless). Here, dismissing the claims against the EO, the May MAC, or the 2036 Sales Requirement removes those actions from the case entirely and alters the available remedies; it would not simply prevent Plaintiffs from pursuing one of several legal theories for why each of those actions is preempted. *See Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. 93-cv-20613-RMW-EAI, 1995 WL 150089, at *3 (N.D. Cal. Mar. 28, 1995) (dismissal proper because it would limit relief available).

Defendants' Reply I S O Motion to Dismiss Daimler et al.'s Amended Complaint (2:25-cv-02255-DC-AC)

the EO. Opp. 19:6-16. But they point only to a pre-rulemaking workshop, *id.*, underscoring that no final action affecting Plaintiffs has been taken. Plaintiffs' pre-enforcement cases also cannot save this claim, Opp. 19:7-11, 19:17-26, 20:3-8, because ripeness in such cases turns on "the genuineness of a claimed threat of prosecution." *City of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018). The EO does not establish law that can be violated by, or prosecuted against, Plaintiffs. The EO simply directs CARB (and other agencies) to take certain steps. ECF 121-17 at 4. When and if those steps are taken, Plaintiffs could have a ripe claim if they are cognizably injured. They do not have one now.

### B.   Plaintiffs Fail to State a Claim Against the EO

The Complaint also fails to state a claim against the EO. MTD 12:17-14:23. The premise of this claim is that the EO is an attempt to enforce standards Plaintiffs allege are preempted. FAC ¶ 63. Plaintiffs concede the Supreme Court has interpreted the "attempt to enforce" language in Section 209 as referring to steps preliminary to the imposition of regulatory penalties. Opp. 20:18. But they fail to identify any such steps in the EO. They allege that implementation of the EO (when and if it occurs) may deprive some manufacturers of state-funded incentives or the like. FAC ¶ 63. That has nothing to do with regulatory *penalties*. Plaintiffs try to save their claim by contending the EO "does not offer regulated parties viable, non-preempted options." Opp. 20:20 (cleaned up). However, they do not allege facts that could support a conclusion that selling vehicles without state-funded incentives will not be "viable." Nor is that a plausible inference because incentive programs are naturally designed to be selective, meaning they do not apply to *all* sales and non-incentivized sales continue. Moreover, neither the Complaint nor the EO identifies the magnitude of any *potential, future* incentive. Without that, this Court cannot find the EO limits Plaintiffs to only one viable option. *Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 99 (S.D.N.Y. 2009), *aff'd,* 615 F.3d 152 (2d Cir. 2010) (relying on expert evidence that challenged law would reduce profit margins by "up to 76%").

### V.   PLAINTIFFS' CHALLENGE TO THE MAY MAC IS MOOT

The August MAC supersedes the May MAC, so challenges to the May MAC are moot. MTD 14:25-15:23; ECF 94 at 29:18-19. Plaintiffs cannot establish the threshold point that the

11

August MAC was issued "because of" this litigation. MTD at 15:1-10. Plaintiffs argue that their allegation on this point must be accepted as true. Opp. 18:4-9. But the August MAC contains only a background reference to this case, ECF 73-32 at 1, as this Court has already recognized, ECF 94 at 29:18-19. That judicially noticeable fact contradicts Plaintiffs' allegation and obviates any need to accept that allegation as true. *In re Gilead Scis. Sec. Litig.*, 536 F.3d. 1049, 1055 (9th Cir. 2008). Accordingly, the voluntary cessation exception to the mootness doctrine does not apply here, and Plaintiffs' challenges to the May MAC are moot. *Pub. Utils. Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996).

Even if Plaintiffs could clear the threshold barrier, the August MAC reflects a "change in policy" more abiding than a "memorandum" deemed "sufficient to moot a case, even though there had been no intervening statutory or regulatory change." *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1040-41 (9th Cir. 2018). The August MAC itself identifies certification pathways not available under the May MAC, manifesting a change in policy; and that change *has been* backed up by regulatory change. MTD 15:4-15.[12] Plaintiffs' observation that CARB—like all of California's regulatory agencies—can adopt *temporary* regulations on an emergency basis does not establish any non-speculative likelihood that CARB will do so in order to reissue the May MAC. Indeed, this argument ignores CARB's policy shift (again) and likewise disregards CARB's *non-emergency* rulemaking to more permanently codify that shift. FAC ¶ 79. Defendants were not required to detail every procedural requirement necessary to undo that rulemaking, *contra* Opp. 18:20-21, in order to establish that such actions are "governed by … clear or codified procedures," *Fikre*, 904 F.3d at 1038—namely, the California Administrative Procedure Act. The policy shifts manifest in the August MAC and CARB's emergency and non-emergency rulemakings are simply not "temporary move[s] to sidestep the litigation," *Brach v. Newsom*, 38 F.4th 6, 13 (9th Cir. 2022), and Plaintiffs' challenge to the May MAC is moot.

