GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5395
Facsimile:    650.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8293
Facsimile:    415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
JACOB T. SPENCER, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone:    202.955.8500
Facsimile:    202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
JSpencer@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*
(additional counsel on signature pages)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,

        Plaintiffs,

        v.

STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,

        Defendants.

_____

THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

        Plaintiffs-Intervenors,

        v.

CALIFORNIA AIR RESOURCES BOARD; and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,

        Defendants.

Civil Action No. 2:25-cv-02255-DC

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Date:        August 7, 2026
Time:        1:30 PM
Courtroom:  10, 13th Floor
Judge:      Hon. Dena Coggins
Action Filed:  August 11, 2025

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................... 1

FACTUAL AND LEGAL BACKGROUND ........................................................................ 2

ARGUMENT .......................................................................................................................... 9

    I.     Plaintiffs Are Entitled to Summary Judgment Because this Case Concerns Purely Legal Questions of Federal Preemption. ................................................................................................... 9

    II.    [Count I] The Clean Air Act Preempts California's Emission Standards and Certification Requirements. ...................................................................................................................... 10

        A.    *California's Emissions Standards Are Preempted.* ............................................................ 10

            1.    Waivers Disapproved by Federal Statute ...................................................... 11

            2.    Required Waivers Never Received ................................................................. 11

        B.    *Any California Certification Requirement Is Preempted.* ................................................ 12

    III.    [Count II] Defendants' Attempts to Enforce Emissions Standards Are Preempted. .......... 13

        A.    *Statutory Framework*..................................................................................................... 13

        B.    *CARB's Preempted Attempts to Enforce* ................................................................. 15

            1.    The Clean Truck Partnership ......................................................................... 15

            2.    Retroactive Enforcement................................................................................. 16

            3.    Certification..................................................................................................... 17

        C.    *Governor Newsom's Preempted Attempts to Enforce*......................................................... 19

    IV.    [Count III] The Clean Truck Partnership Is Preempted. ...................................................... 20

CONCLUSION........................................................................................................................ 25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Airlines for Am. v. City & Cnty. of San Francisco*,
  78 F.4th 1146 (9th Cir. 2023)...................................................................................22, 23

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  569 U.S. 641 (2013) ...............................................................15, 16, 20, 21, 22, 23

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*,
  33 F.4th 1107 (9th Cir. 2022).....................................................................................25

*Association of International Manufacturers, Inc. v. Commissioner, Massachusetts
  Department of Environmental Protection*,
  208 F.3d 1 (1st Cir. 2000), In 2001.....................................................................22, 23, 24

*Atay v. Cnty. of Maui*,
  842 F.3d 688 (9th Cir. 2016).........................................................................................9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................................9

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992) ...................................................................................14, 15, 24

*Citizens for Const. Integrity v. United States*,
  57 F.4th 750 (10th Cir. 2023).................................................................................11, 12

*Ctr. for Biological Diversity v. Bernhardt*,
  946 F.3d 553 (9th Cir. 2019)........................................................................................11

*Engine Manufacturers Association v. South Coast Air Quality Management District
  (EMA)*,
  541 U.S. 246 (2004) ...............................................................13, 14, 16, 19, 20, 21, 25

*INS v. Chadha*,
  462 U.S. 919 (1983) .....................................................................................................11

*Int'l Paper Co. v. Ouellette*,
  479 U.S. 481 (1987) .....................................................................................................14

*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982) .......................................................................................................25

*Kashani v. Tsann Kuen China Enter. Co.*,
  118 Cal. App. 4th 531 (2004).......................................................................................25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .......................................................................................................9

*Metro. Taxicab Bd. of Trade v. City of New York*,
  633 F. Supp. 2d 83 (S.D.N.Y. 2009), *aff'd on other grounds*, 615 F.3d 152 (2d Cir.
  2010) ...............................................................................................14, 16, 19, 20

i

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ..................................................................................................................14

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
   584 U.S. 453 (2018) ............................................................................................................16, 25

*Nat'l Audubon Soc'y, Inc. v. Davis*,
   307 F.3d 835 (9th Cir. 2002) .....................................................................................................9

*Nat'l Rifle Ass'n of Am. v. Vullo*,
   602 U.S. 175 (2024) ..................................................................................................................25

*Nebraska v. Cliff*,
   No. 2:24-cv-01364-TKN-CKD (E.D. Cal.) (order entered May 5, 2025), ECF No.
   95 .................................................................................................................................................3

*Nebraska v. Cliff*,
   No. 2:24-cv-01364-TLN-CKD (E.D. Cal. filed Apr. 3, 2026), ECF No. 106 ...............................4

*In re Office of Att'y Gen. of State of N.Y.*,
   269 A.D.2d 1 (N.Y. App. Div. 2000)........................................................................................14

*In re Office of Att'y Gen. of State of N.Y.*,
   269 A.D.2d at 7–8 .....................................................................................................................15

*Olympic Pipe Line Co. v. City of Seattle*,
   437 F.3d 872 (9th Cir. 2006)..............................................................................................16, 24

*Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*,
   461 U.S. 190 (1983) ....................................................................................................................9

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ..................................................................................................................24

*Principal Life Ins. Co. v. Robinson*,
   394 F.3d 665 (9th Cir. 2005)......................................................................................................1

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
   754 F.3d 754 (9th Cir. 2014)......................................................................................................9

*San Diego Bldg. Trades Council v. Garmon*,
   359 U.S. 236 (1959) ..................................................................................................................24

*Schwenk v. Hartford*,
   204 F.3d 1187 (9th Cir. 2000)..................................................................................................25

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987)......................................................................................................9

*Taylor AG Indus. v. Pure-Gro*,
   54 F.3d 555 (9th Cir. 1995)........................................................................................................9

*United States v. Howald*,
   104 F.4th 732 (9th Cir. 2024)...................................................................................................25

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

*Winter v. Natural Resources Defense Council,*
  555 U.S. 7 (2008). Dkt. 94 .................................................................................................15

*Ex parte Young,*
  209 U.S. 123 (1908) ............................................................................................................10

**Statutes**

5 U.S.C. § 805 ......................................................................................................................11

28 U.S.C. § 2201 ....................................................................................................................1

42 U.S.C. §  7521(a)-(b) ......................................................................................................10

42 U.S.C. § 7543(a) ...........................................................................2, 12, 13, 16, 19, 21

42 U.S.C. § 7543(b) ...............................................................................................................2

42 U.S.C. § 7543(b)(1) ..........................................................................................................2

Cal. Code Regs. tit. 13, § 1956.8 ...........................................................................2, 3, 8, 12

Cal. Code Regs. tit. 13, § 1956.8.1 ..................................................................................6, 7

Cal. Code Regs. tit. 13, § 1963.1 ..........................................................................................2

Cal. Code Regs. tit. 13, § 1963.2 ..........................................................................................2

Cal. Code Regs. tit. 13, § 1968.2 ..........................................................................................3

Cal. Code Regs. tit. 13, § 1971.1 ..........................................................................................4

Cal. Code Regs. tit. 13, § 1971.1.1 .......................................................................................7

Cal. Code Regs. tit. 13, § 1976 ..........................................................................................3, 7

Cal. Code Regs. tit. 13, § 1978 ..............................................................................................3

Cal. Code Regs. tit. 13, § 2016(c) .........................................................................................3

Cal. Code Regs. tit. 17, § 95663 ............................................................................................4

Cal. Code Regs., tit. 17, § 95663.0.1(a) ...............................................................................7

Cal. Health & Safety Code, § 43151 ....................................................................................13

Cal. Health & Safety Code, § 43512 ....................................................................................13

Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025) ................................................................3

Pub. L. No. 119-16, 139 Stat. 66 (June 12, 2025) ................................................................3

Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025) ................................................................3

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

## Other Authorities

CARB, Advanced Clean Cars II Final Regulation Order, Title 13, Amendments to
Sections 1900 *et al.* ....................................................................................................6

CARB, Heavy-Duty On-Board Diagnostic System Requirements 2018...............................4

CARB, Omnibus Low NOx Final Regulation Order, Title 13 (Date of Hearing: Aug.
27, 2020) ..................................................................................................................2, 6

CARB, Omnibus Low NOx Waiver Request to U.S. EPA, Doc. No. EPA-HQ-OAR-
2022-0332-0009, U.S. EPA Nonrulemaking Docket No. EPA-HQ-OAR-2022-
0332................................................................................................................................4

CARB, On-Board Diagnostic Systems II ............................................................................4

CARB, Withdrawal of California's Request for a Waiver (Jan. 13, 2025), Doc. No.
EPA-HQ-OAR-2023-0589-0470, U.S. EPA Nonrulemaking Docket No. EPA-HQ-
OAR-2023-0589.............................................................................................................3

CARB, Omnibus Low NOx Waiver Request to U.S. EPA, Enclosure 12, Text of
Omnibus Low NOx, Doc. No. EPA-HQ-OAR-2022-0332-0005, U.S. EPA
Nonrulemaking Docket No. EPA-HQ-OAR-2022-0332 ...................................................4

