GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5395
Facsimile:    650.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8293
Facsimile:    415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
JACOB T. SPENCER, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone:    202.955.8500
Facsimile:    202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
JSpencer@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*
(additional counsel on signature pages)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

DAIMLER TRUCK NORTH AMERICA LLC,
INTERNATIONAL MOTORS, LLC, PACCAR
INC, and VOLVO GROUP NORTH AMERICA
LLC,

        Plaintiffs,

        v.

STEVEN S. CLIFF, in his official capacity as the
Executive Officer of the California Air Resources
Board; and GAVIN NEWSOM, in his official
capacity as the Governor of California,

        Defendants.

_____

THE UNITED STATES OF AMERICA, and
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

        Plaintiffs-Intervenors,

        v.

CALIFORNIA AIR RESOURCES BOARD; and
STEVEN S. CLIFF, in his official capacity as the
Executive Officer of the California Air Resources
Board,

        Defendants.

Case No. 2:25-cv-02255-DC-AC

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Date:        August 7, 2026
Time:        1:30 PM
Courtroom:   10, 13th Floor
Judge:      Hon. Dena Coggins
Action Filed:  August 11, 2025

Gibson, Dunn &
Crutcher LLP

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

ARGUMENT ...............................................................................................................................1

I.    The Clean Truck Partnership Is Preempted. [Count III]..............................................1

II.   California Lacks Regulatory Authority Over Heavy-Duty Trucks & Engines. [Count I]....5

    A.   The CRA Resolutions Are Valid. ........................................................................5

    B.   The Emergency Rulemaking Lacks a Valid Waiver.............................................7

    C.   Plaintiffs Are Entitled to Relief from Phase 2 GHG Standards..........................11

    D.   Plaintiffs Are Entitled to Declaratory Judgment on the ACF 2036 ZEV Mandate.......15

III.  Defendants' Attempts to Enforce Preempted Rules Are Unlawful. [Count II]...................16

    A.   CARB's Attempts to Enforce Preempted Standards Are Unlawful.......................16

    B.   Governor Newsom's Executive Order Attempts to Enforce Preempted Standards. ...............18

    C.   Governor Newsom Is Not Immune from Plaintiffs' Claims. ...............................19

IV.   Defendants' Legal Arguments for Summary Judgment Are Flawed.................................20

    A.   Plaintiffs Have Shown Standing as a Matter of Law..........................................20

    B.   While Not Required, Additional Evidence Supports Standing..............................22

    C.   Defendants' Counterarguments Fail to Rebut Plaintiffs' Standing.......................26

    D.   Defendants' Cross-Motion Relies on Facts That, If Material, Are Disputed. ........28

CONCLUSION.............................................................................................................................28

Gibson, Dunn & Crutcher LLP

## TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys. v. Gardner*,
387 U.S. 136 (1967)...............................................................................................................21

*Airlines for Am. v. City & Cnty. of San Francisco*,
78 F.4th 1146 (9th Cir. 2023).......................................................................................... 1, 3, 4

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
988 F.2d 146 (D.C. Cir. 1993)................................................................................................10

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
569 U.S. 641 (2013)..................................................................................................1, 2, 3, 4, 5

*American Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)...................................................................................................................3

*Arizona v. Yellen*,
34 F.4th 841 (9th Cir. 2022).....................................................................................................21

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945)....................................................................................................................4

*Cal. Communities Against Toxics v. EPA*,
688 F.3d 989 (9th Cir. 2012)....................................................................................................10

*Cal. Inst. of Tech. v. City of Pasadena*,
2024 WL 6938009 (C.D. Cal. Aug. 23, 2024).........................................................................27

*Cal. Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024)...................................................................................................21

*Cal. Trucking Ass'n v. Bonta*,
996 F.3d 644 (9th Cir. 2021).....................................................................................................21

*California v. Randtron*,
284 F.3d 969 (9th Cir. 2002).....................................................................................................27

*California v. United States*,
No. 4:25-cv-04966-HSG (N.D. Cal. Jan. 9, 2026), Dkt. 194....................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................................................1

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*,
529 F. Supp. 2d 1151 (E.D. Cal. 2007)......................................................................................6

*Citizens for Const. Integrity v. United States*,
57 F.4th 750 (10th Cir. 2023).....................................................................................................6

*Ctr. for Biological Diversity v. Bernhardt*,
946 F.3d 553 (10th Cir. 2023) ............................................................................................. 6, 11

Gibson, Dunn & Crutcher LLP

ii

*Davis v. FEC*,
554 U.S. 724 (2008)..................................................................................................................27

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025)..................................................................................................................20

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
498 F.3d 1031 (9th Cir. 2007) ..................................................................................................18

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004)........................................................................... 13, 15, 17, 18, 19

*FBI v. Fikre*,
601 U.S. 234 (2024)..................................................................................................................25

*Fed. Election Comm'n v. Cruz*,
596 U.S. 289 (2022)..................................................................................................................22

*Forward, Inc. v. Macomber*,
173 F.4th 1121 (9th Cir. 2026) ................................................................................................20

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)..................................................................................................................25

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
508 F. Supp. 2d 295 (D. Vt. 2007)..............................................................................................6

*H.J. Heinz Co. v. Owens*,
189 F.2d 505 (9th Cir. 1951) ....................................................................................................27

*Iten v. Los Angeles*,
81 F.4th 979 (9th Cir. 2023)......................................................................................................27

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012)....................................................................................................................3

*Leiter Minerals, Inc. v. United States*,
352 U.S. 220 (1957)..................................................................................................................28

*Loffman v. Cal. Dep't of Educ.*,
119 F.4th 1147 (9th Cir. 2024) .................................................................................................28

*Los Angeles Cnty. Bar Ass'n v. Eu*,
979 F.2d 697 (9th Cir. 1992).....................................................................................................20

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
638 F.3d 644 (9th Cir. 2011).....................................................................................................20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..................................................................................................................20

*Marshall Field & Co. v. Clark*,
143 U.S. 649 (1892)....................................................................................................................6

Gibson, Dunn &
Crutcher LLP

iii

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)......................................................................................................... 21, 26

*Montanans for Multiple Use v. Barbouletos*,
  568 F.3d 225 (D.C. Cir. 2009)....................................................................................................6

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*,
  627 F.2d 1095 (D.C. Cir. 1979).................................................................................................11

*Murphy v. National Collegiate Athletic Association*,
  584 U.S. 453 (2018).........................................................................................................4, 14, 16

*N.L.R.B. v. Noel Canning*,
  573 U.S. 513 (2014)....................................................................................................................6

*Nat'l Pub. Radio, Inc. v. Trump*,
  No. CV 25-1674 (RDM), 2026 WL 877434 (D.D.C. Mar. 31, 2026)........................................26

*Olympic Pipe Line Co. v. City of Seattle*,
  437 F.3d 872 (9th Cir. 2006). ........................................................................................... 2, 3, 4

*Pac. Rivers Council v. U.S. Forest Serv.*,
  942 F. Supp. 2d 1014 (E.D. Cal. 2013) ...................................................................................24

*Peace Ranch, LLC v. Bonta*,
  93 F.4th 482 (9th Cir. 2024).........................................................................................21, 26, 27

*Pennsylvania v. New Jersey*,
  426 U.S. 660 (1976)...................................................................................................................27

*Reichelderfer v. Quinn*,
  287 U.S. 315 (1932).....................................................................................................................6

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
  547 U.S. 47 (2006)......................................................................................................................28

*Shapiro v. United States*,
  335 U.S. 1 (1948) .........................................................................................................................6

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014).....................................................................................................................21

*United States v. Ballin*,
  144 U.S. 1 (1892) ............................................................................................................... 5, 6, 7

*United States v. King Cnty.*,
  122 F.4th 740 (9th Cir. 2024) .....................................................................................................18

*United States v. Powell*,
  761 F.2d 1227 (8th Cir. 1985) ......................................................................................................6

*Williams v. Boeing Co.*,
  517 F.3d 1120 (9th Cir. 2008) .....................................................................................................23

Gibson, Dunn &
Crutcher LLP

iv

*Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*,
    475 U.S. 282 (1986)..................................................................................................19

**Statutes**

5 U.S.C. § 805..............................................................................................................6

42 U.S.C. § 7521(a)(3)(C) ...........................................................................................9

42 U.S.C. § 7543(a)..........................................................7, 12, 13, 15, 17, 19

42 U.S.C. § 7543(b)............................................................. 4, 5, 7, 9, 10, 13

Cal. Health & Safety Code § 43151 ....................................................... 13, 25

Cal. Health & Safety Code § 43152 ................................................................ 13

Cal. Health & Safety Code § 43154 ........................................................ 3, 25

Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025)......................................... 11

Pub. L. No. 119-16, 139 Stat. 66 (June 12, 2025)......................................... 11

Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025)......................................... 11

**Other Authorities**

CARB Mfrs. Advisory Correspondence 2020-02 (Oct. 16, 2020) ("MAC 2020-02").......................... 14

**Rules**

Fed. R. Civ. P. 56(c)(4)..................................................................................23

**Regulations**

40 C.F.R. § 1036.104(a)(1) ....................................................................... 10, 11

43 Fed. Reg. 36,679 (Aug. 18, 1978)...............................................................8

50 Fed. Reg. 35,123 (Aug. 29, 1985)............................................................ 14

59 Fed. Reg. 36,969 (July 20, 1994)......................................................... 8, 15

81 Fed. Reg. 78,143 (Nov. 7, 2016) .............................................................. 12

86 Fed. Reg. 45,724 (Aug. 16, 2021)............................................................ 13

90 Fed. Reg. 643 (Jan. 6, 2025)................................................................ 7, 14

Cal. Code Regs. tit. 13, § 1956.8............................................................... 7, 8

Cal. Code Regs. tit. 13, § 1956.8.1 ........................................................... 9, 10

Cal. Code Regs. title 17, § 95662 ................................................................ 13

Gibson, Dunn &
Crutcher LLP

Cal. Code Regs. title 17, § 95663 ...................................................................................13, 14, 23

**Constitutional Provisions**

U.S. Const. art. I, § 5, cl. 2..........................................................................................................5

