## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,

Plaintiffs,

v.

STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,

Defendants.

THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Plaintiffs-Intervenors,

v.

CALIFORNIA AIR RESOURCES BOARD; and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,

Defendants.

Case No. 2:25-cv-02255-DC-AC

**DECLARATION OF CARL HERGART ON BEHALF OF PACCAR INC IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

I, Carl Hergart, pursuant to 28 U.S.C. § 1746, state and declare:

1.    I am over eighteen years of age. If called to testify in this matter, I can and will competently testify to the following facts, of which I have personal knowledge, personal experience, and personal participation in communications with business associates.

2.    I am a resident of Sammamish, Washington.

3.    I received my Master of Science in Engineering Physics from Lund University of Sweden in 1996, and thereafter I obtained my PhD in mechanical engineering from RWTH Aachen University in Aachen, Germany in 2001, specializing in diesel engine development.

4.    While studying for my PhD, I started my career as an engineer in the automotive industry, working at Ford Motor Company in Germany from 1997 to 2002 and later as a senior engineer for General Motors in the U.S. from 2003 to 2005. I then worked in the off-road vehicle industry at Caterpillar, Inc. in Peoria, Illinois for nine years managing various groups in the engine research and development organization. I am the holder of 17 patents in the areas of engine- and powertrain design, and cloud-based data analytics.

5.    Since 2014, I have worked at PACCAR Inc ("PACCAR"), initially serving as a Director of Advanced Powertrain and subsequently as Chief Engineer for Leyland Trucks in the UK. I currently serve as a Senior Director Global Powertrain Planning, Agency Relations, and Powertrain Aftersales.

6.    In that role, I am responsible for product planning and strategy as well as powertrain definition, integration, and aftersales. This includes powertrain product planning and development including internal combustion engines, as well as electrified powertrains.

7.    Several years ago, California received EPA waivers to enforce its emission standards for heavy duty trucks, and PACCAR signed the Clean Truck Partnership agreement ("CTP") in 2023 stating that the company would follow those emissions-related standards.

8.    For approximately the past two years a number of things have happened to call the validity of the CTP in question, including CARB's decision to withdraw the Advanced Clean Fleets ("ACF") waiver, which means there is no regulatory requirement for customers to buy zero-emission vehicles, and the Congressional Review Act ("CRA") action which invalidates the EPA waivers. In

1

DECLARATION OF CARL HERGART
CASE NO. 2:25-CV-02255-DC

addition to these regulatory changes, I also note that the necessary infrastructure to support heavy-duty battery-electric trucks, including charging stations, is not in place in California or elsewhere in the United States and is not likely to be sufficient to allow for wide-scale adoption of zero-emission vehicles any time soon. Customer demand for battery-electric trucks is very low. PACCAR's dealers and customers have raised a number of concerns, including the limited range of battery-electric vehicle product offering, the expense associated with both the acquisition and operation of battery-electric vehicles, and the effect the added weight of the batteries would have in reducing truck payload and revenue.

9. PACCAR is a global leader in the design, manufacture and customer support of premium light-, medium and heavy-duty trucks under the Kenworth, Peterbilt and DAF nameplates. The development of a truck is a lengthy and complex process that takes years of hard work, significant engineering time and major financial investments.

10. Whereas the federal regulations are clear and the CRA revokes CARB's EPA waivers invalidating CARB's Omnibus and ACT regulations, California is challenging the CRA decision in court and continues to uphold regulations for which they have no preemption waivers. California is also threatening to retroactively enforce its CARB regulations as part of its Emergency Rulemaking, making it even more critical to gain clarity on what requirements apply in California.

11. There is no quick resolution of this uncertainty on the horizon. CARB sued the EPA in the Northern District of California claiming the CRA itself is invalid, but my understanding is that lawsuit could take years to resolve.

12. As a result, PACCAR is caught in a tug of war between two enforcement authorities— CARB and EPA—both of whom have authority to impose significant financial penalties for non-compliance with their mandates and both of whom can refuse certification of engine families, precluding the sale of commercial vehicles with direct harm to PACCAR and resulting downstream harm to dealers, customers, and the public.

13. This tension is particularly difficult given the current lack of customer demand for Low NOx engines, and zero-emission vehicles, including battery-electric trucks, exacerbated by the lack of charging infrastructure to support the proliferation of battery-electric trucks.

14.    For PACCAR's 50 mg Low NOx MX-13 Engine, demand has been much lower than previously forecasted. PACCAR has continued to offer this 50 mg Low NOx engine, but there have been no sales over the past year, including to California local governments and municipalities who claim to have made local air quality a priority.

15.    The EPA, DOJ, and FTC have made it clear to CARB and the industry that federal standards control, yet CARB is attempting to maintain the right to retroactively enforce ACT and Omnibus through the Emergency Rulemaking. These CARB standards are still hanging over our heads. The current regulatory uncertainty leaves us in limbo on critical business decisions that require significant advanced lead time. For example, if ACT is valid, we need to accelerate certain enhancements to our battery-electric product portfolio. We are a partner in a joint venture that is engaged in an estimated multibillion-dollar, multi-year effort to establish domestic manufacturing of batteries, and the revocation of the ACT waiver has caused us to slow this project and is impacting how we invest and the timing of those investments for that joint venture.

16.    PACCAR is nevertheless progressing with its North America battery-electric vehicle launch this year, which is an update to our current product offerings that began prior to the CRA. This battery-electric vehicle development has been a multi-hundred-million-dollar effort for PACCAR, and the projected volumes of battery-electric trucks are now much lower than originally forecasted because there is very little demand in California and anywhere in the United States. We are now focusing on segments that lend themselves to electrification, such as urban distribution and return-to-base operations with limited daily range. While PACCAR plans to continue developing new trucks with new capabilities, we are being forced to make critical and expensive decisions about where to prioritize our investment efforts without regulatory clarity, under the threat of competing enforcement directives from state and federal regulators. These are decisions that need to be made in the coming months and, in some cases, weeks given the lead time, effort, and investment requirements for new trucks and aftermarket support. Regardless of whether ACT is valid, we remain committed to developing the right products for our customers, whether powered by diesel engines, or battery-electric power. Battery-electric trucks may be a good solution for certain customers. However, long-haul customers struggle to justify purchasing trucks that are more expensive than a comparable diesel vehicle because of the

3

DECLARATION OF CARL HERGART
CASE NO. 2:25-CV-02255-DC

much higher costs PACCAR incurred to design, test, and manufacture a functional battery-operated vehicle, including the development of the battery technology and significant and necessary changes to the powertrain. The higher cost to design and make a BEV is not overcome by performance advantages, unfortunately: they have about a quarter of the range, carry only a fraction of the payload and take hours to charge—if customers are lucky to find a charging station. ACT requires OEMs to sell increasing percentages of zero emission trucks but there is no regulatory requirement for customers to purchase them. It is not tenable for PACCAR to wait for the resolution of CARB's lawsuit against the administration to get clarity on whether the CARB regulations are valid or not, given the need for us to make important decisions imminently.

17.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 26, 2026.

Carl Hergart

4