GIBSON, DUNN & CRUTCHER LLP
BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA  94301-1744
Telephone:     650.849.5395
Facsimile:     640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:     415.393.8293
Facsimile:     415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER, *pro hac vice*
MIGUEL A. ESTRADA, *pro hac vice*
JACOB T. SPENCER, *pro hac vice*
VERONICA J.T. GOODSON, SBN 314367
1700 M Street N.W.
Washington, D.C.  20036-4504
Telephone:     202.955.8500
Facsimile:     202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
JSpencer@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*
(additional counsel on signature pages)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

DAIMLER TRUCK NORTH AMERICA LLC, INTERNATIONAL MOTORS, LLC, PACCAR INC, and VOLVO GROUP NORTH AMERICA LLC,

Plaintiffs,

v.

STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board; and GAVIN NEWSOM, in his official capacity as the Governor of California,

Defendants.

_____

THE UNITED STATES OF AMERICA, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Plaintiffs-Intervenors,

v.

CALIFORNIA AIR RESOURCES BOARD; and STEVEN S. CLIFF, in his official capacity as the Executive Officer of the California Air Resources Board,

Defendants.

Civil Action No. 2:25-cv-02255-DC

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

Judge:          Hon. Dena Coggins
Action Filed:   August 11, 2025

1

Pursuant to Rule 56(a) and (c) of the Federal Rules of Civil Procedure and Local Rule 260(b), Plaintiffs Daimler Truck North America LLC, International Motors, LLC, PACCAR Inc, and Volvo Group North America LLC (collectively, "Plaintiffs") respectfully submit this Response to Defendants' Statement of Undisputed Facts.

Defendants' Statement of Undisputed Facts includes numerous purported "facts" that are immaterial, legal conclusions, arguments, and/or generalities incapable of being proven or disproven. These statements violate the Federal Rule of Civil Procedure 56 and Local Rule 260 and should not be considered—whether disputed or not—for purposes of summary judgment. *See, e.g.*, *Esparza v. Burlington Ins. Co.*, 866 F. Supp. 2d 1185, 1190 n.2 (E.D. Cal. 2011), *aff'd sub nom. Esparza Enters., Inc. v. Burlington Ins. Co.*, 522 F. App'x 400 (9th Cir. 2013) (holding purported material facts that were "argument, legal conclusions, overbroad generalities or speculation [that] ma[d]e no attempt to delineate 'facts' supported with evidence" were "improper to oppose summary judgment and will not be tolerated in the future."); *F.D.I.C. v. Varrasso*, No. CIV. 2:11-2628 WBS, 2013 WL 5493402, at *3 (E.D. Cal. Oct. 1, 2013) ("Statements based on improper legal conclusions or without personal knowledge are not facts and can only be considered as arguments, not as facts, on a motion for summary judgment."); *Herrera v. Flowers Baking Co. of Modesto, LLC*, No. 2:21-CV-02217 WBS CKD, 2024 WL 2722861, at *1 (E.D. Cal. May 28, 2024) ("The court must therefore consider, and only consider, evidence bearing on (1) facts that are (2) material. If the evidence offered does not bear on a material fact (*e.g.*, comprises baseless speculation, bears on a legal conclusion, or bears on a fact not necessary to dispose of any claim), it is by definition not relevant to the present action for summary judgment."). Defendants' immaterial purported facts include the assertions numbered 1-48, 50-55, 57-66, 68, 74-76, 81-84, 86, 88, 90, 92, 94, 105, 116, and 122.

Notwithstanding the immaterial nature of many of Defendants' purported facts, Plaintiffs have attempted to address Defendants' statements as succinctly as possible within the confines of Local Rule 260.  By doing so, Plaintiffs do not concede the materiality, accuracy, admissibility, or relevance of any facts which are undisputed.  Moreover, to the extent Plaintiffs dispute Defendants' asserted facts below, such "facts" are neither material nor relevant to Plaintiffs' Motion for Summary Judgment (ECF No. 145) or the United States' Motion for Summary Judgment (ECF No. 144).

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 1. | When it first enacted the Clean Air Act waiver provision (what is now 42 U.S.C. § 7543(b)(1)), Congress recognized "the benefits for the Nation to be derived from permitting California to continue its experiments in the field of emissions control … and the benefits for the people of California to be derived from letting that State improve on 'its already excellent program.'" <br><br> *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA* (*MEMA I*), 627 F.2d 1095, 1109-10 (D.C. Cir. 1979) (quoting S. Rep. No. 90-403, at 33 (1967)). | Undisputed that the referenced quotation appears in the cited case and Senate report. <br><br> Disputed that the referenced Senate report speaks for Congress as a whole. |
| 2. | EPA is required to waive the application of Section 209 of the Clean Air Act to California, upon a request from that State, unless the record before EPA supports at least one of three findings that permit EPA to deny such a request. <br><br> 42 U.S.C. § 7543(b)(1). | Disputed.  Statement No. 2 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a). |
| 3. | EPA has granted more than seventy-five waivers to California pursuant to what is now Section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b). <br><br> Ex. 3 [*Vehicle Emissions California Waivers and Authorizations*, EPA, https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations]; Ex. 4 at 13 [Final Brief of Respondents, *Ohio v. EPA*, Case No. 22-1081 (D.C. Cir. filed March 20, 2023) Dkt. No. 199094.) | Undisputed. |
| 4. | For more than half a century, new motor vehicle or engine manufacturers have certified new vehicles and engines with California in order to sell in California, with EPA in order to sell where California standards do not apply, or with both California and EPA in order to sell in every State. | Undisputed that, for more than half a century, new motor vehicle or engine manufacturers have certified vehicles and engines with California in order to sell those vehicles and engines in California. |

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1080 (D.C. Cir. 1996); Declaration of Robin U. Lang in support of Defendants' Opposition to Plaintiffs' and Plaintiff-Intervenors' Motions for Summary Judgment and in support of Defendants' Cross-Motion for Summary Judgment (Lang Decl.) at ¶¶ 4-6. | Disputed as to the remaining facts in Statement No. 4, which are not established by the evidence cited.<br><br>*Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1080 (D.C. Cir. 1996); Declaration of Robin U. Lang, Dkt. 147-3, ("Lang Decl.") ¶¶ 4-6. |
| 5. | The Congressional Review Act (CRA) passed with unanimous consent in the Senate.<br><br>Pub. L. 104-121, 110 Stat. 847 (Mar. 29, 1996); 142 Cong. Rec. S3114 (Mar. 28, 1996). | Undisputed. |
| 6. | The CRA only applies to federal agency "rule[s]," as that term is defined in the CRA.<br><br>*E.g.,* 5 U.S.C. §§ 801(a), 804(3). | Disputed.  Statement No. 6 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a). |
| 7. | Any member of Congress may ask the General Accounting Office (GAO) for a determination that a federal agency action not submitted to Congress as a "rule" pursuant to the CRA is, in fact, such a rule.<br><br>Ex. 14 at 23 [Congressional Research Service, *The Congressional Review Act: Determining Which "Rules" Must Be Submitted to Congress* (updated Oct. 22, 2024)]. | Disputed to the extent the relevant institution is the "Government Accountability Office," and not the "General Accounting Office." Otherwise, undisputed. |
| 8. | Congress has treated the GAO's conclusions as to whether an unsubmitted agency action is a "rule" subject to the CRA as dispositive of whether the CRA applies.<br><br>Ex. 14 at 23, 26-27. | Disputed.  The facts in Statement No. 8 are not established by the evidence cited.  Moreover, the CRA does not provide GAO opinions any role in the CRA process.<br><br>*See* 5 U.S.C. §§ 801-808; *see also* Ex. 14, Dkt. 147-19, at 26 (providing that "GAO's role in determining whether actions are subject to the CRA is not provided for in the CRA, and its opinions are thus likely to be considered advisory."). |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 9. | If the GAO determines an unsubmitted agency action is a "rule" subject to the CRA, that determination opens the 60 session-day window for resolutions of disapproval.<br><br>Ex. 14 at 23. | Disputed.  Statement No. 9 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a).  Additionally, the facts in Statement No. 9 are not established by the evidence cited.  Moreover, the CRA does not provide GAO opinions any role in the CRA process.<br><br>*See* 5 U.S.C. §§ 801-808; *see also* Ex. 14, Dkt. 147-19, at 26 (providing that "GAO's role in determining whether actions are subject to the CRA is not provided for in the CRA, and its opinions are thus likely to be considered advisory."). |
| 10. | Members of Congress have not introduced resolutions of disapproval pursuant to the CRA in any case where the GAO determined an unsubmitted agency action was not a rule within the CRA's definition.<br><br>Ex. 14 at 23; *id.* App. B. | Disputed.  The facts in Statement No. 10 are not established by the evidence cited. |
| 11. | "[T]he question of whether Congress may use the CRA's fast-track parliamentary disapproval mechanism generally hinges upon the determination reached in GAO's opinion in such cases."<br><br>Ex. 14 at 23. | Disputed.  Statement No. 11 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a).  Moreover, the CRA does not provide GAO opinions any role in the CRA process.<br><br>*See* 5 U.S.C. §§ 801-808; *see also* Ex. 14, Dkt. 147-19, at 26 (providing that "GAO's role in determining whether actions are subject to the CRA is not provided for in the CRA, and its opinions are thus likely to be considered advisory."). |
| 12. | Before January 20, 2025, neither EPA nor any other agency or officer of the Executive Branch (including the President) had taken the position that a waiver of preemption issued under 42 U.S.C. 7543(b) is a "rule," as defined in 5 U.S.C. 804(3).<br><br>69 Fed. Reg. 59,920, 59,922 (Oct. 6, 2004); 75 Fed. Reg. 70,237, 70,241 (Nov.  17, 2010); 84 Fed. Reg. 51,310, 51,352, 51,353, | Undisputed that EPA had previously stated that a preemption waiver issued under 42 U.S.C. § 7543(b) is not a rule for the purposes of the Regulatory Flexibility Act, Executive Order 12866, and the CRA.<br><br>Disputed as to the remaining facts in Statement No. 12, which are not established by the evidence cited. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | 51,360 (Sept. 27, 2019); 90 Fed. Reg. 643, 645 (Jan. 6, 2025). | |
| 13. | When EPA takes final action on a request from California for a preemption waiver under 42 U.S.C. § 7543(b), EPA does not promulgate emission standards in the Code of Federal Regulations.<br><br>*Compare* 90 Fed. Reg. at 644 ("granting California a waiver of preemption"), *with* 79 Fed. Reg. 23,414, 23,630-23,886 (Apr. 28, 2014) (finalizing EPA rule and identifying amendments to federal standards in Code of Federal Regulations). | Disputed to the extent that the granting of a waiver changes obligations on regulated parties otherwise subject only, in relevant respects, to EPA emission standards in the Code of Federal Regulations.<br><br>Moreover, California has argued elsewhere that an EPA waiver elevates CARB standards to the status of federal rules. *See Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 347 (D. Vt. 2007); *Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1189 (E.D. Cal. 2007), *as corrected* (Mar. 26, 2008).<br><br>Otherwise, undisputed that when EPA takes final action on a request from California for a preemption waiver under 42 U.S.C. § 7543(b), EPA does not promulgate emission standards in the Code of Federal Regulations. |
| 14. | In 2022, Senator Capito asked the GAO to determine whether the EPA waiver action under Section 209(b) published at 87 Fed. Reg. 14332 (Mar. 14, 2022) was a "rule," subject to the CRA.<br><br>Ex. 15 at 1 [GAO Decision B-334309, *Environmental Protection Agency— Applicability of the Congressional Review Act to Notice of Decision on Clean Air Act Waiver of Preemption* (Nov. 30, 2023)]. | Undisputed but incomplete because the statement omits the context of Senator Capito's inquiry, which involved EPA's failure to submit the waiver pursuant to the CRA at that time. |
| 15. | In 2023, the GAO determined that a waiver of preemption under 42 U.S.C. 7543(b) is not a "rule," as defined in 5 U.S.C. § 804(3).<br><br>Ex. 15 at 7. | Undisputed. |

