Rob Bonta, State Bar No. 202668
Attorney General of California
Myung J. Park, State Bar No. 210866
Supervising Deputy Attorney General
Benjamin P. Lempert, State Bar No. 344239
David M. Meeker, State Bar No. 273814
Sarah M. Pfander, State Bar No. 347902
Cecilia D. Segal, State Bar No. 310935
M. Elaine Meckenstock, State Bar No. 268861
Deputy Attorneys General
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA  94612-0550
  Telephone:  (510) 879-0299
  Fax:  (510) 622-2270
  E-mail:  Elaine.Meckenstock@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAIMLER TRUCK NORTH AMERICA, LLC; INTERNATIONAL MOTORS, LLC; PACCAR, INC.;** and **VOLVO GROUP NORTH AMERICA, LLC,**<br><br>Plaintiffs,<br><br>**THE UNITED STATES OF AMERICA;** and **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>**CALIFORNIA AIR RESOURCES BOARD, STEVEN S. CLIFF**, in his official capacity as the Executive Officer of the California Air Resources Board; and **GAVIN NEWSOM**, in his official capacity as the Governor of California,<br><br>Defendants. | 2:25-cv-02255-DC-AC<br><br>**SUPPLEMENTAL DECLARATION OF ROBIN U. LANG IN SUPPORT OF REPLY ON DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:  The Honorable Dena Coggins<br>Trial Date:  Not Set<br>Action Filed:  August 11, 2025 |

1

I, Robin U. Lang, declare as follows:

1.      I am the Division Chief of Emissions Certification and Compliance at the California Air Resources Board (CARB). This Declaration is based on my personal knowledge, and, where relevant, my review of records kept by CARB in the ordinary course of its business practice. I have personal knowledge of the manner in which CARB's records are kept. Each of the records upon which I rely was made in the ordinary course of business at or near the time of the act, condition, or event. The sources of information at the time of preparation are such that I believe the records to be trustworthy. If called as a witness, I could and would testify to the statements herein.

2.      I have a degree in electrical engineering with a minor in business from the University of Southern California. I have worked in my current position at CARB since July 11, 2022. In this role, I currently manage a team of approximately 125 engineers and scientists. These staff are responsible for processing certification applications for mobile source emissions sources in the State of California and confirming compliance with appropriate California standards. I issue approximately 3,000 Executive Orders per year confirming certification status per delegated authority from the Executive Officer.

3.      I previously provided a declaration in support of Defendants' Opposition to Plaintiffs' and Plaintiff-Intervenors' Motions for Summary Judgment and in support of Defendants' Cross-Motion for Summary Judgment, which I understand was docketed as ECF No. 147-3. I provide this supplemental declaration to respond to new evidence and new assertions presented by Plaintiffs Daimler Truck North America (DTNA), Volvo, PACCAR, and International Motors (collectively, OEM Plaintiffs), and to address developments since my prior declaration.

**CARB'S 15-DAY NOTICE TO CORRECT PREVIOUSLY IDENTIFIED ERRORS**

4.      As I explained in my declaration in support of Defendants' Opposition to Plaintiffs' and Plaintiff-Intervenors' Motions for Summary Judgment and in support of Defendants' Cross-Motion for Summary Judgment (ECF 147-3), CARB undertook an emergency rulemaking to recodify the prior iteration of new motor vehicle emission regulations for which the U.S. Environmental Protection Agency (EPA) waived preemption (hereafter recodified regulations)

2

and a non-emergency rulemaking to permanently recodify those same regulations. Lang Decl. ¶¶ 34, 37. That non-emergency rulemaking is still ongoing.

5.      As noted in my initial declaration, CARB determined that in the emergency rulemaking, five sections of the California Code of Regulations were incorrectly recodified using the 2015 versions, when the 2012 versions should have been used. *Id.* ¶¶ 45-46.

6.      CARB is correcting that error as part of the ongoing non-emergency rulemaking. *See id.* ¶ 47.

7.      To effectuate those corrections, CARB issued what is known as a 15-day notice.

8.      Under California rulemaking procedures, a 15-day notice is used to propose changes to an existing proposal to adopt, amend, or repeal a regulation. Via a 15-day notice, agencies make available to the public the "full text of the resulting adoption, amendment, or repeal, with the change clearly indicated" and elicit further public comment regarding the proposed changes. Cal. Gov't Code § 11346.8(c). To be clear, when CARB issues a 15-day notice, it is not proposing a change directly to the California Code of Regulations; rather, CARB is proposing a change to the not-yet-final *proposal* to adopt, amend, or repeal a regulation.