---

[12] Plaintiffs cannot negate these changes by claiming all these actions require "CARB certification." Opp. 18:14. That requirement does not flow from the MACs. *E.g.*, Cal. Health & Saf. Code § 43105. And Plaintiffs allege the May MAC was an attempt to require certification *to the Omnibus standards*. FAC ¶ 59. *That* policy changed between the MACs.

## VI.    PLAINTIFFS' CLAIM AGAINST THE 2036 SALES REQUIREMENT SHOULD BE DISMISSED

Plaintiffs' challenges to the 2036 Sales Requirement part of the Advanced Clean Fleets regulation should also be dismissed for lack of Article III jurisdiction. The *Ex parte Young* exception to sovereign immunity—under which Plaintiffs bring this suit—"authorizes federal courts to enjoin certain state officials from enforcing state laws." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021). There is no enforcement of this regulation to enjoin. CARB is not enforcing and will not enforce, absent a waiver from EPA. And, because any such waiver would mean the regulation was *not* preempted, Plaintiffs do not need and are not entitled to any relief on this preemption claim. MTD 24:3-21.[13] Moreover, even if this Court were to provide injunctive or declaratory relief, on the grounds that this regulation is preempted because it lacks a waiver, EPA would retain the power to waive preemption in the future. 42 U.S.C. § 7543(b)(1). In other words, the relief Plaintiffs seek would not place Plaintiffs in a different situation than they are now: the regulation would become enforceable *if and only if* EPA waives preemption.

Plaintiffs cannot save the challenge to this regulation—embedded in Counts I and II—by pointing to preliminary relief obtained with respect to the separate action (the CTP) that they challenge in Count III. *See* Opp. 13:27-14:4, 14:7. Indeed, while this Court concluded that Plaintiffs would be harmed "in the absence of an injunction barring enforcement of *the Clean Truck Partnership*," ECF 94 at 32:13-14, it reached the opposite conclusion about *this regulation*—concluding "Plaintiffs have *not* demonstrated irreparable harm," *id.* at 27:7-11 (emphasis added).

Nor has "CARB … already contravened" the stipulation and order in the *Nebraska v. Cliff* case, in which CARB agreed not to enforce this regulation absent a preemption waiver. *See* Opp. 15:19. The *Nebraska* court has reached no such conclusion; and the opinions of the *Nebraska* plaintiffs and Plaintiffs here cannot establish that it has. *See id.*; ECF 136. That is the end of this

---

[13] This is just as true of the provision in Advanced Clean Trucks (Cal. Code of Regs., tit. 13, § 1963.6), as it is of the original in Advanced Clean Fleets (*id.* § 2016). *Contra* Opp. 15:20-27. As Plaintiffs themselves allege, the former merely incorporates the latter by reference. FAC 16 n.8. Plaintiffs have alleged no facts that could support an inference that CARB could or would use that incorporation-by-reference to enforce without a waiver.

argument because it cannot be sustained without that essential predicate. Opp. 15:19. The argument fails for the additional reason that it is entirely speculative. Plaintiffs assume the *Nebraska* court will find that CARB violated the stipulation and order *and* decline to remedy the violation. Indeed, absent *both* of those hypothetical court decisions, the stipulation and order is effective and Plaintiffs face no risk of enforcement of a preempted regulation.[14] The Ninth Circuit has rejected standing theories based on such "speculative contingencies"—including assumptions that courts will rule in particular ways. *See Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 794 (9th Cir. 2012) (cleaned up). This Court should do the same.[15]