CARB, Proposal to Permanently Adopt the Emergency Vehicle Emissions
Regulations (April 3, 2026).............................................................................................8

U.S. EPA, "Vehicle Emissions California Waivers and Authorizations," *Heavy-Duty
On-Board Diagnostics* ...................................................................................................4

U.S. EPA Nonrulemaking Docket A 97 20, Doc. No. EPA-HQ-OAR-1997-0062-0043 ....................23

## Rules

Fed. R. Civ. P. 56(a)...........................................................................................................9

Fed. R. Civ. P. 56(e)...........................................................................................................9

## Treatises

Black's Law Dictionary (4th ed. 1968)................................................................................24

## Regulations

50 Fed. Reg. 35,122, 35,123 (Aug. 29, 1985).....................................................................12

55 Fed. Reg. 28,825 (July 13, 1990) ..................................................................................12

66 Fed. Reg. 7,751, 7,752 (Jan. 25, 2001) .........................................................................23

78 Fed. Reg. 44,112 (July 23, 2013) ..................................................................................12

78 Fed. Reg. 2112, 2120 (Jan. 9, 2013) ...............................................................................7

81 Fed. Reg. 78,149 (Nov. 7, 2016).....................................................................................4

88 Fed. Reg. 20,688 (Apr. 6, 2023) ...........................................................................................8

Cal. Reg. Notice Register 2025, 1322 Vol. 42-Z (Oct. 17, 2021) ..........................................6

CARB, Final Regulation Order for Phase 2 Greenhouse Gas Regulations and Tractor-
   Trailer GHG Regulations, A-2, (posted Feb. 7, 2019).....................................................7

**Constitutional Provisions**

U.S. Const. art. VI...............................................................................................................1, 25

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

**INTRODUCTION**

Plaintiffs ask this Court to resolve a purely legal question: Can Defendants adopt or attempt to enforce emissions standards and certification requirements for new heavy-duty vehicles and engines without a waiver of federal preemption, despite being forbidden to do so by Section 209 of the Clean Air Act? In short: No. Defendants' conduct not only violates the Clean Air Act, but it contravenes the constitutional principle that federal law is "the supreme Law of the Land." U.S. Const. art. VI.

Defendants' own public-record documents establish that they have engaged in a continuous course of conduct to impermissibly sidestep federal preemption by requiring that Plaintiffs conform to California's preempted standards before selling heavy-duty trucks and engines in the state. Through an Executive Order, Manufacturers Advisory Correspondences, the Clean Truck Partnership ("CTP"), and an Emergency Rulemaking, Defendants have attempted to impose preempted regulations and certification requirements on Plaintiffs. If Plaintiffs do not comply with these illegal mandates, they risk being excluded from the California marketplace and exposed to significant civil penalties. The California Air Resources Board (CARB), through its Executive Officer Steven Cliff, and Governor Newsom have also pledged to shut out noncompliant manufacturers in future regulatory proceedings and exclude them from state purchasing and incentive programs.

While Defendants insist that Plaintiffs must follow CARB's standards and certification requirements, the U.S. Department of Justice has issued cease-and-desist letters to Plaintiffs stating that those same California standards are invalid and unlawful, such that only the federal regulations apply, and that the CTP—a cornerstone of CARB's enforcement efforts—is itself preempted by federal law. Plaintiffs are caught between two sovereigns whose regulatory requirements are irreconcilable.

Plaintiffs satisfy all three requirements for declaratory relief.[1] Plaintiffs have demonstrated the existence of an actual controversy, in which a declaratory judgment would clarify the parties' legal relations or resolve the uncertainty underlying the dispute, and advanced a prevailing argument on the merits. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005); 28 U.S.C. § 2201.

---

[1] Plaintiffs' amended complaint also seeks injunctive relief. *See* First Am. Compl., Dkt. 118 at 49–50. To streamline the issues before the Court, Plaintiffs pursue only declaratory relief on this motion and will turn to the injunctive remedy after a ruling on this motion.

1

To plan their businesses with certainty, Plaintiffs need a declaratory judgment clarifying their federal right to sell trucks in California without certifying to or complying with preempted emissions standards. And on the merits, the undisputed facts and public records establish that Plaintiffs prevail on all of their claims as a matter of law. This Court should grant summary judgment for Plaintiffs.

**FACTUAL AND LEGAL BACKGROUND**

Section 209(a) of the Clean Air Act expressly prohibits state regulation of emissions from new motor vehicles and engines: "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a). This language vests exclusive regulatory authority in EPA, foreclosing state-by-state emissions regimes. Defendants agree that Section 209(a)'s express preemption provision is lawful and constitutional. *See* Defs.' Opp. to Pls.' Prelim. Inj. Mot., Dkt. 73, at 3.

Congress created a single exception to Section 209(a)'s broad preemption regime: A U.S. Environmental Protection Agency (EPA) preemption waiver under Section 209(b). 42 U.S.C. § 7543(b). Under this section, California may adopt or attempt to enforce emissions standards *only* if EPA grants a waiver after applying the statutory criteria set forth in Section 209(b). 42 U.S.C. § 7543(b)(1). Absent such a waiver, express preemption is absolute. 42 U.S.C. §§ 7543(a)–(b); *see also* Defs.' Mem. ISO Mot. to Dismiss Pls.' Compl., Dkt. 78, at 2 (Defendants acknowledging same).

*Regulatory Background*

CARB adopted a series of emissions standards applicable to the heavy-duty vehicles and engines manufactured by Original Equipment Manufacturers (OEMs), including Plaintiffs. For three of these standards, CARB initially sought and obtained EPA preemption waivers. But those waivers were subsequently disapproved by superseding federal statutes:

**1. Advanced Clean Trucks** required manufacturers to sell increasing percentages of zero-emissions vehicles year-over-year. Cal. Code Regs. tit. 13, §§ 1963.1, 1963.2.

**2. Omnibus Low NOx** reduced heavy-duty vehicles and engine tailpipe emissions standards for oxides of nitrogen (NOx) and particulate matter. Cal. Code Regs. tit. 13, § 1956.8; *see also* CARB, Omnibus Low NOx Final Regulation Order, Title 13 (Date of Hearing: Aug. 27, 2020),

2

https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2020/hdomnibuslownox/froa-1.pdf, [https://perma.cc/8TMW-3TXY] (amendments to § 1956.8 showing increased stringency of engine emissions standards).

**3. Advanced Clean Cars II** included evaporative emissions and refueling emissions standards applicable to heavy-duty vehicles, as well as medium-duty on-board diagnostics standards. Cal. Code Regs. tit. 13, §§ 1976, 1978, 1968.2.

On June 12, 2025, the President signed Joint Resolutions (the "CRA Resolutions"), passed by both chambers of Congress, stating that the Section 209(b) waivers for Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II have "no force or effect." Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025); Pub. L. No. 119-16, 139 Stat. 66 (June 12, 2025); Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025); *see also* Dkt. 73 at 10 (defendants conceding same).

For three other regulatory programs impacting Plaintiffs, CARB never obtained a preemption waiver:

**1. Advanced Clean Fleets** requires, among other things, that manufacturers sell exclusively zero-emission vehicles in California beginning in model year 2036. Cal. Code Regs. tit. 13, § 2016(c). CARB initially sought a waiver for Advanced Clean Fleets but withdrew its request in January 2025. CARB, Withdrawal of California's Request for a Waiver (Jan. 13, 2025), Doc. No. EPA-HQ-OAR-2023-0589-0470, U.S. EPA Nonrulemaking Docket No. EPA-HQ-OAR-2023-0589, https://www.reg-ulations.gov/document/EPA-HQ-OAR-2023-0589-0470. CARB does not have a waiver for the 100 percent zero-emission vehicle sales requirement. Statement of Undisputed Facts (SUF) ¶ 1; *see also* Defs.' Opp. to PI Mot., Dkt. 73, at 32 (CARB admitting same).[2]

---

[2] In May 2025, a court in this District ordered CARB to initiate a rulemaking repealing the portion of Advanced Clean Fleets mandating that private fleet operators purchase zero-emissions vehicles; if such rulemaking is approved by CARB, it must submit the rulemaking for approval by August 31, 2026. Stipulation & Order to Hold Case in Abeyance Pending Outcome of Rulemaking ¶ 1, *Nebraska v. Cliff*, No. 2:24-cv-01364-TKN-CKD (E.D. Cal.) (order entered May 5, 2025), ECF No. 95. But CARB has not repealed the manufacturer-side sales requirement, nor is it obligated by that order to do so. And although the same order prohibits CARB from "enforc[ing] the … 100% zero-emission-vehicle sales [requirement] beginning with model year 2036 … until CARB obtains a Clean Air Act preemption waiver from EPA for that regulatory requirement," *id.* at ¶ 3, less than six months after that order was entered, CARB did exactly what it forbids by seeking specific performance of the CTP—and, thus, the

---

3

**2. Phase 2 Greenhouse Gas Regulations** reduce greenhouse gas (GHG) emissions standards for heavy-duty vehicles and engines. Cal. Code Regs. tit. 17, § 95663. This Court has already found (and Defendants have admitted) that CARB did not submit a waiver request to EPA for these regulations. SUF ¶ 2; *see also* Dkt. 94 at 8 (Court finding same); Decl. of Robin U. Lang ISO Defs.' Opp. to Pls.' Prelim. Inj. Mot., Dkt. 73-30, at ¶ 9 (CARB admitting same).