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

Plaintiffs are entitled to summary judgment. Plaintiffs' claims turn on undisputed official acts and pure questions of law—the scope and application of Clean Air Act Section 209(a). Despite Defendants' efforts to recharacterize their conduct as falling outside Section 209's preemptive sweep, the reality is that their actions not only adopt but also attempt to enforce preempted laws, violating the Clean Air Act and the Supremacy Clause. In contrast, Defendants' cross-motion for summary judgment asks this Court to ignore binding Supreme Court and Ninth Circuit precedent and endorse novel legal theories on the constitutionality of federal statutes, preemption, and Article III standing. This Court should deny Defendants' error-ridden cross-motion and opposition to Plaintiffs' motion and grant summary judgment for Plaintiffs on all claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**ARGUMENT**

**I.    The Clean Truck Partnership Is Preempted. [Count III]**

Supreme Court precedent establishes that agreements between a private party and a state are preempted when the government is "act[ing] in a regulatory rather than proprietary mode," and when a contract "functions as part and parcel of a government program." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles,* 569 U.S. 641, 649–50, 651 (2013). The preemption analysis seeks to "distinguish between a government's *exercise of regulatory authority*," which is preempted, "and its own contract-based *participation in a market*," which is not. *Airlines for Am. v. City & Cnty. of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023) (emphases added). Preemption does not apply *only* when a government (i) acts as "a purchaser of services," *Airlines for Am.*, 78 F.4th at 1152, or (ii) is engaged in "contract-based participation in a market." *Am. Trucking Ass'ns,* 569 U.S. at 649–50. Neither of those exceptions applies here. *See* Pls.' MSJ at 21:6–25:1.

The CTP is an extension of CARB's legal authority **as a regulator** to certify heavy-duty trucks—its stated intent is to ensure the effectiveness of "current and future CARB regulations." CTP at 1; *id.* ¶ 2. CARB is not buying trucks or engines from Plaintiffs by way of the CTP, as an ordinary market participant. *See Am. Trucking Ass'ns,* 569 U.S. at 649–50. Like other arrangements that the Supreme Court and the Ninth Circuit have held are preempted, the CTP's purpose is to advance California's regulatory authority: in this case, CARB's authority to set, implement, and enforce emissions

standards and to require certification to those standards for products that Plaintiffs sell. CTP ¶ 2. It is clear that CARB was "act[ing] in a regulatory rather than proprietary mode," and not "as a private party, contracting in a way that the owner of an ordinary commercial enterprise could mimic." *Am. Trucking Ass'ns,* 569 U.S. at 649–50. As in *Olympic Pipe Line Co. v. City of Seattle*, the state acted to "encourage a general policy rather than address a specific proprietary problem." 437 F.3d 872, 881 (9th Cir. 2006). And, as this Court held when preliminarily enjoining enforcement of the CTP, through the CTP, "CARB[] attempts to enforce at least some standards for which it admittedly never obtained preemption waivers." Dkt. 94 at 32:11–12.

In every material aspect of the CTP, CARB acts as a regulator: the CTP (1) mandates that OEMs obtain California Certifications, CTP App'x B at i ("[M]anufacturers will still be required to submit applications for certification"); (2) requires compliance with preempted regulations, *id.* (OEMs must "meet, in California, the requirements of [the relevant regulations]"); and (3) commits CARB to act as a regulator and commence rulemakings, *e.g.*, *id*. at 2, App'x A at ii (committing, among other things, to "initiate rulemaking actions," "amend" existing rules, and "implement" the regulatory actions contemplated). No private entity could have agreed to exercise comparable regulatory authority. Additionally, CARB uses the CTP not only to exercise regulatory power within California, but also to extend its regulatory reach by compelling compliance with the Omnibus emissions standards in other states, *id.,* App'x D ¶ B, another act no private entity could do.

Defendants' attempts to recast the CTP as a non-regulatory contract fail for several reasons. First, Defendants argue that federal preemption applies only to obligations "unilaterally imposed by the State," Mot./Opp. at 45:11, and not to "voluntary agreements," which Defendants appear to define as any agreement in which a commitment was "offered as consideration," *id.* at 44:4–19. This Court already rejected CARB's "voluntary agreement" argument when enjoining enforcement of the CTP. *See* Dkt. 73 at 13:11–23 (arguing CTP not preempted because it was a "voluntary agreement"); Dkt. 94 at 33:13–17 (enjoining enforcement of CTP). And for good reason, as CARB's argument is flatly inconsistent with binding Ninth Circuit and Supreme Court caselaw. In the cases CARB itself cites, courts blocked state efforts to regulate through contract-based obligations where the government party offered consideration. In *American Trucking Associations, Inc. v. City of Los Angeles*, for example, the

Gibson, Dunn &
Crutcher LLP

plaintiffs contracted with the City of Los Angeles to "transport cargo at the Port in exchange for complying with various [safety] requirements." 569 U.S. at 645. The Supreme Court held that the City's safety requirements were preempted, notwithstanding that the trucking companies had agreed to comply with them in exchange for the right to operate at the Port. *Id.* at 647–51. Likewise, in *Airlines for America v. City & County of San Francisco*, the government acted as a regulator, notwithstanding that the private parties had "agreed to comply" with its requirements in exchange for the City agreeing to "manage and operate [the airport] using commercially reasonable efforts." 78 F.4th at 1149, 1152; *see also Olympic Pipe Line Co.*, 437 F.3d at 882 (rejecting argument that "by entering into these agreements, Olympic knowingly and voluntarily consented to the City's regulations and waived its right to argue that the regulations are preempted."). Defendants' reliance on *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), is entirely misplaced. Mot./Opp. at 51:4–24. There, the "contractual commitment voluntarily undertaken" was between a private airline and its frequent fliers. *Wolens*, 513 U.S. at 224–25, 229. Enforcing that frequent flyer contract was not a regulatory action; it was purely commercial, and therefore not preempted.

Second, CARB's breach-of-contract lawsuit filed in state court (Alameda County) against Plaintiffs *confirms* the CTP's regulatory character. *Contra* Mot./Opp. at 47:20–49:15. This Court already found that CARB's breach-of-contract suit attempts to enforce the preempted standards. Dkt. 94 at 32:1–14. Regardless of whether CARB characterizes its lawsuit as "contract enforcement" or "regulatory enforcement," the point is that CARB seeks to use specific performance and monetary damages *to enforce regulations that are preempted*—relief no ordinary private party could require and the very relief CARB would seek under regulatory enforcement of Advanced Clean Trucks ("ACT"), Omnibus, or the Advanced Clean Fleets 2036 Zero-Emission Vehicle Mandate ("ACF 2036 ZEV Mandate"). *See* Cal. Health & Safety Code § 43154 (penalties for noncompliance); *cf.* CTP App'x A, n.1 (noting that failure to comply with the emissions standards set forth in the CTP results in "non-compliant" sales under California law). The *substance* of the government's conduct controls in Supreme Court and Ninth Circuit cases analyzing preemption. *Am. Trucking Ass'ns*, 569 U.S. at 650; *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012) ("'regulation can be effectively exerted through an award of damages,' and 'the obligation to pay compensation can be, indeed is designed to be, a potent method

Gibson, Dunn & Crutcher LLP

3

of governing conduct and controlling policy'").

Third, Defendants argue that the CTP's express incorporation of the preempted regulations "becomes part of the contract" and thus must be deemed an independent contract obligation, but cite no *preemption* case adopting this reasoning, instead relying on authorities like contract treatises and unrelated Court of Federal Claims opinions. Mot./Opp. at 49:24–50:22. In *preemption* cases, however, courts routinely find state action preempted when challenged regulatory standards are stated in a contract or incorporated therein. *See, e.g.*, *Am. Trucking Ass'ns*, 569 U.S. at 645 (stating that the challenged requirements were included in a "concession agreement"); *Olympic Pipe Line*, 437 F.3d at 879–80 (preempted safety oversight provisions included in franchise agreement). Were it otherwise, states could easily circumvent the Supremacy Clause by incorporating preempted standards into documents labeled "contracts."

Fourth, Defendants' argument that neither the "nature of the consideration CARB offered" nor the purpose of the CTP affects the preemption analysis defies logic. Mot./Opp. at 50:23–52:8. No private party could offer to "initiate rulemaking actions," CTP App'x A at ii, "amend" existing rules, *e.g.*, CTP at 1 ¶ 1(iii), 2 ¶ 6, and "implement" regulatory actions, *e.g.* CTP App'x B at i. Yet CARB did just that. And the CTP's stated purpose—to ensure the effectiveness of "current and future CARB regulations," CTP at 1—is a clear statement that CARB sought to regulate through the CTP. Altogether, the CTP is an "exercise of regulatory authority," *Airlines for Am.*, 78 F.4th at 1152, far from the ordinary commercial conduct that *American Trucking* and *Airlines for America* carve out from preemption.

Finally, CARB notes that *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018), states that valid preemption provisions "confer[] on private entities a federal right to engage in certain conduct subject only to certain (federal) constraints." Mot./Opp. at 43:8–10 (quoting *Murphy*, 584 U.S. at 478–79). Defendants' reliance on *Murphy* is misplaced. They do not, and cannot, point to any holding that private parties can contract around Congress's unambiguous intent to give EPA exclusive authority to waive preemption. 42 U.S.C. § 7543(b); *see Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704–05 (1945) (validity of waiver depends on "the intention of Congress as manifested in the particular statute"); *Olympic Pipe Line*, 437 F.3d at 882–83 (rejecting similar waiver argument because "Federal preemption is the allocation of power and decision-making authority between the

Gibson, Dunn &
Crutcher LLP

federal government and the state and local governments"). Defendants' unsupported reading of *Murphy* would grant States the ability to regulate in a federally preempted space by including the regulatory requirements in a contract, contradicting not only the Clean Air Act but the Supremacy Clause itself. Preemption waivers for the Clean Air Act's control of emissions from new vehicles and engines are EPA's exclusive prerogative. *See* 42 U.S.C. § 7543(b). Nothing in *Murphy* changes this.