6

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
| --- | --- | --- |
| 16. | No member of Congress introduced a resolution, pursuant to the CRA, concerning the EPA waiver action published at 87 Fed. Reg. 14332 (Mar. 14, 2022).<br><br>*See* Ex. 14 at 23; *id*. App. B. Ex. 18 at 6-7 (the GAO asserting its 2023 analysis and conclusions are still applicable). | Disputed.  The facts in Statement No. 16 are not established by the evidence cited. |
| 17. | Senator Lee introduced a bill to repeal the Clean Air Act's waiver provision, 42 U.S.C. 7543(b), in September 2024.<br><br>Ex. 16 [Mike Lee, *Stop CARB Act One Pager* (118th Congress), https://www.lee.senate.gov/services/files/D7060B80-6E13-4481-8EC6-63155F546C1A]; Defendants' Request for Judicial Notice  (RJN) ¶ 1. | Undisputed. |
| 18. | When he introduced the bill referenced at row 17, Senator Lee stated that waivers of preemption issued under 42 U.S.C. 7543(b) "cannot be reviewed under the Congressional Review Act" because they are not "rule[s] as that term is defined in the CRA."<br><br>Ex. 16. | Undisputed that the cited press release states, "California's [Clean Air Act] waivers cannot be reviewed under the Congressional Review Act (CRA) because the waiver granted by EPA is not a *rule* as that term is defined in the CRA."<br><br>Ex. 16, Dkt. 147-21, at 1 n.3. |
| 19. | The Senate bill referenced at row 17 had five co-sponsors.<br><br>RJN ¶ 1. | Undisputed. |
| 20. | House Representative Troy Nehls introduced a companion bill to the bill referenced at row 17 in September 2024.<br><br>Ex. 17 at 1 [Rep. Troy Nehls Introduces the Stop CARB Act (Sept. 12, 2024), https://nehls.house.gov/media/press-releases/rep-troy-e-nehls-introduces-stop-carb-act]. | Undisputed. |
| 21. | When he introduced the bill referenced at row 20, House Representative Troy Nehls | Undisputed that the cited press release issued by Representative Troy Nehls states, "CARB has over 100 active waivers that set higher |

7

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | stated that "none of [California's waivers] are subject to congressional review."<br><br>Ex. 17 at 1. | emissions standards than the Environmental Protection Agency (EPA), and none of them are subject to congressional review."<br><br>Plaintiffs object that the evidence cited in Statement No. 21 is inadmissible hearsay. Fed. R. Evid. 801, 802.<br><br>Ex. 17, Dkt. 147-22, at 1. |
| 22. | The House bill referenced at row 20 had nine co-sponsors.<br><br>RJN ¶ 2. See https://www.congress.gov/bill/118th-congress/house-bill/9574/cosponsors | Undisputed. |
| 23. | EPA did not follow rulemaking procedures when considering California's requests for waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus.<br><br>87 Fed. Reg. 35,768, 35,770-71 (June 13, 2022) (ACT initial notice); 88 Fed. Reg. 20,688, 20,690, 20,725-26 (Apr. 6, 2023) (ACT final notice); 87 Fed. Reg. 35,765, 35,767-68 (June 13, 2022) (Omnibus initial notice); 90 Fed. Reg. 643, 643-44, 645 (Jan. 6, 2025) (Omnibus final notice); 88 Fed. Reg. 88,908, 88,909-10 (Dec. 26, 2023) (ACCII initial notice); 90 Fed. Reg. 642, 642, 643 (Jan 6, 2025) (ACCII final notice). | Disputed.  Statement No. 23 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a).<br><br>Moreover, disputed that EPA did not follow certain rulemaking procedures.  EPA issued *Federal Register* notices announcing a hearing and an opportunity for comment on the referenced waiver requests, provided a public hearing, and issued a final action after considering public input.<br><br>*See* 87 Fed. Reg. 35,768, 35,768 (June 13, 2022) (ACT initial notice announcing "that EPA has scheduled a public hearing concerning California's request and that EPA is accepting written comment on the request"); 88 Fed. Reg. 20,688, 20,690 (Apr. 6, 2023) (ACT final notice stating "EPA held one public hearing on June 29 and June 30, 2022"); 87 Fed. Reg. 35,765, 35,765 (June 13, 2022) (Omnibus initial notice announcing "that EPA has scheduled a public hearing concerning California's request and that EPA is accepting written comment on the request"); 90 Fed. Reg. 643, 643-44, 645 (Jan. 6, 2025) (Omnibus final notice stating "EPA held a public hearing on June 29 and June 30, 2022; EPA has considered all comments |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | submitted"); 88 Fed. Reg. 88,908, 88,909-10 (Dec. 26, 2023) (ACCII initial notice announcing "EPA has scheduled a public hearing concerning California's request and that EPA is accepting written comment on the request"); 90 Fed. Reg. 642, 642, 643 (Jan 6, 2025) (ACCII final notice stating "EPA held a public hearing on January 10, 2024, and the written comment period closed on February 27, 2024"). |
| 24. | EPA did not issue proposed rules or proposed dispositions of California's requests for waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus.<br><br>87 Fed. Reg. 35,768, 35,770-71 (June 13, 2022) (ACT initial notice); 88 Fed. Reg. 20,688, 20,690, 20,725-26 (Apr. 6, 2023) (ACT final notice); 87 Fed. Reg. 35,765, 35,767-68 (June 13, 2022) (Omnibus initial notice); 90 Fed. Reg. 643, 643-44, 645 (Jan. 6, 2025) (Omnibus final notice); 88 Fed. Reg. 88,908, 88,909-10 (Dec. 26, 2023) (ACCII initial notice); 90 Fed. Reg. 642, 643 (Jan 6, 2025) (ACCII final notice). | Disputed. Statement No. 24 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a). |
| 25. | When EPA took final action, granting California's requests for waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus, it stated that the Congressional Review Act did not apply because these actions were not rules, for purposes of 5 U.S.C. 804(3).<br><br>90 Fed. Reg. 642, 643 (Jan 6, 2025); 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023); 90 Fed. Reg. 643, 645 (Jan. 6, 2025). | Undisputed. |
| 26. | EPA did not submit a report to Congress or the GAO of its waiver for Advanced Clean Trucks in April 2023 when that waiver took effect or when it was published in the Federal Register.<br><br>Ex. 18 at 5 [GAO Decision B-337179, | Undisputed. |

9

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | *Observations Regarding the Environmental Protection Agency's Submission of Notices of Decision on Clean Air Act Preemption Waivers as Rules Under the Congressional Review Act* (Mar. 6, 2025)]. | |
| 27. | No member of Congress asked the GAO to determine whether EPA's unsubmitted waiver for Advanced Clean Trucks was a "rule" subject to the CRA.

*See* Ex. 18 at 5. | Disputed. The facts in Statement No. 27 are not established by the evidence cited. |
| 28. | EPA did not submit a report to Congress or the GAO of its waiver for Omnibus in January 2025 when that waiver took effect or when it was published in the Federal Register.