9.      As previewed in my prior declaration (¶ 47), on June 30, 2026, CARB issued a 15-day notice proposing to remove the 2015 versions of the five sections of the California Code of Regulations that had been recodified in error and to replace those sections with their 2012 versions. This was the second 15-day notice for this rulemaking. That notice and all documentation and notices related to this rulemaking are publicly available at:

https://ww2.arb.ca.gov/rulemaking/2025/orhdomnibus.

10.      I understand that the OEM Plaintiffs have filed a "Notice of Supplemental Authority" with this Court confirming that CARB issued this 15-day notice proposing the corrections I described in my prior declaration. *See* ECF 169 at 1:8-10.

**RESPONSE TO OEM PLAINTIFFS' NOTICE CONCERNING OTHER ASPECTS OF CARB'S 15-DAY NOTICE**

11.      I understand that OEM Plaintiffs' "Notice of Supplemental Authority" also asserts there are other proposed changes in the second 15-day notice that I did not describe in my prior

declaration. ECF 169 at 1:11-14. Specifically, OEM Plaintiffs assert that "CARB also proposes to revise the Emergency Rule provisions relating to the Phase 2 Greenhouse Gas (GHG) emissions standards—proposed amendments which were not set forth in their opposition or declaration testimony." *Id.* at 1:11-13.

12.    In response to this notice, below I explain the changes to which OEM Plaintiffs refer, but I note that CARB's proposed changes in the 15-day notice are not to the Phase 2 GHG emission standards themselves.

13.    The second 15-day notice proposes adding the following language to sections of the California Code of Regulations that contain regulatory provisions that are part of CARB's Phase 2 GHG regulations. Specifically, CARB proposes to add the following to each such section:

> Under section 209(b) of the Federal Clean Air Act (42 U.S.C. § 7543(b)), California is required to receive a waiver from the Administrator of the U.S. Environmental Protection Agency (U.S. EPA) prior to enforcing an emission standard for new on-road vehicles and engines. Accordingly, California Air Resources Board will not seek to enforce the Phase 2 greenhouse gas emission standards until such time as it receives a waiver from the U.S. EPA.

14.    This language would codify CARB's position as I explained it in my prior declaration. Lang Decl. ¶ 55 ("CARB is not requiring manufacturers to certify to, or otherwise meet [the Phase 2 GHG standards] and will not do so in the future absent the relevant preemption waiver."). I understand that Defendants' brief likewise explained that this is CARB's position.

15.    The addition of the text quoted above in paragraph 13 is the only change proposed in the second 15-day notice concerning the Phase 2 GHG regulations. And, as the text indicates, if this proposal were finalized it would not change any emission standard or other substantive requirement contained in these regulations.

16.    CARB made the decision to include this proposed language in the second 15-day notice after reviewing comments on the first 15-day notice issued in this rulemaking. The comment period for that first 15-day notice closed on April 20, 2026, and CARB was still reviewing those comments at the time my declaration in support of Defendants' Cross-Motion for Summary Judgment was filed. At that time (June 1, 2026), CARB had not yet decided to include the language quoted in paragraph 13 in the second 15-day notice.

17.    CARB generally views its internal deliberations about its rulemaking proposals as privileged, so it would not have been natural for me to disclose any deliberations about this change that may have been occurring when I signed my declaration.

18.    Moreover, this proposed change was outside the scope of my prior declaration which described CARB's recodification of other emission standards and requirements. Lang Decl. ¶¶ 40-52. CARB did not recodify the Phase 2 GHG regulations as part of the emergency rulemaking or as part of the non-emergency rulemaking to make the emergency regulations permanent. Lang Decl. ¶ 56 (describing recodification of *earlier* GHG regulations). There was no need to describe this unrelated change, which does no more than propose to codify the position I conveyed in my declaration: that CARB will not enforce the Phase 2 GHG regulations unless and until EPA waives preemption. Lang Decl. ¶ 55.