Plaintiffs also claim the Complaint establishes "in detail" that Plaintiffs need at least ten years to meet this requirement. *See id.* 14:5-10. The single paragraph to which Plaintiffs point contains conclusory phrases like "incredibly short" but no actual facts—detailed or otherwise—about the transition to zero-emission trucks that is already underway in California. FAC ¶ 88; *see also id.* ¶ 34(a) (explaining zero-emission-vehicle requirements were enforceable, pursuant to waiver, for two years); ECF 81-2. Certainly, there are no facts in this paragraph that could reconcile Plaintiffs' "commitment … to a zero-emissions commercial vehicle future," ECF 121-9 at 1, with the conclusory allegation that such a future requires "fundamental restructuring" for which Plaintiffs are unprepared, FAC ¶ 88. Likewise, there are no facts that could explain why Plaintiffs supposedly need more than ten years to prepare for this requirement, when they bargained for only *four years* of lead time for *all* future CARB regulations. CTP at 2 ¶ 5.

In any event, even if Plaintiffs had alleged actual facts supporting feasibility concerns with this requirement, those concerns do not support their standing to challenge this regulation here and now. At bottom, Plaintiffs fear that EPA will waive preemption, despite Plaintiffs' alleged concerns about the regulation's feasibility, because, again, the granting of an EPA waiver is the

---

[14] To the extent that Plaintiffs ask this Court to conclude that CARB violated *another court's* order, before an opposition has even been filed, this Court should decline that invitation

[15] As Defendants will explain in their opposition to the *Nebraska* plaintiffs' motion, there is no reason to assume the *Nebraska* court will find a violation of its order. Neither that order nor the underlying complaint makes any reference to the CTP, so CARB's agreement "not to enforce the [challenged] *regulation*," identified as the "regulatory requirement" codified at "Cal. Code Regs., tit. 13, § 2016," ECF 121-1 at 3 ¶ 3, does not reach the agreement. And this Court's *preliminary* conclusion that Plaintiffs here raised "serious questions going to the merits of their claim that the Clean Truck Partnership is preempted," ECF 94 at 32:6-7, does not change that.

14

only scenario in which this regulation would be enforced. Plaintiffs fear is speculative because EPA must consider Plaintiffs' feasibility concerns in any future waiver proceeding. 42 U.S.C. § 7543(b)(1)(C); *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1122 ("*MEMA*") (D.C. Cir. 1979) (statute requires consideration of "technological feasibility"). In fact, EPA has sometimes denied waivers for initial model years, effectively delaying the implementation of a California regulation. *E.g.,* 36 Fed. Reg. 8172 (Apr. 30, 1971). And, even if Plaintiffs' fear of a waiver were non-speculative, it would still not be redressable here because this Court cannot enjoin EPA from taking future administrative action. To the contrary, EPA's Clean Air Act actions are judicially reviewable only after they are "final" and then only in the appropriate court of appeals. 42 U.S.C. § 7607(b)(1); *see also MEMA*, 627 F.2d at 1125-26 (addressing feasibility-based challenges to EPA waiver).[16]

Finally, Plaintiffs resort to arguing that they are injured by the mere existence of this requirement in the California Code of Regulations because that purportedly "infringes on the federally protected right conferred on Plaintiffs by Congress in Section 209." Opp. 16:7-8. But "Congress lacks the power to order a state legislature not to enact" particular laws, *Murphy*, 584 U.S. at 481, so Section 209 cannot confer a right to the absence of any particular provision of law from the State's codes. Moreover, even if Congress had conferred such a right (and it did not), the only redress for this alleged injury would be repeal of the regulation. And this Court cannot provide that remedy. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("[T]he federal judiciary is not an oversight board over state agencies and has no power to vacate the actions of state agencies.").

## CONCLUSION

Defendants respectfully request that the Court grant their motion to dismiss.

---

[16] To the extent that process "scare[s]" manufacturers into preparing to comply (Opp. 17:13), that is by congressional design, *see MEMA*, 627 F.2d at 1110-11, underscored by more than half a century of uninterrupted industry and agency practice and congressional acceptance.

15

Dated:  April 10, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
M. ELAINE MECKENSTOCK
Acting Supervising Deputy Attorney
General

*/s/ Benjamin P. Lempert*
BENJAMIN P. LEMPERT
Deputy Attorney General
*Attorneys for Defendants*

16