**3. Heavy-Duty On-Board Diagnostic Regulations** apply to self-diagnostic systems related to emissions performance. Cal. Code Regs. tit. 13, § 1971.1. The last separate waiver for these regulations covered amendments through 2013. 81 Fed. Reg. 78,149 (Nov. 7, 2016); *see also* U.S. EPA, "Vehicle Emissions California Waivers and Authorizations," *Heavy-Duty On-Board Diagnostics*, https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations, [https://perma.cc/7HD9-AXER] (last visited Mar. 28, 2026) (showing no heavy-duty on-board diagnostics waivers covering any post-2013 amendments). Later, CARB substantively amended these regulations two more times, in 2016[3] and 2019.[4] CARB's Omnibus Low NOx waiver request to EPA did not discuss or include the text of the 2016 or 2019 amendments, but did seek a waiver for amendments adopted in 2020. CARB, Omnibus Low NOx Waiver Request to U.S. EPA at 3–4, 17–18, 65, Doc. No. EPA-HQ-OAR-2022-0332-0009, U.S. EPA Nonrulemaking Docket No. EPA-HQ-OAR-2022-0332, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0009; https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2020/hdomnibuslownox/froa-1.pdfhttps://perma.cc/8TMW-3TXY*id.* Enclosure 12, Text of Omnibus Low NOx at 43–48, Doc. No. EPA-HQ-OAR-2022-0332-0005, https://www.regulations.gov/document/EPA-HQ-OAR-2022-0332-0005. The waiver for Omnibus Low NOx was disapproved by federal statute. *See supra* at 3.

---

ACF 2036 combustion ban—in state court, *see* Order Granting in Part and Denying in Part Pls.' Mot. for Prelim. Inj., Dkt. 94, at 31–32. The State of Nebraska and others agree and have sought relief. Notice of Motion and Motion for Injunction to Enforce Stipulation and Order, or in the Alternative, For Order to Show Cause, *Nebraska v. Cliff*, No. 2:24-cv-01364-TLN-CKD (E.D. Cal. filed Apr. 3, 2026), ECF No. 106.

[3] CARB, On-Board Diagnostic Systems II, https://www.arb.ca.gov/regact/2015/obdii2015/obdii2015.htm [https://perma.cc/TV8H-HKLB] (documenting adoption of standards on July 25, 2016).

[4] CARB, Heavy-Duty On-Board Diagnostic System Requirements 2018, https://ww2.arb.ca.gov/rulemaking/2018/heavy-duty-board-diagnostic-system-requirements-2018, [https://perma.cc/P65V-YR8Q] (documenting adoption of standards on Oct. 3, 2019).

4

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

***The Clean Truck Partnership***

In July 2023, CARB signed the CTP. Dkt. 118-1 at 4; SUF ¶ 3. The CTP contains recitals of CARB's policy goals, including "ensuring" the effectiveness of "current and future CARB regulations." CTP at 1; SUF ¶ 4. The CTP outlines a plan for CARB to undertake certain regulatory actions, including providing four-year lead-time for future emissions standards as required by the Clean Air Act, CTP ¶ 5, SUF ¶ 5, and proposing regulatory amendments harmonizing California's standards with EPA's, CTP ¶¶ 1(iii), 7, SUF ¶ 6

The CTP also imposes regulatory requirements on manufacturers. Specifically, it dictates that even if CARB lost federal authority for Advanced Clean Trucks, Omnibus Low NOx, or the 100 percent zero-emission vehicle sales requirement of Advanced Clean Fleets (also incorporated by reference into Advanced Clean Trucks) due to "the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations," manufacturers still have to comply with those standards. CTP ¶ 2; SUF ¶¶ 7–9. And it provides that "California will maintain its certification program" and requires manufacturers to provide CARB with data and documents that "demonstrate compliance with applicable California requirements." CTP, App'x B, at ¶ 1; SUF ¶ 11. CARB explicitly used the CTP to effectuate certification in its August 2025 Manufacturers Advisory Correspondence, discussed *infra* at 5, stating, "Manufacturers who are parties to the [CTP] may also continue to seek, and CARB will continue to process[] applications for[,] CARB certification on the terms provided for in that agreement." Dkt. 58-2 at 2; SUF ¶ 16.

After the CRA Resolutions were enacted, Plaintiffs received letters from the U.S. Department of Justice (DOJ) stating that the CTP is a preempted attempt to enforce emissions standards that lack a waiver under Section 209(b). *See, e.g.*, Dkt. 118-2 at 2; SUF ¶ 12. In the letter, DOJ says to Plaintiffs, "<u>immediately cease and desist your compliance with both the [CTP] and its preempted state vehicle emission regulations</u>." SUF ¶ 13.

***Defendants' Attempts to Enforce Preempted Regulations***

Defendants have attempted to enforce the preempted emissions standards through a variety of mechanisms. In May 2025 and August 2025, CARB issued "Manufacturers Advisory Correspondence" ("MAC") documents—*i.e.*, guidance to the regulated industry. Dkt. 23-16 (May 2025 MAC); Dkt. 58-

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

2 (August 2025 MAC). The MACs mandate that manufacturers obtain certification from CARB prior to sale of new vehicles or engines. Dkt. 23-16 at 2–3; Dkt. 58-2, at 3; SUF ¶¶ 14–15. In the August 2025 MAC, CARB threatened retroactive enforcement of the preempted emissions standards should CARB prevail in its legal challenges to them. Dkt. 58-2 at 3; SUF ¶ 18.

In response to this lawsuit, CARB escalated its campaign of threats through an Emergency Rulemaking. CARB Emergency Vehicle Emissions Rulemaking Public Notice, Exhibit B3 to Decl. of Robin U. Lang ISO Defs.' Opp. to Prelim. Inj. Mot. ("Lang Decl. Exhibit B3"), Dkt. 73-33; SUF ¶ 19. The Emergency Rulemaking "adopt[s] new sections" of the regulations in an attempt to resurrect standards previously removed from the California Code of Regulations. Lang Decl. Exhibit B3, Dkt. 73-33 at 1; SUF ¶¶ 20–21; *see, e.g.*, Cal. Code Regs. tit. 13, § 1956.8.1 (listing adoption date of Oct. 2, 2025 with no predecessor regulation); Cal. Reg. Notice Register 2025, 1322 Vol. 42-Z (Oct. 17, 2021), https://oal.ca.gov/wp-content/uploads/sites/166/2025/10/2025-Notice-Register-No.-42-Z-October-17-2025.pdf, [https://perma.cc/8W7D-87GZ] (stating that the "emergency rulemaking action by [CARB] adopts criteria pollutant standards and associated on-board diagnostic standards"). On March 26, 2026, CARB approved the permanent adoption of the Emergency Rulemaking. SUF ¶ 23.

As CARB explains in the Emergency Rulemaking Notice, prior to Omnibus Low NOx and Advanced Clean Cars II, CARB had "earlier-adopted" vehicle and engine emissions standards. Lang Decl. Exhibit B3, Dkt. 73-33, at 2; SUF ¶ 21. Upon adoption, Omnibus Low NOx and Advanced Clean Cars II "displaced" the earlier-adopted standards, *id*.; specifically, Omnibus Low NOx and Advanced Clean Cars II revised the "earlier-adopted standards" to ensure that they no longer applied to new vehicles and engines. *See, e.g.*, CARB, Omnibus Low NOx Final Regulation Order, Title 13 (Date of Hearing: Aug. 27, 2020), https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2020/hdomni-buslownox/froa-1.pdf, [https://perma.cc/8TMW-3TXY] (amendments to § 1956.8(a)(2)(A) changing emissions standards applicability from "2007 and subsequent" to "2007–2023" heavy-duty diesel engines); CARB, Advanced Clean Cars II Final Regulation Order, Title 13, Amendments to Sections 1900 *et al.*, https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2022/accii/2accii-

fro_lev_regs_etal.pdf, [https://perma.cc/5GYL-WPK5] (amendments to § 1976 changing test procedure applicability from "2001 and Subsequent" to "2001 through 2025" heavy-duty vehicles).[5] Thus, to restore the "earlier-adopted standards," the Emergency Rulemaking "adopt[ed]" them as "new sections" of the California Code of Regulations and made the old rules apply to new model years. *See, e.g.*, Cal. Code Regs. tit. 13, § 1956.8.1(a)(2)(A) (promulgating emissions standards for "2007 and subsequent" model year heavy-duty diesel engines with immediate effect).