This Court ruled correctly in enjoining the CTP. The CTP is a "classic" exercise of CARB's "regulatory authority," *Am. Trucking Ass'ns*, 569 U.S. at 650, and Plaintiffs are entitled to a declaratory judgment that the CTP is preempted.

## II.    California Lacks Regulatory Authority Over Heavy-Duty Trucks & Engines. [Count I]

CARB lacks waivers for its emissions standards and certification requirements either because of congressional disapproval or CARB's failure to obtain a waiver. Consequently, the Clean Air Act preempts California's regulatory authority. Each of Defendants' arguments to the contrary falls flat.

### A.    The CRA Resolutions Are Valid.

Defendants' arguments only confirm that the CRA Resolutions at issue here are valid laws that this Court lacks the authority to review.[1] Defendants do not dispute that (1) the CRA Resolutions passed both houses of Congress and were signed into law by the President or (2) CRA resolutions more generally become law once passed by both houses of Congress and signed by the President. *See* Defs.' Statement of Undisputed Facts, Dkt. 147-2, ¶ 67. Nevertheless, Defendants assert that the waivers revoked by the CRA Resolutions "remain operative," Mot./Opp. at 1:18, simply because the duly enacted laws revoking these waivers were passed pursuant to expedited CRA procedures. Matters of internal Senate procedure are the only relevant differences between a CRA resolution and any other law.

The Supreme Court has repeatedly rejected Defendants' argument on jurisdictional and separation-of-powers grounds. The Constitution provides that "Each House may determine the Rules of its Proceedings." U.S. Const. art. I, § 5, cl. 2. The Rules of Proceedings Clause reserves "all matters of method … to the determination of the house" itself. *United States v. Ballin*, 144 U.S. 1, 5 (1892). Congress's decision to proceed under what it views as a procedurally appropriate avenue is "absolute and

---

[1] Plaintiffs incorporate by reference the arguments made in Section II of the United States' brief, Dkt. 165, which further show how the CRA Resolutions are valid and unreviewable.

beyond the challenge of any other body or tribunal." *Id.* It is not "legally or practically appropriate" for courts to second-guess Congress's interpretation of its own rules and proceedings. *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 555 (2014). Indeed, even in contexts in which courts are permitted to look into the legality of congressional proceedings, the presumption of regularity requires them to assume that Congress faithfully discharged its duties. *See Shapiro v. United States*, 335 U.S. 1, 14 n.19 (1948); *see also Marshall Field & Co. v. Clark*, 143 U.S. 649, 670–71 (1892) (each House's official account of its actions is controlling). Accordingly, this Court lacks authority to review Congress's determination that it could statutorily revoke EPA's waivers via CRA procedures. *See, e.g.*, *Ballin*, 144 U.S. at 5.[2]

Indeed, even if the matter were judicially reviewable, Congress *always* has the power to override prior law by legislation, irrespective of any restriction to the contrary in the prior law. *See Reichelderfer v. Quinn*, 287 U.S. 315, 318 (1932) (earlier law "expressed no more than the will of a particular Congress which does not impose itself upon those to follow in succeeding years"). "If Congress disagrees with an agency rule, then Congress may pass a law overriding it; such a course of events is not a usurpation of *executive* power but instead a legitimate exercise of *legislative* power." *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 763 (10th Cir. 2023); *see also Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 561–62 (9th Cir. 2019) (similar). "It makes no difference what internal parliamentary procedures Congress adopts in doing so." *Citizens for Const. Integrity*, 57 F.4th at 763–64. This Court's "task is simply to hold the Congress within the limits of the power given it by the Constitution, not to pass judgment on matters of legislative practice." *United States v. Powell*, 761 F.2d 1227, 1235 (8th Cir. 1985). Defendants might have preferred a different procedure for revoking these EPA waivers, but courts may not second-guess whether "some other [legislative procedure]

---

[2] Congress' determination that the EPA waivers are "rules" for purposes of the CRA is not subject to judicial review under the express terms of the CRA itself. *See* 5 U.S.C. § 805; *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 564 (10th Cir. 2023); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.). But in any event, Defendants' argument that the waivers are only "adjudicatory order[s]," *see* Mot./Opp. at 23:14–16, is incompatible with California's successful arguments in prior litigation that an EPA waiver elevates CARB standards to the status of federal rules for purposes of preemption by other federal statutes. *See Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 347 (D. Vt. 2007); *Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1189 (E.D. Cal. 2007), *as corrected* (Mar. 26, 2008). Defendants' argument here that EPA's waiver action is *not* a rule loses force when considered alongside California's long-held position that those same waivers *create* federal rules.

Gibson, Dunn & Crutcher LLP

would be better, more accurate, or even more just." *Ballin*, 144 U.S. at 5.

### B.   The Emergency Rulemaking Lacks a Valid Waiver.

California's Emergency Rulemaking adopts and attempts to enforce a novel combination of superseded standards, never before assessed as a whole for a waiver, applied prospectively to model year 2026 and subsequent vehicles with no lead time. *See* Pls.' MSJ at 11:18–12:7; 7:7–8:15. Section 209(a) dictates that California must obtain a waiver to "adopt or attempt to enforce" an emissions standard. 42 U.S.C. § 7543(a). Here, CARB violated both those commands. CARB *admits* the Emergency Rulemaking "adopt[s] new sections" of the California Code of Regulations. *See* Pls.' MSJ at 6:8–14 (citing Dkt. 73-33, at 1). CARB then enforced the Emergency Rulemaking by placing these new sections into the California Code and obligating manufacturers to receive certification thereunder. *See* August 2025 MAC, Dkt. 145-11 at 2 (directing OEMs to seek CARB certification prior to California sales, including pursuant to the Emergency Rulemaking's regulations). Moreover, the Emergency Rulemaking enforces Omnibus, ACT, and Advanced Clean Cars II by codifying the threat of retroactive enforcement. *See, e.g.*, Cal. Code Regs. tit. 13, § 1956.8. Yet CARB has admitted that it sought neither a waiver nor a within-the-scope determination for the Emergency Rulemaking. Pls.' Statement of Undisputed Facts, Dkt. 145-2 at ¶¶ 23–24; Pls.' MSJ at 7:15–19. The analysis can end there: the Emergency Rulemaking is preempted by the Clean Air Act. *See* 42 U.S.C. § 7543(a).

Defendants' leading theory as to why the Emergency Rulemaking is not preempted is that a new waiver is unnecessary because CARB's waivers are everlasting and simply came back into effect upon passage of the CRA Resolutions. *See* Mot./Opp. at 30:15–31:19. This has no basis in the Clean Air Act's text, any judicial decisions related to Clean Air Act waivers, or any EPA statement interpreting its waiver process. *See* Mot./Opp. at 29–30; 42 U.S.C. § 7543(b)(1). Indeed, CARB's own conduct reveals the absurdity of its position. Waivers are granted for specific standards. *See, e.g.*, 90 Fed. Reg. 643, 644 n.3 (Jan. 6, 2025) (Omnibus Low NOx waiver identifying specific standards covered). *If these prior rules were in effect for model year 2025 and subsequent years, CARB would not have needed to undertake an Emergency Rulemaking to restore and change them.* But that is precisely what CARB did—it "adopt[ed] new sections into California Code of Regulations" in light of the CRA Resolutions. Lang Decl. Ex. B3, Dkt. 73-33, at 1. Thus, in trying to run from the CRA Resolutions, CARB crashes

Gibson, Dunn & Crutcher LLP

7

headlong into the prohibitions of Section 209. When CARB "adopts new or different standards or accompanying enforcement procedures," it must "meet the waiver criteria of section 209(b)." 43 Fed. Reg. 36,679, 36,680 (Aug. 18, 1978). The "new sections" in the Emergency Rulemaking require a new waiver; but Defendants admit (and EPA has confirmed) California has neither sought nor obtained one. Pls.' Statement of Undisputed Facts, Dkt. 145-2 at ¶¶ 23–24.

Other significant flaws confirm that the Emergency Rulemaking lacks a waiver—and cannot receive one. First, because the Emergency Rulemaking is a substantive amendment to the regulations for current and future vehicles and engines, according to Defendants' own authorities, it needs a new waiver. *See* Mot./Opp. at 32:1–3 (citing 59 Fed. Reg. 36,969, 36,982 n.34 (July 20, 1994)). EPA has long maintained that "if CARB substantively amends a rule, EPA would expect CARB to request a new authorization." Final Rule, Air Pollution Control; Preemption of State Regulation for Nonroad Engine and Vehicle Standards, 59 Fed. Reg. 36,969, 36,982 n.34 (July 20, 1994). If CARB were to enforce a new or modified rule prior to EPA's permission, it "would defeat the protection [the Clean Air Act] was established to provide." *Id.* at 36,982. Any adoption by CARB of new—or substantively amended—regulations "must be conditioned upon EPA's authorizing those regulations." *Id.*; *see also* 43 Fed. Reg. 36,679, 36,680 (CARB must meet the waiver criteria of Section 209(b) when it "adopts new or different standards or accompanying enforcement procedures"). Lacking such EPA authorization, Defendants protest that the Emergency Rulemaking is not a substantive change. *See, e.g.*, Mot./Opp. at 32:7–9 (the newly adopted standards "are the same as when EPA previously waived preemption."). This mischaracterizes the nature of CARB's actions.

The Emergency Rulemaking changed the substantive emissions standards that applied to model year 2026 and subsequent engines and trucks. Take heavy-duty diesel engine NOx emissions standards: before the Emergency Rulemaking, these standards were found in the Omnibus regulations. *E.g.*, Cal. Code Regs. tit. 13, § 1956.8(a)(2). When adopted, Omnibus changed the applicability dates of the then-extant 200 mg/hp-hr NOx emissions standard from "2007 and subsequent" model years to "2007–2023" model years, and established new NOx emissions standards starting in model year 2024. *See* Fletcher Decl. Ex. 12 (Excerpt of Omnibus Low NOx Final Reg. Order) at 5 (revisions to "2007 and subsequent" standard), 7 (adoption of model year 2024–2026 standards), 11–12 (adoption of 2027 and

subsequent model year standards). At the time of the Emergency Rulemaking, these standards—the only heavy-duty diesel engine NOx standards adopted in California's regulatory code—*were not enforceable* due to the CRA Resolutions. *Supra* Section II.A. The Emergency Rulemaking then adopted heavy-duty diesel engine NOx emissions standards that purportedly applied immediately to current and subsequent model years. *See, e.g.*, Cal. Code Regs. tit. 13, § 1956.8.1(a)(2)(A) (adopting 200 mg/hp-hr NOx tailpipe emissions standard for "2007 and subsequent" heavy-duty diesel engines). Thus, the Emergency Rulemaking promulgated an applicable standard where none existed—a substantive change.