Ex. 18 at 5. | Undisputed. |
| 29. | No member of Congress asked the GAO to determine whether EPA's unsubmitted waiver for Omnibus was a "rule" subject to the CRA.

*See* Ex. 18 at 5. | Disputed. The facts in Statement No. 29 are not established by the evidence cited. |
| 30. | EPA did not submit a report to Congress or the GAO of its waiver for Advanced Clean Cars II in January 2025 when that waiver took effect or when it was published in the Federal Register.

Ex. 18 at 5. | Undisputed. |
| 31. | No member of Congress asked the GAO to determine whether EPA's unsubmitted waiver for Advanced Clean Cars II was a "rule" subject to the CRA.

*See* Ex. 18 at 5. | Disputed. The facts in Statement No. 31 are not established by the evidence cited. |
| 32. | On February 14, 2025, President Trump and EPA Administrator Zeldin announced that EPA would transmit to Congress the waiver | Undisputed that on February 14, 2025, President Trump and EPA Administrator Zeldin announced that EPA would transmit to Congress the waiver decisions for Advanced |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | decisions for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus, as though the decisions were "rules" subject to the CRA.<br><br>Ex. 19 at 1 [Press Release, EPA, *Trump EPA to Transmit California Waivers to Congress in Accordance with Statutory Reporting Requirement* (Feb. 14, 2025), https://www.epa.gov/newsreleases/trump-epa-transmit-california-waivers-congress-accordance-statutory-reporting (https://perma.cc/GDF5-HVM2)]. | Clean Cars II, Advanced Clean Trucks, and Omnibus.<br><br>Disputed as to any implication that the preemption waivers are not subject to the CRA.<br><br>Ex. 19, Dkt. 147-24, at 1. |
| 33. | EPA provided no public process leading up to the announcement referenced at row 32, nor did EPA explain why it had suddenly reclassified the waivers as CRA "rules."<br><br>See Ex. 19 at 1-2; *see also* Ex. 18 at 2, 5-6. | Disputed. The facts in Statement No. 33 are not established by the evidence cited. |
| 34. | Private parties had developed and published a plan for how the Trump Administration could purportedly invoke the CRA to "stop" the California regulations authorized by EPA's waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus.<br><br>Exs. 20, 21. | Undisputed that Michael Buschbacher and James Conde, two private parties, published an opinion piece in the Wall Street Journal and essays in the Yale Law Journal Notice and Comment Blog that argued the waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus fall within the purview of the CRA.<br><br>Disputed to the extent Defendants' characterization of the cited documents is any different than the documents themselves, which are the best evidence of their own contents.<br><br>Exs. 20, 21, Dkt. Nos. 147-25, 147-26. |
| 35. | The parties who published the plan referenced at row 34 advocated for that plan because "[w]aivers take years to roll back through the administrative process" and "ordinary legislation ... would have to overcome the 60-vote filibuster in the Senate."<br><br>Ex. 20. | Undisputed that the cited press release states, "[w]aivers take years to roll back through the administrative process, and ordinary legislation to overturn this EV mandate would have to overcome the 60-vote filibuster in the Senate." |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 36. | At the time of EPA's February 14, 2025, announcement, the waiver for Advanced Clean Trucks had been published in the Federal Register almost two years earlier.<br><br>*See* 88 Fed. Reg. 20,688 (Apr. 6, 2023). | Disputed to the extent Defendants' characterization of the cited document is any different than the document itself, which is the best evidence of its own contents.<br><br>Plaintiffs object that the evidence cited in Statement No. 35 is inadmissible hearsay. Fed. R. Evid. 801, 802.<br><br>Ex. 20, Dkt. 147-25, at 1.<br><br>Undisputed that the waiver for Advanced Clean Trucks was published on April 6, 2023, and the referenced EPA press release was published on February 14, 2025.<br><br>88 Fed. Reg. 20,688; Ex. 19, Dkt. 147-24, at 1. |
| 37. | At the time of EPA's February 14, 2025, announcement, the waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus had taken effect.<br><br>*See* 88 Fed. Reg. 20,688, 20,726 (Apr. 6, 2023); 90 Fed. Reg. 643, 644 (Jan. 6, 2025); 90 Fed. Reg. 642, 642 (Jan. 6, 2025); *see also* Exs. 42, 47. | Undisputed. |
| 38. | Some members of Congress responded to EPA's February 14, 2025 announcement by crediting "the Trump EPA['s]" submission of these waivers for "giving Congress the opportunity to reject California's effort to impose its EV mandate on all Americans."<br><br>Ex. 22. | Disputed.  The facts in Statement No. 38 are not established by the evidence cited.<br><br>Plaintiffs object that the evidence cited in Statement No. 38 is inadmissible hearsay. Fed. R. Evid. 801, 802. |
| 39. | Some members of Congress responded to EPA's February 14, 2025 announcement by asserting that "Chairman Capito [of the Senate Environment and Public Works Committee] will work with her colleagues to use the Congressional Review Act process to protect consumers from these unrealistic requirements that were approved by the Biden administration." | Disputed.  The facts in Statement No. 39 are not established by the evidence cited.<br><br>Plaintiffs object that the evidence cited in Statement No. 39 is inadmissible hearsay. Fed. R. Evid. 801, 802. |

12

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Ex. 22. | |
| 40. | EPA first submitted the waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus to the GAO and Congress on February 19, 2025 in a report that referred to the waiver decisions as "actions" and "Notice[s] of Decision," rather than "rules." Ex. 23; *see also* Ex. 18 at 1 n.1. | Undisputed that EPA first submitted the waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus to the GAO and Congress on February 19, 2025, in a form report cover sheet that referred to the waiver decisions as "actions" and "Notice[s] of Decision." Ex. 23, Dkt. 147-28, at 2, 5. |
| 41. | As GAO observed, EPA "did not explain ... why the agency was submitting the notices" referenced at row 40 under the CRA "given its statement in each notice that CRA did not apply." Ex. 18 at 6; see generally Ex. 23. | Undisputed. |
| 42. | The GAO "reached out to EPA on February 20, 2025, for clarification on the submission of the Notices of Decision" because the notices referenced in row 40 "themselves stated that CRA did not apply." Ex. 18 at 2. | Undisputed. |
| 43. | On February 21, 2025, three Senators requested that the GAO determine whether the waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus were rules subject to the CRA. Ex. 18 at 1. | Undisputed. |
| 44. | Senator Capito said of EPA's submissions of the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers: "Once they submitted it to us, it's a rule. ... [And] we can take it down." Ex. 25 at 2 [Anna Kramer, Republicans in Congress Are Preparing to Break Decades of Precedent to Block Climate Policy, TIMES OF SAN DIEGO (Feb. 27, 2025), | Undisputed that the cited news article quotes Senator Capito as saying, "[t]he question on the CRA, on the California waiver, is whether it was a rule or not.  And we believe it is[.] Once they submitted it to us, it's a rule.  Zeldin did.  Then we can take it down." Plaintiffs object that the evidence cited in Statement No. 44 is inadmissible hearsay. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | https://timesofsandiego.com/poli-tics/2025/02/27/republicans-in-congress-are-preparing-to-break-decades-of-precedent-to-block-climate-pol-icy/[https://perma.cc/9VHE-RTB4] (quoting Senator Capito)]. | Fed. R. Evid. 801, 802.<br><br>Ex. 25, Dkt. 147-30, at 2. |
| 45. | On February 27, 2025 and March 5, 2025, EPA resubmitted the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waiver decisions to Congress and GAO, rela-beling them as "rules."<br><br>Ex. 24; Ex. 18 at 2. | Undisputed that on February 27, 2025, and March 5, 2025, EPA submitted the Ad-vanced Clean Cars II, Advanced Clean Trucks, and Omnibus waiver decisions to Congress and GAO, labeled as "rules" in a form report cover sheet. |
| 46. | EPA's February 27, 2025 submission "still did not address the statements in the notices regarding the inapplicability of the CRA."<br><br>Ex. 18 at 2. | Undisputed that EPA's February 27, 2025, submission of the CRA reports to GAO for the Advanced Clean Trucks, Omnibus Low NOx, and Advanced Clean Cars II preemp-tion waivers did not contain a discussion re-lated to the statements in the *Federal Regis-ter* notices for these actions that the CRA was inapplicable.<br><br>Ex. 18, Dkt. 147-23, at 2. |
| 47. | On March 6, 2025, GAO issued its opinion, concluding (as it had previously for another Clean Air Act preemption waiver action) that the waivers for Advanced Clean Cars II, Ad-vanced Clean Trucks, and Omnibus were not "rules" within the CRA's definition and therefore not subject to the CRA.<br><br>Ex. 18 at 6, 9. | Undisputed. |
| 48. | The private parties referenced at row 34 maintained that both GAO's determination and the statutory definition of "rule" were ir-relevant because "the CRA's text ... do[es] not bind," and "the CRA gives Congress un-challengeable power to invalidate any action that an agency submits for review."<br><br>Ex. 30 at 5, 10 [Michael Buschbacher & Jimmy Conde, Congress Has the Authority to Review EPA "Waivers" of Clean Air Act | Undisputed that Michael Buschbacher and Jimmy Conde maintained in an essay in the Yale Journal on Regulation that "the CRA gives Congress unchallengeable power to in-validate any action that an agency submits for review," that "a GAO advisory opinion that a submitted action is not in fact a 'rule' subject to the CRA has no effect on Con-gress's unchallengeable power," and that "[t]his is not to say that the CRA's text and the customs that have arisen around it are |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Preemption, YALE J. REG. (Mar. 5, 2025), https://www.yalejreg.com/nc/congress-has-the-authority-to-review-epa-waivers-of-clean-air-act-preemption-by-michael-busch-bacher-jimmy-conde/(https://perma.cc/C8V5-9KFY)]. | unimportant; they matter, but they do not bind." Disputed to the extent Defendants' characterization of the document is any different than the document itself, which is the best evidence of its own contents. Plaintiffs object that the fact in Statement No. 48 is inadmissible hearsay. Fed. R. Evid. 801, 802. Ex. 30, Dkt. 147-35, at 5-6, 10. |
| 49. | On April 2, 2025, members of the House introduced three joint resolutions, each seeking to disapprove of one of the three waivers (for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus). H.J. Res. 87, 88, 89, 119th Cong. (2025) (enacted). | Undisputed. |
| 50. | Members of the Senate sought a determination from the Senate Parliamentarian as to whether the CRA applied to the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers. *E.g.*, 171 Cong. Rec. S3020 (May 21, 2025) (Sen. Schumer). | Undisputed that Senator Schumer made an inquiry to the Senate Parliamentarian about whether the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers qualify for expedited consideration under the CRA. Disputed as to any remaining facts in Statement No. 50, which are not supported by the evidence cited. 171 Cong. Rec. S3020 (May 21, 2025) (Sen. Schumer). |
| 51. | The Senate Parliamentarian is traditionally "the sole definitive arbiter[] of the CRA parliamentary mechanism" in that chamber. Ex. 31 at 18. [Congressional Research Service, *The Congressional Review Act (CRA): Frequently Asked Questions*, (updated Nov. 12, 2021)]. *See also* Jonathan S. Gould, *Law Within Congress*, 129 Yale L. J. 1946, 1959 | Disputed. Statement No. 51 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a). Moreover, the CRA does not provide any role for the Senate Parliamentarians in applying the CRA. *See* 5 U.S.C. §§ 801-808. |