## CARB'S RECENT THIRD 15-DAY NOTICE

19.    Given OEM Plaintiffs' filing of their "Notice of Supplemental Authority" concerning CARB's second 15-day notice, I am informing the Court (and the parties) that CARB issued a third 15-day notice in the same rulemaking (the rulemaking to permanently adopt the emergency regulations).[1] This third 15-day notice proposes to correct two errors introduced by the proposal contained within the second 15-day notice. Neither proposed change concerns medium- or heavy-duty vehicles, but I mention them here in the interest of transparency and to avoid any confusion.

20.    In the second 15-day notice, as part of correcting the recodification of several sections from the 2015 to the 2012 versions, CARB inadvertently proposed to recodify the entirety of the 2012 version of § 1962.2, although the emergency rulemaking had only recodified subsections (a) and (h) of § 1962.2 from 2015. The third 15-day notice corrects this error, removing the proposal to recodify any subsection other than (a) and (h), consistent with the emergency rulemaking and CARB's intent.

21.    In the second 15-day notice, CARB also inadvertently proposed to recodify the 2012 version of § 1962.1 as § 1962.1.1 (with the standard prefatory language included in all the sections recodified with ".1"). This section was not recodified in the emergency regulations, and

---

[1] *See* https://ww2.arb.ca.gov/rulemaking/2025/orhdomnibus.

CARB does not intend to recodify it as part of the current rulemaking. Thus, the third 15-day notice proposes to delete this proposed recodification.

22.     This rulemaking is not yet completed.

**THE RECODIFIED REGULATIONS ARE CLEAR AND FEASIBLE**

23.     I have reviewed the declarations from Daniel Potter (DTNA), Andrea Brown (Volvo), Carl Hegart (PACCAR), and Michael Noonan (International Motors), submitted with OEM Plaintiffs' opposition to Defendant's cross-motion for summary judgment. *See* ECF Nos. 167-1, 167-7, 167-8, & 167-9. I see that Ms. Brown and Mr. Potter (but not the other declarants) have asserted that the recodification of some earlier sections of the California Code of Regulations by the emergency rulemaking (and proposed to be made permanent in the ongoing rulemaking) has created confusion about compliance or made compliance with some regulations technologically impossible. I provide the following responses.

24.     Ms. Brown makes a very general assertion that the result of CARB's recodification "is a mix of standards that are conflicting, confusing, and difficult for Volvo to comply with." Brown Decl. ¶ 9. Mr. Potter makes a similarly conclusory assertion that the recodified regulations "are not from a coherent set of prior CARB standards." Potter Decl. ¶ 26. Each of these declarants identifies only one example of a provision they claim causes their company confusion. I address each of those below. But these singular examples do not establish that the recodified regulations in general are difficult to understand or meet.

25.     As I explained in my prior declaration, the emergency regulations recodified earlier provisions of CARB's new motor vehicle emissions regulations. Put simply, these provisions *were in place and enforceable*, pursuant to EPA preemption waivers, at previous points in time. Manufacturers were able to understand and meet the requirements contained within those provisions then, and I have no reason to think they cannot do so now.

26.     In fact, some medium- and heavy-duty manufacturers *have been* certifying to these recodified requirements, demonstrating that they can be understood and met. CARB staff are also available, as usual, to discuss any questions or concerns manufacturers have. I am not aware of

any manufacturer having informed CARB staff that it cannot understand or meet the recodified regulations.

27.    Ms. Brown's single specific assertion is that there is "massive confusion about how to certify to GHG requirements and to what level." Brown Decl., ¶ 16(a). Ms. Brown appears to attribute Volvo's confusion to (1) cross-references in CARB's recodified Phase 1 GHG regulations to EPA's now-repealed GHG regulations, and (2) the absence of a waiver for CARB's Phase 2 GHG regulations.

28.    Manufacturers complied with CARB's Phase 1 GHG regulations for a number of years beginning with model year 2015, and I am not aware of any confusion about the requirements from that period.

29.    The presence of cross-references to now-repealed EPA regulations should not give rise to any new confusion because manufacturers can access the cross-referenced provisions via CARB's own rulemaking files, older versions of the Code of Federal Regulations, or the Federal Register notices for the relevant final EPA rules. (For example, in the Phase 1 GHG test procedures, incorporated by reference into California Code of Regulations, title 17, § 95663.0.1, the cross-references to the Code of Federal Regulations specify they refer to the regulations "as adopted . . . on September 15, 2011.") Given the past history of compliance, it is not clear that manufacturers would need to rely on these cross-references to understand the regulations, but all these sources are readily available online should the need arise. Again, I note that only one of four manufacturer declarants has asserted there is any cause for confusion regarding these requirements.