In doing this, the Emergency Rulemaking jams together a hodgepodge of separate earlier emissions standards, including NOx emissions standards for "2007 and subsequent" model year heavy-duty diesel engines (Cal. Code Regs. tit. 13, § 1956.8.1(a)(2)(A)) and "2008 and subsequent" heavy-duty Otto-cycle engines (Cal. Code Regs. tit. 13, § 1956.8.1(c)(1)(B)); carbon dioxide ($CO_2$) emissions standards for "2017 and later" heavy-duty diesel engines (Cal. Code Regs. tit. 13, § 1956.8.1(a)(7)); $CO_2$ emissions standards for "2014 and subsequent" model year heavy-duty vehicles (Cal. Code Regs., tit. 17, § 95663.0.1(a)); and on-board diagnostic standards with requirements for "2016 and subsequent" model year heavy-duty engines (Cal. Code Regs. tit. 13, § 1971.1.1).

CARB has not requested an EPA waiver for the combination of modified rules adopted in the Emergency Rulemaking. SUF ¶ 24. CARB also has not sought a determination that these rules are within the scope of an existing waiver. SUF ¶ 25.[6] But EPA approval is required here because the combination of standards in the Emergency Rulemaking is a new emissions standard applying for the first time to new vehicles and engines.

Moreover, although CARB refers to these as "antecedent regulations," Lang Decl. Exhibit B3,

---

[5] The same is true for the way CARB's Phase 2 GHG Regulations replaced the Phase 1 GHG regulations. *See, e.g.*, CARB, Final Regulation Order for Phase 2 Greenhouse Gas Regulations and Tractor-Trailer GHG Regulations (posted Feb. 7, 2019), at A-2, https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2018/phase2/finalatta.pdf [https://perma.cc/67VN-9E6J].

[6] A within-the-scope determination is an EPA ruling that amendments to a CARB regulation fall "within the scope" of a previously granted waiver. *See, e.g.*, 78 Fed. Reg. 2,112, 2,120 (Jan. 9, 2013). Past EPA rulemakings under Section 209 recognize that all of California's regulatory amendments are subject to EPA approval; most need a new waiver, but minor technical amendments may be approved through a within-the-scope determination. *See id.* If an amendment "add[s] new or more stringent pollutant standards," a new waiver is required. *Id.* Either way, EPA action is required; it has not occurred here. SUF ¶¶ 24–25.

7

Dkt. 73-33, at 10, the standards are subject to a new condition found nowhere in the "antecedent" versions, stating that manufacturers who follow the rules adopted in the Emergency Rulemaking will nonetheless be subject to retroactive enforcement of the *preempted* standards should California's challenge to the CRA Resolutions succeed. For example, California Code of Regulations title 13, section 1956.8 provides, "[R]egulated parties may choose to follow either this section 1956.8 or section 1956.8.1," where section 1956.8.1 is the provision newly adopted in the Emergency Rulemaking. But section 1956.8 then explains, "[I]f a court of competent jurisdiction issues a final ruling that [the CRA Resolutions] are invalid or that the waivers U.S. EPA granted California [for Advanced Clean Cars II and Omnibus Low NOx] are in effect, the regulated parties are subject to the requirements of this section 1956.8 to the extent consistent with the court's final ruling." On April 3, 2026, CARB proposed additional modifications to the Emergency Rulemaking expanding the list of preempted standards subject to retroactive enforcement. SUF ¶ 26.[7] Specifically, the changes state that the rules granted a waiver on April 6, 2023 at 88 Fed. Reg. 20,688 are also subject to retroactive enforcement. SUF ¶ 27. This waiver covers, among other rules, the Heavy-Duty Vehicle and Engine Emission Warranty Regulations, as well as Advanced Clean Trucks. 88 Fed. Reg. 20,688 (Apr. 6, 2023).

In parallel to CARB's actions, Governor Newsom has also attempted to enforce preempted standards. Through Executive Order N-27-25 ("EO 27-25"), issued on June 12, 2025, Governor Newsom directed CARB to implement preempted regulations through the CTP and conditioned favorable government treatment of manufacturers on obedience to preempted regulations. Dkt. 23-17 at ¶¶ 2–3; SUF ¶¶ 28–34. First, EO 27-25 directed CARB to implement the CTP—which incorporates the preempted emissions standards included in Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Fleets—and report "manufacturer progress towards those commitments" to the Governor semi-annually. Dkt. 23-17 at ¶ 4; SUF ¶ 29. Second, EO 27-25 pressures manufacturers to certify compliance with California's preempted standards by denying privileges and opportunities to manufactur-

---

[7] *See also* CARB, Notice of Public Availability of Modified Text and Availability of Additional Documents and/or Information, Proposal to Permanently Adopt the Emergency Vehicle Emissions Regulations (April 3, 2026), https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2025/orhdlcfs/15dno-tice.pdf ("Notice of Public Availability").

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

ers who do not. SUF ¶¶ 30–34. For example, EO 27-25 explicitly directed CARB to differentiate between manufacturers in its future regulatory decisions and identify "opportunities for special considerations and flexibilities for" manufacturers that comply with the preempted standards. Dkt. 23-17 at ¶ 3(c); SUF ¶ 32.

## ARGUMENT

### I.    Plaintiffs Are Entitled to Summary Judgment Because this Case Concerns Purely Legal Questions of Federal Preemption.

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying for the Court "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323). Then, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), but rather set forth specific facts showing that there is a genuine issue for trial, Fed. R. Civ. P. 56(e). Summary judgment is especially appropriate in cases focused on legal issues, such as federal preemption cases: "Preemption is predominantly a legal question, resolution of which would not be aided greatly by development of a more complete factual record." *Atay v. Cnty. of Maui*, 842 F.3d 688, 698 (9th Cir. 2016) (affirming summary judgment that a city's ban on the cultivation and testing of plants was preempted by Plant Protection Act) (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 201 (1983)); *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 761–62 (9th Cir. 2014); *see also*, *e.g.*, *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002) (affirming summary judgment that state leg-trap ban was preempted by the Endangered Species Act); *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555 (9th Cir. 1995) (affirming summary judgment holding that claims against manufacturer were preempted by Federal Insecticide, Fungicide, and Rodenticide Act).

All of Plaintiffs' claims in this case are based on federal preemption and present pure questions of law. The adoption of CARB's regulations, the grant of waivers for certain of those regulations and

9

failure to obtain a waiver for others, and the subsequent enactment of resolutions disapproving certain waivers (all set forth in the Statement of Undisputed Facts filed herewith) are not subject to genuine factual dispute. To the extent Defendants challenge the CRA Resolutions, their challenges concern the legal effect of Congress's actions. The May and August MACs, the Emergency Rulemaking, and Governor Newsom's Executive Order are official acts whose existence and terms are undisputed. The CTP's meaning and effects are established by its text. Defendants' attempts to enforce preempted rules, including attempts to require compliance and certification, are a matter of public record. Express preemption follows directly from the statutory text of Section 209(a) and the legal effect of Congress's disapproval of the preemption waivers for Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II. No evidentiary development could alter the legal consequence of the absence of valid waivers. Because Defendants' regulations and enforcement efforts are expressly preempted as a matter of law, Plaintiffs are entitled to summary judgment.

Finally, judgment is proper as to Defendant Cliff and Defendant Newsom. Both are subject to official-capacity federal suit for declaratory relief because they have a "connection with the enforcement" of the challenged laws. *See Ex parte Young*, 209 U.S. 123, 155–57 (1908). As to Executive Officer Cliff, under his authority as the Executive Officer, CARB has attempted to enforce and put into operation preempted regulations in violation of Section 209(a). *See infra* Sections II, III.B, IV. Governor Newsom also has directed CARB to enforce the preempted rules at issue through an Executive Order, including by commanding that CARB impose detrimental regulatory treatment on vehicle and engine manufacturers that do not follow the CTP or do not certify their products in compliance with preempted CARB standards. *See infra* Section III.C. All these violations would be redressed by this Court's order adjudicating Plaintiffs' obligations under federal law.

## II.    [Count I] The Clean Air Act Preempts California's Emission Standards and Certification Requirements.

### A.  California's Emissions Standards Are Preempted.

None of California's emissions standards for heavy-duty engines or vehicles has a preemption waiver. *See supra* at 2–4, 6–8. Therefore, each standard is preempted under Section 209(a) of the Clean Air Act. 42 U.S.C. §§ 7543(a)–(b). Plaintiffs are entitled to a declaration so stating.