Second, the Emergency Rulemaking needs a new waiver because it is a combination of separate superseded standards never before assessed by EPA in a single waiver proceeding. Pls.' MSJ at 11:9–12.[3] As Defendants have previously insisted, EPA's waiver determination rests on a holistic assessment of CARB's overall program—specifically, EPA must find that California has accurately determined that its standards are, "*in the aggregate*, at least as protective of public health and welfare as applicable Federal standards," 42 U.S.C. § 7543(b) (emphasis added); Hr'g. Tr. 46:1–7. The *amici* supporting Defendants agree. Dkt. 151-1 at 14:1–2; Dkt. 153-1 at 10:16–19. As Defendants and *amici* have argued, only a waiver that considered the aggregate program could appropriately waive preemption. Mot./Opp. at 3:15–19; Dkt. 151-1 at 14:1–17. Thus, even if all of CARB's antecedent rules were governed by waivers granted at various times, it would not mean that those waivers are all simultaneously valid today. To get around this, Defendants point to situations where EPA has granted a single waiver covering "amendments made through multiple rulemakings." Mot./Opp. at 32 n.9. The key distinction from this situation*: EPA granted a waiver*. Stating that EPA *could* grant a waiver for a rule enacted piecemeal over time does nothing to cure the problem that it *hasn't* granted a waiver for *this* rule.

Third, these new regulations are incompatible with the waiver provisions. The Emergency Rulemaking changed the emissions standards without statutorily required lead time. *See* 42 U.S.C. § 7543(b)(1)(C) (requiring California standards to be "consistent with section 7521(a)"); 42 U.S.C. § 7521(a)(3)(C) (requiring at least four years of lead time). Moreover, those changed standards render

---

[3] CARB itself has struggled to figure out which "antecedent" versions were supposedly revived. Mot./Opp. at 29 n.7 (noting that CARB "erroneously recodified 2015 text instead of the 2012 version").

Gibson, Dunn & Crutcher LLP

the California regulations *less* stringent than the comparable federal standards starting in model year 2027, failing to satisfy Section 209(b)'s requirement that California standards must be "at least as protective of public health and welfare as applicable Federal standards." 42 U.S.C. § 7543(b). EPA's model year 2027 NOx standard for heavy-duty diesel engines is 35 mg/hp-hr. 40 C.F.R. § 1036.104(a)(1). But the Emergency Rulemaking's equivalent standard is *200* mg—allowing nearly six times more pollutants by weight from each engine. Cal. Code Regs. tit. 13, § 1956.8.1(a)(2)(A). This fact undermines CARB's assertion that the Emergency Rulemaking supports the operation of "*protective* emission standards for vehicles and engines," Lang Decl. Ex. B3, Dkt. 73-33, at 6 (emphasis added).

Fourth, Defendants misconstrue cases regarding administrative proceedings and judicial vacatur of agency rules to argue that CARB's prior waivers were "fully restored" by passage of the CRA Resolutions. Mot./Opp. at 30:15–31:19. This argument is flawed in several respects. For one thing, as discussed above, there is no prior waiver for the aggregate Emergency Rulemaking. Thus, there is no waiver to be "restored."

Moreover, even if the Emergency Rulemaking had a prior waiver, reversion is not the inevitability Defendants suggest. Rather, under the judicial vacatur precedent that Defendants cite, courts treat reinstating a prior rule as an equitable question and decline to unwind regulatory actions where doing so would be untenable. *See, e.g.*, *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (remanding without vacatur because the "disruptive consequences" of vacatur outweighed the seriousness of the agency's errors); *Cal. Communities Against Toxics v. EPA*, 688 F.3d 989, 993–94 (9th Cir. 2012) (remanding without vacatur because vacatur would be "economically disastrous," disrupt "a billion-dollar venture employing 350 workers," and probably result in "needless and duplicative legislat[ion]"). As the Emergency Rulemaking has aptly demonstrated, reverting to prior CARB rules upon disapproval of a present waiver creates a nonsensical result. To qualify for a waiver, California's standards must address "compelling and extraordinary" circumstances by implementing emissions requirements at least as protective as those promulgated by EPA. 42 U.S.C. § 7543(b). The type of snapback for which Defendants advocate would undermine these requirements by restoring predecessor programs without consideration of whether the waiver criteria are met. Thus,

REPLY ISO PLS' MSJ & OPP. DEFS.' CROSS-MSJ
CASE NO. 2:25-CV-02255-DC

Gibson, Dunn & Crutcher LLP

it could lead to the absurd result of restoring emissions standards that provide *no* protective advantage compared to EPA's standards.

And although Defendants rely on judicial vacatur and an inapposite federal regulatory process, the situation here is manifestly different. California's ability to receive a waiver was revoked *by statutes* that caused the waivers to have "no force or effect." Pub. L. No. 119-15, 139 Stat. 65 (June 12, 2025); Pub. L. No. 119-16, 139 Stat. 66 (June 12, 2025); Pub. L. No. 119-17, 139 Stat. 67 (June 12, 2025). By enacting the CRA Resolutions, Congress did not merely disapprove EPA's waivers; it "amended the substantive environmental law," *Bernhardt*, 946 F.3d at 562—and CARB does not cite *any case* suggesting that, by doing so, Congress silently gave California permission to reinstate outmoded regulations. The D.C. Circuit's recognition in its 1979 opinion that historical Congresses intended California to "continue" its regulatory program, Mot./Opp. at 31:5–10 (citing *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1110–11 (D.C. Cir. 1979)), is irrelevant today when *this* Congress passed a currently applicable federal law removing the waivers for CARB's then-extant heavy-duty truck regulations. Defendants protest that Congress did not mention disapproval of prior waivers in the CRA Resolutions, but at the time of the CRA Resolutions, such waivers applied to rules that *did not exist* in the California Code. Congress had neither reason nor necessity to disapprove waivers for non-existent rules.[4]

### C.     Plaintiffs Are Entitled to Relief from Phase 2 GHG Standards.

The Phase 2 GHG standards are preempted because CARB adopted them without a waiver. *See* Pls.' MSJ at 10:26–27; *see also* Dkt. 147-56 ¶ 2 ("Undisputed that California has not sought a waiver …."); Dkt. 94 at 8:18–19 ("CARB has not requested a preemption waiver …."). Defendants do not contend that the Phase 2 GHG standards are exempt from Section 209(a) or lawful absent a waiver. Instead, Defendants argue that they are not enforcing the Phase 2 GHG standards and therefore

---

[4] The *amici* environmental organizations devote their brief to asserted public health benefits of California's emissions program, *see* Dkt. 151-1, but those policy arguments are unrelated to the legal question presented. Whether California's standards are, as a matter of policy, beneficial is not what this motion will decide. The question is whether the challenged standards may be enforced absent a valid waiver. To the extent the *amici*'s submissions bear on this motion at all, they cut against Defendants. The *amici* are silent on the fact that the Emergency Rulemaking's heavy-duty standards are in key respects *less* protective than the federal standards they purport to supplant. *See supra* at 10; 40 C.F.R. § 1036.104(a)(1).

Plaintiffs' claims are non-justiciable until EPA grants a waiver and CARB begins "enforcing" the rule. *See* Mot./Opp. at 37:5–13. That position cannot be reconciled with fundamental principles of pre-enforcement review, CARB's own enforcement practice, California's statements in related litigation pending before Judge Gilliam, or Section 209(a).

Defendants' justiciability defense is a perfect example of their "heads I win, tails you lose" approach. Plaintiffs must begin complying with the Phase 2 GHG standards at state law adoption, because CARB's practice is to enforce its standards retroactively to the adoption date once a waiver issues. *See, e.g.*, CARB, Advanced Clean Fleets Regulation Enforcement Notice (Dec. 28, 2023, updated Oct. 25, 2024), at 1 (explaining that CARB may enforce Advanced Clean Fleets "for any period for which a waiver is granted" including "while the waiver request is pending"). California has even admitted as much in the Northern District of California litigation, taking the position that EPA waiver grants "have immediate retrospective … effect: they waive preemption for actions California has already taken to adopt its standards …, as well as for covered standards applicable to vehicles sold before EPA acted …." Opp. to Mot. to Dismiss at 11:1–6, *California v. United States*, No. 4:25-cv-04966-HSG (N.D. Cal. Jan. 9, 2026), Dkt. 194 (citations omitted). Yet Defendants insist that any challenge is premature until EPA grants a waiver and the state is "enforcing" the rule. *See* Mot./Opp. at 37:5–13. Either the regulation lacks a waiver, and CARB deems it too soon to challenge; or the waiver issues, and manufacturers are held responsible for compliance back to the state law adoption date, even though CARB argued that a challenge during that period was inappropriate.

Because CARB's settled practice is to enforce its standards retroactively to adoption, the Phase 2 GHG standards were put in "effective operation" from the moment of adoption—regardless of whether EPA had granted a waiver. That is precisely what Section 209(a) forbids. 42 U.S.C. § 7543(a); *see also* Defs.' Reply ISO MTD, Dkt. 102 at 4:23–24 (arguing that "'[a]dopt' means '[t]o accept, consent to, *and put into effective operation*'") (internal citations omitted). Exacerbating this violation of the Clean Air Act, CARB has the power to keep manufacturers in regulatory limbo for as long as it likes, because CARB can wait—and has waited—*years* between adoption and seeking a waiver. *See, e.g.*, 81 Fed. Reg. 78,143, 78,144 (Nov. 7, 2016) (waiver request not initiated until 2014 for regulations adopted as early as 2007); 86 Fed. Reg. 45,724, 45,725 (Aug. 16, 2021) (CARB rules "became

operative under state law" in June 2017 but CARB did not submit waiver request to EPA until March 2021). CARB's scheme of requiring compliance as of the state law adoption date means manufacturers must comply as if a waiver has been granted before they have the opportunity to be heard in the waiver process—an opportunity guaranteed by the Clean Air Act. *See* 42 U.S.C. § 7543(b)(1) (requiring notice and opportunity for public hearing before EPA can grant a waiver).