15

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | (2020). | |
| 52. | The Senate Parliamentarian concluded that the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers are not "rules" subject to the CRA.<br><br>171 Cong. Rec. at S3048 (May 21, 2025) (parliamentary inquiry from Senator Schumer and response from Presiding Officer, Senator Capito).<br><br>Ex. 32 at 1-2; Ex 33 at 1. | Undisputed that Senator Capito stated that the Senate Parliamentarian stated to Senator Capito that the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus preemption waivers do not qualify for expedited consideration under the CRA.<br><br>Disputed to the extent Defendants' characterization of the cited documents is any different than the documents themselves, which are the best evidence of their own contents.<br><br>Plaintiffs object that the evidence cited in Statement No. 52 is inadmissible hearsay. Fed. R. Evid. 801, 802.<br><br>171 Cong. Rec. at S3048 (May 21, 2025). |
| 53. | After the GAO and Senate Parliamentarian determinations, House members proceeded to consider legislation that would purport to disapprove the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers.<br><br>Ex. 27 at 1 [Kelsey Brugger, *House Plows Ahead with Assault on California EPA Waivers,* EE NEWS (Apr. 4, 2025), https://www.eenews.net/articles/house-plows-ahead-with-assault-on-california-epa-waivers-2/]. | Undisputed that House members considered legislation that would disapprove the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers.<br><br>Disputed that the House members "purported" to disapprove the waivers. Congress, including the House, disapproved the waivers.<br><br>*See* Pub. L. 119-15, 119-16, 119-17. |
| 54. | The only explanation provided by House members for departing from the practice that "the GAO ... has historically decided what can be considered a rule under the CRA" was the fact that EPA submitted the waivers to Congress.<br><br>Ex. 27 at 2; *see also* Ex. 26. | Disputed. The facts in Statement No. 54 are not established by the evidence cited. Moreover, the CRA does not provide GAO opinions any role in the CRA process.<br><br>*See* 5 U.S.C. §§ 801-808; *see also* Ex. 14, Dkt. 147-19, at 26 (providing that "GAO's role in determining whether actions are subject to the CRA is not provided for in the CRA, and its opinions are thus likely to be considered advisory."). |
| 55. | In a press release dated April 3, 2025, House Energy and Commerce Chair Guthrie stated: | Undisputed that the referenced quotation appears in the cited press release. |

16

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | "By submitting the three California waivers to Congress, Administrator Zeldin is ensuring that Congress has oversight of these major rules that impact every American."<br><br>Ex. 28 at 1 [Rep. Brett Guthrie, *Chairman Guthrie, Vice Chairman Joyce, and Energy and Commerce Republicans Introduce Legislation to Stop California EV Mandates* (Apr. 3, 2025), https://energycommerce.house.gov/posts/chairman-guthrie-vice-chairman-joyce-and-energy-and-commerce-republicans-introduce-legislation-to-stop-california-ev-mandates (https://perma.cc/3UAM-QWWL)]. | Plaintiffs object that the evidence cited in Statement No. 55 is inadmissible hearsay. Fed. R. Evid. 801, 802. |
| 56. | The House passed the three resolutions referred to in row 49 on April 30, 2025.<br><br>RJN ¶¶ 3-5. | Undisputed that the House passed H.J. Resolutions 87 and 89 on April 30, 2025.<br><br>Disputed as to H.J. Resolution 88 which passed on May 1, 2025, not on April 30, 2025.<br><br>*H.J. Res. 87 — 119th Congress (2025-2026)*, https://www.congress.gov/bill/119th-congress/house-joint-resolution/87/all-actions; *H.J. Res. 88 — 119th Congress (2025-2026)*, https://www.congress.gov/bill/119th-congress/house-joint-resolution/88/all-actions; *H.J. Res. 89 — 119th Congress (2025-2026)*, https://www.congress.gov/bill/119th-congress/house-joint-resolution/89/all-actions. |
| 57. | In a press release dated May 2, 2025, the sponsors of the legislation purporting to use the CRA to disapprove the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers attributed their ability to do so to the actions of the Executive Branch.<br><br>Ex. 29 at 1 [Reps. Brett Guthrie, John Joyce, John James, and Jay Obernolte, *How Congress is Fighting Biden's Disastrous EV Mandate* (May 2, 2025), https://energycommerce.house.gov/posts/c | Disputed. The facts in Statement No. 57 are not established by the evidence cited.<br><br>Plaintiffs object that the evidence cited in Statement No. 57 is inadmissible hearsay. Fed. R. Evid. 801, 802. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | hairman-guthrie-vice-chairman-joyce-and-reps-james-and-obernolte-op-ed-how-congress-is-fighting-biden-s-disastrous-ev-mandate-1]. | |
| 58. | Despite the GAO and Senate Parliamentarian determinations referenced in rows 47 and 52, at least some Senate leaders were determined to proceed with the legislation referenced in row 49.<br><br>Ex. 36 at 1-2 [Timothy Cama, *Senate GOP Plots Demise of California Clean Car Rules*, E&E NEWS (May, 20, 2025), https://www.eenews.net/articles/senate-gop-plots-demise-of-california-clean-car-rules/]. | Disputed.  Characterizing the Senate or its members decisions to enact CRA resolutions for the three preemption waivers as being "despite the GAO and Senate Parliamentarian determinations" suggests that the GAO and the Senate Parliamentarian have a statutory decision-making role in the CRA process.  However, the CRA does not provide any role for GAO or the Senate Parliamentarian in determining which agency actions are subject to the CRA.<br><br>*See* 5 U.S.C. §§ 801-808.<br><br>Plaintiffs object that the evidence cited in Statement No. 58 is inadmissible hearsay. Fed. R. Evid. 801, 802. |
| 59. | Senate proponents of the legislation referenced in row 49 did not identify any errors or other basis for disagreeing with the GAO or the Senate Parliamentarian determinations referenced in rows 47 and 52.<br><br>Ex. 36 at 1-2. | Disputed.  The facts in Statement No. 59 are not established by the evidence cited.  Moreover, the Senate determined that the three preemption waivers are subject to the CRA, and the CRA does not provide any role for GAO or the Senate Parliamentarian in determining which agency actions are subject to the CRA.<br><br>*See* 171 Cong. Rec. S3017, 3047 (Sen. Thune) (waivers "are clearly rules in substance given their nationwide impact and scope"); 171 Cong. Rec. S3099, S3102, S3140 (Sen. Lankford) (describing a waiver as "the very definition of a rule"); 5 U.S.C. §§ 801-808.<br><br>Plaintiffs object that the evidence cited in Statement No. 59 is inadmissible hearsay. Fed. R. Evid. 801, 802. |
| 60. | The Senate could have overruled the Senate Parliamentarian and voted on whether the | Disputed.  The CRA does not provide any |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers were "rules" subject to the CRA.<br><br>Gould, *Law Within Congress*, Yale L. R. at 1965-66 (describing procedure for overruling); Ex. 35 at 3 [Russell Payne, *the Senate Parliamentarian Could Block Some of Trump's Agenda—and Be a Scapegoat for Republicans*, Salon (Jan. 9, 2025), https://www.eenews.net/articles/house-plows-ahead-with-assault-on-california-epa-waivers-2/]. | role for the Senate parliamentarians in determining which agency actions are subject to the CRA. *See* 5 U.S.C. §§ 801-808. The Senate does not "overrule" the Senate Parliamentarian in choosing its procedures under the CRA.<br><br>Plaintiffs object that the evidence cited in Statement No. 60 is inadmissible hearsay. Fed. R. Evid. 801, 802. |
| 61. | At least some members of Senate leadership did not want to overrule a determination of the Senate Parliamentarian.<br><br>Ex. 26 at 2-3; Ex. 35 at 4. | Disputed. The facts in Statement No. 61 are not established by the evidence cited.<br><br>Plaintiffs object that the evidence cited in Statement No. 61 is inadmissible hearsay. Fed. R. Evid. 801, 802. |
| 62. | The Senate did not overrule the Senate Parliamentarian's determination that the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers are not "rules" subject to the CRA.<br><br>171 Cong. Rec. at S3088 ("The procedural action we have taken today is … not about the Parliamentarian") (Senator Thune); Gould, *Law Within Congress*, Yale L. R. at 1965-66 (describing procedure for overruling the parliamentarian). | Disputed. The facts in Statement No. 62 are not established by the evidence cited. Moreover, the Senate did not "overrule" the Senate Parliamentarian because the CRA does not provide any role for the Senate Parliamentarian in determining which agency actions are subject to the CRA. *See* 5 U.S.C. §§ 801-808. The Senate does not "overrule" the Senate Parliamentarian in choosing its procedures under the CRA.<br><br>Plaintiffs object that the evidence cited in Statement No. 62 is inadmissible hearsay. Fed. R. Evid. 801, 802. |
| 63. | A majority of Senators sustained a point of order that: "joint resolutions that meet all the requirements of section 802 of the [CRA] or are disapproving of Agency actions which have been determined to be rules subject to the CRA by a legal decision from GAO are entitled to expedited procedures under the [Act]."<br><br>171 Cong. Rec. at S3051. | Undisputed. |