30.    Mr. Potter identifies CARB's on-board diagnostics (OBD) regulations as his sole example of an allegedly challenging requirement in the recodified regulations. Potter Decl. ¶¶ 26-27. He says that DTNA cannot certify to EPA's lower NOx emission levels and also comply with the malfunction threshold contained within the recodified CARB regulations' OBD requirements. *Id.* But the bind that Mr. Potter describes is illusory because manufacturers have several certification options. For example, if a manufacturer wants to certify to EPA's NOx standards, then that manufacturer can either (1) ask CARB to certify the manufacturer's OBD system under

7

CARB's more current (Omnibus-era) OBD regulations on a *voluntary* basis; or (2) ask EPA to certify the manufacturer's compliance with both EPA's emission standards and with EPA's OBD requirements and then (if the manufacturer wants to sell the vehicle in California) provide a copy of the resulting EPA certificate of conformity to CARB.[2] Manufacturers could also avoid the issue Mr. Potter identifies by applying for certification with CARB under the recodified regulations, for *both* OBD requirements *and* emissions standards. There is thus no need for a manufacturer to navigate the mismatch Mr. Potter speculates about—where a manufacturer would certify to *EPA's current* emission standards but *CARB's older* (recodified) OBD requirements.

31.    Mr. Potter mischaracterizes the options available to manufacturers in another way. While Mr. Potter's declaration directs the reader to compare California Code of Regulations, title 13, § 1971.1(g)(5.2) with § 1971.1.1(g)(5), Mr. Potter does not consider § 1971.1.1(g)(5.1), which states: "Upon request of a manufacturer or upon the best engineering judgment of [C]ARB, the Executive Officer may revise the emission threshold for any monitor in sections (e) through (g) if the most reliable monitoring method developed requires a higher threshold to prevent false indications of a malfunction." Section 1971.1.1(g)(5.1) clearly provides a pathway for DTNA (and any other manufacturer) to request revised thresholds and obtain CARB OBD approval under the recodified regulations, even for an engine certified to a low NOx standard.

32.    Mr. Potter also disregards the fact that failure to comply with some OBD requirements is not a bar to certification for sale in California. California Code of Regulations, title 13, § 1971.1.1(k) provides that a manufacturer may demonstrate a "good-faith effort" to comply with the requirements (among other factors) and still receive CARB OBD approval for an OBD system that otherwise does not satisfy all regulatory requirements. Mr. Potter does not acknowledge this, although manufacturers have utilized this feature of California's regulations in the past.

---

[2] To be clear, CARB is not requiring manufacturers to obtain certification to any Omnibus regulation. If a manufacturer asks CARB for such a certification (and some have), CARB will process that application on a *voluntary* basis. For example, some manufacturers have sought CARB OBD certifications on this voluntary basis to include with their emission certification applications to EPA.

33.    Finally, Mr. Potter also claims that CARB "require[d] heavy-duty truck engine manufacturers to certify to [CARB's Phase 2 GHG standards] starting in model year 2021 through model year 2024." Potter Decl., ¶ 11. Mr. Potter suggests this indicates CARB will "enforce its emission standards … back to model year 2021[]" in the event CARB receives a waiver authorizing such enforcement in the future. *Id.* Mr. Potter is correct that CARB generally enforces its regulations for any period authorized by an EPA waiver. I cannot say whether CARB would do so in the hypothetical situation Mr. Potter describes. I can say, as I did before, that CARB will not enforce the Phase 2 GHG regulations unless EPA waives preemption for that enforcement. I also note that Mr. Potter suggests that DTNA complied with CARB's Phase 2 GHG regulations between 2021 and 2024 and could presumably do so again if CARB obtains a waiver to enforce those requirements.

34.    Mr. Potter also fails to acknowledge that CARB's Phase 2 GHG standards were aligned with, indeed nearly identical to, EPA's before EPA repealed those standards earlier this year (in February 2026). Mr. Potter does not claim that DTNA was not complying with EPA's standards, which means DTNA was also meeting CARB's Phase 2 GHG standards in the period that DTNA asserts CARB was enforcing Phase 2 GHG regulations without a waiver.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 24, 2026.

*Robin U. Lang*

Robin U. Lang

Supplemental Declaration of Robin U. Lang (2:25-cv-02255-DC-AC)