10

### 1.    *Waivers Disapproved by Federal Statute*

Duly enacted federal statutes dictate that the Section 209(b) waivers for Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II have "no force or effect." *See supra* at 3 (citing statutes). These legislative acts "amended the substantive environmental law"—here, the Clean Air Act—and have the full force of any other federal statute. *See Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 (9th Cir. 2019) (holding that by enacting a joint resolution under the Congressional Review Act, "Congress amended the substantive environmental law" and the resulting statute "is enforceable as a change to substantive law"). Defendants have admitted, *see supra* at 3, that Congress fulfilled the Constitution's two requirements for enacting legislation: "passage by a majority of both Houses and presentment to the President." *INS v. Chadha*, 462 U.S. 919, 958 (1983); *see also Citizens for Const. Integrity v. United States*, 57 F.4th 750, 763–64 (10th Cir. 2023) (explaining that Congress may pass laws "overriding or overruling agency rules or interpretations" regardless of "what internal parliamentary procedures Congress adopts in doing so, so long as Congress complies with the fundamental constitutional requirements of bicameralism … and presentment").[8] Accordingly, Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II have no existing EPA waiver and are preempted by Section 209(a) of the Clean Air Act as a matter of law.

### 2.    *Required Waivers Never Received*

California never obtained waivers for the emissions standards in Advanced Clean Fleets, the "Phase 2" Greenhouse Gas Regulations, and the 2016 and 2019 amendments to the Heavy-Duty On-Board Diagnostic Regulations—meaning that all these rules are preempted by Section 209(a) as well. *See supra* at 3-4.

The Emergency Rulemaking also lacks a preemption waiver. *See supra* at 6–8. The Emergency Rulemaking adopts several separate superseded standards, stitches them together in a single rulemaking in a never-before-deployed combination, and applies them prospectively to model year 2026 and subsequent model year vehicles with no lead time. *Id.* It also adds new language to the preempted regulations to codify retroactive enforcement—and warns that compliance with the newly adopted standards

---

[8] Further, the jurisdiction-stripping provision of the Congressional Review Act bars judicial review of any "determination, finding, action, or omission" thereunder. 5 U.S.C. § 805.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

is insufficient to avoid retroactive enforcement. *Id*.; *see also, e.g.*, Cal. Code Regs. tit. 13, § 1956.8.

The fundamental premise of Section 209(a), however, is that a State must have a waiver *before* it can "adopt or attempt to enforce" a new rule—and the Emergency Rulemaking is a new rule. 42 U.S.C. § 7543(a). But even if the Emergency Rulemaking were merely a *modified* rule, it would still require either a new waiver or a determination by EPA that it is "within the scope" of an existing waiver. *See supra* at 7. And it is undisputed that Defendants neither sought a new waiver nor a "within the scope" determination from EPA for the Emergency Rulemaking.

## B. Any California Certification Requirement Is Preempted.

California's certification requirements and conditions precedent to the sale of new heavy-duty vehicles and engines are preempted by the second clause of Section 209(a), which separately and in-dependently bars state requirements for "certification, inspection, or any other approval relating to the control of emissions" absent a waiver. 42 U.S.C. § 7543(a). Since the early days of Section 209, EPA has implemented this statutory prohibition by allowing CARB to mandate conditions precedent, such as certification, for a particular class of vehicles *only* where the state has received a Section 209(a) preemption waiver for the emissions standards applicable to that class of vehicles. For instance, in 1985, EPA considered a waiver application for state statutory provisions requiring CARB certifications prior to sale in California. In that context, EPA explained that because California had secured a waiver for emissions standards governing a particular class of new motor vehicles, "[CARB] was free to set conditions precedent to registration, titling, and sale of motor vehicles without a separate waiver deter-mination." Final Agency Action Regarding the Motor Vehicle Provisions of the Clean Air Act, Item 6 (Conditions Precedent to the Sale, Titling, or Registration of New Motor Vehicles in California), 50 Fed. Reg. 35,122, 35,123 (Aug. 29, 1985).

EPA confirmed this reading in 1990, stating that it would not require CARB to secure a waiver for certification fees because "EPA's prior issuance of waivers for *the affected classes of vehicles and engines*, based on California's standards and/or accompanying enforcement procedures, removes the prohibitions of section 209(a) regarding such conditions precedent *for those classes*." California State Motor Vehicle Pollution Control Standards; Waiver of Federal Preemption; Notice of Determination, 55 Fed. Reg. 28,825 (July 13, 1990) (emphases added); *see also* 78 Fed. Reg. 44,112 (July 23, 2013)

("[O]nce EPA has granted California a waiver of Section 209(a)'s preemption for emissions standards and/or accompanying enforcement procedures, California may then require other such conditions precedent.").

The California Health and Safety Code mandates that new vehicles and engines receive CARB certification before they are sold in the state. Cal. Health & Safety Code, §§ 43151 & 43152. This is a paradigmatic requirement for certification as a condition precedent to sale (indeed, it was the very requirement at issue in EPA's first "condition precedent" waiver from 1985). But California cannot require certification—or any other conditions precedent to sale—for a particular class of new vehicles and engines without a valid waiver for an emissions standard applicable to that class of vehicles. As discussed above, California currently has no valid preemption waiver for any heavy-duty emissions standards. *See supra* Section II.A. As a result, California's certification requirements are preempted.

## III.   [Count II] Defendants' Attempts to Enforce Emissions Standards Are Preempted.

### A.   Statutory Framework

Section 209(a) prohibits any "attempt to enforce" an emissions standard lacking a waiver. 42 U.S.C. § 7543(a). In other words, the Clean Air Act preempts not only state emissions standards that lack valid waivers, but also any state action seeking to compel compliance with those standards. The U.S. Supreme Court has confirmed that Section 209(a)'s prohibition on "attempt[s] to enforce" sweeps broadly. In *Engine Manufacturers Association v. South Coast Air Quality Management District* (*EMA*), the Court considered whether purchase restrictions imposed on vehicle fleets were an "attempt to enforce" a "standard" within the meaning of Section 209(a). 541 U.S. 246, 255 (2004). In their analysis, the Court rejected attempts to narrow Section 209(a), explaining that "a command, accompanied by sanctions" is an "attempt to enforce" under Section 209(a). *Id*. The Court based its reasoning on the practical effect of the state rules, which the Court held could render a "manufacturer's right to sell federally approved vehicles … meaningless." *Id.* Further, the Court held, state adoption of these rules would have the "end result" of "undo[ing] Congress's carefully calibrated regulatory scheme." *Id.* The Court also found that "the term 'attempt to enforce' … is not limited to the actual imposition of penalties for violation"; rather, the broad preemptive effect of Section 209(a) also prohibits any "steps preliminary to that action." *Id.* at 257.

Thus, when identifying attempts to enforce, the governing inquiry is functional: Is the practical effect of the state action to require compliance with an emissions standard? If so, it is an unlawful "attempt to enforce." *EMA*, 541 U.S. at 255, 257; *see also Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 95 (S.D.N.Y. 2009), *aff'd on other grounds*, 615 F.3d 152 (2d Cir. 2010) (holding that a regulation is preempted if it "indirectly regulates within a preempted field in such a way that effectively mandates a specific, preempted outcome"); *In re Office of Att'y Gen. of State of N.Y.*, 269 A.D.2d 1, 7–8 (N.Y. App. Div. 2000) (holding that Section 209(a) preempted state attempts to enforce federal emissions standards framed as common law claims because "[s]tates cannot be allowed to do indirectly what they cannot do directly") (citing *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 495 (1987)).

By barring "attempts to enforce," Section 209(a) expressly prohibits States from using indirect methods to intrude on private entities' federal right to engage in federally authorized conduct. *See EMA*, 541 U.S. at 255. And the Supreme Court's opinion in *EMA* confirms that the language of Section 209(a) reaches broadly. *See* 541 U.S. at 255, 257. Section 209(a) therefore layers additional protection on top of a basic principle of federal preemption: A State may not evade the Supremacy Clause through indirect action.

In explaining preemption's restrictions on indirect regulatory action by states, the Supreme Court has repeatedly emphasized that a court must look to the substance and practical effect of a state measure rather than the label attached to it. For example, in *Morales v. Trans World Airlines, Inc.*, the Court rejected efforts by state officials to enforce airline fare-advertising guidelines through state consumer protection laws despite the Airline Deregulation Act's express preemption clause. 504 U.S. 374, 378–80 (1992). Although the states argued they were merely applying general consumer protection authority, the Court held the effort was preempted because it would effectively impose the same regulatory regime Congress had displaced—preemption cannot be avoided by recasting prohibited regulation through alternative legal mechanisms. *Id.* at 385–88. Likewise, in *Cipollone v. Liggett Group, Inc.*, the Court held that an express federal preemption clause barred certain state tort claims where those claims would functionally impose requirements concerning cigarette advertising and promotion. 505 U.S. 504, 521–24 (1992). Even though the claims arose under generally applicable state tort law, the

14

Court explained that they were preempted because liability would impose state-law "requirements or prohibitions" based on the very subject Congress had withdrawn from state control. *Id.* at 521–22; *see also In re Office of Att'y Gen. of State of N.Y.*, 269 A.D.2d at 7–8 (holding that Section 209(a) preempted state common law claims that attempted to enforce federal emissions standards). These decisions reflect a consistent rule: When Congress expressly preempts state regulation, courts must examine whether the state action, imposes or enforces the preempted requirement. If it does, the Supremacy Clause forbids the state from accomplishing indirectly what federal law prohibits it from doing directly.