Therefore, CARB's request to limit any relief to prospectively enjoining enforcement "until such time as EPA may grant a waiver," Mot./Opp. at 37:18, does not fully encompass the relief to which Plaintiffs are entitled. Because of CARB's practice of enforcing back to the state law adoption date, prospective-only relief would leave the pre-waiver injury unremedied and not redress the harm. Rather, Plaintiffs are entitled to a declaration now that prohibits pre-waiver enforcement.

Additionally, CARB is *already enforcing* the Phase 2 GHG standards through its certification requirements. CARB's May 2025 directive states that it "will continue to accept and process certification applications … under the certification requirements" of the Phase 2 GHG standards. May 2025 MAC, Dkt. 145-10 at 3 (citing Cal. Code Regs. title 17, §§ 95662–95663). CARB's September 2025 Emergency Rulemaking reiterates this stance. Dkt. 73-33 at 6 (explaining that CARB "continues to accept and process certification applications for" the preempted standards). Its August 2025 directive "reserves its right to enforce" the preempted certification requirements and threatens to penalize manufacturers who do not continue to certify to those requirements with the denial of "eligibility for procurement and other incentives." August 2025 MAC, Dkt. 145-11 at 3. Conditioning the lawful sale of vehicles on Phase 2 GHG certification is itself an attempt to enforce the standard.

This is because Section 209(a)'s prohibition on "attempt[s] to enforce" is not limited to the actual imposition of penalties; it includes steps preliminary to that action. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.* ("*EMA*"), 541 U.S. 246, 255, 257 (2004); *see* 42 U.S.C. § 7543(a). By requiring compliance under threat of penalty, CARB's certification requirement is just this sort of preliminary step. *See* Cal. Health & Safety Code §§ 43151, 43152. Even where certification requirements are set by California statute, CARB can only impose these requirements as a condition precedent to sale if it has secured a waiver for its underlying emissions standards. *See* Conditions Precedent to the Sale, Titling, or Registration of New Motor Vehicles in California, 50 Fed. Reg. 35,123 (Aug. 29,

1985) (explaining that CARB did not need a waiver for its certification requirements only because CARB had secured a waiver for vehicle emissions standards that were enforced by the certification requirements). Nor is this enforcement-by-certification new: CARB has required OEM Plaintiffs to certify to the Phase 2 GHG standards as a condition of sale since model year 2021, despite never having obtained an EPA waiver for those standards. CARB Mfrs. Advisory Correspondence 2020-02 (Oct. 16, 2020) ("MAC 2020-02")[5]; *see also* Cal. Code Regs. tit. 17, § 95663 (applying Phase 2 GHG standards to manufacturers since model year 2021).

In addition, CARB's reserved right to enforce the Phase 2 GHG standards retroactively if "EPA waives Clean Air Act preemption or *enforcement otherwise becomes lawful*" is also an attempt to enforce them now. Defs.' Statement of Undisputed Facts, Dkt. 147-2 ¶ 73 (emphasis added). That reservation is not theoretical; as discussed above, CARB's longstanding practice is retroactive enforcement that covers periods where CARB did *not* have a waiver. *See also* Potter Decl. ¶¶ 7–8 (explaining that Omnibus emissions standards were applicable under state law during model year 2024 but a waiver was not received until January 2025); 90 Fed. Reg. 643, 644 (Jan. 6, 2025) (Omnibus waiver grant "for regulations applicable to … 2024 and subsequent model year[s]"). The present threat of retroactive enforcement is itself an attempt to enforce standards now.

Finally, Section 209(a)'s bar on "adopt[ing]" standards without a waiver independently entitles Plaintiffs to relief.[6] Although federal preemption may not prevent a State from installing a preempted regulation in the State's code, private entities' federal rights to engage in federally lawful conduct persist despite a State's adoption of a preempted rule. *See Murphy*, 584 U.S. at 478. Accordingly, the command in Section 209(a) that "No State shall … adopt" an emissions standard without a waiver

---

[5] *Available at* https://ww2.arb.ca.gov/sites/default/files/classic/msprog/nvepb/macs/_MACs/mac2002/mac2002.pdf [https://perma.cc/CP4R-GAKJ].

[6] Plaintiffs did not forfeit the argument that California may not adopt emissions standards without a waiver. *Contra* Mot./Opp. at 38 n.19. To the contrary, Plaintiffs' summary judgment brief argued that Defendants are not allowed to "*adopt* or attempt to enforce emissions standards and certification requirements … without a waiver of federal preemption," Pls.' MSJ at 1:2–5 (emphasis added), explained that "CARB *adopted* a series of emissions standards applicable" to Plaintiffs' products, *id.* at 2:20–21 (emphasis added), and concluded that each of these waiverless regulations "is preempted under Section 209(a) of the Clean Air Act," *id.* at 10:26–28. The point that CARB has violated Section 209(a) by adopting standards pervades the brief; it is not an argument made in passing.

Gibson, Dunn & Crutcher LLP

14

means that a waiverless standard is *immediately* preempted upon state law enactment. This is crucial here, where CARB's practice is to claim the right to retroactively enforce back to the state law adoption date. CARB's rules must be held preempted from the time of adoption, or else "manufacturer[s'] right[s] to sell federally approved vehicles" would be "meaningless," *EMA*, 541 U.S. at 255, because manufacturers must initiate compliance prior to CARB seeking—much less being granted—a waiver.

Arguing that Section 209(a)'s directive that "No State … shall adopt" emissions standards without a waiver means the *opposite* of what it says, *contra* 42 U.S.C. § 7543(a), Defendants cite a 1994 EPA rulemaking "constru[ing] 209(b) to permit California to seek a waiver after it has adopted motor vehicle standards," 59 Fed. Reg. 36,969, 36,982 (July 20, 1994). *See* Mot./Opp. at 38:16–18. But even in that rulemaking, EPA conceded that "sections 209(a) and (b) could be read to require California to obtain a waiver prior to adopting motor vehicle standards," as Section 209(a)'s plain text reads. 59 Fed. Reg. 36,969, 36,982. That concession proves EPA's contrary interpretation of Section 209 was just that: an interpretation. And EPA offered only a policy justification of efficiency in support of its interpretation. *Id.* It is now clear that this policy judgment is incompatible with the language of Section 209(a), the pre-waiver notice-and-hearing requirement of Section 209(b)(1), and a reality where CARB enforces rules back to state law adoption without regard to when a waiver is granted. This situation compels industry to comply with CARB rules during periods when there are no waivers, as OEMs face potentially significant noncompliance penalties if CARB enforces the rules retroactively, and violations tied to product sales are irrevocable once the products are sold, leaving OEMs with no possible cure. The Phase 2 GHG standards are a prototypical example of this problem.

Accordingly, Plaintiffs are entitled to a declaratory judgment establishing that (i) CARB cannot enforce the Phase 2 GHG standards—including retroactively—for any period in which a valid waiver was not in effect, and (ii) the Clean Air Act's four-year lead time runs from the date CARB obtains a waiver, not from the date of state law adoption.

### D.    Plaintiffs Are Entitled to Declaratory Judgment on the ACF 2036 ZEV Mandate.

CARB similarly asserts that a challenge to the ACF 2036 ZEV Mandate cannot yet be decided and manufacturers must wait for EPA's waiver decision. That argument makes even less sense because the Court has concluded that CARB has already attempted to enforce the ACF 2036 ZEV Mandate by

Gibson, Dunn & Crutcher LLP

seeking specific performance of the CTP. *See* Dkt. 94 at 31:1–6. In any event, CARB controls whether and when it seeks a waiver (indeed, CARB strategically withdrew its pending waiver application for ACF before the last Administration change), and as noted above, it sometimes waits years after promulgating a rule to request a waiver. *Supra* Section II.C. But Plaintiffs cannot wait years. If the ACF 2036 ZEV Mandate remains on the books, the scale of investment required—in vehicle research and development, manufacturing retooling, battery production, and charging infrastructure—is extraordinary and demands years of sustained effort. *See, e.g.*, Dkt. 23-22 (Hergart Decl.) ¶ 12 (explaining compliance with ZEV rules involves "critical business decisions that require significant advanced lead time," including "multibillion-dollar, multiyear" plans for battery manufacturing). Manufacturers must begin compliance efforts before CARB's position is tested in the statutorily required pre-waiver proceeding that Congress designed as a check on California's regulatory authority. Instead, without the benefit of public comments and the opportunity for manufacturers to raise technological feasibility concerns with EPA, Plaintiffs must invest now, plan now, and build now, or the 2036 deadline will become a practical impossibility.

As with the Phase 2 GHG standards, *see supra* Section II.C, Section 209(a)'s language forbidding California from "adopt[ing] … any standard relating to the control of emissions" for new vehicles and engines without a waiver entitles Plaintiffs to relief from the ACF 2036 ZEV Mandate. A judgment that this rule is preempted from the moment of adoption until a waiver is received follows from *Murphy*'s understanding of federal preemption provisions as "confer[ring] federal rights on private actors," *see Murphy*, 584 U.S. at 479–80—here, the right to follow federal emissions standards unless and until EPA waives preemption. CARB's adoption of this preempted rule entitles Plaintiffs to a declaratory judgment establishing that (i) this regulation cannot be enforced for any period in which a waiver was not in effect, and (ii) the four years of lead time required by the Clean Air Act begin when CARB obtains a waiver, not at the date of state law adoption.