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 64. | "Points of order" are the mechanism by which Senators may enforce the Senate's legislative rules and precedents.<br><br>Ex. 37 at 1 [Congressional Research Service, *Points of Order, Rulings, and Appeals in the Senate* (updated Aug. 29, 2025)]. | Undisputed. |
| 65. | The Senate relied on the "point of order" referred to in row 63 to introduce and vote on the legislation referenced in rows 49 and 56 without overruling the Senate Parliamentarian's determination that that the Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus waivers are not "rules" subject to the CRA.<br><br>171 Cong. Rec. at S3052 (Presiding Officer indicating introduction of resolutions was *"[p]ursuant to the precedent just established"* in the point of order referenced in row 63) (emphasis added). | Undisputed that, after approving the referenced point of order, the Senate agreed to a motion to proceed on the referenced joint resolutions, and the Senate later passed the CRA resolutions on May 22, 2025.<br><br>Disputed on the grounds that the Senate determined that the waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus were subject to the CRA. Moreover, the CRA does not provide any role for the Senate Parliamentarian in determining which agency actions are subject to the CRA.<br><br>*See* 5 U.S.C. §§ 801-808. |
| 66. | The same day that the Senate passed the joint resolutions purporting to disapprove the waivers for Advanced Clean Cars II, Advanced Clean Trucks, and Omnibus, EPA described the resolutions as preventing a "single state" from imposing "its radical agenda."<br><br>Ex. 38 at 1-2 *[EPA Hails Congressional Disapproval of Biden EPA's California EV Mandate Rule*, EPA (May 22, 2025), https://www.epa.gov/newsreleases/epa-hails-congressional-disapproval-biden-epas-california-ev-mandate-rule]. | Undisputed that, on May 22, 2025, EPA issued a press release which stated "[b]y passing the CRA resolutions of disapproval, Congress rejected these [electric vehicle] mandates and reaffirmed the importance of maintaining a consistent national approach to vehicle standards rather than allowing a single state to impose its radical agenda on the rest of the country."<br><br>Disputed as to any remaining facts in Statement No. 66, which are not established by the evidence cited.<br><br>Ex. 38, Dkt. 147-43, at 1-2. |
| 67. | On June 12, 2025, the President signed H.J. Res. 87, H.J. Res. 88, and H.J. Res. 89. | Undisputed. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | H.J. Res. 87 (119th Congress), H.J. Res. 88 (119th Congress); H.J. Res. 89 (119th Congress). *See also* RJN ¶ 9. | |
| 68. | At the June 12, 2025 signing ceremony for the resolutions referenced in rows 49 and 56, President Trump stated "[I]n a few moments, I'll sign three pieces of legislation that will kill, totally kill [California's regulations], can't do anything about it; they can't take us to court."<br><br>RJN ¶ 10 [*President Trump Participates in a Bill Signing Ceremony*, at 28:30 (YouTube, June 12, 2025), https://www.youtube.com/watch?v=QjakZRoGnxk]. | Undisputed. |
| 69. | EPA has not yet waived preemption for CARB to enforce the Advanced Clean Fleets 2036 Sales Requirement.<br><br>Lang Decl., ¶ 59. | Undisputed. |
| 70. | CARB has stipulated—in court orders in other cases—that it will not enforce the 2036 Sales Requirement regulatory provision of the Advanced Clean Fleets regulation unless and until EPA waives preemption.<br><br>Ex. 7 [Stipulation and Order to Hold Case in Abeyance Pending Outcome of Rulemaking, *Nebraska v. Cliff*, Case No. 2:24-cv-01364 (E.D. Cal. entered May 5, 2025)]; RJN ¶ 11. | Undisputed that CARB has stipulated in another case that it will not enforce the 2036 Sales Requirement regulatory provision of the Advanced Clean Fleets regulation unless and until EPA waives preemption.<br><br>Disputed that CARB's stipulation has prevented CARB from attempting to enforce the Advanced Clean Fleets 2036 Sales Requirement.<br><br>Ex. 7, Dkt. 147-12; Order Granting in Part and Denying in Part Pls.' Mot. for Prelim. Inj., Dkt. 94 at 31-32. |
| 71. | CARB has not yet requested that EPA waive preemption for the Phase 2 GHG amendments to CARB's program.<br><br>Lang Decl., ¶ 55. | Undisputed. |
| 72. | CARB is not presently enforcing its Phase 2 GHG standards. | Disputed. CARB continues to accept and process certifications for the Phase 2 GHG |

21

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Lang Decl., ¶ 55. | standards, though it has provided an alternative pathway to certification, and CARB has in years past enforced the Phase 2 GHG standards as a necessary requirement for certification even though it has never received a waiver from EPA for this rule.<br><br>Dkt. 73-33 at 6 (September 2025 Emergency Rulemaking explaining that CARB "continues to accept and process certification applications" for preempted standards, including Phase 2 GHG standards); Dkt. 145-10 at 3 (May MAC explaining that "CARB will continue to accept and process certification applications… under the certification requirements" including Phase 2 GHG, "title 17, CCR, sections 95662 and 95663."); Declaration of Daniel Potter In Support of Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment ("Potter Decl.") ¶¶ 11-13; Declaration of Andrea Brown In Support of Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment ("Brown Decl.") ¶ 16.a.; Declaration of Michael Noonan In Opposition to Defendants' Cross-Motion for Summary Judgment ("Noonan Decl.") ¶ 7. |
| 73. | CARB will not enforce its Phase 2 GHG standards unless or until EPA waives Clean Air Act preemption or enforcement otherwise becomes lawful.<br><br>Lang Decl., ¶ 55. | Undisputed that CARB has represented that it will no longer enforce its Phase 2 GHG standards unless or until EPA waives Clean Air Act preemption or enforcement otherwise becomes lawful.<br><br>*See, e.g.*, Lang Decl., ¶ 55 (stating "CARB is not requiring manufacturers to certify to, or otherwise meet, those standards [Phase 2 GHG amendments], and will not do so in the future absent a preemption waiver that covers them.  CARB is also not otherwise enforcing the Phase 2 GHG standards and will not do so in the future absent the relevant preemption waiver."<br><br>Disputed that CARB will not retroactively enforce its Phase 2 GHG standards going |

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | back to model year 2021, the year during which CARB's Phase 2 GHG standards include emissions standards. Based on its current testimony in this case that manufacturers must secure Executive Orders for their trucks, CARB is currently enforcing these standards, because there are no other readily available standards for manufacturers to use in truck Executive Orders.<br><br>*California, et al., v. United States, et al.*, Case No. 4:25-cv-4966-HSG (N.D. Cal.), Pls.' Opp. to Defs.' Mot. to Dismiss, ECF No. 194 at 11 (explaining that EPA's waivers of preemption "have immediate retrospective (as well as prospective) effect: they waive preemption for actions California has already taken to adopt its standards, *see* [42 U.S.C.] § 7543(a), (b)(1), as well as for covered standards applicable to vehicles sold before EPA acted, *e.g.*, 90 Fed. Reg. 643, 644 (Jan. 6, 2025) (standards applicable in model years 2024 and later)." *See also* 17 C.C.R. § 95663 (including language from the Emergency Rule that CARB will enforce Phase 2 GHG standards, which includes standards of retroactive application, if permitted by a court of competent jurisdiction); Potter Decl. ¶¶ 11-13; Brown Decl. ¶ 16.a; Noonan Decl. ¶ 7. |
| 74. | At the time CARB promulgated the Phase 2 GHG regulation, EPA's express direction to California was that the State promulgate its regulations before seeking a waiver.<br><br>59 Fed. Reg. 36,969, 36,982 (July 20, 1994). | Disputed. The Federal Register notice cited in Statement No. 74 does not contain an express directive regarding waiver grants under Section 209(b), which is the applicable waiver provision for the Phase 2 GHG regulation.<br><br>59 Fed. Reg. 36,969, 36,981-82 (July 20, 1994). |
| 75. | At the time CARB promulgated the Advanced Clean Fleets regulation, EPA's express direction to California was that the State promulgate its regulations before seeking a waiver. | Disputed. The Federal Register notice cited in Statement No. 75 does not contain an express directive regarding waiver grants under Section 209(b), which is the applicable waiver provision for the Advanced Clean |