Accordingly, if an emissions standard lacks a valid waiver under Section 209(b), the state is categorically barred from attempting to enforce it—which includes employing any governmental mechanism whose substance and effect is to compel compliance with it, no matter how that mechanism is styled. The Clean Air Act leaves no room for indirect enforcement through certification gatekeeping, administrative guidance, threatened penalties, contractual devices, executive directives, conditioned benefits, or any other exercise of sovereign authority. Defendants' challenged actions unlawfully attempt to compel compliance with the preempted standards.

### B.   CARB's Preempted Attempts to Enforce

#### 1.   *The Clean Truck Partnership*

This Court correctly recognized in the preliminary injunction order that CARB uses the CTP to attempt enforcement of preempted standards: By seeking to compel specific performance of the CTP through a breach-of-contract lawsuit, "CARB[] attempts to enforce at least some standards for which it admittedly never obtained preemption waivers." Dkt. 94 at 32. There, CARB "seek[s] a court order requiring … Plaintiffs to certify to CARB's standards—regardless of whether those standards were ever the subject of a preemption waiver." *Id.* at 31–32. This Court therefore found that Plaintiffs are likely to succeed on the merits of the claim that the CTP is preempted, as required for a preliminary injunction under *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). Dkt. 94 at 26, 32.

As the Supreme Court has explained, when governments "exercise [their] regulatory authority" through a contract, that contract is subject to preemption. *Am. Trucking Ass'ns, Inc. v. City of Los*

*Angeles*, 569 U.S. 641, 652 (2013). If an "agreement" with a government agency involves the state "exercis[ing] classic regulatory authority," preemption applies. *Id.* at 650. That is why the Ninth Circuit held in *Olympic Pipe Line Co. v. City of Seattle* that a municipality could not evade federal preemption by embedding displaced regulatory requirements in a franchise agreement. 437 F.3d 872, 881–82 (9th Cir. 2006). Through the CTP, CARB attempts to compel manufacturers to sell vehicles that comply with California—not federal—rules, and render "manufacturer[s'] right[s] to sell federally approved vehicles … meaningless." *See EMA*, 541 U.S. at 255. This "attempt to enforce" California regulations is preempted; the format of the CTP as an "agreement" does not alter this conclusion. *See infra* Section IV.

Defendants' litigation posture confirms the enforcement function of the CTP. Defendants have consistently argued in this litigation that the CTP is binding and enforceable, *see, e.g.*, Dkt. 84 at 5–11, and CARB even sought to compel compliance through legal process, *see* Dkt. 85. The CTP is therefore a preempted attempt to enforce standards not authorized by an EPA waiver. *See* 42 U.S.C. § 7543(a).

2.    *Retroactive Enforcement*

Starting on June 12, 2025, when the President signed the Congressional Resolutions disapproving the California preemption waivers, Plaintiffs have had a federal right to sell vehicles and engines subject only to federal constraints unless and until a waiver is granted for CARB's emissions standards. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 478–79 (2018) (explaining that valid preemption provisions "confer[] on private entities a federal right to engage in certain conduct subject only to certain (federal) constraints"). Yet CARB has continually threatened to retroactively enforce their currently preempted emissions standards. What's more, CARB has repeatedly insisted that manufacturers must follow its preempted standards *now* or risk tremendous fines *later* if the currently enacted federal law changes. This has the intended and "practical effect" of pushing manufacturers towards compliance here and now. *See Metro. Taxicab*, 633 F. Supp. 2d at 99. These retroactive enforcement threats are thus attempts to enforce preempted regulations, which are prohibited by Section 209(a).

For example, the August 2025 MAC states that CARB "reserves its right to enforce" the

16

preempted regulations for vehicles and engines that do not comply fully with CARB's preempted regulations—including if a manufacturer obtains CARB approval for an engine or vehicle under one of the MAC's "alternative pathways" that purportedly do not require compliance with preempted rules. Dkt. 58-2 at 4. This renders the "alternative pathways" mere shams, as they do not relieve Plaintiffs' uncertainty over what regulations will actually be applied to the decisions and sales that Plaintiffs make now.

In the Emergency Rulemaking, CARB codifies the threat of retroactive enforcement with the explicit threat of penalties, adding language to the California Code of Regulations cautioning that manufacturers "assume the risk" of this retroactive enforcement if they do not follow the standards explicitly preempted by Congress. Lang Decl. Exhibit B3, Dkt. 73-33, at 6. The Emergency Rulemaking therefore cannot be understood as an actual rule that OEMs can use for certification; rather, this language demonstrates it is merely another attempt to compel manufacturers to obey preempted rules. Indeed, under the Emergency Rulemaking, a manufacturer could secure CARB certification *in accordance with Defendants' regulations* and still face enforcement—not because of any alleged violation of the certification terms but because a federal court invalidates the federal statutes nullifying Defendants' preemption waivers.

### 3. *Certification*

Despite preemption of its heavy-duty emissions standards, CARB has repeatedly attempted to enforce preempted standards by imposing certification requirements on manufacturers. These certification mandates are preempted twice over by Section 209(a). First, CARB violates the prohibition on requiring conditions precedent to sale without a waiver for an underlying emissions standard. *See supra* Section II.B. Second, because certification necessitates demonstrating compliance with preempted standards, these requirements attempt to enforce preempted standards—also a violation of Section 209(a).

*The Clean Truck Partnership*. The CTP explicitly conditions manufacturers' lawful ability to sell products in California on compliance with CARB certification requirements. CTP App'x B; *see also* CTP ¶ 2. It dictates that manufacturers must "submit applications for certification including test data, certification documents, etc. to demonstrate compliance with applicable California requirements."

17

CTP App'x B at i ¶ 1. Through these mandates, it creates a regulatory structure for certification that manufacturers must follow even if CARB lacks a Section 209(b) waiver, imposing conditions precedent to sale without EPA approval in violation of Section 209(a). This structure is not merely theoretical: In the August 2025 MAC, CARB holds out the CTP as a method for manufacturers to seek certification, stating that "manufacturers may … seek" and CARB will process "applications for CARB certification on the terms provided for" in the CTP. Dkt. 58-2 at 2.

*The May 2025 and August 2025 MACs.* In its May 2025 MAC, CARB announced that certification by CARB is required to "enable lawful vehicle sales in California." Dkt. 23-16 at 2–3 (citing statutes that make it illegal to sell uncertified vehicles). Likewise, the August 2025 MAC reiterated that a CARB certification is necessary to lawfully sell vehicles in California. Dkt. 58-2 at 2–3. The August 2025 MAC went on to outline several purported "pathways" for manufacturers to obtain CARB certification for "model year 2025 and subsequent model years" that did not require compliance with the regulations preempted by the CRA Resolutions, *id.* at 2, but cautioned that following an "alternative pathway" may still result in CARB later bringing an enforcement action penalizing the manufacturer for the sale of uncertified vehicles, *id.* at 2–3.

Directing manufacturers to obtain *any* type of CARB certification to sell heavy-duty vehicles and engines when CARB has no Section 209(b) waiver applicable to the emissions standards for that class of vehicles violates Section 209(a). *See supra* Section I. This includes CARB's "alternative pathways" in the August 2025 MAC. And because the "alternative pathways" in the August 2025 MAC do not protect Plaintiffs from the risk of retroactive enforcement, they are in fact attempts to enforce the preempted standards by compelling OEMs to certify under the preempted rules.

*Emergency Rulemaking.* The Emergency Rulemaking invokes the requirement for manufacturers to obtain certification prior to selling products in California and then offers two bases for certification: Manufacturers may certify to a novel amalgamation of superseded standards allegedly resuscitated by the Emergency Rulemaking, or to the Advanced Clean Cars II and Omnibus Low NOx standards. *See* Lang Decl. Exhibit B3, Dkt. 73-33, at 6. But each of these bases are preempted under Section 209(b). *See supra* Section II.A. CARB has not sought a waiver or "within the scope" determination for the newly adopted and modified standards cobbled together in the Emergency Rulemaking. *See supra*

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

Section II.A.2. The Advanced Clean Cars II and Omnibus Low NOx standards are preempted by federal statute. *See supra* Section II.A.1. Without a waiver, these emissions standards are preempted and cannot be the basis for requiring certification. *See supra* Section II.B. Therefore, imposing certification requirements under any of these standards violates Section 209(a)'s prohibitions: First, by requiring certification for a class of vehicles without a corresponding emissions standard authorized by EPA, and second, by attempting to enforce preempted standards by requiring certification under those standards.