**III.    Defendants' Attempts to Enforce Preempted Rules Are Unlawful. [Count II]**

**A.    CARB's Attempts to Enforce Preempted Standards Are Unlawful.**

Plaintiffs are entitled to relief from CARB's attempts to enforce its preempted emissions standards and certification requirements in violation of the Clean Air Act's mandate prohibiting states from

*attempting to enforce* emissions standards absent valid waivers and barring the imposition of certification requirements. 42 U.S.C. § 7543(a). "A command, accompanied by sanctions" is an "attempt to enforce" preempted by Section 209(a). *EMA*, 541 U.S. at 255. CARB is attempting to enforce its standards through multiple avenues: (i) the CTP, (ii) threats of retroactive enforcement in the August MAC and Emergency Rulemaking, and (iii) implementing preempted rules in a certification program as a condition precedent for sale into the state. Pls.' MSJ at 15:16–19:6. Defendants attempt to narrow Section 209's prohibition on attempts to enforce, but once again they ignore the Supreme Court. An "attempt to enforce" is not limited to the actual imposition of penalties; it includes steps preliminary to that action. *EMA*, 541 U.S. at 257. Defendants have taken many such preliminary steps; Plaintiffs are entitled to summary judgment finding all of them unlawful. *See* Pls.' MSJ at 13:14–19:6.

Despite acknowledging *EMA*'s broad interpretation of "attempt[s] to enforce," Mot./Opp. at 55:28–56:1, Defendants try to distinguish between explicitly defining penalties and referencing statutes that expose manufacturers to penalties, Mot./Opp. at 56:12–13. That attempted distinction ignores the Supreme Court's holding that Section 209(a)'s specific prohibition against attempts to enforce depends on the practical impact of regulatory conduct. *EMA*, 541 U.S. at 257. The practical reality is that the MACs (and CTP) direct OEMs to obtain CARB certifications as a condition for lawful sales in California and threaten that failure to do so may incur substantial penalties. *E.g.*, May 2025 MAC, Dkt. 145-10, at 2 (certification required "to enable lawful vehicle sales" under statutory provisions that carry penalties for violations), August 2025 MAC, Dkt. 145-11 at 2–3 (mandating certification pursuant to preempted regulations, the CTP, or "alternative pathways"); CTP App'x B at i–ii nn.1–5 (incorporating regulations with penalties for violations). Whether the penalties are written out in the document or incorporated by reference to a regulation makes no difference to the outcome. Defendants' actions therefore constitute "attempts to enforce" emission standards and are preempted.

Defendants next argue that, because the California Legislature initially established the certification requirements and corresponding penalties for failure to certify to CARB's emission standards as a matter of California law, any direction by CARB that OEMs must continue to certify to preempted standards under risk of sanctions cannot be "attempts to enforce." Mot./Opp. at 56:4–9; 56:10–12. But the issue under the Clean Air Act is not who between Defendants or the California Legislature

Gibson, Dunn & Crutcher LLP

17

originally established the state certification requirements and penalties, or if the certification requirements and penalties predate the MACs or CTP. Mot./Opp. at 56:4–9. Instead, the issue is that Defendants are currently *attempting to enforce* preempted emissions standards and certification requirements by creating *an effective compliance mandate*. Whether this mandate arises from requiring certification "to enable lawful vehicle sales," May 2025 MAC, Dkt. 145-10, at 2, threatening to later penalize conduct that is lawfully undertaken now, *e.g.*, August 2025 MAC, Dkt. 145-11, at 3, or subjecting manufacturers to unfavorable regulatory treatment, *e.g.*, *id.*, it is prohibited under Section 209(a)—which does not distinguish between state statutes and regulations. *See EMA*, 541 U.S. at 255.

Defendants' attempt to characterize retroactive enforcement threats as just a "reservation of rights" likewise fails. Mot./Opp. at 56:22–57:15. Defendants cannot reserve a right that, under the broad language of Section 209, they do not have. Defendants lack waivers for their emissions standards *now*; they admit they do not have a right to enforce their emissions standards presently. *See* Mot./Opp. at 57:5–6 (arguing that its rights "would only materialize *if secured by court order*"). For Section 209's waiver requirement to have any meaning, sales undertaken during a period when CARB lacks a waiver must be subject only to federal law—including retroactively. Otherwise, OEMs will be forced to perpetually follow CARB rules, regardless of whether the rules have a waiver—or ever receive one—based on the possibility that CARB later gains the right to enforce them. That is not the balance struck in Section 209.

### B.    Governor Newsom's Executive Order Attempts to Enforce Preempted Standards.

Both of Defendants' arguments as to why Governor Newsom's Executive Order ("EO") is allegedly not an attempt to enforce preempted standards fall short. First, Defendants argue the EO fits within the "market participant exception" to preemption, while ignoring that the EO goes well beyond simple market participation. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1045 (9th Cir. 2007) (rule directs government entities to procure vehicles that meet air pollution requirements); *United States v. King Cnty.*, 122 F.4th 740, 759 (9th Cir. 2024) (state does not act as a market participant when the rule has an "obvious policy and regulatory basis"). The EO links state decisions about "offer[ing] public incentives and subsidies" and "directing state funds" with manufacturers' continual compliance with preempted rules. Dkt. 130-12 at 2–3. The EO further instructs CARB

and other agencies to report back to Governor Newsom every six months regarding manufacturers' progress towards meeting CARB's preempted standards. Dkt. 130-12 at 3. A state does not act as a market participant when the effect of its rule is "tantamount to regulation." *Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 289 (1986). That is the case here.

Second, Defendants contend that the EO cannot be an attempt to enforce the preempted standards because the EO does not include a direct command to manufacturers to comply. Dkt. 149 at 58–59. But that is not the standard. 42 U.S.C. § 7543(a); *EMA*, 541 U.S. at 257 ("[T]he term 'attempt to enforce' … is not limited to the actual imposition of penalties for violation, but includes steps preliminary to that action."). Indeed, as Plaintiffs' opening brief discussed at length, the EO directs CARB to continue implementing the CTP and the regulatory architecture on which that framework is predicated—an architecture built around the very standards that Section 209(a) renders unenforceable absent a waiver. Dkt. 130-1 at 8, 10, 13–15, 18–20. But the EO does not end there: Governor Newsom's office directly requires agencies to submit recommendations for "development, assessment, and implementation" of additional emissions actions to his office, and to report manufacturer compliance with emissions standards every six months. Dkt. 130-12 at 3. The EO is not just an instruction for setting policy, but a description of an enforcement regime and monitoring of the preempted standards at issue here.

**C.    Governor Newsom Is Not Immune from Plaintiffs' Claims.**

Plaintiffs have demonstrated Governor Newsom's direct connection to the enforcement of the preempted emissions standards and the CTP. Dkt. 130-1 at 9–10, 18–20. His EO expressly directs CARB to uphold the preempted emissions standards and the CTP and requires CARB to report to him every six months on progress towards those commitments. Dkt. 130-12 at 3. That directive—combined with his ongoing monitoring scheme—places him squarely within the enforcement chain and makes him a proper defendant. He has the direct authority to enforce his own EO, Defendants' arguments notwithstanding. His EO has enabled and reinforced CARB's enforcement of those preempted standards, effectively supplying the State's official stamp of approval to circumvent federal law.

Defendants' argument that "the EO is not enforceable against OEM Plaintiffs at all" misses the mark. Mot./Opp. at 59. The Ninth Circuit has long held that the lack of an enforcement proceeding does not immunize defendants. *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

Defendants rely on out-of-circuit authority and unreported district court decisions, none of which are controlling here. Dkt. 149 at 59–60. Nor does this case resemble *Forward, Inc. v. Macomber*, where the court found sovereign immunity because the plaintiff failed to allege any specific connection between the defendants and the challenged violations. 173 F.4th 1121, 1125 (9th Cir. 2026).

## IV. Defendants' Legal Arguments for Summary Judgment Are Flawed.

The legal arguments for Defendants' cross-motion for summary judgment are indistinguishable from those raised in opposing Plaintiffs' summary judgment motion. All of these arguments have been dismantled above. *Supra* Sections I–III. Plaintiffs thus will not repeat those same legal arguments in opposition to Defendants' cross-motion. The only exception is standing, which is discussed below.

### A. Plaintiffs Have Shown Standing as a Matter of Law.

Defendants make much noise over whether Plaintiffs have standing, asserting Plaintiffs should have filed declarations to demonstrate injury as the moving party. This is incorrect; Plaintiffs have standing under Supreme Court precedent to challenge regulations applicable to their businesses as a matter of law, affirmed only last year in the context of Section 209 litigation.

When a plaintiff is the "object" of a government regulation, there is "ordinarily" "little question" that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655–56 (9th Cir. 2011) (hospice provider had standing to challenge a regulation that "was directly applied to [the provider] and exposed it to individual liability"). Most recently, in *Diamond Alternative Energy*, the Supreme Court instructed that courts must recognize "commonsense economic realities" when evaluating standing, particularly in evaluating the "likely (not certainly, but likely)" impact of government regulation on industry. 606 U.S. at 116. There, commonsense economic principles demonstrated how California regulations forcing automakers to manufacture more electric vehicles injured downstream fuel producer plaintiffs. *Id.* at 118–19. Here, Plaintiffs' injury is even clearer and more direct because Plaintiffs are the *immediate objects* of all of CARB's regulations at issue, and Defendants make no argument to justify deviating from this longstanding caselaw and common sense.

Moreover, regulated parties have standing to seek relief from such injuries *pre-enforcement*.

Defendants contend there is no credible threat of enforcement because they say they will not enforce Phase 2 GHG standards and ACF 2036 ZEV Mandate or follow through on their threats of retroactive enforcement in the Emergency Rulemaking and August MAC until some future time, Mot./Opp. 34:15–25, 54:11–19; but they ignore well-developed caselaw permitting pre-enforcement challenges to declare the legality of *future* regulatory actions. In *Abbott Laboratories v. Gardner*, the Supreme Court found "no question" that manufacturers seeking pre-enforcement declaratory and injunctive relief had standing because "the regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the [regulation] they are quite clearly exposed to the imposition of strong sanctions." 387 U.S. 136, 154 (1967); *see also, e.g., Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–64 (2014) (party intending to engage in arguably proscribed conduct and facing a substantial threat of future enforcement need not wait for prosecution to sue); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) ("The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" (*quoting Abbott Lab'ys.*, 387 U.S. at 152)).