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | 59 Fed. Reg. 36,969, 36,982 (July 20, 1994). | Fleets regulation. 59 Fed. Reg. 36,969, 36,981-82 (July 20, 1994). |
| 76. | Congress "expressed general approval of [EPA's] subsection (b) decisions" when Congress amended the waiver provision (now Section 209(b)) in 1977. *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1114 (D.C. Cir. 1979) (cleaned up). | Undisputed. |
| 77. | Congress added Section 209(e) to the Clean Air Act in 1990, using language virtually identical to that in Section 209(b). Pub. L. 101–549, 104 Stat. 2399, 2502 (Nov. 15, 1990). | Undisputed that the Clean Air Act was amended in 1990 and added Section 209(e). Disputed that the language in Section 209(e) and 209(b) are "virtually identical." "Virtually identical" is a generality that is not capable of being established as fact. The text of Section 209(e), 42 U.S.C. § 7543(e), and Section 209(b), 42 U.S.C.A. § 7543(b) are the best evidence of their own contents and any similarities between them. *Compare* 42 U.S.C. § 7543(e)(2)(A) *with* 42 U.S.C. § 7543(b)(1). |
| 78. | EPA's implementing regulations for Section 209(e) of the Clean Air Act establish the process by which EPA decides whether to authorize otherwise applicable preemption for California's non-road emission regulations and those regulations provide that California should submit a request "to enforce its *adopted* standards." 40 CFR § 1074.101(a) (emphasis added). | Undisputed that 40 C.F.R. § 1074.101, governing nonroad preemption authorizations, but not the waivers at issue in this case, states that "California must request authorization from the Administrator to enforce its adopted standards and other requirements relating to control of emissions from nonroad engines or vehicles that are not preempted by § 1074.10(a) or (b)." Disputed as to the remaining facts in Statement No. 78, which are not established by the regulation cited. 40 C.F.R. § 1074.101(a) |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 79. | The signatories to the Clean Truck Partner-ship (CTP) spent months negotiating its terms.<br><br>Heroy-Rogalski Decl., ¶¶ 16-18. | Undisputed. |
| 80. | In the course of negotiations for the CTP, CARB proposed certain terms that were re-jected by the other signatories.<br><br>Heroy-Rogalski Decl., ¶ 20. | Undisputed. |
| 81. | The CTP's signatories do not include at least the following manufacturers of internal-com-bustion medium- and heavy-duty engines and trucks operating in California: Roush, Landi, Renzo, Agility Powertrain Systems, and Powersolutions International.<br><br>Heroy-Rogalski Decl., ¶ 34. | Undisputed. |
| 82. | The CTP signatories also do not include manufacturers, such as Tesla, whose heavy-duty vehicles sold in California are exclu-sively zero-emission vehicles.<br><br>Heroy-Rogalski Decl., ¶ 34. | Undisputed as to Tesla. |
| 83. | After signing the CTP, the Engine Manufac-tures Association (EMA) publicly stated that the CTP "demonstrates how EMA and CARB can work together to achieve shared clean air goals."<br><br>Ex. 8 at 1 [*CARB and Truck and Engine Manufacturers Announce Unprecedented Partnership to Meet Clean Air Goals*, EMA Press Release (July 6, 2023), https://www.truckandenginemanufacturers.org/file.asp?A=Y&F=Clean%2BTruck%2BPartnership%2Brelease+%281%29%2Epdf&N=Clean%2BTruck%2BPartnership%2Brelease+%281%29%2Epdf&C=documents]. | Disputed on the grounds that Defendants mischaracterize the document, which is the best evidence of its own contents.  The En-gine Manufacturers Association ("EMA") President, Jed Mandel, is quoted as saying, "[t]his agreement reaffirms EMA's and its members' longstanding commitment to re-ducing emissions and to a zero-emissions commercial vehicle future and it demon-strates how EMA and CARB can work to-gether to achieve shared clean air goals."<br><br>Ex. 8, Dkt. 147-13, at 1. |
| 84. | After signing the CTP, Volvo publicly stated that the agreement reflected a "cooperative | Disputed on the grounds that Defendants mischaracterize the document, which is the |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | efforts" between themselves and CARB.<br><br>Ex. 8 at 3. | best evidence of its own contents.  Dawn Fenton, Vice President, Government Relations & Public Affairs for Volvo Group North America is quoted as saying, "[t]hrough cooperative efforts such as this, the Volvo Group believes we can achieve the quickest and least disruptive transition to a commercial zero-emission vehicle future."<br><br>Ex. 8, Dkt. 147-13, at 3. |
| 85. | The CTP does not contain a term authorizing CARB to seek civil or criminal penalties in the event of another signatory's breach.<br><br>ECF 144-5 (CTP) at 1-3; *see also* Heroy-Rogalski Decl., ¶ 32. | Disputed.  Statement No. 85 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a).  Moreover, the CTP incorporates penalty-carrying regulatory provisions and states that manufacturers that violate the CTP will be "non-compliant."<br><br>Clean Truck Partnership, Dkt. 145-6, App'x B, at i-ii nn.1-5; *id.* App'x A, at i nn.1-2. |
| 86. | CARB has not sought to impose civil penalties on any original equipment manufacturer (OEM) Plaintiff for a breach of the CTP.<br><br>Heroy-Rogalski Decl., ¶ 43. | Undisputed. |
| 87. | The CTP does not contain a term authorizing anyone, including any signatory, to seek to impose civil penalties on CARB.<br><br>*See generally* CTP. | Undisputed. |
| 88. | On August 10, 2025, Plaintiff Daimler Truck North America (DTNA) publicly stated that "through the CTP, DTNA was able to obtain benefits for its dealers and for customers of its trucks."<br><br>Ex. 9 at 2 [Letter from Daimler Truck North America to Chairman Ferguson (Aug. 10, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/Daimler-Truck-Letter-of-Commitment-081025.pdf]; OEM FAC ¶ 52. | Disputed on the grounds that Defendants mischaracterize the document cited, which is the best evidence of its own contents.  On August 10, 2025, Plaintiff Daimler Truck North America ("DTNA") stated, "[s]tate legislatures are generally free to regulate local markets to promote competition and other policy goals, and through the CTP, DTNA was able to obtain benefits for its dealers and for customers of its trucks resulting from the negotiated alignment of state and federal emissions requirements in force at the time and, as a result, was able to continue to produce high-quality diesel trucks |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | and engines and to bring trucks to market that otherwise would not have been available under California's regulations. However, state legislatures or the boards to which they have delegated their authority may not enforce laws or regulations that Congress has specifically pre-empted." Ex. 9, Dkt. 147-14, at 2. |
| 89. | On August 10, 2025, Plaintiff DTNA publicly informed the Federal Trade Commission that DTNA "will independently make decisions about the type and quantity of vehicles it sells without regard to whether those decisions are compliant with any restrictive terms of the CTP." Ex. 9 at 2-3. | Undisputed. |
| 90. | On August 10, 2025, Plaintiff Volvo publicly stated that "Volvo signed the CTP with CARB to gain sufficient lead times to develop certain technology to comply with California's Advanced Clean Trucks ('ACT') and Advanced Clean Fleets ('ACF') regulations, and to align California's Omnibus Low NOx ('Omnibus') regulation with federal standards." Ex. 10 at 1 [Letter Volvo Group North America to Chairman Ferguson (Aug. 10, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/Volvo-Letter-of-Commitment-081025_1.pdf]. | Undisputed. |
| 91. | On August 10, 2025, Plaintiff Volvo publicly informed the Federal Trade Commission that Volvo "will independently make decisions about the type and quantity of vehicles it sells without regard to whether those decisions are compliant with any restrictive terms of the CTP." Ex. 10 at 2. | Undisputed. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 92. | On August 10, 2025, Plaintiff PACCAR Inc. publicly stated that it "signed the CTP," making the promises therein, "in exchange" for valuable promises from CARB.<br><br>Ex. 12 at 1 [Letter from PACCAR Inc. to Chairman Ferguson (Aug. 10, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/PACCAR-Letter-of-Commitment-081025.pdf]. | Disputed on the grounds that Defendants mischaracterize the document cited, which is the best evidence of its own contents.  On August 10, 2025, Plaintiff PACCAR Inc ("PACCAR") publicly stated, "[i]n July 2023, under considerable pressure from CARB during negotiations over pending certifications and under threat of significant fines and legal action related to alleged non-compliance with CARB's OBD regulation, PACCAR signed the CTP stating that it would follow certain of those emissions standards regardless of whether the waivers were revoked through litigation—a 'non-negotiable' condition from CARB in exchange for its promise to abide by the critical lead time for future regulations set out in the Clean Air Act and agreeing to align with the nationwide 2027 emissions standard."<br><br>Ex. 12, Dkt. 147-17, at 1. |
| 93. | On August 10, 2025, Plaintiff PACCAR Inc. publicly informed the Federal Trade Commission that PACCAR Inc. "will independently make decisions about the type and quantity of vehicles it sells without regard to whether those decisions are compliant with any restrictive terms of the CTP."<br><br>Ex. 12 at 2-3. | Undisputed. |
| 94. | On August 10, 2025, Plaintiff International Motors LLC publicly stated that it "signed the CTP with CARB" in exchange for valuable promises from CARB.<br><br>Ex. 11 at 1-2 [Letter from International Motors, LLC to Chairman Ferguson (Aug. 10, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/International-Motors-Executed_International_Letter_of_Commitment-081025.pdf]. | Disputed on the grounds that Defendants mischaracterize the document cited, which is the best evidence of its own contents.  On August 10, 2025, Plaintiff International Motors LLC ("International") publicly stated, "[o]n July 6, 2023, International signed the CTP with CARB to help address the inconsistency between federal and California standards" and that, "[t]hrough the CTP, International was able to obtain benefits for its dealers and customers resulting from the negotiated alignment of state and federal emissions requirements, guarantees of lead time for future CARB regulations, and a greater |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | ability to sell legacy engines, allowing it to bring products to market that otherwise would not have been available under California's then current regulations. . . . International also believed that it had obtained from CARB a commitment to address issues that would require regulatory amendments, to the benefit of International's customers."<br><br>Ex. 11, Dkt. 147-16, at 1-2. |
| 95. | On August 10, 2025, Plaintiff International Motors LLC publicly informed the Federal Trade Commission that International Motors LLC "will independently make decisions about the type and quantity of vehicles it sells without regard to whether those decisions are compliant with any restrictive terms of the CTP."<br><br>Ex. 11 at 2. | Undisputed. |
| 96. | On October 27, 2025, CARB filed a suit in California state court against DTNA, International Motors LLC, PACCAR Inc., and Volvo Group North America LLC alleging, among other things, that these manufacturers breached their commitments under the CTP.<br><br>Ex. 46 *[CARB v. Daimler.* Case No. 25CV151420 (Sup. Ct. Cal. filed Oct. 27, 2025)]; *see also* ECF 85-1, Ex. 1. | Undisputed. |
| 97. | OEM Plaintiffs do not seek from this Court an injunction to stay the suit filed against them by CARB in Alameda County Superior Court or a declaratory judgment that would have the same effect.<br><br>ECF 115 at 2:24-25. | Undisputed. |
| 98. | CARB has completed nearly all of its commitments under the CTP.<br><br>Heroy-Rogalski Decl., ¶ 40. | Disputed.  Statement No. 98 is stated as a legal conclusion, not a fact, in violation of Local Rule 260(a).<br><br>Further disputed because CARB has failed to |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
|  |  | comply with significant portions of its commitments under the CTP, including by failing to consult the other signatories as to amendments it made to the Advanced Clean Trucks regulation, failing to amend its regulations in the manner contemplated by the CTP, and by failing to substantially align the Omnibus Low NOx regulation with the federal standards.<br><br>Potter Decl. ¶¶ 16, 22–25. |
| 99. | The May MAC provided initial guidance for certification applications for the 2026 model year.<br><br>ECF 145-10 (May MAC) at 1, 2; OEM FAC ¶¶ 59-60. | Undisputed that the May MAC states that it "provides necessary guidance" for certification applications for the 2026 model year.<br><br>Disputed that the May MAC stated the guidance it provided was "initial," which is not established by the evidence cited.<br><br>Dkt. 145-10 (May MAC) at 1-2. |
| 100. | The May MAC stated that "[a]dditional information will be forthcoming regarding future model years."<br><br>May MAC at 2. | Undisputed. |
| 101. | The May MAC was expressly superseded by the August MAC on August 25, 2025.<br><br>ECF 145-11 (August MAC) at 2; OEM FAC ¶¶ 61, 109(b). | Undisputed that the August MAC states, "CARB is issuing this MAC, which supersedes MAC ECCD-2025-03 [the May MAC], to address continuing questions raised by vehicle and engine manufacturers . . . and to provide further clarity on how CARB will process the applications for certification that it continues to receive . . . ."<br><br>Dkt. 145-11 (August MAC) at 2. |
| 102. | CARB issued the August MAC "to address continuing questions raised by vehicle and engine manufacturers about statutory provisions for vehicle and engine certification and to provide further clarity on how CARB will process the applications for certifications that it continues to receive." | Undisputed. |