### C.  Governor Newsom's Preempted Attempts to Enforce

By using legal or economic leverage to induce manufacturers to conform their conduct to standards that Congress has expressly withdrawn from state control, Governor Newsom's Executive Order (EO 27-25) likewise operates as an unlawful "attempt to enforce" preempted emissions standards within the meaning of Section 209(a). *See EMA*, 541 U.S. at 256–57 (holding that purchase mandate imposed on fleets "effectively compels" manufacturers to produce certain vehicles and therefore is an attempt to enforce standards contrary to Section 209(a)); *Metro. Taxicab Bd. of Trade*, 633 F. Supp. 2d at 95 (explaining that local laws that "effectively mandate[] a specific, preempted outcome," even indirectly, are preempted).

First, in EO 27-25, the Governor directs CARB to continue implementing the CTP and the regulatory architecture on which that framework is predicated—an architecture built around the very standards that Section 209(a) renders unenforceable absent a waiver. *See* Dkt. 23-17 at ¶ 4. In doing so, EO 27-25 preserves and operationalizes a regime that requires regulated entities to conform to California-specific emissions requirements, notwithstanding Congress's command that States "shall not adopt or attempt to enforce" such standards for new motor vehicles. 42 U.S.C. § 7543(a).

Next, through EO 27-25, the Governor wields the State's procurement apparatus, incentive programs, and regulatory flexibilities to compel adherence to preempted standards. Dkt. 23-17 at ¶ 3. By conditioning access to these substantial state benefits, and the competitive advantages they confer, on compliance with CARB's prohibited emissions criteria, EO 27-25 leaves Plaintiffs with the same Hobson's choice imposed by CARB's regulatory conduct: Comply with preempted standards today or forfeit meaningful economic opportunities and regulatory accommodations tomorrow. Tying eligibility for state programs—including preferential treatment when promulgating regulations—to compliance

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

with emissions standards is "a command, accompanied by sanctions," that manufacturers must conform with those standards. *See EMA*, 541 U.S. at 255. As the Supreme Court has recognized, where a state imposes sanctions for noncompliance with an emissions standard, this is an "attempt to enforce" prohibited by Section 209(a). *Id.* Threatened sanctions need not become actual sanctions for the state action to intrude on the ground that Section 209(a) reserves for federal control: An "attempt to enforce" includes "steps preliminary to" imposing penalties. *Id.* at 257. Because EO 27-25 takes steps preliminary to imposing sanctions for noncompliance with preempted standards, it is a prohibited attempt to enforce those standards.

The State's framing of EO 27-25 as an exercise in procurement planning is immaterial. The Supreme Court rejected similar attempts to recharacterize regulatory pressure as procurement or operational policy in *EMA*, reasoning that preemption turns on the function of the state action, not its label. *See* 541 U.S. at 255. Measures driving adherence to emission characteristics, *id.* at 252, including through "purchase requirements," *id.* at 254, are attempts to enforce standards for Section 209(a) purposes if they are implemented through a mandate. *Id.* at 254–55. Here, EO 27-25 pledges punitive economic and regulatory treatment for manufacturers who diverge from preempted rules. *See* Dkt. 23-17 at ¶ 3. This is "an offer which cannot, in practical effect, be refused" without incurring substantial disadvantage, constituting an "effective mandate." *Metro. Taxicab*, 633 F. Supp. 2d at 99. Regardless of how California styles EO 27-25, its effect is to reinforce and extend a preempted emissions regime by conditioning access to state programs on compliance with those same standards. Section 209(a) does not permit States to attempt to enforce preempted regulations in this manner.

**IV.    [Count III] The Clean Truck Partnership Is Preempted.**

Through the CTP, a state regulator—CARB—demands that a regulated industry—manufacturers of heavy-duty trucks and engines—comply with specific emissions standards and certification requirements. CTP ¶ 2. As a regulator's instrument to require an industry's compliance with preempted regulations, the CTP is a state attempt to enforce emissions standards without a waiver, in violation of Section 209(a). *See Am. Trucking Ass'ns*, 569 U.S. at 650 (explaining that a contract with a government "acting in a regulatory rather than proprietary mode" is subject to preemption); *supra* Section III.B.1 (describing CARB's attempts to enforce preempted standards via the CTP).

20

In finding that Plaintiffs were likely to succeed on the merits of this claim, this Court correctly observed that CARB's demand for specific performance of the CTP "*attempts to enforce* at least some standards for which [CARB] admittedly never obtained preemption waivers." Order on Mot. for Prelim. Inj., Dkt. 94, at 32 (emphasis added). Any "attempt to enforce" without a waiver is barred by Section 209(a). 42 U.S.C. § 7543(a); *supra* Section III.B.1.

The CTP concerns compliance with CARB emissions standards and, therefore, is a "classic" exercise of CARB's "regulatory authority." *Am. Trucking Ass'ns*, 569 U.S. at 650. The CTP requires manufacturers of heavy-duty trucks and engines "to meet, in California, the relevant provisions of the CARB regulations set forth [therein]," CTP ¶ 2, and specifically, to satisfy a collection of now-preempted emissions standards, including Advanced Clean Trucks, Omnibus Low NOx, and the 100 percent zero-emission vehicle sales mandate in Advanced Clean Fleets, CTP App'x B, at i–ii. When direct enforcement of emissions standards is barred, Paragraph 2 and Appendix B of the CTP supply an alternative means of requiring compliance, thereby "undo[ing] Congress's carefully calibrated regulatory scheme." *EMA*, 541 U.S. at 255.

To "demonstrate compliance" with the CTP's enumerated emissions standards, manufacturers are "required to submit applications for certification including test data, certification documents, etc." CTP App'x B, at i. CARB has explicitly invoked the CTP as the method for manufacturers to obtain certification—*i.e.*, regulatory approval—of new vehicles and engines in the August MAC. Dkt. 58-2 at 2 (stating manufacturers "may … continue to seek … CARB certification on the terms provided for" in the CTP). Failure to follow the emissions standards set forth in the CTP results in "non-compliant" sales. CTP, App'x A, n.1. Certification authority, and the power to withhold or condition it, are regulatory functions. They are not remedies a private party would possess in an ordinary commercial contract. *Am. Trucking Ass'ns*, 569 U.S. at 649–50.

In exchange for the manufacturers' commitments in the CTP, the "consideration" CARB purports to provide consists entirely of regulatory commitments—agreeing to initiate rulemakings, amend and harmonize emissions standards with federal requirements, and provide compliance flexibility and lead time through future regulatory action. *See, e.g.*, CTP ¶¶ 1, 5, 6, App'x A, App'x C. And the CTP's stated purpose is a policy goal: To ensure "current and future CARB regulations affecting new [heavy-

21

duty] vehicles and engines will achieve significant reductions of air pollutants." CTP at 1.

Underscoring that this is all regulatory in nature, the CTP contains no contract remedies to enforce manufacturers' obligations; instead, it incorporates penalty-carrying regulatory provisions. *See* CTP, App'x B, at i–ii nn.1–5. As this Court previously observed, the CTP lacks enforcement or damages terms, but does dictate that manufacturers that violate the CTP will be "non-compliant," CTP, App'x A, at i nn.1–2—in other words, violating the CTP leads to *regulatory* non-compliance. *See* Dkt. 94 at 12 (noting the CTP "does not include any enforcement or penalty provisions"); *id*. at 12 n.11 (observing that, where a signatory did not comply with Appendix A legacy caps, the CTP states that such sales are "non-compliant"). The Ninth Circuit has held that a state's use of civil enforcement mechanisms, unavailable to private parties, shows the state acting as a regulator as opposed to a market participant. *Airlines for Am. v. City & Cnty. of San Francisco*, 78 F.4th 1146, 1153–54 (9th Cir. 2023).

Thus, in the CTP, CARB "has not acted as a private party, contracting in a way that the owner of an ordinary commercial enterprise could mimic." *Am. Trucking Ass'ns*, 569 U.S. at 651; *see also Airlines for Am.*, 78 F.4th at 1153–54 (holding that city government was not acting as a market participant where challenged arrangement depended on regulatory authority unavailable to private actors). The same is true here. The CTP's structure and operation are inseparable from CARB's regulatory powers over vehicle emissions, certification, and sales. That is regulatory conduct, not proprietary market participation. The CTP exercises CARB's "classic regulatory authority," *Am. Trucking Ass'ns*, 569 U.S at 650, compelling manufacturer compliance with preempted standards. *See* CTP ¶ 2 & App'x B. The CTP "functions as part and parcel of a governmental program wielding coercive power over private parties." *Id*. And because that coercive power is exercised in a domain reserved for the federal government, the CTP is preempted.