Applying these principles, the Ninth Circuit has repeatedly found pre-enforcement standing where regulated parties face a credible threat of government enforcement, as Plaintiffs do here. *See Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 486–90 (9th Cir. 2024) (a "substantial threat of enforcement"—often shown by an agency's refusal to disavow enforcement—establishes injury-in-fact); *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024) (trade association had standing to challenge ordinance because members faced a "credible threat" of "probabilistic harm" even without "a date certain" for any member's action); *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 652–54 (9th Cir. 2021) (trade association had standing to bring pre-enforcement challenge where California sent a letter notifying businesses that the challenged standard must be used); *Arizona v. Yellen*, 34 F.4th 841, 850–51 (9th Cir. 2022) (finding pre-enforcement standing where the Secretary of the Treasury sent a letter confirming enforcement of a provision that the States did not want to comply with). The law is clear and the issue is not close: Plaintiffs have standing to maintain their claims in this case challenging Defendants' various regulatory actions.

## B.      While Not Required, Additional Evidence Supports Standing.

In light of the clear law described above, Defendants are wrong that any affidavits or additional evidence are required. Regardless, the existing record already demonstrates the obvious intuition behind the caselaw: Plaintiffs have suffered, continue to suffer, and face imminent threat of injury by Defendants under the challenged regulations and regulatory actions, as this Court previously found under a higher standard. *See* Dkt. 94 at 31:11–33:17.[7]

To start with the most obvious, it is undisputed that Defendants continue to *require* Plaintiffs to apply for and obtain CARB certifications. Plaintiffs have already described the significant and unrecoverable expenses of complying with CARB's preempted certification requirements, which demonstrates ongoing injury from at least the August MAC and Emergency Rule, which currently require certification. *See* Dkt. 23-15 (Potter Decl.) ¶ 10 (describing CARB certification fees, among other resources required for CARB certification); Dkt. 23-20 (Noonan Decl.) ¶¶ 6–7 (similar); Dkt. 23-23 (Brown Decl.) ¶¶ 11–12 (similar). The record is also clear that Plaintiffs are injured by the regulatory uncertainty caused by *all* of the challenged regulations and actions. Dkt. 23-15 (Potter Decl.) ¶¶ 12–14; Dkt. 23-23 (Brown Decl.) ¶¶ 13, 20; Dkt. 23-22 (Hergart Decl.) ¶ 12; Dkt. 23-20 (Noonan Decl.) ¶¶ 10–14. Those harms are compounded by Defendants' explicit threats of retroactive penalties and other punishment. *See supra* Section III.

Defendants' standing arguments regarding the ACF 2036 ZEV Mandate and Phase 2 GHG standards similarly fail. Plaintiffs suffer an ongoing injury as long as the ACF 2036 ZEV Mandate and Phase 2 GHG standards remain (unlawfully) on California's books. CARB's state court action in Alameda County to enforce the ACF 2036 ZEV Mandate through the CTP likewise remains pending. As company witnesses have explained, the ACF 2036 ZEV Mandate results in ongoing injury now, as the companies need significant lead time to plan for a complete transformation of their industry. *See, e.g.,* Dkt. 23-22 (Hergart Decl.) ¶ 12. By keeping its unlawfully adopted regulations on the books, CARB

---

[7] The Court must assume that CARB's standards are preempted for purposes of the standing analysis. So, for example, it must consider OEM Plaintiffs' standing to challenge CARB's ACF 2036 ZEV mandate with the assumption that Defendants illegally adopted the mandate, and it must assume that CARB's reservations of retroactive enforcement in the Emergency Rulemaking is a preempted attempt to enforce. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022).

Gibson, Dunn & Crutcher LLP

pressures Plaintiffs into a choice: begin compliance *now*—including the enormous investment necessary to design and produce heavy-duty ZEV trucks at scale—or face the risk of future enforcement.

And while the current record requires no supplementation to prove standing, the evidence submitted alongside this opposition easily settles this issue:[8]

*Phase 2 GHG Standards*. CARB has required Plaintiffs to certify to the Phase 2 GHG standards as a condition of sale since model year 2021 (i.e., in 2020), despite never obtaining an EPA waiver for those standards. *See, e.g.*, MAC 2020-02, *supra* n.5 ("certification and associated reporting requirements of the [Phase 2] regulation … became effective on April 1, 2019"); *see also* Cal. Code Regs. tit. 17, § 95663 (Phase 2 GHG standards have facially applied to manufacturers since model year 2021). Defendants' assertion that they will not enforce these standards without a waiver, Dkt. 147-3 (Lang Decl.) ¶ 55, is belied by their statements elsewhere that they will retroactively enforce their emissions standards back to state law adoption. Thus, Plaintiffs are actively forced to consider these preempted standards in product planning and development both presently and on an ongoing basis. Potter Decl. ¶¶ 11–13; Brown Decl. ¶¶ 11–15, 16.a; Noonan Decl. ¶ 7.

*ACF 2036 ZEV Mandate*. CARB's 100 percent zero-emission vehicle sales mandate in model year 2036 requires Plaintiffs to take steps now to fundamentally restructure their businesses and product lines to achieve a complete ban on internal-combustion-engine heavy-duty trucks. Plaintiffs are injured because compliance planning must begin immediately—including investing in design, production capacity, and infrastructure for zero-emission vehicles at scale—or they risk falling behind, even though the charging infrastructure and customer demand necessary to support such a transition do not yet exist. Potter Decl. ¶ 14; Hergart Decl. ¶ 16; Noonan Decl. ¶ 8.

*Clean Truck Partnership*. Through the CTP, CARB seeks to compel Plaintiffs to certify

---

[8] Ninth Circuit precedent does not require that OEM Plaintiffs prove standing in their opening motion for summary judgment. *Contra, e.g.*, Mot./Opp. at 54:3–6. If Defendants were taken seriously, every summary judgment motion filed by a plaintiff would need to start with an exegesis on standing—this is plainly not the law. Because Defendants have raised standing in *their* cross-motion for summary judgment, Plaintiffs may file declarations in opposition. *See Williams v. Boeing Co.*, 517 F.3d 1120, 1128 (9th Cir. 2008) ("Because [Defendant] did not move for summary judgment on standing grounds, Plaintiffs were never forced to come forward with 'specific facts' to support their standing for [their] claim."); Fed. R. Civ. P. 56(c)(4) (declarations may be filed "to support *or oppose* a motion") (emphasis added).

Gibson, Dunn &
Crutcher LLP

compliance with the preempted ACT, Omnibus, and ACF standards, and CARB has filed a breach-of-contract action in Alameda County seeking specific performance and monetary penalties for noncompliance. Plaintiffs are injured because they face an impossible choice between complying with preempted state standards at enormous cost and risking significant liability and the loss of customer goodwill from regulatory noncompliance, all while simultaneously facing federal directives to cease compliance with those same standards. Potter Decl. ¶ 15; Hergart Decl. ¶¶ 12, 15. If the CTP is used to mandate compliance with ACT, Plaintiffs will be forced to invest substantial resources in developing and marketing zero-emission trucks for which there is little customer demand and inadequate charging infrastructure. Potter Decl. ¶ 17; Noonan Decl. ¶ 8; Hergart Decl. ¶¶ 13, 15–16. Plaintiffs will further be harmed because ACT's credit-deficit system forces Plaintiffs to restrict sales of certain conventional vehicles in California or purchase credits at significant cost. Potter Decl. ¶ 17, Noonan Decl. ¶ 8. If the CTP mandates compliance with Omnibus, Plaintiffs will be forced to invest annually in emissions testing, engine aging, and certification fees for a California-specific certification—investments irrecoverable against a sovereign defendant. Potter Decl. ¶ 16; Brown Decl. ¶ 17; *see also* Dkt. 23-20 (Noonan Decl.) ¶¶ 6–14; Dkt. 23-15 (Potter Decl.) ¶ 10. Plaintiffs also will be subject to a technologically infeasible NOx emissions standard starting in model year 2027 that could render them unable to sell trucks in California. Potter Decl. ¶¶ 9, 16. And, because the CTP obligates manufacturer signatories to obey Omnibus outside of California, CTP App'x D ¶ B, these same restrictions limit Plaintiffs' ability to offer products in as many as nine other states starting in model year 2027.[9]

This Court has already found "concrete, irreparable harm due to the attempted enforcement [of the CTP] by CARB through its recently-filed [state court] lawsuit …." Dkt. 94 at 32:7–8. Because Plaintiffs satisfy the higher threshold for irreparable harm, they necessarily satisfy the lower threshold for Article III standing. *See Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1025 n.8 (E.D. Cal. 2013) ("Establishing injury-in-fact for purposes of standing is less demanding th[a]n demonstrating irreparable harm to obtain injunctive relief.").

---

[9] CARB, "States that have Adopted California's Vehicle Regulations," https://ww2.arb.ca.gov/states-have-adopted-californias-vehicle-regulations (last visited June 22, 2026) (showing Heavy-Duty Omnibus adoption in model year 2027 or earlier in Colorado, Massachusetts, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington).

Gibson, Dunn & Crutcher LLP

24

*May and August MACs*. Through the May MAC, CARB required Plaintiffs to certify to preempted standards as a condition of lawful vehicle sales in California, backed by per-vehicle penalties of up to $48,788. Dkt. 145-10 at 2 (citing Cal. Health & Safety Code § 43151, violations of which are assessed under § 43154(a)(1)). Contrary to Defendants' protests, the August MAC does not moot Plaintiffs' claims, as voluntary cessation of challenged conduct moots a case "only if the defendant can show that the practice cannot 'reasonably be expected to recur'"—a "formidable burden" Defendants have not met. *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Far from a cessation, the August MAC represents an escalation of the May MAC's threats, and Defendants have identified no procedural safeguards against reissuance. The August MAC's so-called "alternative pathways" are illusory, as Plaintiffs that certify through any pathway other than full Omnibus compliance remain subject to CARB's reserved right of retroactive enforcement. *See* Dkt. 145-11 at 2. Plaintiffs are further injured because the August MAC continues to require certification with CARB—under any of the so-called pathways—when Plaintiffs otherwise would have a federal right to sell federally approved vehicles in California without CARB's certification, a process that creates significant expense. Finally, the August MAC's threat of retroactive enforcement pressures present compliance with preempted regulations. Potter Decl. ¶¶ 13, 19–20; Brown Decl. ¶¶ 6–7, 10–16; Hergart Decl. ¶¶ 10, 12, 15; Noonan Decl. ¶ 5.