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | August MAC at 2. | |
| 103. | The August MAC described three "path-ways" to obtain approval from CARB to sell vehicles or engines in the State.<br><br>August MAC at 2; OEM FAC ¶¶ 66-67; US FAC ¶ 90. | Undisputed. |
| 104. | Two of the three certification "pathways" identified in the August MAC do not appear in the May MAC.<br><br>August MAC at 2; May MAC at 2-3; OEM FAC ¶¶ 59, 66-67. | Undisputed. |
| 105. | Neither the May MAC nor the August MAC established the California requirement that new motor vehicles and engines must be approved by CARB before sale in the State.<br><br>E.g., Cal. Health & Safety Code § 43151(a). | Undisputed. |
| 106. | The May MAC does not contain any mention of civil or criminal penalties.<br><br>*See generally* May MAC. | Undisputed that the May MAC does not contain the words "civil penalties" or "criminal penalties."<br><br>Disputed on the grounds that the May MAC expressly incorporates California regulations that are enforced through civil penalties or criminal penalties.<br><br>*See, e.g.*, May MAC, Dkt. 145-10 at 2 (*citing* Cal. Code Regs. tit. 13, § 1963.5); Cal. Code Regs. tit. 13, § 1963.5(a)(4) ("Any manufacturer that fails to retire an appropriate amount of ZEV or NZEV credits as specified in section 1963.3(c) and does not make up deficits within the specified time allowed by section 1963.3(b) shall be subject to Health and Safety Code section 43212 civil penalty applicable to a manufacturer who does not comply with emission standards or the test procedures adopted by the state board."); *see also, e.g.*, May MAC, Dkt. 145-10 at 2 (*citing* Cal. Health & Safety Code § 43151); Cal. Health & Safety Code § 43151(a) ("A person shall |

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | not offer for sale . . . a new motor vehicle . . . unless the . . . motor vehicle has been certified" under California law); Cal. Health & Safety Code § 43154(a)(1) (stating penalties for violations of Cal. Health & Safety Code § 43151 of up to $37,500 per vehicle sold, to be adjusted upward for inflation). |
| 107. | The August MAC does not contain any mention of civil or criminal penalties.<br><br>*See generally* August MAC. | Undisputed that the August MAC does not contain the words "civil penalties" or "criminal penalties."<br><br>Disputed on the grounds that the August MAC expressly incorporates California regulations that are enforced through civil penalties or criminal penalties, and incorporates a statute requiring certification enforced by penalties.  Moreover, the August MAC states that "Manufacturers choosing these pathways should be advised, however, that CARB reserves its right to enforce the regulations covered by the waivers targeted by the congressional resolutions in the event a court of law holds those regulations invalid, including with respect to model years that such manufacturers ask CARB to certify under these alternative pathways."<br><br>*See, e.g.*, August MAC, Dkt. 145-11 at 2-3 (*citing* Cal. Code Regs. tit. 13, § 1963.5); Cal. Code Regs. tit. 13, § 1963.5(4)("Any manufacturer that fails to retire an appropriate amount of ZEV or NZEV credits as specified in section 1963.3(c) and does not make up deficits within the specified time allowed by section 1963.3(b) shall be subject to Health and Safety Code section 43212 civil penalty applicable to a manufacturer who does not comply with emission standards or the test procedures adopted by the state board."); *see also, e.g.*, August MAC, Dkt. 145-11 at 2 (*citing* Cal. Health & Safety Code § 43151; Cal. Health & Safety Code § 43151(a) ("A person shall not offer for sale . . . a new motor vehicle . . . unless the . . . |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | motor vehicle has been certified" under California law); Cal. Health & Safety Code § 43154(a)(1) (stating penalties for violations of Cal. Health & Safety Code § 43151 of up to $37,500 per vehicle sold, to be adjusted upward for inflation). |
| 108. | The August MAC states that CARB "reserves its right to enforce the regulations covered by the waivers targeted by the congressional resolutions in the event a court of law holds those resolutions invalid." August MAC at 3. | Undisputed that the August MAC states, "Manufacturers choosing these pathways should be advised, however, that CARB reserves its right to enforce the regulations covered by the waivers targeted by the congressional resolutions in the event a court of law holds those regulations invalid, including with respect to model years that such manufacturers ask CARB to certify under these alternative pathways." August MAC, Dkt. 145-11 at 3. |
| 109. | The August MAC states that "[w]hether CARB opts to pursue such enforcement would be decided if and when that question becomes ripe." August MAC at 3. | Undisputed. |
| 110. | On June 12, 2025, Governor Newsom issued Executive Order N-27-25 (EO). ECF 145-12 (EO). | Undisputed. |
| 111. | The EO directs certain state agencies and departments to consider or take future actions. See generally EO. | Undisputed. |
| 112. | The EO contains no reference to regulatory penalties. See generally EO. | Disputed. Executive Order N-27-25 ("EO") references regulations that authorize civil penalties. EO, Dkt. 145-12 at 3 (referencing "Advanced Clean Cars II, Advanced Clean Trucks, and Heavy-Duty Omnibus regulations"). |
| 113. | CARB has regulated emissions from new medium- and heavy-duty vehicles and engines | Undisputed. |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | sold in California since at least model year (MY) 1973 for gasoline-fueled engines and since at least MY 1979 for diesel-fueled engines.<br><br>Lang Decl., ¶¶ 4-6; 37 Fed. Reg. 14,831 (July 25, 1972); 42 Fed. Reg. 31,637 (June 22, 1977). | |
| 114. | CARB has amended its new motor vehicle emission standards many times over decades to reflect technological advancements in pollution control and the development of scientific and other information about the need to limit pollution.<br><br>Lang Decl., ¶¶ 7-9. | Undisputed. |
| 115. | CARB's new motor vehicle and engine emission standards typically apply to all model years subsequent to the one(s) for which CARB is establishing new standards.<br><br>Lang Decl., ¶ 15; *see also e.g.,* Cal. Code Regs., tit. 13, § 1958.6 (2014); Cal. Code Regs., tit. 13, § 1961.2 (2012); Cal. Code Regs., tit. 13, § 1961.3 (2012). | Undisputed that CARB's new motor vehicle and engine emission standards can apply to all model years subsequent to the one(s) for which CARB is establishing new standards.<br><br>Disputed that CARB's standards "typically" apply to all model years subsequent to the ones for which CARB is establishing new standards. "Typically" is a generality that is not capable of being established as fact. Moreover, CARB has adopted new motor vehicle and engine emission standards that do not apply to all model years subsequent to the ones for which CARB is establishing new standards.<br><br>*See, e.g.*, Cal. Code Regs., tit. 13, § 1956.5, Cal. Code Regs., tit. 13, § 1956.6. |
| 116. | For example, in 2001, when CARB amended its oxides of nitrogen emission standards for heavy-duty diesel-powered engines, the more stringent standard first applied to model year 2007 and then remained in place for all subsequent model years.<br><br>Lang Decl., ¶ 8; 70 Fed. Reg. 50,322, 50,322 (Aug. 26, 2005). | Undisputed that, "in 2001, CARB amended its standards for MY 2007 and subsequent heavy-duty diesel-powered engines to permit no more than 0.20 grams per brake horse-power hour emissions of NOx—a dramatically lower limit than allowed under the first ever standards [promulgated by CARB]" and that when "CARB made some technical amendments to these requirements, without changing the emission standards. . . EPA |