CARB's use of the CTP as an attempt to enforce standards stands in stark contrast to other agreements between CARB and members of regulated industry, particularly the contracts Defendants have repeatedly analogized to, those at issue in *Association of International Manufacturers, Inc. v. Commissioner, Massachusetts Department of Environmental Protection*, 208 F.3d 1, 7 (1st Cir. 2000)

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC

(*AIAM*).[9] At the outset, *AIAM* predates decisions by the Supreme Court in *American Trucking* and by the Ninth Circuit in *Airlines for America* and *Olympic Pipe Line* Co. It also asked a question far afield from the preemption at issue here: Whether, under Section 177 of the Clean Air Act, Massachusetts legislatively could adopt the emission requirements reflected in contracts between automakers and CARB. *Id.* at 8.

In any event, the memoranda of agreement (MOA) at issue in *AIAM* were fundamentally different than the CTP, in ways that support different legal treatment. *See* Decl. of Stacie Fletcher ISO Pls.' Mot. for Summ. J. ("Fletcher Decl."), Ex. 1. The MOA did not incorporate or mandate compliance with regulatory terms—instead, California and certain manufacturers agreed to voluntary targets for zero-emission vehicles to encourage development of the technology and market for battery electric vehicles. *AIAM*, 208 F.3d at 6; Fletcher Decl. Ex. 1, MOA § I.D.2. But the CTP directly incorporates and demands obedience to regulations. *E.g.*, CTP ¶ 2. Because noncompliance with the CTP would constitute regulatory noncompliance, the CTP is regulatory, not contractual, behavior by CARB—the dispositive factor in determining whether preemption applies. *See Am. Trucking Ass'ns*, 569 U.S. at 650 (contract between government authority and private parties that "functions as part and parcel of a governmental program wielding coercive power over private parties" is subject to preemption); *Airlines for Am.*, 78 F.4th at 1152 (juxtaposing "government-imposed polices prescribing binding standards of conduct" with "contractual commitments voluntarily undertaken") (quoting *Am. Trucking Ass'ns*, 569 U.S. at 649).

The fundamental distinction between the MOA in *AIAM* and the exercise of regulatory authority at issue here is also demonstrated by the completely different remedies provided in the agreements. The CTP neither contemplates nor includes *contract-based* remedies. Instead, the CTP incorporates penalty-bearing *regulatory* provisions. CTP App'x B, at i–ii nn.1–5. But in *AIAM*, the First Circuit

---

[9] In 2001, EPA "examined" the memoranda of agreement (MOA) discussed in *AIAM* in a within-the-scope determination for CARB's zero-emission vehicle program. 66 Fed. Reg. 7,751, 7,752 (Jan. 25, 2001). Accordingly, EPA published the "Master Memorandum of Agreement" between CARB and the vehicle manufacturers to the docket associated with their determination. U.S. EPA Nonrulemaking Docket A 97 20, Doc. No. EPA-HQ-OAR-1997-0062-0043, https://www.regulations.gov/document/EPA-HQ-OAR-1997-0062-0043. A copy is attached to the accompanying Fletcher Declaration as Exhibit 1.

23

explained that the MOA between automakers and CARB contained "contractual remedies in the event of nonperformance." *AIAM*, 208 F.3d at 8. The MOA included a specific "Enforcement" section defining the procedure for determining breach along with liquidated damages if the manufacturers failed to comply with their obligations. Fletcher Decl. Ex. 1, MOA § V.3.B.

Moreover, the mechanics of the CTP's imposition of standards underscores its regulatory function. Defendants themselves define "adopt" for purposes of Section 209(a) as putting regulations "into effective operation." Defs.' Reply ISO Mot. to Dismiss U.S. Compl. in Intervention, Dkt. 102 at 4 (quoting Black's Law Dictionary (4th ed. 1968)). Under this logic, however flawed, that is precisely what the CTP does. The regulated parties must comply with the enumerated emissions standards and certification requirements "irrespective of the outcome of any litigation challenging the waivers or authorizations for those regulations or of CARB's overall authority to implement those regulations." CTP ¶ 2. Accordingly, by Defendants' own definition of the term, the CTP *adopts* regulations, rendering it subject to the preemptive effect of Section 209(a).

Defendants cannot sidestep preemption by attempting to reframe the CTP's exercise of regulatory enforcement as merely a commercial contract. The Supremacy Clause does not permit a State to evade preemption by masking regulatory behavior in the language of a contract. *See Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 879–83 (9th Cir. 2006) (holding that a municipality could not enforce contractual safety provisions where doing so would impose federally preempted regulatory standards). Because damages function as "a potent method for governing conduct and controlling policy," "compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959) (applying this concept to state tort claims); *Cipollone*, 505 U.S. at 521 ("As we noted … '[state] regulation can be as effectively exerted through the award of damages as through some form of preventive relief.'") (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)). A state-law duty that depends on compliance with a federally preempted requirement cannot survive preemption. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623–24 (2011) ("When a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy

those state duties for pre-emption purposes.").

Federal law is "the supreme Law of the Land," U.S. Const. art. VI, and where Congress has expressly preempted state law—as it has done here in the Clean Air Act and with the revocation of EPA waivers by federal statute—federal law controls. *See, e.g.*, *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022). CARB is prohibited from adopting or attempting to enforce the standards propped up by the CTP. *See supra* Sections II, III. It cannot use the CTP to tunnel through the barrier of preemption and reach the same prohibited result. "[A] government official cannot do indirectly what she is barred from doing directly." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). The Supremacy Clause analysis turns on the substance of the obligation and the source of authority invoked, not the label affixed to the instrument.

Even if the CTP could be treated as an ordinary contract, it cannot be enforced insofar as enforcement would require compliance with obligations that conflict with federal law. *See Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543 (2004) ("[A] violation of federal law is a violation of law for purposes of determining whether or not a contract is unenforceable[.]"); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) ("[O]ur cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law.").

## CONCLUSION

Plaintiffs have a federal right, today, to sell products in accordance with federal laws that preempt California's regulations. *See Murphy*, 584 U.S. at 478–79. Those federal laws are not enjoined by any court, and unless and until they are, California's agencies and officials are bound to adhere to them. *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000); *see also United States v. Howald*, 104 F.4th 732, 736 (9th Cir. 2024) (noting "presumption of constitutionality" for federal legislation). Defendants are no exception. Yet CARB continually attempts to enforce preempted standards in myriad ways, including through the MACs and the CTP. And Governor Newsom has issued "command[s], accompanied by sanctions," that also attempt to enforce CARB's preempted rules. *See EMA*, 541 U.S. at 255. Plaintiffs are entitled to declaratory relief that upholds the Supremacy Clause and vindicates their federal rights.

//

Dated:  April 20, 2026

Respectfully submitted,

_____

BENJAMIN WAGNER, SBN 163581

**GIBSON, DUNN & CRUTCHER LLP**

BENJAMIN WAGNER, SBN 163581

310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5395
Facsimile:    640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301

One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8293
Facsimile:    415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER (*pro hac vice*)
MIGUEL A. ESTRADA (*pro hac vice*)
JACOB T. SPENCER (*pro hac vice*)
VERONICA J.T. GOODSON, SBN 314367

1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone:    202.955.8500
Facsimile:    202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
JSPencer@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

/s/ Robin M. Hulshizer
(as authorized on April 20, 2026)
ROBIN M. HULSHIZER, SBN 158486

**LATHAM & WATKINS LLP**

ROBIN M. HULSHIZER, SBN 158486
ARTHUR FOERSTER (*pro hac vice*)
KEVIN M. JAKOPCHEK (*pro hac vice*)

330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com

BELINDA S. LEE, SBN 199635

/s/ Joseph A. Ostoyich
(as authorized on April 20, 2026)
JOSEPH A. OSTOYICH (*pro hac vice*)

**CLIFFORD CHANCE LLP**

JOSEPH A. OSTOYICH (*pro hac vice*)
WILLIAM LAVERY (*pro hac vice*)
STEVE NICKELSBURG (*pro hac vice*)
DANIELLE MORELLO (*pro hac vice*)
DOROTHEA R. ALLOCCA (*pro hac vice*)

2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com

26

505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*

/s/ Jeffrey M. Goldman
(as authorized on April 20, 2026)_____
JEFFREY M. GOLDMAN, SBN 233840

**TROUTMAN PEPPER LOCKE LLP**

JEFFREY M. GOLDMAN, State Bar No. 233840

350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:    213.928.9800
Facsimile:    213.928.9850
jeffrey.goldman@troutman.com

T. SCOTT MILLS, SBN 313554

600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:    404.885.3000
Facsimile:    404.885.3900
scott.mills@troutman.com

JEREMY HEEP *(pro hac vice)*
DANIEL J. BOLAND *(pro hac vice)*

3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:    215.981.4000
Facsimile:    215.981.4750
jeremy.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North America LLC*

dodi.allocca@cliffordchance.com

**ILLOVSKY GATES & CALIA LLP**

EUGENE ILLOVSKY, SBN 117892
KEVIN CALIA, SBN 227406

1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Eugene@illovskygates.com
Kevin@illovskygates.com

*Attorneys for Plaintiff PACCAR Inc*

27

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:25-CV-02255-DC