*Emergency Rulemaking*. CARB's Emergency Rulemaking adopts a novel patchwork of superseded standards without obtaining a new waiver or within-the-scope determination, and it codifies CARB's threat of retroactive enforcement in the California Code of Regulations. Plaintiffs are injured by these new rules because the Emergency Rulemaking forces them to assume the risk of retroactive penalties for noncompliance with the preempted standards and compels them to continue incurring substantial costs of CARB-specific certification. *See, e.g.*, Dkt. 23-15 (Potter Decl.) ¶ 10 (noting that DTNA faced certification fees in 2026 attributable to CARB's certification requirements of more than $2.7 million); Potter Decl. ¶¶ 20, 26–27; Brown Decl. ¶¶ 8–16; Hergart Decl. ¶¶ 10, 12, 15; Noonan Decl. ¶ 5.

*Executive Order N-27-25*. Defendants' single paragraph out of 60 pages of briefing arguing that

Gibson, Dunn &
Crutcher LLP

Plaintiffs lack standing to challenge Governor Newsom's EO due to an alleged absence of injury fails to engage with the undisputed plain language and intent of the EO and the factual reality of the heavy-duty truck and engine design and manufacturing process. Mot./Opp. at 57:18–58:6. The EO, like the May and August MACs and Emergency Rulemaking, is an official act whose existence and terms are undisputed. Pls.' MSJ at 8:16–9:4. Governor Newsom's EO directs CARB to penalize Plaintiffs that decline to certify compliance with preempted standards by restricting their access to funding for zero-emission vehicle purchases and withholding "special considerations and flexibilities" in future rule-makings. Dkt. 145-12 at 3. Plaintiffs are injured because these punitive measures, and the threat thereof, impose and threaten concrete financial and regulatory disadvantages on any manufacturer that exercises its federal right not to certify to preempted state standards. *See, e.g.*, *Nat'l Pub. Radio, Inc. v. Trump*, No. CV 25-1674 (RDM), 2026 WL 877434, at *16 (D.D.C. Mar. 31, 2026) (holding that an executive order barring plaintiffs from receiving funding in the relatively near future was a concrete injury suffi-cient for standing); Potter Decl. ¶ 21; Brown Decl. ¶ 13; Hergart Decl. ¶¶ 12, 16; Noonan Decl. ¶¶ 4–5.

These circumstances establish standing injury, and Plaintiffs need not wait for CARB to *seek* retroactive penalties before seeking clarity from this Court—that's the very purpose of a declaratory judgment action. *See MedImmune, Inc*, 549 U.S. at 128–29; *Peace Ranch*, 93 F.4th at 487 (describing "the dilemma facing a pre-enforcement plaintiff" as the choice between "the rock … and the hard place," "the Scylla … and the Charybdis," or the choice to comply or "bet the farm" (internal citations omitted)).

### C.   Defendants' Counterarguments Fail to Rebut Plaintiffs' Standing.

Defendants' counterarguments all fail. First, Plaintiffs' representations to the Federal Trade Commission ("FTC") cannot deprive the OEMs of standing to seek a declaratory judgment. The FTC letters establish that the OEMs will not comply with the preempted CTP after the United States took the position that doing so could violate federal law. *See* Dkt. 73-38 at 2 (Daimler); Dkt. 73-39 at 2 (International); Dkt. 73-40 at 2–3 (PACCAR); Dkt. 73-41 at 2 (Volvo); *see also* Potter Decl. ¶ 15; Hergart Decl. ¶ 15. The contradiction here between the federal government's position and Defendants' CTP demands is the very choice between "the rock … and the hard place" that led Plaintiffs to seek a

judgment from this Court clarifying their legal obligations. *See Peace Ranch*, 93 F.4th at 487. Plaintiffs' statements that they will not comply with the CTP are what expose them to CARB's pending Alameda County breach of contract action, Executive Order N-27-25's threats of regulatory and procurement penalties, and Defendants' threats of retroactive enforcement authority and penalties. Unsurprisingly, then, in reaching the conclusion that Plaintiffs have shown a risk of irreparable harm from the CTP, this Court expressly considered the FTC letters that CARB now claims deprive Plaintiffs of standing. *See* Dkt. 94 at 31:11–32:10.

Next, Defendants' arguments about the benefit of the bargain are irrelevant. Mot./Opp. at 41. Federal law changed following execution of the CTP, yet Defendants seek to enforce that agreement (and the regulations therein), notwithstanding federal preemption. *Supra* Section I. Defendants' case citations are inapposite. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (states' claimed injuries were caused by their own tax laws); *Iten v. Los Angeles*, 81 F.4th 979, 990 n.1 (9th Cir. 2023) (for Contract Clause claims, a statute cannot be said to cause injury if the contract in question was signed *after* the statute was enacted). Defendants cite nothing suggesting *they* can sue to enforce an unconstitutional "agreement," but *Plaintiffs* lack standing to seek a declaration that the same agreement is preempted.

Finally, Defendants' redressability arguments predicated on the Anti-Injunction Act ("AIA") are easily dismissed. Plaintiffs' claim targets the CTP *generally*, not the Alameda County action *specifically*; that action was brought months after OEM Plaintiffs filed this suit, on the eve of the preliminary injunction hearing. If the government could wield the AIA to defeat standing so easily, pre-enforcement challenges would be impossible. That is not the law. Standing is evaluated as of the outset of the suit. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry" focuses "on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."). Regardless, the declaratory judgment sought here does not "have the same effect as an injunction." *California v. Randtron*, 284 F.3d 969, 975 (9th Cir. 2002). Unlike an injunction, a declaration is "a less drastic declaration of rights" that "would not preclude the state court" from deciding the case pending before it. *H.J. Heinz Co. v. Owens*, 189 F.2d 505, 509 (9th Cir. 1951); *accord Cal. Inst. of Tech. v. City of Pasadena*, 2024 WL 6938009, at *15–16 (C.D. Cal. Aug. 23, 2024) (AIA did not bar declaratory

Gibson, Dunn & Crutcher LLP

27

judgment on federal question underlying parallel state suit). In any event, the AIA does not apply to the United States, *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 225–26 (1957), which also seeks relief as to the CTP here. "'[T]he presence of one party with standing is sufficient' to permit [the Court] to reach the merits …." *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1164 (9th Cir. 2024) (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)).

### D.   Defendants' Cross-Motion Relies on Facts That, If Material, Are Disputed.

Defendants cross-move for summary judgment on the basis of incorrect legal standards and 122 facts that are immaterial to Plaintiffs' entitlement to summary judgment. For example, Defendants argue that they are entitled to summary judgment because the CTP is supposedly a voluntary agreement. Mot./Opp. at 43:21–49:15. But as explained above, *supra* Section I, voluntariness is not the operative legal standard. All of Defendants' facts on the subject are immaterial under the correct legal standard. Regardless, Defendants' facts are also disputed. Taking again the voluntariness example, Plaintiffs dispute that the CTP was voluntary when it was the product of negotiations conducted by a regulator threatening imminent enforcement of unlawful regulations lacking a preemption waiver. Potter Decl. ¶¶ 7–9. Either way, Defendants' motion must be denied.

### CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment and deny Defendants' cross-motion for summary judgment on all Counts.

Dated: June 26, 2026

_____
BENJAMIN WAGNER, SBN 163581

**GIBSON, DUNN & CRUTCHER LLP**
BENJAMIN WAGNER, State Bar No. 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5395
Facsimile:    650.849.5095
BWagner@gibsondunn.com
RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715

Telephone:     415.393.8293
Facsimile:     415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
JACOB T. SPENCER, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone:     202.955.8500
Facsimile:     202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
JSpencer@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

*/s/ Robin M. Hulshizer*
(as authorized on June 26, 2026)
ROBIN M. HULSHIZER, SBN 158486

**LATHAM & WATKINS LLP**

ROBIN M. HULSHIZER, SBN 158486
ARTHUR FOERSTER, *pro hac vice*
KEVIN M. JAKOPCHEK, *pro hac vice*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com

BELINDA S. LEE, SBN 199635
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*

*/s/ Jeffrey M. Goldman*
(as authorized on June 26, 2026)
JEFFREY M. GOLDMAN, SBN 233840

**TROUTMAN PEPPER LOCKE LLP**

JEFFREY M. GOLDMAN, SBN 233840
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:     213.928.9800

*/s/ Joseph A. Ostoyich*
(as authorized on June 26, 2026)
JOSEPH A. OSTOYICH (pro hac vice)

**CLIFFORD CHANCE LLP**

JOSEPH A. OSTOYICH, *pro hac vice*
WILLIAM LAVERY, *pro hac vice*
STEVE NICKELSBURG, *pro hac vice*
DANIELLE MORELLO, *pro hac vice*
DOROTHEA R. ALLOCCA, *pro hac vice*
2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com
dodi.allocca@cliffordchance.com

**ILLOVSKY GATES & CALIA LLP**

EUGENE ILLOVSKY, SBN 117892
KEVIN CALIA, SBN 227406
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: 415.500.6643
Eugene@illovskygates.com
Kevin@illovskygates.com

*Attorneys for Plaintiff PACCAR Inc*

Gibson, Dunn & Crutcher LLP

29

Facsimile:      213.928.9850
jeffrey.goldman@troutman.com

T. SCOTT MILLS, SBN 313554
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:      404.885.3000
Facsimile:      404.885.3900
scott.mills@troutman.com

JEREMY HEEP, *pro hac vice*
DANIEL J. BOLAND, *pro hac vice*
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:      215.981.4000
Facsimile:      215.981.4750
jeremy.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North America, LLC*

30

REPLY ISO PLS' MSJ & OPP. DEFS.' CROSS-MSJ
CASE NO. 2:25-CV-02255-DC