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | later agreed that those technical amendments were within the scope of the existing waiver." |
| | | Disputed as to the remaining facts in Statement No. 116, which are not established by the evidence or Federal Register sections cited. |
| | | Lang Decl., ¶ 8 (*citing* 70 Fed. Reg. 50,322 (Aug. 26, 2005), 82 Fed. Reg. 4867 (Jan. 17, 2017)). |
| 117. | When EPA waives preemption for CARB's latest amendments to its new motor vehicle emission program, those waivers typically cover standards with no end date.<br><br>*See* Lang Decl., ¶ 15*; e.g.,* 70 Fed. Reg. 50,322 (Aug. 26, 2005); 75 Fed. Reg. 70,237 (Nov. 17, 2010); 81 Fed. Reg. 95,983 (Dec. 29, 2016). | Disputed that when EPA waives preemption for CARB's last amendments to its new motor vehicle emission program, those waivers "typically" cover standards with no end date. "Typically" is a generality that is not capable of being established as fact. Moreover, EPA has waived preemption for CARB standards that have an end date.<br><br>*See, e.g.*, Cal. Code Regs., tit. 13, § 1956.5, Cal. Code Regs., tit. 13, § 1956.6. |
| 118. | On September 15, 2025, CARB initiated an emergency rulemaking process to clarify one of the certification pathways discussed in the August MAC by recodifying earlier versions of its regulations for which EPA had previously waived preemption.<br><br>Lang Decl., ¶ 34. | Undisputed. |
| 119. | The recodified sections of the California Code of Regulations date from prior years, are labeled as "Alternative," and designated with an additional suffix (.1) appended to the section number.<br><br>Lang Decl., ¶ 35. | Undisputed. |
| 120. | The recodified provisions date from the last amendments to a given code section for which EPA waived preemption in an action not targeted by any congressional disapproval, with the exception five errors that CARB recently discovered and will correct. | Undisputed that the recodified provisions date from the last amendments to a given code section for which EPA waived preemption in an action not targeted by any congressional disapproval. |

35

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Lang Decl., ¶¶ 40-52. | It is also undisputed that CARB has represented that it "recently discovered that when it recodified" California Code of Regulations, title 13, sections 1961.2, 1976, and 1978 as sections "1961.2.1, 1976.0.1, and 1978.0.1, it erroneously recodified versions from 2015 rather than 2012—the prior iterations for which EPA waived preemption" and also recodified versions of subsections 1962.2.1(a) and (h) as the subsections from 2015, and that CARB "will be correcting its error with respect to the recodification of these code sections in a proposed regulatory amendment" by June 30, 2026.<br><br>*See* Lang Decl. ¶¶ 45-47. |
| 121. | For example, Cal. Code Regs., tit. 13, § 1958.6.1 is a recodification of § 1958.6 from 2014.<br><br>Lang Decl., ¶ 42. | Disputed.  Statement No. 121 cites "Cal. Code Regs., tit. 13, § 1958.6.1" and "§ 1958.6," but paragraph 42 of the Lang Declaration refers to "Cal. Code Regs., tit. 13, § 1956.8.1" and "section 1956.8.1."  Moreover, Cal. Code Regs., tit. 13, § 1956.8.1 is not a "recodification" of § 1956.8 because § 1956.8 was revised to include a new condition stating that "if a court of competent jurisdiction issues a final ruling that [the CRA Resolutions] are invalid or that the waivers U.S. EPA granted California on January 6, 2025 [citations omitted], are in effect, the regulated parties are subject to the requirements of this section 1956.8 to the extent consistent with the Court's final ruling."  Further, Ca. Code Regs., tit. 13, § 1956.8.1 revised § 1956.8 to apply to model year 2026 and subsequent model years with no lead time and without regard for EPA's now-operative standards. |
| 122. | EPA has repeatedly waived preemption for amendments to Cal. Code Regs., tit. 13, § 1956.8, including for the 2014 amendments to this section.<br><br>Lang Decl., ¶ 8-9, 42, 56. 81 Fed. Reg. 95,982 (Dec. 29, 2016); *see also e.g.*, 70 Fed. Reg. 50,322 (Aug. 26, 2005); 75 Fed. Reg. | Undisputed. |

36

| NO. | DEFENDANTS' UNDISPUTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
|  | 70,237 (Nov. 17, 2010). |  |

Dated:  June 26, 2026

Respectfully submitted,

BENJAMIN WAGNER, SBN 163581

**GIBSON, DUNN & CRUTCHER LLP**

BENJAMIN WAGNER, SBN 163581

310 University Avenue
Palo Alto, CA  94301-1744
Telephone:      650.849.5395
Facsimile:      640.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301

One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:      415.393.8293
Facsimile:      415.393.8306
RBrass@gibsondunn.com

STACIE B. FLETCHER (*pro hac vice*)
MIGUEL A. ESTRADA (*pro hac vice*)
JACOB T. SPENCER (*pro hac vice*)
VERONICA J.T. GOODSON, SBN 314367

1700 M Street N.W.
Washington, D.C. 20036-4504
Telephone:      202.955.8500
Facsimile:      202.467.0539
SFletcher@gibsondunn.com
MEstrada@gibsondunn.com
JSPencer@gibsondunn.com
VGoodson@gibsondunn.com

*Attorneys for Plaintiff Daimler Truck North America LLC*

/s/ Robin M. Hulshizer
(as authorized on June 26, 2026)
ROBIN M. HULSHIZER, SBN 158486

**LATHAM & WATKINS LLP**

ROBIN M. HULSHIZER, SBN 158486
ARTHUR FOERSTER (*pro hac vice*)
KEVIN M. JAKOPCHEK (*pro hac vice*)

330 North Wabash Avenue, Suite 2800

/s/ Joseph A. Ostoyich
(as authorized on June 26, 2026)
JOSEPH A. OSTOYICH (*pro hac vice*)

**CLIFFORD CHANCE LLP**

JOSEPH A. OSTOYICH (*pro hac vice*)
WILLIAM LAVERY (*pro hac vice*)
STEVE NICKELSBURG (*pro hac vice*)
DANIELLE MORELLO (*pro hac vice*)

37

Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Robin.hulshizer@lw.com
Arthur.foerster@lw.com
Kevin.jakopchek@lw.com

BELINDA S. LEE, SBN 199635

505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Belinda.lee@lw.com

*Attorneys for Plaintiff International Motors, LLC*

/s/ Jeffrey M. Goldman
(as authorized on June 26, 2026)
JEFFREY M. GOLDMAN, SBN 233840

**TROUTMAN PEPPER LOCKE LLP**

JEFFREY M. GOLDMAN, SBN 233840

350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:    213.928.9800
Facsimile:    213.928.9850
jeffrey.goldman@troutman.com

T. SCOTT MILLS, SBN 313554

600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2305
Telephone:    404.885.3000
Facsimile:    404.885.3900
scott.mills@troutman.com

JEREMY HEEP *(pro hac vice)*
DANIEL J. BOLAND *(pro hac vice)*

3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone:    215.981.4000
Facsimile:    215.981.4750
jeremy.heep@troutman.com
daniel.boland@troutman.com

*Attorneys for Plaintiff Volvo Group North America LLC*

DOROTHEA R. ALLOCCA *(pro hac vice)*

2001 K Street NW
Washington, DC 20006-1001
Telephone: 202.253.9077
joseph.ostoyich@cliffordchance.com
william.lavery@cliffordchance.com
steve.nickelsburg@cliffordchance.com
danielle.morello@cliffordchance.com
dodi.allocca@cliffordchance.com

**ILLOVSKY GATES & CALIA LLP**

EUGENE ILLOVSKY, SBN 117892
KEVIN CALIA, SBN 227406

1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Eugene@illovskygates.com
Kevin@illovskygates.com

*Attorneys for Plaintiff PACCAR Inc*

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
CASE NO. 2:25-CV-02255-DC